# EXHIBIT B

BREM MOLDOVSKY, L.L.C.
Brem Moldovsky, Esquire (Attorney ID 79485)
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
Phone 215-546-9957

Gerald J. Pomerantz, Esquire (Attorney ID 3636)
THE COVENTRY HOUSE
7301 Coventry Ave, Suite 501
Elkins Park, PA 19027
Phone (267) 255-7229

Attorneys for the Plaintiffs

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | |
|---|---|
| BREM MOLDOVSKY, ESQUIRE; and<br>BREM MOLDOVSKY, L.L.C.;<br><br>*Plaintiffs*,<br><br>vs.<br><br>JONATHAN MILLER, ESQUIRE, D/B/A/<br>THE LAW FIRM OF JONATHAN R.<br>MILLER; ANDREW ELLNER;<br>LIGHTBOX VENTURES, LLC, and<br>LIGHTBOX CAPITAL MANAGEMENT, LLC.<br><br>*Defendants*. | Case No: 2019-00793<br><br>TRIAL BY JURY OF 12 DEMANDED |

**NOTICE**

   You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Third Amended Complaint and notice are served by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Amended Complaint or for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

1

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**Bucks County Bar Association**
**135 East State Street**
**Doylestown, PA 18901**
**Phone (215) 348-9413, 1-800-479-8585**
**www.bucksbar.org**
**PA Bar Association: www.pabar.org**

**AVISO**

**Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.**

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

**Bucks County Bar Association**
**135 East State Street**
**Doylestown, PA 18901**
**Phone (215) 348-9413, 1-800-479-8585**
**www.bucksbar.org**
**PA Bar Association: www.pabar.org**

Brem Moldovsky, L.L.C.

2

Dated: September 24, 2019

BY: Bre_n Moldovs__y, Esq.

BY: Gerald J. Pomerantz, Esq.

BREM MOLDOVSKY, L.L.C.
Brem Moldovsky, Esquire (Attorney ID 79485)
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
Phone 215-546-9957

Gerald J. Pomerantz, Esquire (Attorney ID 3636)
THE COVENTRY HOUSE
7301 Coventry Ave, Suite 501
Elkins Park, PA 19027
Phone (267) 255-7229

Attorneys for the Plaintiffs

<u>**Notice to Plead**</u>
**To: The Defendants, you are required**
**to reply to the allegations of this pleading**
**within 20 days from the date of service**

<u>**/s/ Brem Moldovsky, Esq.**</u>
**Attorney for Plaintiffs**

<u>**/s/ Gerald J. Pomerantz, Esq.**</u>
**Attorney for Plaintiffs**

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | |
|---|---|
| BREM MOLDOVSKY, ESQUIRE; andBREM MOLDOVSKY, L.L.C.; | |
| | Case No: 2019-00793 |
| *Plaintiffs*, | |
| vs. | TRIAL BY JURY OF 12 DEMANDED |
| JONATHAN MILLER, ESQUIRE, D/B/A/ THE LAW FIRM OF JONATHAN R. MILLER; ANDREW ELLNER; | |
| LIGHTBOX VENTURES, LLC, and LIGHTBOX CAPITAL MANAGEMENT, LLC. | |
| *Defendants*. | |

1

## THIRD AMENDED COMPLAINT IN CIVIL ACTION

AND NOW comes the Plaintiffs, Brem Moldovsky, L.L.C. and Brem Moldovsky, Esq. by and through his counsel, Brem Moldovsky, Esq., of Brem Moldovsky, L.L.C. and Gerald J. Pomerantz, Esq. and hereby complains of the Defendants as follows:

## PRELIMINARY STATEMENT

1.     Plaintiffs bring this Third Amended Complaint in Civil Action upon Rules to File an Amended Complaint filed by each Defendant after Pre-Amended Complaint Discovery served to ascertain certain specific facts for the purpose of this pleading was stayed pending the adjudication of two Motions for Protective Orders by the Defendants.

2.     This Third Amended Complaint is fundamentally an Amended Complaint about attorney malpractice by Jonathan R. Miller, Esq. based on his attorney client relationship with Plaintiffs, which included Bucks County, PA representation and counseling of the Plaintiffs in two related litigations (hereinafter the "prior litigations") and subsequent representation of Mr. Ellner and the Lightbox entities against the Plaintiffs in violation of the Pennsylvania Rules of Professional Conduct, including Rules1.6, 1.7, 1.8, 1.9, 3.2, 3.7  as confirmed by the expert report of Samuel Stretton, Esq., see, Stretton Report, incorporated herein by reference and attached hereto as Exhibit "A",[1] and the supplemental report of Samuel Stretton, Esq. See, Stretton Supplemental

---

[1] For this and all Exhibits referenced in this Third Amended Complaint, since they are the same as the Exhibits to the Second Complaint (and Complaint, with the exception of Exhibit "D"), the attachment, reference and incorporation of them will be per the copies attached, referenced and incorporated with Plaintiffs' Complaint in this case, ECF Doc. #41, Pursuant to Pa. R.C.P. Rule 1010(g).

Report, incorporated herein by reference and attached hereto as Exhibit "D". Mr. Stretton's report and supplemental report have also been filed with Certificates of Merit.

3.      The Plaintiffs' claims are likely to prevail, because Mr. Miller is in deep conflict of interest, has committed blatant malpractice and has violated the Pennsylvania Rules of Professional Conduct, including but not limited to:

      a.  Rule 1.6 - an attorney cannot use client information without client/former client permission and against the client/former client;

      b.  Rule 1.7 - an attorney cannot proceed against a current client on behalf of another client;

      c.  Rule 1.8 - a lawyer shall not represent a client if the representation involves a concurrent conflict of interest, including a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client;

      d.  Rule 1.9 - an attorney cannot litigate against a client/former client on claims substantially similar to (about which the attorney has substantially related information from the prior representation on) claims for which the attorney previously represented the client/former client;

      e.  Rule 3.2 – an attorney cannot frustrate a client's right to expedient litigation;

      f.  Rule 3.3 (a) – an attorney shall not make a false or misleading statement of material fact to a tribunal; and

      g.  Rule 3.7 an attorney cannot be a witness as to a former client.

4.      Mr. Miller persisted in representing Lightbox and Mr. Ellner as their Counsel in New York despite being aware that his representation against the Plaintiffs would raise conflicts

of interests and make Lightbox and Mr. Ellner privy to certain information and knowledge that they would not have but not for the representation by Mr. Miller (which Mr. Ellner and Lightbox have capitalized on).  Mr. Ellner and Lightbox insisted that they did not have the means or ability to source different Counsel to proceed against the Plaintiffs, however, they have had no difficulty retaining Fox Rothschild in this matter, as well as the various attorneys they have hired and utilized, as explained at Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3, at ¶6.[2]

  5. Mr. Ellner and Lightbox have been named as Defendants based on violations of the Pennsylvania Wiretap Act, 18 Pa. C.S.A. § 5703, and lack of candor to the tribunal in that regard, as a result of recording and transcribing telephone calls between them and the Plaintiffs, at least one of which took place on Thanksgiving Day while Plaintiffs were in Pennsylvania on a Pennsylvania phone, and distributing said recordings and transcriptions of recordings to Mr. Miller, the Court, co-litigants in New York, the public by filing on the record, and possibly others. Mr. Ellner has stated and verified with this Court that he has "never" made a call to the Plaintiffs on any line but a New York line while in New York.  This is demonstrably false, however, the extent to which this is false is the subject of the Pre-Complaint Discovery. See, Plaintiffs' Response to Lightbox's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #26, at 44.

---

[2] Documents of record are incorporated by reference herein rather than attached pursuant to PA RCP §1019(g).

**PARTIES**

6.     Plaintiff Brem Moldovsky is an individual residing at 118 Oakdale Avenue, Washington Crossing, PA 18977.

7.     Plaintiff Brem Moldovsky, L.L.C. is a law firm with offices in Pennsylvania, New York, and New Jersey, and is also referred to herein as "the Moldovsky Firm."

8.     Defendant Jonathan R. Miller d/b/the Law Firm of Jonathan R. Miller is an attorney licensed to practice in Pennsylvania, New York, and New Jersey with a primary address at 100 Overlook Center, 2nd Floor, Princeton, NJ 08540.

9.     Defendant Andrew Ellner is an individual residing at 210 West 77th Street, Apt. 8W, New York, NY 10024.

10.     Defendant Lightbox Ventures, LLC is an entity owned by Andrew Ellner with a registered address at 210 West 77th Street, Apt. 8W, New York, NY 10024.

11.     Defendant Lightbox Capital Management, LLC is an entity owned by Andrew Ellner with a registered address at 24 West 40th Street, Second Floor, New York, NY 10024.

12.     Andrew Ellner, Lightbox Ventures, LLC, and Lightbox Capital Management, LLC are hereinafter collectively referred to as "Lightbox".

**JURISDICTION**

13.     The actions, circumstances, transactions and facts of this case took place and/or arose at least mostly in Bucks County, Pennsylvania.

14.     The dispute includes disputes as between two Pennsylvania attorneys.

15.     The Plaintiffs are located in Bucks County, Pennsylvania, was acquainted with Mr. Miller and interacted with Mr. Miller mainly in and/or as Plaintiffs were in Pennsylvania.

5

16.     Defendant Jonathan R. Miller d/b/the Law Firm of Jonathan R. Miller represented and counseled the Plaintiffs as a Pennsylvania attorney in the prior litigations from which the malpractice complained of stems, to a significant extent, in the Court of Common Pleas of Bucks County, Pa.

17.     Defendants Mr. Ellner and the Lightbox entities made secret, unauthorized recordings of a Pennsylvania resident, at his home and otherwise in Pennsylvania, at times on a cellular phone with a Pennsylvania area code.

18.     Jurisdiction is appropriate pursuant to Pa.R.C.P.1910.2 (a)(2).

## FACTUAL BACKGROUND

## ACQUAINTANCE WITH MR. MILLER: BEGINNING OF ATTORNEY-CLIENT RELATIONSHIP

19.     The Plaintiffs became acquainted with Mr. Miller in roughly 2014 after meeting through a bar association list-serve and realizing that they had what seemed to be similar law practices, were proximately close to one another's homes and had various commonalities including both having spent significant time in Israel.

20.     Like Brem Moldovsky, Mr. Miller is an attorney in Pennsylvania, New York and New Jersey and thus bound to follow law and attorney ethical standards as an attorney in all three states.

21.     The genesis of colleague relationship was based on back and forth questions about legal issues, some general and some more specific.

22.     Upon discovering their similarities, the Plaintiffs and Mr. Miller discussed and provided advice to each other on many things related to their law practices, including managing small law practices, time management, usage of staff and attorneys and rates of pay, advertising

6

and marketing, value of time and time as a marketable good, limitations, and other aspects of management and small law practice

23.    Brem Moldovsky and Mr. Miller began a colleague and friendly relationship and spoke and emailed on a somewhat regular basis about legal issues.  They also confided personal and sensitive information with each other as friends and colleagues, got together for meals and with family for holidays, including at the Moldovskys' home.

## MR. MILLER'S LEGAL REPRESENTATION AND ATTORNEY-CLIENT RELATIONSHIP IN PRIOR BUCKS COUNTY MATTERS

24.    In 2015-2016, simultaneous to much of the activity in the underlying Federal litigation of Lightbox Ventures, L.L.C. v. 3rd Home Ltd., et al., No. 16-cv-02379 (S.D.N.Y.), Mr. Miller represented, acted as counsel and was an attorney for Brem Moldovsky, Esquire and his wife, and co-counsel with Brem Moldovsky, L.L.C. in two Pennsylvania litigations (the prior litigations).

25.    Mr. Miller's client agreement letter was between Mr. Miller and Brem Moldovsky, however, Mr. Miller also "implicitly" represented Brem Moldovsky's wife and represented, provided counsel to and was co-counsel to Brem Moldovsky, L.L.C.  See, Mr. Millers Agreement Letter, incorporated herein and attached hereto as Ex. "B".

26.    Payment for legal service was made by Brem Moldovsky, L.L.C.

27.    Because of the colleague and friend relationship between Mr. Moldovsky and Mr. Miller, many of the correspondence, arrangements and agreements between the parties were oral.

28.    Mr. Miller's representation included lawyering in various capacities on the Moldovskys' claims of misrepresentation and breach of contract with damages and losses including loss and waste of time - of attorney, paralegal and legal professional time, seeking relief

7

and compensation of payment of the value of the professional fees based on Brem Moldovsky, LLC.'s billing, legal fees, value of professional hours, etc.  See, true and correct copies of the Summonses and  Complaint in the Pennsylvania matter attached to Mr. Miller's Answer to the Plaintiffs' Motion to Disqualify him as Counsel to his co-Defendants in this matter, ECF Doc. #18.

29.     Based upon statements, actions and interaction, it was understood and reasonably believed that Mr. Miller would act as counsel in a manner that conformed with the duties inferred upon him as an attorney registered to practice in the Commonwealth, including a duty of loyalty, duty of trust, duty to keep confidences and a duty to act in the best interests of his clients.

30.     The Plaintiffs reasonably relied on these actions and representations.

31.     Mr. Miller appeared to act trustworthy, protective of client confidences and sensitivities, caring about legal questions raised and their impact, and seemed not be telling other Plaintiffs sensitive information or taking other such wrongful steps.  Later, as described herein, things changed and it was realized that Mr. Miller, particularly in 2018 and on, was acting quite improperly.

32.     Accordingly, it was reasonable under the circumstances to believe Mr. Miller was acting within an attorney client relationship with Plaintiffs, at least until about May 2018 when Mr. Miller turned against the Plaintiffs.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶34-35.

33.     During the two litigations in which Mr. Miller acted as Counsel for the Moldovskys, he acted as counsel providing guidance, counsel, advice, legal input and such to the Plaintiffs.  He also did act as a prime contact with the other counsel on the case and prepared, drafted and edited litigation documents, performed legal research, did analysis of and helped to build and work on claims and defenses, reviewed relevant rules and law, performed legal strategizing,

8

correspondence and negotiation with counsel, drafting of official correspondence documents on and related to the case, reviewed the facts of the matters, performed analysis and gave input about expert usage, engaged in settlement discussions, and more, all of which he billed for as appropriate and was compensated for accordingly.  See, true and correct copies of Mr. Miller Retainer Agreement and Billing, redacted for confidentiality, attached hereto and incorporated herein as Exhibits "B" and "C" respectively.

34.    In the course of his representation Mr. Miller was provided with, made privy to, digested and/or absorbed hundreds of pages of financial details including legal billing and its components, liquidity and ability to make large payments, payment terms,  ability to litigate extensively, time and capability of the office, personal and law firm financial information, family information, bills, salaries and hourly rates as well as profits and expenses, payment of outside legal fees, and was acquainted with the manner in which the Plaintiffs negotiate and deal with other counsel and prefer to handle matters, the approach to risk and risk assessment, desire or willingness to be involved in ongoing litigation, other strengths and weaknesses that Lightbox and Ellner would not be otherwise exposed to, much if not all of it sensitive, personal and confidential, and more.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶3,14,88 and others.

35.    Mr. Miller has obtained confidential and sensitive information about Plaintiffs that is detrimental and unfair when employed by Mr. Miller to the benefit of Lightbox and Mr. Ellner and against Brem Moldovsky, this law firm, and thus its personnel, which Lightbox and Mr. Ellner have admitted to having had access to (see, ECF Doc. #59 at Suggested Answer "B") in violation of the rules of attorney ethical and professional conduct.

9

36.     Now Mr. Miller represents Lightbox, Brem Moldovsky, L.L.C.'s former clients, in this dispute against Brem Moldovsky, L.L.C. and Brem Moldovsky, Esquire, wherein the dispute includes claims by Brem Moldovsky L.L.C. of misrepresentation and breach of contract with damages and losses including loss and waste of time - of attorney, paralegal and legal professional time, seeking relief and compensation of payment of the value of the professional fees based on Brem Moldovsky, LLC.'s billing, legal fees, value of professional hour, and more.   See, Brem Moldovsky, L.L.C.'s Answer, Defenses, Counter and Crossclaims, redacted according to Lightbox's requests while parties await the Court's determination of redactions, Ex. "H" to Plaintiffs' Response to Mr. Millers Answer to Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #27.

37.     Mr. Miller's knowledge gained by being the Plaintiffs' Counsel of their intimate and sensitive litigation and financial limitations and more is unfair in light of Lightbox's known penchant for aggressive litigation, ability to fund to the tune of at least hundreds of millions of dollars, strongly held beliefs of pursuing based on ego and grudge his version of justice no matter what the costs including "caging" business opponents he perceives have wronged him.   See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶88.

38.     Mr. Miller's knowledge of the Plaintiffs' strategic thinking, planning, actions, litigation approaches and tactics, negotiation approaches and more, as to how to engage, deal, litigate with, etc. a litigation onslaught by a well-funded and aggressive party harboring disdain toward Plaintiffs and their approaches, including tendencies to avoid and walk away from righteous claims and positions in light of such opposition, are and have been poisonously helpful to Lightbox, deeply and unfairly hurtful to Plaintiffs, and terribly troubling, complicating and time-

10

wasting for these Lightbox disputes against both prior law firms based on failure to pay legal fees and costs based on written, signed and acknowledged agreements to pay.

39.     During and after the Pennsylvania litigations, the Plaintiffs maintained an attorney-client and attorney-colleague relationship with Mr. Miller in which he provided legal advice, guidance and counsel.  There were times when he provided more active representation as well. Mr. Miller was acting counsel from the Fall of 2015 through the Fall of 2016.  Over the course of years, between 2015 and 2018, there were in well in excess of 20 times when Mr. Miller made inquiries to the Plaintiffs – and various from this firm to him - about matters which included sensitive, important and challenging client and personal issues that a sophisticated attorney would not share with a casual acquaintance, including strategizing, reviewing submissions and filings to the Court, mediation and settlement considerations and more related to the Federal Lightbox matter. Many such emails were included as Exhibits to Brem Moldovsky, L.L.C.'s Motion to Disqualify Mr. Miller in the Federal Court, and are attached hereto along with Brem Moldovsky, L.L.C.'s Reply in Support of that application, redacted according to Lightbox and the Court's designations in that matter.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶35.

40.     Plaintiffs received, sought, were given and had interaction with Jonathan Miller and his firm.  They sought his counsel and he provided counsel and the attorney client relationship existed.  He advised them on many various matters and issues.

11

## MOLDOVSKY FIRM REPRESENTATION OF LIGHTBOX

41.     The Moldovsky Firm began interacting with Mr. Ellner and Lightbox in January 2017, then representing them in February 2017, upon referral by a bar association legal referral service.

42.     Mr. Ellner and Lightbox represented themselves as sophisticated, counseled, and capable and trustworthy of managing hundreds of millions of dollars in investments.  Mr. Ellner had previously worked for Lehman Brothers, holding global and executive positions.

43.     The underlying litigation involved a failed joint venture for a global real estate venture Mr. Ellner claimed and believed had in excess of hundreds-of-millions of dollars-worth of potential, was a first in the industry, already had listings of hundreds-of-millions of dollars of real estate and more. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at fn8.

44.     During the time of discussions with Mr. Ellner over January and into February 2017 over terms of representation, including whether to take the matter on in a hybrid fee agreement and various details related thereto, the Plaintiffs discussed, reviewed and sought advice and received input from Mr. Miller, under an expectation of there being an ongoing counsel relationship, regarding these very issues, including key terms of the client agreement letter, fees and financial arrangements and issues that could arise related to contingent and hybrid arrangements. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶37.

45.     At one point over the course of the attorney-client and colleague relationship, Mr. Miller pointed out various components and potential issues with the Moldovsky Firm's fee

agreement, which Mr. Miller is now attacking.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶37.

46.     When Lightbox required Counsel to take over representation in the New York Supreme Court litigation (which is ongoing), the Plaintiffs reached out to Mr. Miller and raised the possibility of Mr. Miller being Counsel and working in conjunction with the Plaintiffs to defend Lightbox in both New York forums.

47.     The Plaintiffs referred their Counsel and colleague Mr. Miller to Lightbox (and they realized they knew each other from many years before) to represent them in the New York State Court against the Plaintiff in that case, Scarola Malone & Zubatov, LLP[3] (hereinafter "SMZ" or the "Scarola Firm"), in conjunction with the work the Plaintiffs were doing in the related Federal matter.  This firm assisted with setting up the working relationship between Mr. Miller and Lightbox on this case, and provided counsel regarding the State matter, and Mr. Miller provided counsel on the Federal matter, this firm's relationship with Lightbox and positions and claims as between this firm and SMZ (though each the Plaintiffs and Mr. Miller only entered their appearance in one matter for Lightbox: Plaintiffs in the Federal matter and Mr. Miller in the State matter (with Mr. Miller entering the Federal litigation only after the Moldovsky Firm withdrew and the disputes of Lightbox against the Moldovsky Firm and Mr. Miller against the Moldovsky Firm in the late Spring of 2018)).  In essence, Plaintiffs were referring Lightbox to their own lawyer for Lightbox to utilize.

48.     Lightbox was made aware that Mr. Miller had represented the Plaintiffs in prior litigations and had an ongoing relationship with the Plaintiffs.

_____

[3] After the initiation of their action Scarola Malone & Zubatov, LLP was renamed Scarola Zubatov Schaffzin pllc.

49.     Mr. Moldovsky made clear and explained to Mr. Ellner – who acknowledged - that Mr. Miller had been and ongoing was a personal and family attorney to Mr. Moldovsky and his family, as well as a friend, colleague  and someone in the same small firm set up with which Mr. Moldovsky exchanged advice, including regarding running and managing a small law firm.

50.     The Plaintiffs' reasonable belief was that Mr. Miller would not breach his duties to his client and betray his friend and colleague by using knowledge gained in his representation of the Plaintiffs to Lightbox's benefit against the Plaintiffs.  However, as described herein, this turned out not to be true.

51.     The Plaintiffs make considerable efforts to make sure there are no conflicts with former or current clients, former or current potential clients, friends, family members, or any other person prior to representation, and reasonably expected Mr. Miller to do the same, to at least an industry appropriate and acceptable extent.

52.     There were concerns raised by this firm about Mr. Miller's representation at the time.  Apparently, this led to some animus by Mr. Miller against this firm, which was stoked further by the conflict with Lightbox.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶58.

53.     In November of 2017 The Moldovsky Firm exercised its contractual right to not have to continue on the litigation due concerns with the economic worthwhileness of the case and value, economic hardship on the firm, client misrepresentations and related, and this was part of what lead to the amending of the Agreement between the Firm and Lightbox. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶53.

14

54.     Mr. Miller, as counsel for Lightbox in this state court litigation was not only aware of and in touch with Lightbox about the Amended Agreement, he actually provided counsel and drafted paperwork to help secure the Moldovsky Firm's fees thereunder (even as he also represented the other Defendants), particularly considering SMZ'S position and that Lightbox at the time wanted the Moldovsky Firm to be paid and to feel secure it would be paid. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶.

55.     In early 2018 Lightbox and Ellner while continuing to be difficult in communication and at odds on various strategy with this firm also were failing to pay as agreed which lead to the Plaintiff Firm motioning the Federal Court to be withdrawn as counsel.  Upon Court permission, this firm was withdrawn upon the Court's decision on the trial submissions. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶41,42,53.

**WIRETAPPED PHONE CALL RECORDINGS ARE MADE BETWEEN**
**JANUARY 2017 – FALL OF 2018, INCLUDING THANKSGIVING DAY, 2017**

56.     Over 2017 and about the first half of 2018, without the Plaintiffs' knowledge or consent, an unknown number of phone calls were recorded by Ellner and Lightbox, including at least one conversation on Thanksgiving Day, 2017, while Mr. Moldovsky was at his home (which has an office) in Bucks County, Pennsylvania, though there were others based on Mr. Miller referring to them in the plural tense and there being many calls with Mr. Moldovsky and Mr. Ellner.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at Ex. "H".  It has been admitted that at least two recordings of these calls have occurred by Mr. Ellner, and it has been misrepresented that he never called Plaintiffs on a Pennsylvania phone number or when they were in Pennsylvania, both of which are false.

15

57.     Plaintiffs were not made aware of the recordings until at or around the time of Mr. Ellner and LightBox filed a transcription as an Exhibit to his Affirmation in Opposition to Statutory Charging Liens in the Southern District of New York litigation on October 12, 2018.

58.     Lightbox has affirmed to the Court that they *only* called the Plaintiffs' New York line while in New York, however, this is provably false.  At least some calls were from Lightbox to a Pennsylvania cell phone.  See, Plaintiffs' Response to Lightbox's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #26, at 44.

59.     Additionally, the Plaintiffs were often or mostly at Brem Moldovsky's home office in Bucks County, Pennsylvania when the majority of these phone  calls took place and various of the calls were on Brem Moldovsky's cell phone number, which as a 610-area code.  See, Plaintiffs' Response to Lightbox's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #26, at 45.

60.     Mr. Ellner was aware that Plaintiffs were based out of Bucks County, PA and were often in Bucks County, PA (and other places in Pennsylvania),  Mr. Ellner regularly mailed payments and materials to the Bucks County, Pennsylvania office, which he utilized and treated as the primary address for contact.

61.     Mr. Ellner appreciated that part of what made the Plaintiffs more affordable than other firms he had contacted was the Pennsylvania location (despite having an active New York office).

62.     Ellner and Lightbox travel frequently to many different states and countries, and as such, their location at the time of the recordings is unknown.  However, based on vacation home ownership, relatives, business interests and other reasons, Mr. Ellner visited and spent time in other

16

states in the relevant time period, which, like Pennsylvania, are also "two consent states". Such states are believed to include Florida, Nevada and/or California. (See: https://www.justia.com/50-state-surveys/recording-phone-calls-and-conversations/). See, Plaintiffs' Response to Lightbox's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #26, at 45.

63.     Lightbox and Mr. Miller have referred to at least one recording and have attached one transcript purported to be from a wiretapped recording of Brem Moldovsky on Thanksgiving 2017 from his Bucks County home surreptitiously recorded by Mr. Ellner and handled by Mr. Miller to a document of record in the Southern District of New York Federal and the Second Circuit Courts in violation of 18 Pa. C.S.A. § 5703. See, Plaintiffs' Response to Lightbox's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #26, at 45.

64.     Thus, Lightbox and Mr. Ellner have violated the Wiretap Act's provisions against making and distributing unauthorized recordings.

65.     It has been indicated by Defendants, and at the least not denied, that there are other recordings, and Mr. Miller has threated to and release and play such illegal recordings to a jury with devastating impact. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at Ex. "H". To be fair, based on the Plaintiffs' appropriate conduct and correspondence it is believed that any such recordings do not of course include Brem Moldovsky doing or saying anything inappropriate, but, Mr. Miller and Ellner will spin it that way and cause Brem Moldovsky and Brem Moldovsky, L.L.C. to spend more wasted time explaining away their false and out of context usages, as both have already spent much of the last 10 months

doing.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at Ex. "A" at ¶ 34, Ex. "D" at ¶ 9.

66.    Despite several requests, Lightbox and Mr. Miller have not turned over any phone call recordings or transcripts.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at Ex. "I".

67.    Pre-Complaint discovery was served via email on February 5, 2019, via process server to Mr. Miller on February 26 and to Lightbox on February 27, 2019, and by US Mail on March 14, 2019.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. ## at Ex. "J".

68.    No Answer has been received yet, due to the Court's issuance of a Stay, though the Plaintiffs have been forced by Rule to file the  Complaint regardless.

## PLAINTIFFS WITHDRAWAL AS COUNSEL FOR LIGHTBOX AND CONFLICT WITH MR. MILLER

69.    In or about April of 2018, based on the various conflict, communication, strategy differences and failure to pay issues with Lightbox, the Plaintiffs moved to withdrawal as Counsel from the Federal Matter.  Judge Cote granted the motion, and the Plaintiffs were withdrawn upon Judge Cote rendering her Decision and Order on trial submission.  Notably, the Plaintiffs prevailed in Lightbox's claims and successfully defended Lightbox against counter-claims in that matter, which Judge Cote has affirmed.

70.    Shortly thereafter, Mr. Miller on behalf of Lightbox began to raise attorney fee dispute issues against this firm, and, upon information and belief, Mr. Miller was acting in conflict against Plaintiffs in advising and counseling Mr. Ellner and his companies at points and continuously from late 2017 through the Spring of 2018 – in particular in the late Winter and early

Spring of 2018 - regarding Lightbox's making and raising hollow, false and unfounded fee and billing issues against Plaintiffs, including among which are those which Judge Cote found do not make out even a prima facie allegation of attorney wrongdoing.

71.     Mr. Miller worked behind the scenes and also on the front lines with the benefit of Plaintiffs' confidential, secret, private and sensitive information on behalf of the other Defendants and against the Plaintiffs in attacking Plaintiffs' billing, billing practice, account stated facts-on-the-ground and argument and more, as stated herein and will be further fleshed out in this case, including by discovery.

72.     Seeing, sensing and understanding inherently, generally and to various extents that conflicts of interest in Mr. Miller litigating against this firm were in play and activated by Lightbox being in real adversarial mode against this firm and Mr. Miller being their spearhead against this firm including on issues for which he had represented this firm were at play and with more to come, the Plaintiffs raised the conflicts of interest with Mr. Miller.  Unfortunately, and, as something of a prelude to what was to come, Mr. Miller became hostile, aggressive, retaliatory, and attacking, rather than acknowledge the conflicts and acting appropriately and ethically accordingly.

73.     Mr. Miller acted with hostility, anger, vitriol and derogation toward this firm, again, characterizing what was to come, what has already come to pass and more of which can be avoided or at least limited by granting injunctive relief estopping Mr. Miller from representing against the Plaintiffs.

74.     Mr. Miller thus then continued on with great zeal and malice and has used the veneer of litigation representing Lightbox against this firm related to legal fees and the agreement between clients and counsel fueled by a dissatisfied litigant (Lightbox – already litigating with the

19

prior firm) to engage in a vendetta against the Plaintiffs, which manifested even further conflicts and problems in direct conflict of interest under the Pennsylvania (and New York) Rules of Professional Conduct.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶59.

75.    Mr. Miller maliciously conveyed that if the Moldovsky Firm continued to raise issue with Mr. Miller's conflicts of interest that Mr. Miller would use the processes on behalf of Lightbox to make things purposefully difficult and hard for the Moldovsky Firm and Brem Moldovsky, Esquire.

76.    Mr. Miller has acted and continues to act toward Plaintiffs in an attacking, enemy-like, hostile and unprofessional manner as part of his follow-through to make things difficult for Plaintiffs and to punish for daring to raise that there are conflicts of interest issues, and this includes and is not limited to making up false, overblown and inaccurate attacks against Plaintiffs, using their sensitive information against them and the various other conduct as plead herein.

77.    The Defendants acted for purposes including greed, profit, malice, enrichment, and/or to do favor or benefit to other Defendants per the facts as plead and as occurred.

78.    Mr. Miller refused any phone dialogues mainly because he did not like the Plaintiffs' raising of conflict of interest.  He then forbade phone conversation.  Accordingly, since that time, there has been very limited phone or in person dialogue between the Plaintiff firm and Lightbox or counsel for Lightbox.  The benefits of mature counsel communication had been absent as between the Plaintiff firm and Lightbox due to Mr. Miller's obsessive and vehement denial of his conflicts of interest and his resultant refusal to dialogue.  Numerous times Mr. Miller has referred to the conflicts of interest raised by the Plaintiffs as the product of hallucination and

derangement.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶84.

79.     The Moldovsky Firm moved to disqualify Mr. Miller as counsel for Lightbox and Ellner and in response and at various times Mr. Miller made threats to release confidential information and to some extent did, in violation of Pennsylvania Rules of Professional Conduct 1.6 and 1.9.  Judge Cote did not grant the motion, since the matter before her was limited to a charging lien.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶67.

80.     Judge Cote did not review the expert report of Mr. Stretton, and she did not preclude any future motions to disqualify Mr. Miller.  Judge Cote was not presented with the full facts and circumstances presented here, including so much that occurred after her decision, including but not limited to the conflicts arising with the crossclaims and this Pennsylvania suit and more.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶16, 164.

81.     The Moldovsky Firm, though it disagreed with Judge Cote's decision on its Motion to Disqualify Miller, did not appeal because ultimately, on a limited charging lien matter, Miller's involvement did not seem to impact the charging lien decision by Judge Cote, but it did make matters much more difficult, expensive and overburdened by false and wasteful issues.  However, Miller's involvement against this firm is inappropriate for all of the reasons stated herein.

82.     His conflicts of interest raised and compounded, and animosity stoked, Mr. Miller then filed a wild and unauthorized Interpleader  Complaint against Brem Moldovsky, L.L.C. (and SMZ).  Importantly Judge Cote totally rejected the false, made up, exaggerated, misconstrued, etc. allegations of Lightbox by Mr. Miller against the Plaintiff firm as not even worthy of a cause

21

hearing and as not even making a *prima facie* case of their positions. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶69.

83.     With all the vast submissions by Mr. Ellner and Mr. Miller, including an allegedly damning (though it is not) and illegally recorded taped phone call between Mr. Ellner and Mr. Moldovsky on Thanksgiving Day, there was no legitimate issue raised by them.  Though their causes of action had been dismissed as not appropriate and not belonging, all of their 244 paragraphs and 50 pages of generally wild, made up, purposefully distorted, falsely demeaning, etc. allegations and more than 25 pages of exhibits were considered and rejected by Judge Cote. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶71.

84.     Judge Cote Ordered all parties to submit filings in support of (or opposition to) statutory charging liens in the Federal matter, upon which she Ordered that Brem Moldovsky, L.L.C. was entitled to a charging lien of $45,948. 00.  Judge Cote further found that this firm succeeded on behalf of Lightbox against Third Home on all that was possible, the firm's rates were reasonable, and that this firm comported itself appropriately.  See, Opinion and Order, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at Ex. "K".

### MR. MILLER ACTIONS UNDERTAKEN TO DELAY, FRUSTRATE, AND HARASS IN FURTHERANCE OF CONFLICT, BREACHES OF DUTIES, ABUSE OF CLIENT/FORMER CLIENT, AND LACK OF CANDOR TO THE COURT AND THE PARTIES

85.     Mr. Miller is now actively engaged in painting an intentionally distorted and inaccurate caricature of his former clients and disparaging his clients with wild allegations the likes of which the Plaintiffs have never been subjected to, involved in, or personally seen.

86.     Mr. Miller has engaged in behavior that is unprofessional, improper, unethical, and wrongful, acting in an unlawful manner that is lacking normal, industry standard, professional and appropriate standards, protocols, methods, reviews, controls and direction and thereby and by the actions herein complained acted in negligence, gross negligence, recklessness, negligent practices, policies and procedures.

87.     The Defendants violated the standards of care and the duties of loyalty, diligence and communication based on the conduct alleged hereto.

88.     Mr. Miller has violated the Pennsylvania Rules of Professional Conduct, including but not limited to:

a.   Rule 1.6 - an attorney cannot use client information without client/former client permission and against the client/former client;

b.   Rule 1.7 - an attorney cannot proceed against a current client on behalf of another client;

c.   Rule 1.8 - a lawyer shall not represent a client if the representation involves a concurrent conflict of interest, including a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client;

d.   Rule 1.9 - an attorney cannot litigate against a client/former client on claims substantially similar to (about which the attorney has substantially related information from the prior representation on) claims for which the attorney previously represented the client/former client;

e.   Rule 3.2 – an attorney cannot frustrate a client's right to expedient litigation;

      f.  Rule 3.3 (a) – an attorney shall not make a false or misleading statement of material fact to a tribunal; and

      g.  Rule 3.7 an attorney cannot be a witness as to a former client.

89.    The Plaintiffs have continued to raise Mr. Miller's conflicts of interest and sharp practices, and Mr. Miller has made good on his threats to make things hard on the Plaintiffs by taking advantage of his clients' anger and misdirection to engage in a non-stop, over-inflated, self-righteous, baseless, bitter, etc. assault on the Plaintiffs by litigation, threats, violations of the Moldovskys' rights, psychological attacks, and more. <u>See</u> e.g., Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶64.

90.    Mr. Miller has continually affirmed (falsely) to the Court that he has no knowledge as to the level of wealth and finances and the interplay of these with the Moldovsky Firm's practices, abilities, charging and collecting fees, facts that he would have learned in the prior matters.  As described, even a cursory read of the Amended Complaint  in the prior matter, which Mr. Miller commented on and verified, would prove that statement false.  <u>See</u>, Plaintiffs' Response to Mr. Miller's Answer to Plaintiff's Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #27 at ¶20.

91.    Mr. Miller fabricated that the Plaintiffs said negative things about Mr. Ellner in the transcribed phone call(s), when really this firm was just explaining the rational for needing to withdraw, including wrongful treatment experienced and observed. When pushed for specific examples, Mr. Miller could not provide them. At least in part based on his own history of wrongful behavior, even as reflected in this motion's allegations and that can be provided *in camera* so to avoid embarrassment, Mr. Miller held it against and turned on the Plaintiffs that the Plaintiffs were not willing to ignore Mr. Ellner's wrongful treatment of them and others.

92.     Mr. Miller has been representing Lightbox in administrative proceedings.

93.     Though examples are virtually boundless, Mr. Scarola's November 12, 2018 email captures at least some of the rancor, incorrigibility, obstreperousness, turning molehill into mountains - and thus time to be billed to the client – to the extent this has been, is or will be done - also exponentially growing – manner and spirit Mr. Miller has engaged in here: "Mr. Miller, as some of you recently threatening correspondence made clear, this case is taking an inordinate amount of time to litigate.  One of the reasons, at least in our view, is that you have an endless appetite for circular discussion, while at the same time engaging in that discussion in a way that is, again in our view, disingenuous." There are others as well.  See, Plaintiffs' Response to  Mr. Miller's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #27 at ¶88.

94.     Mr. Miller is purposely difficult, engages in sharp practice, is not being straightforward in the litigation and puts himself and his interests both at the center of the case and of primary concern to pursue, above those of his clients, current and past. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶90.

95.     Further examples of Mr. Miller's venomous conduct toward the Plaintiffs include in his disputing his own clients claims and the need to redact confidential information, accusing the Plaintiff law firm's paralegal of unauthorized practice of law before the Court simply because Plaintiffs dictated (and reviewed) a correspondence with paralegal support while they were away from the office (which was disclosed, and the dictation was made clear). See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶94.

96.     Another example of Mr. Miller sharp, untoward and uncivil conduct is his recently filed Praecipe to Dismiss the Plaintiffs' Motion to Disqualify him as Counsel because the

Memorandum was filed timely, but procedurally rejected and subsequently, within an hour or so of business hours, accepted by the Prothonotary the next business day.  See, Praecipe, ECF Doc. #25.

97.     Mr. Miller's malpractice, includes but is not limited to refusing to insist that Lightbox and Mr. Ellner hire non-conflicted Counsel against the Plaintiffs  and persisting in enacting in conflicted behavior as Lightbox and Mr. Ellner's advocate  well after they were all well aware that there was a serious conflict of interest, which had been raised by Plaintiffs. Apparently, the conflicts and difficulties caused to the Plaintiffs due to them were and continue to be utilized strategically against Plaintiffs.

98.     In anticipation of this litigation against Mr. Miller for malpractice and other claims, Brem Moldovsky has retained the expert services of Mr. Samuel Stretton, Esq. Mr. Stretton has practiced in the area of legal and judicial ethics for more than 35 years and worked for some time as the Assistant Disciplinary Counsel for the Supreme Court of Pennsylvania.  He has represented hundreds of attorneys and many judges in disciplinary matters.  He is a regular expert author of the Ethics Forum section of the Legal Intelligencer and has contributed many dozens of articles to the publication. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at fn9.

99.     In response to a cease and desist letter from Mr. Stretton, Mr. Miller faxed his small firm hundreds of pages, breaking Mr. Stretton's fax machine and tying up the fax line for hours and has engaged in disparaging Mr. Stretton's reputation and professionalism.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶81.

26

100.     Mr. Stretton's expert report, which, meets the Pennsylvania requirements for a Certificate of Merit for licensed professionals pursuant to PA RCP 1042.3, unequivocally states that Mr. Miller is in deep and multi-faceted conflicts of interest and he cannot ethically act as Counsel against the Moldovskys, especially related to attorney's fees as he is doing in this case. Miller's psychological and demeaning attacks on the Plaintiffs for raising legitimate conflict of interest concern are deeply troubling, unethical and sufficient basis for disqualification.  See, Report, Exhibit "A" hereto.

## REPRESENTATION IN SUBSTANTIALLY RELATED MATTERS

101.     During the time the Plaintiffs represented Lightbox, Mr. Miler occasionally consulted regarding the matter, and once he was counsel to Lightbox in the State matter (a fee dispute), he worked in conjunction with the Plaintiffs to coordinate defenses on behalf of Lightbox in both matters.

102.     Plaintiffs provided input into fee dispute issues between Lightbox and their former Counsel to Mr. Miller.

103.     Mr. Miller was aware of the fee issues between Plaintiffs and Lightbox leading up to the Plaintiffs withdrawing as counsel and consulted and advised Plaintiffs related to Lightbox.

104.     Additionally, the matters in which Mr. Miller acted as co-counsel with the Moldovsky Firm in 2015-2016 are substantially related to many of the same prime issues in the current fee dispute with Lightbox and Mr. Ellner, and to this Third Amended Complaint.  Aside from both involving the Plaintiffs primarily, this matter involves the same types of claims, damages and relief requested as in the prior case for which Mr. Miller represented the Moldovskys working with attorney client privileged and confidential knowledge of the Moldovsky firm.

Particularly considering the nature of these same claims in both cases – breach of contract and misrepresentation involving the Moldovsky side suffering losses and damages of loss of the Moldovskys' attorney and legal professional time, the law firm's legal and professional time, and seeking compensation based on its value – Lightbox's side will be and has been severely and unfairly advantaged by their counsel knowing just how these same claims, allegations, damages, relief requested, discovery work and planning, etc. were plead, developed, planned, etc. and their evidentiary basis, proofs, etc. along with information of likely attacks by the other side and responses and planning for such, how to deal with the issues through intricate and detailed contractual litigation discovery, forensic and economic expert and such considerations and so much more. The Plaintiffs can explain further *in camera*. However, issues generally include Brem Moldovsky and, crucially, the Moldovsky Firm's ability and desire to litigate and finance litigation of this nature.  Herein lies the essence of the confidential information the Plaintiffs believe is at risk of further exposure or abuse against the Moldovsky Firm.

105.    The comparison between the Moldovsky Firm's claims, damages, relief requests, etc. between this current litigation and the prior Pennsylvania matter for which Mr. Miller was Counsel to the Moldovskys and co-Counsel to the Moldovsky Firm is clear.  Mr. Miller has represented the Moldovskys on and now is opposing the Moldovsky Firm on claims for waste of attorney time and resources and request for damages in the amount of the value of such professional time:

| Excerpts from Pennsylvania Complaint (Miller Answer, ECF Doc. #18 at Ex. "15") | Excerpts from Crossclaims in SMZ Case (Plaintiff's Response to Mr. Miller's Answer to Plaintiff's Motion to Disqualify, ECF Doc. #27 at Ex. "H") |
|---|---|
| 11. Plaintiff and his family trusted and believed [Defendant] when they were told and led to believe that [Defendant] had particular experience…<br><br>56. [Defendant] would lure in… [based] on various misrepresentations. | 103.  The Agreement and Amended Agreement, in clause 10a, respectively, also include the following clauses, which, as described herein, were also breached by the Crossclaim Defendants: You agree to be totally truthful with this office and to give over to this office |

28

| | |
|---|---|
| 76. The issues [b]egan to require and draw a great deal of work day time and attention by Plaintiff and his wife, an attorney and office manager, bookkeeper, and legal secretary… | all relevant information and documents at all related to these matters; any failure in this regard will mean that you will have to pay legal fees at normal hourly rates for any time wasted due to such failure. |
| 77. Plaintiff was [d]amaged in losing much time which otherwise could have been used profitably… | 104. Lightbox and Mr. Ellner were not truthful as described herein and are thus responsible to pay for this firm's time spent based on their misrepresentations. |
| 151. Plaintiff [l]ost in excess of 100-500 hours of Plaintiff's and his wife's time… | 109. [e]xpended many hours reviewing the case and litigation that had occurred to that point, and engaged in almost constant email and telephone correspondence with Mr. Ellner, which went on throughout the case with, at times, greater and lesser frequency… |
| 152. Plaintiff [l]ost in excess of $100,000 in income due to the lost time, as this time is generally billed (in the $100-$300 per hour range) and profitable to Plaintiff in his law business… | 119. [v]olume of work and time expended was enhanced due to it being discovered that… had been severely misrepresented… |
| 154. Plaintiff [m]iss[ed] work and investing time into work. | 131. [a]dvised the client of approaches involving less time and work and the clients insisted upon approaches involving more time and work… |
| 155. Plaintiff [i]nvested much time and lost much time, in excess of hundreds of hours | 155. [w]orked on the behalf of, at the direction and behest of and with regular input by Lightbox and Mr. Ellner that was often aggressive, [a]nd often included back and forth and mind changing. |
| | 156. Mr. Ellner and Lightbox's demands were so great that it was often difficult to take in new matters or engage in other business and business opportunities. |
| | 157. [a] great deal of time was spent on additional necessary but unanticipated work because of the misrepresentations… |
| | 206.[m]isrepresentations worked in that the Moldovsky Firm entered into the Agreement in a reduced fee and partial contingency arrangement… |
| | 207. As a result of misrepresentations of the crossclaim Defendants, the Moldovsky Firm has been damaged… |

## CONFLICT WITH CURRENT CLIENT

106.    Lightbox will be much benefited by independent counsel free of conflict presented by working in collaboration with Mr. Miller. Mr. Miller has been busy entangling his clients in active, ongoing and expensive litigation that has already become overburdened due to problems associated and resulting from Mr. Miller's conflicts.

29

107.    Mr. Miller was attorney to the Plaintiffs specifically with regard to the Pennsylvania litigations mentioned but also generally until Mr. Miller turned on this firm and attacked it on behalf of Lightbox. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶54 and others.

108.    The Plaintiffs were still within an attorney client and attorney colleague relationship with Mr. Miller over 2016-2017 and into 2018. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶ 34-35.

109.    The Plaintiff's trusted and relied on Mr. Miller, as a Counsel, colleague and friend (who attended holiday meals and other events at the Plaintiffs' home and acted as counsel on sensitive, family involved and impacting matters), and trusted that Mr. Miller would act in the best interest of the Plaintiffs and safeguard their confidential information.

110.    Mr. Miller essentially dropped the Moldovskys and the Moldovsky Firm as clients in violation of the "Hot Potato" doctrine to represent Lightbox against them, which is prohibited. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶121-128.

111.    Mr. Miller has now revealed certain of Plaintiffs' confidential information that Lightbox would not otherwise know but not for Mr. Miller's prior representation of the Plaintiffs and current representation against the Plaintiffs on behalf of Lightbox, which Lightbox admits. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶3,89; see also, ECF Doc. #59 at Suggested Answer "B".

112.    Mr. Miller has revealed, shared with, used for the benefit of and/or such similar conduct with Plaintiffs' confidential, secret, private, etc. information for the benefit of the other Defendants to various extents; to reviewed more thoroughly through the discovery process.  One

indication is at Lightbox's Brief in Reply to the Plaintiff's Motion for a Sealing Order, ECF. Doc. # 59 at Question "B".

113.    Lightbox was made aware of the conflicts of interests and with Mr. Miller's guidance has persisted in utilizing the services of Mr. Miller and not seeking unconflicted Counsel, and in pushing Mr. Miller to further breach his ethical duties. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶6,7.

114.    The disqualification of Miller against the Plaintiffs – to the extent of this Court's abilities - would be to the benefit of all parties, and the Court, as evidenced by the various problems, overblown issues and such caused to the matters he has been involved in under conflict of interest.  See, e.g., Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶6, 63 .

## DAMAGES, LOSSES, AND IMPACTS TO THE PLAINTIFFS, AND RELIEF REQUESTED

115.    The Defendant Jonathan Miller utterly failed in his legal, ethical, professional and contractual duty to his clients, and deliberately and knowingly indifferent to conflicts being raised, participated in and drove (and continues with) hostile litigation against the Plaintiffs.

116.    The Defendant Jonathan Miller utilized and continues to utilize his unique knowledge of the Plaintiffs' financial abilities, law firm functions, and abilities and desires and more to litigate against an aggressive adversary against the Plaintiffs for the benefit of Lightbox.

117.    Mr. Miller, as conflicted Counsel purposefully pursued excessively aggressive and frustrating litigation against the Plaintiffs, acting as the perfect spearhead with a unique ability to harm the Plaintiffs due to his knowledge of the Plaintiffs' confidential information.

118.    Mr. Miller has dominated much of the time and bandwidth of the firm ,and the Plaintiffs' minds and time, and has caused stress and distress which should be considered as it

relates to relevant issues including but not limited to malpractice, conflicts of interest, preliminary injunction and the various issues as plead herein.

119.    Mr. Miller has instilled a fear of what information Defendant Mr. Miller has and is using and giving over to his co-Defendants to use against the Plaintiffs, particularly in light of Mr. Miller's continued lies about not knowing what he does know.

120.    The Defendants have interfered with life and social events, business development and other life events much of which will not be recoverable economically.

121.    Mr. Miller fully and completely failed in their explicit and implied responsibility to comply with the Pa. Rules of Professional Conduct.

122.    Due to the various misconduct, attacks, attempts to waste time, conflicts of interest, trying to mitigate against the Mr. Miller's conflicts, misconduct and attacks, the Plaintiffs have incurred in well in excess of 200-1,000 hours of billable attorney hours, 200-1,000 paralegal hours, and in excess of 100 administrative hours, as well as hundreds of additional professional hours, all of which equals well in excess of $100,000 in value as a reasonably foreseeable result of the Defendants' breaches and wrongful actions as plead herein.

123.    Much of Plaintiffs' lost time, but all of Plaintiffs' stress and distress will not be able to be adequately compensated economically for the wrongs done.

124.    Plaintiffs lost in excess of $100,000 in income due to the lost time, as this time is generally billed (in the $100-$400 per hour range) and profitable to Plaintiffs the law business.

125.    Plaintiffs have been damaged in excess of $100,000.00, and is entitled by law and equity to all damages, including incidental, consequential, punitive, and treble damages, statutory damages pursuant to the Pennsylvania Wiretap Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, attorney's fees and costs, and other related damages.

126.    Damages here were reasonably foreseeable to Defendants, particularly as they knew frivolous, aggressive, and often unnecessary litigation and quibbling would lead to the Plaintiffs having to choose prioritizing fighting against the Defendants over other work and investing time into work and their businesses.

127.    Plaintiffs invested much time and lost much time, in excess of hundreds of hours, due to the Defendants' various breaches, as stated herein.

128.    The Plaintiffs have suffered the negative impact and damage to their reputation of purposeful, willfully malicious, intentional and purposeful and/or recklessly negligent slanderous allegations and defamation of their character beyond what monetary damages can repair.

129.    Plaintiffs have suffered irreparable public humiliation due to Mr. Miller's conduct, in particular that confidential and sensitive information have been exposed to the public due to Mr. Miller's wrongful actions as stated herein.

130.    The Plaintiffs have been publicly stripped of their economic ambiguity and anonymity, and Lightbox has been fully informed of the sensitive information Mr. Miller possesses.

131.    Mr. Miller had been hired by Brem Moldovsky, L.L.C. to provide counsel, representation, assistance, advice, etc. in its handling and representation of Brem Moldovsky and Melanie Moldovsky as well as its own interests regarding the prior Pennsylvania litigations.

132.    These services were billed and paid to the tune of thousands of dollars, approximately in excess of $3,000.00.

133.    Due to all of the conflicts of interest, wrongful use and revealing of client confidential, sensitive, private, etc. information, attorney misconduct, and all such as plead herein

33

against Mr. Miller, the funds paid to him for services should and must be disgorged, forfeited, paid back, returned, compensated and recompensated to Plaintiffs with interest.

134.    Plaintiffs' losses are well in excess of $100,000 and include lost profits, income, revenue, time, compensation, clients, cases, billing, fees, funds, business and more.

135.    Plaintiffs have been damaged by Mr. Miller spreading, distributing, publishing, writing and stating information (including secret, private, sensitive, confidential, business, family, child-involved and more) learned and received by Mr. Miller in the course of his representation of Plaintiffs.

136.    Mr. Miller did this by purposefully and maliciously spreading, distributing, publishing, writing and stating information without justification in correspondence and in Court filings and doing so without making effort (or, sufficient effort) to redact, non-publicize, protect or secure such information.

137.    Mr. Miller knows better than this and often raises that even if attorneys believe they have a right to use client information in an allowed purpose in a dispute with a client, they must do so in a manner that protects, redacts, etc. the client information as much as possible, and, yet, still, Mr. Miller purposefully does what is wrong and does not practice what he preaches.  This is particularly reprehensible, outrageous and along with various of the other conduct here sufficient to shock the sensibilities of a reasonable person so that punitive damages are warranted.

138.    Due to Mr. Miller's conflicts of interest, wrongfully litigating against a client/former client on behalf of another client and the rest as stated here Plaintiffs have incurred, expended and lost time, costs, fees and efforts in attempting to stop and mitigate against Mr. Miller's wrongfully wielding Plaintiffs' own counsel with the benefit of Plaintiffs' information, sensitivities, strategies, confidences, etc. against them.

139.    Costs, expenses, fees, time, expert work and fees, professional work and representation and more have been incurred in efforts to disqualify Mr. Miller in Federal and State Courts in NY and PA that would not have to be have been expended were it not for and but for the wrongful acts of the Defendants in causing the conflicts, in taking advantage of the conflicts, in driving the conflicts deeper and deeper, in resisting efforts to disqualify, in not stopping the conflicts, in failing to make efforts to end the conflict problems and in the conduct complained of here.

140.    All of the Defendants knew Mr. Miller was an attorney to Plaintiffs and knew and learned Plaintiffs were deeply concerned about conflicts of interest issues and confidential information possessed by the Mr. Miller that would be used for and leaked over to the other Defendants for them to be able to take advantage of these issues.

141.    Mr. Miller purposefully acted to drive up costs, concerns and difficulties for Plaintiffs.

142.    Mr. Miller's wrongful actions as complained of herein have made the litigation process with and against Mr. Ellner and his companies here much more difficult, expensive and wasteful than they otherwise would have been.

143.    Plaintiffs have had to and will have to pay and incur expenses, expert time and fees and professional fees and time in these litigations that would not have had to happen were it not for Mr. Miller's wrongful conduct as described herein.

144.    By the wrongful actions described herein, Mr. Miller has wrongfully made the process of Plaintiffs collecting on the fees and costs which Ellner and Lightbox Ventures, LLC owe much more difficult, costly, time-consuming and problematic than it otherwise would be and

Defendants are responsible under law for the damages, losses and expenses incurred that would not have been but for their wrongful conduct complained of herein.

145.    The damages include damage for lost reputation, lost time money trying to mitigate and counter it and more, as well as lost income, profits and the other losses as stated herein as relate to these issues.

## PLEADING IN THE ALTERNATIVE, JOINT AND SEVERABLE LIABILITY, AND OTHER PROVISIONS

146.    The totality of the Defendants' actual, anticipatory, apparent and implied breaches, negligence and failures and the resultant damages can be surmised from all permutations of the facts and elements plead at length herein and all facts and elements plead herein that are, by their nature, plead in the alternative.

147.    General principles of res judicata, issue preclusion and collateral estoppel are also incorporated to the extent that they apply to the instant Amended Complaint favor or either or both Plaintiffs.

148.    Based upon the facts alleged and/or incorporated herein, joint and several liability should be found against all Defendants on the counts set forth in the remainder of the Amended Complaint where all Defendants are included (in the count) and where the Court deems appropriate.

149.    Unless contradicted, and, as limited by these pleadings, causes of actions or the facts as Plaintiffs have and are presenting them to the Court, the actions of Defendants were done for, under the direction of, in coordination and plan with and/or for the benefit of each of the other Defendants, so that actions and statements plead and alleged about, by or as committed or performed by any of the Defendants are imputed upon, ratified by, assumed by and understood to have been performed by all of them.

36

150.    Various complained of conduct here, including but not limited to the malpractice, swearing to false affidavits of an important matters (that are extremely pertinent to this and the New York litigation), and various other complained actions and actions of Defendants constitute ethical breaches, professional breaches, breaches of civil law and breaches of criminal law, including but not limited to laws against wiretaps, perjury and others.  *Per se* civil liability which flows from liability for underlying statutory and/or criminal liability is hereby plead.

151.    The Plaintiffs are foreseeable plaintiffs so that Defendants were and should have been aware of their losses, suffering and damaged due to their conduct.

152.    The Plaintiffs were not aware of various activities until times later than when they occurred.  For instance, the wiretapped phone calls were not disclosed until several months later, and it is anticipated that there are other phone calls and other activities that will be uncovered during discovery and litigation.

153.    Many and/or all of the causes of action, as complained of herein, did not become causes of action as such (including with sufficient standing, damages and the necessary components and elements of such causes of action) until Mr. Miller assumed representation for Lightbox against the Plaintiffs

154.    All allegations herein that by their nature and/or as read with the rest of this pleading are in the alternative, are plead in the alternative.

## COUNT I: PERMANENT AND TEMPORARY INJUNCTION AGAINST DEFENDANT MILLER REGARDING ATTORNEY CONFLICTS AND CLIENT INFORMATION

155.    All of the paragraphs of the Third Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

156.    Mr. Miller has made clear that only a Court Order barring his representation against the Plaintiffs will act to stop him.

157.    Mr. Miller's continued representation against the Plaintiffs will continue to compound irreparable harm upon them.

158.    The irreparable harm includes that there is much damage and suffering, including for wasted time and thus income and money, as well as loss of and losses from their information used against them for which the Plaintiffs cannot and for some may not recover, partly due to some of the time being difficult or impossible to recover.  Some of the exact losses will be difficult to determine precisely to Court standards.  Though there was stress and distress, damages for same are not practically recoverable, and thus are not sought.

159.    The loss of secrecy and privacy with their sensitive information now out in the public with the resulting and related reputational damage is something for which there is likelihood of irreparable harm and inability to recover damages sufficient to repair the losses and harm.

160.    It is likely that the Plaintiffs will prevail in the malpractice claims against Mr. Miller.

WHEREFORE, Plaintiff requests judgment against Mr. Miller in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT II. PERMANENT AND TEMPORARY INJUNCTION AGAINST ALL DEFENDANTS REGARDING ILLEGAL WIRETAPS

161.    All of the paragraphs of the Third Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

162.    Plaintiffs seek a temporary and permanent injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any information of Plaintiffs learned by Mr. Miller in his representation of them as this will help to maintain the status quo, as this is not allowed and thus Plaintiffs will prevail on this claim, and there is not adequate remediation and compensation to be had, including due to difficulty in assessing and recording full damages for the irreparable resulting harm and losses.

163.    Plaintiffs seek a temporary and permanent injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law as plead herein as it is likely Plaintiffs will prevail on the merits, the extent of the harm and damages will be difficult to determine for the irreparable resulting harm and losses, and this will help maintain the status quo.

164.    So too, Plaintiffs seek that all such records, copies, transcriptions and such be ordered to be turned over to Plaintiffs.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $50,000.00, including compensatory, incidental, consequential and punitive damages, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction

barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT III: LEGAL MALPRACTICE, BREACH OF TRUST AND OF DUTIES OF LOYALTY, DILLIGENCE AND COMMUNICATIONS AGAINST JONATHAN MILLER

165.    All of the paragraphs of the Third Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

166.    Mr. Miller has breached his duty of trust and loyalty to his clients in violation of Pa R.P.C. Rule 1.6 (and others).

167.    Mr. Miller has knowingly and purposely exposed his clients, the Plaintiffs' personal, confidential, sensitive information to Lightbox and/or to be used to benefit Lightbox against Plaintiffs.

168.    Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state.  Plaintiffs are asserting a professional liability claim against this defendant.

169.    Plaintiffs are former clients of Mr. Miller.

170.    To recover for legal malpractice, plaintiffs must establish as is established here (1) Employment of attorney or other basis for duty; (2) Failure of attorney to exercise ordinary skill and knowledge; and (3) The attorney's action was the proximate cause of damage to the plaintiff. See Rizzo v. Haines, 555 A.2d 58, 65 (1989);see also, Schenkel v. Monheit, 405 A.2d 493, 494 (1979).

40

171.    For the prior litigations in this Court, Mr. Miller's Agreement to represent Brem Moldovsky is incorporated herein and attached hereto as Exhibit "B".  Mr. Miller represented Brem Moldovsky's wife and Brem Moldovsky L.L.C. implicitly.

172.    Absent an express contract, an implied attorney-client relationship will be found if the purported client sought advice or assistance from the attorney, the advice sought was within the attorney's competence, the attorney expressly or impliedly agreed to render such assistance, and it is reasonable for the putative client to believe the attorney was representing him.  See Atkinson v. Haug, 622 A.2d 983, 986 (Pa. Super. 1993).

173.    There was an express attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C.

174.    In the alternative, if the Court decides that there is not an express representation, there was an implied attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C. because Brem Moldovsky, L.L.C. sought Mr. Miller's legal advice and he agreed to render such assistance.

175.    The attorney and law firm Defendant, licensed professionals in the Commonwealth, engaged in legal malpractice that was the proximate cause of damage to Plaintiffs when they failed to exercise ordinary skill and knowledge by engaging in the following intentional, reckless, and negligent actions:

      a.    Failing to hold safe and keep confidential information known and learned in his representation of the Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.6;

      b.    Assuming representation of Lightbox knowing that Lightbox was making claims against the Plaintiffs despite having a clear conflict of interest with his ongoing attorney-client relationship in violation of Pa. Rules of Prof'l  Conduct R. 1.7

41

    c.    Representing Lightbox against Plaintiffs in a matter in which Lightbox is unfairly advantaged due to Mr. Miller's prior representation of the Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.8(b);

    d.    Representing Lightbox against in a matter in which Lightbox is materially adverse to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.9;

    e.    Making false statements and breaching his duty of candor to the tribunal in violation of Pa. Rules of Prof'l Conduct R. 3.3;

    f.    Breaching the duties of loyalty owed to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.7, 1.9;

    g.    Perpetrating fraud by knowingly filing false statements in support of Lightbox's and his own positions. (See Eisenberg v. Gagnon, 766 F.2d 770, 778-79 (3d Cir. 1985) (privity of contract is not required to hold an attorney responsible for his intentional torts such as fraud));

    h.    Failing to withdraw himself from representing Lightbox thereby requiring the Plaintiffs to move to disqualify him;

    i.    Failing to diligently communicate about start, end, the ongoing nature (or not) of representation, related to conflicts of interest and more, as stated herein.

    j.    Such other misconduct, misrepresentations, fraud, chicanery and such as is explicitly and/or implicitly complained of herein.

176.    The aforementioned failures to exercise ordinary skill and knowledge were independently and jointly the proximate causes of damage to Plaintiffs.

177.    Pursuant to Pa.R.C.P. 1042.1-1042.8, a certificate of merit will be filed within 60 days of the filing of this Amended Complaint.

WHEREFORE, Plaintiff requests judgment against Mr. Miller excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT IV: LEGAL MALPRACTICE, BREACH OF DUTY TO CURRENT CLIENTS AGAINST JONATHAN MILLER

178.     All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

179.     Mr. Miller has breached his duties to his clients in violation of Pa R.P.C. Rules 1.6, 1.7 and 1.8 (and others).

180.     Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state.  Plaintiffs are asserting a professional liability claim against this defendant.

181.     Mr. Miller has knowingly and purposely litigated against his clients, the Plaintiffs, on behalf of Lightbox.

182.     To recover for legal malpractice, plaintiffs must establish as is established here (1) Employment of attorney or other basis for duty; (2) Failure of attorney to exercise ordinary

43

skill and knowledge; and (3) The attorney's action was the proximate cause of damage to the plaintiff. See Rizzo v. Haines, 555 A.2d 58, 65 (1989);see also, Schenkel v. Monheit, 405 A.2d 493, 494 (1979).

183.    Though the attorney client relationship started earlier, Mr. Miller's Agreement to represent Brem Moldovsky is incorporated herein and attached hereto as Exhibit "B".  Mr. Miller represented Brem Moldovsky's wife and Brem Moldovsky L.L.C. implicitly.

184.    Absent an express contract, an implied attorney-client relationship will be found if the purported client sought advice or assistance from the attorney, the advice sought was within the attorney's competence, the attorney expressly or impliedly agreed to render such assistance, and it is reasonable for the putative client to believe the attorney was representing him.  See Atkinson v. Haug, 622 A.2d 983, 986 (Pa. Super. 1993).

185.    There was an express and implied ongoing, attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C.

186.    In the alternative, if the Court decides that there is not an express representation, there was an implied, ongoing, attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C. because Brem Moldovsky, L.L.C. sought Mr. Miller's legal advice and he agreed to render such assistance understanding that Plaintiffs were relying on such advice and the attorney client relationship as between them.

187.    The attorney and law firm Defendant, licensed professionals in the Commonwealth, engaged in legal malpractice that was the proximate cause of damage to Plaintiffs when they failed to exercise ordinary skill and knowledge by engaging in the following intentional, reckless, and negligent actions:

     a.  Failing to hold safe and keep confidential information known and learned in his

44

representation of the Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.6;

b.  Assuming representation of Lightbox knowing that Lightbox was making claims against the Plaintiffs despite having a clear conflict of interest with his ongoing attorney-client relationship in violation of Pa. Rules of Prof'l Conduct R. 1.7

c.  Representing Lightbox against in a matter in which Lightbox is materially adverse to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.9;

d.  Making false statements and breaching his duty of candor to the tribunal in violation of Pa. Rules of Prof'l Conduct R. 3.3;

e.  Breaching the duties of loyalty owed to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.7, 1.9;

f.  Perpetrating fraud by knowingly filing false statements in support of Lightbox's and his own positions. (See Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985) (privity of contract is not required to hold an attorney responsible for his intentional torts such as fraud));

g.  Failing to withdraw himself from representing Lightbox thereby requiring the Plaintiffs to move to disqualify him; and

h.  Such other misconduct, misrepresentations, fraud, chicanery and such as is explicitly and/or implicitly complained of herein.

188.  The aforementioned failures to exercise ordinary skill and knowledge were independently and jointly the proximate causes of damage to Plaintiffs.

189.  Pursuant to Pa.R.C.P. 1042.1-1042.8, a certificate of merit has been filed within 60 days of the filing of this Complaint.  See Warrant v. Folk, 886 A.2d 305 (Pa. Super. 2005)

(requiring a certificate of merit to be filed within 60 days of filing a Complaint alleging that a professional deviated from a required professional standard of care).

WHEREFORE, Plaintiff requests judgment against Mr. Miller in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT V: LEGAL MALPRACTICE, BREACH OF DUTY TO FORMER CLIENTS AGAINST JONATHAN MILLER

190.     All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

191.     Mr. Miller has breached his duty of trust and loyalty to his former clients, the Plaintiffs, in violation of Pa R.P.C. Rule 1.9 (and others).

192.     Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state.  Plaintiffs are asserting a professional liability claim against this defendant.

193.     To recover for legal malpractice, plaintiffs must establish as is established here (1) Employment of attorney or other basis for duty; (2) Failure of attorney to exercise ordinary

skill and knowledge; and (3) The attorney's action was the proximate cause of damage to the plaintiff. See Rizzo v. Haines, 555 A.2d 58, 65 (1989); see also, Schenkel v. Monheit, 405 A.2d 493, 494 (1979).

194.    Mr. Miller's Agreement to represent Brem Moldovsky is incorporated herein and attached hereto as Exhibit "B".   Mr. Miller represented Brem Moldovsky's wife and Brem Moldovsky L.L.C. implicitly.

195.    Absent an express contract, an implied attorney-client relationship will be found if the purported client sought advice or assistance from the attorney, the advice sought was within the attorney's competence, the attorney expressly or impliedly agreed to render such assistance, and it is reasonable for the putative client to believe the attorney was representing him.   See, Atkinson v. Haug, 622 A.2d 983, 986 (Pa. Super. 1993).

196.    There was an express attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C.

197.    In the alternative, if the Court decides that there is not an express representation, there was an implied attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C. because Brem Moldovsky, L.L.C. sought Mr. Miller's legal advice and he agreed to render such assistance.

198.    The attorney and law firm Defendant, licensed professionals in the Commonwealth, engaged in legal malpractice that was the proximate cause of damage to Plaintiffs when they failed to exercise ordinary skill and knowledge by engaging in the following intentional, reckless, and negligent actions:

    a.   Failing to hold safe and keep confidential information known and learned in his representation of the Plaintiffs in violation of Pa. Rules of Prof'l  Conduct R. 1.6;

47

b.  Representing Lightbox against Plaintiffs in a matter in which Lightbox is unfairly advantaged due to Mr. Miller's prior representation of the Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.8(b);

c.  Representing Lightbox against in a matter in which Lightbox is materially adverse to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.9;

d.  Making false statements and breaching his duty of candor to the tribunal in violation of Pa. Rules of Prof'l Conduct R. 3.3;

e.  Breaching the duties of loyalty owed to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.7, 1.9;

f.  Perpetrating fraud by knowingly filing false statements in support of Lightbox's and his own positions. (See Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985) (privity of contract is not required to hold an attorney responsible for his intentional torts such as fraud));

g.  Failing to withdraw himself from representing Lightbox thereby requiring the Plaintiffs to move to disqualify him; and

h.  Such other misconduct, misrepresentations, fraud, chicanery and such as is explicitly and/or implicitly complained of herein.

199.  The aforementioned failures to exercise ordinary skill and knowledge were independently and jointly the proximate causes of damage to Plaintiffs.

200.  Pursuant to Pa.R.C.P. 1042.1-1042.8, a certificate of merit will be filed within 60 days of the filing of this Amended Complaint.  See Warrant v. Folk, 886 A.2d 305 (Pa. Super. 2005) (requiring a certificate of merit to be filed within 60 days of filing an Amended Complaint alleging that a professional deviated from a required professional standard of care).

WHEREFORE, Plaintiff requests judgment against Mr. Miller in excess of $50,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT VI: LEGAL MALPRACTICE, BREACH OF CANDOR TO TRIBUNAL AGAINST JONATHAN MILLER

201.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

202.    Mr. Miller has breached his duty of candor to the tribunal pursuant to Pa. R.P.C. Rule 3.3.

203.    Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state.  Plaintiffs are asserting a professional liability claim against this defendant.

204.    Mr. Miller has purposely, wantonly, continuously, and recklessly made misstatements to the tribunal regarding information learned in his representation of the Plaintiffs, and other material facts.

205.    Plaintiffs are former clients of Mr. Miller.

49

206.     To recover for legal malpractice, plaintiffs must establish as is established here (1) Employment of attorney or other basis for duty; (2) Failure of attorney to exercise ordinary skill and knowledge; and (3) The attorney's action was the proximate cause of damage to the plaintiff. See Rizzo v. Haines, 555 A.2d 58, 65 (1989); Schenkel v. Monheit, 405 A.2d 493, 494 (1979).

207.     Mr. Miller's Agreement to represent Brem Moldovsky is incorporated herein and attached hereto as Exhibit "B".  Mr. Miller represented Brem Moldovsky's wife and Brem Moldovsky L.L.C. implicitly.

208.     Absent an express contract, an implied attorney-client relationship will be found if the purported client sought advice or assistance from the attorney, the advice sought was within the attorney's competence, the attorney expressly or impliedly agreed to render such assistance, and it is reasonable for the putative client to believe the attorney was representing him.  See Atkinson v. Haug, 622 A.2d 983, 986 (Pa. Super. 1993).

209.     There was an express attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C.

210.     In the alternative, if the Court decides that there is not an express representation, there was an implied attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C. because Brem Moldovsky, L.L.C. sought Mr. Miller's legal advice and he agreed to render such assistance.

211.     The attorney and law firm Defendant, licensed professionals in the Commonwealth, engaged in legal malpractice that was the proximate cause of damage to Plaintiffs when they failed to exercise ordinary skill and knowledge by engaging in intentional, reckless, and negligent actions.

212.    The aforementioned failures to exercise ordinary skill and knowledge were independently and jointly the proximate causes of damage to Plaintiffs.

213.    Pursuant to Pa.R.C.P. 1042.1-1042.8, a certificate of merit will be filed within 60 days of the filing of this Amended Complaint.  See Warrant v. Folk, 886 A.2d 305 (Pa. Super. 2005) (requiring a certificate of merit to be filed within 60 days of filing an Amended Complaint alleging that a professional deviated from a required professional standard of care).

WHEREFORE, Plaintiff requests judgment against Mr. Miller in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT VII :   LEGAL MALPRACTICE, BREACH OF FIDUCIARY DUTIES AGAINST JONATHAN MILLER

214.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

215.    Jonathan Miller breached the fiduciary duty of loyalty that he owed the Plaintiffs as a result of their attorney-client relationship by the various failures alleged herein including

51

failing to ensure that he and his law firm remained free of conflicts of interest in representing Plaintiffs.

216.    Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state.  Plaintiffs are asserting a professional liability claim against this defendant.

217.    In representing Lightbox, Mr. Miller failed to apply a duty of loyalty to Plaintiffs.

218.    Mr. Miller further breached his fiduciary duty to Plaintiffs by purposefully causing problems such as undertaking the representation of Lightbox and providing inaccurate and outright untruthful information to the tribunal, along with the ongoing harassment against Plaintiffs.

219.    Despite the conflict of interest of representing a party adverse to Plaintiffs' interest, upon information and belief, Mr. Miller neither advised Lightbox to seek unconflicted counsel, nor sought to withdraw from the representation.

220.    Pursuant to the Pa R.P.C. Rule 1.7(b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if: 1) the representation of one client will be directly adverse to another client; or 2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

221.    As a direct and proximate cause of Mr. Miller's breach of fiduciary duty, Plaintiffs were forced to file a lawsuit challenging Mr. Miller's representation of Lightbox against them, costing them substantial dollars in litigation costs, attorney time, and law firm legal time.

222.    For the foregoing reasons, injustice can only be avoided by finding Mr. Miller liable to Plaintiffs for his breach of fiduciary duty.

52

WHEREFORE, Plaintiff requests judgment against Mr. Miller in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT VIII: BREACH OF CONTRACT FOR PROFESSIONAL LEGAL SERVICES AGAINST JONATHAN MILLER

223.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

224.    Exhibit "B" attached hereto and as described above includes the contract for legal services and consultation which have been breached.  Jonathan Miller agreed to and did act as counsel and as attorney to Brem Moldovsky, as well as for his wife and the Brem Moldovsky, L.L.C. "implicitly".  Jonathan Miller also represented Plaintiffs and/or their interests for some time after the conclusion of the prior litigations.

225.    Jonathan Miller and his firm entered into and later breached an agreement with Brem Moldovsky.  Implicit in Mr. Millers contractual undertaking to represent Brem Moldovsky was that Jonathan Miller and his law firm would exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession in similar circumstances.

226.     A plaintiff successfully establishes a breach of contract claim against an attorney by demonstrating that the attorney has breached his or her contractual duty to provide legal service in a manner consistent with the profession at large.  See  Gorski v. Smith, 2002 Pa. Super. 334, 812 A.2d 683 (Pa. Super. 2002).

227.     Pursuant to Pa. Rules of Prof'l Conduct R. 1.7, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest that is "directly adverse" to another client.  A lawyer must obtain client consent to conflicting representation after full disclosure and consultation concerning the potential or actual conflict of interest.

228.     Despite the conflict of interest of representing a party adverse to Plaintiffs' interests, Jonathan Miller actively sought out and became Lightbox's attorney against the Plaintiffs.  Mr. Miller neither advised Plaintiffs of these conflicts of interest (indeed he denies them) nor presented Plaintiffs with an opportunity to consent to waiving such conflict (though they do not). Furthermore, Mr. Miller never sought to withdraw himself from the representation, though he was requested to in the Spring of 2018 and thereafter.

229.     Jonathan Miller and his law firm breached their implied contractual obligation to Plaintiffs by many of the actions complained of herein and by undertaking the "directly adverse" representation of Lightbox against the Plaintiffs in representing Lightbox related to fee disputes that are directly adverse to Plaintiffs' interests.

230.     If Jonathan Miller or his law firm had provided legal service in a manner consistent with the profession at large and observed basic rules of professional conduct on conflicts of interest, Plaintiffs would not have been subjected to the release and revealing of sensitive confidential information, and would not have had to file an action against Mr. Miller.

231.    Accordingly, Jonathan Miller and his law firm breached their contractual duty to provide legal service in a manner consistent with the profession at large.  As a direct and proximate cause of their breach of contract, Plaintiffs incurred in excess of $100,000 in legal fees, lost legal time, and costs and expenses.

WHEREFORE, Plaintiff requests judgment against Mr. Miller in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT IX: BREACH OF IMPLIED DUTIES OF GOOD FAITH AND FAIR DEALING AGAINST JONATHAN MILLER

232.    All of the paragraphs of the Third Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

233.    Mr. Miller has breached his implied duties of good faith and fair dealing to his clients, the Plaintiffs as stated and described herein.

234.    Mr. Miller has knowingly, purposely and in bad faith breached his duties of good faith and fair dealing to his clients.

235.    Mr. Miller has knowingly, purposely and in bad faith exposed his clients, the Plaintiffs' personal, confidential, sensitive information to Lightbox and/or to be used to benefit Lightbox against Plaintiffs.

236.    Mr. Miller has knowingly, purposely and in bad faith assumed representation adverse to his clients, the Plaintiffs, in favor of representing Lightbox against Plaintiffs.

WHEREFORE, Plaintiff requests judgment against Mr. Miller excess of $50,000.00, including compensatory, incidental, consequential damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT X: VIOLATION OF PA WIRETAP ACT AGAINST ALL DEFENDANTS

237.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

238.    As described herein, Defendants committed violations of the Pennsylvania Wiretap Act, 18 Pa. C.S.A. § 5703 (the "Wiretap Act") in surreptitiously and non-consensually recording telephone conversations, transcribing telephone conversations, and distributed the recordings and/or transcriptions to others, the Court, and the public by filing certain transcripts of record.

239.    Lightbox violated § 5703 (1)(2)and (3) of the Wiretap Act by (1) intentionally intercepting and recording at least two phone calls with the Plaintiffs, and then transcribing them; (2) intentionally and knowingly disclosing the recordings and/or the transcriptions to at least one other person (Mr. Miller), and most likely others like in the case of the transcribed recording submitted to the Federal District and Circuit Courts; and (3) intentionally using the contents of the communication knowing that the information therein was obtained through interception.

240.    Mr. Miller violated § 5703 (2)and (3) of the Wiretap Act by (2) intentionally and knowingly disclosing the recordings and/or the transcriptions to at least one other person (at the very least, the Plaintiffs in the New York matter) , and most likely others; and (3) intentionally using the contents of the communication knowing that the information therein was obtained through interception.

241.    Upon information and belief (though it has not yet been confirmed by Discovery) Defendants violated § 5721.1 by disclosing the contents of at least one intercepted communication to administrative boards in this Commonwealth.

242.    According to 18 Pa. C.S.A. § 5725, any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person: (1) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher. (2) Punitive damages. (3) A reasonable attorney's fee and other litigation costs reasonably incurred.

243.    Furthermore, Defendants have leveraged the intercepted recordings by threatening to distribute them further, and by insinuating about the contents of the recordings in violation of § 5703.

244.    As a direct and proximate cause of the aforementioned violations of the Wiretap Act, the Plaintiffs incurred  stress, disparagement, damage to their reputation and other actual losses as plead herein.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller  from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

## COUNT XI:   VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW AGAINST JONATHAN MILLER

245.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

246.    Through much of the complained of conduct, and by certain conduct in particular, Mr. Miller has violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law in general, and in Definitions, "Unfair methods of competition" and "Unfair or deceptive acts or

practices," and <u>Unlawful acts or practices; exclusions</u>, S 201-1 <u>et seq</u>. and 201-2(4) (vii),(viii), (ix), and S 201-3 and other pertinent sections.

247.   Mr. Miller purposefully mislead Plaintiffs to believe that they were represented by him as Counsel, and that he would reasonably comply with the laws and expected ethical codes applicable to counsel in the Commonwealth.

248.   Mr. Miller breached his duty to the Plaintiffs by violating the Rules of Professionally Conduct by purposely, willfully, and knowingly positioning himself in a conflict with current and former clients.

249.   Mr. Miller acted deceptively and with deceit when he began to aggressively attack the Moldovsky Firm once his conflicts of interest were raised, including by making threats to makes things "hard" on the Plaintiffs and then proceeding to do so by lying to the Court, lying about not having knowledge of Plaintiffs' confidential information, lying about the benefit gained by Lightbox from his knowledge of the Plaintiffs' sensitive confidential information, and purposely attacking the character of the Moldovsky Firm, Brem Moldovsky, and even the firm's paralegal.

250.   The Plaintiffs have suffered tremendous losses and damages due to the complained of conduct, as plead herein.

251.   Mr. Miller held himself out as a reputable and trustworthy professional, but he was involved with purposeful conflict, disparagement, misstatements to the Court, perjury and the various other problematic behavior complained of here.

252.   Mr. Miller neglected his fiduciary, loyalty and other obligations to the Plaintiffs as their lawyer.  He failed in his loyalty to the Plaintiffs to refrain from working with a party in conflict of interest.

253.    The relationships here between the service providers and the Plaintiffs falls under and fits within the protections of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

WHEREFORE, Plaintiff requests judgment against Mr. Miller in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, treble damages, and any other relief the Court deems just and proper.

## COUNT XII:  VIOLATION OF THE CONSUMER FRAUD ACT AGAINST JONATHAN MILLER

254.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

255.    Treble damages, attorneys fees, compensation and all appropriate remedies are sought by the Plaintiffs under the New Jersey Consumer Fraud Act (N.J. Stat., Title 56, Chapter 8) due to Defendants' violations of same

256.    The act, in part, states: "the act, use or employment by any person of any unconscionable commercial practice, deception or fraud, false pretense, false promise or misrepresentation, or the knowing concealment, suppression or omission of any material fact with

the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate…is declared to be an unlawful practice…," and this occurred here.

257.    Mr. Miller is an attorney practicing in New Jersey who was active in New Jersey at all relevant times and is a resident of New Jersey.

258.    Mr. Miller purposefully mislead Plaintiffs to believe that they were represented by him as Counsel, and that he would reasonably comply with the laws and expected ethical codes applicable to counsel in the Commonwealth.

259.    Mr. Miller breached his duty to the Plaintiffs by violating the Rules of Professionally Conduct by purposely, willfully, and knowingly positioning himself in a conflict with current and former clients.

260.    Mr. Miller acted deceptively and with deceit when he began to aggressively attack the Moldovsky Firm once his conflicts of interest were raised, including by making threats to makes things "hard" on the Plaintiffs and then proceeding to do so by lying to the Court, lying about not having knowledge of Plaintiffs' confidential information, lying about the benefit gained by Lightbox from his knowledge of the Plaintiffs' sensitive confidential information, and purposely attacking the character of the Moldovsky Firm, Brem Moldovsky, and even the firm's paralegal.

261.    The Plaintiffs have suffered tremendous losses and damages due to the complained of conduct, as plead herein.

262.    Mr. Miller held himself out as a reputable and trustworthy professional, but he was involved with purposeful conflict, disparagement, misstatements to the Court, perjury and the various other problematic behavior complained of here.

61

263.    Mr. Miller neglected his fiduciary, loyalty and other obligations to the Plaintiffs as their lawyer.  He failed in his loyalty to the Plaintiffs to refrain from working with a party in conflict of interest.

264.    To the extent that the relationships here between Mr. Miller and the Plaintiffs falls under and fits within the protections of the Under the New Jersey Consumer Fraud Act, Plaintiffs are seeking compensatory and treble damages, interest and attorneys fees, return of all of the monies that Plaintiffs paid to Defendant Mr. Miller and all other recoverable damages under the statute.

WHEREFORE, Plaintiff requests judgment against Mr. Miller in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, treble damages, and any other relief the Court deems just and proper.

**COUNT XIII: VIOLATION OF NY GENERAL BUSINESS LAW § 349 (CONSUMER FRAUD) AGAINST JONATHAN MILLER**

265.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

62

266.    Mr. Miller purposefully mislead Plaintiffs to believe that they were represented by him as Counsel, and that he would reasonably comply with the laws and expected ethical codes applicable to counsel in New York.

267.    Mr. Miller breached his duty to the Plaintiffs by violating the Rules of Professionally Conduct by purposely, willfully, and knowingly positioning himself in a conflict with current and former clients.

268.    Mr. Miller acted deceptively and with deceit when he began to aggressively attack the Moldovsky Firm once his conflicts of interest were raised, including by making threats to makes things "hard" on the Plaintiffs and then proceeding to do so by lying to the Court, lying about not having knowledge of Plaintiffs' confidential information, lying about the benefit gained by Lightbox from his knowledge of the Plaintiffs' sensitive confidential information, and purposely attacking the character of the Moldovsky Firm, Brem Moldovsky, and even the firm's paralegal.

269.    The Plaintiffs have suffered tremendous losses and damages due to the complained of conduct, as plead herein.

270.    Mr. Miller held himself out as a reputable and trustworthy professional, but he was involved with purposeful conflict, disparagement, misstatements to the Court, perjury and the various other problematic behavior complained of here.

271.    Mr. Miller neglected his fiduciary, loyalty and other obligations to the Plaintiffs as their lawyer.  He failed in his loyalty to the Plaintiffs to refrain from working with a party in conflict of interest.

272.    To the extent that the relationships here between Mr. Miller and the Plaintiffs falls under and fits within the protections of the Under NY General Business Law § 349, Plaintiffs are

seeking compensatory and treble damages, interest and attorneys fees, return of all of the monies that Plaintiffs paid to Defendant Mr. Miller and all other recoverable damages under the statute.

WHEREFORE, Plaintiff requests judgment against Mr. Miller in excess of $50,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, treble damages, and any other relief the Court deems just and proper.

## COUNT XIV: PROMISSORY AND EQUITABLE ESTOPPEL AGAINST JONATHAN MILLER

273.     All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

274.     The Equitable Estoppel cause of action – per Mr. Miller's objection to it – is plead to the extent this Court recognizes or may recognize it as a cause of action and to the extent it does not and never will in any phase of this matter, and, even so, it is plead as legal mechanisms, tools of justice, positions, applications of law to fact and as otherwise appropriate per the facts here and law.

275.    Mr. Miller spoke misleading words and acted in a misleading way and Plaintiff has suffered damages directly as a result of Defendants' breach of their attorney-client relationship. These damages are a reasonably foreseeable result of Defendants' conduct.

276.    Plaintiffs had the right to reasonably rely upon Mr. Miller's desire and intent to comply with his ethic obligations as counsel to the Plaintiffs.

277.    Defendants should be estopped from continuing to represent against the Plaintiffs.

WHEREFORE, Plaintiff requests judgment against the Mr. Miller in excess of $50,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

**COUNT XV: GENERAL EQUITY AGAINST JONATHAN MILLER**

278.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

279.    This cause of action is plead based upon all the facts and circumstances herein, including specifically those expressed in the other causes of action in these pleading.

65

WHEREFORE, Plaintiff requests judgment against Mr. Miller in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in or related to any forum within this Court's authority to do so and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

September 24, 2019

Brem Moldovsky, L.L.C.

BY: Brem Moldovsky, Esq.

100 N. 18th Street, Suite 300
Philadelphia, PA 19103
Phone: (215) 546-9957

BY: Gerald J. Pomerantz, Esq.
THE COVENTRY HOUSE
7301 Coventry Ave, Suite 501
Elkins Park, PA 19027
Phone (267) 255-7229

BREM MOLDOVSKY, L.L.C.
Brem Moldovsky, Esquire (Attorney ID 79485)
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
Phone 215-546-9957

Gerald J. Pomerantz, Esquire (Attorney ID 3636)
THE COVENTRY HOUSE
7301 Coventry Ave, Suite 501
Elkins Park, PA 19027

Attorneys for the Plaintiffs

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| BREM MOLDOVSKY, ESQUIRE; and BREM MOLDOVSKY, L.L.C.; | Case No: 2019-00793 |
| *Plaintiffs*, | |
| vs. | TRIAL BY JURY OF 12 DEMANDED |
| JONATHAN MILLER, ESQUIRE, D/B/A/ THE LAW FIRM OF JONATHAN R. MILLER; ANDREW ELLNER; LIGHTBOX VENTURES, LLC, and LIGHTBOX CAPITAL MANAGEMENT, LLC. | **VERIFICATION** |
| *Defendants*. | |

I, Brem Moldovsky, Esquire, hereby state that the facts above set forth are true and correct (or are true and correct to the best of my knowledge, information and belief) and that I expect to be able to prove the same at a hearing held in this matter. I understand that the statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities).

Brem Moldovsky, Esquire