**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ANDREW ELLNER, | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 20-6190-KSM** |
| BREM MOLDOVSKY, LLC, | |
| BREM MOLDOVSKY, and | **MOTION TO DISMISS PURSUANT TO** |
| GERALD POMERANTZ, ESQUIRE | **FED. R. CIV. P. §12 (b) (1), (3), (6) and** |
| | **(7)** |
| Defendants. | |

1.     All of the Defendants, Brem Moldovsky, Brem Moldovsky, L.L.C. and Gerald Pomerantz ("Defendants" and Brem Moldovsky, L.L.C. is also referred to herein as the "Moldovsky Firm") hereby move this Honorable Court per 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Plaintiff's Complaint ("Complaint") for failure to state a claim and Fed. R. Civ. Pro. §§ 12(b) (1 subject matter jurisdiction), (3 venue), and (7 failure to join necessary parties).  Defendants also move to dismiss the Plaintiff's Complaint because documentary evidence refutes it, and it is barred by *res judicata*, *collateral estoppel*, issue preclusion, and unclean hands.

2.     As certified, the Defendants have complied with Judge Marston's Rule B.1. directing "reasonable efforts" at conferencing with the other parties before a motion to dismiss.  There was some conferring done and then the undersigned Counsel made multiple offers to conference further which were not accepted.  See, Moldovsky Dec. at ¶ 2.

3.     Pursuant to Rule II (C)(1) of the Court's Part Rules, movants do hereby politely request ORAL ARGUMENT of this motion and this request is being placed here in compliance with Rule II (C)(1) of the Court's Part Rules.

## PRELIMINARY STATEMENT

4.      This Motion seeks the Dismissal of the Complaint since i) the Complaint's Count I for malicious prosecution requires and lacks the essential element that the complained of underlying action was terminated in favor of Plaintiff, which it was not; and actually, the claims from the underlying matter are alive, plead, moving forward, being litigated, etc. so that it is impossible that the underlying matter terminated in Mr. Ellner's favor; ii) the claims and allegations of the Complaint have already been alleged by Mr. Ellner and have been adjudicated so that the claims of the Complaint were necessarily determined so they are precluded and estopped by *res judicata* and *collateral estoppel*  by decisions of the Southern District of New York, Second Circuit Court of Appeals, Supreme Court of New York, the Bucks County Court of Common Pleas, and the New York Appellate Division, First Department; iii) the Complaint's claims are precluded, undermined and estopped in a number of ways by the recent cases of the Pennsylvania Supreme Court and of this Court, including, respectively, Raynor v. D'Annunzio, Supreme Court of Pennsylvania No. 35 EAP 2019 (Dec. 22, 2020) and Pendergrass v. Pendergrass, --- F.Supp.3d ---- (2021); iv) the Complaint fails to meet the monetary threshold of this Court, as explained below at ¶ 62; v) the Complaint should be dismissed, transferred and/or consolidated as the SDNY is the appropriate forum; vi) the Complaint must be dismissed due to Plaintiff's insistence in failing to join mandatory, indispensable and necessary other parties as Plaintiffs; vii) the abuse of process cause of action, Count II, fails to state a viable claim in that the complained of suit sought legitimate and not perverse purposes; vii) the Complaint fails to state a claim as there clearly was probable cause (and no improper purpose) for the complained of steps taken; ix) the Complaint fails to state a claim in failing to allege or show malice or improper purpose (except perhaps in boilerplate); and x) the Complaint must be dismissed due to Plaintiff's

unclean hands and based on documentary evidence.  Furthermore, xi) the Complaint's requests for punitive and emotional damages must be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

5.      Defendants refer the Court to the Declaration of Brem Moldovsky, Esq ("Moldovsky Dec.") for a more thorough rendering of the factual background of this matter and in particular to its Exhibit "U."  A condensed background follows.

6.      Brem Moldovsky and Brem Moldovsky, L.L.C.  represented Plaintiff Andrew Ellner and his entities Lightbox Ventures, LLC and Lightbox Capital Management, LLC (hereinafter collectively "Lightbox") in a Southern District of New York matter, against Defendant 3rd Home, Ltd. (Lightbox Ventures, L.L.C. v. 3rd Home Ltd., et al., No. 16-cv-02379 (S.D.N.Y.)), and subsequently was adverse to Lightbox, who has litigated against Brem Moldovsky, Esquire in matters before the Supreme Court of New York (Scarola Malone and Zubatov LLP v. Ellner et al., Supreme Court of New York, County of New York Index No.: 651324/2017), the Bucks County Court of Common Pleas (Moldovsky v. Miller et al, Court of Common Pleas of Bucks County, Pa., No. 2019-00793)), and the Federal District Court for the Southern District of New York and the 2nd Circuit Court of Appeals (Lightbox Ventures, LLC v. 3rd Home Limited, USCA 2d Circuit, Docket No.: 18-3721).

7.      The underlying litigation involved a failed joint venture for a global real estate venture Mr. Ellner claimed and believed had in excess of hundreds-of-millions of dollars-worth of potential, was a first in the industry, already had listings of hundreds-of-millions of dollars of real estate and more.  Mr. Ellner became involved with 3rd Home, a sort of partial Airbnb for the wealthy, based on his ownership of several vacation homes, including in Utah and California.

8.     In November of 2017 the Moldovsky Firm exercised its contractual right to not have to continue on the litigation due concerns with the economic worthwhileness of the case and value, economic hardship on the firm, client misrepresentations and related, and this was part of what lead to the amending of the Agreement between the Firm and Lightbox.

9.     In early 2018 Lightbox and Ellner while continuing to be difficult in communication and at odds on various strategy with this firm also were failing to pay as agreed which led to the Moldovsky Firm motioning the Federal Court to be withdrawn as counsel.  Upon Court permission and prevailing on behalf of Lightbox, this firm was withdrawn upon the Court's decision on the trial submissions.

10.     Thereafter, Mr. Jonathan Miller, Esq., the Moldovsky Defendants' former counsel and colleague who had been referred to represent Lightbox and Mr. Ellner in the New York Supreme Court matter entered an appearance on behalf of Lightbox.

11.     The Moldovsky Defendants raised at the time that this would present a conflict once Lightbox and Mr. Ellner began litigating adverse to the Moldovsky Firm, a notice that was scoffed at and then ignored.

12.     The Southern District of New York awarded Lightbox $83,338.19 in connection with the case.  This amount was in addition to a $38,888.01 discovery sanction and a $100,000 fee award so that a total of $222,226.20 plus interest of $17,179.08 (for a total of $239,405.28) was awarded and then deposited with the court.  Judge Cote found Ellner and Lightbox liable for one count of cybersquatting and also noted that Ellner and Lightbox were aggressive litigants who sought to cage their opponents.

13.     Lightbox and Mr. Ellner with Mr. Miller as counsel then filed an interpleader complaint against the Moldovsky Firm and the prior firm that previously represented

Lightbox in the litigation, Scarola Malone & Zubatov LLP, who also allege hundreds of thousands of dollars of fees due by Ellner and Lightbox, seeking to determine the amount and propriety of each firm's statutory charging liens.

14.     On October 12, 2018 in relation to the Southern District of New York Interpleader proceeding it became known that in 2017 and about the first third of 2018, without the Plaintiffs' knowledge or consent, an unknown number of phone calls were recorded by Ellner and Lightbox, including at least one conversation on Thanksgiving Day, 2017, while Mr. Moldovsky was at his home (which has an office) in Bucks County, Pennsylvania, though there were others based on Mr. Miller referring to them in the plural tense and there being many calls with Mr. Moldovsky and Mr. Ellner.  Mr. Miller admitted to having handled and transcribed the recordings including in order to attach excerpts to his Affirmation in that proceeding.

15.     It has been admitted that at least two recordings of calls have been made by Mr. Ellner, and it has been misrepresented that he never called Plaintiffs on a Pennsylvania phone number or when they were in Pennsylvania,  which is false.

16.     Mr. Ellner was aware that Plaintiffs were based out of Bucks County, PA and were often in Bucks County, PA (and other places in Pennsylvania), Mr. Ellner regularly mailed payments and materials to the Bucks County, Pennsylvania office, which he utilized and treated as the primary address for contact.

17.     It was known that Ellner and Lightbox travel frequently to many different states and countries, and as such, their location at the time of the recordings is unknown or often unknown.  However, based on vacation home ownership, relatives, business interests and other reasons, Mr. Ellner visited and spent time in other states in the relevant time period,

which, like Pennsylvania, are also "two consent states".  Such states are believed to include Florida, Nevada and/or California. (See: https://www.justia.com/50-state-surveys/recording-phone-calls-and-conversations/).

18.    Mr. Ellner has stated and verified with this Court at ¶30 of his Complaint that he has "never" made a call to the Plaintiffs on any line but a New York line while in New York. This is demonstrably false, however, which has been shown.  (See, Moldovsky Dec. at ¶ 48, Ex. "K"; see also, Ex. "T" at 5.)

19.    The Moldovsky Firm sought to be provided with copies of the recordings, which Lightbox and Mr. Ellner (through counsel) refused to provide.

20.    In a Memorandum Opinion and Order dated October 22, 2018, the court found that $150,000 was a reasonable fee in quantum meruit for Moldovsky's representation of Lightbox, which the Court found to have been conducted by Moldovsky with appropriate deportment in the range of professional (Charging Lien Decision, Moldovsky Dec. Ex. "F" at 10).  The Court also determined that the Moldovsky Firm could proceed with its other causes of action for fees.

21.    The Moldovsky Defendants initiated a Bucks County Pennsylvania civil action (the "Bucks Case") against Mr. Miller for various breaches of his ethical duties and legal malpractice, among other things by writ of summons filed on February 5, 2019 served it with pre-complaint discovery pursuant to Pennsylvania Rule of Civil Procedure 4003.8 very narrowly tailored to seek disclosure about the recorded phone calls.

22.    Mr. Ellner and Lightbox were named as Defendants based on their aiding and abetting Mr. Miller's breach of fiduciary duties and malpractice as well as for violations of the Pennsylvania Wiretap Act, 18 Pa. C.S.A. § 5703, and lack of candor to the tribunal, as a

result of recording and transcribing telephone calls between them and the Plaintiffs, at least one of which took place on Thanksgiving Day while Plaintiffs were in Pennsylvania on a Pennsylvania phone, and distributing said recordings and transcriptions of recordings to Mr. Miller, the Court, co-litigants in New York, the public by filing on the record, and possibly others.

23.     Notably, Mr. Pomerantz was not involved in the initiation of the litigation, and was not even entered until a month and 20 days after the matter was initiated.  Mr. Ellner, accordingly, cannot sustain a claim for malicious prosecution against him as a matter of law and fact for that which he was not involved.

24.     On October 16, 2019, Moldovsky withdrew the claims against Ellner by filing a fourth amended complaint that omitted any claims against the latter due in part to Lightbox's defense that the claims could be in New York and to bring the claims later with other claims that were not yet fully ripe and mature which by now have been started and are pending, as explained herein at ¶5.

25.     Following preliminary objections by the remaining defendants and a subsequent fifth amended complaint, Moldovsky filed a praecipe to discontinue and end the matter without prejudice because in part Mr. Miller had admitted that he continued to not carry a malpractice policy, and because Lightbox and Miller argued that the claims were better placed in New York and that many or all of the claims could be.

26.     The Moldovsky Firm thus withdrew its claims and anticipated filing them later and likely largely in New York upon certain decisions by the New York Courts, including the April 2020 Second Circuit Summary Order, the December 10, 2021 Order by the Supreme

Court of New York, the March 30, 2021 Order of the New York Appellate Division, First

Department, and a few other orders that are still outstanding but may be decided imminently.

I.    **The Complaint Must Be Dismissed For Failure To State A Claim In That Plaintiff Failed to Plead Or Show That The Complained Of Claims Lack Probable Cause, As They Did Not, and Were Successfully Terminated In His Favor, As They Were Not; Rather The Claims Are Alive, Pending And Are Being Litigated (*Lis Pendens*)**

27.     The fundamental element of malicious prosecution – that the Plaintiff in this

matter had the underlying claims successfully terminated in his favor– simply is not here and

this case accordingly must fail of its own weight. <u>See</u>, Memorandum of Law at §I.

28.     The underlying matter did not end in a verdict, decision or anything of the sort,

but, rather in a voluntary termination done for various reasons, including that the claims

could be in New York and to bring the claims later with other claims that were not yet fully

ripe and mature (and because Mr. Miller still did not carry malpractice insurance).

29.     The objective facts as well as judicial determinations confirm that there was no

successful termination of the underlying matter in Mr. Ellner's favor, and these include but

are not limited to that the claims against Lightbox were unilaterally withdrawn without

prejudice and have been refiled in a New York action with the understanding that they

belong in New York, with the Pennsylvania wiretap claims already filed anew in this Court at

this time as well.  The claims also were not going to terminate in Mr. Ellner's favor had they

proceeded in Bucks County.

30.     In Fact, Judge Robert O. Baldi in the underlying Bucks County case (Moldovsky

v. Ellner), made various findings and decisions which unquestionably establish that there was

probable cause for the underlying Bucks case as he maintained the viability of the case upon

deciding a first wave of motions, though the Complaint wrongly says there was not probable

cause.  Pendergrass v. Pendergrass, --- F.Supp.3d ---- (2021) states, holds and confirms that if in the underlying case it is shown that there is probable cause, for instance, by meeting a standard that is higher than the probable cause standard needed to defeat Count I of the Complaint here, then the complaint must be dismissed.  This happened here too.

31.     On August 20, 2019 Bucks County Judge Robert O. Baldi held an oral argument wherein he recognized that Moldovsky i) had claims that could go to trial (Transcript, Moldovsky Dec. Ex. "L" at 111:22-25); ii) that the wiretap claims warranted discovery (Ex. "L" at 60:23); iii) that the certificate of merit and expert report were sufficient to make claims of malpractice and (Ex. "L" at 111:22-25); and iv) that Ellner and Lightbox's jurisdictional defenses (that the claims against them belonged in New York) needed discovery (Ex. "L" at 60:23).  These findings alone establish probable cause (see Memorandum of Law at §I), and expert reports show probable cause as that is what the Pennsylvania Certificate of Merit rules are all about.  See 231 Pa. Code §1042.3.  A Certificate of Merit and reliance on it (with other basic factors) is sufficient to establish probable cause.  See, Miller v. St. Luke's University Health Network, 142 A.3d 884, 2016 PA Super 134. Like in *Pendergrass*, here too, in the underlying case it was shown that there was probable cause as a matter of law since the Court's decisions indicated that there was probable cause.  The *Pendergrass* Court held that: "The Court further notes that Judge Ott found that Theodore's Will was prima facie valid after an evidentiary hearing where Theodore, Ida, Saunders, and Cleveland testified and were cross-examined.  While this determination is not preclusive (and Judge Ott clearly determined after the full hearing that the witnesses were untruthful), the prima facie standard is higher than that required to show probable cause under the Dragonetti Act.  Defendants Rounick and Bacine had probable

cause to present Theodore's Will for probate." <u>Pendergrass v. Pendergrass</u>, --- F.Supp.3d ----
(2021) at 62.

32.     For the foregoing reasons, Mr. Ellner cannot state a claim in that there was
obvious probable cause for the proceedings against him.

33.     Plaintiff had made an argument that the suit against him in Bucks County actually
belonged in New York a centerpiece of his Preliminary Objections to the Complaint; so
much so that his counsel expressed at oral argument that Ellner sought discovery as to
jurisdiction.  (<u>see</u>, Transcript, Ex. "L" at 60:22.)

34.     Furthermore, the Moldovsky Defendants here have open, pending claims against
Plaintiff here and his companies, attorneys and related parties.  These can be seen in the
complaints pending against them in the Southern District of New York and Eastern District
of Pennsylvania. (Moldovsky Dec. Exs. "U" and "V".)

35.     Thus, the claims from the prior Bucks County matter are now in these two
pending suits, but primarily as part of the suit in the Federal Court of the SDNY.[1] The claims
in this case are inextricably intertwined with claims and allegations in the SDNY and EDPA
suits since they share a common nucleus of facts and extensive background of litigation.

36.     Some of the claims in the new SDNY matter were not ripe until Court decisions
in the Second Circuit Court of Appeals (rendered on April 21, 2020) and the New York
Supreme Court (Orders rendered on December 18, 2019, December 10, 2020, and some still
*sub judice)*.  However, considering statutes of limitations on some claims (such as legal
malpractice, fraud and consumer fraud) drawing near, it was necessary to initiate the suits.

---

[1]  The new Southern District of New York suit contains the same allegations as the prior Bucks County suit as to the
aiding and abetting causes of action against Lightbox and Mr. Ellner.  The claims related to the wiretap act
violations have been brought in the Eastern District of Pennsylvania.

37.     Accordingly, though, the claims Plaintiff claims to have successfully had terminated are alive and well in these litigations, and thus the Complaint in this case must be dismissed based on the principle of *lis pendens* whereby the Plaintiff simply could not have had the claims in the prior matter successfully terminated in his favor when the claims are alive and well in current litigation.  (see Memorandum of Law at §II.)

38.     To quote Judge Dougherty, "this rancorous dispute and protracted litigation between the parties has gone on long enough" Raynor v. D'Annunzio, E.D. Pa. Case No.: 35 EAP 2019 at fn 11 (Dec. 22, 2020).  Mr. Ellner is seeking his seventh bite at the apple by bringing claims once more based on the same underlying facts as he has litigated numerous times already and here lacking the elements needed for the claims, starting with Plaintiff did not successfully terminate the action upon which this suit is based and thus this suit's first cause of action fails.

## II.     The Complaint Must Be Dismissed, Demurrer, Based on the Doctrines of Res Judicata, Collateral Estoppel and Issue Preclusion

39.     The claims here must also be dismissed because they have already been adjudicated.

40.     Specifically, the claims were put before the Second Circuit Court of Appeals in the deeply and notoriously scrutinizing context of claims by Mr. Ellner (and his entities Lightbox Ventures, LLC and Lightbox Capital Management, LLC, hereinafter "Lightbox") of attorney misconduct, fraud, extortion, usury, coercion, retroactive billing, wrongful withdrawal and abuse of client allegations.  Lightbox was seeking attorney fee disgorgement, a reversal of the attorney statutory charging lien award, and an attorney misconduct analysis leading to punishment.

41.     After the Pennsylvania matter was withdrawn, Lightbox sought to insert complaints against Moldovsky related to the Pennsylvania matter into the Second Circuit Appeal by way of its Reply Brief dated November 12, 2019 (Moldovsky Aff. Ex. "O") along with a supplemental appendix of Pennsylvania materials.  The Moldovsky Firm moved to strike those allegations from the record and brief as extraneous, which the Second Circuit declined to do.  (Moldovsky Aff. Ex. "P".)  Upon due consideration, the Second Circuit determined by Summary Order dated April 21, 2020 that the Moldovsky Firm's conduct (including its action in Pennsylvania), were irrelevant and there was no merit or basis to Lightbox's claims of cause to strip a statutory charging lien award, for disgorgement, or for any finding of misconduct or wrong-doing at all.  (Moldovsky Aff. Ex. "Q".)

42.     If the claims were at all legitimate, under the standards at play the Second Circuit in the blink of an eye would have limited or blocked fees, remanded for further proceedings, etc. (see Memorandum of Law at fn 4.)

43.     The Second Circuit's Decision thus necessarily determined the claims in this case already and thus they must be estopped, precluded and dismissed here because those decisions foreclose Lightbox's claims under established law for at least 150 years in New York that a judicial determination fixing a value of a professional's services necessarily decides that there was no malpractice or misconduct.  See e.g., Emery Celli Brinckerhoff & Abady LLP v. Rose, 29 Misc. 3d 1230(A), 920 N.Y.S.2d 240 (Sup. Ct. N.Y. Cty. 2010) ("an order fixing a charging lien bars any claim for legal malpractice"); see also Blair v. Bartlett, 75 N.Y. 150 (1878); and see also Memorandum at §II.

44.     So, while Plaintiff may argue, as its counsel did in Perelman v. Perelman, 125 A.3d 1259, Super.2015, reargument denied, appeal denied 141 A.3d 435, 636 Pa. 96.

Judgment 829(3) that a decision on a sanction motion denying the allegations that are the same as in a malicious prosecution claim does not bar this claim here  in that they may be based on recklessness or negligence, that argument does not work here as the Second Circuit's Decision bars claims in negligence and recklessness as well.  <u>See</u>, Memorandum at §II.

45.     Not only that, the claims in this case were also presented to the New York Supreme Court in a motion for sanctions as "evidence" of misconduct, which was dismissed (Moldovsky Dec. Ex. "R"), and the First Department of the Appellate Division of the New York Supreme Court as "evidence" of frivolous litigation, which was also dismissed. (Moldovsky Dec. Ex. "S".)  Judge Baldi in Pennsylvania also declined to grant sanctions *in that matter, the one in question*.

46.     Moreover, the New York Supreme Court's First Department of the Appellate Division, just now, on March 30, 2021 decided and ordered that Mr. Ellner's ongoing false and already adjudicated as baseless, meritless and irrelevant claims are not allowed to be included in its arguments and positions, they must be stricken, not included in the litigation and they cannot proceed further.  These allegations include factual allegations that underlie this entire Complaint and specifically that the Bucks County matter against Mr. Ellner and Lightbox was frivolous.  (<u>See</u>, Moldovsky Dec. at ¶¶ 74 - 75 and Ex. "Y" .)  In prime part, the decision to strike this material was based on the Moldovsky Firm pointing out that these issues had been litigated and determined to be irrelevant or dismissed already.  (<u>See</u>, Moldovsky Dec. at ¶ 76.)

47.     Accordingly, various of the allegations of the Complaint here, including paragraphs 11-15, 18, 49-53 and others, have been shut down, dismissed, made impossible,

considered precluded by *res judicata* and *collateral estoppel*, etc. as demonstrated by the table that has been included in the Declaration of Brem Moldovsky, Esquire in support of this motion at ¶ 76.Even though there have been multiple Orders (e.g., Moldovsky Dec. Exs. "F", "R", "S", and "Y")  aimed at curbing Mr. Ellner's own malicious abuse, denying his false and abusive allegations and dismissing his frivolous claims, Mr. Ellner still found counsel to perpetuate his abuse by this litigation.

48.    Although, Plaintiff's Counsel admits to being unaware of Plaintiff being involved with pending litigation involving Defendants (See, Moldovsky Dec. Ex. "X" at 4), the reality is that there is pending litigation involving the Plaintiff (a lot of it) and court decisions made in those litigations are preclusive of the claims here.  While it is convenient for Plaintiff' Counsel to express not to know of their client's involvement in the other litigations in which their client has made hundreds of filings, that certainly does not stand in the way of the various court decisions in those matters precluding the Complaint here.

49.    There is more though.  According to the Pennsylvania Supreme Court, complaints about malicious prosecution can be alleged via sanction motions or via malicious prosecution proceedings, but not both.  Raynor v. D'Annunzio, Supreme Court of Pennsylvania No. 35 EAP 2019 (Dec. 22, 2020).

50.    Since the claims and allegations of this case have already been alleged and litigated by Mr. Ellner multiple times in at least 3 courts as sanction allegations and in all instances the claims were denied (as well as the important adjudication of the claims by the Second Circuit Court of Appeals as stated above and in the accompanying Memorandum), the claims are precluded, estopped and barred from proceeding further.  Raynor v. D'Annunzio, Supreme Court of Pennsylvania No. 35 EAP 2019 (Dec. 22, 2020).

14

51.     And, as explained above at ¶44, Judge Baldi in the underlying Bucks case, made various findings and decisions which unquestionably establish that there was probable cause for the underlying Bucks case for which the Complaint wrongly says there was not.  Pursuant to Pendergrass which states, holds and confirms that if in the underlying case it is shown that there is probable cause, for instance, by meeting a standard that is higher than the probable cause standard needed to defeat Count I of the Complaint here, the Complaint must be dismissed.

52.     Accordingly, the Complaint must be dismissed per *res judicata* and *collateral estoppel*, and this is the case even when causes of action may be different between the prior and current matter and even when there has simply been a legal decision in a prior matter involving the same parties and factual background (without necessarily all of the formal estoppel indicia present (though they are met here)), as explained further by the Court in Bruce J. Chasan, LLC et al. v. Pierce Bainbridge Beck Price & Hecht, LLP, et al., 2021 WL 148406 (E.D.Pa. January 15, 2021), another of Mr. Haines' cases which this Court has dismissed.

## III.     The Complaint Must Be Dismissed, Demurrer, For Failure To State A Claim In That Plaintiff Claims Do Not State A Claim Under The Dragonetti Statute 42 Pa.C.S. §§8351-8354

53.     All aspects of the Complaint here that were and could have been complained of by sanctions must be dismissed and not considered a basis of a Dragonetti claim as has been determined by Pennsylvania law as demonstrated by Raynor at 15-24 and Pendergrass at § III (A).

54.     For instance, <u>Raynor</u> at 15-24 and <u>Pendergrass</u> at §III(A) confirm and establish that a malicious prosecution claim cannot be based on a preliminary injunction or basically any other aspect or step in litigation except essentially the start of a suit.

55.     In reality, this analysis guts and takes out almost all of the Complaint here so that there is very-little, if anything left that could even possibly be considered a viable claim.

56.     This is all the more so, since Plaintiff actually did bring 5 sanction motions, as just explained above at ¶ 50, based upon the claims of this case.  Doing so, they admit that all such allegations are allegations of sanctions and thus are prohibited from being part of a Dragonetti claim as held by <u>Raynor</u> at 15-24 and <u>Pendergrass</u> at §III (A) (both cases Plaintiff's Counsel knows well, since he litigated them).  Since the allegations of the Complaint have already been proceeded upon and adjudicated, they are precluded and estopped from being sued upon here and must be dismissed.  (<u>see</u> Memorandum of Law at §III.)

57.     Accordingly, Plaintiff's claims here are thoroughly impossible as *res judicata*, collaterally estopped and barred by issue preclusion.

58.     Service of process, jurisdiction, preliminary objections, preliminary injunctions, pleadings, motions, answers, defenses, etc. are not legitimate basis for the claims here, and furthermore, the service of process to Mr. Ellner was proper pursuant to the laws governing process service, and also since he refused to accept process. (Moldovsky Dec. at ¶ 38.)

59.     As stated above at ¶ 38, Mr. Ellner is seeking another bite at the apple by bringing claims once more based on the same underlying facts that have been adjudicated time and again even though "this rancorous dispute and protracted litigation between the parties has

gone on long enough" <u>Raynor v. D'Annunzio</u>, E.D. Pa. Case No.: 35 EAP 2019 at fn 11 (Dec. 22, 2020).

60.     This includes all of Mr. Ellner's claims here, even his request for reimbursement of fees paid by Lightbox (not Mr. Ellner personally) to Fox Rothschild to defend him in the Bucks County matter.

61.     The Court in <u>Raynor</u> stated that "Appellants insist the legislature did not envision piecemeal litigation under the Act resulting from the submission of individual motions, petitions or filings other than the commencement of a civil action, and further note this Court absolutely suspended Section 8355 of the Act and replaced it with Pa.R.Civ.P. 1023.1, which provides procedures and rules regarding sanctions for pleadings, written motions, and other papers directed to the court for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *See* Pa.R.Civ.P. 1023.1(c)(1)-(4), (d)." <u>Raynor</u>, Id. at 12.

62.     The footnote, 6 includes: "Rule 1023.1. Scope. Signing of Documents. Representations to the Court. Violation (c) The signature of an attorney or pro se party constitutes a certificate that the signatory has read the pleading, motion, or other paper. By signing, filing, submitting, or later advocating such a document, the attorney or pro se party certifies that, to the best of that person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances" <u>Raynor</u>, Id. at fn 6.

63.     <u>Raynor</u> continues: "Thus, "civil proceedings" as referenced in the Act cannot include both the filing of motions within a case and the filing of complaints to initiate a case because those separate legal undertakings are independently defined under the Judicial Code to exclude one another.  Moreover, such an interpretation would be contrary to our decisions

applying the Act that consistently uphold Dragonetti claims for the commencement of actions

at law, while rejecting purported Dragonetti claims for intra-case filings, such as preliminary

objections or subpoenas. Furthermore, appellees cannot escape the fact that a separate civil

rule specifically authorizes sanctions for pleadings, written motions, and other papers

directed to the court that are presented for an improper purpose, such as to harass or to cause

unnecessary delay or needless increase in the cost of litigation, *see* Pa.R.Civ.P. 1023.1(c)(1)-

(4), (d)." <u>Raynor</u>, Id. at 22-23.

64.     This all means that most of all complained of in the Complaint here has already

been adjudicated as motions for sanctions with Plaintiff here losing each time and that the

allegations of the Complaint have already been cast, plead, considered and wielded as items

appropriate for sanction motions, and, again, they were all denied.

65.     Both Counts I and II of Mr. Ellner's Complaint are barred by *res judicata*,

collateral estoppel, and issue preclusion based on the determinations by Judge Cote, the

Second Circuit panel, Judge Cannataro, and Judge Baldi and are thus thoroughly impossible

and were *ab initio*.


**IV.     The Complaint Must Be Dismissed For Lack Of Subject Matter Jurisdiction
Because Plaintiff's Damages Cannot Exceed $75,000 (28 U.S. Code § 1332(a))**

66.     Plaintiff does not allege damages meeting the jurisdictional threshold (beyond

boilerplate) in that the only damages alleged are attorney's fees, and in line with the holdings

in the <u>Raynor</u> and <u>Pendergrass</u> cases, as explained above at ¶56, actual attorney's fees

incurred (if any) must be very limited as most of the limited activities that did occur are not

the basis of Dragonetti claims.

67.     Since so little of Plaintiff's legal fees on the underlying matter could possibly be recoverable here since most of the activity and thus the fees would be related to any feasibly reasonable alleged sanctionable issues and thus not subject to a Dragonetti claim as held by Raynor and Pendergrass, the legal fees must be nominal, and thus these being the only damages, this case does not meet the economic jurisdictional threshold of $75,000 for this Court pursuant to 28 U.S. Code § 1332 (a).

68.     Furthermore, it is believed that legal fees paid were or likely were by Lightbox as it apparently paid and was awarded legal fees in its litigation with Third Home and since Lightbox is not a party here any such incurring of legal fees cannot be Plaintiff Ellner's damages here.

69.     Accordingly, Plaintiff's allegations about the economic jurisdictional threshold are quite bare, unsubstantiated and hollow, and since Plaintiff's Counsel was involved with the Raynor and Pendergrass cases he knows that the legal fees incurred (if any) in the Bucks case that can possibly be the basis of this case are nominal and well less than the jurisdictional threshold of this Court.

70.     Additionally, Plaintiff states that:  "… Ellner paid significant legal fees to defend himself" but there has been no proof presented as to the amount and further, as to the amount recoverable in a Dragonetti case.

71.     However, even were these fees recoverable, Mr. Ellner asked for them to be awarded already in the Bucks case (see, Moldovsky Dec. at ¶ 57.) Judge Baldi did not grant the relief and the request should have stopped then.

72.     Mr. Ellner also has done nothing to establish that these claims even belong in Pennsylvania in light of all the activity and litigation between the parties in New York.

Indeed, if anything, these claims belong in New York with the related claims that are pending

there in the Federal District Court of the Southern District of New York.  See Moldovsky

Dec. Exhibit "U."

**V.     The Complaint Should be Dismissed, Transferred And/Or Consolidated As the SDNY Appears the Appropriate Forum**

73.     As already explained, the Federal Court of the Southern District of New York as

well as the Second Circuit Court Of Appeals have extensively dealt with Mr. Ellner and his

disputes with his business partners and attorneys. (See, Moldovsky Dec. at ¶ 10 - 19

describing the nature of the Lightbox Ventures, LLC v. 3rd Home matter and ensuing Second

Circuit Appeal and Exhibits "D", "E", and "F" – Orders addressing those matters.)

74.     As also reviewed above, there is currently pending in the SDNY extensive claims

involving Mr. Ellner, his businesses and attorneys which includes the claims that are the

same as and similar to the claims in the Bucks County case upon which the Complaint here

complains of and is based.  While there is also a new suit here in the EDPA, as explained

above, that suit is based mainly on violations of wiretap laws and related, and the same or

similar to the same and similar claims in the Bucks case**.**

75.     The Plaintiff's claims, if anything, belong in New York and combined with the

undersigned and Moldovsky Firm's federal suit so that these related matters are dealt with

together and limited Court and party resources are preserved, particularly after years of

ongoing litigation between Ellner and his business partners and attorneys in many courts and

forums.

76.     Plaintiff had strenuously argued that claims in the Bucks case should have been made in New York.  See, Mr. Ellner's Pa. Preliminary Objections, Moldovsky Dec. Ex. "M".)

77.     The Complaint here is bound up with, intertwined, involved, inseparable with and impacted by the claims and issues in the SDNY litigation.  The nucleus of facts is the same or arguably so, the claims of the underlying Bucks case and the SDNY claims are based on the same conduct, and because of this the matters should be consolidated and placed in the forum with the most experience on the matters, which is the Court that has already dealt with the underlying litigation and is familiar with the underlying facts and has experienced the parties.  (see Memorandum of Law at §VI.)

78.     It would be a good use of judicial and party resources and in line with public policy to have one Federal Court handle the matter rather than two and since the SDNY Federal Court has such extensive background of thousands of pages of documents and hundreds of filings[2] and currently a suit with 20 causes of action and only 2 here in this Complaint.

79.     This would be consistent with much more of the issues between the parties at this point being in New York, as can be seen from a review of the background of this matter.  The SDNY Complaint just filed (Moldovsky Dec. Ex "U") provides much of this background, wherein much of the activity occurs in or related to New York.  Of course, various activity occurred in Pennsylvania and New Jersey, but, still, at this point and based on all the claims

---

[2]  See the public dockets of Lightbox Ventures, L.L.C. v. 3rd Home Ltd., et al., No. 16-cv-02379 (S.D.N.Y.) and Lightbox Ventures, LLC v. Brem Moldovsky, L.L.C., No. 18-3721-cv (2d Cir).  The former has 365 docket entries, the later has 200.

of the NYSD Complaint, it seems that the SDNY is the most appropriate forum for these related matters.

80.     Consolidation per F.R.C.P. 42(a)(2), is appropriate since actions before the court involve a common question of law or fact.

81.     Accordingly, the Plaintiff's Complaint should be consolidated in the SDNY.

## VI.     The Complaint Must Be Dismissed Due To The Indispensable, Necessary And Mandatory Party Rules, Fed. R. Civ. Pro. Rule 19

82.     Plaintiff's Complaint is deficient and if not rectified must be stricken as parties who are mandatorily necessary and indispensable have not been joined as Plaintiffs, and these parties include the other Defendants in the Bucks case, including Jonathan Miller, Esquire, Lightbox Ventures, LLC and Lightbox Capital Management, LLC.

83.     The claims of Mr. Ellner's entities and his attorney are the exact same or at least very similar as Mr. Ellner has expressed here and this can be seen as Mr. Ellner, Mr. Miller and the Lightbox entities have made these same allegations, together, at least eleven times, including in the Bucks Court, in the Southern District of New York, in the Second Circuit Court of Appeals and in the New York Supreme Court trial and appellate divisions over the course of five motions for sanctions, and an appeal premised on attorney misconduct seeking disgorgement. (see, Mold. Dec. at ¶ 34, 36, 67 etc.)  Notably, each motion and request for sanctions, disgorgement, findings of attorney misconduct, etc. was denied.

84.     However, to the extent Mr. Ellner makes claims here, certainly his counsel and companies believe, perceive and perhaps plan to make the same claims.

85.     Pursuant to F.R.C.P. Rule 19, the Defendants here should not have to litigate these same issues with essentially these same parties any further and certainly not beyond the

claims here.  However, if this suit proceeds without Mr. Ellner's companies and counsel then that is exactly what may happen.  Mr. Ellner will be glad to start yet another suit through one of his Lightbox entities, then another suit by the other Lightbox entities and then yet another suit would be started by his attorney (the undersigned' prior attorney), Mr. Miller.  **(**see Memorandum of Law at §VI.)

86.     Accordingly, if the suit should proceed, it should be with the mandatory and necessary parties or not at all.

## VII.     The Abuse Of Process Cause of Action, Count II, Fails To State A Cause Of Action In That The Complained Of Suit Sought Legitimate And Not Perverse Purposes

87.     Simply put, the Complaint fails to state or show that process was used illegitimately.

88.     Process was utilized as intended, pursuant to law, statute, current and reasonably potential legal positions and in good faith.

89.     There is no allegation (beyond just boilerplate) that process was used improperly, and even if there is an aspect or issue of challenge to this, it is exactly that, an outlier and at most a small part of the processes and not sufficient for an abuse of process claims**. (**see Memorandum of Law at §VIII).

90.     For the Complaint to state a cause of action (for either cause of action here) there must be "truly abusive" conduct that did not occur, was found by numerous courts not to have occurred and is not plead here.  (See, Hyldahl v. Denlinger,  2014 WL 12606157,  Not Reported in Fed. Supp., E.D.Pa., 2014) (Dismissing causes of action for malicious prosecution and abuse of process.)

91.     Furthermore, even if the Plaintiff could allege or plead (which he cannot) that there was ""an incidental motive of spite or ulterior purpose of benefit to the defendant" [such] would not be a sufficient improper purpose for an abuse of process cause of action. (See, <u>Bell v. Township of Concord et al., 759 F.Supp.2d 621 (E.D.Pa. 2011).</u>)

92.     Accordingly, the Plaintiff's Complaint should be dismissed for failure to state a cause of action.

## VIII.    The Complaint Must Be Dismissed Since It Fails To State A Claim As There Was Probable Cause (And No Improper Purpose) For The Complained Of Steps Taken

93.     The <u>Raynor</u> Court stated that: "The Dragonetti Act is a codification of the common law cause of action for wrongful or malicious use of civil proceedings… However, a Dragonetti defendant establishes probable cause for bringing the underlying civil proceedings if he reasonably believes in the existence of the facts upon which the claim is based, and either: (1) reasonably believes that under those facts the claim may be valid under the existing or developing law; (2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or (3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party." <u>Raynor</u>, *supra*. at 18-19.  It further elaborated that "Moreover under Section 8352 of the Act, a person who "takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes," among other things, "as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or

maliciously injure the opposite party." 42 Pa.C.S. §8352 (emphasis added)." <u>Raynor</u>, *supra*.

at 21.

94.     Here, the Defendants easily meet and demonstrate probable case and thus the case

must be dismissed.  <u>See</u>, Moldovsky Dec. at ¶¶45 - 55.

95.     There was complete probable cause for starting and continuing the Bucks case,

including but not limited to:

  a.  There was probable Cause pursuant to 42 Pa. C.S. § 8352;

  b.  There was probable cause per the expert report of Samuel Stretton, Esq.
      (Moldovsky Dec. Ex. "I");

  c.  There was probable cause as evidenced by Judge Baldi stating on the
      record that the claims could reach a jury (Transcript, Moldovsky Dec. Ex.
      "L" at 111:22-25;

  d.  There was probable cause based on the information known about the
      wiretaps;

  e.  There was probable cause based on the undersigned's knowledge that Mr.
      Ellner regularly traveled to and/or owned additional homes in other 2
      consent states including California (Calistoga) and Florida;

  f.  There was probable cause based on Plaintiff's former attorney at Fox
      Rothschild admitting that they were not handling the recorded phone calls
      because of the potential illegality of them;

  g.  There was probable cause based on Plaintiff not turning over recordings,
      lying about them, and using them abusively to abuse and aid and abet Mr.
      Miller, raise false claims, undermine proceedings, etc.;

h.  There was false and misleading misrepresentations made to the Court in the Bucks case and made here as well, and these include but are not limited to that Mr. Ellner never called into a Pennsylvania number, which Mr. Ellner repeats in this matter at ¶30 of his Complaint.  This allegation was disproved swiftly with phone records showing that Mr. Ellner did call into a Pennsylvania number.  (See, Phone Records, Ex. "K";

i.  There was probable cause based on the standards established by the matter of Calcagno vs. Aidman, which holds that courts will weigh the differences in standards between two states when one state has a stricter or different standard than the other in order to prevent additional harm or damage.  This is also held by the by the Larrison v. Larrison  and Mulder v. Wells Fargo Courts; and

j.  There was probable cause based on Mr. Miller misrepresenting to the Court the extent of his knowledge about the Moldovsky Defendants' financials from his prior representation of them as counsel and the substantial relation to issues in the billing dispute with Lightbox and Mr. Ellner.

96.  The Complaint fails as a matter of law as there is clearly probable cause and Plaintiff cannot truthfully allege or show otherwise.

97.  As explained further below at ¶97 Mr. Pomerantz was allowed to believe a client and based on such there was additional probable cause.

98.  Thus, there was ample probable cause sufficient to dismiss the Plaintiff's complaint for failing to state a cause of action.

**IX.    The Complaint Must Be Dismissed Since It Fails To State A Claim In Failing to Allege or Show Malice Or Improper Purpose By Any Of The Defendants**

99.    There is no allegation – beyond perhaps boiler-plate, hollow and self-serving ones – that any Defendant acted with malice, recklessness or ill-will whatsoever.  Actually, the Second Circuit's Decision precludes it, as explained above at ¶ 43 (see Memorandum of Law at §III.)

<u>Pomerantz, Counsel for Moldovsky, is not liable for a claim under Pennsylvania's Dragonetti Act for wrongful use of civil proceedings,</u>

100.    Certainly, Mr. Pomerantz's motivation primarily was to seek how resolution might occur, and Plaintiff cannot even allege otherwise, except perhaps in the most boilerplate of ways.

101.    As expressed at ¶ 88, the motivation of Plaintiffs and counsel in the Bucks matter were completely based in probable cause.

102.    The expressed bases of the Bucks case claims were the known existence of at least two wiretapped phone calls (and likely many more), one of which was recorded when Mr. Moldovsky was in Pennsylvania when it was known that Mr. Ellner often traveled to two-consent states, Mr. Miller's representation of Mr. Ellner adverse to his former clients, and Mr. Ellner's insistence on maintaining Mr. Miller as counsel despite his conflicts and improper benefit to Mr. Ellner; all of which are based in probable cause.

103.    There are no actual allegations of malice, recklessness or anything but probable cause specifically regarding Mr. Pomerantz's conduct.

104.    Mr. Pomerantz, Counsel for and with Moldovsky in the Bucks Case, is not liable for purposes of a claim under Pennsylvania's Dragonetti Act for wrongful use of civil proceedings, as the reasonableness of an attorney in prosecuting the underlying action is

assessed objectively. <u>Schmidt v. Currie</u>,  470 F.Supp.2d 477, affirmed 217 Fed.Appx. 153,

2007 WL 470500 (E.D.Pa.2005). As long as there is reasonable belief that the facts could

support the claim there is probable cause. <u>In re Finney</u>, 184 Fed.Appx. 285, 2006 WL

1759834 (3d Cir.2006).

105.     By law, Mr. Pomerantz was allowed to rely on his belief in the veracity of the

undersigned to the extent that there was even just a slight chance that his client's claims

would have been successful, as the lawyer is not to prejudge and is allowed to act upon facts

stated by their clients.  <u>Perelman v. Perelman</u>, 125 A.3d 1259, Super.2015, reargument

denied, appeal denied 141 A.3d 435, 636 Pa. 96.

106.     By law, the standard is that an attorney, acting on behalf of a client, even if he has

no probable cause and is convinced that his client's claim is unfounded, is still not liable if he

acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his

claim. <u>Schmidt v. Currie</u>, E.D.Pa.2005, 470 F.Supp.2d 477, affirmed 217 Fed.Appx. 153,

2007 WL 470500.  Considering so and comparing to here, Mr. Pomerantz and all

Defendants, actually, acted with much more probable cause (as explained above at ¶ 88 and

in the Declaration at ¶¶ 45 - 55) than was required and well more than enough so that the

Complaint is undermined and fails.

107.     To be considered in this discussion is that Mr. Pomerantz was not of record as

initiating the Bucks Case, as indicated by his entry of appearance almost two months later.

(<u>See</u>, Moldovsky Dec. Ex. "J".)

## X.     The Complaint Must Be Dismissed Due To Plaintiff's Unclean Hands

108.     Plaintiff is proceeding here based on unclean hands in that prime allegations here

and in the Bucks case were false and continue to be false, Plaintiff has known and knows

this, and it has been and continues to be pointed out to Plaintiff, including in a letter sent recently to Plaintiff's Counsel. (See, Moldovsky Dec. at ¶ 70.)

109.    Plaintiff's false allegations were false in the Bucks Case and are just as false here too.

110.    Unfortunately and plainly, Plaintiff persists, as in the Complaint's paragraph 30 which states that "All of the conversations allegedly recorded were between Ellner in New York and Moldovsky's phone number for his New York office."   However, Plaintiff had been confronted numerous times with unrebutted records showing that some phone calls were placed by Plaintiff to Mr. Moldovsky's Pennsylvania cell phone in Pennsylvania.   It is believed further records will only demonstrate this further.  This documentary evidence that exists has been in the possession of Plaintiff for years now and some were also provided related to the Bucks County litigation.  (See, Moldovsky Dec. Ex. "K".)  The records are still available on the public docket as Bucks County ECF Doc. # 26.

111.    Mr. Ellner's pertinent background related to these matters includes that Judge Cote found Ellner and Lightbox liable for one count of cybersquatting and also that Lightbox has been known to pursue litigation that is "foolhardy" (Judge Cote Attorney's Fees Order, Ex. "D" at 7), to litigate overly-aggressively (Judge Cote Trial Order, Ex. "E" at 14) and Judge Cote even pointed out that Mr. Ellner sought to cage his opponents (Judge Cote Trial Order, Ex. "D" at 14).  Mr. Ellner has had to concede that he falsified a pertinent document in the New York matter, which was the subject of two serious motions for sanctions brought by Richard J.J. Scarola, Esq. and Alexander Zubatov, Esq. on behalf of their firm.  There are other examples as well, as described in the recently filed S.D.N.Y. Complaint (Ex. "U").  Like in Raynor, enough is enough.

112.    Mr. Ellner has been the precipitator of problems as is apparent in the S.D.N.Y.

Complaint, and as was clear to Judge Cote and the Second Circuit Court of Appeals.

113.    Mr. Ellner's Complaint cannot proceed on the basis that he has unclean hands and

has misrepresented and lied to the Court including about the heart of the issue that led to a

Bucks County complaint being filed against him in the first place (See, Moldovsky Dec. at ¶

52.)  The Plaintiff's Complaint must be dismissed.


XI.    **The Complaint's Requests For Punitive And Emotional Damages Must Be
       Dismissed**

114.    The requests for punitive and emotional damages should be dismissed as there is

no basis in the Complaint for either.

115.    Punitive damages sought pursuant to 42 Pa.C.S.A. § 8353(5) (allowing damages

for "any emotional distress that is caused by the proceedings.") are not appropriate here as

Plaintiff does not allege or show anything abusive or embarrassing or extraneous.  (see

Memorandum of Law at §XII.)

116.    Mr. Ellner makes no attempt to explain why the Bucks Case could have or would

have caused any more emotional distress that his own litigations during that same period of

time and ongoing would have or could still be imposing.  Mr. Ellner, of course, initiated the

Interpleader Complaint, the Second Circuit Appeal, Crossclaims in the New York Supreme

Court, multiple New York interlocutory appeals, many sanctions proceedings and this

immediate action himself.

117.    Mr. Ellner's complaints about his emotional and mental disturbance related to

litigation at large extend to his disputes with Third Home and SMZ (Lightbox Ventures,

L.L.C. v. 3rd Home Ltd., et al., No. 16-cv-02379 (S.D.N.Y.) and Scarola Malone and

Zubatov LLP v. Ellner et al., Supreme Court of New York, County of New York Index No.:

651324/2017))**; s**o much so that part of Lightbox's basis for the Second Circuit Appeal was

Mr. Moldovsky raising this to Mr. Ellner in correspondence.  (See, e.g., Moldovsky Dec. Ex.

"O" at 20, fn17.)

118.    The Complaint lacks substantive allegations of any conduct or activity for which

emotional damages or punitive damages exist or are appropriate.

119.    The Complaint is bare of any allegations, besides perhaps hollow, self-serving

and boilerplate of any facts, allegations, claims, etc. for which emotional damages occurred

or are recoverable.

120.    The Complaint – again, particularly in light of the Second Circuit's Decision and

its collateral estoppel impact and especially as considered under NY law **(**see, Memorandum

of Law at §III) -  simply lacks any possible allegations that rise to the level of malice,

recklessness, abuse of process, etc. for either of the causes of action here to be viable.

121.    The existence of malice, recklessness, intentional or negligent harm, or any other

possible basis of alleged harm to Mr. Ellner's emotional or mental committed by the

Defendants has been thoroughly examined already.  Judge Cote was presented with the same

allegations and provided with Mr. Ellner's very best "proofs" – which were then described

by her as a "significant number of irrelevant exhibits" (Moldovsky Dec. Ex. "F" at 10.)

Judge Cote determined that the deportment of the Moldovsky Firm, their efforts and results

obtained, and the number of hours worked and fees charged by them were all within the

range of appropriate professional comportment, and found no showing of cause. (Moldovsky

Dec. Ex. "F" at 10.)

122.    The Second Circuit, upon being asked to reconsider, also determined that Mr.

Ellner's claims of malice and misconduct were "irrelevant". (Moldovsky Dec. Ex. "Q" at

4:12.)

123.    These decisions are so conclusory that Lightbox and Mr. Ellner were forced to

withdraw their New York malpractice and breach of fiduciary claims as impossible (see, Ex.

"N") though they did not withdraw one NY. Jud. Law §487 claims.

124.    Lightbox also did not withdraw its previously still pending four motions for

sanctions premised on the same underlying false allegations, all of which were eventually

denied.  (See, Exs. "R" and "S".)

125.    Accordingly, this Complaint, premised on the same underlying allegations of

misconduct and abuse of Mr. Ellner must be dismissed in totality.  To the extent the Court

does not agree, all already dismissed false factual allegations, all impossible claims, and all

claims barred by the doctrines of law and by the Courts that have come before and as

explained here should be dismissed and the Plaintiff's claims should proceed on whatever

very limited facts remain.


BREM MOLDOVSKY, L.L.C.

Dated: Bucks County, Pennsylvania
April 5, 2021                          By:  *Brem Moldovsky*

Brem Moldovsky, Esq.
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
(215) 546-9957
brem@bremlaw.com


Dated: Montgomery County, Pennsylvania
April 5, 2021                          By:  

Gerald J. Pomerantz, Esq. (Pro Se)

The Coventry House
7301 Coventry Avenue, Ste. 501
Elkins Park, PA 19027