**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW ELLNER,<br><br>                    Plaintiff,<br>*v.*<br><br>BREM MOLDOVSKY, LLC,<br>BREM MOLDOVSKY, and<br>GERALD POMERANTZ, ESQUIRE<br><br>                    Defendants. | **CIVIL ACTION**<br><br><br>**NO. 20-6190-KSM**<br><br><br>**MEMORANDUM OF LAW IN<br>SUPPORT OF THE MOTION TO<br>DISMISS PURSUANT TO FED. R. CIV.<br>P. §§ 12 (b) (1), (3), (6) and (7)** |

# Contents

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARD OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.   The Complaint Must Be Dismissed For Failure To State A Claim In That Plaintiff Failed to Plead Or Show That The Complained Of Claims Lack Probable Cause, As They Did Not, and Were Successfully Terminated In His Favor, As They Were Not; Rather The Claims Are Alive, Pending And Are Being Litigated (*Lis Pendens*) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.   The Complaint Must Be Dismissed Based On Res Judicata, Collateral Estoppel And Long-Standing Law Precluding Any Malpractice And Attorney Wrongful Conduct Claim Once A Charging Lien Is Judicially Established . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.   The Complaint Must Be Dismissed For Failure To State A Claim In That Plaintiff's Claims Do Not State A Claim Under The Dragonetti Statute 42 Pa.C.S. §§8351-8354 . . . . . . . . . . . 18

IV.   The Complaint Must Be Dismissed Due For Lack Of Subject Matter Jurisdiction Because Plaintiff's Damages Cannot Exceed $75,000 (28 U.S. Code § 1332(a)) . . . . . . . . . . . . . . . . . 19

V.   The Complaint Should be Dismissed, Transferred And/Or Consolidated As the SDNY Appears the Appropriate Forum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI.   The Complaint Must Be Dismissed Due To The Indispensable, Necessary And Mandatory Party Rule, Fed. R. Civ. P. Rule 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VII.   The Abuse Of Process Cause of Action, Count II Fails To State A Cause Of Action In That The Complained Of Suit Sought Legitimate And Not Perverse Purposes . . . . . . . . . . . . . . . 22

VIII.    The Complaint Must Be Dismissed Since It Fails To State A Claim As There Was Probable

Cause (And No Improper Purpose) For The Complained Of Steps Taken . . . . . . . . . . . . . . 24

IX.   The Complaint Must Be Dismissed Since It Fails To State A Claim In Failing to Allege or Show Malice Or Improper Purpose By Any Of The Defendants . . . . . . . . . . . . . . . . . . . 31

X.   The Complaint Must Be Dismissed Due To Plaintiff's Unclean Hands . . . . . . . . . . . 32

XI.   The Complaint's Requests For Punitive And Emotional Damages Must Be Dismissed . . 34

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## Cases

Angstrohm Precision, Inc. v. Vishay Intertechnology, Inc., 567 F.Supp. 537 (E.D.N.Y. 1982) .. 15

Aranki v. Goldman & Associates, LLP, 34 A.D.3d 510 (2nd Dep't 2006) . . . . . . . . . . . . . . . 30

Babul v. Relmada Therapeutics, Civil Action No. 15-2937, 9 (E.D. Pa. Feb. 21, 2018) . . . 33, 36

Bell v. Township of Concord et al., 759 F.Supp.2d 621 (E.D.Pa. 2011) . . . . . . . . . . . . . . . . 26

Blair v. Bartlett, 75 N.Y. 150 (1878) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Blue Cross and Blue Shield of New Jersey v. Philip Morris, 53 F.Supp.2d 338 (E.D.N.Y., 1999)   14

Bobrick Corp. v. Santana Products, Inc., 698 F.Supp.2d 479 (M.D.Pa. 2010) . . . . . . . . . . . . 26

Bruno v. Bruno, 83 A.D.3d 165 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Calcagno vs. Aidman, 20 Misc. 3d 1132(A) (Sup. Ct., Richmond Co. 2008) . . . . . . . . . . . . . 28

Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1997) . . . . . . . . . . . . . . . 38

D.A. Elia Const. Corp. v. Damon Morey LLP, Not Reported in F.Supp.2d (W.D.N.Y. 2019) . . . 14

D'Amato v. Rhode Island Hosp. Trust Nat'l. Bank, 958 F.2d 361 (1st Cir., 1992) . . . . . . . . . 21

D'Elia v. Folino, 933 A.2d 117 (Pa.Super 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Di Loreto v. Costigan, 600 F.Supp.2d 671 (E.D.PA. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 20

Di Loreto v. Costigan, 600 F.Supp.2d 671 at 687 (E.D.P.A. 2009) . . . . . . . . . . . . . . . . . . . 35

DiFronzo v. Chiovero, Not Reported in Fed. Supp., 2010 WL 11531241(E.D.Pa. 2010) . . . . . . 5

Emery Celli Brinckerhoff & Abady LLP v. Rose, 29 Misc. 3d 1230(A), 920 N.Y.S.2d 240 (Sup. Ct.
      N.Y. Cty. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Ford Motor Co. v. Montana Eighth Judicial District Court (No. 19-368) . . . . . . . . . . . . . . 30

Hart v. O'Malley, 781 A.2d 1211 (Pa. Super 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Hyldahl v. Denlinger, 124 F.Supp.3d 483 (E.D.Pa. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

In re Finney, 184 Fed.Appx. 285, 2006 WL 1759834 (3d Cir.2006). . . . . . . . . . . . . . . . . . . . 34

In the Matter of ARLAN'S DEPARTMENT STORES, INC., Debtor, 615 F.2d 925 (2d Cir. 1979)
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244 (3d Cir., 2006) . . . . . . . . 16

Kaufman v. Cohen, 307 A.D.2d 113, 760 N.Y.S.2d 157, 2003 N.Y. Slip Op. 14433 (1st Dep't 2003)
      . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Kaufman v. Eli Lilly and Co., 65 N.Y.2d 449 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

LabMD, Inc. v. Tiversa Holding Corp., 785 Fed.Appx. 74 (3d'Cir., 2019) . . . . . . . . . . . . . . . 8

Larrison v. Larrison, 750 A.2d 895 (Pa. Super. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Larry Pitt & Associates v. Lundy Law LLP,  294 F.Supp.3d 329 (3d'Cir., 2018) . . . . . . . . . . 10

lausi v. Stuck, 74 A.3d 242, 2013 PA Super (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lusk v. Weinstein, 85 A.D.3d 445 (1 Dept. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Majorsky v. Douglas, 58 A.3d 1250, 1270 (Pa. Super. Ct. 2012) . . . . . . . . . . . . . . . . . . . . . . 8

Matsinger v. Arzoomania, 86 Pa.Super. 430 (1925) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Miller v. Simpson, 325 Fed.Appx. 25 (2d Cir., 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Miller v. St. Luke's Univ. Health Network, 142 A. 3d 884, 2016 PA Super 134 . . . . . . . . . . . 6

Morris v. DiPaolo, 930 A.2d 500, 505 (Pa.Super.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Mulder v. Wells Fargo Bank, N.A., 2018 WL 3750627 (W.D.P.A., July10, 2018) . . . . . . . . . . 28

Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 147 n. 12 (3d Cir.1999) . . . . . . . . . . . . 36

Pendergrass v. Pendergrass, --- F.Supp.3d ----, 2021 WL 510279 at 41 (2021) . . . . . . . . . . . . 5

Perelman v. Perelman, 125 A.3d 1259  (Pa. Super.2015), reargument denied, appeal denied 141 A.3d
      435, 636 Pa. 96 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Pond Constr. Corp. v. Italine Inc., 2021 NY Slip Op 50169(U) (District Court, Suffolk, March 4,

2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15
<u>Raynor v. D'Annunzio,</u> Supreme Court of Pennsylvania No. 35 EAP 2019 (Dec. 22, 2020) . . .   20
<u>Resolution Trust Corp. v. Farmer,</u> 823 F. Supp. 302 (E.D. Pa. 1993) . . . . . . . . . . . . . . . . .   30
<u>Romero v. Allstate Ins. Co.</u>, 52 F.Supp.3d 715 (E.D. Pa. 2019) . . . . . . . . . . . . . . . . . . . . .   37
<u>Rosenfield v. Pennsylvania Auto. Ins. Plan,</u> 431 Pa.Super. 383, 389, 636 A.2d 1138 (1994) . . . . .   9
<u>Ryan v. New York Telephone Co.</u>, 62 NY2d 494 (NY 1984) . . . . . . . . . . . . . . . . . . . . . . .   16
<u>Saudi Basic Industries Corp. v. ExxonMobil Corp.</u>, 401 F.Supp.2d 383 (D.N.J. 2005) . . . . . . .   36
<u>Schmidt v. Currie,</u>  470 F.Supp.2d 477, affirmed 217 Fed.Appx. 153, 2007 WL 470500
    (E.D.Pa.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   34
<u>Shaffer v. Stewart,</u> 326 Pa.Super. 135, 473 A.2d 1017 (1984) . . . . . . . . . . . . . . . . . .   10,  25
<u>State of New York Workers' Compensation Bd. v. Madden,</u> 38 Misc.3d 1229(A) (Supreme Court,
    Albany County, New York, 2013)( . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   30
<u>Teeple v. Carabba</u>, 2009 WL 5033964, Not Reported in F.Supp.2d (E.D.Pa., December 22, 2009)    6
<u>Urban v. Tyszka</u>, 16 Pa. D. 625 (Pa.Com.Pl., January 01, 1907) . . . . . . . . . . . . . . . . . . . .   38
<u>Verint Systems,</u> United States Court of Appeals, Second Circuit, Nos. 19-1031(L), 19-1297(xap)
    (March 16, 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14
<u>Weinstein v. CohnReznick, LLP,</u> 144 A.D.3d 1140 (2nd Dep't 2016) . . . . . . . . . . . . . . . . .   30
<u>Zito v. Fischbein Badillo Wagner Harding</u>, 80 A.D.3d 520, 521, 915 N.Y.S.2d 260, 261 (1st Dep't
    2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

**Other Authorities**

Restatement of Torts, Second, § 673(1)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
Restatement of Torts, Second, § 674 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

The Defendants Brem Moldovsky and Brem Moldovsky, L.L.C. and Gerald J. Pomerantz ("Defendants," and Brem Moldovsky, L.L.C. is also referred to herein as the "Moldovsky Firm") hereby move this Honorable Court per 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Plaintiff's Complaint ("Complaint") for failure to state a claim and for the various reasons stated herein and in the actual Motion To Dismiss being filed along with this Memorandum.

## PRELIMINARY STATEMENT

All of the Defendants hereby move this Honorable Court per 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Plaintiff's Complaint ("Complaint") for failure to state a claim and Fed. R. Civ. Pro. §§ 12(b) (1 subject matter jurisdiction), (3 venue), (6 failure to state a claim) and (7 failure to join necessary parties). Defendants also move to dismiss the Plaintiff's Complaint because documentary evidence refutes it, and it is barred by *res judicata*, *collateral estoppel*, issue preclusion, and unclean hands, all of which Plaintiff and his counsel knew, but misrepresented prior to the filing of this complaint based on Plaintiff's involvement in the underlying litigations, and counsel's recent involvement in similar cases in this court and Commonwealth, including but not limited to Bruce J. Chasan, LLC et al. v. Pierce Bainbridge Beck Price & Hecht, LLP, et al., 2021 WL 148406 (E.D.Pa. January 15, 2021), Raynor v. D'Annunzio, Supreme Court of Pennsylvania No. 35 EAP 2019 (Dec. 22, 2020), Pendergrass v. Pendergrass, --- F.Supp.3d ---- (2021), and Di Loreto v. Costigan, 600 F.Supp.2d 671 (E.D.Pa. 2009). [1]

---

[1] Notably, three of the four cited cases were heard in the E.D.Pa., and each was encountered unrelated to Mr. Haines' involvement with them. Three of these decisions were issued over the course of this year. Similarly, Lightbox and Mr. Ellner have received Court decisions in March 2020 (Ex. "Q"), August 2020 (Ex. "S"), December 2020 (Ex. "R") and March 2021 (Ex. "Y"). Between them, Plaintiff and his counsel had six court decisions (now seven) that made this Complaint impossible, and yet they persisted.

## FACTUAL AND PROCEDURAL BACKGROUND

The background here is somewhat extensive.  Rather than recount it all here, it is instead referenced and incorporated herein by referring to the accompanying Declaration of Brem Moldovsky, Esquire ("Moldovsky Dec.") and in particular (1) the recently filed Southern District of New York Complaint against the Plaintiffs in this matter, Mr. Miller, and other parties, (2) the Eastern District of Pennsylvania Complaint against the Plaintiff and his companies, Exhibits "U" and "V" to the Moldovsky Dec., respectively, and (3) the underlying Bucks County Complaint, Exhibit "A" to the Plaintiff's Complaint in this matter.  While a review of these will provide much background and context, still, these are but a few documents amongst literally thousands related to these matters over many dockets in at least six forums.  Mr. Ellner, the Plaintiff here is at the center of all this, bringing claims here in a barely new array that have been rejected in more forums than they have been brought in.

The Complaint alleges two causes of action: malicious prosecution and wrongful abuse of process.  Both fail as a matter of law and for various reasons as this motion argues and shows.  The Complaint basically alleges that the "Bucks Case" (Moldovsky v. Miller et al, Court of Common Pleas of Bucks County, Pa., No. 2019-00793) and various steps and procedures associated with it constitute the facts underlying these causes of action.  The Bucks Case and each step by the undersigned was by probable cause and continues to be, as explained in the Moldovsky Dec. at ¶¶ 45 - 55, expressing serious, sincere, credible, alive, etc. claims which include the claims from the Bucks case as that matter was withdrawn without prejudice. (Moldovsky Dec. at ¶ 61.)

The background of the Bucks Case, as further illustrated in the new SDNY action, involved: 1) Mr. Miller, an attorney-colleague who had acted as counsel for the Moldovsky family and to the Moldovsky Firm and who was referred into work on Mr. Ellner's matters by Moldovsky and in part as co-counsel to Moldovsky, having committed severe breaches of attorney and ethical duties

2

toward the Moldovsky family and the Moldovsky Firm; 2) Lightbox and Ellner, highly sophisticated, well-funded global company and person who had represented to the Federal Court that they were able to manage global legal operations for the relatively legally-intensive high-end global residential luxury third homes exchange for the wealthy, aspiring to be the Airbnb for the rich (Moldovsky Dec. at ¶12), who also turn on their partners and lawyers then overly-litigating to jail people driven by foolhardiness and malice (Moldovsky Dec. at ¶ 18), who then turned on and went after Brem Moldovsky, Esquire and the Moldovsky Firm wildly, beyond propriety, committing vast abuse, wrong, false attacks and more as well-documented through many litigation proceedings with all the attacks being rejected by five Courts and in excess of ten judges (Moldovsky Dec. at ¶¶ 24, 62, 67 - 69) and did so in part by purposefully utilizing and continuing with Moldovsky' own attorney with all the benefits, confidential information, strategically valuable information and more and thus strategically aiding and abetting Miller's abuse of his other clients who Miller downgraded in favor of his more desirable client, Mr. Ellner; 3) their actions met the elements of each cause of action plead; 4) they apparently possessed many recorded phone discussions between Mr. Ellner and Mr. Moldovsky recorded and various of them transcribed all without Moldovsky's consent, and it was believed that some or all of these were in violation of the Pennsylvania Wiretap Act, 18 Pa. Cons. Stat. § 5703, and that some may have violated the Florida statute (Fla. Stat. ch. 934.03), the California statute (Cal. Penal Code § 632) and the Nevada statute (NRS 200.620); 5) a respected expert, Samuel Stretton, Esquire, had provided an expert report and then another in support of the malpractice claims and for disqualification of Mr. Miller as counsel for Mr. Ellner and against the Moldovskys (Moldovsky Dec. Ex. "I"), and Judge Baldi recognized the claims as having merit (Moldovsky Dec. Ex. "L".); 6) lawyers observing were shocked and horrified by Mr. Ellner and Mr. Miller's actions; 7) Mr. Ellner and Mr. Miller were blatantly dishonest about the nature of the recorded calls, including on issues like misrepresenting that Mr. Ellner had only called to Mr.

3

Moldovsky to a N.Y. law firm number and the records showed Mr. Ellner calling to Mr. Moldovsky's Pennsylvania cell phone number (Moldovsky Ex. "K"),  and Mr. Miller dishonestly swearing and arguing that he did not know the Moldovsky's financial information but then he was impeached by showing he worked on and  signed onto pleadings on this very topic (Moldovsky Dec. Ex. "A"); 8) the causes of action, reliefs sought, etc. of the Bucks case were and are legally cognizable as described below at §§ V, X; and 9) while the Bucks Case was started with a Summons and simple requests for pre-complaint discovery mostly about the recorded calls to focus the Complaint, Mr. Ellner and his counsel refused to respond to discovery and filed a Rule to File a Complaint, forcing a Complaint to be filed without the benefit of the records of the phone recordings and locations from where calls took place.

There was a significant amount of background that led to other aspects of the Bucks Case that is reflected to a great extent in the pending actions (Moldovsky Dec. Exs. "U" and "V"). However, all of this was enough, objectively, to reasonably believe the Bucks case had sufficient probable cause, as shown below at §X.  Before and even beyond probable cause, however, there are various – with a few very prominent – reasons why the Complaint must be dismissed, and they are argued in the Motion and below.

## STANDARD OF LAW

Fed. R. Civ. P. § 12(b) provides that a responsive motion to dismiss a Complaint may be made on the basis of (1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19.

Defendants here move pursuant to §§12(b)(1), (3), (6) and (7) to dismiss Plaintiff's Complaint.

## ARGUMENT

I.   **The Complaint Must Be Dismissed For Failure To State A Claim In That Plaintiff Failed to Plead Or Show That The Complained Of Claims Lack Probable Cause, As They Did Not, and Were Successfully Terminated In His Favor, As They Were Not; Rather The Claims Are Alive, Pending And Are Being Litigated (*Lis Pendens*)**

For a malicious prosecution claim: "There are three elements that must be proven for a wrongful use of civil proceedings, or Dragonetti, claim: (1) the underlying civil proceedings were terminated in favor of the plaintiff, (2) the defendant caused these proceedings to be instituted without probable cause or with gross negligence, and (3) the proceedings were instituted primarily for an improper purpose." Pendergrass v. Pendergrass, --- F.Supp.3d ----, 2021 WL 510279 at 41 (2021).  See also, DiFronzo v. Chiovero, Not Reported in Fed. Supp., 2010 WL 11531241(E.D.Pa. 2010) ("to determine whether a party has received a favorable termination in the underlying case, the court considers the judgment as a whole in the prior action; ... the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the law suit.") Starting with the first element, "termination in favor" of Plaintiff (who was one of several Defendants in the Bucks Case), the Complaint fails to state a claim because the Bucks Case was not terminated in Plaintiff's favor.  This lack of favorable termination requires dismissal on this 12(b)(6) motion.

The Bucks Case was withdrawn without prejudice to be brought in New York along with other claims, making the litigation more worthwhile. (Moldovsky Dec. at ¶ 61.)  Various court decisions occurred over 2020 as well so the current litigations which include the same and very similar claims as the Bucks Case have just begun.  (Moldovsky Dec. at ¶ 71.)  Clearly, the Bucks Case was not terminated in Mr. Ellner's favor and is still ongoing now in current litigation.  (Moldovsky Dec. at ¶ 71.)  The Complaint at ¶¶ 42 - 43 acknowledges the lack of favorable termination, which is clear and unambiguous on the record.   Judge Baldi, in the Bucks Case, recognized that claims would or could

go to a jury, the expert reports and certificate of merit were appropriate at least on a prima facie level (see, e.g., Teeple v. Carabba, 2009 WL 5033964, Not Reported in F.Supp.2d (E.D.Pa., December 22, 2009)("the existence of probable cause vitiates a cause of action for malicious prosecution under Pennsylvania law."); Miller v. St. Luke's Univ. Health Network, 142 A. 3d 884, 2016 PA Super 134. , and that the case was thus not at all imminently dismissible. (Moldovsky Dec. Ex. "L" at ¶ 111:22-25.)  With this, Mr. Ellner did not achieve a favorable termination of the Bucks Case.[2]

The Pendergrass case makes clear that if the claims being sued upon as violating the Dragonetti statute had met a standard higher than the probable cause level, even if the claims went on to (totally) lose, then there cannot be a Dragonetti claim.  Here, where the claims were voluntarily withdrawn, never lost, were not near imminent defeat, were never answered and no discovery was turned over, and actually are now alive, in litigation and vibrant - and since the claims were adjudicated as not being sanctionable, a reason to disgorge or deny attorney's fees or misconduct at all – probable cause has been sufficiently met by the various holdings – including specifically those of Judge Baldi – which have occurred.  The various decisions and occurrences sufficiently evidence probable cause so that the Complaint is impossible.  Like in Pendergrass, the *prima facie* showing of probable cause to sustain the action bars a Dragonetti action.  Pendergrass explains that: "The Court further notes that Judge Ott found that Theodore's Will was prima facie valid after an evidentiary hearing where Theodore, Ida, Saunders, and Cleveland testified and were cross-examined. While this determination is not preclusive (and Judge Ott clearly determined after the full hearing that the witnesses were untruthful), the prima facie standard is higher than that required to show probable cause under the Dragonetti Act.  Defendants Rounick and Bacine had probable cause to present Theodore's Will for probate." Id. at 61 – 62.

---

[2] See, D'Elia v. Folino, 933 A.2d 117 (Pa.Super 2007) ("A wrongful use of civil proceedings suit may be dismissed on the grounds of an insufficiently "favorable termination"); see also, Hyldahl v. Denlinger, 124 F.Supp.3d 483 (E.D.Pa. 2015)(voluntary withdrawal is not a favorable termination)

This defense of *lis pendens* is based on the claims which Plaintiff pleads here he has had successfully terminated are actually open, alive, current and ongoing, as the Bucks case claims are alive in the new currently pending litigation.  The Complaint notes that a number of amended complaints were filed and that by the time of one of the amended complaints, claims in the case were not continued against Mr. Ellner.  Later a discontinuance of the entire action was filed without prejudice. Although Plaintiff likely argues here that the Bucks Plaintiffs below knew they would lose to Mr. Ellner's  preliminary objection arguments,  Judge Baldi's determinations that this matter could go to a jury trial shows that the claims were not imminently close to defeat at all, and such was the knowledge of the Plaintiffs in that action.  There was never a court ruling dismissing the claims against Mr. Ellner; indeed, there was never a court decision on any of the rounds of preliminary objections.  Plaintiffs in the Bucks case never got to file answers and briefs in opposition to the preliminary objections of Mr. Ellner, exercising their ability under the Pennsylvania Rules of Civil Procedure to file amended complaints instead; thus, the arguments raised in preliminary objections regarding jurisdiction and the legal sufficiency of the causes of action asserted against Mr. Ellner were never ripe for judicial decision.  Mr. Ellner never had to file an answer to the complaint in the underlying action, much less complete the discovery phase or bring a summary judgment motion, though he will now have the opportunity since the same claims are all alive in the two new Federal Matters (Moldovsky Dec. Exs. "U" and "V")  filed recently because court decisions have finally made them ripe. (Moldovsky Dec. ¶ 71.)

With all of this, respectfully, this motion to dismiss must be granted since there was not favorable termination, and the claims are still alive.  Mr. Ellner's Complaint does not plead it specifically and he cannot establish this element because the underlying action did not terminate in favor of Mr. Ellner.

Nor can Plaintiff argue that the Bucks Case ended with a voluntary withdrawal that is

tantamount to a favorable termination in its favor.  Courts will look to the circumstances to determine whether the voluntary withdrawal was made in the face of "imminent defeat," but, here there was no such favorable determination in favor of Mr. Ellner for the reasons stated above.  The Pennsylvania Superior Court stated in Majorsky v. Douglas, 58 A.3d 1250, 1270 (Pa. Super. Ct. 2012) at 33-34 that voluntary withdrawal is not favorable termination unless it is "tantamount to the unbidden abandonment of a claim brought in bad faith."  This was affirmed by the Third Circuit Court of Appeals in LabMD, Inc. v. Tiversa Holding Corp., 785 Fed.Appx. 74 (3d'Cir., 2019) ("Here, Appellees withdrew pursuant to Rule 229 of the Pennsylvania Rules of Civil Procedure, which allows a plaintiff to voluntarily withdraw with prejudice. See, Pa. R. Civ. P. 229. While Appellants argue that a withdrawal with prejudice is ipso facto a termination favorable to the parties against whom the action is brought, this argument is unconvincing. Pennsylvania courts "have held specifically that, unless the voluntary withdrawal of the prior case was 'tantamount to an unbidden abandonment of a claim brought in bad faith,' the discontinuance of the underlying action does not constitute a favorable termination in favor of the Dragonetti Act plaintiff."")  Since the Third Circuit has held claims withdrawn with prejudice are not favorably terminated then surely this is so with claims withdrawn without prejudice, as occurred here.

In the Bucks Case, the claims against Mr. Ellner were voluntarily withdrawn without prejudice at an early stage, before the judge had the ability to review their merits, and it was not a last-minute withdrawal at the eve of trial or in the face of an imminent dismissal by the Court.  Indeed, here, the claims were voluntarily dismissed early, without prejudice, and before a judge ruled on preliminary objections, summary judgment or trial.

Besides, even if some of the claims against Mr. Ellner ultimately terminated in his favor (which has not occurred here), it has been held that the Plaintiff in the underlying case only needs to have one valid claim and that a wrongful use of process case cannot be brought if only some claims

lacked probable cause.  See, Iausi v. Stuck, 74 A.3d 242, 2013 PA Super 222 (2013) (even though

deputies had withdrawn their defamation claim against commissioner in the underlying lawsuit;

while deputies withdrew their defamation claim, they added six new claims against the commissioner

which remained pending in the underlying action ... Therefore, we conclude that Appellant's

"[Dragonetti] cause of action [has] not accrue [d]").  Rosenfield v. Pennsylvania Auto. Ins. Plan, 431

Pa.Super. 383, 389, 636 A.2d 1138 (1994) explains that:  "Pennsylvania law regarding the wrongful

use of civil proceedings is in conformity with the Restatement of Torts, Second, § 674. Shaffer v.

Stewart, 326 Pa.Super. 135, 473 A.2d 1017 (1984). "Comment h. to § 674 states that "in an action

for malicious prosecution the court determines whether ... the proceedings were terminated in favor

of the plaintiff." Restatement of Torts, Second, § 673(1)(b).  ...  'Whether withdrawal or an

abandonment constitutes a final termination of the case in favor of the person against whom the

proceedings are brought ... depends on the circumstances under which the proceedings are

withdrawn.' Id. Comment j. refers to §§ 660 and 661, which state that withdrawals of proceedings as

a result of compromise or agreement, or, the impossibility of bringing an accused to trial, do not

constitute a termination favorable to the party against whom proceedings have been brought. Id.  If

this is the case then surely a voluntary discontinuance obtained by a plaintiff, occasioned by the

mootness of the issues raised by that plaintiff, does not constitute a termination favorable to the

party who subsequently initiates an action for wrongful use of civil proceedings.  Shaffer v. Stewart,

supra; Restatement of Torts, Second, §§ 660, 661, 673(1)(b), 674 (Comments h. and j.)." See also,

Larry Pitt & Associates v. Lundy Law LLP,  294 F.Supp.3d 329 (3d'Cir., 2018) ("law firm's voluntary

dismissal of its trademark suit without prejudice was not termination in competitor's favor, as there

was no indication that law firm withdrew its suit in face of imminent defeat or that dismissal was

otherwise based on merits of suit.")  Accordingly, for all the foregoing reasons, Mr. Ellner's

Complaint must be dismissed.

II.    **The Complaint Must Be Dismissed Based On Res Judicata, Collateral Estoppel And Long-Standing Law Precluding Any Malpractice And Attorney Wrongful Conduct Claim Once A Charging Lien Is Judicially Established**

Defendants move to dismiss based on the doctrines of *collateral estoppel* and *res judicata* based on the prior Courts' decisions as to the same allegations that are being brought here.  (Moldovsky Dec. at ¶¶4, 34, 36, 67, 68 and Exs. "F", "Q", "R", and "S".)  Lightbox and Mr. Ellner have sought to punish, sanction and make award in many other venues already based on the same claims and allegations being alleged in this case, beginning (generally) with Plaintiff's July 2018 Interpleader Complaint brought in the Southern District of New York, and continuing to this day.  (Moldovsky Dec. at ¶22 .)  In New York, Judge Cote dismissed Lightbox and Ellner claims as without Merit on October 22, 2018 (Lightbox Ventures, LLC v. 3rd Home Limited, 2018 WL 5255169 (S.D.N.Y. October 22, 2018) (Moldovsky Dec. Ex. "F") and awarded a statutory charging lien.  The Second Circuit affirmed and determined by Summary Order dated April 21, 2020, that the Moldovsky Firm's conduct (including its actions in Pennsylvania) were appropriate and allegations against it were irrelevant and lacking merit since there was no basis to Lightbox's claims of cause to strip a statutory charging lien award, for disgorgement, or for any finding of misconduct.  (Moldovsky Dec. Ex. "F".)  On August 27 and December 10, 2020, the New York Appellate Division, and then New York Judge Cannataro, denied four motions for sanctions predicated on the same facts.  (Moldovsky Dec. Exs. "R" and "S".)  Bucks County Judge Baldi did not grant any of Mr. Ellner, Lightbox and Mr. Miller's six sanctions requests, either.  (Moldovsky Dec. at ¶ 58.)

Thus, Plaintiff's claims and allegations having been raised extensively and specifically, but denied in the Defendants' favor in every venue wherein they were plead and raised – at least four venues already, and three venues since the withdrawal of the Pennsylvania matter – prevent the same claims and allegations from being litigated once more in this Court.  Mr. Ellner's relitigation of them has helped set the stage for the SDNY Action against him.  (Moldovsky Dec. Ex. "U".)

*Res judicata* and *collateral estoppel* preclude this Complaint because (1) Ellner raised the Bucks County Lawsuit and the main allegations raised in the current complaint to the Second Circuit in Lightbox's Reply Brief, particularly at page 7 (Moldovsky Dec. Ex. "O".)   The Moldovsky Firm moved to strike those materials from the Court's consideration, which the Court denied (Moldovsky Dec. Ex. "P".); and (2) res judicata applies based on a body of law that that holds that the statutory charging lien award by Judge Cote and, crucially, upheld by the Second Circuit Court of Appeals in the face of the same allegations of this Complaint preclude any claims sounding in misconduct, negligence or purposeful conduct that was or could have been raised by Lightbox/Ellner at the time. This includes many of the specific allegations of the Complaint as well.

Mr. Ellner and his counsel Mr. Miller have built quite a record of problematic litigation as reflected by numerous court dockets.  Lightbox has been known to pursue litigation that is "foolhardy" ( Judge Cote Attorney's Fees Order, Moldovsky Dec. Ex. "D"  at 7) to litigate overly-aggressively (Judge Cote Trial Order, Moldovsky Dec. Ex. "E"  at 14) and Judge Cote even pointed out that Mr. Ellner sought to cage his opponents (Judge Cote Trial Order, Moldovsky Dec. Ex. "E". at 14).  Second Circuit Judge Eaton stated and indicated on the record that Mr. Ellner did not raise an appealable issue but rather that Mr. Ellner litigated an extensive Federal Circuit Court appeal without basis because Lightbox simply did not like Judge Cote's decision.[3]  The appeal was found to be meritless and without basis, and Lightbox's allegations were found to be irrelevant. (Moldovsky Dec. Ex. "Q".)   These allegations included the main allegations of the complaint here, and yet Plaintiff brings them before another Court, with yet another counsel yet again: that the Bucks County litigation was wrongfully done, etc.  Since these allegations have been fully adjudicated they are barred by the doctrines of *collateral estoppel*, *res judicata* and long-held caselaw in New York that

---

[3] An audio recording is available here: https://www.ca2.uscourts.gov/decisions/isysquery/aeeda4d8-6f7d-47b6-a273-268f45d2570b/571-580/list/

bars claims of misconduct and malpractice once a finding such as the one by Judge Cote (Moldovsky Dec. Ex. "F"), which firmly found no prima facie showing of attorney misconduct sufficient to bar a statutory charging lien, a finding that necessarily bars any claims of attorney misconduct, malpractice, breach of fiduciary duties, wrongdoing to the client, etc.[4]

Lightbox and Mr. Ellner were forced to withdraw the majority of their claims for malpractice and breach of fiduciary duty as impossible thereafter.  (Moldovsky Dec. Ex. "N".)  Each Court since the Bucks Case was initiated has declined to grant sanctions based on its existence as well. (Moldovsky Dec. Exs. "R", "S", "Q".)  Thus, the attacks of the Complaint have been fully and finally adjudicated and necessarily determined.

To be clear, the analysis of *res judicata* and *collateral estoppel* holding the Second Circuit's Decision of April 21, 2020 as preclusive of the Complaint is articulated in the accompany Motion at §III and boils down to include that the Second Circuit – with governing authority over attorney conduct[5] – determined issues of disgorging attorney's fees, whether an  attorney committed any substantive misconduct, malpractice, fraud, undue influence, self-dealing, extortion, blackmail, client abuse, etc. (Moldovsky Dec. at ¶ 22) as well as the issues of whether starting the Bucks Case was

---

[4]This has been established law in New York for 150 years.  See, e.g., <u>Lusk v. Weinstein</u>, 85 A.D.3d 445 (1 Dept. 2011) ("charging lien" bars client from "thereafter asserting a claim for legal malpractice"); <u>Zito v. Fischbein Badillo Wagner Harding</u>, 80 A.D.3d 520, 521, 915 N.Y.S.2d 260, 261 (1st Dep't 2011) (malpractice claim "barred under doctrine of res judicata by court's imprimatur of a retaining lien"); <u>Emery Celli Brinckerhoff & Abady LLP v. Rose</u>, 29 Misc. 3d 1230(A), 920 N.Y.S.2d 240 (Sup. Ct. N.Y. Cty. 2010) ("an order fixing a charging lien bars any claim for legal malpractice"); see also <u>Blair v. Bartlett</u>, 75 N.Y. 150 (1878).

[5] <u>Blue Cross and Blue Shield of New Jersey v. Philip Morris</u>, 53 F.Supp.2d 338 (E.D.N.Y., 1999)  ("Federal Courts have Standards of professional conduct;  enforcement;  discipline & Power to interpret standards and Interpretation and application of ethics rules to conduct of attorneys appearing in federal court ultimately is controlled by federal law");  <u>In the Matter of ARLAN'S DEPARTMENT STORES, INC.</u>, Debtor, 615 F.Supp.2d 925 (2d Cir. 1979) ("There is no doubt of the inherent power of a bankruptcy judge to deny fees and disbursements where serious breaches of fiduciary obligations occur."); <u>Miller v. Simpson</u>, 325 Fed.Appx. 25 (2d Cir., 2009) ("we have no doubts that disgorgement of fees was appropriate … Miller violated that portion of the Escrow Order requiring him to retain the proceeds in an escrow account… Miller did not obtain a fee award as required"); <u>D.A. Elia Const. Corp. v. Damon Morey LLP</u>, Not Reported in F.Supp.2d (W.D.N.Y. 2019) ("[t]he court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."); <u>International Technologies Marketing v. Verint Systems</u>, United States Court of Appeals, Second Circuit, Nos. 19-1031(L), 19-1297(xap) (March 16, 2021) ("motion for sanctions against an information technology firm and its attorneys for allegedly pushing a frivolous claim in a long-running and troubled contract suit that invoked the court's inherent power to punish parties for misconduct.").

done improperly; this included for the wrongful use of process purpose of trying to force Mr. Ellner

to pay and settle attorney fee claims in the NY State litigation. (Moldovsky Dec. Ex. "M " at ¶ 131.)

The second Circuit affirmed Judge Cote's ruling that the attorney comportment was appropriate

(Moldovsky Dec. Ex. "F" at 10.)  The Second Circuit also determined that the allegations by Mr.

Ellner and Lightbox, his company did not meet a *prima facie*, were meritless and irrelevant.[6]  Thus,

when presented with the allegations that are the center of the Complaint here – that the Moldovsky

Firm acted improperly by bringing the Bucks Case – the Second Circuit – deciding under standards

very excruciating and exacting for attorneys -  found no basis for any allegation of attorney

misconduct, client abuse, etc.  The maliciousness, reckless and lack of probable cause elements of

the Complaint were <u>necessarily determined</u> and adjudicated by the Second Circuit's Decision to

preclude them as impossible.  Mr. Ellner cannot continue to relitigate these issues.  <u>See</u>,  <u>Pond

Constr. Corp. v. Italine Inc.</u>, 2021 NY Slip Op 50169(U) (District Court, Suffolk, March 4, 2021) ("

Once a Court of competent jurisdiction decides that matter, all claims arising out of the settled

dispute, whether asserted or not in the initial action, are barred from re- litigation…The legal

doctrines of Res Judicata and Collateral Estoppel serve to bar relitigation of claims by parties "or"

those in privity with the same cause of action"); <u>Kaufman v. Eli Lilly and Co.</u>, 65 N.Y.2d 449 (1985)

("the identical issue necessarily must have been decided in the prior action and be decisive of the

present action, and second, the party to be precluded from relitigating the issue must have had a full

and fair opportunity to contest the prior determination"); <u>Bruno v. Bruno</u>, 83 A.D.3d 165 (1st

Dep't. 2011); <u>Angstrohm Precision, Inc. v. Vishay Intertechnology, Inc.</u>, 567 F.Supp. 537 (E.D.N.Y.

1982).

---

[6] This included that the Bucks Case was initiated for any purpose that was not righteous, which had already been disproven by the expert report of Mr. Stretton anyway. (Moldovsky Dec. at ¶ 42.)

Claims are barred whether they were made or could have been made.  "Res judicata generally involves "claim" relitigation preclusion (same parties) while collateral estoppel involves "transaction relitigation preclusion... The doctrine of collateral estoppel. . . precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of actions are the same" Id.  citing  Ryan v. New York Telephone Co., 62 N.Y.2d 494 (1984), and thus all the more so when the central claims of the Complaint were placed before and heard by the Second Circuit whose decision precludes all negligence, recklessness, malicious, etc. claims (see, footnote 3, above) and in motions for sanctions too in some form or another.  See, Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244 (3d Cir. 2006) ("independently sufficient alternative findings should be given preclusive effect.").  Accordingly, the Complaint here must be dismissed per *res judicata* and *collateral estoppel* as this is the case even when causes of action may be different between the prior and current matter and even when there has simply been a legal decision in a prior matter involving the same parties (without necessarily all of the formal estoppel indicia present (though they are here)), as Mr. Haines is well aware of based on his involvement in  the matter of Bruce J. Chasan, LLC et al. v. Pierce Bainbridge Beck Price & Hecht, LLP, et al.,  2021 WL 148406 (E.D.Pa. January 15, 2021), wherein this Court just recently stated "Therefore, res judicata bars any claim that "arises from the same set of facts as a claim adjudicated on the merits in the earlier litigation." *Id.* (quoting *Blunt, 767 F.3d at 277*)."  The Court should strongly reject Plaintiff's Complaint as impossible based on Plaintiff and his counsel's misrepresentation of the prior decisions and their preclusive effect here (by pretending like they are unaware of them, e.g., Ex. "X" at 4) despite knowing the opposite to be true before the Complaint was even filed.

 While Plaintiff may argue, as its counsel did in Perelman v. Perelman, 125 A.3d 1259 (Pa. Super. 2015), reargument denied, appeal denied 141 A.3d 435, 636 Pa. 96, that a decision on a

sanction motion denying the allegations that are the same as in a malicious prosecution or abuse of process claim does not bar these causes of action in that they may be based on recklessness or negligence, that argument does not work here as the Second Circuit's Decision bars claims in negligence and recklessness as well, which as mentioned above, is long-standing law in New York. (See, footnote 4, above.).  Not only that, the claims in this case were also presented to the New York Supreme Court in a motion for sanctions as "evidence" of misconduct, which was dismissed (Moldovsky Dec. Ex. "R"), and to the First Department of the Appellate Division of the New York Supreme Court as "evidence" of frivolous litigation, which was also dismissed. (Moldovsky Dec. Ex. "S".)  Judge Baldi in Pennsylvania also declined to grant sanctions *in that matter, the one in question*. Moreover, the New York Supreme Court's First Department of the Appellate Division, just now, on March 30, 2021 decided and ordered that Mr. Ellner's ongoing false and already adjudicated as baseless, meritless and irrelevant claims are not allowed to be included in its arguments and positions, they must be stricken, not included in the litigation and they cannot proceed further.  (See, Moldovsky Dec. at ¶ 76.)

Accordingly, various of the allegations of the Complaint here, including paragraphs 11-15, 18, 49-53 and others, have been shut down, dismissed, made impossible, considered precluded by *res judicata* and *collateral estoppel*, etc.  (See, Moldovsky Dec. at ¶ 75.)  These allegations are, in essence, exactly the same as those plead in the Interpleader Complaint, litigated before the Second Circuit, and/or raised before Judge Cannataro and New York Appellate Division, First Department,  (See, Moldovsky Dec. at ¶ 76.)  There have now been three separate Appellate Division orders related to Mr. Ellner and his entities' attacks on his prior counsel, stopping Mr. Ellner from lobing false allegations and sneak attacks on reply to which counsel cannot  respond. (Moldovsky Dec. Exs. "S" and "Y".)   .  Furthermore, even though Plaintiff's Counsel expressed being not aware of Plaintiff being involved with pending litigation involving Defendants (Moldovsky Dec. Ex. "X" at  4), the

reality is that there is pending litigation involving the Plaintiff (a lot of it) and court decisions made in those litigations are preclusive of the claims here.  While it is convenient for Plaintiff Counsel to express not to know of their client's involvement in the other litigations in which their client has made hundreds of filings, that certainly does not stand in the way of the various court decisions in those matters precluding the Complaint here.

What really is happening is that Mr. Ellner has gotten lost in cycles of claims and recycled claims.  Now, he is suing his former counsel Scarola Malone & Zubatov, LLP  ("SMZ") for malpractice based on events that are at least in part a result of his own lies.  (Moldovsky Dec. at ¶29.)  He has also sued this firm for malpractice, claims which he was forced to withdraw as baseless, meritless and impossible  (Moldovsky Dec. Ex. " N".)  This is not a new or short pattern. Mr. Ellner has raised issues with just about every professional he has worked with in the time this firm has known of him.  This extends from the Defendants in the 3rd Home matter to all his counsel who were entered on the case for him (with perhaps the exception of Mr. Miller, but we shall see). (Moldovsky Dec. at ¶19.)  It includes his own expert witnesses, various counsel, and other service providers.  (Id.)  This fits in with Judge Cote finding him liable of cybersquatting which includes a serious degree of malice.

An underlying driver of what has been going on is that Mr. Ellner has problems with good judgment and aggression.  (Moldovsky Dec. at ¶18.)  Judge Cote, Judges Lohier, Parker and Eaton, Judge Cannataro, and Judge Baldi have all made decisions detrimental to Mr. Ellner, including but not limited to finding that he submitted fraudulent fabricated evidence to the both the Federal and State trial courts in NYC.  Judge Cote and Judge Cannataro both recognized that Lightbox submitted a fabricated signature page related to its agreement with the Scarola Firm as sworn and affirmed evidence, though both declined to grant the Scarola Firm sanctions based on it. (Moldovsky Ex. "G" at 6.)

16

Regardless though, it is undeniable that the federal courts in the 3rd Home case have issued rulings precluding the Complaint here.  In particular, as part of the attorneys' fees dispute in the 3rd Home Litigation before the Second Circuit, Lightbox argued that the Moldovsky Firm's charging lien should not stand because, as argued in Ellner and Lightbox's Reply, the claims made against Mr. Ellner and Lightbox in the Bucks County Action were client abuse, to extort the client to pay fees, which the Court did not strike.  (Moldovsky Dec. at ¶65.)  The Second Circuit affirmed Judge Cote's decision in favor of Mr. Moldovsky on the fee dispute. So, since these claims and allegations were part of the disgorgement and fee dispute (where even some attorney misconduct including harassing a client about fees is enough for disgorgement and to block a charging lien and thus the 2nd Circuit did and was required to consider the allegations of misconduct by the attorney), and yet the Moldovsky firm won the fee dispute, and that therefore the federal court's decision in favor of the Moldovsky firm on the fee issue must mean that, as a matter of law, the Moldovsky Firm and the undersigned did not act improperly in bringing the Bucks Case.

Regarding collateral estoppel, New York Judge Cannataro already held that Judge Cote' s opinion acts as collateral estoppel as between Mr. Ellner and the Moldovsky Firm in his July 8, 2019 Order denying Lightbox's Motion to Dismiss. (Moldovsky Dec. Ex. "G" at 4.)   It is clear that he held Judge Cote's decision acts as collateral estoppel even on points that were not directly mentioned in the decision.  Even Mr. Ellner – in withdrawing his malpractice and breach of fiduciary claims (Moldovsky Dec. at ¶ 63.) – admitted this.

Accordingly, the Plaintiff's Complaint should be dismissed as barred in its entirety by the doctrines of *res judicata* and *collateral estoppel.*

### III.   The Complaint Must Be Dismissed For Failure To State A Claim In That Plaintiff's Claims Do Not State A Claim Under The Dragonetti Statute 42 Pa.C.S. §§8351-8354

The Complaint is precluded because its allegations complaining about the Bucks Case have already been litigated as elements of sanctions motions in numerous courts and thus are barred by the precedents of the <u>Raynor v. D'Annunzio,</u> Supreme Court of Pennsylvania No. 35 EAP 2019 (Dec. 22, 2020) and <u>Pendergrass v. Pendergrass</u>, --- F.Supp.3d ---- (2021).  These cases hold that the same allegations cannot be the subject of a malicious prosecution matter and also be the basis for sanctions motions, and the opposite is true as well.  <u>Raynor</u> at 15-24.  Once the Complaint is stripped of all the aspects of it that were already prosecuted by Mr. Ellner as sanctionable (Moldovsky Dec. at ¶¶ 56-57,  67-68) the bare allegations of the Complaint are nothing, as there is nothing left.  In each motion for sanctions Mr. Ellner complains of what he complains about in this case.  (Moldovsky Dec. at ¶¶ 67-68.)  Since he has placed all the issues of the Complaint in prior sanctions motions, and since what is in sanctions motions are not basis for Dragonetti claims, and since all the sanction motions and requests were defeated (Moldovsky Dec. at ¶¶ 67-68),  the Complaint must be dismissed as precluded and also failing to state a cause of action.  <u>Raynor</u>, at 15-24.

And there is more.  The <u>Raynor</u> and <u>Pendergrass</u> Decisions preclude all but few and specific steps in and involving litigation as bases for a Dragonetti suit.  Service of process, jurisdiction, preliminary objections, preliminary injunctions, pleadings, motions, answers, defenses, etc. are not basis for the claims here and even though service of process was proper per law (Moldovsky Dec. at ¶¶ 39 - 41) and Mr. Ellner refused to accept service,  service of process is not a legitimate basis of either Counts I or II here as explained in <u>Pendergrass</u> at 62: "The presentation of Theodore's Will and subsequent will contest had all "the normal indicia of a civil lawsuit," but they were "intra-case" filings within the overarching estate litigation. They are therefore not—as a matter of law - "civil proceedings" under the Dragonetti Act."  <u>Di Loreto v. Costigan</u>, 600 F.Supp.2d 671 (E.D.P.A.

2009) which, like <u>Raynor</u> and <u>Pendergrass</u> all share with this instant case the same Plaintiff Counsel, holds that a preliminary injunction ruling – really the only ruling Plaintiff may try to look to as helpful to the Complaint, really is not, and also typically is of no preclusive effect because it is not a judgment on the merits and by definition it is a "temporary remedy granted until that time when the parties' dispute can be completely resolved." <u>DiLoreto</u> at 11.

Accordingly, the Complaint must be stripped of what Mr. Ellner has already litigated and is precluded by <u>Raynor</u> and <u>Pendergrass</u>, and, thus if somehow the Complaint is not entirely dismissed by this motion at least these and other aspects of the case precluded by the doctrines in <u>Raynor</u> and <u>Pendergrass</u> and the other legitimate arguments of this motion should be dismissed and precluded from proceeding.  As Judge Dougherty said, "this rancorous dispute and protracted litigation between the parties has gone on long enough" <u>Raynor v. D'Annunzio</u>, E.D. Pa. Case No.: 35 EAP 2019 at fn 11 (Dec. 22, 2020).

## IV.    The Complaint Must Be Dismissed Due For Lack Of Subject Matter Jurisdiction Because Plaintiff's Damages Cannot Exceed $75,000 (28 U.S. Code § 1332(a))

The Complaint here states that: "… Ellner had incurred in excess of $50,000.00 in legal bills for Fox Rothschild's defense of the claims"  (Complaint at ¶ 44), but there has been no amount, bills, tie-in of what work was for what, etc.  Based on what must be precluded from the suit by <u>Raynor</u>, *supra* and <u>Pendergrass,</u> *supra*, as explained just above there is essentially nothing or perhaps only extremely little complained of that could be subject to either of the Complaint's causes of action and certainly the legal work for such can only be nominal and nowhere near the economic jurisdictional threshold of this Court.  <u>D'Amato v. Rhode Island Hosp. Trust Nat'l.</u> <u>Bank</u>, 958 F.2d 361 (1st Cir., 1992).  There is also the unrebutted position and understanding that Mr. Ellner's Lightbox entities pay the expenses so that Mr. Ellner did not actually personally incur the expenses as related to the Bucks Case.  Mr. Ellner was acting in his capacities with his

Lightbox entities and thus Lightbox was paying or was supposed to be paying.   (Moldovsky Dec. at ¶ 17.)

Accordingly, unless shown otherwise, the documentary evidence shows that Lightbox and not Mr. Ellner generally or often, and, likely here, paid legal fees for their litigations.  Plaintiff has not shown at all that the legal fees he says he incurred here were actually incurred or paid by him as compared to Lightbox actually incurring and paying.

Accordingly, Plaintiff's Complaint should be dismissed because Mr. Ellner cannot show any damages, let alone damages sufficient for this Court to maintain jurisdiction.

## V.    The Complaint Should be Dismissed, Transferred And/Or Consolidated As the SDNY Appears the Appropriate Forum

F.R.C.P. Rules 12(b)(1), 12(b)(3), 18,  and 42(a)(2) are relevant and applicable here.  Based on considering them and the circumstances here, the major points boiling to the surface include: i) the SDNY is very familiar with these matters and in particular Mr. Ellner from years of intricate litigation and extensive filings (none of which is true for this Court, and thus much time getting up to speed will be incurred here that will not be in the SDNY; so too, while either Court could spend time appreciating some aspects of the other state's laws in handling this matter, still, getting up to speed on the tremendous history through so many court dockets and more will be substantially easier for the SDNY compared to this Court due to the SDNY's years of experience with various aspects and the genesis of these matters); ii) of the various related matters, most are appropriate in regards to jurisdiction and forum in the SDNY (including that that is Mr. Ellner's prime home and business location and forum); iii) the benefits to judicial economy by the matters all being in one case in one forum; iv) the issues in the various matters are related and interwoven to various extents; v) Judge Cannataro  has held that the issues as between Mr. Ellner and both firms he failed to pay are interrelated and not to be severed; vi) the issues of necessary, mandatory and indispensable

parties, as explained below; and vii) Mr. Ellner arguing that the Bucks Case belongs in New York (Moldovsky Dec. Ex. "M".)

Accordingly, Plaintiff's Complaint, to the extent it is not dismissed, should be consolidated with the SDNY lawsuit against Plaintiff or transferred to the S.D.N.Y., which has jurisdiction over the claims.

## VI.    The Complaint Must Be Dismissed Due To The Indispensable, Necessary And Mandatory Party Rule, Fed. R. Civ. P. Rule 19

Plaintiff's Complaint is deficient and if not rectified must be stricken, as parties who are mandatorily necessary and indispensable have not been joined as Plaintiffs, and these parties are the other Defendants in the Bucks case, including Jonathan Miller, Esquire Lightbox Ventures, LLC and Lightbox Capital Management, LLC.  The claims of Mr. Ellner's entities and his attorney are the same or at least very similar as those Mr. Ellner has expressed here, and this can be seen as Mr. Ellner, Mr. Miller and the Lightbox entities have made these same allegations, together, at least eleven times, including in the Bucks Court, in the Southern District of New York, in the Second Circuit Court of Appeals and in the New York Supreme Court trial and appellate divisions over the course of five motions for sanctions, and an appeal premised on attorney misconduct seeking disgorgement. (see, Moldovsky Dec. at ¶¶ 33, 34, 67-68.)  Notably, each adjudicated motion and request for sanctions, disgorgement, findings of attorney misconduct, etc. was denied.  However, to the extent Mr. Ellner makes claims here, certainly his counsel and the companies he has complete control over believe, perceive and can be counted on to make the same claims.

Pursuant to F.R.C.P. 19 and the Defendants here should not have to litigate these same issues with essentially these same entities any further and certainly not beyond the claims here.  However, if this suit proceeds without Mr. Ellner's companies and counsel then that is exactly what is likely to happen.  Mr. Ellner will be glad to start yet another suit through one of his Lightbox entities, then

another suit by the other Lightbox entity and then yet another suit would be started by his attorney

(the undersigned's prior attorney), Mr. Miller.  Pursuant to F.R.C.P. Rule 19 (A)(i) and (ii), the

Defendants here should not be subject to the same claims, issues and attacks in different suits by the

same people and entities.  If the suit should proceed, it should be with the mandatory and necessary

parties or not at all.

 Relevant to these considerations is that the NY State Court upheld the alter ego claims against

Mr. Ellner by both SMZ and the Moldovsky Firm past Mr. Ellner's Motion to Dismiss.  (Moldovsky

Dec. Exs. "G" and "H".)  Certainly, these entities, who allegedly are alter egos of Mr. Ellner and

stand in the same place as him as Defendants in the Bucks Case are undeniably necessary,

mandatory and indispensable parties in this case.

 The Complaint's deficiencies in not including these clearly necessary, mandatory and

indispensable parties in the case could easily be cured except that Mr. Ellner does not want to do so

for various reasons.  Some of those reasons are because Lightbox owes the Moldovsky Firm for the

costs from its failed Second Circuit appeal.  Mr. Ellner is apparently in conflict with this other

counsel in yet another attorney-client conflict for Mr. Ellner, and Mr. Ellner does not want to

further expose his being an alter ego for the Lightbox entities as this will expose him further to the

legal fees he has tried to avoid paying (Moldovsky Dec. Exs. "G" and "H").  However, regardless of

the source of these deficiencies, the Complaint must be dismissed.

### VII. The Abuse Of Process Cause of Action, Count II Fails To State A Cause Of Action In That The Complained Of Suit Sought Legitimate And Not Perverse Purposes

 The Plaintiff's Complaint also includes a claim for abuse of process.  Although similar to a

Dragonetti claim at first glance, an abuse of process claim is focused on the misuse of process.  A

claim of abuse of process is grounded upon wrongful use of legitimate process of the court.  It is a

common law tort, as distinguished from wrongful use of civil proceedings, which is statutory and

relates to the improper commencement of a lawsuit without probable cause and with malicious motive to harm the opponent. Abuse of process deals with perversion of the legitimate process of the court for an improper purpose. To establish a claim for abuse of process it must be shown that the defendant 1) used a legal process against the plaintiff, 2) primarily to accomplish a purpose for which the process was not designed, and 3) harm has been caused to the plaintiff. Abuse of process is, in essence, using legal process as only a tactical purpose to force some result that is not a legitimate purpose of the process.

Here, Mr. Eller's abuse of process claim encompasses the same allegations as in the Dragonetti claim regarding lack of jurisdiction and also includes the allegation the writ of summons in the underlying action was served upon Mr. Ellner's doorman, an unauthorized agent, in order to humiliate Mr. Ellner.   Doorman service is normative and per the Court Rules in New York (Moldovsky Dec. at ¶¶ 40 -  41) making this  another unviable claim by Plaintiff.

The abuse of process claim fails because the Bucks County lawsuit was brought primarily to accomplish a purpose for which it was designed, and a "cause of action for abuse of process requires some definite act or threat not authorized by process, or aimed at an objective not legitimate in use of process; there is no liability where defendant has done nothing more than carry out process to its authorized conclusion." Shaffer v. Stewart, 326 Pa.Super. 135, 473 A.2d 1017 (1984).  This was evidenced by the pre-complaint discovery served on Ellner.  The lawsuit had a purpose in seeking appropriate discovery and damages in connection with his Pennsylvania Wiretap and other plead claims.  Simply put, the Complaint fails to state or show that process was used illegitimately.

Process was utilized as intended, pursuant to law, statute, current and reasonably potential legal positions and in good faith.  There is no allegation (beyond just boilerplate) that process was used improperly, and even if there is an aspect or issue of challenge to this, it is exactly that, an outlier and at most a small part of the processes and not sufficient for an abuse of process claims (""an

incidental motive of spite or ulterior purpose of benefit to the defendant" [such] would not be a sufficient improper purpose for an abuse of process cause of action.") (see, Bell v. Township of Concord et al., 759 F.Supp.2d 621 (E.D.Pa. 2011).) Instead, the claim requires "some definite act or threat not authorized by process, or aimed at an objective not legitimate in use of process." <u>Shaffer</u>, Id.  This did not occur here and thus the second count of this suit must also be dismissed.

## VIII.   The Complaint Must Be Dismissed Since It Fails To State A Claim As There Was Probable Cause (And No Improper Purpose) For The Complained Of Steps Taken

Probable cause is defined in 42 Pa. C.S.A. § 8352 as a reasonable belief in existence of supporting facts, and either 1) a reasonable belief in the validity of the claim under existing or developing law, 2) a reasonable belief in supporting law by a client based on advice of counsel sought in good faith, or 3) a reasonable belief by an attorney that the litigation is not intended to merely harass or maliciously injure the opposing party. The plaintiff has the burden of proof on these issues and the Court is to decide them as long as the necessary facts are not in dispute. <u>See,</u> <u>Bobrick Corp. v. Santana Products, Inc.,</u> 698 F.Supp.2d 479 (M.D.Pa. 2010) ("in determining probable cause for initiation of civil proceedings, all that is necessary is that the claimant reasonably believe that there is a sound chance that his claim may be held legally valid upon adjudication.")  As in <u>Bobrick,</u> Judge Baldi's statement that claims could survive to trial (Moldovsky Dec. Ex "L" at 111:22-25) "buttresses" probable cause.

An objective standard applies to determining the reasonableness of an attorney's belief.  <u>Shaffer,</u> <i>supra.</i>  Probable cause is established by proof of the attorney's good faith belief that the facts provided by the client are true and the client's claim is legally valid. <u>See,</u> <u>Morris v. DiPaolo,</u> 930 A.2d 500, 505 (Pa.Super. 2007).  Here Mr. Moldovsky was essentially both attorney and client who had counsel and an expert attorney to rely on (Moldovsky Dec. at ¶¶ 42, 59), which provides probable cause. "The statute provides that a person who participates in "the procurement, initiation of civil

proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based [and] (2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information" <u>See</u>, Di Loreto, *supra* at 687.

An improper purpose is something like seeking an unfair advantage in some other business transaction or seeking to punish or inconvenience the defendant rather than to pursue a claim to a just conclusion, win or lose. Plaintiff contends that the Bucks Case's claims against Mr. Ellner in the Bucks County Action lacked probable cause and that there was no basis for jurisdiction, and that the claims against Mr. Ellner were brought for the improper purpose of harassing him and causing him financial harm by having to defend against alleged baseless claims.  Plaintiff also states that:  "At no time did Defendants ever have a factual basis for any claim against Ellner."  (Complaint at ¶ 46.) However, the basis included and was not limited to: that at least some of the recorded phone calls Plaintiff had included in his Interpleader proceeding were recorded when Plaintiff made phone calls to Mr. Moldovsky when Mr. Ellner knew that Moldovsky was in Pennsylvania (including on personal (not work) time like on Thanksgiving day) on a Pennsylvania phone line, that Defendants regularly traveled to one of his homes or visited (relatives or others) in California and Florida (each a two consent state), the Plaintiff called to Defendants outside of business hours on a Pennsylvania phone line on a regular basis, the Plaintiff mailed documents and payments to Defendants at a Pennsylvania address, the Lightbox was a global real estate business with a global interactive website, and that the Bucks County Co-Defendant Mr. Miller had represented Mr. Moldovsky and his wife in two Bucks County litigations and had breached his fiduciary duties to his Pennsylvania clients. (Moldovsky Dec. At ¶¶ 5 - 8.)  Furthermore, jurisdiction is not an appropriate basis for a Dragonetti action. <u>See</u>, <u>Di Loreto</u>, *supra*; see also,   <u>Raynor</u>, *supra* and <u>Pendergrass,</u> *supra.*

Clearly, the Bucks Case wiretap claims had probable cause based on the knowledge that Ellner

knew that at least some of the calls were to Moldovsky while he was in Pennsylvania on a

Pennsylvania phone line and made by Ellner when he could have been at one of his homes or

visiting (relatives) in California, or Florida (2 consent states) and that the application of the

Pennsylvania Wiretap Act can be subject to the weighing and balancing the application of each

state's wiretap laws for the greatest protection of the person being wiretapped.  This can be the case

for someone recording from New York when the other person is in Pennsylvania, depending on the

circumstances of the case.  Specifically, the court can find that party to a call who is outside of

Pennsylvania can be liable under the PA Wiretap Statute based on a weighing of damage and harm

to the victim.  See, Mulder v. Wells Fargo Bank, N.A., 2018 WL 3750627 (W.D.P.A., July10, 2018)

and Larrison v. Larrison, 750 A.2d 895 (Pa. Super. 2000); Calcagno vs. Aidman, 20 Misc. 3d 1132(A)

(Sup. Ct., Richmond Co. 2008) The Moldovsky Firm and Moldovsky knew that Mr. Ellner had made

calls into a Pennsylvania line (despite Mr. Ellner's perjury, Complaint at ¶30), because it had phone

records to show that he did, which were shared with Mr. Ellner and his counsel. (Moldovsky Dec.

Ex. "K".)

   There is more though, as the probable cause for the Bucks Case is virtually endless; there is

no lack of it.  The preliminary injunction ruling by the Bucks County Judge Baldi denying the

Moldovsky Firm and Moldovsky's preliminary injunction request was not final,  Di Loreto, Raynor,

and Pendergrass all affirm this concept, and not collateral estoppel as stated in the complaint, and

the permanent injunction demand cause of action and all the others were still open.  The Raynor

case, explains that an attorney has probable cause to institute or maintain a proceeding if "he

reasonably believes in the existence of the facts upon which the claim is based, and either: (1)

reasonably believes that under those facts the claim may be valid under the existing or developing

law; ... or (3) believes as an attorney of record, in good faith that his procurement, initiation or

continuation of a civil cause is not intended to merely harass or maliciously injure the opposite

party." <u>Raynor</u>, *supra*. at 18-19.  And, if the evidence is largely undisputed, the question of probable

cause is "a matter of law for the court to decide" (<u>Pendergrass</u>, *supra* at 55), since on the Bucks Case

decisions and events occurred making it clear that the case had probable cause (Moldovsky Dec. at

¶¶ 45 - 55.)

Furthermore, though jurisdiction is not a basis for a Dragonetti claim as stated above, there

were more than sufficient grounds for jurisdiction as to Mr. Ellner in Pennsylvania because of Mr.

Ellner's activities directed toward Mr. Moldovsky, a Pennsylvania resident, both 1) relating to the

wiretaps and 2) based on retaining a Pennsylvania lawyer, Mr. Moldovsky, (though he is also

admitted in New York, obviously) for the New York litigation, and 3) aiding and abetting Mr.

Miller's alleged wrongful conduct against Moldovsky, a legitimate New York cause of action[7] which

Mr. Moldovsky contends is in similar violation of Pennsylvania law and legal ethics rules and more. [8]

According to <u>Ford Motor Co. v. Montana Eighth Judicial District Court</u> (No. 19-368) jurisdiction in

Pennsylvania had probable cause because "although the phrase "relate to" imposes "real limits" on

the exercise of specific personal jurisdiction, it does not require a but-for or proximate causal

connection between the plaintiff's claims and the defendant's forum contacts".

The aiding and abetting claims are based on using and continuing to use an attorney (Mr.

Miller) to represent him since he was counsel to Moldovsky too and Miller and Ellner conspired and

colluded together against Moldovsky as Miller turned against Moldovsky, his other client.

---

[7]  Indeed, aiding and abetting torts is a valid Pennsylvania cause of action as well.  <u>See</u>, <u>Resolution Trust Corp. v.</u>
<u>Farmer</u>, 823 F. Supp. 302 (E.D. Pa. 1993)("The third circuit has held that to sustain a charge of aiding and abetting
plaintiffs have to establish: 1) that there has been a commission of a wrongful act; 2) that the aider-abettor had
knowledge of that act; and (3) that the aider-abettor substantially and knowingly participated in the wrong-doing.")
[8] <u>See</u>, <u>Aranki v. Goldman & Associates, LLP</u>, 34 A.D.3d 510 (2nd Dep't 2006) ("allegations that law firm colluded with
majority members to freeze minority members out of LLC's management and profit sharing and force them to surrender
their minority membership interest, at a reduced price, made out a cause of action for aiding and abetting a breach of
fiduciary duty by the majority members"); <u>see also</u>, <u>State of New York Workers' Compensation Bd. v. Madden</u>, 38
Misc.3d 1229(A) (Supreme Court, Albany County, New York, 2013)(recognizing aiding and abetting legal malpractice –
emphasis added); <u>Weinstein v. CohnReznick, LLP,</u> 144 A.D.3d 1140 (2d Dep't 2016) (recognizing aiding and abetting
fraud).

(Moldovsky Dec. at ¶¶ 20 - 21.)  The Bucks Case and the New SDNY claims include wrongful use of Moldovsky confidential, sensitive, private, privileged, etc. information against Moldovsky and in favor of himself and Ellner and his companies. Mr. Ellner knew Mr. Miller was a personal attorney to Moldovsky and the concerns about use and advantage gained by use of Moldovsky confidential information and conflicts of interest was well-known to Mr. Ellner (Moldovsky Dec. at ¶ 21) and it was raised a number of times.  Mr. Ellner and his companies were fueling Mr. Miller's wrongs in these regards to the Moldovsky Firm.  (Moldovsky Dec. at ¶¶ 31-32.)  In fact, Mr. Ellner was critical in Mr. Miller being able to use confidential information against him.  (Moldovsky Dec. at ¶ 31.)

As expressed further in the Declaration at ¶¶ 45 - 55 the viability of these causes of action is based on the actual facts here and not theoretical.  Here, the reality is that Lightbox, with Mr. Ellner and his legally trained wife, Jill Ellner, along with Susan Stein attorney as well as in excess of 10 attorneys (Moldovsky Dec. at ¶14) held itself out (including to the SDNY) as having the ability to conduct legal operations around the globe and utilizing, hiring, working with, etc. local counsel to help facilitate. (Moldovsky Dec. at ¶14.)  In other words, Lightbox, backed by a former Lehman global executive with decades of relationships on Wall Street and in finance and more, and also a Wharton Grad, Mr. Ellner, was a first-in-the-industry global, aspiring to be the Airbnb for the rich as a multi-billion -dollar company (Moldovsky Dec. at ¶ 13) wherein regular operations would involve constant legal activity with hiring, managing, working with, etc. counsel.  So, that Lightbox and the Ellners in engaging in a bitter unprovoked, malicious, frivolous and tortious campaign knew just what they were doing in continuing to persecute the undersigned with his own lawyer and the benefit of the undersigned's own confidential information along with all else as complained of in the SDNY litigation recently initiated and now pending against Plaintiff was and still is more than enough probable cause to necessitate the dismissal of the instant Complaint.

Kaufman v. Cohen, 307 A.D.2d 113, 760 N.Y.S.2d 157, 2003 N.Y. Slip Op. 14433 (1st Dep't

2003) holds that a claim for aiding and abetting a breach of fiduciary duty requires: (1) a breach by a fiduciary of obligations to another; (2) that the defendant knowingly induced or participated in the breach; and (3) that plaintiff suffered damage as a result of the breach." … "To establish knowing participation element of aiding and abetting a breach of fiduciary duty, although a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty… For purposes of liability for aiding and abetting a breach of fiduciary duty, a person knowingly participates in a breach of fiduciary duty when he or she provides substantial assistance to the primary violator. "Substantial assistance," as would give rise to liability for aiding and abetting a breach of fiduciary duty, occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur."

As in the Bucks Case so too in the current SDNY Complaint, (Moldovsky Dec. Ex. "U"), substantial damages as well as all of the elements of the various causes of action are sufficiently plead and spelled out.  Damages from the wrongful conflict and disclosure included benefits to Mr. Miller and Mr. Ellner and his companies to the detriment of the undersigned. (Moldovsky Dec. Ex. "U".)  The allegations includes that Mr. Miller learned confidential information about Mr. Moldovsky's financial abilities, law practice, basis of charging legal fees and much more (Moldovsky Dec. Ex. "U"), and was in a position to use that sort of information to Ellner's strategic advantage as part of the extensive attacks, false claims, malicious prosecutions, etc. (Moldovsky Dec. ¶¶ 5 - 7) including the fee litigation in New York.  Basically, for 3 years and ongoing, Mr. Ellner and Mr. Miller have been attacking the undersigned with non-stop false allegations and litigation which have been adjudicated in the Moldovsky Firm's favor again and again and yet the same attacks just continue.  (Moldovsky Dec. ¶ 71.)

Particularly with the undersigned's sensitive, confidential, financial, etc. information and

vulnerabilities exposed and in service to them, Mr. Miller and Mr. Ellner have worked together to destroy the undersigned's practice and life by, among other things, totally dominating and wasting time, perhaps the greatest vulnerability for a small law firm doing mostly hourly based work.  Of course, there is more, but, this gives more than enough probable cause for the allegations as alleged in the Bucks case and now in the SDNY Complaint (Moldovsky Dec. Ex. "U") and also the new EDPA Complaint (Moldovsky Dec. Ex. "V".)

Likewise, regarding the recorded cell phone calls, the substance of the calls does not reveal information harmful or problematic to the Moldovsky Firm as far as exposing misconduct or something, and, again this has all been adjudicated already.  (Moldovsky Dec. Exs. "F"  and "Q".) Further, the Moldovsky Firm won the attorney charging lien litigation and was awarded a charging lien of $45,948. 00 and allowed to proceed with its contractual and account stated claims by Judge Cote.  (Moldovsky Ex. "F".)  However, what was harmful and still is, as reflected in the current new EDPA Complaint (Moldovsky Dec. Ex. "V")  is having to spend endless time explaining away repetitive and already lost and adjudicated allegations by Mr. Ellner and Mr. Miller that have served no good purpose.  So, having a cache of so many recordings of phone calls many of which are or may be illegal allows them to cause more and more wasted time for what has been well in excess of 10 judges (Moldovsky Dec. at ¶¶ 67 - 69), counsel and the parties.  As the new SDNY Complaint explains the loss of time and thus money has been enormous, with much of it wasted on fending off Mr. Ellner and Mr. Miller's endless malicious prosecution proceedings.  (Moldovsky Dec. at ¶71.)

Yet, there is another dimension of probable cause here too.  An attorney has a right to believe the client, and this in particular applies to Defendant Mr. Pomerantz.  There can be no liability for causes of action of this Complaint upon Mr. Pomerantz as there is not and cannot be a valid allegation that he acted outside of a reasonable belief in what his client, Mr. Moldovsky, told him.  Babul v. Relmada Therapeutics, Civil Action No. 15-2937, 9 (E.D. Pa. Feb. 21, 2018).  This

case holds that, under Pennsylvania's Dragonetti Act, which codified common law tort of wrongful use of civil proceedings, an attorney who initiates a civil proceeding on behalf of his client, even if he has no probable cause and is convinced that his client's claim is unfounded, is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. Schmidt v. Currie,  470 F.Supp.2d 477 (E.D. Pa.), affirmed 217 Fed.Appx. 153, 2007 WL 470500 (3d Cir. 2005).  As long as there is reasonable belief that the facts could support the claim, then there is probable cause. See, In re Finney, 184 Fed.Appx. 285, 2006 WL 1759834 (3d Cir. 2006).

The application of the Dragonetti Act, which sets forth claims for wrongful use of civil proceedings, to attorneys of record is somewhat more circumscribed than as to the parties that they represent; as long as an attorney believes that there is a slight chance that his client's claims will be successful, it is not the attorney's duty to prejudge the case, and lawyers can safely act upon the facts stated by their clients.  Perelman v. Perelman, 125 A.3d 1259  (Pa. Super. 2015), reargument denied, appeal denied 141 A.3d 435, 636 Pa. 96.  An attorney is not liable under Pennsylvania's Dragonetti Act, which codified common law tort of wrongful use of civil proceedings, even if the client's chances of success are comparatively slight, provided the client wishes to proceed after the attorney has fully explained the nature of the chances. Schmidt v. Currie,  470 F.Supp.2d 477 (E.D.Pa.), affirmed 217 Fed.Appx. 153, 2007 WL 470500 (3d Cir. 2005).  Thus, the Complaint against all Defendants - and on some of these points, Mr. Pomerantz in particular - must be dismissed with prejudice.

## IX.    The Complaint Must Be Dismissed Since It Fails To State A Claim In Failing to Allege or Show Malice Or Improper Purpose By Any Of The Defendants

Just like an attorney can rely on the client, the client can rely on the attorney and both can rely on an expert.  Di Loreto v. Costigan, 600 F.Supp.2d 671 at 687 (E.D.Pa. 2009).  Since an

attorney can rely on an expert, an expert/attorney, another attorney, etc. in the probable cause analysis, and since here there were two expert reports (Moldovsky Dec. Ex. "I") there was probable cause as a matter of law. *Id.* To be clear, just because someone is an attorney does not mean that some of their probable cause cannot be based on input from an attorney, expert, expert/attorney, etc. Furthermore, as explained just above, Mr. Pomerantz had probable cause, but, also there is no allegations that he acted with malice or recklessly beyond boilerplate, and this is true for the Moldovsky Defendants too, as a sincere belief in the position of another provides probable cause. DiLoreto, *supra.*

Again, beyond boilerplate, there are no allegations of malice against the Defendants here and the same allegations as in the Complaint complaining about the Defendants and their actions have been rejected by numerous Courts. (Moldovsky Dec. at ¶ 69.) Critically, "even if he has no probable cause and is convinced that his client's claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim." Babul v. Relmada Therapeutics, Civil Action No. 15-2937, 9 (E.D. Pa. Feb. 21, 2018). Here, there is no demonstration or allegation beyond boilerplate that the Defendants acted with an improper purpose. This is particularly true as, facially, all of the Bucks Case Complaint and Amended Complaint allegations were fully based in probable cause and for legitimate purposes for which the suit proceeded as explained above at §I.

## X.    The Complaint Must Be Dismissed Due To Plaintiff's Unclean Hands

Plaintiff's perjury, lies, fraud, lack of candor to the Courts, etc. as explained in the recent SDNY action  (Moldovsky Dec. Ex. "U"), undermines the Complaint and necessitates its dismissal. Plaintiff's Complaint is barred by his unclean hands. Plaintiff's fraudulent and false allegations, including in the Complaint's paragraph 30 as explained further at Moldovsky Dec. at ¶52, bars his ability to maintain this suit. Paragraph 30 of the Complaint, in alleging "All of the conversations

allegedly recorded were between Ellner in New York and Moldovsky's phone number for his New

York office" constitutes perjury and lack of candor to the tribunal, as explained at Moldovsky Dec.

at ¶ 48. Obviously, this ongoing fraud on the Courts is known, purposeful and purportedly central

to Plaintiff's Complaint here as well as positions in the Bucks Case. Accordingly, with such a central

allegation being false, knowingly and ongoingly so, the Complaint must be dismissed based on

unclean hands and bad faith. See, Saudi Basic Industries Corp. v. ExxonMobil Corp., 401 F.Supp.2d

383 (D.N.J. 2005) ("the doctrine of unclean hands applies 'when the party seeking relief is guilty of

fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the

other party and affects the balance of equities.'" citing Paramount Aviation Corp. v. Agusta, 178 F.3d

132, 147 n. 12 (3d Cir. 1999)"); see also, Romero v. Allstate Ins. Co., 52 F.Supp.3d 715 (E.D. Pa.

2019) ("A claim is barred under the doctrine of unclean hands when "(1) a party seeking affirmative

relief (2) is guilty of conduct involving fraud, deceit, unconscionability, or bad faith (3) directly

related to the matter in issue (4) that injures the other party and (5) affects the balance of equities

between the litigants.")

　　　　These false allegations were false in the Bucks Case and are false here too. It is shocking

that this is still persisting. To be clear, the Complaint's paragraph 30 states that "All of the

conversations allegedly recorded were between Ellner in New York and Moldovsky's phone number

for his New York office." However, Plaintiff had been confronted numerous times with unrebutted

records showing that some phone calls were placed by Plaintiff to Mr. Moldovsky's Pennsylvania

cell phone in Pennsylvania. It is believed further records will only demonstrate this further. The

documentary evidence that exists has been in the possession of Plaintiff for years now and some

were also provided related to the Bucks County litigation. (Moldovsky Dec. at ¶ 48.) The records

are still available on the public docket as ECF Doc. # 26; and yet Plaintiff had the audacity and

disrespect to this Court to continue with these false allegations in the Complaint and till today. As

mentioned at page 18, Mr. Ellner has had to concede that he falsified a pertinent document in the New York matter, which was the subject of two serious motions for sanctions brought by Richard J.J. Scarola, Esq. and Alexander Zubatov, Esq. on behalf of their firm. (Moldovsky Ex. "G".)  And, per the SDNY complaint, there is much more of this conduct.  (Moldovsky Dec. Ex. "U".)

## XI.    The Complaint's Requests For Punitive And Emotional Damages Must Be Dismissed

Punitive and emotional damages requests must be dismissed as these damages are not recoverable based on the Complaint as it does not allege facts (beyond perhaps boilerplate) sufficient for either of these damages.  Punitive damages sought pursuant to 42 Pa.C.S.A. § 8353(5) (allowing damages for "any emotional distress that is caused by the proceedings.") cannot be sought here since Plaintiff does not and cannot actually allege anything abusive, embarrassing, malicious, extraneous, frivolous, etc. occurred in relation to the Bucks Case to cause him distress or damage See, Hart v. O'Malley, 781 A.2d 1211 (Pa. Super. 2001) ("Punitive damages" are appropriate only if the actor's conduct was malicious, willful, oppressive, or exhibited reckless indifference to the rights of others."); see also, Matsinger v. Arzoomania, 86 Pa.Super. 430 (1925) ("Where charge against plaintiff, discharged by magistrate, was made against him wantonly, maliciously, and without probable cause, punitive damages may be awarded."); Urban v. Tyszka, 16 Pa. D. 625 (Pa.Com.Pl., January 01, 1907) (punitive damages not appropriate where there is no malicious prosecution.); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1997) ("In a tort action for intentional infliction of emotional distress the court must first determine as a matter of law whether there is sufficient evidence for reasonable persons to find extreme or outrageous conduct").  Besides, Mr. Ellner, was involved in other litigation of his own volition at the same time, as Mr. Ellner initiated the Interpleader Complaint, the Second Circuit Appeal, Crossclaims in the New York Supreme Court, multiple New York interlocutory appeals, many sanctions motions and this immediate action

himself.  If Mr. Ellner suffered any emotional distress at all, it is impossible to determine to what extent it was not caused by his own wide ranging and aggressive litigation.

Mr. Ellner's complaints about his emotional and mental disturbance related to litigation at large are not new, and he made the same statements about his disputes with Third Home and SMZ (Lightbox Ventures, L.L.C. v. 3rd Home Ltd., et al., No. 16-cv-02379 (S.D.N.Y.) and Scarola Malone and Zubatov LLP v. Ellner et al., Supreme Court of New York, County of New York Index No.: 651324/2017).  Part of Lightbox's basis for the Second Circuit Appeal was Mr. Moldovsky raising this to Mr. Ellner in correspondence.  (e.g., Moldovsky Dec. Ex. "O" at 20, fn17.)

There is something else though.  As related to the Bucks Case Mr. Ellner was acting in his capacities with his Lightbox entities and thus Lightbox was paying or was supposed to be paying (Moldovsky Dec. at ¶17).  Regardless though, punitive and emotional damages are not appropriate here and the requests for same must be dismissed.

## CONCLUSION

Wherefore, Defendants request that the Court grant this motion and dismiss the complaint fully, and, if not, to at least grant relief precluding and restricting from continuing any aspect of the Complaint that ought to be precluded, restricted and dismissed per the arguments herein.  So, if the entire Complaint is not dismissed by this motion, then, at least, it is respectfully requested that the Complaint, ongoing, be precluded, restricted and dismissed as per any aspect of it that cannot exist or continue in light of the arguments herein.

BREM MOLDOVSKY, L.L.C.

Dated: Bucks County, Pennsylvania
April 5, 2021                           By: _____
                                        Brem Moldovsky, Esq.
                                        100 N. 18th Street, Suite 300
                                        Philadelphia, PA 19103
                                        (215) 546-9957
                                        brem@bremlaw.com

Dated: Montgomery County, Pennsylvania
      April 5, 2021

By: _____

Gerald J. Pomerantz, Esq. (Pro Se)
The Coventry House
7301 Coventry Avenue, Ste. 501
Elkins Park, PA 19027