**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW ELLNER,<br><br>                    Plaintiff,<br>*v.*<br><br>BREM MOLDOVSKY, LLC,<br>BREM MOLDOVSKY, and<br>GERALD POMERANTZ, ESQUIRE<br><br>                    Defendants. | **CIVIL ACTION**<br><br>**NO. 20-6190-KSM**<br><br>**DECLARATION OF BREM<br>MOLDOVSKY, ESQUIRE IN SUPPORT<br>OF THE MOTION TO DISMISS<br>PURSUANT TO FED. R. CIV. P. §§ 12<br>(b) (1), (3), (6) and (7)** |

Brem Moldovsky, an attorney admitted to practice before this Court, being of legal age and having personal knowledge of the matters set forth below, does hereby declare under the penalty of perjury that I make this declaration in support of this Motion To Dismiss submitted herewith.

1.    Moving parties and Defendants, Brem Moldovsky and Brem Moldovsky, L.L.C., and Gerald Pomerantz ("Defendants," and Brem Moldovsky, L.L.C. is also referred to herein as the "Moldovsky Firm") hereby move this Honorable Court pursuant to Fed. R. Civ. P. §12 (b) (1), (3), (6) and (7) to Dismiss the Plaintiff's Complaint.

2.    Defendants hereby certify that the Defendants have complied with Judge Marston's Rule B.1. directing "reasonable efforts" at conferencing with the other parties before and before a motion to dismiss.  Conferencing was done between prior counsel Jack Guernsey, Esq. and Plaintiff's counsel.  Counsel made multiple offers to conference further, which occurred somewhat in writing but not via phone as Plaintiff did not accept offers to do so.

3.   Pursuant to Rule II.C.1. of the Court's Part Rules,  movants do hereby politely request ORAL ARGUMENT of this motion and this request is being placed here in compliance with Rule II.C.1 of the Court's Part Rules.

## PRELIMINARY STATEMENT

4.   This Motion seeks the Dismissal of the Complaint since i) the Complaint's Count I for malicious prosecution lacks the essential element that the underlying action was terminated in favor of Plaintiff, which it was not and actually the claims from the underlying matter are alive, plead, moving forward, being litigated, etc. so that it is impossible that the underlying matter terminated in Mr. Ellner's favor; ii) the claims and allegations of the Complaint have already been alleged by Mr. Ellner and have been adjudicated so that the claims of the Complaint were necessarily determined so they are precluded and estopped by *res judicata* and *collateral estoppel* by decisions of the Southern District of New York, Second Circuit Court of Appeals, Supreme Court of New York, the Bucks County Court of Common Pleas, and the New York Appellate Division, First Department; iii) the Complaint's claims are precluded, undermined and estopped in a number of ways by the recent cases of the Pennsylvania Supreme Court and of this Court, respectively, *Raynor v. D'Annunzio*, Supreme Court of Pennsylvania No. 35 EAP 2019 (Dec. 22, 2020) and *Pendergrass v. Pendergrass*, --- F.Supp.3d ---- (2021); iv) the Complaint fails to meet the monetary threshold of this Court; v) the Complaint should be dismissed, transferred and/or consolidated as the SDNY is the appropriate forum; vi) the Complaint must be dismissed due to Plaintiff's insistence in failing to join mandatory, indispensable and necessary other Plaintiffs; vii) the abuse of process cause of action, Count II, fails to state a viable claim in that the complained of suit sought legitimate and not perverse purposes; viii) the Complaint fails to state a claim as there clearly was probable cause as a matter of law (and no improper purpose)

for the complained of steps taken; ix) the Complaint fails to state a claim in failing to allege or show malice or improper purpose (except perhaps in self-serving, hollow boilerplate); and x) the Complaint must be dismissed due to Plaintiff's unclean hands and based on documentary evidence.  Furthermore, xi) the Complaint's requests for punitive and emotional damages must be dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Mr. Miller's Representation of Moldovsky Defendants

5.   In 2015-2016 Jonathan R. Miller, Esq. acted as counsel for Brem Moldovsky, Esquire and his wife, and co-counsel with Brem Moldovsky, L.L.C., of which Brem Moldovsky, Esq. is managing member and primary (and currently the only) attorney, in two Pennsylvania litigations that included causes of action for breach of contract, fraudulent inducement, fraud, fraudulent misrepresentation, negligent misrepresentation and damages from lost incomes, missed work and law office professional time.

6.   Because the Pennsylvania matters were personal and very sensitive the Moldovskys hired Mr. Miller, who at the time was a family friend and colleague, with the belief that, as a friend, colleague and counsel, he would protect their confidential information and act as prime contact with the other counsel on the case, which he billed for and was compensated for accordingly.

7.   Considering his role, therefore, there was confidential information provided to Miller that is detrimental and unfair when employed or even just possessed and known by Miller to the benefit of Lightbox and Mr. Ellner and against the Moldovsky Firm and the Moldovskys in violation of various rules of attorney professional conduct.

8.   Mr. Miller cannot reasonably deny knowing this information, considering he affixed his signature to a Complaint describing it. (See, Complaint, attached hereto as Ex. "A".)

3

II.     **The Moldovsky Firm's Representation of Mr. Ellner and Lightbox**

9.   Brem Moldovsky and Brem Moldovsky, L.L.C.  represented Plaintiff Andrew Ellner and

his entities Lightbox Ventures, LLC and Lightbox Capital Management, LLC (hereinafter

collectively "Lightbox") in a Southern District of New York matter, against Defendant 3rd

Home, Ltd. (Lightbox Ventures, L.L.C. v. 3rd Home Ltd., et al., No. 16-cv-02379 (S.D.N.Y.)),

and subsequently was adverse to Lightbox, who has litigated against Brem Moldovsky, Esquire

in matters before the Supreme Court of New York (Scarola Malone and Zubatov LLP v. Ellner et

al., Supreme Court of New York, County of New York Index No.: 651324/2017) (with numerous

appeals, as well), the Bucks County Court of Common Pleas (Moldovsky v. Ellner et al., Court

of Common Pleas of Bucks County, Pa., No. 2019-00793), and the 2nd Circuit Court of Appeals

(Lightbox Ventures, LLC v. 3rd Home Limited, USCA 2d Circuit, Docket No.: 18-3721).

III.    **Lightbox's Southern District of New York Complaint Against 3rd Home**

10. The first litigation and well of background from which most the other Lightbox, Ellner,

Miller and Moldovsky disputes spring and flow, Lightbox Ventures, L.L.C. v. 3rd Home Ltd., et

al., No. 16-cv-02379 (S.D.N.Y.), was a dispute between Lightbox Ventures and 3rd Home Ltd.

regarding a failed joint venture between the two establishing a global marketplace for sales and

resales of global high end real estate and fractionals, with early listings of hundreds of millions

of real estate, that was purported to be the first such marketplace in the industry with a potential

value believed by Mr. Ellner to be at least many millions of dollars.

11. The Moldovsky Firm began interacting with Mr. Ellner and Lightbox in January 2017,

then representing them in February 2017, upon referral by a bar association legal referral service.

12. Mr. Ellner represented that he became acquainted with 3rd Home thorough his own use

of the luxury property sharing cite, similar to Airbnb for wealthy clientele, related to properties

he owned, including in California and Utah.

13. Mr. Ellner represented himself as a highly sophisticated former Lehman global executive and Wharton graduate with knowledge of sophisticated concepts like global real estate ventures. See, Email, attached hereto as Ex. "B".

14. Included in Lightbox's activities with the joint venture was hiring, managing, directing, collaborating with, working with, assigning to tasks, etc. licensed professionals, including lawyers, for transactions around the world and that it would comply with appropriate ethical and licensing standards, which of course included that attorneys should not be in conflicts of interest. Aside from numerous other Counsel, Lightbox's inhouse attorneys (held out to be), Jill Ellner and Susan Stein counseled Lightbox in these regards, and upon understanding and belief, reviewed and edited Lightbox's paperwork and agreements. (See, Ellner Email RE: Andy's Angels, attached hereto at Ex. "C".)

15. Lightbox's prior counsel Scarola Malone & Zubatov, LLP ("SMZ") initiated the action Scarola Malone and Zubatov LLP v. Ellner et al., Supreme Court of New York, County of New York Index No.: 651324/2017, essentially an action for attorney's fees allegedly due to Mr. Ellner's prior counsel in the underlying Federal matter, in 2017.  The Moldovsky Defendants referred their own counsel and colleague Mr. Jonathan Miller, Esq., who had represented them in two Bucks County actions that resolved a few months prior to serve as Lightbox and Mr. Ellner's counsel in that matter.

16. In November of 2017 The Moldovsky Firm exercised its contractual right to not have to continue on the litigation against Third Home due concerns with the economic worthwhileness of the case and value, economic hardship on the firm, client misrepresentations and related, and this was part of what lead to the amending of the Agreement between the Firm and Lightbox.

17. In early 2018 Lightbox and Ellner, while continuing to be difficult in communication and at odds on various strategy with this firm, also were failing to pay invoices incurred during an intensely involved trial by submissions, which lead to the Defendant Firm motioning the Federal Court to be withdrawn as counsel.  Upon Court permission and prevailing on behalf of Lightbox, this firm was withdrawn upon the Court's decision on the trial submissions.  Mr. Miller entered his appearance for Lightbox in place of the Moldovsky Firm and completed minimal post-trial work.

18. The Southern District of New York awarded Lightbox $83,338.19 in connection with the case.  This amount was in addition to a $38,888.01 discovery sanction and a $100,000 fee award so that a total of $222,226.20 plus interest of $17,179.08 (for a total of $239,405.28) was awarded and then deposited with the court. Judge Cote found Ellner and Lightbox liable for one count of cybersquatting and also that Mr. Ellner pursued litigation that was "foolhardy" (Judge Cote Attorney's Fees Order, Ex. "D" at 7), litigated overly-aggressively (Judge Cote Trial Order, Ex. "E" at 14) and sought to cage his opponents (Judge Cote Trial Order, Ex. "D" at 14).

19. This is evident in Mr. Ellner's having raised issues with just about every professional he has worked with in the time this firm has known of him.  This extends from the Defendants in the 3rd Home matter to all his counsel who were entered on the case for him (with the exception of Mr. Miller, but we shall see). It includes his own expert witnesses, various counsel, and other service providers as well.

**IV.    Lightbox's Interpleader Complaint**

20. Lightbox and Mr. Ellner through Mr. Miller moved the Court for permission to file an Interpleader Complaint ostensibly to determine the amount and priority of attorney statutory charging liens.  Judge Cote ordered upon reconsideration that Lightbox could file an Interpleader

narrowly focused on the statutory charging lien issue, since SMZ had initiated an action that included contractual claims in the New York Supreme Court.

21. The Moldovsky Defendants raised to Mr. Miller at the time that this would present a conflict once Lightbox and Mr. Ellner began litigating adverse to the Moldovsky Firm, a notice that was scoffed at and then ignored.

22. Lightbox filed its 244 paragraph and 50 page made up, purposefully distorted, falsely demeaning, malicious and defamatory Interpleader Complaint on July 3, 2018 that included allegations including but not limited to: fraud, abuse, duress, criminal violations of various degrees, defamation, blackmail, extortion and other misconduct.  (A true and correct copy of the Interpleader Complaint is attached hereto at Exhibit "W", as described below.)

23. Over the course of the Lightbox v. 3rd Home litigation, thousands of documents were filed.

24. Judge Cote considered them all, including what she determined to be irrelevant documents, and Ordered and held that Lightbox failed to meet a *prima facie* showing of cause and that Brem Moldovsky, L.L.C. was entitled to a charging lien of $45,948. 00.  Judge Cote further found that this firm succeeded on behalf of Lightbox against Third Home on all that was possible, the firm's rates were reasonable, and that this firm comported itself appropriately. (Order, attached hereto as Ex. "F".)

25. Lightbox appealed that determination to the Second Circuit Court of Appeals.

## V.   Lightbox and Mr. Ellner's Wiretaps

26. On October 12, 2018 in relation to the Southern District of New York Interpleader proceeding it became known that in 2017 and about the first half of 2018, without the Plaintiffs' knowledge or consent, an unknown number of phone calls were recorded by Ellner and

Lightbox, including at least one conversation on Thanksgiving Day, 2017, while Mr. Moldovsky was at his home (which has an office) in Bucks County, Pennsylvania, though there were others based on Mr. Miller referring to them in the plural tense and there being many calls with Mr. Moldovsky and Mr. Ellner.  Mr. Miller admitted to having handled and transcribed the recordings including in order to attach excerpts to his Affirmation in that proceeding.

27. The Moldovsky Firm sought to be provided with copies of the recordings, which Lightbox and Mr. Ellner (through counsel) refused to provide.

**VI.    The New York Supreme Court Matter**

28. On September 26, 2018, shortly before Judge Cote awarded the Moldovsky Firm a statutory charging lien, SMZ amended its Complaint in <u>Scarola Malone and Zubatov LLP v. Ellner et al.</u>, Supreme Court of New York, County of New York Index No.: 651324/2017 to add declaratory judgment claims against the Moldovsky Firm seeking to determine the priority of both law firms' liens (statutory and contractual) against Lightbox and seeking to attach to the statutory charging lien awarded to the Moldovsky Firm.

29. Lightbox and Mr. Ellner counterclaimed against SMZ for legal malpractice and breaches of fiduciary duties.

30. The Moldovsky Firm counter-claimed against SMZ seeking to equitably determine the firms' competing contractual liens against Lightbox and crossclaimed against Lightbox to enforce its contractual lien (Count II), asserting an account stated (Count VII), and seeking indemnification for its costs defending SMZ's litigation against the Firm.  (Count V).

31. Mr. Miller's representation of Mr. Ellner and Lightbox against the Moldovsky Defendants in that matter intensified, as the Moldovsky Firm was now in a position of asserting its claims for fees against Mr. Ellner and Lightbox with Mr. Miller as their counsel, and also

defending itself against claims by Lightbox strengthened by Mr. Miller's prior knowledge about the Moldovsky Defendants based on his representation as their counsel on substantially similar issues.

32. In this litigation, Mr. Miller, on behalf of Lightbox and Ellner, has continued to raise defamatory allegations of misconduct and crimes, file frivolous motions for sanctions, regularly threaten sanctions, and make litigation so difficult that he is unable to conduct himself appropriately for his client.  So far, the adjudicated allegations have been found to be meritless, irrelevant, needing to be stricken and/or no sanctions have been awarded.

33. This includes an unauthorized "amended answer" with hyperbolic crossclaim allegations and five causes of action against the Moldovsky Firm: disgorgement, declaratory judgment regarding the Moldovsky Firm's withdrawal as counsel, two violations of NY Jud. Law §487, and legal malpractice.

34. Each cause of action was premised on the same underlying facts as the federal Interpleader Complaint.  A Motion to Dismiss is *sub judice*, and most of these claims have already been withdrawn as impossible by Mr. Ellner.

35. Following two motions to Dismiss the respective law firms' claims, SMZ and The Moldovsky Firm's claims for account stated against Lightbox are still alive. See, Judge Cannataro's Orders dated July 8, 2019 and December 18, 2019, attached hereto as Exs. "G" and "H".

36. After briefing on the Second Circuit appeal, Lightbox and Mr. Miller then put forth the same false allegations in a series of sanctions motions reliant on the same underlying factual allegations and later, reliant on the alleged frivolity of the Bucks County, Pa. matter, as described in the paragraphs to follow.  All such motions and requests were denied or not granted.

**VII.     The Bucks County PA Matter**

37. The Moldovsky Firm initiated the Bucks County Action on February 5, 2019 based on

Miller's legal malpractice and breaches of fiduciary duties, and Mr. Ellner's aiding and abetting,

as well as violations of the Pennsylvania Wiretap Act (18 Pa. C.S.A. §§ 5701 *et. seq*., hereinafter

the "Wiretap Act") by Ellner and his entities and related causes of action.

38. Mr. Ellner and his entities refused to accept service of process, so service was made by

process server and included serving a summons along with narrowly focused Pre-Complaint

discovery requests (as allowed by Pa. R.C.P. §4003.8(a)) seeking disclosure about the phone

transcripts.

<u>Service of Process Was Proper Under the Rules of Service</u>

39. Service was made properly, including pursuant to Pa. R.C.P. Rule 404 (1)(3), which

provides: "(3) in the manner provided by the law of the jurisdiction in which the service is made

for service in an action in any of its courts of general jurisdiction".

40. Service was proper pursuant to New York's CPLR Rule 308 (2) allowing service to be

made "by delivering the summons within the state to a person of suitable age and discretion at

the actual place of business, dwelling place or usual place of abode of the person to be served

and by either mailing the summons to the person to be served at his or her last known residence

or by mailing the summons by first class mail to the person to be served at his or her actual place

of business in an envelope bearing the legend "personal and confidential" and not indicating on

the outside thereof, by return address or otherwise, that the communication is from an attorney or

concerns an action against the person to be served, such delivery and mailing to be effected

within twenty days of each other".

41. Service was proper pursuant to CPLR Rule 308 (4) which includes that "where service

under paragraphs one and two cannot be made with due diligence, by affixing the summons to

the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other".

<u>Malpractice Claims Were Proper and A Certificate of Merit Was Filed</u>

42.  The claims for malpractice and breach of fiduciary duty were certified by the report of Samuel Stretton, Esq. and a Certificate of Merit was filed. Mr. Stretton's report is attached as Exhibit "I".

43.  Mr. Ellner retained Emma Kline, Esq of Fox Rothschild to represent him and his entities.

44. Mr. Pomerantz entered an appearance on March 28, 2019, hoping to broker a resolution to the matter.  (<u>See</u>, Mr. Pomerantz's Entry, Ex. "J".)

<u>Probable Cause Existed for All Claims Related to Mr. Ellner and Lightbox's Wiretaps</u>

45. Mr. Ellner and Mr. Miller's refusal to disclose any information about the phone calls was a basis for including Mr. Ellner in the Bucks County Action.

46. Both Mr. Ellner and Mr. Miller filed motions for protective orders to avoid responding to discovery, followed by demands for a complaint.

47. Mr. Ellner and Mr. Miller continued to evade discovery, particularly as to Mr. Ellner's recorded phone calls.  To date, the Moldovsky Firm has only seen partial transcripts of what is believed to be two separate phone calls, though it is believed others exist.  The full extent to

11

which Ellner was recording is still unknown for sure, as are all of Mr. Ellner's locations when he was recording.

48. It has been admitted that at least two recordings of these calls have occurred by Mr. Ellner, and it has been misrepresented that he never called Plaintiffs on a Pennsylvania phone number or when they were in Pennsylvania, both of which are false.  (See, Moldovsky Phone Records, Ex. "K".)

49. Mr. Ellner was aware that Plaintiffs were based out of Bucks County, PA and were often in Bucks County, PA (and other places in Pennsylvania), and Mr. Ellner regularly mailed payments and materials to the Bucks County, Pennsylvania office, which he utilized and treated as the primary address for contact.

50. It was known that Ellner and Lightbox travel frequently to many different states and countries, and as such, their location at the time of all the recordings is not known exactly and for sure.  However, based on vacation home ownership, relatives, business interests and other reasons, Mr. Ellner visited and spent time in other states in the relevant time period, which, like Pennsylvania, are also "two consent states".  Such states are believed to include Florida, Nevada and/or California. (See: https://www.justia.com/50-state-surveys/recording-phone-calls-and-conversations/).

51. It was admitted by Ms. Klein to Mr. Moldovsky and a paralegal with the firm who was with Mr. Moldovsky at the time and with Mr. Miller nearby that the phone recordings were questionable enough that she and Fox Rothschild would not even handle them and that she had not listened to them.

52. Mr. Ellner has stated and verified with this Court at ¶30 of his Complaint that he has "never" made a call to the Plaintiffs on any line but a New York line while in New York.  This is demonstrably false, however, which has been shown.

<u>There Was Probable Cause for the Moldovsky Firm and Mr. Moldovsky's Malpractice, Breach of Fiduciary Duty, and Aiding and Abetting Claims As Well</u>

53. The Complaint was amended a number of times to clarify issues, add more specificity and then to leave out the Lightbox Defendants and Mr. Ellner and the causes of action and damages related to the Wiretap Act and Lightbox and Ellner's aiding and abetting legal malpractice.

54. This included to clarify that Mr. Ellner and Lightbox aided and abetted Mr. Miller's malpractice and breach of fiduciary duty by being aware of his conflicts of interests in representing Lightbox and Mr. Ellner against the Moldovsky Firm but persisting in retaining and utilizing him against Moldovsky.

55. Judge Baldi did recognize that the Moldovsky Firm had plead causes of action that could reach a jury. (Transcript, Ex. "L" at 111:22-25.)

<u>Lightbox, Mr. Ellner and Mr. Miller Make Six Sanctions Requests in Pennsylvania</u>

56. In the course of the Pennsylvania litigation Lightbox and Mr. Ellner made two requests for sanctions for alleged frivolous litigation (seeking discovery), and Mr. Miller made six.

57. Part of the relief Lightbox and Ellner sought in that matter was reimbursement of the fees paid to Fox Rothschild for his defense. (<u>See</u>, Mr. Ellner's Memorandum of Law, Ex. "M".)

58. Judge Baldi declined to consider the at least six sanctions requests made by Mr. Miller, Mr. Ellner and Lightbox against the Defendants and ignored them completely.  Lightbox was not granted any fee award either.

<u>The Pennsylvania Action is Unilaterally Withdrawn Without Prejudice</u>

59. The Moldovsky Firm discontinued its action in part because it discovered at oral argument that Mr. Miller still did not carry malpractice insurance making malpractice claims of limited value at the time.  (Transcript, Ex. "L"  at 57:18-25.)  Mr. Miller's failure to carry malpractice insurance undermined much of the ability to pursue that matter, though Judge Baldi pointed out that there was credible basis to reach a jury on various of the claims (Transcript at 111:22-25), and Judge Baldi, on one of the various Mr. Miller and Lightbox denied motions, held that Mr. Miller could not avoid or invalidate Mr. Stretton's expert report which highlighted serious concern with Mr. Miller's fitness to practice law and malpractice and breaches of fiduciary duties by him.

60. The firm also recognized that Judge Baldi seemed to think that the claims may be better filed in New York.

61. On October 16, 2019, the Moldovsky Defendants withdrew without prejudice the claims against Ellner by filing a fourth amended complaint that omitted any claims against the latter due in part to bring them in New York and to bring the claims later with other claims that were not yet fully ripe and mature but which are currently pending.  Following preliminary objections by the remaining defendants and a subsequent fifth amended complaint, Moldovsky filed a praecipe to discontinue and end the matter without prejudice until the issues had ripened in New York.

## VIII.   The Second Circuit Court of Appeals Affirms Judge Cote's Decision And Upon Review of the Pennsylvania Litigation Confirmed that Lightbox and Mr. Ellner's Claims Here are Impossible

62.  On April 21, 2020 the Second Circuit Court of Appeals rendered its Summary Order affirming Judge Cote's charging lien award.

63. Lightbox unilaterally withdrew its claims for malpractice and breaches of fiduciary duties against the Moldovsky Firm along with one of two NY Jud. Law § 487 claims, by Affirmation of Mr. Miller, and then attempted to reinstate a withdrawn NY Jud. Law § 487 claim by "corrected" affirmation. <u>See,</u> Affirmations, attached hereto as Ex. "M".   The remaining claims are subject to a pending Motion to Dismiss based on reasons which include why they had to withdraw their other claims; preclusion based on the Second Circuit's and Judge Cote's Decisions.  Thus, it is expected that the motion will be granted.

64. In support of their Appeal, Lightbox had submitted a Reply brief containing allegations complaining that it was wrongful and abusive of the Moldovsky Firm to bring the Bucks County, PA suit and further requested leave to provide a supplemental appendix of materials from the Bucks County, PA case.  <u>See</u>, Reply Brief, attached hereto as Ex. "O".

65. The Moldovsky Firm Moved to Strike the references to the Pennsylvania matter from Lightbox's brief, which was denied – meaning allegations similar to those made in the current PA complaint were considered by the Second Circuit.  (<u>See</u>, Order, Ex. "P".)

66.   Accordingly, when the Second Circuit Court of Appeals affirmed the charging lien it specifically determined and adjudicated that Lightbox's claims in this  case (as similar claims were presented to and heard by the Second Circuit) were baseless, without merit and irrelevant. (<u>See</u>, Order, Ex. "Q".)

## IX.     Lightbox and Mr. Ellner's Additional Preclusive Sanctions Failures

67. Just before and immediately following the Second Circuit Order, Lightbox and Mr. Ellner began to file a series of sanctions motions in the New York Supreme Court.  On March 10. 2020 Lightbox and Ellner made their first of three motions for sanctions against the Moldovsky Firm in that matter.  On June 19, 2020 and June 27, 2020 Lightbox and Ellner made two additional

motions in that venue.  The motions included substantial allegations and claims that are the same or similar to the main claims in the Complaint here, including about fraud, extortion, blackmail and misconduct related to the Agreement and Amended Agreement, billing disputes/fraud, and frivolous litigation – including the Bucks Case specifically.  All three were denied by Judge Cannataro by Order dated December 10, 2020.  (Order, Ex. "R".)

68. On June 15, 2020 Lightbox made a cross-motion for sanctions for "frivolous conduct" in the New York Appellate Division, First Department.  This motion included substantial allegations and claims that are the same or similar to the main claims in the complaint here.  That motion was denied by Order dated August 27, 2020. (Order, Ex. "S".)

69. Lightbox initiated this action on December 8, 2020 and proceeded to serve it on December 23, 2020 despite it having been rendered impossible completely by the fourth court just days before and knowing that none of the claims therein were legitimate or had any basis or merit.  Lightbox and Mr. Ellner have been informed of the same by five courts.

70. Accordingly, a letter informing Plaintiff's counsel of his client's misrepresentations and the degree to which his claims were completely debunked, dismissed and barred was sent on March 5, 2021. (Rule 11 Letter, attached hereto as Ex. "T".)

71. This unfortunately did not prevent Mr. Ellner's counsel from misrepresenting to the Court at the March 17th Conference that "I think I heard your question, and that is, what is plaintiff's role in any of the cases that are pending. And the answer, as I understand it -- and I don't represent him in any other cases -- I'm not aware that he's involved in any other cases." (Transcript Excerpt[1], attached hereto as Ex. "X" at Page 4.)

---

[1] All excerpted documents can be provided in full to the Court upon the Court's request.

72. Based on Lightbox, Mr. Ellner, and Mr. Miller's prior and continuing malicious prosecution, abuse of process, use of illegal wiretaps, and other abusive and frivolous litigation and conduct, the Moldovsky Firm and the undersigned have initiated two new Federal complaints, one in the SDNY, attached hereto as Ex. "U" and the other in the EDPA, attached hereto as Ex. "V".

**X.     The New York Supreme Court Appellate Division, First Department Further Bars Mr. Ellner's Complaint**

73. On March 30, 2021 the New York Supreme Court Appellate Division, First Department issued an Order striking portions of Lightbox and Mr. Ellner's Reply briefs in two separate but related appeals in that Court.  A copy of that Order is attached hereto as Ex. "Y".

74. Of relevance, a primary basis for the Moldovsky Firm seeking for the material to be stricken was *res judicata* and  collateral estoppel because -  as here – the same allegations that have been litigated *ad nauseum* were re-asserted despite being denied in the Interpleader proceeding (A copy of which is attached hereto as Ex. "W"), in the Second Circuit, and in the New York Supreme Court, as articulated in the Motion proceedings.  The stricken portions include:

        a.   "Moldovsky's "final" invoice is based on massively retroactive, allegedly fraudulent invoicing" 2019-03384 Reply Brief, at Heading 3, page 11;

        b.   "Scarola attempts to leverage the fee dispute involving Moldovsky to suggest that Lightbox has a pattern of "stiffing" its attorneys. However, two bad experiences with attorneys does not amount to a pattern, any more than Scarola and Moldovsky's actions serve to condemn the entire legal profession." 2019-03384 Reply Brief at 11;

c. "Moldovsky vexatiously moved to disqualify Lightbox's undersigned counsel four times before four courts, and abandoned his appeal before this Court concerning the same issue. Moldovsky also sued Lightbox and the undersigned, personally, in Pennsylvania, and amended his complaint five times before abandoning that action immediately upon being served with initial discovery demands. See this Court's Dkt. #15 (Aff. of Counsel at ¶¶ 16-27)." 2019-03384 Reply Brief at 13;

d. "Lightbox contends that Moldovsky's invoices for its legal services, incorporating 1,091 hours and $295,509 of retroactive billing, are fraudulent. See Dkt. #741 below (Verified Crossclaims, at ¶¶ 87-111 ("Mr. Moldovsky and his Firm engage in fraudulent billing")). Regardless of the ultimate merit of these verified allegations, they tend to cast Scarola's smear tactics in a different light" 2019-03384 Reply Brief at 13;

e. "Moldovsky has been sued for wrongful use of civil proceedings and abuse of process in connection with that prior action. See Ellner v. Brem Moldovsky, LLC et al., No. 20-cv-06190 (E.D.Pa.) (pending)" 2019-03384 Reply Brief at 13.

f. "The documentary evidence further shows that the last two versions of Moldovsky's "final" invoice effectively discredited the first six versions and were themselves the product of massively retroactive billing, issued only after Lightbox had already brought legal proceedings against him." 2019-03384  Reply Brief at page 5;

g. "Moldovsky's "final" invoice effectively discredited the first six versions and were themselves the product of massively retroactive billing, issued only after Lightbox had already brought legal proceedings against him" "Moldovsky's "final" invoice effectively discredited the first six versions and were themselves the product of massively retroactive billing, issued only after Lightbox had already brought legal proceedings against him" 2020-02530 Reply Brief at 5;

h. "Apparently, he is planning on denigrating me to the Judge and others in his motion, again just as the Judge is deciding my fate. . . I am being extorted to make a payment without the ability to fairly challenge the validity of the bills." 2020-02530 Reply Brief at13;

i. "I offered to make a partial payment, not because I agreed with those invoices but because I disputed them and wanted to literally buy additional time to review them in detail. At that time Mr. Moldovsky was threatening to quit the 3rd Home Matter if I did not pay. I felt that Mr. Moldovsky was extorting me." 2020-02530 Reply Brief at 5;

j. "Apparently, he is planning on denigrating me to the Judge and others in his motion, again just as the Judge is deciding my fate. . . I am being extorted to make a payment without the ability to fairly challenge the validity of the bills." 2020-02530 Reply Brief at 13); and

k. "I offered to make a partial payment, not because I agreed with those invoices but because I disputed them and wanted to literally buy additional time to review them in detail. At that time Mr. Moldovsky was threatening

to quit the 3rd Home Matter if I did not pay. I felt that Mr. Moldovsky was

extorting me." 2020-02530 Reply Brief at 14.

75. Based on this Order alone, the paragraphs of the Plaintiff's Complaint in this matter that

are impossible include:

    a.  ¶ 11 "During that engagement, various disputes and disagreements arose

        between Ellner and Defendant Moldovsky, with respect to Moldovsky's

        billing practices";

    b.  ¶ 12 "Defendant Moldovsky, Moldovsky, demanded that Ellner enter into

        a new and revised fee agreement or else Moldovsky would leave the

        representation";

    c.  ¶ 13 "Despite a modification to the agreement, Ellner and Defendant

        Moldovsky continued to disagree over Defendant Moldovsky's billing

        practices";

    d.  ¶14 "In or about the spring 2018, Moldovsky made certain demands on

        Ellner with respect to payments Ellner putatively owed to him";

    e.  ¶ 15 "As a result of these disagreements and disputes over the bills,

        Moldovsky and his firm terminated the professional relationship with

        Plaintiff in May 2018";

    f.  ¶ 18 "Within weeks of the change of counsel, Defendant Moldovsky

        launched a campaign against Miller, accusing Miller of disloyalty to him

        and various other wrongful acts";

g.  ¶ 49 "Defending against this frivolous litigation caused Ellner to incur expense and losses in efficiency and time from work, which is tied to financial loss";

h.  ¶ 50 "Defending against this frivolous litigation also caused stress and anguish to Ellner as well as embarrassment and humiliation";

i.  ¶ 51 "There was no proper purpose to including Ellner in the Bucks County Action";

j.  ¶ 52 "Doing so was designed purely to harass Ellner, which is not a proper purpose for litigation and is a perversion of the legal system and a miscarriage of justice"; and

k.  ¶ 53 "Defendants Moldovsky and Pomerantz are practicing lawyers, who have engaged in the wrongful use of civil proceedings and abuse of process against Ellner causing Plaintiff financial losses and emotional and reputational harm."

76. In reality, all of the Complaint is impossible, however, having been raised and litigated in several forums already. As a sample, true and correct copies of Lightbox's June 2020 AD1 Sanctions Cross-Motion, Lightbox's June 2020 New York Supreme Court Motion for Sanctions, and Lightbox's January 2021 Opposition to the AD1 Motion to Strike, each excerpted for size and with exhibits omitted are attached hereto as Exs. "Z", "AA", and "BB". Full versions of all the documents can be provided upon request. Some, but certainly not all, of the allegations that have been brought and adjudicated, dismissed, denied, and deemed irrelevant and are thus impossible that are now essentially raised again are included on the table that has been attached hereto as Exhibit "CC".

77. Accordingly, Mr. Ellner's Complaint in this matter is entirely impossible and must be dismissed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

BREM MOLDOVSKY, L.L.C.

Dated: Bucks County, Pennsylvania
April 5, 2021

By: _____
Brem Moldovsky, Esq.
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
(215) 546-9957
brem@bremlaw.com

Signed before me this 5th
Day of April, 2021

Commonwealth of Pennsylvania Notary Seal
SHERI FORNEY, Notary Public
Philadelphia County
My Commission Expires June 26, 2021
Commission Number 1271161

22