# Exhibit "A"

Brem Moldovsky, L.L.C.
Brem Moldovsky, Esq.
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
Attorney ID No.: 79485
Phone: 215-546-9957
Email: Brem@bremlaw.com
Attorney for Plaintiff

The Law Firm of Jonathan R. Miller
Jonathan R. Miller, Esq.
Attorney ID No.: 201210
4 Castle Lane
Hopewell, NJ 08525
(609) 955-1226
jonathan.miller@lawyer.com
Attorney for Plaintiff

**IN THE COURT OF COMMON PLEAS OF** ████████████ **PENNSYLVANIA**
**CIVIL DIVISION**

BREM MOLDOVSKY

*Plaintiff,*

████████████████

**TRIAL BY JURY OF 12 DEMANDED**

██████████████████████████████████████

### NOTICE

**You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

1

██████ **County Bar Association**
**135 East State Street**
**Doylestown, PA 18901**
**Phone (215) 348-9413, 1-800-479-8585**
**www.**██████**org**

**PA Bar Association: www.pabar.org**

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparecencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Brem Moldovsky, L.L.C.

BY: Brem Moldovsky, Esq.

Dated: February 9, 2016

BY: Jonathan R. Miller, Esq.

2

Brem Moldovsky, L.L.C.
Brem Moldovsky, Esq.
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
Attorney ID No.: 79485
Phone: 215-546-9957
Email: brem@bremlaw.com
Attorney for Plaintiff

The Law Firm of Jonathan R. Miller
Jonathan R. Miller, Esq.
Attorney ID No.: 201210
4 Castle Lane
Hopewell, NJ 08525
(609) 955-1226
jonathan.miller@lawyer.com
Attorney for Plaintiff

<div align="right">

**<u>Notice to Plead</u>**
**To: The Defendants, you are required**
**to reply to the allegations of this pleading**
**within 20 days from the date of service**

**/s/ <u>Brem Moldovsky, Esq.</u>**
**Attorney for Plaintiff**

**/s/ <u>Jonathan R. Miller, Esq.</u>**
**Attorney for Plaintiff**

</div>

**IN THE COURT OF COMMON PLEAS OF ███ COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | |
|---|---|
| BREM MOLDOVSKY<br><br>*Plaintiff,*<br><br>vs.<br><br>███ HEBREW ACADEMY and<br>███<br><br>*Defendants.* | **Case No:** ███<br><br>**TRIAL BY JURY OF 12 DEMANDED** |

<div align="center">3</div>

*(left margin, vertical text)* Case# 16 - JUDGE:39 Received at County of ███ Prothonotary Office on ███ 2:43 PM, Fee = $0.00

## AMENDED COMPLAINT - CIVIL ACTION

AND NOW comes the Plaintiff, Brem Moldovsky, by and through his counsel, Brem

Moldovsky, Esq., of Brem Moldovsky, L.L.C. and Jonathan R. Miller, Esq., and hereby complains

of the Defendant as follows:

## PARTIES

1.      Plaintiff Brem Moldovsky is an individual residing at 118 Oakdale Avenue,
Washington Crossing, PA 18977.

2.      Plaintiff's wife, Melanie Moldovsky ("Assignor") assigned and otherwise
transferred ("assigned") to Brem Moldovsky ("Assignee") all rights, ownership, title and interest
held by Assignor in and to the claims as stated herein, by way of assignment, dated May 6, 2015,
which is attached hereto and incorporated herein as Exhibit "A".

3.      Defendant ███████Hebrew Academy ("████████is, on information and belief, a
Pennsylvania not-for-profit corporation located at ██████████████████████████.

4.      Defendant ███Defendant ███████("████████is the director of ████████whose
business address is ████████████████████████.

## JURISDICTION

5.      The actions, circumstances, transactions and facts of this case took place at least
mostly in ███████County, Pennsylvania.

6.      All parties are located in ███████County, Pennsylvania.

7.      Jurisdiction is appropriate pursuant to Pa.R.C.P.1910.2 (a)(2).

Case# 16 - JUDGE:39  Received at County of ███ Prothonotary Office on ███ 2:43 PM, Fee = $0.00

## **FACTUAL BACKGROUND**

8.      Plaintiff[1] Brem Moldovsky and his wife, Melanie Moldovsky, are the parents of four children, all of whom attended ███████ Hebrew Academy during school years of approximately 2009 – 2012.

9.      Plaintiff and his wife believed and were led to believe by Defendants Rabbi ███ ███ and ███████ Hebrew Academy that attending ██████ was vital to the emotional, spiritual, cultural, and intellectual development of their children.

10.     Defendant ███████ as head of ███████ Hebrew Academy and as a trusted personal and family Rabbi who was the leader of the prime communal and religious affiliation of the family, established and owed a fiduciary duty and duties of candor and loyalty towards members of his congregation, and had a rabbinical duty to the Plaintiff and his family.

11.     Plaintiff and his family trusted and believed ██████ when they were told and led to believe that ██████ had particular experience in Jewish education, culture, and family finances that was beyond the knowledge and expertise of Plaintiff and his wife at the time, and trusted that he was acting in the best interest of the children and the family.

12.     Despite residing in one of the best public school districts in the state, Plaintiff and his wife dutifully paid the full tuition for four children with no scholarships (despite scholarship being readily given to a majority or almost a majority of the school families and available for **Plaintiff's family**) for  3 school years for a total of approximately $100,000 based on ██████ various stated and represented policies and promises, including particularly the duties and

---

[1] All allegations of fact known to, involving and impacting the Plaintiff were also known to, **involved with and impacted Plaintiff's wife, Melanie Moldovsky, except to the extent not logical** with the facts as stated herein. Consistent with the facts as stated here, due to the Defendants and their conduct as stated herein, the Plaintiff and his wife were both damaged and incurred losses as stated herein.

Case# 16 - JUDGE:39  Received at County of ███████ Prothonotary Office on ████ 2:43 PM, Fee = $0.00

obligations of ████ based on the Mission Statement and Anti-Bullying and Safe Nurturing Place Policy.

13.     A major reason to pay full tuition and not take scholarship was an effort to best **position oneself to protect one's children from bullying and abuse, based on the Defendants'** policies and operations.

14.     Although there were an implied, oral and possibly written Anti-Bullying Policy and Safe Nurturing Place Policy throughout Plaintiff**'s relationship with** ████ **it was not until** approximately 2010 or 2011, after Plaintiff politely requested and ultimately demanded a more formalized version, that ████ promulgated, noticed, agreed to abide by, published, advertised and marketed by website, statements, mailings and otherwise, and regularly required a copy to be signed by each student and family a formal printed Anti-Bullying and Safe Nurturing Place Policy. A copy **of the same, which is available on** ████ website (http://████org/), is attached **hereto and incorporated herein as Exhibit "B".**

15.     It is believed that for each year Plaintiff**'s children were students at** ████ starting in about 2010 or 2011, the Anti-Bullying and Safe Nurturing Place Policy, by ████ were promulgated, noticed, agreed to be abided by, published, advertised and marketed by website, statements, mailings and otherwise, and regularly required a copy to be signed by each student and family.

16.     When requested by Defendants to sign the Anti-Bullying and Safe Nurturing Place Policy, Plaintiff, his wife, and his children, upon information and belief, signed and returned same to the Defendants as required.

17.     Plaintiff will search and investigate further for signed versions of this document, and Plaintiff intends to request same in discovery upon Defendants.

6

Case# ████ 16 - JUDGE:39  Received at County of ████ Prothonotary Office on ████ 2:43 PM, Fee = $0.00

Case# ▌ 16 - JUDGE:39  Received at County of ▌ Prothonotary Office on ▌ 2:43 PM, Fee = $0.00

18.     Plaintiff knows Defendants have such copies as they were provided to them.

19.     It is possible there may have been some wording variation of the Anti-Bullying and Safe Nurturing Place Policy over the years, but that the copy attached hereto, particularly in its prime points, is the same as the ones relied on by Plaintiff, his wife and family.

20.     Plaintiff and his family fulfilled their obligations to ▌ by sending his children to ▌ and by complying, conforming to and accepting the Anti-Bullying and Safe Nurturing Place Policy, by participating with the school, the children by fulfilling their academic responsibilities, the family by fulfilling their additional responsibilities and duties, and paying approximately over $100,000 in tuition and fees between 2009 and 2012.

21.     Plaintiff provided value and benefit to ▌ by contractually agreeing to send and keep his children at ▌ This was especially true if your child does not need special **services as Plaintiff's children did not** - which ▌ was not generally good at providing (though it often says otherwise).

22.     Additionally, by sending his children and participating at ▌ Plaintiff and his wife provided value and benefit to ▌ Attendance and participation were very important and valuable to ▌ as it constantly unsuccessfully struggled with low attendance and to attract and not lose families and students.

23.     In promising, representing, advertising, marketing and promulgating the Anti-Bullying and Safe Nurturing Place Policy, Defendants promised **a "safe and nurturing place for all who attend"** ▌

24.     In accordance with **Pennsylvania's Anti-**Bullying law, 24 P.S. § 13-1303.1-A, and ▌ **commitments and contractual duties based upon the** Anti-Bullying and Safe Nurturing Place Policy, ▌ had the legal, ethical, professional and contractual duty to maintain the stated

7

standards, steps and consequences in this policy, to keep the policy prominently posted within each

school building, and to designate an appropriate staff member to receive incident reports, and

families and students were required to accept and comply with the policy as well.

25.    However, it was never the intention of Defendants to carry out and enforce the

standards and remedial measures, as contained in the Anti-Bullying and Safe Nurturing Place

Policy or to tangibly achieve or create such an environment for the children at █████████

26.    In promising, representing, advertising, marketing and promulgating the Anti-

Bullying and Safe Nurturing Place Policy, Defendants admitted that "[b]ullying has become a

more prevalent issue" at █████ and promises that "[t]his behavior will not be tolerated at

█████

27.    In promising, representing, advertising, marketing and promulgating the Anti-

Bullying and Safe Nurturing Place Policy, Defendants established a series of consequences for

bullying offenses, including "exposure of the bully" and a warning for a first offense, "temporary

suspension" for a second offense, and "permanent suspension" for a third offense.

28.    The Anti-Bullying and Safe Nurturing Place Policy were intended to be and were

an agreement and contract between Defendants and the families and children who attended.

29.    These were key provisions Plaintiff, his wife and family relied on for the safety,

health and academic, emotion and social development of their and all █████ families children.

30.    Based on Defendants' words, actions, policies and representations, the Anti-

Bullying and Safe Nurturing Place Policy like many other rules and policies at █████ were never

intended to be actually enforced and were not in fact actually enforced.

31.    Due to lack of implementation and enforcement by Defendants, the Defendants,

failed to mitigate the bullying issues plaguing █████ and actually exasperated and worsened

8

them, creating a severe, pervasive and offensive hostile educational environment that limited and **interfered with the students' abilities to benefit from** the services, activities, or opportunities offered by the school.

### Ongoing, Underlying Issues at ████

32.    Throughout the years that Plaintiff and his family was involved with ████ there was a growing realization — based on the lack of enforcement of the Anti-Bullying and Safe Nurturing Place Policy and of the proper protocols, policies, day to day functioning, decisions, misrepresentations and actions of ████ staff and administration regarding bullying, safety, and basic health, organizational and childcare — that ████ was very often a damaging place for children.

33.    Plaintiff, like other parents there, came to a growing realization that ████ often violated its own contract, representations, policies and promises by failing to enforce the policies **and by failing to fulfill its promise to provide a "safe and nurturing place for all who attend."**

34.    Bullying was going on constantly and bullying issues were continuous, permeated ████ destroyed the social fabric, caused unhealthy development, and wasted money and time and precious years of Plaintiff**'s, his family's and his children's** and other ████ **families and students' lives.**

35.    Generally, there were at least 10 significant issues of bullying and safety relevance **pertaining to each of Plaintiff's children or their grade during each year at** ████ with a majority being perpetrated by students who would not have **been able to do so had** ████ **stated policies** been enforced.

36.    The Defendants, through their actions, inaction and statements, allowed and condoned a negative school environment that was fertile ground for bullying, abuse, lying,

Case#   16 - JUDGE:39  Received at County of ████ Prothonotary Office on ████ 2:43 PM, Fee = $0.00

Case# ██ 16 - JUDGE:39  Received at County of ███ Prothonotary Office on ██ 2:43 PM, Fee = $0.00

misrepresentations, victim blaming and attacking, and avoidance of accountability and responsibility, in violation of their contract.

37.     The Defendants participated in such negative behavior and contract breaches, including by cursing and yelling at children, making misrepresentations to families about important issues, including bullying, tuition, standards, capabilities and more, intimidating and threatening children, school families, and staff.

38.     There was no or no reasonable or adequate attempt to keep track of, tally, report, or appropriately address bullying incidents as required by the contract. Rather than children with a **number of incidents being punished and dealt with per** ████ **representations, such children** were allowed to go on bullying and negatively impacting others.

39.     Accordingly, rather than children with problematic and unresolved propensities being dealt with properly and at the appropriate contractual point, and as appropriate removed **from the school per** ████ **representations, this did not** occur, but rather such children were allowed to continue to bully and harass other children and deteriorate the social, academic and general environment at ████

40.     By these and all the allegations herein and per the facts, children and families, including **Plaintiff's children and family,** were negatively impacted, socially, emotionally and economically, including in that positive anti-bullying, empowering victims, bystanders, families, staff and administrators and the promised warm and nurturing environment did not occur.

41.     Much of the culture at ████ throughout Plaintiff's **time there was one of** nepotism and privilege – much based on loyalty to ████ and economic status - cultivated by Defendant ████ and ████ which permeated the very fabric of ████ and created an

inappropriate, dangerous, abusive, corrosive and damaging environment that negatively affected students and their families.

42.     This type of environment is contrary to the "warm, generous, loving community" promised in the Anti-Bullying and Safe Nurturing Place Policy.

43.     A family's ability and willingness to pay and/or donate money to ████ often dictated the treatment their children would receive at ████ not any set of rules or policy.

44.     Children of or those close to administrators or privileged parents and/or large donors were allowed to abuse, demean, and bully, and be a continual threat to other children without fear of repercussion.

45.     Throughout the Plaintiff's family's time at ████ there was on a regular basis at least a number of children relevant to the Plaintiff's children wherein the child was able to continue to bully rampantly without repercussions because of his parents' status or connection to ████ or another ████ administrator.

46.     The failure to enforce the agreement and represented standards encouraged the very conduct the standards were supposedly there to curb and stop.

47.     There were various basic, serious, contractual failures of basic competency and related issues which had become glaringly present and which were emerging at ████ as well which exasperated and were exasperated by the violations of the Anti-Bullying and Safe Nurturing Place Policy.

48.     Defendant ████ had exclusive or virtually exclusive control of ████ and acted per the allegations herein and used ████ to benefit himself, supporters, loyalists, his family and his friends.

49.     Defendant ████ used and uses ████ for his benefit.

Case# 16 - JUDGE:39 Received at County of ████ Prothonotary Office on ████ 2:43 PM, Fee = $0.00

50.     ███████ is essentially an alter-ego of Defendant ███████ as he has stated.

51.     Defendant ███████ utilized ███████ funds to take international trips every year that were or at least mostly were neither needed nor beneficial to ███████

52.     Defendant ███████ gave favors, including tuition discounts, positions, and other benefits to loyalists, supporters, friends, family and to those he wanted to lure in or keep in (and, for this last group, once he made his sale and the family was locked in (to at least some extent), he often unilaterally and wrongfully changed the terms and conditions of his representations for his or ███████ convenience and to the detriment of the family).

53.     ███████ was often not in his office or in class he was to teach when he was supposed to be and there were other teachers who were late or simply wasted much class, but, based on their connection to ███████ such was tolerated.

54.     Throughout the school year, Defendant ███████ and another teacher regularly cancelled class and often left the students without a teacher for entire work/free periods.

55.     ███████ would often be seen shopping during the school day 25 minutes away from the school.

56.     ███████ would lure in or work to keep families at the school – working to get them to pay what he could get from them – based on various misrepresentations, including about school capabilities, tuition discounts and waivers, special needs capabilities, bullying, safe environment and others in order to help maintain ███████ ability to carry his salary and benefits, which, per his policy, are not disclosed except to his closest loyalists.

57.     ███████ generally, as it represents, is either not solvent or is barely solvent and ███████ works not to benefit the children and families but to do what needs to be done to maintain ███████ in a manner beneficial to him with enough funds for his salary, benefits, trips and needs.

Case# ███████ 16 - JUDGE:39  Received at County of ███████ Prothonotary Office on ███████ 2:43 PM, Fee = $0.00

58.   Defendant ████ inappropriately hired unqualified people for jobs at ████ including friends and relatives, including which lead to abusive and dangerous conduct, cursing at or around children, use of inappropriate sexual words around children, and behavior which otherwise endangered children (at least one of the hires was at one point the target of criminal charges related to inappropriate involvement with minors).

59.   A former assistant to a prison dentist was specifically designated to implement the Anti-Bullying and Safe Nurturing Place Policy and observe for bullying, was not appropriately qualified or trained for the position and failed to receive training, manage, carry out, and follow through with the Anti-Bullying and Safe Nurturing Place Policy.

60.   **Though certainly inappropriate, this person's work in prison was being** cited as appropriate background for the Anti-bullying and related work at ████

61.   The school nurse (who was the parent of two students at ████ was trained as an in-home care provider for stroke victims and had no expertise or experience providing the type and level of care required to be a school nurse, but was hired by Defendants as a favor or special arrangement.

62.   In September of 2011, **during a lice breakout, Plaintiff's wife had to go to** ████ and perform lice checks personally, and teach the school nurse what lice and nits looked like.

63.   As part and parcel of his overall scheme to utterly dominate and control ████ to the detriment of **enrolled children and their parents,** ████ hired one of his "loyalists" as bookkeeper, despite — or because of — **that person's inexperience and** lack of qualifications, including his inability to operate the basics of QuickBooks, which was his regular medium of work at ████

13

64.    Utilizing staff who were not sufficiently experienced, trained, managed and supported, including in the instances of the bookkeeper and many teachers, enabled and allowed Defendants to manipulate and deceive families, to avoid their legal, ethical, professional and contractual responsibilities, as stated herein, and then to utilize such staff to confuse, obscure and conceal their failures and violations, as plead herein.

65.    The Defendants breached the agreement and their representations in hiring, managing and directing staff without proper, adequate, reasonable and meaningful training, management, and support to properly implement and follow the Anti-Bullying and Safe Nurturing Place Policy.

66.    **Defendants, taking advantage of parents' and families' vulnerabilities, cultivated** an environment where the most effective manner to seek relief from bullying involved use of influence, connections, leverage, financial pressure and benefit and such in effort to achieve administrative attention and motivation regarding the particular bullying issue(s) in need of appropriate attention.

67.    As further indication of the nepotism and privilege – bullying activity - rampant at ███████Defendant ███████ hired his daughter for a position at ███████that was custom-created for her, not beneficial to ███████ and for which she was compensated beyond her market worth – enough that apparently she commuted or was supposed to commute from several states away several days a week each week for a position that was evidently better than any position she could find near her home.

68.    Despite and light of the various serious ongoing issues at ███████Plaintiff and his family volunteered much time and resources to ███████gave donations of money to ███████

14

participated in ▉▉▉▉events, and worked to try to help improve the problems at ▉▉▉▉and ▉▉▉▉in general.

## 2009-2010 School Year[2]

69.     In the fall of 2009 regular negative, dangerous, incidents occurred, including but not limited to ongoing bullying without enforcement of the Anti-Bullying Policy, particularly by one child with many incidents to whom the Anti-Bullying Policy apparently did not apply.

70.     **Early in the school year, Plaintiff's son,** who was in second grade at that time, was pushed by the same problematic student, who was two years older, into a bathroom urinal and a water fountain.

71.     This same bully was involved in many other known incidents of bullying and aggression, including attacking Plaintiff's **older son later in the year (which** incident Defendants improperly attempted to conceal from Plaintiff), that when reported were denied by Defendants but corroborated by other students and parents.

72.     One student regularly had his lunch thrown away by another problematic student during this timeframe, prior to this timeframe, and/or ongoing.

73.     In addition to being directly affected by bullying, **Plaintiff's children** were further affected by being compelled to regularly witness the ongoing and unremedied bullying of other students by students and administrators, and by being discouraged from supporting victims.

74.     There were several incidents from 2009 and on which were caused and worsened by **the Defendants'** violations of the Anti-Bullying and Safe Nurturing Place Policy.

---

[2] Incidents are listed generally and are believed to have occurred approximately at or near the times indicated, and/or in an ongoing fashion.

Case# ▉▉▉ 16 - JUDGE:39  Received at County of ▉▉▉ Prothonotary Office on ▉▉▉ 2:43 PM, Fee = $0.00

75.     These incidents included dress-code related incidents wherein an administrator pulled down the pants of a child and another incident that involved an administrator calling a child or using the word slut or whore while punishing a young girl.

76.     The issues at ███ beginning in 2009, began to require and draw a great deal of work day time and attention by Plaintiff and his wife, an attorney and office manager, bookkeeper and legal secretary, who sent the children to the Jewish day school – at least in part - in order to have quality time to work while the school provided general and Judaic education.

77.     Plaintiff and his wife were damaged in losing much time which otherwise could have been used profitably in his profession and law practice.

**2010-2011 School Year**

78.     Despite the bullying and other issues present in the prior school year, Plaintiff and his wife sent their children to ███ for 2010 and for a few more years based on **Defendants'** misrepresentation that the bullying problems would be properly addressed and that, when implemented, the Anti-Bullying and Safe Nurturing Place Policy would be enforced diligently and strictly.

79.     **However, contrary to Defendants' misrepresentations, the** bullying issues at ███ persisted and worsened throughout the school year and were not addressed properly or through the Anti-Bullying and Safe Nurturing Place Policy.

80.     **Plaintiff's daughter celebrated her Bat** Mitzvah at ███ during which Defendant ███ embarrassed her by repeatedly calling her by the wrong name, even though she was one of only approximately 20 students in her class.

81.     Students were regularly physically, verbally and psychologically bullied, including related to health issues, level of religious practices, special needs and other things.

Case# ███ 16 - JUDGE:39  Received at County of ███ Prothonotary Office on ███ 2:43 PM, Fee = $0.00

82.    **The Plaintiff's children witnessed** and were subjected to punching, hitting, pushing, teasing, cursing, exclusion, and verbal, physical, mental, emotional and online bullying.

83.    Plaintiff, **Plaintiff's wife and children were all bullied and mistreated in various** ways in various methods by █████

84.    Students were very often allowed to act wildly without repercussion and disturb and bully other children.

85.    The modus operandi of █████ was bullying and they applied the practice against others. Students and staff were bullied by fellow students, by █████ staff, and by █████

86.    One particular board member physically attacked a staff member who he felt was inappropriate, resulting in the firing of the staff member, and other staff members were subject to shaming firings and other degradations, which showed that bullying and violence were normal method of addressing issues at █████

87.    Allegedly, in approximately 2012, a veteran teacher was shamed and fired primarily for asking █████ about his cursing at children and warning and threatening them about exposing him.

### 2011 – 2012 School Year

88.    Again, based on **Defendants'** misrepresentations that the Anti-Bullying Policy would be implemented and enforced, Plaintiff's **children returned to** █████ **in the fall of 2011.**

89.    However, the Anti-Bullying and Safe Nurturing Place Policy, like many other rules and codes at █████ was never intended to be actually enforced and was not in fact actually enforced, and, due to lack of implementation and enforcement by Defendants, failed to mitigate the bullying issues that continued to plague █████

17

90.    The Defendants, purposefully, mostly or entirely failed to maintain records of bullying incidents, failed to keep a tally of infractions by students, failed to report incidents to parents and failed to follow through with implementing the consequences of Anti-Bullying Policy.

91.    Various bullying, dangerous and preventable incidents occurred in or around this timeframe, including that a child possessed a dangerous knife in school, but it was not taken away from him though staff and faculty were aware of it and about a week later the same child had some sort of emotional or other attack which had him acting, yelling and running wildly and acting as and threatening to hurt others.

92.    Another incident involved an administrator cursing at or out children on a foreign trip, followed by a senior teacher being shamed and fired for asking the administrator about this event and related.

93.    Another normal phenomenon which occurred numerous times to Plaintiff, his family and others involved raising with █████ a problem (usually about bullying) about a child with a serious and known history of such incidents at █████ only to have the Defendants represent and misrepresent that this was the first or about the first that they have heard such a thing, when such was totally false and corroborated by lack of tallying and tracking bullying incidents in violation of the Anti-Bullying and Safe Nurturing Place Policy

94.    Defendants would hide information and knowledge about bullying and their failures to enforce the Anti-Bullying and Safe Nurturing Place Policy.

95.    **Such incidents and █████ failures to manage and stop them scared Plaintiff, his** family and others and caused a continuing loss of faith in █████ and its promises.

96.    A devastating house fire in 2011 caused Plaintiff and his family to experience a great deal of hardship.

Case# ■ 16 - JUDGE:39  Received at County of ■ Prothonotary Office on ■ 2:43 PM, Fee = $0.00

Case# 16 - JUDGE:39  Received at County of ▮▮▮ Prothonotary Office on ▮▮▮ 2:43 PM, Fee = $0.00

97.     Following the house fire loss, the financial strain of day school tuition for four children, **particularly since Plaintiff's family is located within one of the best pu**blic school districts in the state, seemed unnecessary and wasteful considering all of the problems which permeated the daily environment at ▮▮▮ including the ongoing bullying, violations of the Anti-Bullying and Safe Nurturing Place Policy and the ramifications thereof.

98.     Due to the various failings, particularly in failing to uphold the Anti-Bullying and Safe Nurturing Place Policy, the social experience, education and child development, and children were substantially and negatively impacted and failing.

99.     Despite being pressured by Defendants, in approximately June 2012, Plaintiff decided and timely informed ▮▮▮ that his children would not be returning to ▮▮▮ for the 2012-2013 school year.

100.    In approximately June of 2012, **Plaintiff's** wife personally appeared at ▮▮▮ in its office and informed ▮▮▮ its office staff and administration that the children would not be attending the following school year, and cancelled any possible registration that had been even somewhat initiated.

101.    She confirmed in person that the children would not be returning to ▮▮▮ and was willing, offered and would have signed confirmation thereof, and, in the alternative, did so at that time, particularly what was presented. Such writing would be with ▮▮▮

102.    ▮▮▮ **accepted that the Plaintiff's children would not be returning and** ▮▮▮ considered that the children were not enrolled, registered or signed up for the next year, and, in the alternative that they had been considered so, such was and was considered cancelled, void, null, closed and over.

19

Case# 16 - JUDGE:39  Received at County of ▮ Prothonotary Office on ▮ 2:43 PM, Fee = $0.00

103.    At that time, ▮offered, extended and explained that full free tuition for at least one child **was being extended and made available to Plaintiff's family.**

104.    In about June and July of 2012, Defendant ▮was pleading with Plaintiff to have his children remain at ▮raising concerns that the children would be lost to the Jewish people and would be lacking in Jewish culture, religion, and knowledge, and citing the inferior education and worse bullying problems they would receive in the public school system (this was known by ▮to be untrue and would duly prove to be untrue).

105.    When the issues and bullying at ▮were raised as a factor in the decision to remove the children from ▮Defendants ▮and ▮insisted such issues would be amplified in the public system (this too was known by ▮to be untrue and would duly prove to be untrue).

106.    In or about June of 2012, upon Defendants' initiation, in discussions on the issues, including orally and by phone, Defendant ▮in an attempt to induce Plaintiff into enrolling his children at ▮offered Plaintiff the option of enrolling all four children in ▮free of tuition with the understanding that Plaintiff could pay as he felt he could, what he felt he could, and if he felt he could only pay a little or not at all that it would not be a problem and that he would never be bothered or harassed, an offer upon which Plaintiff reasonably and justifiably relied.

107.    Defendant ▮knowingly repeatedly made misleading and false assurances that **Plaintiff's privacy would be protected and that the arrangement would** remain confidential between them and that no one would know about the financial arrangement and there would not be a negative light shone on Plaintiff and his family.

108.    Plaintiff reasonably and justifiably relied upon these representations based upon various factors, including but not limited to the control Defendant ▮wields at ▮other

20

instances where similar and otherwise informal and side arrangements were reached and the functioning of Defendants in these regards.

109.   Relying upon **Defendants' reassurances and** offer for substantial financial assistance, **Plaintiff's family agreed that Plaintiff's daughter, at her request, wo**uld return to ███████ for the 2012-2013 school year, to complete her final year at ███████ based on the conditions agreed by ██████ on behalf of Defendants.

110.   Accordingly, Plaintiff and his wife confirmed that one child would attend ██████ for the 2012-**2013 school year, per Defendant** ████████ **offer of tuition help, and discreetly** requested to be removed from the automatic payment system with a reliance on the assurances by Defendant ██████ that his tuition assistance would be confidential.

111.   Thus the parties entered into an agreement, arrangements and terms, corroborated **by evidence and statements that one of Plaintiff's children would attend** ██████ **for her last year** there and payment for tuition would be voluntary.

112.   Plaintiff could pay when desired and comfortable or not at all and there would be no negative repercussions.

113.   It was agreed that Plaintiff should and would pay various basic life expenses, taxes, school loans, catch up from fire loss, save for housing, save for college and various such expenses before paying further for private Jewish Day School.

114.   **The arrangement was that if this meant, based on Plaintiff's own determination of Plaintiff's own circumstances, that Plaintiff would pay nothing or just a small amount in the future,** this was acceptable, and Plaintiff and his family would be protected and the arrangement confidential from other ██████ families, business associates and clients and potential clients and referral sources including those at or associated with ██████ The Plaintiff could pay what

21

Plaintiff felt comfortable paying when Plaintiff felt comfortable to do so, but was under no duty or commitment to do so.

115.    The parties agreed there would be no binding or enforceable commitment to pay for tuition for this last year of only one child attending and finishing at █████

116.    The parties agreed that such arrangement would be confidential, not to be known to others and that such would be considered shaming, embarrassing and damaging to Plaintiff, his business, his wife, family and reputation.

### 2012-2013 School Year

117.    Upon beginning the fifth grade in public school, Plaintiff's son, who has an excellent understanding of mathematics, discovered that the mathematics education he had received through fourth grade at █████ was severely lacking and that the fourth grade curriculum did not include material equivalent to the public school curriculum.

118.    This was particularly frustrating as he, Plaintiff and Plaintiff's wife had been raising while he was at █████ that the work was too slow and not advanced enough.

119.    Despite Defendants' representations to the contrary, █████ did not have the capacity to properly educate this child since it had only one class his age and that class was behind in many regards.

120.    The class was purposefully dumbed down and █████ only suggestion was to move him up a grade; not because this was best for him, but because █████ could not provide for him.

121.    Plaintiff's sons also discovered, contrary to the statements made by Defendants, that, unlike at █████ the public school system was not plagued with unaddressed and ongoing abuse and bullying.

22

Case# ___ 16 - JUDGE:39  Received at County of ___ Prothonotary Office on ___ 2:43 PM, Fee = $0.00

Case# 16 - JUDGE:39  Received at County of ▮ Prothonotary Office on ▮ 2:43 PM, Fee = $0.00

122.    During the 2012-2013 school year, with only one child at ▮ the Plaintiff did not make payments toward tuition and they were not bothered or asked about paying tuition for that year.

123.    Unfortunately, Plaintiff's daughter, upon her return to ▮ discovered that the bad, toxic, and negative environment had gotten worse, particularly as it related to her and her family.

124.    The environment at ▮ particularly towards Plaintiff's family, had become increasingly negative, not supportive, impersonal, and often hostile and malicious.

125.    In her final year at ▮ Plaintiff's daughter was singled out by ▮ and its staff for unfair treatment.

126.    Plaintiff's daughter's final year at ▮ which should have been exciting and rewarding, was overshadowed by ▮ administration and executive board orchestrated and supported bullying and interference.

127.    Plaintiff's daughter was negatively singled out by Defendants and was the only one of the approximately 20 students in her class who was not included in giving the customary graduation gift to ▮ that year.

128.    The gift was a legacy of the class to ▮ it was a picture of the class which included all the children in the class except for Plaintiff's daughter, which was a bold, lasting and terrible instance of ▮ orchestrated and sanctioned bullying, which was exasperated by further singular exclusion of Plaintiff's daughter at that time period by, at the behest of or in coordination with the Defendants.

Case# 16 - JUDGE:39  Received at County of ▮ Prothonotary Office on ▮ 2:43 PM, Fee = $0.00

129.     Similarly, Plaintiff's daughter was purposefully excluded from the competitive math team, though rightfully she should have been a captain of the team based on scores and relevant qualifications.

130.     **This same year, Plaintiff's wife** – who had generously and selflessly served as PTO **Treasurer during the family's entire time at** ▮ - was increasingly ostracized, purposely excluded, marginalized and witness to PTO and corporate formalities broken and not followed purposefully and wrongfully excluding her from the normal duties she did and was supposed to perform.

131.     Although she had previously been actively involved in the PTO, even serving as treasurer for the entire time the children were enrolled at the school, other parents, PTO members and administrators, influenced and orchestrated by Defendants, turned against her and against **Plaintiff's family generally** and subjected them to bullying through various instances and methods, in violation of and not prevented by the Anti-Bullying and Safe Nurturing Place Policy.

**Summer of 2013 – Present**

132.     **Well after the expiration of their daughter's time at** ▮ Plaintiff received a correspondence from ▮ demanding payment of tuition for the 2012-2013 school year.

133.     Plaintiff responded by pointing to the arrangement that had been made the year prior – that Plaintiff was not obligated to pay tuition for the 2012-13 school year, but would make payment to ▮ if he wanted, as he wanted, and in whatever amount he felt he was able to do over an open-ended period of time.

134.     Per this arrangement, during the entire 2012-13 school year, Plaintiff had made no payments whatsoever, and Defendants had made no request or demand for payment of any kind throughout the school year.

24

135.    ████████both admitted and somewhat denied having made any arrangement, but deferred a decision on whether or not to pursue their position further to the Board of ████to decide.

136.    A number of months later, Plaintiff received a few letters from a debt collection firm seeking to collect the same alleged debt that Defendants had promised and represented were not required to be paid.

137.    In response, Plaintiff drafted a detailed correspondence, listing violations of the Fair Debt Collections Acts with notice and some of the various reasons that he was not required to make payment on the alleged debt, including because of the issues present at ████throughout the years his children attended, the bullying problem at ████violations of the Anti-Bullying and Safe Nurturing Place Policy, the atmosphere of nepotism and despotic control, and the promises and representations regarding tuition not having to be paid and related.

138.    After receiving the letter, ████through its authorized representative, **its board's** president, in or about the Spring 2014 stated that the collections efforts were a mistake, would stop, were over, would not continue and that Plaintiff and his family would not be bothered further as ████would not pursue the matter further.

139.    This was done to settle the matter, and in the alternative it was done to make the Plaintiff rely that no action would be taken to try to convince Plaintiff not to take and preclude Plaintiff from taking legal action against ████and its representatives and agents and to try to run out statute of limitations in this regard.

140.    At this point, saying it would not pursue any claim, ████asked for some payment and Plaintiff refused due to the issues herein stated.

Case# ████16 - JUDGE:39  Received at County of ████ Prothonotary Office on ████2:43 PM, Fee = $0.00

141.    Neither ▬▬▬ nor any agent or representative of ▬▬▬ responded to Plaintiff's allegations, positions or notice of claims, **and such are admissions of Plaintiff's positions and claims**.

142.    No counter positions were stated, nor were any allegations or positions refuted; rather, at least by silence and implication, Defend**ants agreed and admitted to Plaintiff's positions**.

143.    Plaintiff did not pursue a fair debt collection action against the collections company (on behalf of ▬▬▬ at this point in time due to his reliance on the promise by ▬▬▬ not to pursue the matter further.

144.    In about April of 2015, after, arguably, the one-year statute of limitations time period for a fair debt collection claim had lapsed against the 2014 collector, ▬▬▬ proceeded to file a Summons in Assumpsit **against Plaintiff and Plaintiff's wife** seeking damages in excess of $50,000. *See* Summons dated April 13, 2015, and filed with the ▬▬▬ County Prothonotary and referred to and incorporated by reference and incorporation per Pa.R.C.P. 1019(g).

145.    Although Plaintiff disputes owing any amount of money to the Defendants, under no permutation of facts would Plaintiff be in arrears to the Defendant for an amount close to or in excess of $50,000.

146.    The Defendants utterly failed in their legal, ethical, professional and contractual duty to implement and uphold their Anti-Bullying policy, and instead promoted a hostile educational environment, retaliated against children who made reports of bullying, were deliberately and knowingly indifferent to complaints, and participated and/or supported, directly or indirectly, the exclusion or bullying of students.

147.    The Defendants fully and completely failed in their explicit and implied responsibilities to keep students secure and provide a safe, supportive and educational

26

environment, particularly for students with special needs or students who were not children of the privileged or friends of ▊▊▊▊ and who therefore were often the subjects of uncontrolled, condoned and willfully ignored bullying.

148.    The Defendants fully and completely failed in their explicit and implied responsibilities to foster a warm and safe environment for children.

149.    The Defendants fully and completely failed in their explicit and implied responsibility to treat all students as equals.

150.    Throughout this transaction and all associated actions and events with regard to this transaction, the actions and/or representations of on person, entity, employee, owner, agent, officer or member of any Defendant organization, corporation, company, and/or entity, are to be conferred upon as if also committed by the rest of the members of and upon the entity itself for any such Defendant, organization, corporation, company, and/or entity, so that every fact, pleading, allegation, cause of action, request for relief and all other statements herein directed against any one Defendant in **Plaintiff's** pleadings shall be considered to be and is plead to be against every Defendant related to and whose actions are conferred upon such Defendant by this pleading.

151.    The Plaintiff and his family lost in excess of 100-**500 hours of Plaintiff's and his wife's time as a reasonably foreseeable result of the Defendants' breaches and wrongful actions as** plead herein.

152.    Plaintiff lost in excess of $100,000 in income due to the lost time, as this time is generally billed (in the $100-$300 per hour range) and profitable to Plaintiff in his law business.

153.    Plaintiff has been damaged in excess of $100,000.00, and is entitled by law and equity to all damages, including incidental, consequential, punitive, and treble damages, tuition **reimbursement, attorney's fees and costs, and other related damages.**

Case# 16 - JUDGE:39  Received at County of ▊▊▊ Prothonotary Office on ▊▊▊ 2:43 PM, Fee = $0.00

154.   Damages here were reasonably foreseeable to Defendants, particularly as they **knew the school's failures would lead to hard-**working parents of this expensive private day school to have to miss work and investing time into work and their businesses.

155.   Plaintiff and his family invested much time and lost much time, in excess of **hundreds of hours, due to the school's various failings of the bullying and related policies, as stated** herein.

156.   The Plaintiff and his wife are entitled to and demand is hereby made for a full refund of all fees and funds paid to the school by Plaintiff and his family.

157.   **The totality of the Defendants' actual, anticipatory, apparent and implied breaches,** negligence and failures and the resultant damages can be surmised from all permutations of the facts and elements plead at length herein and all facts and elements plead herein that are, by their nature, plead in the alternative.

158.   ███ and ███ are responsible for the conduct and actions of ███ and all ███ staff, agents and employees pursuant to the doctrine of respondeat superior. Any allegations herein that by their nature and/or as read with the rest of this pleading are in the alternative, are plead in the alternative.

## COUNT I: BREACH OF CONTRACT

159.   All of the paragraphs of the Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

160.   ███ and Plaintiff entered into a contractual relationship, evidenced by the **parties' course of** conduct and further evidenced by the provisions of the Anti-Bullying and Safe Nurturing Place Policy.

28

Case# ██ 16 - JUDGE:39  Received at County of ██ Prothonotary Office on ██ 2:43 PM, Fee = $0.00

161.    Plaintiff fulfilled his obligations under the contract by sending his children to ▮▮▮▮ having his family comply, conform to and accept the Anti-Bullying and Safe Nurturing Place Policy, by participating with the school, by having his children comply with their academic responsibilities, by fulfilling their additional responsibilities and duties, and paying over $100,000 in tuition and fees between 2009 and 2012.

162.    Plaintiff provided value and benefit to ▮▮▮▮ by contractually agreeing to send and keep his children at ▮▮▮▮ and by participating at ▮▮▮▮ particularly since attendance and participation were very important and valuable to ▮▮▮▮ as it constantly unsuccessfully struggled with low attendance and to attract and not lose families and students.

163.    Defendants had a contractual obligation to provide a safe, wholesome, nurturing, respectful, quality Jewish and secular educational environment for **Plaintiff's children, but failed** to do so.

164.    Defendants had a contractual obligation to implement and enforce their school policies, including but not limited to the Anti-Bullying and Safe Nurturing Place Policy, but failed to do so.

165.    Defendants had a contractual obligation to provide properly trained, managed and qualified administration and staff to carry out its educational mission, but failed to do so.

166.    Defendants had a contractual obligation to Plaintiff and his wife to provide to their children a warm and nurturing environment, a no-tolerance for bullying environment, a proper and ethical Judaic environment and a quality education, but failed to do so.

167.    Defendants had a contractual obligation to enforce the Anti-Bullying and Safe Nurturing Place Policy, keep a tally of incidents, and respond to problematic students as appropriate per the policies.

Case# ▮ 16 - JUDGE:39  Received at County of ▮ Prothonotary Office on ▮ 2:43 PM, Fee = $0.00

168.    By purposely failing to properly implement and enforce the Anti-Bullying and Safe Nurturing Place Policy, Defendants breached their express and implied contractual obligations to Plaintiff.

169.    By nurturing and allowing a harsh, non-egalitarian environment wherein there was an utter lack of accountability for friends and benefactors of ███████ administration, Defendants breached their explicit and implied contractual obligations to Plaintiff.

170.    By hiring untrained and unqualified staff, based on favoritism and self-dealing, Defendants breached their implied contractual obligations to Plaintiff.

171.    **As a proximate result of Defendants' aforesaid breaches of their express and implied contractual obligations, Plaintiff has been injured.**

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, tuition reimbursement, pre- and post-judgment interest and any other relief the Court deems just and proper.

## COUNT II: BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

172.    All of the paragraphs of the Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

173.    Defendants made certain representations and promises to Plaintiff regarding tuition assistance and confidentiality with the intent of inducing Plaintiff to return his children to ███████ but without intent to keep and perform the promise and representation.

174.    Plaintiff was encouraged and induced to return his oldest child to ███████ as a result of the representations and promises of Plaintiff.

30

Case# ▮16 - JUDGE:39  Received at County of ▮ Prothonotary Office on ▮ 2:43 PM, Fee = $0.00

175.    Defendants later denied knowledge of any such discussions, representations, or promises, upon which Plaintiff had relied.

176.    In doing so, and in knowing it would or likely would do so when the representations were made, and making the representations under such circumstances, Defendants have breached the covenant of good faith and fair dealing.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential, and punitive damages, tuition reimbursement, pre- and post-judgment interest and any other relief the Court deems just and proper.

## COUNT III: DECLARATORY JUDGMENT

177.    All of the paragraphs of the Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

178.    This cause of action is plead based upon all the facts and circumstances herein, including specifically those expressed in the other causes of action in these pleading.

179.    Defendants made multiple assurances and promises regarding the fitness of ▮ for the Plaintiff's children, the quality, the anti-bullying promises and safety of ▮

180.    Defendants made further assurances and promises of tuition assistance for the child returning to ▮ for the 2012-2013 school year.

181.    If not for the assurances of the Defendants, the Plaintiff's child would not have returned to ▮ for her final year and Plaintiff's other children would not have remained there much past Plaintiff's family's initial time at ▮

31

Case# 16 - JUDGE:39  Received at County of ▮ Prothonotary Office on ▮ 2:43 PM, Fee = $0.00

182.    Defendants should not be allowed to demand payment by the Plaintiffs due to damages sustained and not yet repaired as a result of the **Defendants' own failures** and the facts as stated herein.

183.    Defendants should not be allowed to demand payment by the Plaintiffs due to **damages sustained and not yet repaired as a result of the Defendants' own failures**

184.    Defendants should not be allowed to retain tuition charged and paid and this inequity must be rectified.

WHEREFORE, Plaintiff requests that Declaratory Judgment be entered in favor of Plaintiff and against Defendants, declaring that neither Plaintiff nor his wife owe any money to ▮ and that they are entitled to a full refund of all moneys paid to date, and any other relief the Court deems just and proper.

## COUNT IV: VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW

185.    All of the paragraphs of the Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

186.    Plaintiff purchased educational and related services from Defendants for his personal, family and household purposes.

187.    Defendants represented that their services had characteristics and benefits that they did not have, and otherwise engaged in fraudulent and deceptive conduct, by making deceptive representations about the quality and benefits of their educational and related services and by **falsely representing that they would provide Plaintiff's children with** a safe, wholesome, nurturing, respectful, quality Jewish and secular educational environment.

32

188.    Defendants knew that there was an ongoing bullying problem and deceived the Plaintiff and others by representing that the Anti-Bullying and Safe Nurturing Place Policy would be and was being implemented.

189.    Defendants represented that their services had characteristics and benefits that they did not have, and otherwise engaged in fraudulent and deceptive conduct, by falsely holding out the Anti-Bullying and Safe Nurturing Place Policy as their standards and policies that they would implement and enforce in order to provide Plaintiff's children with a safe, wholesome, nurturing, respectful, quality Jewish and secular educational environment.

190.    Defendants' aforesaid conduct violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), including but not limited to as defined in section 201-2. Definitions (4)(i), (iv), (v), (vii), (viii), (ix), (xiv), and (xxi) .

As a proximate result of Defendants' aforesaid violations, Plaintiff suffered ascertainable pecuniary damages in excess of $100,000 for tuition paid for fraudulently and deceptively advertised educational and related services and all other known and reasonably foreseeable damages, including as stated herein.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including statutory, compensatory, incidental and consequential damages, treble damages, tuition reimbursement, punitive damages, attorney's fees and costs, pre- and post-judgment interest and any other relief the Court deems just and proper.

## COUNT V: BREACH OF FIDUCIARY DUTY

191.    All of the paragraphs of the Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

Case#    16 - JUDGE:39   Received at County of     Prothonotary Office on     2:43 PM, Fee = $0.00

192.    Defendant ████ is not only the Director of ████ Hebrew Academy but also a Rabbi.

193.    **As Rabbi and as** ████ **Director, for many** years Defendant ████ has held himself out as being well-known and highly respected in the observant Jewish community.

194.    **As Rabbi and as** ████ **Director, for many years Defendant** ████ has held himself out as being a reliable, moral, honest and fundamentally trustworthy religious authority, both in the context of Jewish education and in general.

195.    **As Rabbi and as** ████ **Director, for many years Defendant** ████ has cultivated relationships of trust with ████ children and their parents, including with Plaintiff's family, encouraging them to view him as a reliable, moral, honest and fundamentally trustworthy religious authority, both in the context of Jewish education and in general.

196.    **As a direct, foreseeable and intended result of Defendant** ████ efforts, Plaintiff and his family came to trust him as a reliable, moral, honest and fundamentally trustworthy religious authority, both in the context of Jewish education and in general

197.    **As a direct, foreseeable and intended result of Defendant** ████ efforts, Plaintiff and his wife Melanie came to view him as a family rabbi and to rely on his guidance as to their **children's educational, spiritual, psychological and moral well-**being.

198.    In encouraging, eliciting and inculcating this kind of trust and reliance, Defendant ████ impliedly assumed fiduciary duties of honesty and candor.

199.    In encouraging, eliciting and inculcating this kind of trust and reliance, Defendant ████ impliedly assumed fiduciary duties of loyalty, in the sense of putting the educational, spiritual, psychological and moral **well-being of Plaintiff's children ahead of Defendants' own** pecuniary interests.

34

200.    As a direct, foreseeable and intended result of Defendant ███████ efforts, when Defendant ███████ encouraged, advised and instructed Plaintiff and his wife to enroll their daughter for a final year, i.e. the 2012-13 school year, on the premise that this was crucially important for her educational, spiritual, psychological and moral well-being, and with the promise that he would ensure that the family would not be required to pay and would otherwise bear no financial burden and would be left alone to pay as much as they felt that they could, whenever they could — Plaintiff and his wife reasonably relied on Defendant ███████ promises as their family rabbi.

201.    Defendant ███████ breached his fiduciary duties by knowingly misleading Plaintiff and his wife as to the supposed perils of a secular public school education.

202.    Defendant ███████ breached his fiduciary duties by knowingly misleading Plaintiff and his wife and willfully and maliciously reneging on his promise not to burden the family financially with tuition for the 2012-13 school year and to cover the costs of their daughter's education through scholarships, discounts and/or other means at his disposal as director of ███████

203.    As a proximate result of Defendant ███████ breach of his fiduciary duties, Plaintiff and his wife were injured, which injuries are ongoing and continuing.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, tuition reimbursement, attorney's fees and costs, pre- and post-judgment interest and any other relief the Court deems just and proper.

## COUNT VI: FRAUD AND FRAUDULENT MISREPRESENTATION

204.    All of the paragraphs of the Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length, including specifically all of the allegations

Case# ▐ 16 - JUDGE:39  Received at County of ▐ Prothonotary Office on ▐ 2:43 PM, Fee = $0.00

under the causes of action for Violations of Unfair Trade Practices and Consumer Protection Law,

Breach of Fiduciary Duty, Fraudulent Inducement, and Negligent Misrepresentation.

205.    Defendants knowingly and falsely represented that ▮▮▮▮was a safe, pleasant,

and nurturing place focused on community and learning and that the Anti-Bullying and Safe

Nurturing Place Policy would be upheld and followed, but this was not intended and was not done.

206.    Defendants knowingly and falsely held out the Anti-Bullying and Safe Nurturing

Place Policy as evidence of such representations.

207.    Defendants knowingly and falsely represented that they would not charge, seek or

pursue Plaintiff and his wife for any tuition or fees for 2012-13.

208.    Plaintiff justifiably reasonably relied and had a right to rely upon the

representations of the Defendants.

209.    As an actual, foreseeable, proximate result of Plaintiff's reliance on the fraudulent

representations of the Defendants, Plaintiff has been damaged.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of

$100,000.00, including incidental and consequential damages, tuition reimbursement, punitive

damages, attorney's fees and costs, pre- and post-judgment interest and any other relief the Court

deems just and proper.

## COUNT VII: FRAUDULENT INDUCEMENT

210.    All of the paragraphs of the Complaint and all Exhibits to this Pleading are

incorporated herewith as if set forth fully and at length.

211.    Defendants knowingly and falsely induced Plaintiff into returning one child to

▮▮▮▮under the false pretext of tuition assistance.

36

212.   Defendants knowingly and falsely represented that Plaintiff would not be required to make tuition payment for the 2012-2013 school year with the intent of luring Plaintiff back to ███.

213.   Defendants knowingly and falsely represented that the offer and implementation of tuition assistance would remain **confidential and that Plaintiff's family would not be negatively** portrayed to the community.

214.   Plaintiff **reasonably   and   detrimentally   relied   on   Defendants'**   aforesaid misrepresentations.

215.   **But for Defendants' false promises of substantial tuition assistance, Plaintiff would** not have agreed to sending his daughter for a final year at ███.

216.   As a proximate and **consequential result of Defendants'** fraudulent inducement, Plaintiff has been damaged.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including incidental and consequential damages, tuition reimbursement, punitive damages, attorney's fees and costs, pre- and post-judgment interest and any other relief the Court deems just and proper.

## COUNT VIII: NEGLIGENT AND RECKLESS  MISREPRESENTATION

217.   All of the paragraphs of the Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

218.   Defendants misrepresented that ███ was a safe, pleasant, and nurturing place focused on community and learning, when Defendants knew — or should have known — that this was untrue.

Case# 16 - JUDGE:39  Received at County of ██ Prothonotary Office on ██ 2:43 PM, Fee = $0.00

219.    Defendants misrepresented that they would implement and enforce the Anti-Bullying and Safe Nurturing Place Policy, when Defendants knew — or should have known — that this was untrue.

220.    Defendants regularly made the aforesaid misrepresentations of increased safety and implementation of policies and procedures at their school, with the intention and purpose of luring students and their parents — including Plaintiff and his family — back to ██████ year after year.

221.    Defendants misrepresented that they would not charge, seek or pursue Plaintiff and his wife for any tuition or fees for the 2012-13 school year, when Defendants knew — or should have known — that this was untrue.

222.    Defendants misrepresented that the offer and implementation of tuition assistance would remain confidential and that Plaintiff's family would not be negatively portrayed to the community, when Defendants knew — or should have known — that this was untrue.

223.    Defendants made the aforesaid misrepresentations concerning the offer and implementation of tuition assistance with the specific intention and purpose that Plaintiff and his wife detrimentally rely on them by re-enrolling one or all of their children for the 2012-2013 school year.

224.    Plaintiff and his wife reasonably and detrimentally relied on Defendants' misrepresentations, by enrolling their children at ██████ paying full tuition and all fees from 2009 through 2012, re-enrolling their daughter for a final year in 2012-2013, volunteering at the school in various capacities and at various times, serving as Board members and as Treasurer, all in the hope of contributing to the school community and helping ensure that their children would receive a safe, wholesome, nurturing, respectful, quality Jewish and secular educational environment.

Case# 16 - JUDGE:39 Received at County of ██ Prothonotary Office on ██ 2:43 PM, Fee = $0.00

225.   As a proximate and consequential result of Defendants' misrepresentations, Plaintiff has been damaged.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental and consequential damages, tuition reimbursement, punitive damages, attorney's fees and costs, pre- and post-judgment interest and any other relief the Court deems just and proper.

## COUNT IX: UNJUST ENRICHMENT

226.   All of the paragraphs of the Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

227.   As set forth in detail in the preceding paragraphs, between 2009 and 2013 Plaintiff and his wife conferred valuable benefits upon Defendants, including but not limited to payment of over $100,000 in tuition and the benefit of the active, unpaid involvement of Plaintiff and his wife as volunteers and, at various times, as Board members and Treasurer.

228.   Defendants accepted and retained the aforesaid benefits rendered by Plaintiff and his wife.

229.   Defendants, however, failed to reciprocate. Defendants failed to provide a safe, wholesome, nurturing, respectful, quality Jewish and secular educational environment for Plaintiff's children.

230.   As a result of the conduct of the Defendants complained of above, Defendants will be unjustly enriched if they are allowed to retain the valuable benefits rendered by Plaintiff and his wife, including the tuition payments and the value of the unpaid services provided by Plaintiff and his wife.

Case# : 16 - JUDGE:39  Received at County of ▊ Prothonotary Office on ▊ 2:43 PM, Fee = $0.00

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental and consequential damages, tuition reimbursement, attorney's fees and costs, pre- and post-judgment interest and any other relief the Court deems just and proper.

## COUNT X: PROMISSORY ESTOPPEL

231.   All of the paragraphs of the Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

232.   Defendants unequivocally promised, through words and conduct, that Plaintiff would not be required to make tuition payments to ▓▓▓ for the 2012-2013 school year.

233.   Plaintiff reasonably and detrimentally **relied on Defendants' promises** by agreeing to enroll his daughter at ▓▓▓ for the 2012-2013 school year.

234.   As a matter of equity, **in light of Defendants' promise not to require** tuition payments for the 2012-2013 school year, and in light of Plaintiff's reasonable and detrimental reliance **of Defendants' promise,** Defendants should be estopped from demanding payment from Plaintiff for the 2012-2013 school year.

WHEREFORE, Plaintiff requests judgment against the Defendants, estopping them from demanding payment from Plaintiff for the 2012-2013 school year, and any other relief the Court deems just and proper.

## COUNT XI: GENERAL EQUITY

235.   All of the paragraphs of the Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

40

Case# ▓ 16 - JUDGE:39  Received at County of ▓ Prothonotary Office on ▓ 2:43 PM, Fee = $0.00

236.    This cause of action is plead based upon all the facts and circumstances herein, including specifically those expressed in the other causes of action in these pleading.

237.    **Defendants' efforts to collect payment from Plaintiff that is not due** pursuant to the various agreements, breaches and frauds have been inequitable.

238.    Permitting Defendants to collect the funds and not to repay Plaintiff and his family are contrary to equity and good conscience.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental and consequential damages, tuition reimbursement, attorney's fees and costs, pre- and post-judgment interest and any other relief the Court deems just and proper.

Dated: February 9, 2016                    Brem Moldovsky, L.L.C.


BY: Brem Moldovsky, Esq.


BY: Jonathan R. Miller, Esq.

Case# 16 - JUDGE:39  Received at County of ███ Prothonotary Office on ███ 2:43 PM, Fee = $0.00

Brem Moldovsky, L.L.C.
Brem Moldovsky, Esq.
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
Attorney ID No.: 79485
Phone: 215-546-9957
Email: Brem@bremlaw.com
Attorney for Plaintiff

The Law Firm of Jonathan R. Miller
Jonathan R. Miller, Esq.
Attorney ID No.: 201210
4 Castle Lane
Hopewell, NJ 08525
(609) 955-1226
jonathan.miller@lawyer.com
Attorney for Plaintiff

16 - JUDGE:39   Received at County of ███   Prothonotary Office on ███ 2:43 PM, Fee = $0.00

Case#

## IN THE COURT OF COMMON PLEAS OF ███ COUNTY, PENNSYLVANIA
## CIVIL DIVISION

| | |
|---|---|
| BREM MOLDOVSKY<br><br>*Plaintiff,*<br><br>vs.<br><br>███ HEBREW ACADEMY and ███<br><br>*Defendants.* | Case No: ███<br><br>**TRIAL BY JURY OF 12 DEMANDED** |

## <u>VERIFICATION</u>

I, Brem Moldovsky hereby state that I am the Plaintiff in the foregoing action; that I have personal knowledge that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

I understand that the statements in this Verification are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

Dated: February 9, 2016

_____
Brem Moldovsky, Esq.

# Exhibit "B"

>>>>> email: brem@bremlaw.com
>>>>>
>>>>> Confidentiality Notice: This e-mail communication and any attachments may contain confidential and privileged information for the use of the designated recipients named above. If you are not the intended recipient, you are hereby notified that you have received this communication in error and that any review, disclosure, dissemination, distribution or copying of it or its contents is prohibited. If you have received this communication in error, please notify me immediately by replying to this message and deleting it from your computer. Thank you.
>>>>>
>>>>>
>>>>> -----Original Message-----
>>>>> From: Andy Ellner [mailto:aellner@lightboxcap.com]
>>>>> Sent: Monday, January 16, 2017 5:35 PM
>>>>> To: Brem Moldovsky
>>>>> Subject: Some background information
>>>>>
>>>>> Brem,
>>>>>

[text redacted]

>>>>>>
>>>>>> By way of background, my client's name is Lightbox Ventures, LLC, a NY LLC.  It is the present plaintiff in a case before Judge Cote in the SDNY against a company based in Nashville called Third Home Limited/E. Wade Shealy.  Lightbox's present counsel is Rick Scarola who is based in NYC.  I have not entered an appearance in the litigation and will not be; rather I was retained as settlement counsel only by Lightbox.  Lightbox's principal and investor is Andy Ellner, who is copied here.  Andy is a close friend of a close friend, and is intellectually brilliant. Ex-Lehman, sharp and to the point.  I have copied him here so that you may initiate a dialog including him, which I am willing to facilitate, as we can't be certain that settlement talks will succeed, those odds being impossible to calculate.  The ability for Lightbox to proceed in the litigation is a real possibility that needs to be managed.

[text redacted]



>>>>>
>>>>>
>>>>>
>>>>>
>>>>>
>>>>>
>>>>>
>>>>>
>>>>>
>>>>>
>>>>>
>>>>>>

# Exhibit "C"

**From:** Andy Ellner [mailto:aellner@lightboxcap.com]
**Sent:** Friday, May 20, 2016 3:30 PM
**To:** Rick Scarola
**Cc:** Alex Zubatov
**Subject:** Re: LightBox v. 3rdHome

I've made some comments and forwarded it in to "Andy's Angels" for editing and improving.

A point I added was that if we win as expected and due to that award 3rdHome shareholders are wiped out, that since they refused to provide access to them that I and others would then sue Wade personally. When we return the document to you Monday you can feel free to suggest that point go into my follow up email to Wade instead or at all.

Have a great weekend.

Andy

# Exhibit "D"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                      :
LIGHTBOX VENTURES, LLC,               :          16cv2379(DLC)
                                      :
                    Plaintiff,        :          MEMORANDUM OPINION
                                      :               & ORDER
          -v-                         :
                                      :
3ʳᴰ HOME LIMITED and WADE SHEALY,     :
                                      :
                    Defendants.       :
                                      :
------------------------------------- X

APPEARANCES

For the plaintiff:
Jonathan R. Miller
The Law Firm of Jonathan R. Miller
100 Overlook Drive, 2nd Floor
Princeton, New Jersey 08540

For the defendants:
Phillip Byron Jones
Evans, Jones & Reynolds, P.C.
401 Commerce Street, Suite 710
Nashville, Tennessee 37219

DENISE COTE, District Judge:

On May 3, 2018, plaintiff Lightbox Ventures, LLC

("Lightbox") moved for attorneys' fees and expenses incurred

litigating this action for the roughly eight-month period

preceding October 28, 2016. For the following reasons, Lightbox

is awarded $100,000.


**Background**

This case involves a failed joint venture (the "Joint

Venture") between the parties to earn commissions and fees from
the sale of vacation homes on a real estate listing website (the
"Website").  Lightbox was to create and operate the Website, and
defendant 3RD Home Limited ("Third Home") was to maintain a link
to the Website on Third Home's website.  The parties entered a
joint venture agreement (the "Agreement") on July 13, 2015.  The
Website became operational in January 2016.  Third Home,
however, never activated the link to the Website, and had
instead begun pursuing exclusive broker agreements with other
real estate listing companies (the "Exclusive Brokers"), in
breach of its fiduciary duty to Lightbox.

The Agreement contains a provision shifting attorneys' fees
in the event of a dispute:

> If either party employs attorneys to enforce any
> rights arising out of or relating to this agreement,
> the losing party shall reimburse the prevailing party
> for its reasonable attorneys' fees and costs.

The Agreement provides in Paragraph 4(a) that New York law
governs.

Lightbox sued Third Home and its CEO, Wade Shealy, in March
2016 for breach of contract and breach of fiduciary duty arising
out of Third Home's decision to terminate the Joint Venture and
pursue relationships with the Exclusive Brokers.  Third Home
later filed counterclaims against Lightbox and its CEO Andrew
Ellner arising out of Ellner's use of Third Home trademarks

after this lawsuit was filed.

On July 13, 2016, Lightbox filed a motion for a preliminary injunction to prevent Third Home from entering brokerage agreements or promoting brokerage services other than with Lightbox.  A hearing was held on October 21, and the motion was denied on October 28.  See Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC) 2016 WL 6562107, at *1 (S.D.N.Y. Oct. 28, 2016) (the "Preliminary Injunction Opinion").  The Preliminary Injunction Opinion explained that Lightbox was likely to succeed at proving at trial that Third Home breached the Agreement by, inter alia, failing to activate the link to the Website, and also breached its fiduciary duty to Lightbox as its partner in the Joint Venture by entering agreements with the Exclusive Brokers.  See id. at *8, *10.  The Preliminary Injunction Opinion denied a preliminary injunction, however, on the ground that Lightbox failed to show that it would be irreparably harmed without preliminary relief.  See id. at *10.  The Preliminary Injunction Opinion explained that the Joint Venture had "never got[ten] off the ground" and that Lightbox had not shown that "a viable, profitable business was about to launch" before Third Home breached the Agreement.  Id. at *10-11.  The Opinion specifically noted that "Lightbox's argument that the Joint Venture was poised to capture a large share of the vacation homes sales business is speculative."  Id. at *11.

The parties then cross-moved for summary judgment, and each
motion was granted in part on November 13, 2017 (the "Summary
Judgment Opinion"). See Lightbox Ventures, LLC v. 3RD Home Ltd.,
No. 16cv2379(DLC), 2017 WL 5312187 (S.D.N.Y. Nov. 13, 2017).
Later, the parties consented to trial on the remaining issues on
submission to the Court. In a Trial Opinion issued April 13,
2018, the Court held Third Home and Shealy liable to Lightbox on
its breach of contract and breach of fiduciary duty claims,
awarding Lightbox $67,088.19 on the breach of contract claim and
$26,250 on the breach of fiduciary duty claim. See Lightbox
Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC), 2018 WL
1779346, at *10, *12 (S.D.N.Y. Apr. 13, 2018). The Trial
Opinion denied Lightbox's request for specific performance and
found Ellner liable to Third Home on one of Third Home's
trademark counterclaims, awarding Third Home $10,000 for this
counterclaim. See id. at *13, *14-15.

The Trial Opinion also held that Lightbox was entitled to a
reasonable attorneys' fee under the fee-shifting provision of
the Agreement. See id. at *17. The Trial Opinion, however,
limited this award to fees incurred up to the date on which the
Preliminary Injunction Opinion was issued. Id. Lightbox moved
for fees on April 27, and the motion became fully submitted on
May 15.

**Discussion**

Lightbox moves for an award of fees and expenses for
litigating this matter between March 2016 and October 28, 2016
without naming a precise sum.  During that time, Lightbox was
represented by Scarola, Malone & Zubatov LLP ("Scarola").[1]  Two
named partners performed the bulk of the work of this matter and
issued invoices amounting to $467,622.00 in fees and expenses.
Ellner paid over $300,000 of this amount.[2]  Current counsel for
Lightbox asks this Court to review the Scarola invoices and
award the amount the Court determines is reasonable.  Third Home
contends that Lightbox should receive nothing.

"[I]n addressing a contractual claim for attorneys' fees, a
court must determine what constitutes a reasonable amount of
fees."  HSH Nordbank AG N.Y. Branch v. Swerdlow, No.
08cv6131(DLC), 2010 WL 1141145, at *5 (S.D.N.Y. Mar. 24, 2010)
(citation omitted).  The "amount involved in a litigation"
provides a "general ceiling" on attorneys' fees, but is "only a
rule of thumb" and a "starting point in the process of
ultimately determining whether a fee [request] is reasonable."
CARCO Grp. v. Maconachy, 718 F.3d 72, 86 (2d Cir. 2013)
(citation and emphasis omitted).  "[A] variety of factors inform

---

[1] The Scarola firm is now known as Scarola, Zubatov & Schaffzin
PLLC.

[2] Scarola has sued Ellner and Lightbox in state court for payment
of additional fees.

5

the court's determination of whether a requested amount of
attorneys' fees is reasonable or unreasonable, including the
difficulty of the questions involved; the skill required to
handle the problem; the time and labor required; the lawyer's
experience, ability and reputation; the customary fee charged by
the Bar for similar services; and the amount involved." Healey
v. Leavitt, 485 F.3d 63, 70 n.5 (2d Cir. 2007) (citation
omitted). "[A] request for attorneys' fees should not turn into
a second major litigation," however, and a court is not required
"to evaluate and rule on every entry in an application" for
fees. Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 149
(2d Cir. 2014) (citation omitted).

An award of anything near the amount invoiced by Scarola
would be excessive. The legal issues implicated by the
preliminary injunction motion were straightforward, and the
scope of the factual disputes was relatively small. The skill
and time required to litigate this matter before the hearing and
to prepare for and conduct the preliminary injunction hearing
should not have been great.

Moreover, the amount involved in the litigation would not
justify spending anything close to $450,000 during this eight-
month period. Lightbox was unable, at any point in this
litigation, to provide a reliable estimate of the future profits
of a Joint Venture which never got off the ground. See

6

Preliminary Injunction Opinion, 2016 WL 6562107, at *11; Summary
Judgment Opinion, 2017 WL 5312187, at *8-11, *13.  Lightbox knew
that it spent less than $70,000 to build the Website, and
through discovery learned that Third Home had received only
$52,500 from the Exclusive Brokers.  After learning how much
Third Home received from the Exclusive Brokers, Lightbox could
swiftly and realistically assess the amount involved in the
litigation at less than $123,000.  Anything more was
speculative.  It would have been foolhardy for a litigant to
spend more than this on the entire lawsuit, but Scarola
presented invoices asserting it had expended over three times
that amount in just this brief period.

In light of the Court's broad discretion to set awards of
attorneys' fees, the Court finds that $100,000 is at the upper
range of a reasonable attorneys' fee for litigating this matter
through the date of the Preliminary Injunction Opinion.  This
amount is also more proportionate to the $93,338.19 that
Lightbox was awarded on the merits of its claims in the Trial
Opinion.  Although the fee award is greater than the recovery on
the merits, it is still less than the "amount involved" in the
litigation.  <u>Healey</u>, 485 F.3d at 70 n.5 (citation omitted).
$100,000 is also in line with the Court's estimation of what a
reasonable litigant would have spent in filing these claims
against its Joint Venture partner and pursuing this action

through the trial of its preliminary injunction motion.
Finally, it reflects the risks of litigation and the
uncertainties involved in proving the future profits of a
business that never began operations.[3]

## Conclusion

Lightbox is awarded $100,000 as a reasonable attorneys' fee
under the Agreement.


Dated:    New York, New York
          June 12, 2018


                              _____
                                     DENISE COTE
                        United States District Judge

---

[3] It is not clear whether New York courts apply the lodestar
method routinely used for federal fee-shifting statutes.
Compare F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250,
1263 (2d Cir. 1987) ("In general, the court uses a lodestar
method, in which the hours reasonably spent by counsel, as
determined by the Court, are multiplied by the reasonable hourly
rate." (citation omitted)) with CARCO Grp., 718 F.3d at 85 (not
applying lodestar method).  Applying this method would produce
the same result.  A reasonable blended fee for legal work of
this complexity is no more than $400 per hour.  It would be
unreasonable to spend more than 250 hours litigating the issues
addressed in the eight-month period.  This yields a total fee
award of $100,000.

# Exhibit "E"

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
LIGHTBOX VENTURES, LLC,             :
                                    :         16cv2379(DLC)
                         Plaintiff, :
                                    :         OPINION AND
            -v-                     :            ORDER
                                    :
3RD HOME LIMITED and WADE SHEALY,   :
                                    :
                       Defendants.: :
                                    :
------------------------------------X
------------------------------------X
                                    :
3RD HOME LIMITED and WADE SHEALY,   :
                                    :
                      Third-Party:  :
                      Plaintiffs,   :
                                    :
            -v-                     :
                                    :
ANDREW ELLNER,                      :
                                    :
                      Third-Party:  :
                      Defendant.    :
                                    :
------------------------------------X
```

APPEARANCES:

For the plaintiff and third-party defendant:
Brem Moldovsky
Brem Moldovsky, LLC
411 Lafayette Street, 6th Floor
New York, NY 10003

For the defendants:
Philip Byron Jones
Evans, Jones & Reynolds, P.C.
401 Commerce Street, Suite 710
Nashville, TN 37219

DENISE COTE, District Judge:

Plaintiff Lightbox Ventures, LLC ("Lightbox") commenced this suit on March 31, 2016, bringing claims of breach of contract and breach of fiduciary duty against defendants 3rd Home Limited ("Third Home") and Wade Shealy, the CEO of Third Home. Defendants bring three claims against Lightbox and against Third Home investor and Lightbox founder Andrew Ellner ("Ellner"), arising out of Ellner's use of the Third Home name and email address after this lawsuit was filed. There is diversity jurisdiction over this action. This Opinion contains the Court's findings of fact and conclusions of law following a bench trial on submission.

## Background

The following constitutes the Court's findings of fact. This case arises out of a failed joint venture (the "Joint Venture") between the parties. Familiarity with the Court's two prior Opinions in this matter is assumed. See Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC), 2017 WL 5312187 (S.D.N.Y. Nov. 13, 2017) (the "Summary Judgment Opinion" or "Lightbox II"); Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC), 2016 WL 6562107 (S.D.N.Y. Oct. 28, 2016) (the "Preliminary Injunction Opinion" or "Lightbox I").

Third Home operates a website, www.3rdhome.com, for owners

of luxury homes to exchange time in their homes.  Third Home was
created in 2011, and in 2011 Third Home registered two
trademarks:  3rdhome and 3rdhome with the image of a house
replacing the letter "o."  Exchanges of time on Third Home's
platform are facilitated by the use of points, referred to as
"keys," which is the currency used to reserve time in users'
homes.  In 2015, Third Home had 6,500 members.

Ellner is a former managing director at Lehman Brothers,
and is a member of and investor in Third Home.  Ellner created
Lightbox in 2015 to be an online real estate listing and sales
business.  Ellner proposed forming a joint venture with Third
Home in 2015, hoping that Lightbox would earn commissions and
fees from the sale of vacation homes on a real estate listing
website (the "Website").  The Website would be promoted by Third
Home placing a link to the Website on the Third Home main
webpage.

I. The Agreement

The parties entered a joint venture agreement (the
"Agreement") on July 13, 2015.  The Agreement's stated purpose
is "to establish a joint venture between the parties to create
an online platform for the resale of vacation homes, fractional
ownership properties and other properties eligible to be listed
on 3RDHOME.COM, which is to be linked to the existing 3RD HOME
site."

3

Paragraph 1 of the Agreement describes Lightbox's obligations as follows:

> a. [Lightbox] shall be responsible for fronting the cost for the technology build-out of the 3RD Home website including an interface for [Lightbox] use. Fronting the cost of the creating a [Lightbox] website at a level equivalent to the 3RD Home site is also the financial responsibility of [Lightbox].
>
> . . .
>
> c. [Lightbox] shall be fully responsible for managing any and all interactions with buyers and sellers and potential buyers and sellers, as well as all intermediaries required for any sale, including local real estate brokers, property management companies and local attorneys as needed.
>
> . . .
>
> f. [Lightbox] agrees that it will share evenly with 3RD Home (50 % / 50 %) all profits realized from this business venture after deducting reasonable direct costs of doing business, which costs will be documented and records presented to 3RD Home upon request.  However, this profit share will begin only after the outlay for the technology build-out has been recouped, as described in paragraph 2b below.

(Emphasis supplied.)

Paragraph 2 of the Agreement describes Third Home's obligations:

> a. 3RD Home agrees to keep an active link on their site to the [Lightbox] site, this link shall be in a prominent place which is easily recognizable and usable by potential buyers and sellers of properties through the site.  The location and visibility of the link shall be agreed upon between the parties with final determination by 3RD HOME.
>
> b. 3RD Home agrees that the first profits of [Lightbox] will go toward reimbursing [Lightbox] for

the technology build-out mentioned earlier in
paragraph 1 (a). After that amount has been
reimbursed, the 50%/50% profit sharing will begin and
continue as long as this Agreement remains in full
force and effect.

c. 3RD Home agrees to forward all inquiries related to
the buying and selling of vacation homes, residence
clubs, fractionals and the like to [Lightbox] and that
3RD Home will be a passive partner in the sales and
marketing of these homes, with its only active role
being the maintenance of the links on the 3RD HOME
site with [Lightbox]. It will forward all inquiries
regarding sales and purchases of vacation homes,
residence clubs, fractionals and the like to
[Lightbox] exclusively and in a timely manner.

d. 3RD Home agrees to that this [sic] arrangement is
exclusive and that they will not enter into any
similar arrangement with another sales and marketing
organization without the permission of [Lightbox].

e. 3RD Home will be responsible for all relationships
with the affiliates. In the interest of maintaining
these relationships, 3RD Home retains the right to
determine that certain affiliate properties may not be
able to be sold through [Lightbox], 3RD Home will
inform [Lightbox] in writing of such an exclusion,
should it occur.

f. 3RD HOME will make the final determination of the
name and the URL of the resale business. All 3RD HOME
names, marks, and other proprietary assets that may be
used in conjunction with the marketing of this program
will remain the exclusive property of 3RD HOME at all
times during the term and after.

(Emphasis supplied.)

The Agreement also provides that New York law applies.

Paragraph 4 includes a provision shifting attorneys' fees as

follows:

(c) Attorneys' Fees. If either party employs
attorneys to enforce any rights arising out of or

5

relating to this agreement, the losing party shall
reimburse the prevailing party for its reasonable
attorneys' fees and costs.

The Agreement also includes a placeholder termination

provision that states as follows:

This is a temporary interim agreement to indicate the
intent of the parties, and will remain in effect until
July 13, 2017 or earlier if superseded by a later
agreement.  If 3RD HOME should desire to terminate
because of unanticipated issues before July 13, 2017
then it will promptly reimburse LightBox for any
unreimbursed costs of the technology build out.
Additional terms regarding termination of this
agreement and the rights and steps to terminate it are
expected before August 31, 2015.

II. The Amended Termination Provision

Ellner and Shealy signed an amended termination provision

in December 2015 (the "Amendment").  That document provides as

follows:

15. TERMINATION

(a) The Agreement shall be for a term of thirty (30)
months, expiring on July 1, 2018, unless terminated
earlier in accordance with the provisions set forth
below. . . .

(b) LIGHTBOX VENTURES may terminate this Agreement in
advance of its expiration upon thirty (30) days'
written notice.  In the event LIGHTBOX VENTURES
terminates this Agreement pursuant to this clause, it
waives any claim it has or may have for reimbursement
of the technology costs referenced in Paragraph 1(a),
herein, and the fees referenced in 1(d), herein.
Furthermore, in the event LIGHTBOX VENTURES so
terminates this Agreement in advance of its
expiration, without selling its portion of the joint
venture to either 3RD HOME or a third party, in
accordance with the terms of Paragraph 16 herein, it
thereby waives any claim it has or may have to its

share of the joint venture between the parties as set
forth in this Agreement.

(c) 3RD HOME may terminate this Agreement in advance
of its expiration upon a upon [sic] thirty (30) days
written notice without cause.  In the event of an
early termination pursuant to this clause, 3RD HOME
agrees to reimburse LIGHTBOX VENTURES for the
technology costs referenced in Paragraph 1(a) herein,
to the extent those costs are not already fully
recouped at the time of said termination, pursuant to
Paragraph 1(f), herein.  Furthermore, in the event 3RD
HOME elects to terminate this Agreement in accordance
with this Paragraph 15(c), it agrees that it will not
re-enter the business of or otherwise operate, in any
manner, an online platform for the sale and resale of
vacation homes and fractional ownership properties or
otherwise engage in any venture which is intended to
compete with or does compete with LIGHTBOX VENTURES in
the business contemplated by this Agreement for a
period of time totaling two (2) years following the
date of termination of this Agreement.  Nothing herein
however shall restrict, prohibit or otherwise restrain
3RD HOME from the continued operation of its other
business activities, including but not limited to its
operation of a vacation property management and home
exchange website and those matters related hereto.

(d) Either party may terminate this agreement due to
cause as follows.  In the case of LIGHTBOX VENTURES,
they may terminate this Agreement due to cause if 3RD
HOME does not adequately create an attractive
inventory of homes and/or generate adequate sales
leads.  If 3RD HOME is unable to cure such poor
performance within a reasonable period of time, and
LIGHTBOX VENTURES decides to exercise its right to
terminate the Agreement due to cause, 3RD HOME agrees
not to re-enter the business of or otherwise operate,
in any manner, an online platform for the sale and
resale of vacation homes and fractional ownership
properties or otherwise engage in any venture which is
intended to compete with or does compete with LIGHTBOX
VENTURES in the business contemplated by this
Agreement for a period of two (2) years following the
date of termination of this Agreement.  In the case of
3RD HOME, they may terminate due to cause if LIGHTBOX
VENTURES does not expeditiously follow up on leads

generated and otherwise make a good faith effort to
generate sales as contemplated by this Agreement. If
LIGHTBOX VENTURES is unable to cure such poor
performance within a reasonable period of time, 3RD
HOME will promptly reimburse LIGHTBOX VENTURES for any
unreimbursed costs of the technology build out and may
continue to operate the business independently.

(e) In addition, in the event 3RD HOME wishes to
terminate this Agreement with LIGHTBOX VENTURES but
continue to operate the business of the joint venture
contemplated by this Agreement independently of
LIGHTBOX VENTURES, 3RD HOME will buy out LIGHTBOX
VENTURES from the joint venture, and the price of such
buyout will be determined by averaging three (3)
separate prices determined by three separate and
independent accredited business valuation
professionals who will each value the joint venture
created by this Agreement. 3RD HOME will pay all
costs of such valuations. At the conclusion of these
valuations 3RD HOME will pay to LIGHTBOX VENTURES an
amount equal to fifty percent (50%) of the average of
the three (3) values as determined by the
aforementioned business valuation professionals. Upon
such payment the joint venture between the parties
shall terminate.

(f) In the event of a termination of this Agreement
pursuant to Paragraph 15 above (by LIGHTBOX VENTURES)
or 15(c), above (by 3RD HOME), it is agreed and
understood that the operation of the joint venture
shall cease within a reasonable time thereafter. In
such event, the parties agree to cooperate with one
another to wrap up the affairs of the joint venture in
an appropriate and orderly manner, and to sign any and
all documents necessary to effectuate the termination
and dissolution of the joint venture. As part of the
winding up of the affairs of the joint venture, it is
agreed and understood that each party will take those
steps necessary, and within a reasonable period of
time, to deactivate any links to their respective
websites that identify the remaining party.

(g) Other than as set forth herein, neither party
shall have the right to use the other party's
trademarks or name in any manner whatsoever other than
in the materials that are approved in writing by the

party whose trademarks or name is being used, and only
for the express purposes set forth herein.  Any such
permission to use the aforementioned names and/or
marks shall cease upon the expiration or termination
of this Agreement, in accordance herewith.

(Emphasis supplied.)

III. The Exclusive Brokers

In late 2015 and early 2016, Third Home began negotiating
and entering agreements with other real estate brokers (the
"Exclusive Brokers").  In these contracts, Third Home
principally agrees to offer complimentary membership to Third
Home's exchange program to owners and buyers sponsored by the
Exclusive Broker and to promote the Exclusive Broker's business
on Third Home's website.  In return, the Exclusive Broker agrees
to pay Third Home an upfront fee and promote the Third Home
luxury home exchange program to its owners and buyers.  The
upfront fee, which ranged from $2,500 to $10,000, generally
gives the Exclusive Broker "the agreed territory for exclusive
representation for one year."  Of particular relevance to the
instant dispute, some of these contracts also include a
provision indicating that the Exclusive Broker "will receive all
the leads generated by [Third Home's] inbound members and by our
real estate posting site and as part of this agreement agrees to
pay a referral fee of 25% on any real estate transaction that
takes place based on that referral buying or selling."
(Emphasis in original.)

A December 2015 draft of one such contract required the Exclusive Broker to pay the 25% referral fee to Third Home's "partner" Lightbox. A later version of this contract omitted the duty to pay Lightbox. Third Home received $52,500 from the Exclusive Brokers, all in the form of upfront fees. Lightbox has not received any of these funds.

## IV. Lightbox's Costs Creating the Joint Venture

In 2015 and 2016, Lightbox spent money to build the Website and to pay consultants to help develop the Joint Venture's business. The Website was ready to be linked to Third Home's website in January 2016. Third Home does not contest that Lightbox is entitled to reimbursement for $62,158. Lightbox seeks an additional $4,930.19, for a total of $67,088.19.

The total of $67,088.19 consists of the following: $63,658.00 for website development,[1] $593.75 for website maintenance and preservation, $634.03 for the Joint Venture's toll-free number, $1,914.41 for website staging, and $288.00 for recording of communications and documents related to the Joint Venture's anticipated transactions. Although some of these expenses do not seem directly related to the "technology build-out of the 3RD Home website," as contemplated in Paragraph 1(a) of the Agreement, the sole argument Third Home advances to avoid

---

[1] Ellner states that $62,158 of this amount is the portion of Lightbox's expenses that Third Home does not contest.

payment of $4,930.19 is that such expenses were incurred after its March 8, 2016 Notice of Termination.

Of the $4,930.19 in dispute, $1,919.75 reflects work performed before March 8, 2016.[2]  The $1,919.75 is composed of website development work done by The Agile Leage LLC in February 2016, in the amount of $1,500, as reflected in its invoice. Another $7.76 reflects work done by Grasshopper Group, LLC in February 2016 and billed to Lightbox on March 6, 2016. Grasshopper Group set up a toll-free number for the Joint Venture.  Next, Lightbox paid Heroku $267.99 for "website staging" work performed before the March 8 Notice of Termination.  Finally, Lightbox paid $144.00 to Zoho CRM on October 3, 2015, which was paid to "record all communications and document trails related to the Joint Venture's anticipated transactions, from listings through closings."

The remaining $3,010.44 reflects work performed after March 8, 2016.  This amount includes additional amounts paid to the companies named above.  Lightbox paid $626.27 to Grasshopper Group, $1,646.42 to Heroku, and $144.00 to Zoho CRM for work done after March 8.  Lightbox additionally paid $593.75 to

---

[2] As explained in the Summary Judgment Opinion, Lightbox Capital Management LLC is a company run by Ellner that paid some of the Website-related expenses.  See Lightbox II, 2017 WL 5312187, at *5 n.3.  Third Home does not contest that plaintiffs should be reimbursed regardless of whether Lightbox Capital paid in the first instance.

Cuttlesoft, LLC for performing several technical tasks relating to the Website after March 8.[3]

Lightbox also seeks $115,000, comprised of $60,000 due to David Graff and $55,000 due to Susan Stein. None of these expenses constitute reimbursable payments for the "technology build-out" of the Website directed in Paragraph 1(a) of the Agreement.

Graff worked as a consultant for Lightbox beginning from an unspecified date in early 2015 and extending to February 2016. He provided consulting services to Lightbox in the following areas:

> branding and trademarking; strategic partnerships within the travel industry; advising on the use of virtual-reality augmented technology that would be used to market existing real estate properties and new developments; website design and search engine optimization; revenue opportunities in online advertising; co-branding and other marketing efforts to with [sic] business in related industries such as the vacation and travel sectors; and establishing relationships with online and print mediate outlets.

He also "advised on how to build a user friendly web site in order to facilitate and improve the user experience," which "included using modern technologies such as virtual and

---

[3] Lightbox submitted one invoice in its trial submissions, for $375.00, but did not include in those papers a second invoice for $218.75 that it had submitted in connection with its summary judgment motion. Third Home only challenges the additional $218.75 on the ground that the work was performed after Third Home terminated the Agreement, so the Court will consider the combined amount of $593.75.

augmented reality systems to allow the user to take a 360 degree
tour of a property."

Stein is an attorney who worked as a consultant for
Lightbox from early 2015 through Fall 2016. Her consulting
included "assisting in the researching and creating forms for
listing agreements and referral agreements and other
documentation and similarly helping to design the [Joint
Venture] website interfaces." In addition, she "participated in
. . . a conference call training session for use of the fully-
operational [Joint Venture] website."

As noted, the Website became operational in January 2016.
The principal services provided by Graff and Stein do not
constitute work performed as part of the "technology build-out"
of the Website. To the extent their services supported the
technology build-out, Lightbox has not provided a way to measure
or value that portion of their services.

V. The Joint Venture's Operations

In January 2016, the Website became operational at
www.3rdhomerealestate.com. Third Home provided Ellner with the
email address andy@3rdhomerealestate.com, for Ellner to use in
connection with the Joint Venture.

Ellner has shown that he procured two listing agreements
from two property owners before this litigation began. The
other purported listing agreements he has submitted only reflect

negotiations or inquiries from interested realty companies and are not executed contracts to have property listed on the Website.

In the listing agreements, the property owners retained the Joint Venture "for the purpose of marketing and/or selling" the properties on the Website. The owners agreed to give the Joint Venture a commission upon the sale of their properties "when such sale is either directly or indirectly the result of the Buyer, or a broker representing the Buyer, contacting 3rdHomeRealEstate.com to inquire about this or another property listed on 3rdHomeRealEstate.com." The commission percentage ranged from 6% to 10% depending on the price at which the property was sold. The agreements expired after one year unless a contract was signed during that time. There is no evidence that either property has been sold since the listing agreements were executed.

Although the Website was operational, Third Home never activated the link to the Website from the Third Home website. By February 2016, the relationship between Ellner and Shealy had soured. Ellner repeatedly raised concerns with Shealy about Third Home's arrangements with the Exclusive Brokers. On March 21, Ellner received an email from a broker stating that Shealy had expressed concern with her listing certain real estate property on the Website because one of the Exclusive Brokers

14

"has an exclusive."

On March 8, counsel for Third Home sent Lightbox a written notice of termination, which stated that Third Home was exercising its termination rights under Paragraph 15 and sub-paragraph 15(e) (the "March 8 Termination Notice").  Third Home sent a second letter to Lightbox on March 21 insisting on its "unconditional right to terminate under Section 15(e)" and to arrange a time for the parties to discuss valuation of the Joint Venture.  Third Home never hired or paid the cost of the appraisals of the Joint Venture specified in Paragraph 15(e) of the Amendment.  Lightbox filed this lawsuit on March 31.

VI. Ellner's Use of Third Home Trademarks

Shealy ordered that the Website be taken down on or around July 19, 2016.  After the Website was taken down, on July 21 and July 22, Ellner used his andy@3rdhomerealestate.com email address to inform Joint Venture clients that "there is a temporary problem with the 3rdhomerealestate.com website," and apologizing on behalf of "Wade and I."  On July 21, Shealy wrote Ellner "please do not include me or my name on any more emails."

On July 21, Ellner registered the domain 3rdhomerealty.com. Ellner then published the Website and its real estate listings to the new domain.  With the new domain name registered, on July 27 and July 28, Ellner informed clients with properties listed on the Website that their listings are "again live" on the

3rdhomerealty.com website.  The 3rdhomerealty.com website depicted the "3RD HOME" trademark, which had been registered to Third Home since 2011.

On August 8, counsel for Third Home sent Lightbox and Ellner a letter indicating that their use of websites and email addresses using Third Home's name and marks constituted violations of law because the Agreement had been terminated. The letter demanded that Lightbox and Ellner "immediately cease and forever desist from the use of the Marks and confusingly similar variations of the Marks in any form, including the Domain Names, in website content, email addresses, and in any other form."[4]

On or around July 28, the domain name thirdhomerealestate.com was registered in Shealy's name.  It was not until March 2017 that Third Home deactivated Ellner's andy@3rdhomerealestate.com email address.

---

[4] Ellner states that he took the Website down "within approximately 24 hours of creating it, which was also within 24 hours of notifying Mr. Shealy of it by the e-mails to the Joint Venture clients."  It is unclear whether he means that the Website was taken offline from the 3rdhomerealty.com domain within 24 hours of registering the domain on July 21, within 24 hours of the emails he sent on July 27 and 28, 2016, or within 24 hours of the cease and desist letter sent by Third Home's counsel on August 8.

**Procedural History**

This case was filed on March 31, 2016.  In its original complaint, Lightbox sued for breach of contract and breach of fiduciary duty arising out of Third Home's decision to terminate the Joint Venture and pursue relationships with the Exclusive Brokers.  The original complaint also sought declarations that Third Home had breached the Agreement and that Lightbox had validly terminated the Agreement for cause.

On July 13, 2016, Lightbox filed a motion for a preliminary injunction to prevent Third Home from entering brokerage agreements or promoting brokerage services other than with Lightbox.  This motion was denied on October 28, 2016.  See Lightbox I, 2016 WL 6562107.

The Preliminary Injunction Opinion explained that Lightbox "failed to show that it will suffer irreparable harm" if an injunction did not issue.  Id. at *10.  The Opinion explained that "damages will largely compensate [Lightbox] for Third Home's violations of the Agreement since the Joint Venture never got off the ground," and Lightbox had only shown that it was "entitled to compensation for some" of the "preparatory work" it had done.  Id.  In addition, the Opinion noted that Lightbox failed to show "that a viable, profitable business was about to launch" before Third Home breached the Agreement.  Id. at *11. The Opinion also observed that "Lightbox's argument that the

17

Joint Venture was poised to capture a large share of the vacation homes sales business is . . . too speculative to warrant a preliminary injunction." Id. Finally, in his affidavit submitted in opposition to the preliminary injunction, Shealy noted that Lightbox "had expended $62,158" to create the Website before the March 8 Notice of Termination and that "3rd Home never disputed that [Lightbox] would be entitled . . . to reimbursement for those technology costs."

In October 2016, Lightbox informed the Court that Third Home had not produced in discovery communications in its possession between Third Home and the Exclusive Brokers, as well as related agreements. On November 1, 2016, the Court ordered a forensic examination of defendants' computers and other electronic devices, and on November 15, the Court approved a protocol to govern the examination. The examination revealed a number of relevant documents that the defendants had not previously produced to Lightbox.[5]

---

[5]    Lightbox sought reimbursement for the cost of the Fall 2016 forensic examination under Rule 37, Fed. R. Civ. P, on September 15, 2017. Lightbox's motion was granted on November 15, 2017. See Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC), 2017 WL 5526073 (S.D.N.Y. Nov. 15, 2017). After briefing on the cost of the examination, Lightbox was granted $38,888.01 in an Order dated January 18, 2018. Third Home then sought a stay of the payment until after trial. This request was denied by Order of February 12, where the Court directed payment to the Clerk of Court. Third Home paid $38,888.01 to the Clerk of Court on March 5.

On January 12, 2017, the Court stayed proceedings so the parties could enter mediation. The stay was lifted April 3, 2017. On April 20, the parties stipulated to an injunction ordering Lightbox and Ellner not to use Third Home's trademarks, including domain names and email addresses, which was so ordered April 20.

On June 13, 2017, Third Home moved to exclude, under Rule 703, Fed. R. Evid., two valuations of the Joint Venture obtained by Lightbox in support of its claim for lost profits, and moved for summary judgment. Lightbox moved for summary judgment on June 16. On November 13, 2017, the Court granted Third Home's motion to exclude Lightbox's valuations, and partially granted each party's motion for summary judgment. See Lightbox II, 2017 WL 5312187.

The Summary Judgment Opinion resolved the motions for summary judgment as follows. Lightbox's two valuations were excluded because neither valuation was reliable. See id. at *9-*11. Lightbox was granted summary judgment on its three breach of contract claims: "Third Home's (1) failure to activate a link to the Website on the Third Home webpage, (2) failure to act as a 'passive partner' in the sales and marketing of homes, and (3) entering into competition against the Joint Venture." Id. at *11. Lightbox was also granted summary judgment on its motion for damages in the amount of the costs it incurred for

the "technology build-out" of the Website.  See id. at *12.
Lightbox was also granted summary judgment on its causes of
action seeking declarations that Third Home breached the
Agreement and that Lightbox could validly terminate the
Agreement for cause.  See id. at *13.  Finally, Lightbox was
granted summary judgment on its claim that Third Home violated
its fiduciary duty to Lightbox, and that Shealy aided and
abetted this breach.  See id. at *13-*14.

Third Home, however, was granted summary judgment regarding
certain theories of damages sought by Lightbox under its breach
of contract claim.  Specifically, Third Home was granted summary
judgment on Lightbox's claim for "any portion of the $52,500
that Third Home received from its Exclusive Broker contracts" as
damages for Third Home's breach of contract, as well as on
Lightbox's request for "consequential damages based on lost
profits or the overall value of the joint venture."  Id. at *12-
*13.  Summary judgment was denied to Lightbox and Ellner as to
Third Home's counterclaims.  See id. at *14-*17.

Following the issuance of the Summary Judgment Opinion, the
Court outlined the remaining issues for trial (the "November 14
Order").  The November 14 Order explained that the remaining
issues were "(1) the determination of Lightbox's costs in excess
of $60,000 incurred in building the Website . . . , (2) whether
Lightbox is entitled on its breach of fiduciary duty claims to

the amount or a share of the amount paid to Third Home by the
Exclusive Brokers; and (3) Third Home's counterclaims and third-
party claims against Lightbox and Ellner."

On January 29, 2018, Lightbox informed that Court that it
believed the parties had agreed to a settlement on January 18,
which Third Home refused to confirm.  Lightbox's motion to
enforce the settlement was denied on February 14.

A jury trial was scheduled for March 12, 2018.  On February
14, 2018, the parties waived their jury demand.  Third Home
submitted motions in limine on February 16 and Lightbox did so
on February 26.  An Order of February 27 directed the parties to
file oppositions by March 5 and to address whether the remaining
issues could be tried on submission to the Court.  On March 9,
the parties informed the Court that they consented to trial on
submission, and proposed a schedule for filing reply affidavits
and supplemental proposed findings of fact and conclusions of
law.[6]  The parties filed their final submissions on March 16.

## Discussion

I. Lightbox's Claims

Lightbox has three claims remaining:  damages arising out

---

[6] At this time, the parties also resolved two motions brought by
Lightbox related to a trial subpoena issued to Richard Scarola,
Lightbox's former counsel, and the use of the injunction issued
against Lightbox as trial evidence.

of Third Home's breach of contract, damages arising out of Third
Home's breach of fiduciary duty, and injunctive relief to
enforce portions of the termination provision of the Agreement.
Each claim is addressed in turn.

A. Breach of Contract Damages

On its breach of contract claim, Lightbox seeks $67,088.19,
which it represents is the amount it spent to create the
Website.  Lightbox also seeks an additional $115,000, which it
represents is what it owes to Stein and Graff for their
consultancy work on behalf of the Joint Venture.

To recover damages on a breach of contract claim, a
plaintiff must show "that such damages were actually caused by
the breach, [and] that the particular damages were fairly within
the contemplation of the parties to the contract at the time it
was made." Awards.com, LLC v. Kinko's, Inc., 834 N.Y.S.2d 147,
152 (1st Dep't 2007), aff'd, 14 N.Y.3d 791 (2010).  To determine
whether the parties to an agreement fairly contemplated a type
of damages, courts use a "commonsense rule to determine what the
parties would have concluded had they considered the subject."
Fitzpatrick v. Animal Care Hosp., PLLC, 962 N.Y.S.2d 474, 479
(3d Dep't 2013) (citation omitted).

The Agreement provides that Lightbox is entitled to recoup
the "technology costs" defined as the "technology build-out of
the . . . cost of creating a . . . website at a level equivalent

22

to the 3RD Home site" in the event of an early termination of
the Agreement by Third Home.  The parties do not dispute that
Lightbox spent $67,088.19 to build-out the Website.  Third Home
contends that it does not owe $4,930.19 of this amount,
asserting that the costs in excess of $62,158 were incurred
after it sent Lightbox the March 8 Termination Notice.

The invoices submitted by Lightbox regarding the disputed
$4,930.19 indicate that Lightbox incurred expenses of $1,919.75
by March 2016 and expenses of $3,010.44 after March 2016.
Lightbox has thus carried its burden of showing that it incurred
$64,077.75 to build the Website before the March 8 Termination
Notice.  The $3,010.44 remaining is a modest portion of this
total.  Lightbox has carried its burden to show an entitlement
to this remaining amount as well.  Third Home has not shown that
Lightbox incurred unnecessary expense in building the Website
either before or after March 8.  In the confusion created by the
collapse of the Joint Venture, Lightbox was entitled to spend a
modest sum to complete the Website's "build-out," and nothing in
the Agreement provides a basis for denying it recovery of the
completion costs.  The roughly $3,000 represents payments to
four different entities, three of which had begun their work
before March 8.  Accordingly, Lightbox is entitled to the amount
of its costs in building the Website, namely $67,088.19.

While Lightbox has established that Third Home breached its

argument with Lightbox in the three ways described above, it has
not shown that it is entitled to additional damages in the
amount of $115,000 in connection with those breaches.  This sum
reflects amounts paid to attorney Stein and consultant Graff.
Lightbox has not shown that they assisted in the "technology
build-out" of the Website.  There is therefore no basis to find
that Lightbox is entitled to reimbursement for $115,000 it owes
to Stein and Graff pursuant to Paragraphs 1(a) and 15(c) of the
Agreement.

Nor has Lightbox shown that it and Third Home contemplated
Lightbox spending over $100,000 on business consultants for the
Joint Venture when they negotiated the Agreement, which would be
reimbursed by Third Home in whole or in part.  Instead, the only
provision under which Lightbox could recoup its costs other than
those derived from the build-out of the Website was the 50-50
profit-sharing provision in Paragraph 1(f).  Applying the
"commonsense rule" to evaluate the parties' likely intentions
had they considered the issue, the fact that the Agreement
singles out the technology build-out apart from other costs
indicates that Lightbox would have borne the other costs of
creating the Joint Venture.  Thus, the only expectation Lightbox
had of recovering the $115,000 was based on a division the
future profits of the Joint Venture.  The Joint Venture never
began operation and therefore it made no profits.  The prospect

of the Joint Venture's profits, as discussed in the Summary
Judgment Opinion, is too speculative to grant expected profits
as damages.  As a result, Lightbox is not entitled to recover
any portion of the $115,000 it seeks in connection with Stein
and Graff's consultancy services.[7]

B. Breach of Fiduciary Duty Damages

Lightbox next seeks damages for Third Home's breach of its
fiduciary duty to Lightbox.  It seeks the $52,500 that Third
Home received from the Exclusive Brokers, as well as punitive
damages.[8]

Lightbox first seeks disgorgement of the money Third Home
obtained from the Exclusive Brokers.  Disgorgement is available
to the victim of a breach of fiduciary duty.  See Restatement
(Second) of Torts § 874, cmt. b ("In addition to or in
substitution for [tort] damages the beneficiary may be entitled
to restitutionary recovery[;] . . . ordinarily [t]he
[beneficiary] is entitled to profits that result to the
fiduciary from his breach of duty and to be the beneficiary of a
constructive trust in the profits." (emphasis supplied)); see

---

[7] Third Home's motion in limine to preclude Lightbox from seeking
to prove damages arising from Stein and Graff's work is granted.

[8] Lightbox was granted summary judgment on its claim that Third
Home breached its fiduciary duty to Lightbox.  Third Home was
granted summary judgment as to Lightbox's claim for lost
profits.  See Lightbox II, 2017 WL 5312187, at *13-*14.

also <u>Bon Temps Agency Ltd. v. Greenfield</u>, 584 N.Y.S.2d 824, 825-
26 (1st Dep't 1992) (awarding plaintiff, on its breach of
fiduciary duty claim, fees earned from third parties by
defendant in course of defendant's breach). "[U]nlike an
ordinary tort or contract case," an award of damages on a breach
of fiduciary duty claim is "not merely to compensate the
plaintiff for wrongs committed by the defendant but to prevent"
those wrongs. <u>City of Binghamton v. Whalen</u>, 32 N.Y.S.3d 727,
729 (3d Dep't 2016) (citation omitted). Thus, "a fiduciary may
be required to disgorge any ill-gotten gain even where the
plaintiff has sustained no direct economic loss." <u>Excelsior
57th Corp. v. Lerner</u>, 553 N.Y.S.2d 763, 764-65 (1st Dep't 1990).

One half of the fees Third Home improperly obtained from
the Exclusive Brokers is awarded to Lightbox. This award is
directly linked to Third Home's breach of its fiduciary duty to
Lightbox. Lightbox proposed to Third Home a Joint Venture
through which Third Home would share in the profits from
Lightbox's work as a real estate broker. If the Joint Venture
were successful, and the Website assisted Lightbox in selling
luxury residences, Lightbox was willing to split brokerage
commissions with Third Home. Instead of fulfilling its
obligations as a Joint Venture partner, Third Home breached its
fiduciary duty to Lightbox and pocketed $52,500 it received from
Lightbox's competitors by proposing a similar commission-sharing

arrangement with them.

Third Home argues that the Exclusive Broker fees that it received were "not contemplate[d]" by the Joint Venture and that Lightbox was accordingly not damaged by Third Home's agreements with the Exclusive Brokers.  In making this argument, Third Home misunderstands the nature of the claim.  Lightbox is not entitled to those fees because they should have been split by the parties pursuant to the Agreement.  Lightbox is entitled to disgorgement precisely because Third Home went outside of the Joint Venture and realized profits with competitors to the Joint Venture.  That conduct constitutes Third Home's breach of its fiduciary duty and it is the profits that stem from the breach to which Lightbox is entitled.

Lightbox seeks an award of the entirety of the $52,500 Third Home received from the Exclusive Brokers.  Since the Joint Venture never got off the ground, any award larger than one-half of this amount is unwarranted.

Lightbox also seeks an accounting to determine whether Third Home obtained additional profits from the Exclusive Brokers beyond the fees.  Lightbox did not seek an accounting in the SAC.  In any case, an accounting is unnecessary.  Lightbox has had full discovery and has not presented evidence that Third Home has received more than $52,500 from its Exclusive Broker arrangements.

For similar reasons, Lightbox has not shown it is entitled to any punitive damages.[9]  Under New York law, punitive damages are available if a plaintiff shows "a high degree of moral turpitude" by the breaching party and "such wanton dishonesty as to imply a criminal indifference to civil obligations."  Evans v. Ottimo, 469 F.3d 278, 283 (2d Cir. 2006) (citation omitted). Here, Third Home entered agreements with the Exclusive Brokers that competed with the Joint Venture, but did so before the Agreement got off the ground.  Third Home also notified Lightbox of its intention to terminate the Joint Venture in March 2016, less than eight months after the Agreement was signed and about three months after the Amendment was executed.  This record does not demonstrate a remarkable level of dishonesty.  Lightbox is therefore not entitled to punitive damages.

The Summary Judgment Opinion also granted summary judgment to Lightbox on its claim that Shealy aided and abetted Third Home's breach of its fiduciary duty to Lightbox.  As such, Shealy is jointly and severally liable for the damages awarded to Lightbox on the breach of fiduciary duty claim.  See Talansky v. Schulman, 770 N.Y.S.2d 48, 53 (1st Dep't 2003) ("[A]ny one who knowingly participates with a fiduciary in a breach of trust

---

[9] Third Home's motion in limine, seeking to prevent Lightbox from introducing evidence of Third Home's finances before the Court determines whether Lightbox is entitled to punitive damages, is denied as moot.

is liable for the full amount of the damage caused thereby."
(citation omitted)).  For the same reason as described above,
punitive damages are not warranted.  Accordingly, Third Home and
Shealy are jointly and severally liable to Lightbox in the
amount of $26,250.

C. Specific Performance

Lastly, Lightbox seeks specific performance of the
valuation and noncompete provisions of the Agreement.  Lightbox
has not shown that it is entitled to either.

The parties have long recognized that their Joint Venture
ended no later than March 2016.  In March 2016, Third Home gave
notice of termination.  In filing this action in March, Lightbox
sought a declaration that Lightbox had validly terminated the
Agreement.  The Summary Judgment Opinion granted Lightbox's
request for declarations that

> (1) [Third Home's] actions constitute material
> breaches of the Agreement and that, therefore,
> LightBox may be relieved of any further performance
> obligations pursuant to the Agreement, while [Third
> Home] would not be entitled to enforce the Agreement
> against Lightbox.
>
> (2) [T]he Agreement may be validly terminated by
> Lightbox.

Lightbox II, 2017 WL 5312187, at * 13.  Thus, the Joint Venture
was terminated by both parties before it had begun its
operations.  There is no basis, therefore, either to order a
valuation of the Joint Venture or to enjoin competition with

that failed venture.  Moreover, the terms of the Agreement do not support either of those requests.

Paragraph 15(e) of the Agreement applies "in the event [Third Home] wishes to terminate th[e] Agreement with [Lightbox] but continue to operate the business of the joint venture . . . independently of [Lightbox]."  In that situation, Paragraph 15(e) provides that Third Home must obtain three separate valuations of the Joint Venture and pay Lightbox 50% of the average of the three valuations.  The Agreement does not provide for a valuation or an accounting in any other circumstances.

Lightbox is not entitled to a valuation pursuant to Paragraph 15(e) because there is no evidence that Third Home wishes to continue operating the Joint Venture.[10]  Third Home has never indicated that it wishes to take over the Joint Venture and, indeed, offered at summary judgment to stipulate that Lightbox "exclusively own[s] and control[s]" the Website.  See Lightbox II, 2017 WL 5312187, at *12.

Nor is Lightbox entitled to an injunction barring Third Home from competing with the Joint Venture for two years.  A party is entitled to a permanent injunction if it shows

(1) that it has suffered an irreparable injury; (2)

---

[10] In addition, Lightbox has failed to show that any valuation of the Joint Venture would be reliable.  As discussed in the Summary Judgment Opinion, Lightbox's two projections of the Joint Venture's future profits were entirely speculative.  See Lightbox II, 2017 WL 5312187, at *9-*11.

that remedies available at law, such as monetary
damages, are inadequate to compensate for that injury;
(3) that, considering the balance of hardships between
the plaintiff and defendant, a remedy in equity is
warranted; and (4) that the public interest would not
be disserved by a permanent injunction.

Salinger v. Colting, 607 F.3d 68, 77 (2d Cir. 2010) (citation
omitted).  Here, Lightbox has neither suffered an irreparable
injury nor shown that monetary damages are insufficient to
compensate it.

As Lightbox acknowledges, "[t]his action is, at its heart,
a damages action."  Lightbox I, 2016 WL 6562107, at *10.  Over
two years have passed since it filed this lawsuit, and Lightbox
offers no explanation why an injunction would be appropriate at
this stage other than to say that it is entitled to an
injunction under Paragraph 15(c) of the Agreement.[11]  Moreover,
the Court credits the testimony from Third Home's CEO and from
its CFO that Third Home has never received any real estate
brokerage commissions from the Exclusive Brokers and no longer
wishes to participate in the real estate sales market.  To the
extent Lightbox has been harmed, it has been compensated by the
damages awards granted above.

D. Attorneys' Fees

Lightbox also seeks an award of its attorneys' fees as part

---

[11] Lightbox does not include a request for an injunction in its
proposed findings of fact and conclusions of law.

31

of its damages on the breach of fiduciary duty claim.  This request is denied.  In support of its claim, Lightbox cites a federal ERISA case that does not discuss New York law, and a New York case that states that

> [t]he general rule is that the legal expenses necessarily incurred in carrying on a lawsuit may not be recovered as general or special damages.  There is a well-recognized exception, however, where the damages are the proximate and natural consequence of defendants' tortious act which requires plaintiff to defend or to bring an action against a third party.

Cent. Trust Co., Rochester, N.Y. v. Goldman, 417 N.Y.S.2d 359, 361 (4th Dep't 1979).  Lightbox was not forced to bring or defend a suit against a third party as a result of Third Home's breach of fiduciary duty, so this exception is inapplicable.[12]

    E. Summary

    Lightbox is awarded $67,088.19 on its breach of contract claim and $26,250 on its breach of fiduciary duty claim, for a total of $93,338.19.[13]  Third Home is liable for the full amount of $93,338.19, and Shealy is jointly and severally liable for $26,250 of this amount for aiding and abetting Third Home's

---

[12] To the extent Lightbox also seeks attorneys' fees on a theory of surcharge, this request is also denied.  Surcharge is an equitable remedy available when a trust beneficiary prevails in a suit against a trustee for the breach of an investment duty related to the trust.  See Velez v. Feinstein, 451 N.Y.S.2d 110, 114 (1st Dep't 1982); see also CIGNA Corp. v. Amara, 563 U.S. 421, 441-42 (2011).  Third Home was not a trustee.

[13] These awards are in addition to the $38,888.01 awarded in the January 18 Order as a discovery sanction.

breach of its fiduciary duty to Lightbox.  Judgment is granted
to Third Home, however, on Lightbox's claims for $115,000 in
consultancy fees, for an accounting, for an injunction barring
Third Home from competing against it for two years, and for
attorneys' fees arising out of Lightbox's breach of fiduciary
duty claim.

II. Third Home's Claims

Third Home brings counterclaims against Lightbox and third-
party claims against Ellner arising out of Ellner's use of Third
Home trademarks after this lawsuit was filed.  Third Home brings
claims under the Anticybersquatting Consumer Protection Act
("ACPA"), 15 U.S.C. § 1125(d), and under the Lanham Act, 15
U.S.C. § 1051, et seq.[14]  As Lightbox acknowledges in its trial
submissions, it has not contested the validity of Third Home's
trademarks in this litigation.

A. ACPA Claims

Third Home claims that Lightbox violated its rights under
ACPA in three ways.  First, Lightbox registered a domain name
that used Third Home's trademark.  Second, Lightbox
"resurrect[ed]" a domain name.  Third, Lightbox communicated

---

[14] Third Home's Answer and Third-Party Complaint lists claims
under state trademark infringement law and the Uniform Domain
Name Dispute Resolution Policy.  Third Home does not address
those claims in its trial submissions, and they are accordingly
waived.

with property owners using Third Home's trademarks.

Third Home's counterclaim and third-party complaint list three domains that it claims Lightbox and/or Ellner used improperly: thirdhomerealestate.com, 3rdhomerealestate.com, and 3rdhomerealty.com. Lightbox, however, has submitted an internet domain registration statement that reflects Shealy as the registrant of thirdhomerealestate.com. Third Home does not address this in its trial submissions. There is thus no evidence that Lightbox used thirdhomerealestate.com and Third Home's counterclaims and third-party claims are dismissed to the extent that they are based on Lightbox and/or Ellner's use of that domain.[15]

Ellner does not contest that he used the andy@3rdhomerealestate.com email address after this lawsuit was commenced. Nor does he contest that he registered the domain 3rdhomerealty.com on July 21, 2016, after the Website was taken down by Shealy on July 19, 2016. Instead, Ellner explains his actions as motivated by a desire to further the purposes of the Joint Venture and to restore the Website after Shealy took the Website down.

A party is liable under ACPA if it

(i) has a bad faith intent to profit from [a] mark

---

[15] Lightbox's motion in limine to preclude Third Home from offering evidence that Lightbox or Ellner used the thirdhomerealestate.com domain is denied as moot.

. . . ; and

(ii) registers, traffics in, or uses a domain name
that--

    (I) in the case of a mark that is distinctive at
    the time of registration of the domain name, is
    identical or confusingly similar to that mark.

15 U.S.C. § 1125(d)(1)(A).

Among the non-exhaustive list of factors that a court "may

consider" to determine "whether a person has a bad faith intent"

within the meaning of ACPA are:

(I) the trademark or other intellectual property
rights of the person, if any, in the domain name;

. . .

(III) the person's prior use, if any, of the domain
name in connection with the bona fide offering of any
goods or services;

. . .

(V) the person's intent to divert consumers from the
mark owner's online location to a site accessible
under the domain name that could harm the goodwill
represented by the mark, either for commercial gain or
with the intent to tarnish or disparage the mark, by
creating a likelihood of confusion as to the source,
sponsorship, affiliation, or endorsement of the site;

. . .

(VIII) the person's registration or acquisition of
multiple domain names which the person knows are
identical or confusingly similar to marks of others
that are distinctive at the time of registration of
such domain names, or dilutive of famous marks of
others that are famous at the time of registration of
such domain names, without regard to the goods or
services of the parties; and

> (IX) the extent to which the mark incorporated in the
> person's domain name registration is or is not
> distinctive and famous within the meaning of
> subsection (c).

Id. § 1125(d)(1)(B)(i).

In addition, ACPA provides that "[b]ad faith intent . . .
shall not be found in any case in which the court determines
that the person believed and had reasonable grounds to believe
that the use of the domain name was a fair use or otherwise
lawful." Id. § 1125(d)(1)(B)(ii). A plaintiff bringing an ACPA
claim is entitled to elect to recover "actual damages and
profits" or "statutory damages in the amount of not less than
$1,000 and nor more than $100,000 per domain name, as the court
considers just." Id. § 1117(d).

Third Home has failed to show that Ellner acted with a "bad
faith intent to profit" from his use of the
andy@3rdhomerealestate.com email address.[16] Ellner briefly used
the email address in July and perhaps August of 2016 to reassure
the Joint Venture's clients that the business would continue
after the defendants had deactivated the Website. Those emails
do not reflect a bad faith intent to profit from the

---

[16] None of the parties addresses whether Third Home's marks were
distinctive at the time Ellner used the domain names, which is a
predicate for ACPA liability. See 15 U.S.C.
§ 1125(d)(1)(A)(ii). Accordingly, Lightbox and Ellner have
forfeited any argument that Third Home's marks are not
distinctive.

3rdhomerealestate.com domain.  Further, it is undisputed that
Third Home had the ability to close the
andy@3rdhomerealestate.com email account at any time -- which it
did in 2017.  The evidence shows that Ellner "believed and had
reasonable grounds to believe that the use of the
[3rdhomerealestate] domain name was a fair use or otherwise
lawful" based on his use of the domain to further the purposes
of the Joint Venture.  15 U.S.C. § 1125(d)(1)(B)(ii).  The ACPA
counterclaim and third-party ACPA claim are dismissed insofar as
they are based on Ellner's use of the andy@3rdhomerealestate.com
email address.

Third Home has carried its burden of showing that Ellner
acted in bad faith to profit from his registration of
3rdhomerealty.com on July 21, 2016.  While Ellner no doubt did
so in a futile hope that the Joint Venture could be revived, the
creation of a domain name that is confusingly similar to the
defendants' was wrongful.  Ellner knew that he had no right to
do so.  As a result, Third Home has shown that Ellner violated
ACPA when he registered the 3rdhomerealty.com domain.

ACPA directs the court to choose an amount of statutory
damages between $1,000 and $100,000, as a court considers just.
Third Home urges that an award of $100,000 is appropriate,
whereas Lightbox contends that $1,000 is appropriate.

An award of $10,000 in statutory damages is appropriate in

the circumstances.  Ellner and Lightbox are liable for a single
ACPA violation.  Defendants have not shown that Ellner made
extensive use of the site or profited from it.  It was used to
communicate with clients of the failed Joint Venture.  No larger
award is necessary to serve the purposes of the ACPA.

B. Lanham Act Claims

Third Home contends that the same evidence that supports
its ACPA claim shows three violations of the Lanham Act.  For
the reasons that follow, judgment is granted to Lightbox and
Ellner on the Lanham Act claims.

Third Home has trademark registrations for "3rd Home" and
"3rd Home" with the letter "o" in Home replaced by the image of
a home.  As before, Lightbox does not contest the validity of
Third Home's trademarks.

Lanham Act claims are analyzed under a two-part test:  "The
first prong looks to whether the senior user's mark is entitled
to protection; the second to whether the junior user's use of
its mark is likely to cause consumers confusion as to the origin
or sponsorship of the junior user's goods."  Guthrie Healthcare
Sys. v. ContextMedia, Inc., 826 F.3d 27, 37 (2d Cir. 2016).  The
first prong is satisfied by showing that a mark is valid and
registered, owned by the registrant, and that the registrant has
the exclusive right to use the mark in commerce.  See id.
Because Lightbox does not contest the validity of the

registration of Third Home's marks, the sole issue is consumer confusion.

Consumer confusion is "analyzed with reference to the eight factors first articulated in <u>Polaroid Corp. v. Polarad Elecs. Corp.</u>, 287 F.2d 492, 495 (2d Cir. 1961)." <u>Cross Commerce Media, Inc. v. Collective, Inc.</u>, 841 F.3d 155, 168 (2d Cir. 2016).

> The eight factors are: (1) strength of the trademark;
> (2) similarity of the marks; (3) proximity of the
> products and their competitiveness with one another;
> (4) evidence that the senior user may "bridge the gap"
> by developing a product for sale in the market of the
> alleged infringer's product; (5) evidence of actual
> consumer confusion; (6) evidence that the imitative
> mark was adopted in bad faith; (7) respective quality
> of the products; and (8) sophistication of consumers
> in the relevant market.

<u>Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC</u>, 823 F.3d 153, 160 (2d Cir. 2016) (citation omitted). "The application of the <u>Polaroid</u> test is not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused." <u>Kelly-Brown v. Winfrey</u>, 717 F.3d 295, 307 (2d Cir. 2013) (citation omitted).

First, for the reasons explained above, there is no evidence that Ellner ever used the thirdhomerealestate.com domain, so the Lanham Act claims fail to the extent they are premised on use of that domain. Second, also for the reasons given in discussing the ACPA claim, Ellner did not act with bad

faith intent to deceive when he used his
andy@3rdhomerealestate.com email address, and there is no
likelihood that consumers were confused.  Accordingly, judgment
is granted for Ellner and Lightbox on the Lanham Act claims to
the extent they are premised on the thirdhomerealestate.com and
3rdhomerealestate.com domain names and associated email
addresses.

With regard to the 3rdhomerealty.com domain that Ellner
registered in July 2016, it is assumed that the defendants have
established a violation of the Lanham Act.  The defendants have
not shown, however, that they are entitled to damages for this
asserted violation.

Third Home does not attempt to prove actual consumer
confusion, and instead relies on a presumption of confusion
based on its contention that Ellner acted with intent to
deceive.  Third Home has failed to show confusion.  In addition,
Third Home has not shown it is entitled to damages.

Third Home requests "statutory damages of $100,000 for each
of the three (3) violations," apparently referring to its ACPA
claims, and does not separately request damages on its Lanham
Act claims.  The Lanham Act does not provide for statutory

damages, however, for the type of violation at issue here.[17]
Instead, damages are limited to "(1) defendant's profits, (2)
any damages sustained by the plaintiff, and (3) the costs of the
action" and are "subject to the principles of equity."  15
U.S.C. § 1117(a).  Lightbox and Ellner did not profit from the
3rdhomerealty.com domain, and Third Home has not shown that it
sustained any damages from Ellner's registration of the domain.
In addition, it would be inequitable on this record to award
Third Home the costs of bringing this action where Third Home
has not shown any damages and where Ellner's registration of the
3rdhomerealty.com domain, though wrongful, was short-lived.
Judgment is granted to Ellner and Lightbox on Third Home's
Lanham Act claims.

    C. Attorneys' Fees

    Third Home seeks an award of attorneys' fees on its ACPA
and Lanham Act claims.  15 U.S.C. § 1117(a) provides that "in
exceptional cases" a court "may award reasonable attorney fees
to the prevailing party."  Third Home prevailed on one of its
ACPA claims.  As the Supreme Court has explained with regard to
the identically worded fee-shifting provision of the patent
laws, "an 'exceptional' case is simply one that stands out from

---

[17] The Lanham Act provides for statutory damages for two types of
violations:  cyberpiracy in violation of ACPA and
counterfeiting.  See 15 U.S.C. §§ 1117(c), (d).

others with respect to substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014).

There is nothing exceptional about the ACPA claim on which Third Home prevailed. Accordingly, its request for an award of fees is denied.

D. Summary

Third Home has proven one violation of ACPA arising out of Ellner's registration of the 3rdhomerealty.com domain. Judgment is granted to Third Home on that claim, and it is awarded $10,000. Third Home is not entitled to statutory fee shifting. Third Home has failed to prove any other violations of ACPA and failed to prove any violations of the Lanham Act, and judgment is granted to Lightbox and Ellner on those claims.

III. Interest

The net judgment is $83,338.19 in favor of Lightbox. Lightbox is also awarded prejudgment interest of 9% per annum running from January 1, 2016. See N.Y. C.P.L.R. §§ 5001(a), 5004.

IV. Contractual Fee Shifting

The Agreement provides for fee shifting in certain circumstances. Each side seeks attorneys' fees pursuant to the

42

Agreement.  In addition, Third Home seeks fees paid to its
expert witness in connection with its successful motion to
exclude Lightbox's valuation experts at summary judgment.[18]

Paragraph 4(c) of the Agreement provides as follows:

> If either party employs attorneys to enforce any
> rights arising out of or relating to this agreement,
> the losing party shall reimburse the prevailing party
> for its reasonable attorneys' fees and costs.

The Agreement provides in Paragraph 4(a) that New York law
governs.

"Under New York law, a contract that provides for an award
of reasonable attorneys' fees to the prevailing party in an
action to enforce the contract is enforceable if the contractual
language is sufficiently clear." NetJets Aviation, Inc. v. LHC
Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008).  A successful
defendant may be a prevailing party and receive fees incurred in
the successful defense of a claim.  See Kessel Brent Corp. v.
Benderson Prop. Dev., Inc., 893 N.Y.S.2d 401, 402 (4th Dep't
2009).

To determine "whether a party is a prevailing party, a

---

[18] Lightbox moves in limine to preclude Third Home from
introducing the affidavit of its expert, William Chandler,
because he has not been qualified by the Court as an expert and
because there are no remaining issues as to which his testimony
is relevant.  Third Home has submitted Chandler's affidavit
solely to support its claim for fee shifting.  As Third Home
does not rely on Chandler as an expert for any of the issues to
be tried, Lightbox's third motion in limine is denied as moot.

fundamental consideration is whether that party has prevailed
with respect to the central relief sought." Chainani v.
Lucchino, 942 N.Y.S.2d 735, 736 (4th Dep't 2012) (citation
omitted). In general, "the prevailing or successful party is
the party in whose favor a net judgment was entered."
Wiederhorn v. Merkin, 952 N.Y.S.2d 478, 481 (1st Dep't 2012).
"It is not necessary for a party to prevail on all of his claims
in order to be considered prevailing." Id. at 863 (citation
omitted); see also Excelsior 57th Corp. v. Winters, 641 N.Y.S.2d
675, 676 (1st Dep't 1996) (Where landlord sued for 54 months'
rent, tenants claimed constructive eviction for 24 of those
months but only were awarded rent abatement for 4 1/2 months,
the landlord was the prevailing party and entitled to attorneys'
fees.).

The core of this dispute was assigning fault for the
breakdown of the Joint Venture. Measuring the parties' results
in this way, Lightbox prevailed. The upshot of this litigation
is a determination that Third Home breached the Agreement and
its fiduciary duty to Lightbox. The net judgment is $83,338.19
in Lightbox's favor. Considering the claims numerically,
Lightbox prevailed on all but one of its claims while defeating
all but one of Third Home's ACPA claims.[19] Third Home was not

---

[19] Although Third Home significantly reduced the damages
available to Lightbox in its successful motion to exclude

successful in resisting the core of the dispute and so it has
not prevailed in this litigation.  As a result, Lightbox is the
prevailing party.

Under the Agreement, the prevailing party is entitled to
"reasonable" attorneys' fees.  Third Home has conceded from at
least the time that the parties litigated the preliminary
injunction motion in the summer of 2016, that it owed Lightbox
at least $62,158 for the build-out of the Website.  Accordingly,
Lightbox's net judgment won it only about $20,000 above the
amount that Third Home conceded almost two years ago that it
owed to Lightbox.  Moreover, from the time the Preliminary
Injunction Opinion was issued, Lightbox was on notice that its
likelihood of recovering anticipated future profits of the Joint
Venture was slim, given how "speculative" those profits were.
See Lightbox I, 2016 WL 6562107, at *10-*11.  Accordingly, while
Lightbox has shown that it is entitled to its reasonable
attorneys' fees through the time Lightbox I was issued, it has
not shown it is entitled to attorneys' fees beyond that date.

## Conclusion

Third Home is liable to Lightbox for $67,088.19 on

---

Lightbox's expert valuations, New York law does not appear to
recognize nondispositive motion practice as a means of judging
whether a party has prevailed, unless the motion affects the
core relief sought.

45

Lightbox's breach of contract claim.  Third Home and Shealy are jointly and severally liable to Lightbox for $26,250 on Lightbox's breach of fiduciary duty claim.  Lightbox and Ellner are jointly and severally liable to Third Home and Shealy for $10,000 for one violation of ACPA.  Lightbox is accordingly awarded $83,338.19, plus prejudgment interest of 9% per annum running from January 1, 2016.  The Clerk of Court is directed to enter final judgment in favor of Lightbox.  Lightbox is also awarded its reasonable attorneys' fees for the period before October 28, 2016, and is directed to file an application for its fees, with supporting documentation, as directed by a Scheduling Order filed contemporaneously with this Opinion.  The Clerk of Court is directed to release funds deposited by Third Home on March 5, 2018 in the amount of $38,888.01 to Lightbox pursuant to the Court's March 12, 2018 Order.


Dated:    New York, New York
          April 13, 2018


                          _____
                                 DENISE COTE
                     United States District Judge

# Exhibit "F"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
                                     :
LIGHTBOX VENTURES, LLC,              :
                                     :          16cv2379(DLC)
                      Plaintiff,     :
                                     :          MEMORANDUM
          -v-                        :          OPINION AND
                                     :          ORDER
3RD HOME LIMITED and WADE SHEALY,    :
                                     :
                      Defendants.    :
                                     :
------------------------------------- X
-------------------------------------X
                                     :
LIGHTBOX VENTURES, LLC, and ANDREW    :
ELLNER,                              :
                                     :
                      Interpleader:  :
                      Plaintiffs,    :
                                     :
          -v-                        :
                                     :
SCAROLA ZUBATOV SCHAFFZIN PLLC, and   :
BREM MOLDOVSKY LLC,                  :
                                     :
                      Interpleader:  :
                      Defendants.    :
                                     :
-------------------------------------X

DENISE COTE, District Judge:

      Plaintiff Lightbox Ventures, LLC ("Lightbox") has filed an

interpleader complaint seeking resolution of its former

attorneys' charging liens pursuant to New York Judiciary Law

§ 475 ("Section 475").  Lightbox and its former attorneys,

Scarola Zubatov Schaffzin PLLC (the "Scarola Firm") and Brem

Moldovsky LLC (the "Moldovsky Firm"), have filed briefs,

affidavits, and exhibits addressing the proper amount of the

liens.  For the following reasons, the Scarola Firm is not entitled to a charging lien, and the Moldovsky Firm is entitled to a charging lien of $45,948.

## Background

Familiarity with the Court's Opinions and Orders is assumed. This action was filed on March 31, 2016, and arose out of a failed joint venture between Lightbox and 3RD Home Limited ("Third Home").  Over the course of this litigation, Lightbox has been represented by three law firms:  the Scarola Firm from March 2016 through March 3, 2017, the Moldovsky Firm, from March 3, 2017 through April 13, 2018, and the Law Firm of Jonathan R. Miller, from April 27, 2018 to the present.  Lightbox and its former attorneys now dispute the portions of Lightbox's recovery to which the Scarola and Moldovsky Firms are entitled under a charging lien theory.

On April 13, 2018, the Court awarded Lightbox $83,338.19 against Third Home and Wade Shealy.  See Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC), 2018 WL 1779346 (S.D.N.Y. Apr. 13, 2018) (the "Trial Opinion").  The Court had previously awarded Lightbox a discovery sanction against the defendants. See Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC), 2017 WL 5526073 (S.D.N.Y. Nov. 15, 2017).  The amount of the discovery sanction was set in an order of January 18, 2018 (the

"January 2018 Order") at $38,888.01, composed of the following: reimbursement of $18,888.01 in expenses, an award of $10,000 for work performed by the Scarola Firm, and an award of $10,000 for work performed by the Moldovsky Firm.  On June 12, the Court awarded Lightbox $100,000 in attorneys' fees pursuant to the parties' contract.  See Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC), 2018 WL 2943742 (S.D.N.Y. June 12, 2018) (the "Fee Opinion").  That $100,000 award reflected the reasonable value of services provided by the Scarola Firm between the initiation of this case and the issuance of the Court's Opinion denying a preliminary injunction on October 28, 2016.  See id. at *3; Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC), 2016 WL 6562107 (S.D.N.Y. Oct. 28, 2016) (the "Preliminary Injunction Opinion").

The Court has not disbursed any of the awards described above.  On deposit with the Court is $222,226.20.  That amount comprises the $38,888.01 discovery sanction awarded in the January 2018 Order, the $83,338.19 awarded in the Trial Opinion, and the $100,000 awarded in the Fee Opinion.

On May 15, Lightbox requested permission to file an interpleader complaint to resolve its former attorneys' entitlements to statutory liens.  Lightbox also noted that the Scarola Firm had filed a contract action in state court arising out of its retainer agreement with Lightbox, but that the

3

Scarola Firm did not seek a charging lien in that action.

Lightbox's May 15 request was initially denied by Order of
May 31.  The Court granted Lightbox's motion for reconsideration
by Order of June 14.  On July 3, Lightbox and Andrew Ellner,
Lightbox's CEO, filed an interpleader complaint asserting claims
against Scarola and Moldovsky.  Counts 2 through 5 of the
interpleader complaint, however, asserted claims for
declarations that Lightbox's retainer agreements with Scarola
and Moldovsky are invalid.  Scarola and Moldovsky filed motions
to dismiss the interpleader complaint on September 4 and 5,
respectively.

An Order of September 7 indicated that the interpleader
complaint appeared to seek relief not authorized by the Court
and that the Court was inclined to dismiss Counts 2 through 5 of
the interpleader complaint.  After Lightbox responded, Counts 2
through 5 of the interpleader complaint were dismissed on
October 9.  The interpleader defendants filed answers to Count
1, and all parties filed briefs addressing the charging liens,
on October 12.

Lightbox had a retainer agreement with each of its prior
attorneys.  Its agreement with the Scarola Firm is dated March
11, 2016, and provides for payment at the firm's hourly rates.[1]

---

[1] Lightbox and the Scarola Firm dispute whether Lightbox
submitted a falsified version of the Scarola retainer agreement

Under this agreement, the Scarola Firm's partners billed at
hourly rates between $495 and $765, associates billed at hourly
rates between $250 and $450, and paralegals and legal assistants
billed at hourly rates between $40 and $220.  Lightbox entered
into an amended retainer agreement with the Scarola Firm on
October 26, 2016, which permitted Lightbox to defer part of the
Scarola Firm's bills in exchange for granting the Scarola Firm a
contingency fee.  Lightbox has paid $316,535.41 to the Scarola
Firm under the retainer agreements and the Scarola Firm asserts
that it is entitled to an additional $301,468.91 under the
agreements.

Lightbox's initial retainer agreement with the Moldovsky
Firm is dated February 10, 2017, and provides for immediate
payment of $75,000 and a contingency fee at a sliding rate
depending on when the action ceased.  This agreement provides
for the Moldovsky Firm to receive 35% of Lightbox's recovery if
received after a trial.  An amended agreement between Lightbox
and the Moldovsky Firm dated November 14, 2017 provides for
payment at one-third of the Moldovsky Firm's hourly rates, with

---

to the Court.  The only difference alleged by the Scarola Firm
relates to whether only Lightbox was the Scarola Firm's client,
or whether Ellner was also a client.  Only Lightbox has a net
judgment in its favor.  See Trial Opinion, 2018 WL 1179346, at
*18.  Because a charging lien is limited to a net judgment, the
Scarola Firm cannot obtain one against Ellner.  Thus, this
dispute is not relevant to the charging lien issue.  The Scarola
Firm's motion for sanctions is denied.

the remaining two-thirds to be paid out of any recovery.  The

Moldovsky Firm asserts that under its amended agreement it is

entitled to all of the available proceeds.  Lightbox contests

the validity of this agreement.  The Moldovsky Firm has already

received payments of $104,052.00.[2]


## Discussion

Section 475 provides as follows:

> From the commencement of an action . . . in any court
> . . . the attorney who appears for a party has a lien
> upon his or her client's cause of action, claim or
> counterclaim, which attaches to a verdict, report,
> determination, decision, award, settlement, judgment
> or final order in his or her client's favor, and the
> proceeds thereof in whatever hands they may come; and
> the lien cannot be affected by any settlement between
> the parties before or after judgment, final order or
> determination.  The court upon the petition of the
> client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475 (emphasis supplied).

The statutory lien in Section 475 reflects the codification

of an equitable remedy available to attorneys at common law.

See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140

F.3d 442, 449 (2d Cir. 1998).  An attorney discharged without

---

[2] Lightbox asserts that it has paid $119,742.41 to the Moldovsky
Firm, but has not submitted bank records or other proof of
payment.  The Moldovsky Firm's billing records submitted in
connection with the Fee Opinion indicate that the additional
$15,690 represents fees paid to the Moldovsky Firm to represent
Lightbox in separate litigation against the Scarola Firm.  That
amount is thus not relevant to the Moldovsky Firm's charging
lien in this action.

cause by a client may pursue one or more "cumulative remedies," including a charging lien, a retaining lien, or a quantum meruit recovery.[3] Roe v. Roe, 985 N.Y.S.2d 335, 337 (3d Dep't 2014); see also People v. Keeffe, 50 N.Y.2d 149, 155-56 (1980) ("[T]he rendition of services by an attorney gives rise to . . . a contract claim, express or implied, by the attorney against his client[, and] the attorney's retaining and charging liens."). "[A]n attorney's participation in the proceeding at one point as counsel of record is a sufficient predicate for invoking [a charging lien]." Klein v. Eubank, 87 N.Y.2d 459, 462 (1996).

The New York Court of Appeals has explained the entitlement of a discharged attorney to fees as follows:

> When a client discharges an attorney without cause, the attorney is entitled to receive compensation from the client measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in the contract or retainer agreement. As between them, either can require that the compensation be a fixed dollar amount determined at the time of discharge on the basis of quantum meruit or, in the alternative, they may agree that the attorney, in lieu of a presently fixed dollar amount, will receive a contingent percentage fee determined either at the time of substitution or at the conclusion of the case.

> When the dispute is only between attorneys, however, the rules are somewhat different. The outgoing attorney may elect to take compensation on the basis

---

[3] An attorney who is discharged by a client for cause is not entitled to compensation or a lien. See Maher v. Quality Bus Serv., LLC, 42 N.Y.S.3d 43, 46 (2d Dep't 2016). A client, however, "must make a prima facie showing of cause in order to trigger a hearing on the issue." Id.

of a presently fixed dollar amount based upon quantum
meruit for the reasonable value of services or, in
lieu thereof, the outgoing attorney has the right to
elect a contingent percentage fee based on the
proportionate share of the work performed on the whole
case.

Lai Ling Cheng v. Modansky Leasing Co., 73 N.Y.2d 454, 457-58
(1989) (emphasis supplied).

A charging lien must be based on "the nature of the
litigation, the difficulty of the case, the actual time spent by
plaintiff and the necessity therefor, the amount of money
involved, the results achieved, amounts customarily charged for
similar services in the same locality, the certainty of
compensation, and plaintiff's professional deportment." Grutman
Katz Greene & Humphrey v. Goldman, 673 N.Y.S.2d 649, 650 (1st
Dep't 1998) ("Grutman Katz"). "[I]n calculating the value of
the services rendered prior to termination of [an] attorney-
client relationship," in order to set the value of a charging
lien, "the terms of the original retainer [are] a relevant
consideration." Klein v. Eubank, 693 N.Y.S.2d 541, 542 (1st
Dep't 1999). "[T]he overriding criterion for determining the
amount of a charging lien," however, "is that it be fair."
Sutton v. N.Y.C. Transit Auth., 462 F.3d 157, 161 (2d Cir. 2006)
(citation omitted). Where the proper amount of an attorney's
charging lien is less than what a client has already paid, the
proper course of action is to deny a charging lien. See Grutman

Katz, 673 N.Y.S.2d at 650-51.

Lightbox asserts that its former attorneys' charging liens
are entirely satisfied by the prior payments it made to those
firms.  The Scarola Firm asserts that it is entitled to
$301,468.91 from Lightbox -- more than the total amount
recovered in this action -- and that its lien has priority over
the Moldovsky Firm's lien.  The Moldovsky Firm asserts that it
is entitled to the balance of the funds held by the Court --
$222,226.20 -- less any appropriate amount allocated to the
Scarola Firm.

The present dispute is unusual in that it is both between
two attorneys and their former client and between the attorneys
themselves.  The parties have not identified a New York case
with a similar posture.  The guiding principles, however, are
that a charging lien should reflect the equities of the
situation and reasonably compensate an attorney out of the
proceeds of the action.

The factors applied by New York courts in setting charging
liens are addressed as follows, based on the Court's familiarity
with this litigation, having presided over it from its inception
and having issued five prior opinions, and on the parties'
briefs and evidentiary submissions.  The core dispute between
Lightbox and Third Home was over a failed joint venture that
never produced revenue; the scope of the documentary record was

accordingly modest.  See Fee Opinion, 2018 WL 2943742, at *2.
The key factual issues regarding the scope of Lightbox's claims
were largely resolved in the Preliminary Injunction Opinion
issued in October 2016.  See Preliminary Injunction Opinion,
2016 WL 6562107, at *7-*10.  The remaining disputes were not
especially complex or difficult.  Lightbox's counsel spent a
significant amount of time on this case, but this time was out
of proportion to the amounts at issue after the Preliminary
Injunction Opinion was issued.  See Fee Opinion, 2018 WL
2943742, at *3.  The amount that Lightbox could reasonably have
hoped to recover, after October 2016, was no more than $123,000.
See id.

The hourly rates asserted by Lightbox's former counsel are
reasonable.  Counsel were not guaranteed compensation in this
matter, particularly given that Lightbox -- a failed joint
venture that had not realized any revenue -- was their client.
Finally, counsel's deportment was within the range of
professional conduct.

Lightbox states or implies that it discharged its former
attorneys for cause, but it has not made a prima facie showing
that this is true.  The parties have also submitted a
significant number of irrelevant exhibits.  After reviewing
these submissions, the parties have not raised any genuine
factual disputes about the narrow issue of whether the Scarola

10

and Moldovsky Firms are entitled to charging liens.
Accordingly, no hearing need be held to resolve the charging
liens.  See Maher, 42 N.Y.S.3d at 46.

　　The Scarola Firm is not entitled to a charging lien.
Applying the relevant factors, the Court finds that the Scarola
Firm has not shown its entitlement to a charging lien that would
exceed the $316,553.41 it has already received from Lightbox.
As explained in detail in the Fee Opinion, the reasonable value
for litigating this matter between March 2016, when the
complaint was filed, and October 2016, when the Preliminary
Injunction Opinion was issued, was $100,000.  Generously, a
reasonable fee to litigate the following five months between
October 2016 and the Scarola Firm's withdrawal in March 2017
would be substantially less than the $216,553.41 the Scarola
Firm has already been paid in addition to that $100,000.[4]  During
this time, the parties had a few discovery disputes and the case
was stayed for two months during which the parties pursued
mediation.  Because the Scarola Firm has already received more
pursuant to its retainer agreement than the Court would award on

---

[4] This analysis is without prejudice to any account stated or
contractual claim the Scarola Firm may hold against Lightbox.
Although the Scarola Firm contends that its charging lien should
be fixed on the basis of its account stated claim, an account
stated claim sounds in contract and is distinct from a statutory
lien, at least where an attorney has been discharged prior to
the termination of litigation.

a quantum meruit theory, it is not entitled to a charging lien.
See Grutman Katz, 673 N.Y.S.2d at 650-51.

For the following reasons, $150,000 is a reasonable fee in
quantum meruit for the Moldovsky Firm's representation of
Lightbox.[5]  Lightbox has already paid the Moldovsky Firm
$104,052; accordingly, the Moldovsky is entitled to a charging
lien of $45,948.

A charging lien of $45,948, for a total fee of $150,000 for
work performed between March 2017 and April 2018 is reasonable
in light of the Fee Opinion.  That Opinion awarded $100,000 for
work done by the Scarola Firm from March through October 2016,
during which time a preliminary injunction hearing was held that
addressed the key issues that were later tried.  See Fee
Opinion, 2018 WL 2943742, at *3.  An award greater than $100,000
reflects that the Moldovsky Firm represented Lightbox for
approximately 13 months, during which time discovery was
completed, summary judgment motions were litigated, and a bench
trial was held.  This award also recognizes the work that the
Moldovsky Firm did largely defeating Third Home's counterclaims
at trial.

As stated above, the bench trial resulted in a net judgment

_____

[5] This analysis solely pertains to the Moldovsky Firm's charging
lien and is without prejudice to any other theory of recovery or
claim the Moldovsky Firm may have against Lightbox.

of $83,338.19 in favor of Lightbox, plus fees.  The initial
retainer agreement between the Moldovsky Firm and Lightbox
provided that the Moldovsky Firm would be paid 35% of Lightbox's
recovery after trial, in addition to the $75,000 retainer.  With
this award of a charging lien, the Moldovsky Firm will be paid a
total of $150,000, or $75,000 in addition to its retainer.  That
payment of another $75,000 is far in excess of 35% of the
judgment of $83,338.19.

Lastly, the conclusions that the Scarola Firm is not
entitled to a charging lien and that the Moldovsky Firm is
entitled to a charging lien of $45,948 are reasonable in light
of the amounts of money at issue and actually recovered in this
case.  Over the course of this litigation, the Court has
concluded that at least $270,000 is a reasonable amount of fees:
$20,000 in connection with the January 2018 sanctions award,
$100,000 in favor of the Scarola Firm in the Fee Opinion, and
$150,000 in this Opinion.[6]  $270,000 is greater than the
$222,226.20 deposited with the Court, over twice as great as the
$123,000 that the Court estimated as Lightbox's maximum possible
recovery after the Preliminary Injunction Opinion, and over

---

[6] Even $270,000 is a partial amount, given that the Court has not
allocated fees for the Scarola Firm's representation of Lightbox
between the Preliminary Injunction Opinion in October 2016 and
the beginning of the Moldovsky Firm's representation of Lightbox
in March 2017.

three times as great as the $83,338.19 that Lightbox recovered
at trial.  Any recovery beyond that already received by the
Scarola and Moldovsky Firms, as supplemented by this Opinion,
would not be reasonable in the context of this case.

## Conclusion

The Scarola Firm is not entitled to a charging lien and the
Moldovsky Firm is entitled to a charging lien in the amount of
$45,948.  The parties are directed to submit a proposed final
judgment allocating the proceeds of this action as outlined in
this Opinion, within 14 days of the date of this Opinion.


Dated:    New York, New York
          October 22, 2018

                                    _____
                                            DENISE COTE
                               United States District Judge

# Exhibit "G"

## SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

| | | |
|---|---|---|
| **PRESENT:** **HON. ANTHONY CANNATARO** | **PART** | **IAS MOTION 41EFM** |
| *Justice* | | |

---------------------------------------------------------------------X

SCAROLA MALONE & ZUBATOV LLP,

                Plaintiff,

                - v -

ANDREW ELLNER, LIGHTBOX CAPITAL
MANAGEMENT, LLC, LIGHTBOX VENTURES,
LLC, BREM MOLDOVSKY, LLC

                Defendant.

---------------------------------------------------------------------X

**INDEX NO.**   651324/2017

**MOTION DATE**   04/17/2019

**MOTION SEQ. NO.**   007 008 010 011 012

**DECISION AND ORDER**

The following e-filed documents, listed by NYSCEF document number (Motion 007) 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 246, 247, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 313, 320, 321, 322, 323, 324, 343, 344

were read on this motion to/for                           DISMISSAL                 .

The following e-filed documents, listed by NYSCEF document number (Motion 008) 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 244, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 314, 334, 335, 336, 337, 338, 339, 340, 341, 342

were read on this motion to/for              SUMMARY JUDGMENT (BEFORE JOINDER)         .

The following e-filed documents, listed by NYSCEF document number (Motion 010) 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271, 315, 326, 327, 328, 329, 330, 331, 332, 333

were read on this motion to/for                         SANCTIONS               .

**651324/2017   SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**   **Page 1 of 7**
**Motion No.   007 008 010 011 012**

1 of 7

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 122 of 364

The following e-filed documents, listed by NYSCEF document number (Motion 011) 309, 310, 311, 312, 316, 317, 318, 319, 325

were read on this motion to/for          STRIKE PLEADINGS          .

The following e-filed documents, listed by NYSCEF document number (Motion 012) 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 373, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 420, 428, 429, 453

were read on this motion to/for          DISQUALIFY COUNSEL          .


In this action, plaintiff, Scarola Malone & Zubatov LLP (the Scarola Firm), seeks attorney's fees from its former clients, defendants LightBox Capital Management, LLC, LightBox Ventures, LLC, and Andrew Ellner (all three together, the "LightBox defendants").  In its amended complaint, plaintiff included claims against defendant Brem Moldovsky, LLC, seeking a judgment declaring the priority of plaintiff's liens. The parties have made a variety of motions, which are all now before the Court.  The Lightbox defendants move to dismiss the complaint, pursuant to CPLR 3211.  Plaintiff moves for partial summary judgment pursuant to CPLR 3211 and CPLR 3212.  Plaintiff separately moves for sanctions against Mr. Ellner, and the Lightbox defendants cross-move for sanctions against plaintiff.  The Lightbox defendants move to have defendant Brem Moldovsky, LLC replead its answer, and defendant Brem Moldovsky, LLC moves to disqualify Jonathan Miller, Esq., as counsel for the Lightbox defendants.  These motions, sequence numbers 007, 008, 010, 011, and 012, are consolidated for decision herein.

The facts of this case are as follows.  The Scarola firm represented the LightBox defendants in a federal case docketed in the U.S. District Court for the Southern District of New York as *Lightbox Ventures, LLC v 3rd Home Ltd., et al.*, No. 16-cv-2379 (S.D.N.Y.)

651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW                Page 2 of 7
Motion No.  007 008 010 011 012

2 of 7

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 123 of 364

(Cote, J.), between March 2016 and February 2017.  After the Lightbox defendants failed to timely pay certain of its legal fees, the Scarola firm was terminated as counsel.  The Lightbox defendants then retained defendant Brem Moldovsky, LLC as replacement counsel on March 3, 2017.  On March 13, 2017, plaintiff commenced this action to recover its legal fees.  The Lightbox defendants ultimately prevailed in the federal action and were awarded a total of $239,405.28, which included $38,888.01 in discovery sanctions, $83,338.19 in compensatory damages, $17,179.08 in prejudgment interest, and $100,000.00 in attorney's fees.

The Lightbox defendants' move to dismiss plaintiff's complaint.  On a motion to dismiss pursuant to CPLR 3211 "the court must accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Sokol v Leader*, 74 AD3d 1180, 1181 [2010] [internal quotation marks omitted]; *see Nonnon v City of New York*, 9 NY3d 825, 827 [2007]; *Leon v Martinez*, 84 NY2d 83, 87–88 [1994]).

CPLR 3211(a)(5) provides for dismissal of claims that are barred by reason of *res judicata* and/or collateral estoppel.  *Res judicata* applies "where a judgment on the merits exists from a prior action between the same parties involving the same subject matter" (*Matter of Hunter*, 4 NY3d 260, 269 [2005]).  "Collateral estoppel is an equitable doctrine that is based on the notion that a party should not be permitted to relitigate an issue previously decided against it" (*Nat'l Union Fire Ins. Co. v Hartford Ins. Co.*, 248 AD2d 78, 82 [1998]) (internal citations omitted). "The party seeking to invoke the doctrine need only establish two requirements: (1) that the identical issue was necessarily decided in the prior action and is decisive in the present action; and (2) that the party to be precluded from relitigating an issue must have had a full and fair opportunity to contest the prior determination" (*Id.*).

**651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**                    **Page 3 of 7**
**Motion No.  007 008 010 011 012**

3 of 7

INDEX NO. 651324/2017
RECEIVED NYSCEF: 07/08/2019

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 124 of 364

In her decision in the underlying federal action, Judge Cote issued a partial ruling with regard to the Scarola firm's entitlement to attorney's fees for the case. She found:

> [T]he reasonable value for litigating this matter between March 2016, when the complaint was filed, and October 2016, when the Preliminary Injunction Opinion was issued, was $100,000. Generously, a reasonable fee to litigate the following five months between October 2016 and the Scarola Firm's withdrawal in March 2017 would be substantially less than the $216,553.41 the Scarola Firm has already been paid in addition to that $100,000 . . . Because the Scarola Firm has already received more pursuant to its retainer agreement than the Court would award on a quantum meruit theory, it is not entitled to a charging lien.

Judge Cote went on to say that she would not address the question of whether or not the Scarola firm could recover additional damages on its breach of contract claim, because that claim was first filed with this Court, and so should be left to this Court to decide.

Under the doctrines of *res judicata* and collateral estoppel, plaintiff's cause of action seeking a charging lien, and its causes of action sounding in *quantum meruit* and unjust enrichment are all dismissed as they have already been litigated and decided in the federal action.

As to plaintiff's claims for breach of contract and account stated, it is well settled that an attorney discharged without cause is limited to compensation measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in a retainer agreement (*Sae Hwan Kim v M & Y Gourmet Grocers*, 239 AD2d 170 [1997] citing *Matter of Montgomery*, 272 NY 323, 326-327 [1936]; *see also Liddle & Robinson, LLP v Garrett*, 720 F. Supp. 2d 417, 425 (S.D.N.Y. 2010). In contrast to claims for breach of contract, courts have held that account stated claims may be brought by

651324/2017   SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW
Motion No.   007 008 010 011 012

Page 4 of 7

4 of 7

attorneys discharged without cause (*see Ferraioli ex rel. Suslak v Ferraioli,* 8 AD3d 163, 164 [2004]; *Zanani v Schvimmer,* 50 AD3d 445, 446 [2008]; *Bartning v Bartning,* 16 AD3d 249, 249–50 [2005]; *see also Banker v Esperanza Health Sys., Ltd.,* 2011 WL 838909 (S.D.N.Y. 2011), *report and recommendation adopted,* 2011 WL 867217 (S.D.N.Y. 2011) (whatever limitations there may be in New York to the ability of a lawyer discharged without cause to recover under breach of contract or other theories, they do not preclude a claim for account stated).

In this case, plaintiff's claim for damages arising from a breach of the terminated retainer agreement must necessarily fail, as the federal court has decided that plaintiff has already recovered fees in excess of what it would be entitled to on a theory of *quantum meruit.*  As such, plaintiff's cause of action sounding in breach of contract is dismissed.  However, the branch of the Lightbox defendants' motion which seeks to dismiss the cause of action for account stated is denied.

Additionally, the branch of the Lightbox defendants' motion which seeks to dismiss plaintiff's request for piercing of the corporate veil is likewise denied.  "'Veil piercing is a fact-laden claim' that is not well suited for resolution upon motion to dismiss (*Damianos Realty Group, LLC,* 35 AD3d 344 [2006], *quoting First Bank of Ams. v Motor Car Funding,* 257 AD2d 287, 294 [1999]).  Before dismissal can be granted, plaintiff is entitled to obtain necessary discovery to ascertain whether there are grounds to pierce the corporate veil (*see First Bank of Ams.,* 257 AD2d at 294).

The Court next addresses plaintiff's motion for partial summary judgment, the only branch of which remains is the one seeking summary judgment on its cause of action for account stated.  That motion is denied without prejudice as premature under CPLR 3212(a), as issue has not yet been joined in this case.

Both sides have requested sanctions against the other.  Plaintiff's motion for sanctions is based upon Mr. Ellner's alleged submission of an exhibit which contained a

**651324/2017   SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**                    **Page 5 of 7**
**Motion No.  007 008 010 011 012**

5 of 7

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 126 of 364

forged or false signature page to the retainer agreement. While Mr. Ellner's actions were questionable, they took place in the federal court, where the error was acknowledged, rectified, and addressed. Further, upon review of the matter, the federal court declined to issue sanctions. Under these circumstances this Court will also decline to issue sanctions at this time. Nevertheless, plaintiff's actions were not frivolous in that, although the issue of the allegedly forged signature page was addressed by the federal court, the issue was not fully briefed in that forum. As such, the Lightbox defendants' cross-motion for sanctions is denied.

Although the parties' motions for sanctions are denied, it is noted that the parties, in their conduct before the court, their communications with the Court, and in their general disregard for court rules, have exhibited unusually combative behavior, unbecoming of legal professionals. If their conduct in this action continues or worsens, all parties will expose themselves to the risk of incurring sanctions.

The Court next considers defendant Brem Moldovsky, LLC's motion to disqualify Jonathan Miller, Esq., as counsel for the Lightbox defendants. That motion is denied. As decided by Judge Cote's June 26, 2018 order, Mr. Moldovsky has failed to demonstrate that Mr. Miller's prior representation of Mr. Moldovsky and his wife "substantially relates" to Mr. Moldovsky's dispute with the Lightbox defendants (*see Lightning Park v Wise Lerman & Katz*, 197 AD2d 52, 55 [1994]; *see also Nomura Secs. Intl., Inc. v Hu*, 240 AD2d 249, 250 [1997]).

Lastly, the Lighbox defendants move to have Brem Moldovsky, LLC replead its answer. That motion is denied. Upon review, the contents of the answer meet basic pleading requirements, and if the Lightbox defendants have questions regarding ambiguities contained therein, they may seek amplification of the answer through a bill of particulars and/or other discovery.

**651324/2017   SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**                    **Page 6 of 7**
**Motion No.  007 008 010 011 012**

6 of 7

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 127 of 364

Accordingly, it is

ORDERED that the Lightbox defendants' motion to dismiss the complaint is granted to the extent that the first, third, fourth, and sixth causes of action are dismissed, and otherwise denied; and it is further

ORDERED that plaintiff's motion for partial summary judgment is denied in its entirety; and it is further

ORDERED that plaintiff's and the Lightbox defendants' motions for sanctions are both denied; and it is further

ORDERED that the Lightbox defendants' motion to have defendant Brem Moldovsky, LLC replead its answer is denied; and it is further

ORDERED that defendant Brem Moldovsky, LLC's motion to disqualify Jonathan Miller, Esq., as counsel is denied, and counsel are directed to appear for a status conference in Room 490, 111 Centre Street on August 14, 2019 at 2:15PM.

20190708123843ACANNATA47A7B30369DC2FEEBE83FDC3EE36BDBB

| **7/8/2019** | | | | **ANTHONY CANNATARO, J.S.C.** | |
|---|---|---|---|---|---|
| **DATE** | | | | | |

| **CHECK ONE:** | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| **APPLICATION:** | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**651324/2017   SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**                                    **Page 7 of 7**
**Motion No.  007 008 010 011 012**

7 of 7

# Exhibit "H"

Case 2:20-cv-06190-ER    Document 23-3    Filed 04/05/21    Page 129 of 364

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. ANTHONY CANNATARO** | **PART** | **IAS MOTION 41EFM** |
| | *Justice* | | |

-------------------------------------------------------------------X

SCAROLA MALONE & ZUBATOV LLP,

                  Plaintiff,

          - v -

ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, .LIGHTBOX VENTURES, LLC,BREM MOLDOVSKY, LLC

                  Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 651324/2017 |
| **MOTION DATE** | 09/04/2019, N/A |
| **MOTION SEQ. NO.** | 015 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 015) 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 485, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 515, 516, 517, 518, 519, 520, 521, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 560, 561, 562, 563, 564, 565, 566, 567

were read on this motion to/for                           **DISMISSAL**           .

      In this action for attorney's fees, defendants LightBox Capital Management, LLC, LightBox Ventures, LLC, and Andrew Ellner (all three together, the "LightBox defendants") now move to dismiss defendant Brem Moldovsky, LLC's cross-claims, pursuant to CPLR 3211. The underlying facts of this case were already delineated in this Court's earlier decision and order dated July 8, 2019.

      On a motion to dismiss pursuant to CPLR 3211 "the court must accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Sokol v Leader*, 74 AD3d 1180, 1181 [2010] [internal quotation marks omitted]; *see Nonnon v City of New York*, 9 NY3d 825, 827 [2007]; *Leon v Martinez*, 84 NY2d 83, 87–88 [1994]).

      CPLR 3211(a)(5) provides for dismissal of claims that are barred by reason of *res judicata* and/or collateral estoppel. *Res judicata* applies "where a judgment on the merits

exists from a prior action between the same parties involving the same subject matter" (*Matter of Hunter*, 4 NY3d 260, 269 [2005]). "Collateral estoppel is an equitable doctrine that is based on the notion that a party should not be permitted to relitigate an issue previously decided against it" (*Nat'l Union Fire Ins. Co. v Hartford Ins. Co.*, 248 AD2d 78, 82 [1998]) (internal citations omitted). "The party seeking to invoke the doctrine need only establish two requirements: (1) that the identical issue was necessarily decided in the prior action and is decisive in the present action; and (2) that the party to be precluded from relitigating an issue must have had a full and fair opportunity to contest the prior determination" (*Id.*).

In the underlying federal action, District Court Judge Cote issued a partial ruling awarding attorney's fees to the firms that represented the Lightbox defendants' in *Lightbox Ventures, LLC v 3rd Home Ltd., et al.*, No. 16-cv-2379 (S.D.N.Y.) (Cote, J.). With regard to Brem Moldovsky, LLC, she found:

> For the following reasons, $150,000 is a reasonable fee in quantum meruit for the Moldovsky Firm's representation of Lightbox. Lightbox has already paid the Moldovsky Firm $104,052; accordingly, the Moldovsky is entitled to a charging lien of $45,948.

> As stated above, the bench trial resulted in a net judgment of $83,338.19 in favor of Lightbox, plus fees. The initial retainer agreement between the Moldovsky Firm and Lightbox provided that the Moldovsky Firm would be paid 35% of Lightbox's recovery after trial, in addition to the $75,000 retainer. With this award of a charging lien, the Moldovsky Firm will be paid a total of $150,000, or $75,000 in addition to its retainer. That payment of another $75,000 is far in excess of 35% of the judgment of $83,338.19.

It is undisputed that the Moldovsky Firm's lien award has since been fully satisfied. As such, under the doctrines of *res judicata* and collateral estoppel, plaintiff's causes of

651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW    Page 2 of 5
Motion No. 015 016

2 of 5

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 131 of 364

action sounding in *quantum meruit* and unjust enrichment are dismissed as they have already been litigated and decided in the federal action.

As to defendant Brem Moldovsky, LLC's request for a preliminary injunction, the federal court already issued an injunction, which is still in effect. As such, that cause of action is dismissed. Brem Moldovsky, LLC's claim for promissory estoppel is also dismissed, as it is well settled that a claim for promissory estoppel will not lie where the alleged promise is simply a promise to fulfill one's contractual obligations (*Brown v Brown*, 12 AD3d 176 [2004]; *see also Hoeffner v Orrick*, 61 AD3d 614 [2009]; *Celle v Barclays Bank P.L.C.*, 48 AD3d 301 [2008]).

Brem Moldovsky, LLC's next cross-claim for fraudulent inducement alleges that Mr. Ellner overstated the strength of LBV's case and expert report, and that the firm detrimentally relied on those misrepresentations. It is well established that where a party has the means, by the exercise of reasonable or due diligence, to ascertain the truth or falsity of a material representation, he or she cannot claim justifiable reliance thereon (*Peach Parking Corp. v 346 West 40th Street*, LLC, 42 AD3d 82 [2007]); *Fishberger v Voss*, 51 AD3d 627 [2008]). Reasonable or "justifiable reliance" is a condition that cannot be met where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence and fails to make use of those means (*Arfa v Zamir*, 76 AD3d 56 [2010] *aff'd* 17 NY3d 737 [2011]); *Urstadt Biddle Properties, Inc. v Excelsior Realty Corp.*, 65 AD3d 1135 [2009]). As an attorney deciding whether to take the Lightbox defendants' case, Brem Moldovsky had the ability and the responsibility to do his own due diligence, and exercise ordinary intelligence in evaluating the relative merits of the Lightbox defendants' claims. As such, Brem Moldovsky, LLC's cause of action for fraudulent misrepresentation is dismissed.

As to plaintiff's claims for breach of contract and account stated, it is well settled that an attorney discharged without cause is limited to compensation measured by the

651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW
Motion No. 015 016

Page 3 of 5

3 of 5

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 132 of 364

fair and reasonable value of the services rendered whether that be more or less than the amount provided in a retainer agreement (*Sae Hwan Kim v M & Y Gourmet Grocers*, 239 AD2d 170 [1997] citing *Matter of Montgomery*, 272 NY 323, 326-327 [1936]); *see also Liddle & Robinson, LLP v Garrett*, 720 F. Supp. 2d 417, 425 (S.D.N.Y. 2010). In contrast to claims for breach of contract, courts have held that account stated claims may be brought by attorneys discharged without cause (*see Ferraioli ex rel. Suslak v Ferraioli*, 8 AD3d 163, 164 [2004]; *Zanani v Schvimmer*, 50 AD3d 445, 446 [2008]; *Bartning v Bartning*, 16 AD3d 249, 249–50 [2005]; *see also Banker v Esperanza Health Sys., Ltd.*, 2011 WL 838909 (S.D.N.Y. 2011), *report and recommendation adopted*, 2011 WL 867217 (S.D.N.Y. 2011) (whatever limitations there may be in New York to the ability of a lawyer discharged without cause to recover under breach of contract or other theories, they do not preclude a claim for account stated).

In this case, Brem Moldovsky, LLC's claim for damages arising from a breach of the terminated retainer agreement must necessarily fail, as the federal court has decided that plaintiff has already recovered fees in excess of what it would be entitled to on a theory of *quantum meruit*. As such, the first and sixth cross-claims sounding in breach of contract are dismissed. Additionally, Brem Moldovsky, LLC's fourth cross-claim for violation of the misrepresentation clause of the contract is also dismissed. As to the fifth cross-claim, which asserts violation of the retainer agreement's indemnification clause, plaintiff only included Brem Moldovsky, LLC as a defendant in the amended complaint because plaintiff alleged, and it has since become clear, that Brem Moldovsky, LLC contests the priority of plaintiff's alleged contractual lien. As such, that cross-claim is dismissed as well. However, the branch of the Lightbox defendants' motion which seeks to dismiss the cross-claim pertaining to the enforcement of the contractual lien is denied (*see Ferraioli ex rel. Suslak v Ferraioli*, 8 AD3d 163, 164 [2004]), as is the branch of the motion which seeks to dismiss the cross-claim for account stated.

651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW
Motion No. 015 016                                                                      Page 4 of 5

4 of 5

Lastly, the branch of the Lightbox defendants' motion which seeks to dismiss plaintiff's request for piercing of the corporate veil is also denied.  "'Veil piercing is a fact-laden claim' that is not well suited for resolution upon motion to dismiss (*Damianos Realty Group, LLC*, 35 AD3d 344 [2006], *quoting First Bank of Ams. v Motor Car Funding*, 257 AD2d 287, 294 [1999]).  Before dismissal can be granted, plaintiff is entitled to obtain necessary discovery to ascertain whether there are grounds to pierce the corporate veil (*see First Bank of Ams.*, 257 AD2d at 294).

Accordingly, it is

ORDERED that the Lightbox defendants' motion to dismiss the complaint is granted to the extent that the first, fourth, fifth, sixth, eighth, ninth, tenth, eleventh, and thirteenth causes of action are dismissed, and the motion is otherwise denied.

12/18/19
_____
DATE

ANTHONY CANNATARO, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW
Motion No. 015 016

Page 5 of 5

5 of 5

# Exhibit "I"

**SAMUEL C. STRETTON**
**ATTORNEY AT LAW**
**103 South High Street**
**P.O. Box 3231**
**West Chester, PA  19381-3231**

**610-696-4243**
**FAX 610-696-2919**

February 5, 2019

Brem Moldovsky, Esquire
Brem Moldovsky, L.L.C.
100 North 18th Street
Suite 300
Philadelphia, PA  19103

        Re: Lightbox Ventures, LLC v. Brem Moldovsky, LLC

Dear Mr. Moldovsky:

        You have retained my services to provide you an ethics
opinion. You have asked me to opine upon the conduct of Attorney
Jonathan Miller representing Lightbox Ventures, L.L.C. and Andy
Ellner against Brem Moldovsky and Brem Moldovsky, L.L.C.

        My background for providing this opinion is as follows. I
have been practicing law in Pennsylvania since I was admitted in
1973. I graduated from the Dickinson School of Law. I currently
have a very broad trial and appellate experience. I have tried
hundreds of cases to jury verdict in both civil and criminal
matters. I have also argued hundreds of appeals in all of the
Pennsylvania appellate courts. I also served as Assistant
Disciplinary Counsel for the Supreme Court of Pennsylvania from
1977 to January of 1980. Since then, in private practice, I have
represented hundreds of attorneys in attorney disciplinary
matters, and many judges in judicial disciplinary matters. I
also speak and write regularly on the subject of legal and
judicial ethics, and have qualified as an expert in many legal
malpractice cases and on the issue of attorney ethics.

        It is my opinion with reasonable legal certainty that
Attorney Jonathan Miller, your former private lawyer, cannot
represent Lightbox Ventures, L.L.C. and Andy Ellner against you,
and to do so would be conflict of interest under Pennsylvania

Brem Moldovsky, Esquire
February 5, 2019
Page Two

Rules of Professional Conduct 1.7 and 1.9, and a violation of
the rule of confidentiality, 1.6, and attorney/client privilege.
Attorney Miller's representation against you would also violate
the common law and fiduciary duties that attorneys owe to their
clients, and the common law attorney/client privilege.

     As I understand this situation, Brem Moldovsky, Esquire
represented Lightbox Ventures and Andrew Ellner in a federal
court matter. Mr. Ellner and Lightbox Ventures then retained
Attorney Jonathan Miller to work on a related New York State
matter and assist as counsel on the federal case. Mr. Moldovsky
had recommended Mr. Miller. Attorney Jonathan Miller, as I
understand it, also represented Attorney Brem Moldovsky and his
wife in a Pennsylvania matter in Bucks County, and was co-
counsel in the matter with Brem Moldovsky, Esquire. The
representation began sometime in the Fall of 2015 and continued
until the Fall of 2016.

     There were two litigations in which Jonathan Miller acted
as counsel for Brem Moldovsky and Melanie Moldovsky. Also, he
worked as co-counsel to Brem Moldovsky and Brem Moldovsky,
L.L.C. During the representation, there were many confidential
discussions, and correspondence, and much sharing with Mr.
Miller of private, confidential, sensitive, familiar, financial,
and business information. Plus, guidance was given.

     I also understand Mr. Miller acted as a contact with other
persons in both litigations while drafting pleadings and
discussing strategy, etc., in the original litigation. Attorney
Jonathan Miller was properly retained and paid in full for his
legal services.

     As a result of Attorney Jonathan Miller's representation of
Brem and Melanie Moldovsky, Mr. Miller became privy to
confidential and sensitive personal and business financial
information. Attorney Miller also became aware of the economics
of the law office. All of this sensitive and confidential
information was shared and discussed in confidence in the
attorney/client privilege with Attorney Miller in those matters.

Brem Moldovsky, Esquire
February 5, 2019
Page Three

Attorney Miller thus is fully aware of the financial status
and savings of the Moldovsky's, including his children. The
information was confidential, sensitive and very private.

In addition to representing the Moldovsky's, Mr. Moldovsky
consulted with Attorney Miller about Mr. Moldovsky's
representation of the clients, Lightbox Ventures, L.L.C. Mr.
Moldovsky raised concerns with Attorney Miller, including key
terms of the client agreement, fees and financial issues.
Attorney Miller, through Mr. Moldovsky and with him, provided
guidance to Lightbox and Mr. Ellner in terms of settlement
issues and representation issues. Attorney Miller became fully
aware of many details about the financial status, limitations,
sensitive concerns, and savings of the Moldovskys, personal and
business related. He also became fully aware of private and
sensitive information about their family and their children.

Through Mr. Moldovsky's referral and introduction, Mr.
Ellner hired Mr. Miller to represent Lightbox and Mr. Ellner in
a state court proceeding filed against them for payment of
counsel fees.  As the Lightbox litigation continued, Mr.
Moldovsky petitioned to withdraw as counsel. Mr. Moldovsky,
unfortunately, took an adverse position with his former clients,
Mr. Ellner and Lightbox Ventures, L.L.C.

Attorney Miller then took on the representation of Mr.
Ellner and Lightbox Ventures, L.L.C. against Mr. Moldovsky
Moldovsky, L.L.C. The litigation involved legal fees that were
due. Attorney Miller did this despite knowing highly
confidential information involving Mr. Moldovsky.

Mr. Moldovsky sought to have Attorney Miller disqualified
from the adverse representation. This request was denied
initially.

It is my opinion, with reasonable, legal and ethical
certainty that Attorney Miller cannot continue to represent
Lightbox Ventures, L.L.C. or Andrew Ellner against Mr. Moldovsky
and Moldovsky, L.L.C. It is so clear and obvious that there is a
conflict, and more importantly, he has confidential information.
Attorney Miller is now involved in litigation against Brem
Moldovsky and Brem Moldovsky, L.L.C., his former client, and has

Brem Moldovsky, Esquire
February 5, 2019
Page Four

the benefit of knowing all of that personal and confidential
information. This has been going on since approximately May of
2018. Accordingly, Mr. Ellner and Lightbox Ventures have had the
wrongful, unfair benefit of having Brem Moldovsky's prior
counsel with all the confidential and sensitive information in
an adversarial proceeding employed and utilized wrongfully to
their benefit and Brem Moldovsky's detriment.

Rule 1.6 of the Rules of Professional Conduct sets forth a
very broad confidentiality rule. Mr. Miller has the benefit of
confidential information, which fits squarely within Rule 1.6.

Rules 1.7 and 1.9 of the Pennsylvania Rules of Professional
Conduct preclude representation adverse to a former client,
particularly where there was confidential information, which can
be used against the former client. In this case, there clearly
was confidential information provided by Mr. and Mrs. Moldovsky
to Attorney Miller. There is no consent and no waiver.

Although I have cited the Rules of Professional Conduct in
Pennsylvania, these rules reflect also not only just regulatory
rules, but the common law and fiduciary standards in
Pennsylvania and in the federal courts. These standards are very
clear. A lawyer cannot represent a prior client if the
representation would be adverse to the client and/or one would
have confidential information from the prior representation,
which could be used against the former client.

As a result, Attorney Jonathan Miller should be
disqualified forthwith. The conflict is so egregious, it could
well result in disciplinary action being brought if the matter
was brought to the attention of the Office of Disciplinary
Counsel.

I have looked at some of the comments of Attorney Miller to
Mr. Moldovsky. Attorney Miller's lack of civility and inability
to understand this very basic conflict of interest issue and
confidentiality requirement is surprising.

Brem Moldovsky, Esquire
February 5, 2019
Page Five


        Please let me know if more information is needed.

                              Very truly yours,


                              Samuel C. Stretton

SCS:jac
Enc.

VIA EMAIL (brem@bremlaw.com)

**SAMUEL C. STRETTON**
**ATTORNEY AT LAW**
**103 South High Street**
**P.O. Box 3231**
**West Chester, PA  19381-3231**

610-696-4243
**FAX 610-696-2919**

July 24, 2019

Brem Moldovsky, Esquire
100 North 18th Street
Suite 300
Philadelphia, PA  19103

Re:  Lightbox Ventures, LLC v. Brem Moldovsky, LLP

Dear Mr. Moldovsky:

You had requested I supplement my February 5, 2019 letter.
In that letter, as you know, I raised the issue of conflict of
interest of Attorney Jonathan Miller due to his representation
of you and your wife and your law firm. I was particularly
concerned about the confidentiality issues, which could be used
against you.

I further have an opinion with reasonable, ethical and
legal certainty that the representation by Mr. Miller against
you and your firm directly and indirectly contributed and was
the proximate cause of your damages. Sufficient time and effort
was spent by you and your law firm in having to respond to
Attorney Miller's litigation and efforts to disqualify him to
protect the confidentiality based on his prior representation of
you. All additional expenses and loss of time and fees was
directly caused by Mr. Miller's conflict of interest, personal
knowledge and apparent desire to hurt you as his prior client.

I incorporate my earlier report.

Mr. Miller's breach of his common law and fiduciary
obligations to you, your firm and your wife, and his breach of
confidentiality was set forth in the summary of the Rules of
Professional Conduct in my letter dated the February 5, 2019 and
his conduct was egregious. The conduct breaches his duty and
trust to Attorney Moldovsky, his firm and his wife. By that
breach, the duty of trust and confidentiality resulted in

Brem Moldovsky, Esquire
July 24, 2019
Page Two

damages flowing from the breach, including the time and effort
of Mr. Moldovsky's firm in defending this case, emotional and
mental distress, and any loss of income and business.

Mr. Miller's breach of his duty to Mr. Moldovsky, his firm
and his wife, clearly resulted in damages directly flowing from
that breach.

Mr. Miller's prior representation and knowledge of
confidential information and of Mr. Moldovsky's law practice and
procedures and his financial situation regarding his family gave
Mr. Miller an unfair advantage in the litigation.

From a review of the matters, it appears that Attorney
Miller has continued to misuse confidential information and has
not been truthful about the degree and extent of his prior
representation of Mr. Moldovsky, his wife and his law practice.

In reviewing the Amended Complaint of Mr. Moldovsky, it
appears Mr. Miller's conflict of interest and breach of
confidentiality rises to the level of a violation of a serious
breach of his fiduciary duty to his former client. This breach
forms the basis for this legal malpractice claim and the damages
that flow from the breach. Mr. Miller's misconduct is the
proximate cause of the damages sustained by Mr. Moldovsky, his
firm and his family in that complaint.

It is first surprising that Mr. Miller is continuing his
representation against his former client, Mr. Moldovsky. Mr.
Miller's accusations are directly contrary to his obligation to
his former clients. His conduct is such that any damages that
flow from that would be caused by his conflict of interest and
breach of his fiduciary duties and duties of confidentiality.

Mr. Miller's conduct is egregious and is not acceptable and
has caused Mr. Moldovsky, his wife and his firm substantial
damages.

It is my professional opinion with reasonable legal and
ethical certainty that Mr. Miller's conduct deviated
substantially from the acceptable professional standard and
fiduciary duties of an attorney. Mr Miller's conduct was the

Brem Moldovsky, Esquire
July 24, 2019
Page Three


direct and proximate cause in bringing harm to Mr. Moldovsky and
his firm and his family.

All opinions set forth in this supplemental letter are to a
reasonable degree of legal and ethical certainty.

Very truly yours,

Samuel C. Stretton

SCS:jac

VIA EMAIL (brem@bremlaw.com)

# Exhibit "J"

Case# 2019-00793-10 - - JUDGE:35 Received at County of Bucks Prothonotary on 04/11/2019 11:29 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Gerald J. Pomerantz, Esquire (Attorney ID 3636)
THE COVENTRY HOUSE
7301 Coventry Ave,  SUITE 501
Elkins Park, PA 19027
Attorney for the Plaintiffs

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
### CIVIL DIVISION

BREM MOLDOVSKY, L.L.C. ;

BREM MOLDOVSKY, L.L.C.;

               *Plaintiffs,*

   vs.

JONATHAN MILLER, ESQUIRE, D/B/A/
THE LAW FIRM OF JONATHAN R. MILLER

ANDREW ELLNER:

LIGHTBOX VENTURES, LLC
UNITED STATES CORPORATION AGENTS,
INC.; and

LIGHTBOX CAPITAL MANAGEMENT, LLC
               *Defendants.*

Case No: 2019-00793

TRIAL BY JURY OF 12 DEMANDED

## ENTRY OF APPEARANCE

TO THE CLERK OF THE SAID COURT:

Kindly enter my appearance on behalf of Plaintiffs Brem Moldovsky. and Brem Moldovsky, L.L.C. with respect to the above-captioned matter.

Dated: March 28, 2019

                              Gerald J. Pomerantz, Esquire
                              Attorney for Plaintiffs

# Exhibit "K"

Case# 2019-00793-27 - JUDGE:35 Received at County of Bucks Prothonotary on 05/17/2019 8:35 PM Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

verizon✓

Billing period Oct 22, 2017 to Nov 21, 2017

**Brem Moldovsky**

610.608.4716 | LG V20

Talk activity - continued

Case# 2019-00793-27 - JUDGE:35 Received at County of Bucks Prothonotary on 05/17/2019 8:35 PM Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case 2:19-cv-01670-JHS    Document 23-3    Filed 04/19/21    Page 147 of 364

# verizon✓

Billing period Oct 22, 2017 to Nov 21, 2017

## Brem Moldovsky

610.608.4716 | LG V20

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|
| Nov 14 | 9:47 PM | 516.769.0900 | Hauppauge, PA | Wheeling, NY | 2 | – | – | – |
| | 9:51 PM | 516.769.0900 | Drums, PA | Incoming, CL | 204 | – | – | – |
| | 9:55 PM | 516.769.0900 | Quakertown, PA | Incoming, CL | 385 | – | – | – |

Case# 2019-00793-27 - JUDGE:35 Received at County of Bucks Prothonotary on 05/17/2019 8:35 PM Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case 2:20-cv-00080-JDW Document 73-3 Filed 04/05/22 Page 4 of 4

# verizon✓

## Brem Moldovsky
610.608.4716 | LG V20

### Talk activity - continued

Billing period Oct 22, 2017 to Nov 21, 2017

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|----------------------|-------|
| Nov '20 | | | | | | | | |
| Nov 16 | 6:57 PM | 648.720.0986 | New York, NY | Val Deposit, CI | | | | |
| Nov '20 | 6:45 PM | 648.720.0986 | Lower Make, PA | Incom'rk CI | | | | |

13

# verizon√

**Billing period Nov 22, 2017 to Dec 21, 2017 |**

# Brem Moldovsky

610.608.4716 | LG V20

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|
| Dec 7 | 12:33 PM | 646.784.9388 | New York, NY | VM Deposit, CL | 2 | | | |
| Dec 7 | 12:36 PM | 516.768.8848 | New York, NY | VM Deposit CT | 15 | | | |
| Dec 7 | 12:45 PM | 516.768.8848 | New York, NY | Incoming, CL | 65 | | | |
| Dec 7 | 1:55 PM | 516.768.8848 | New York, NY | VM Deposit, CL | 1 | 3 | | |

**10**

Case# 2019-00793-27 - JUDGE:35 Received at County of Bucks Prothonotary on 05/17/2019 8:35 PM Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case 2:19-cv-00290-PBT Document 23-3 Filed 04/08/21 Page 150 of 364



**verizon**✓

**Brem Moldovsky**

610.608.4716 | LG V20

Billing period Jan 22, 2018 to Feb 21, 2018 |

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|-----------------------|-------|

8

Case# 2019-00793-27 - JUDGE:35 Received at County of Bucks Prothonotary on 05/17/2019 8:35 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case 2:18-cv-00928-CB Document 29-3 Filed 04/05/21 Page 51 of 82

verizon⁄

**Brem Moldovsky**

610.608.4716 | LG V20

Billing period Jan 22, 2018 to Feb 21, 2018 |

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|----------------------|-------|

9

Case# 2019-00793-27 - JUDGE:35 Received at County of Bucks Prothonotary on 05/17/2019 8:35 PM Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



verizon✓

Billing period Jan 22, 2018 to Feb 21, 2018

# Brem Moldovsky

610.608.4716 | LG V20

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|----------------------|-------|
| Feb 8 | 2:59 PM | 516.729.0508 | New York, NY | VM Deposit, CL | 2 | | | |

10

Case# 2019-00793-27 - JUDGE:35 Received at County of Bucks Prothonotary on 05/17/2019 8:35 PM Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# verizon✓

**Brem Moldovsky**

610.608.4716 | LG V20

Billing period Jan 22, 2018 to Feb 21, 2018

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------------|-------|
| Feb 21 | 8:31 AM | 516.729.9398 | Newtown, PA | VM Deposit,CL | (1):41 | | | |
| Feb 21 | 11:22 AM | 516.729.9398 | Buckingham, PA | Mineola, NY | 1 | | | |
| Feb 21 | 11:26 AM | 516.729.9398 | Buckingham, PA | Incoming, CL | 28 | | | |

12

Case# 2019-00793-27 - JUDGE:35 Received at County of Bucks Prothonotary on 05/17/2019 8:35 PM Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case 2:20-cv-00820-JP Document 33-3 Filed 04/05/21 Page 155 of 364

verizon✓  Billing period Mar 22, 2018 to Apr 21, 2018

# Brem Moldovsky

610.608.4716 | LG V20

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|-----------------------|-------|
| Mar 30 | 9:27 PM | 678.725.5838 | Lower Makfox, PA | Incoming, CL | 61 | -- , | : | : |

10

# Exhibit "L"

Case# 2019-00793-128 - JUDGE.27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1

1      IN THE COURT OF COMMON PLEAS
          BUCKS COUNTY, PENNSYLVANIA
2            CIVIL ACTION - LAW

3                 * * *

4
   BREM MOLDOVSKY, LLC    : No. 2019-00793
5   and BREM MOLDOVSKY    :
                          :
6        vs.              :
                          :
7   LAW FIRM OF           :
   JONATHAN R. MILLER;    :
8   ANDREW ELLNER;        :
   LIGHTBOX CAPITAL       :
9   MANAGEMENT, LLC;      :
   and LIGHTBOX           :
10  VENTURES, LLC         :

11

12              * * *
    BEFORE:  THE HONORABLE ROBERT O. BALDI, J.
13              * * *

14
            August 20, 2019
15       Doylestown, Pennsylvania

16              * * *
17         (Oral Argument)
                * * *
18

19  APPEARANCES:

20  BREM MOLDOVOSKY, ESQUIRE
    Appearing Pro Se
21
    EMMA KLINE, ESQUIRE
22  ADAM SILVERSTEIN, ESQUIRE
    Counsel for Ellner and the Lightbox Defendants
23
    JONATHAN R. MILLER, ESQUIRE
24  Appearing Pro Se
                * * *
25         Beth A. Barkocy, CCR
           Official Court Reporter

Case# 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

19

1    information about other cases other

2    than this particular case for me to

3    issue a blanket order, an injunction of

4    sorts against an attorney against

5    representing a specific client in other

6    litigation.  It borders on absurd.

7            Furthermore, I'm assuming that

8    the defendant Ellner -- is there any

9    question but that the defendant Ellner

10   and Lightbox wish or desire to continue

11   with the representation of Mr. Miller?

12           MS. KLINE:  Your Honor, myself

13   and Fox Rothschild are the only

14   attorneys who have represented

15   Mr. Ellner and the Lightbox entities in

16   Pennsylvania for the entirety of this

17   litigation.  We entered our appearance

18   in April.  All of the pleadings on

19   behalf of my clients, Mr. Ellner and

20   Lightbox, have been filed with my name

21   on them, with Fox Rothschild

22   letterhead, et cetera, et cetera.

23           THE COURT:  So then let me ask

24   you this -- Counsel, you may remain

25   standing -- it's your contention that I

Case# 2019-00793-128 - JUDGE.27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

20

```
1    should be ordering Mr. Miller to not
2    represent Andrew Ellner in this case?
3    Because I'm hearing he is not
4    representing him in this case.
5              MR. MOLDOVSKY:  Your Honor,
6    would you prefer me to stand?
7              THE COURT:  I don't care,
8    whichever you want to do.
9              MR. MOLDOVSKY:  He should not
10   in this case whether it's behind the
11   scenes, because that is what's
12   happening and that's how the lawyers,
13   including when I worked for Mr. Ellner,
14   we would work on matters --
15             THE STENOGRAPHER:  Sir, I
16   can't understand what you're --
17             THE COURT:  Try to answer my
18   question directly.
19             MR. MOLDOVSKY:  Yes.
20             THE COURT:  What is the nature
21   of the order I would issue in this
22   case?
23             MR. MOLDOVSKY:  Not allowing
24   him to -- certainly including not
25   allowing him to represent those parties
```

Case# 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

21

1     against me in this case or in front of

2     the Pennsylvania disciplinary board,

3     which he's done, or in any Pennsylvania

4     forum or wherever you see -- as broadly

5     as you see appropriate, but certainly

6     for this case or any other Pennsylvania

7     forum.

8           THE COURT:  I'm being told

9     right now, and you are not contending

10    otherwise, that -- and for purposes of

11    this litigation, Mr. Ellner and

12    Lightbox are represented by an

13    independent law firm separate and apart

14    from Mr. Miller.  You agree with that,

15    right?

16          MR. MOLDOVSKY:  As well as him

17    behind the scenes, yes.

18          THE COURT:  Hold it.  I can

19    talk -- if I'm a lawyer, I can talk to

20    any other lawyer I want and ask them

21    for counsel, advice, et cetera.  If you

22    have some issue about him disclosing

23    something, something that he has

24    breached some duty, that is a different

25    point, but in terms of the

Case# 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

59

1          MS. KLINE:  As I indicated

2     before, this matter was initiated by

3     writ of summons, a complaint was

4     originally filed, we asserted on behalf

5     of Mr. Ellner and the Lightbox entities

6     preliminary objections, and two of the

7     most important preliminary objections

8     we're raising are that this Court,

9     respectfully, doesn't have personal

10    jurisdiction over Mr. Ellner and the

11    Lightbox entities, and then also for

12    improper venue.

13         THE COURT:  Quite frankly, I

14    thought we were going to discuss it

15    today, but I can't get to it this

16    morning, and you want oral argument on

17    it?

18         MS. KLINE:  Yes.  Since that

19    time, Mr. Moldovsky has filed a first

20    amended complaint without any real

21    substantive changes, in our opinion.

22    We asserted essentially the same

23    preliminary objections, and now we are

24    on the second amended complaint and,

25    again, it has no substantive changes,

Case# 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

60

1    at least with respect to my clients,

2    Mr. --

3         THE COURT:  But you haven't

4    filed formal preliminary objections to

5    the second amended complaint yet?

6         MS. KLINE:  We will be.

7         THE COURT:  But you haven't.

8    That's why I haven't ruled on that,

9    because I happened to notice that.

10        I'll issue an order that the

11   first preliminary objections are now

12   moot because he has filed an amended

13   complaint.  You can proceed with the

14   preliminary objections to the second

15   amended complaint through the local

16   practice of praeciping the matter

17   forward.

18        MS. KLINE:  Sure, so what I

19   wanted to discuss, hopefully, was the

20   issue that I think we'll obviously need

21   some discovery with respect to the

22   issue of personal jurisdiction.

23        THE COURT:  You do.

24        MS. KLINE:  I don't think it

25   will be much discovery, but my concern

Case# 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of
the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

111

1       discovery deadlines, production of

2       expert reports, et cetera.

3              If you're seriously going to

4       pursue a malpractice action and you're

5       really serious about this and you want

6       to do this litigation, then I want to

7       put a leash on it because without a

8       leash, you're going to just -- you are

9       going to go use judicial resources in

10      an abusive way, so I'm telling you, go

11      online.  There are case management

12      orders that you can enter into by

13      agreement.  Give serious consideration

14      into entering into an agreed upon case

15      management order.  It's not something

16      that I'll necessarily deal with this

17      month or next month, but be aware of

18      that.

19             I, at some point, would expect

20      there is going to be a summary judgment

21      motion to figure out whether there

22      really is a malpractice claim.  I would

23      welcome that, frankly, because you may

24      have pled things that could go to a

25      jury under a different theory, but I

Case# 2019-00793-128 - JUDGE.27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

113

**CERTIFICATION**

1
2
3
4         I hereby certify that the proceedings,
5    evidence, and rulings are contained fully and
6    accurately in the notes taken by me in the
7    matter of the above cause and that this copy is
8    a correct transcript of same.
9
10
11    _____
12    Beth A. Barkocy, CCR
      Official Court Reporter
13
14
15    Date: _____
16
17         The foregoing transcript of the
18    proceedings before me is hereby approved and
19    certified.
20
21    _____
22    THE HONORABLE ROBERT O. BALDI, J.
23
24    Dated: _____
25

# Exhibit "M"

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

COURT OF COMMON PLEAS OF
BUCKS COUNTY, PENNSYLVANIA

| | |
|---|---|
| BREM MOLDOVSKY, LLC and<br>BREM MOLDOVSKY, | :<br>:<br>: |
| Plaintiffs, | :<br>:<br>: |
| v. | : NO:  2019-00793<br>: CIVIL ACTION - LAW<br>: |
| ANDREW ELLNER, LIGHTBOX CAPITAL<br>MANAGEMENT LLC, LIGHTBOX<br>VENTURES LLC, and JONATHAN MILLER,<br>ESQUIRE | :<br>:<br>:<br>: |
| Defendants. | :<br>: |

## ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of the

Preliminary Objections of Defendants Andrew Ellner, Lightbox Capital Management LLC, and

Lightbox Ventures LLC ("Lightbox"), and any response thereto, it is hereby ORDERED that the

Preliminary Objections for lack of personal jurisdiction are SUSTAINED.

Plaintiffs' Second Amended Complaint against Lightbox is hereby DISMISSED WITH

PREJUDICE.

BY THE COURT:

_____
                                                    J.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

COURT OF COMMON PLEAS OF
BUCKS COUNTY, PENNSYLVANIA

| | |
|---|---|
| BREM MOLDOVSKY, LLC and BREM MOLDOVSKY, | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : NO: 2019-00793 |
| v. | : CIVIL ACTION - LAW |
| | : |
| ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, LIGHTBOX VENTURES LLC, and JONATHAN MILLER, ESQUIRE | : |
| | : |
| | : |
| Defendants. | : |

## ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of the

Preliminary Objections of Defendants Andrew Ellner, Lightbox Capital Management LLC, and

Lightbox Ventures LLC ("Lightbox"), and any response thereto, it is hereby ORDERED that the

Preliminary Objection in the form of a Motion to Transfer Venue is SUSTAINED.

Plaintiffs' Second Amended Complaint against Lightbox is hereby DISMISSED WITH

PREJUDICE.

BY THE COURT:

_____
                                                J.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

COURT OF COMMON PLEAS OF
BUCKS COUNTY, PENNSYLVANIA

BREM MOLDOVSKY, LLC and   :
BREM MOLDOVSKY,   :
  :
  :
      Plaintiffs,   :
  :  NO: 2019-00793
      v.   :  CIVIL ACTION - LAW
  :
ANDREW ELLNER, LIGHTBOX CAPITAL   :
MANAGEMENT, LLC, LIGHTBOX   :
VENTURES LLC, and JONATHAN MILLER,   :
ESQUIRE   :
  :
      Defendants.   :
  :

## ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of the Preliminary Objections of Defendants Andrew Ellner, Lightbox Capital Management LLC, and Lightbox Ventures LLC ("Lightbox"), and any response thereto, it is hereby ORDERED that the Preliminary Objection for failure to state a claim against Lightbox is SUSTAINED.

Plaintiffs' Second Amended Complaint against Lightbox is hereby DISMISSED WITH PREJUDICE.

BY THE COURT:

_____
                    J.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

COURT OF COMMON PLEAS OF
BUCKS COUNTY, PENNSYLVANIA

| | |
|---|---|
| BREM MOLDOVSKY, LLC and BREM MOLDOVSKY, | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : NO: 2019-00793 |
| v. | : CIVIL ACTION - LAW |
| | : |
| ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, LIGHTBOX VENTURES LLC, and JONATHAN MILLER, ESQUIRE | : |
| | : |
| | : |
| | : |
| Defendants. | : |

## ORDER

AND NOW, this _____ day of _____, 2019, upon consideration of the Preliminary Objections of Defendants Andrew Ellner, Lightbox Capital Management LLC, and Lightbox Ventures LLC ("Lightbox"), and any response thereto, it is hereby ORDERED that the Preliminary Objection in the Form of a Motion to Require Greater Specificity is SUSTAINED.

Plaintiffs' Second Amended Complaint is dismissed without prejudice, and Plaintiffs' may file a Second Amended Complaint within 20-days of the date of this Order.

BY THE COURT:

_____
J.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**NOTICE TO PLEAD**

**TO:   Plaintiffs.** You are hereby notified to file a written response to the enclosed Preliminary Objections within twenty (20) days of service hereof or a judgment may be entered against you.

*/s/ Emma M. Kline*
Emma M. Kline, Esquire

**FOX ROTHSCHILD LLP**
**BY:** EMMA M. KLINE, ESQUIRE
Attorney I.D. No: 314027
2700 Kelly Road, Suite 300
Warrington, PA 18976
ekline@foxrothschild.com
Telephone: (215) 345-7500
Fax: (215) 345-7507

*Attorneys for Defendants, Andrew Ellner, Lightbox Capital Management, LLC, & Lightbox Ventures, LLC*

| | | |
|---|---|---|
| BREM MOLDOVSKY, LLC and BREM MOLDOVSKY, | : | COURT OF COMMON PLEAS BUCKS COUNTY, PENNSYLVANIA |
| | : | |
| Plaintiffs, | : | |
| | : | NO: 2019-00793 |
| v. | : | CIVIL ACTION - LAW |
| | : | |
| ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, LIGHTBOX VENTURES LLC, and JONATHAN MILLER, ESQUIRE | : | |
| | : | |
| Defendants. | : | |

**PRELIMINARY OBJECTIONS OF DEFENDANTS[1] ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT LLC AND LIGHTBOX VENTURES LLC TO PLAINTIFFS' SECOND AMENDED COMPLAINT**

Defendants, Andrew Ellner ("Ellner"), Lightbox Capital Management LLC ("LCM"),

and Lightbox Ventures, LLC ("LV") (Ellner, LCM, and LV are collectively "Lightbox"), by and

---

[1] Lightbox further incorporates by reference the Preliminary Objections to the Second Amended Complaint of Jonathan Miller, Esquire.

Case# 2019-00793-105 - JUDGE27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

through their attorneys Fox Rothschild LLP, respectfully submit these Preliminary Objections to Plaintiffs' Second Amended Complaint.

## I.      **FACTUAL AND PROCEDURAL BACKGROUND**

1.      From March 2017 through May 2018, Plaintiffs represented Lightbox in the Southern District of New York (Lightbox Ventures LLC v. 3rd Home, No. 16-cv-2379) (the "New York Federal Matter").

2.      During Plaintiffs' representation of Lightbox in the New York Federal Matter, Plaintiffs introduced co-Defendant Jonathan Miller, Esquire ("Miller") to Lightbox.  Thereafter, Miller, with Plaintiffs' consent and with their approval, entered his appearance for Lightbox in New York state court (Scarola Malone & Zubatov, LLP v. Ellner et al., No. 651326/2017 (N.Y. Sup. Ct., N.Y. County) (the "New York State Matter").

3.      Miller and Plaintiffs coordinated their simultaneous representations of Lightbox in New York.  However, while the New York Federal and State Matters were pending, Plaintiffs withdrew from representing Lightbox in the New York Federal Matter, and Miller substituted his appearance to represent Lightbox.

4.      Since withdrawing as counsel, Plaintiffs sued Lightbox in New York for purportedly unpaid legal fees, with Miller defending Lightbox in that matter as well.  Miller is presently Lightbox's only counsel in the ongoing New York lawsuits.

5.      Plaintiffs continued their legal tirade against Lightbox here, where they have sued both Lightbox and Miller for claims sounding in legal malpractice, based on: (1) Miller's prior representation of Plaintiff Brem Moldovsky (and Plaintiff Brem Moldovsky LLC, although Miller never represented the entity) in a since-terminated Bucks County Court of Common Pleas

2

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

action (the "Bucks County Action"); (2) his continued representation of Lightbox in New York; and (3) the ill-founded belief that he represents Lightbox in Pennsylvania.

6.      Plaintiffs maintain that Lightbox has "conspired" and "aided and abetted" Miller's breach of fiduciary duty by continuing to retain Miller in New York and in Pennsylvania[2], because Miller previously represented Plaintiffs in Bucks County, Pennsylvania in two matters entirely unrelated to this litigation.

7.      Critically, Plaintiffs filed in this Court a Motion to Disqualify Miller from representing Lightbox in this or any other matter on April 2, 2019, which the Honorable Robert O. Baldi denied on August 28, 2019 following oral argument. The August 28, 2019 Order is attached as Exhibit "A".

8.      This Court denied Plaintiffs' Motion to Disqualify Miller from representing Lightbox after Judge Denise Cote in the United States District Court for the Southern District of New York and Judge Anthony Cannataro of the New York Supreme Court for New York County denied identical motions to disqualify Miller filed by Plaintiffs in the New York State and Federal Matters. Judge Cote's Order is attached as Exhibit "B", and Judge Cannataro's Order is attached as Exhibit "C".

9.      Along with the legal malpractice claims, Plaintiffs also assert a claim against Miller and Lightbox for violation of the Pennsylvania Wiretap Statute, based on phone calls Lightbox and Plaintiffs had while Plaintiffs represented Lightbox, and which Lightbox recorded while in New York.

10.     Plaintiffs initiated this action with a Writ of Summons in February 2019.

---

[2] Even though, as has been repeatedly asserted in this litigation, Miller does not represent Lightbox in Pennsylvania; Fox Rothschild LLP represents Lightbox in Pennsylvania.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

11.     Plaintiffs also served Lightbox and Miller with Pre-Complaint Discovery, without demonstrating any good faith of probable cause "that the information sought [was] both material and necessary to the filing of a complaint in a pending action." McNeil v. Jordan, 894 A.2d 1260, 1278 (Pa. 2006).

12.     Plaintiffs' need for pre-complaint discovery was ultimately belied by their filing of a 240-paragraph, 13-count complaint on May 28, 2019 (the "Original Complaint"), after Lightbox and Miller each filed a Praecipe for Rule to File a Complaint, and before even receiving any pre-complaint discovery.

13.     Plaintiffs asserted the following claims against Lightbox in their Original Complaint: 1) "Permanent and Temporary Injunction Against All Defendants" (Count I); 2) "Aiding and Abetting Malpractice Against [Lightbox]" (Count VIII); 4) "Violation of PA Wiretap Act Against All Defendants" (Count X); and 5) "General Equity Against All Defendants" (Count XIII).

14.     On June 17, 2019, Lightbox filed Preliminary Objections to the Original Complaint.

15.     In their Preliminary Objections, Lightbox argued that the Original Complaint was most critically deficient because this Court does not have personal jurisdiction over Lightbox.

16.     Lightbox further argued that the Bucks County Court of Common Pleas, let alone any court in this Commonwealth, is not the proper venue for this action, which is based entirely on activity that occurred in New York.

17.     Finally, aside from its jurisdictional flaws, the Original Complaint failed to state any cognizable claim against Lightbox for which relief may be granted.

4

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

18.     In response to Lightbox's Preliminary Objections, Plaintiffs filed their First Amended Complaint on July 8, 2019.

19.     The First Amended Complaint was nearly identical to the Original Complaint, and contained all of the same causes of action against Lightbox:  1) "Permanent and Temporary Injunction Against All Defendants" (Count I); 2) "Aiding and Abetting Malpractice Against [Lightbox]" (Count VIII); 4) "Violation of PA Wiretap Act Against All Defendants" (Count X); and 5) "General Equity Against All Defendants" (Count XIII).

20.     Plaintiffs made no meaningful changes from the Original Complaint to the First Amended Complaint.  Rather, the First Amended Complaint contained only stylistic changes and did not cure any of the defects previously identified by Lightbox.

21.     Lightbox therefore filed Preliminary Objections to the First Amended Complaint, again challenging personal jurisdiction, venue, and Plaintiffs' failure to state any claim for which relief may be granted.

22.     In response to Lightbox's Preliminary Objections to the First Amended Complaint, Plaintiffs filed a Second Amended Complaint on August 15, 2019.  A copy of the Second Amended Complaint is attached as Exhibit "D".

23.     The Second Amended Complaint is 290 paragraphs, and now asserts *sixteen* purported causes of action against Defendants.

24.     With specific regard to Lightbox, Plaintiff asserts causes of action for the following: Permanent and Temporary Injunction Regarding Attorney Conflicts and Client Information (Count I); Permanent and Temporary Injunction Against All Defendants Regarding Illegal Wiretaps (Count II); Aiding and Abetting Malpractice (Count IX); Civil Conspiracy (Count X); Violations of PA Wiretap Act (Count XI); General Equity (Count XVI).

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

25.      The Second Amended Complaint, like the Original Complaint and the First Amended Complaint, fails to establish personal jurisdiction over Lightbox, and to demonstrate that Bucks County (let alone any county in this Commonwealth) is the proper venue for this lawsuit.

26.      Further still and as noted above, since filing its Original Complaint and the First Amended Complaint, both the Supreme Court of New York and this Court have eliminated *any* possibility of Plaintiffs succeeding on their claims against Lightbox for "Aiding and Abetting Malpractice" and "General Equity", which are based on Miller's continued representation of Lightbox in New York and Pennsylvania. See Exhibits "A" and "C".

27.      On July 8, 2019, Judge Anthony Cannataro of the Supreme Court of New York, New York County, specifically addressed this issue when he *denied* Plaintiffs' Motion to Disqualify Miller from representing Lightbox in the New York State Action. See Exhibit "C".

28.      Likewise, on August 19, 2019 this Court denied Plaintiffs' Motion to Disqualify Miller from representing in this action and any other action which has been or could be brought, regardless of jurisdiction or subject matter. See Exhibit "A".

29.      And, more than one year earlier, Judge Denise Cote of the United States District Court for the Southern District of New York issued a ruling on June 26, 2018 that "because Moldovsky has not shown that Miller represented Moldovsky in connection with Moldovsky's representation of Lightbox, it is hereby ORDERED that [Moldovsky's] application to disqualify Miller is denied." See Exhibit "B".

30.      Finally, Plaintiffs' wiretapping claims are governed by New York law, not Pennsylvania law, which is a one-party consent state.  Thus, any calls directed to New York or

6

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

made in New York may be recorded with the consent of only one party to the communication, and Lightbox consented to the recording of all phone calls it made to Plaintiffs from New York.

31.     Thus, Plaintiff not only fails to establish jurisdiction and venue is proper in this matter, but they also fail to state a claim for which relief may be granted as to Lightbox.

32.     Plaintiffs' Second Amended Complaint is nothing more than an attempt to weaponize the Court system against Miller and Lightbox.  Their Second Amended Complaint should therefore be dismissed with prejudice.

## I.     PRELIMINARY OBJECTION – LACK OF PERSONAL JURISDICTION[3] PURSUANT TO PA.R.CIV.P. 1028(a)(3)

33.     "Preliminary objections may be filed by any party to any pleading and are limited to the following grounds: (1) lack of jurisdiction over the subject matter of the action or the person of the defendant…"  Pa. R.C.P. No. 1028(a).

34.     When considering a motion to dismiss for lack of personal jurisdiction, the court must consider the evidence in the light most favorable to the non-moving party.  Mendel v. Williams, 53 A.3d 810, 816 (Pa. Super. Ct. 2012).

35.     Once a defendant raises and supports a preliminary objection of lack of personal jurisdiction, the burden shifts to the party asserting jurisdiction to establish with reasonable

---

[3] Like in the Original and First Amended Complaint, Plaintiffs continue to rely on Pa.R.Civ.P. 1019.2(a)(2) to assert jurisdiction.  However, their reliance on Pennsylvania Rule of Civil Procedure 1910.2(a)(2) to establish jurisdiction is misplaced. This Rule identifies when a Pennsylvania court has jurisdiction over a child support matter.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

particularity sufficient contact between the defendant and Pennsylvania. Id.; Mann v. Tom James Co., 802 F. Supp. 1293, 1295 (E.D. Pa. 1992).

36.     In doing so, a plaintiff may not rely upon conclusory averments of pleadings, but must come forward with competent evidence that establishes the court's jurisdiction. Id.; McDonald v. Washington Cty. Hosp. Ass'n, 54 Pa. D. & C.4th 324, 328 (Pa. Com. Pl. 2001) ("The plaintiff must show prima facie evidence of jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state.").

37.     Pursuant to 42 Pa. C.S.A. § 5301, the courts may exercise two types of *in personam* jurisdiction over a non-resident defendant: (i) general jurisdiction, which is founded upon a defendant's general activities within the forum that evidence continuous and systematic contacts with the state, or (ii) specific jurisdiction, which has a narrower scope and is focused upon the particular acts of the defendant which gave rise to the underlying cause of action. (Hall-Woolford Tank Co. v. R.F. Kilns, Inc., 698 A.2d 80, 82 (Pa. Super. Ct. 1997)

38.     Regardless of whether general or specific personal jurisdiction is asserted, the court must consider both the Pennsylvania long-arm statute, 42 Pa. C.S.A. § 5322, and the due process clause of the Fourteenth Amendment to the United States Constitution. Kubik v. Letteri, 614 A.2d 1110, 1112 (Pa. 1992).

**A.     The Court lacks specific and general personal jurisdiction over Lightbox.**

39.     As noted above, there are two types of personal jurisdiction: general and specific.

40.     General personal jurisdiction is grounded on the defendant's contacts with the forum state that are unrelated to the litigation, and to comport with due process, the contacts must be continuous and systematic. Hall-Woolford Tank, 698 A.2d at 82; Derman v. Wilair Servs., Inc., 590 A.2d 317, 319 (Pa. Super. 1991); see also 42 Pa. C.S.A. § 5301.

8

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

41.     Specific personal jurisdiction refers to "jurisdiction over causes of action arising from or related to a defendant's actions within the forum." Hall-Woolford Tank, 698 A.2d at 82; see also Garzone v. Kelly, 593 A.3d 1292, 1297 (Pa. Super. Ct. 1991) (stating that, for specific jurisdiction to exist, the cause of action must arise out of the acts that form the basis for jurisdiction).

42.     The Second Amended Complaint does not identify any facts to support either general or specific personal jurisdiction over Lightbox in this Court. Plaintiffs' failure is not due to oversight. Plaintiffs reference no such facts because Lightbox has no contacts whatsoever with Pennsylvania.

43.     Plaintiffs have failed to plead actions by Lightbox sufficient to bring Lightbox within Pennsylvania's long-arm statute, and to demonstrate that Lightbox has "certain minimum contacts" with the Commonwealth of Pennsylvania.

44.     Plaintiffs admit that Ellner "is an individual residing at 210 West 77th Street, Apt. SW, **New York, NY** 10024." Second Amended Complaint ¶ 9 (emphasis added).

45.     Plaintiffs admit that Lightbox Ventures, LLC "is an entity owned by Andrew Ellner with a registered address at 210 West 77th Street, Apt. 8W, **New York, NY** 10024." Id. ¶ 10 (emphasis added).

46.     Plaintiffs admit that Lightbox Capital Management, LLC "is an entity owned by Andrew Ellner with a registered address at 24 West 40th Street, Second Floor, **New York, NY** 10024." Id. ¶ 11.

47.     Plaintiffs' causes of action against Lightbox arise exclusively from conduct that occurred in New York, and specifically from Plaintiffs' prior representation of Lightbox in the New York State Court Matter, Miller's eventual representation of Lightbox in the New York

9

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Federal Matter and the New York State Court Matter, and Lightbox's refusal to obtain new counsel in New York.

48.     Plaintiffs further assert claims against Lightbox for violations of the Pennsylvania Wiretapping Act because "Defendants Mr. Ellner and the Lightbox entities made secret, unauthorized recordings **of a Pennsylvania resident**, at his home and otherwise **in Pennsylvania**, at times on a cellular phone with a Pennsylvania area code." Id.  ¶¶ 17, 56, 59 ("The **Plaintiffs** were often or mostly at Brem Moldovsky's home office in Bucks County, Pennsylvania when the majority of these phone calls took place and various of the calls were on **Brem Moldovsky's** cell phone number, which as (sic) a 610-area code.") (emphasis added).

49.     The entire basis of Plaintiffs' Wiretapping Act claims arise from calls *Plaintiffs received* in Pennsylvania.   There are no averments in the Second Amended Complaint to establish personal jurisdiction over Lightbox in Pennsylvania.

50.     Further still, the purportedly illicit phone calls were made by Lightbox to Plaintiffs during Plaintiffs' legal representation of Lightbox in the New York Federal matter.

51.     Lightbox has filed the attached Affidavit of Andrew Ellner and Affidavit of Jill Ellner as Exhibits "E" and "F", respectively, to contest Plaintiffs' conclusory assertions and the exercise of personal jurisdiction by this Court.  See also Mendel v. Williams, 53 A.3d 810, 816 (Pa. Super. 2012) (stating that, once the moving party supports its objections to personal jurisdiction, the burden of proving personal jurisdiction is upon the party asserting it.).

### 1.     <u>There is no basis for specific jurisdiction over Lightbox.</u>

52.     A plaintiff carries the burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant.  Derman, 590 A.2d at 140.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

53.     As stated above, specific personal jurisdiction is "focused upon the particular acts of the defendant which gave rise to the underlying cause of action." Hall-Woolford Tank, 698 A.2d at 82.

54.     Where specific jurisdiction, as opposed to general jurisdiction, is asserted, the determination to be made is whether the defendant purposefully directed his activities at the forum and purposefully availed himself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws; this determination is critical to determine whether a defendant should reasonably anticipate being hauled into court in the forum state. Kubik, 614 A.2d at 1114.

55.     Far from identifying *any* jurisdictional facts supporting jurisdiction over Lightbox, Plaintiffs' Second Amended Complaint states only that Lightbox recorded a "Pennsylvania resident, at his home and otherwise in Pennsylvania, at times on a cellular phone with a Pennsylvania area code." Second Amended Complaint ¶ 17.

56.     Based on the foregoing allegation, it appears that Plaintiffs hope to establish personal jurisdiction over Lightbox based on specific jurisdiction pursuant to 42 Pa. C.S.A. § 5322(a)(3), which provides for personal jurisdiction over a person arising from, "Causing harm or tortious injury by an act or omission in this Commonwealth."

57.     However, when viewing the Second Amended Complaint in a light most favorable to Plaintiffs, they state only that *Plaintiffs* were in Pennsylvania when they received the purportedly illicit phone call from Lightbox. See Second Amended Complaint ¶¶ 17, 59 ("Additionally, the Plaintiffs were often or mostly at Brem Moldovsky's home office in Bucks County, Pennsylvania when the majority of these phone calls took place and various of the calls were on Brem Moldovsky's cell phone number, which is a 610-area code."); see Nutrition

11

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Management Services co. v. Hinchcliff, 926 A.2d 531, 538 (Pa. Super. 2007) ("Furthermore, the fact that Appellees made telephone calls and sent correspondence to [the forum state, Pennsylvania] does not lead to the conclusion that Appellees *purposefully availed* themselves of the privileges and benefits of our Commonwealth to the extent that they should have anticipated having to defend a lawsuit in Pennsylvania." (citing Hall-Woolford Tank Co., Inc. v. R.F. Kilns, Inc., 698 A.2d 80 (Pa. Super. 1997)).

58.     The Second Amended Complaint contains no averment about Lightbox's whereabouts at the time of the purportedly illicit phone call from Lightbox, except to state that "Ellner and Lightbox travel frequently to many different states and countries, and *as such, their location at the time of the recordings is unknown*. However based on vacation home ownership, relatives, business interests and other reasons, Mr. Ellner visited and spent time in other states in the relevant time period, which, like Pennsylvania, are also "two consent states". Such states are believed to include Florida, Nevada and/or California." Id. ¶ 62 (emphasis added).

59.     Plaintiffs further allege that Lightbox was "aware [when they made the calls] that Plaintiffs were based out of Bucks County, PA," and that Lightbox "appreciated that part of what made the Plaintiffs more affordable than other firms he had contacted was the Pennsylvania location (*despite having an active New York office*)." Id. ¶ 61.

60.     Even if Lightbox travelled to one of the states identified in Paragraph 62 of the Second Amended Complaint during the purportedly relevant time period, Lightbox's presence in Florida, Nevada, and/or California would be insufficient to confer personal jurisdiction over Lightbox in *Pennsylvania*.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

61.     Further still, at the time of the purportedly illicit phone calls, Plaintiffs were counsel to Lightbox in the New York Federal Matter.  Plaintiffs and Lightbox had no relationship outside their attorney-client relationship during that time.  See Exhibit "E" ¶ 16.

62.     Lightbox cannot possibly be said to have purposefully directed its activities to Pennsylvania – despite purportedly being "aware that Plaintiffs were based out of Bucks county, PA and were often in Bucks County, PA" – when  the sole basis for Lightbox and Plaintiffs' relationship was Plaintiffs' representation of Lightbox in the New York Federal Matter.

63.     Every phone call Lightbox made to Plaintiffs occurred during Plaintiffs' representation of Lightbox in the New York Federal Matter.  Exhibit "E" ¶¶ 11-16.

64.     Every phone call Lightbox made to Plaintiffs was to discuss the New York Federal Matter.  Id.

65.     Finally, Ellner was "physically in New York every time [he] recorded a phone conversation with Plaintiffs."  Exhibit 1 to Exhibit "E", and Exhibit "E" ¶ 14.  Ellner's itemized Verizon Statement from November 8, 2017 through December 7, 2017, attached to Ellner's Affidavit as Exhibit "1", reflects that every outgoing call to Plaintiffs was made from either New Hyde Park, NY or New York, NY.  Id.

66.     Ellner's wife, Jill Ellner, was with Ellner in New York, New York, and later Roslyn, New York, on Thanksgiving Day 2017.  Exhibit "F" ¶ 4-5.

67.     The Ellners never left the state of New York on Thanksgiving Day 2017.  Id. ¶ 8.

68.     Plaintiffs have not alleged that Lightbox engaged in any activity or transacted any business in Pennsylvania only; rather, they have alleged only that *Plaintiffs* were in Pennsylvania when they received the calls they allege were recorded.  See generally Exhibit "D".

13

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

69.     Plaintiffs' remaining claims sounding in legal malpractice against Miller and Lightbox stem from Miller's continued representation of Lightbox in New York.

70.     To the extent Plaintiffs argue that their legal malpractice claims against Miller and Lightbox also stem from Millers representation in Pennsylvania, this claim also fails to establish personal jurisdiction.

71.     Miller does not represent Lightbox in Pennsylvania.  Fox Rothschild LLP represents Lightbox in Pennsylvania.  Exhibit "E" ¶ 21.

72.     This Court also already denied Plaintiffs' Motion to Disqualify Miller from representing Lightbox in Pennsylvania (despite the mootness of the requested relief).

73.     Thus, it is clear that Pennsylvania's long-arm statute does not and cannot confer specific jurisdiction over Lightbox.

### 2.     There is no basis for general jurisdiction over Lightbox.

74.     Plaintiffs have alleged no facts to support a claim for general personal jurisdiction under 42 Pa.C.S.A. § 5301.

75.     General jurisdiction exists regardless of whether the cause of action is related to the defendant's activities in Pennsylvania *as long as* the defendant's activities are continuous and substantial or continuous and systematic.  City of Philadelphia v. Borough of Westville, 93 A.3d 530, 533 (Pa. Commw. Ct. 2014) (emphasis added) (citing to Commonwealth ex rel. Pappert v. TAP Pharmaceutical Products, Inc., 868 A.2d 624, 628 (Pa. Cmwlth. Ct. 2005)).

76.     Here, Lightbox conducts **no** business in Pennsylvania.  See Exhibit "E" ¶¶ 23-34.

77.     Therefore, the Second Amended Complaint does not (and could not) contain any allegations that Lightbox maintains a general course of business activity in Pennsylvania for pecuniary benefit, such as working out of or maintaining an office in Pennsylvania; possessing or

14

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

maintaining a license to do business in Pennsylvania; or regularly servicing clients in Pennsylvania.

78.     Lightbox attests and Plaintiffs admit that LV and LCM are New York entities, with principal places of business in New York, New York. Exhibit "D" ¶¶ 5-6; Second Amended Complaint ¶¶ 9-11.

79.     Ellner resides in New York, and does not work out of or maintain any Pennsylvania office(s); service clients in Pennsylvania; own or rent property in Pennsylvania; have or maintain any Pennsylvania employees or agent; telephone listings or mailing addresses in Pennsylvania; and Lightbox derives 0% of its income from Pennsylvania. See generally Exhibit "E".

80.     Therefore, Lightbox does not have "continuous and systematic general business contact" with Pennsylvania, and there is no general personal jurisdiction over Lightbox.

**B.      Due Process will not be met if Lightbox is subject to personal jurisdiction in Pennsylvania.**

81.     The second prong of the personal jurisdiction analysis requires a determination of whether minimum contacts exist between the defendant and the forum state to satisfy due process. Kubik, 614 A.2d at 1113 (stating that "critical to the minimum contacts analysis is whether the defendants directed their activities toward Pennsylvania").

82.     This second step of the analysis is itself a two-step process: first, a court must decide whether the defendant has "minimum contact" with the forum.

83.     Second, the court must decide whether the exercise of personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice." Id. (quoting International Shoe Co. v. Washington, 326 U.S. at 310, 316 (1945)).

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1.    **Minimum contacts.**

84.    Minimum contacts can be found to exist, and a court can exercise specific jurisdiction, where a cause of action arises out of a defendant's purposeful contacts with the forum.  Kubik, 614 A.2d at 1114 (*in personam* jurisdiction may only be asserted when the nature and quality of that defendants' activities are such as to make it reasonable and fair to require him to conduct his defense in that state) (citations omitted).

85.    However, where a cause of action does not arise out of a foreign defendant's purposeful contacts with the forum (i.e., where it arises out of general jurisdiction), due process requires that the defendant have engaged in "continuous and systematic contacts" in the forum to support the exercise of general jurisdiction over the defendant.  Rothermel v. Kelly's Kids, 81 Pa. D. &C. 319, 324 (Pa. Com. Pl. 2006) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984)).

86.    As established above, the causes of action alleged by Plaintiffs do not arise out of Lightbox's purposeful contacts with the forum state (since it has none), and thus, specific jurisdiction does not exist.  Further, Lightbox does not have "continuous and systematic general business contact" with Pennsylvania, as demonstrated by the fact that Ellner and Lightbox are domiciled in New York, with their principal places of business in New York, New York.

87.    All of Plaintiffs' claims against Lightbox stem exclusively from Plaintiffs' prior representation of Lightbox in the New York Federal Matter.

88.    Every time Plaintiffs spoke with Plaintiffs over the phone it was to discuss the New York Federal Matter.  Exhibit "E" ¶¶ 11-16.

89.    Every phone call Lightbox made to Plaintiff was made while Lightbox was in New York.  Id. ¶ 14.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

90.     Ellner does not live or work out of or maintain any Pennsylvania office(s); service clients in Pennsylvania; own or rent property in Pennsylvania; have or maintain any Pennsylvania employees or agent; telephone listings or mailing addresses in Pennsylvania; and Lightbox derives 0% of its income from Pennsylvania.  See generally Exhibit "E".

91.     Therefore, Lightbox does not have "continuous and systematic general business contact" with Pennsylvania.  See Alti, Inc. v. Dallas European, 2002 WL 31409948, at *2 (Pa. Com. Pl., Sept. 20, 2002) (determining the court lacks general jurisdiction over a Texas computer consulting company because the plaintiff failed to show the company had a continuous, substantial, and systematic tie to the state).

92.     Plaintiffs have failed to plead the minimum contacts with Pennsylvania necessary to satisfy the Due Process Clause of the Constitution.  See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 & n. 17 (1985).

## 2.      Traditional notions of fair play and substantial justice.

93.     Similarly, the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.  The United Stated Supreme Court, in Asahi Metal Indus. Co., Ltd. v. Superior Court of CA, Solano County, 480 U.S. 1026 (1987), enumerated several factors to consider in making this determination:

> the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.

Id., at 1033.

94.     Lightbox does not have any minimum contacts with Pennsylvania and would be burdened by having to travel to Pennsylvania and defend itself in a foreign jurisdiction.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Pennsylvania does not have any strong interest in adjudicating this suit against Lightbox, because Lightbox's nonexistent activities in the forum state are unrelated to this action. Quite the contrary, *every* act upon which Plaintiffs base their claim stem from Lightbox's attorney-client relationship with Plaintiffs in New York.

95.     For the foregoing reasons, Plaintiffs have failed to carry their burden to establish personal jurisdiction and all claims against Lightbox must be dismissed.

**WHEREFORE**, Defendants Andrew Ellner, Lightbox Capital Management LLC, and Lightbox Ventures LLC respectfully request this Honorable Court sustain their Preliminary Objection and dismiss Plaintiffs' Second Amended Complaint with prejudice.

## II.     PRELIMINARY OBJECTION - IMPROPER VENUE PURSUANT TO PA.R.CIV.P. 1028(a)(1).

96.     Venue is improper in Bucks County – as it is in *every* county in this Commonwealth – because of the complete lack of nexus between the claims at issue in this case and Pennsylvania.

97.     Pa.R.Civ.P. 1006(a) states that an action brought against an individual may be brought **in and only in** a county in which:

> (1) the individual may be served or in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose or in any other county authorized by law.

98.     In addition, as to corporations, Pa.R.Civ.P. 1006(b) cross-references Pa.R.Civ.P. 2179, which provides that an action against a corporation or similar entity may be brought **in and only in**:

> (1) the county where its registered office or principal place of business is located; (2) a county where it regularly conducts business; (3) the county where the cause of action arose; (4) a county where a transaction or occurrence took place out of which the cause of action arose; or (5) a county where the property or a part of the

18

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

property which is the subject matter of the action is located provided that equitable relief is sought with respect to the property.

99.      None of these requirements is satisfied as to Ellner, LV, or LCM.

100.     Ellner cannot be served in Bucks County, nor can he be served in *any* county in Pennsylvania.  Ellner resides full-time in New York, New York.  Exhibit "E" ¶ 5.

101.     Similarly, LV and LCM are registered in and located in New York, not Pennsylvania, and they do not regularly conduct any business in Pennsylvania.  Id. ¶ 6.

102.     As detailed above, Plaintiffs' causes of action did not arise in Bucks County or anywhere in Pennsylvania, nor did any transaction or occurrence take place in Bucks County or anywhere in Pennsylvania out of which Plaintiffs' claims rose.

103.     Indeed, *all* of Plaintiffs' claims stem from Plaintiffs' prior representation of Lightbox in the New York Federal matter, and communications they had during the course of that attorney-client relationship.

104.     Additionally, there is no property at issue in this case.

105.     Venue is therefore improper in Bucks County, as it is in *any* county in the Commonwealth of Pennsylvania.

106.     Because there is no other proper venue in Pennsylvania, Plaintiffs' Second Amended Complaint should be dismissed.

**WHEREFORE**, Defendants Andrew Ellner, Lightbox Capital Management LLC, and Lightbox Ventures LLC respectfully request this Honorable Court sustain their Preliminary Objection and dismiss Plaintiffs' First Amended Complaint with prejudice.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

III.   **PRELIMINARY OBJECTION – FAILURE TO STATE A CLAIM PURSUANT TO PA.R.CIV.P. 1028(a)(4).**

A.   **Standard of Review.**

107.   Preliminary objections in the nature of a demurrer are properly sustained where, as here, a complaint fails to set forth a cause of action upon which relief may be granted.  Sinn v. Bird, 404 A.2d 672, 672 (Pa. 1979); Greenspan v. U.S. Auto Ass'n, 471 A.2d 856, 858 (Pa. Super. 1984).

108.   A preliminary objection in the form of a demurrer should be sustained where, taking all well-pleaded material facts set forth in the complaint and all inferences fairly deducible therefrom as true, the plaintiff is not entitled to relief.  Small v. Horn, 722 A.2d 664, 668 (Pa. 1998).

109.   While the Court must accept as true all well-pleaded facts, the Court is *not* to accept as true unwarranted inferences from facts, conclusions of law, argumentative allegations, or opinions.  See e.g. Hyam v. Upper Montgomery Joint Auth., 160 A.2d 539, 541 (Pa. 1960); Dorfman v. Pa. Soc. Servs. Union-Local 668 of the Serv. Employees Int'l Union, 752 A.2d 933, 936 (Pa. Commw. 2000); Small, 722 A.2d at 688.

110.   Here, all of Plaintiffs' claims against Lightbox are legally insufficient and this Court should dismiss them pursuant to Pa.R.Civ.P. 1028(a)(4).

B.   **Choice of Law**

111.   As it pertains to substantive law, Pennsylvania has adopted a flexible choice-of-law rule that "permits analysis of the policies and interests underlying the particular issue before the court."  Griffith v. United Air Lines, 203 A.2d 796, 805 (Pa. 1964).  Thus, the Court should "apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation."  Id. at 806.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of
the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

112.    The analysis "first entails a determination of whether the laws of the competing states actually differ.  If not, no further analysis is necessary.  If [the Court] determines a conflict is present, [the Court] must analyze the governmental interests underlying the issue and determine which state has the greater interest in the application of the law."  Wilson v. Transport Ins. Co., 889 A.2d 563, 571 (Pa. Super. 2005).

113.    This matter involves allegations that Plaintiffs were harmed by Miller's continued representation of Lightbox in New York and Pennsylvania, Lightbox's refusal to obtain new counsel in New York and Pennsylvania, and Lightbox's recording of phone calls that Plaintiffs received while in Pennsylvania, but which were recorded in New York during the time that Plaintiffs' represented Lightbox in the New York Federal Matter.

114.    It is thus clear that any injury here – be it from Miller's representation of Lightbox in New York[4] or Plaintiffs' receipt of phone calls from their former client, Lightbox, in New York – occurred in **New York**.

115.    As detailed above, this action has no nexus whatsoever to the Commonwealth of Pennsylvania.

116.    This case does not belong in this Court in the first place.

117.    While Pennsylvania has no connection to either the parties to this action or the facts alleged in the Second Amended Complaint – and thus has no interest in the application of its law – New York clearly has the greatest interest.

118.    As such, Lightbox submits that, under a choice of law analysis, New York law should apply (if it conflicts with Pennsylvania law).

---

[4] There is no injury based on Miller representing Lightbox in Pennsylvania; Fox Rothschild LLP represents Miller in Pennsylvania.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1.   **Plaintiffs' claims for Injunctive Relief (Count I), Permanent and Temporary Injunction Regarding Illegal Wiretaps (Count II), Aiding and Abetting Legal Malpractice (CountIX), Civil Conspiracy (Count X), Violation of the PA Wiretap Act (Count XI), and "General Equity" (Count XVI) all fail as a matter of law.**

119.    Plaintiffs' claims for injunctive relief, aiding and abetting legal malpractice, civil conspiracy, violation of the Pennsylvania Wiretap Act, and "general equity" all fail as a matter of law, because Plaintiff cannot maintain these causes of action "without revealing client confidences in violation of the [New York] rules of ethics." Eckhaus v. Llfa-Laval, Inc., 764 F.Supp. 34, 37-38 (S.D.N.Y. 1991).

120.    There is a conflict between Pennsylvania and New York law respecting when an attorney may use confidential client information to sue a former client.

121.    In Pennsylvania, "(a) A lawyer shall not reveal information relating to representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c)." Pa.R.P.C. 1.6(a).

122.    Pennsylvania Rule of Professional Conduct 1.6(c) allows a lawyer to reveal confidential client information "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client." Pa.R.C.P. 1.6(c)(4).  There is no limitation on the nature of the claim an attorney may assert against a former client. See id.

123.    Comparatively, New York attorneys are permitted to "knowingly reveal confidential information…[only] (5)(i) to defend the lawyer or the lawyer's employees and associates against an accusation of wrongful conduct; or (ii) to establish or collect a fee." N.Y.R.P.C. 1.6(b)(5)(i), (ii).

22

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

124.    Unlike its Pennsylvania counterpart, the New York rule permitting attorneys to reveal confidential client information is limited only to circumstances where an attorney needs to defend him or herself and their staff against a claim, or to collect a fee.

125.    New York courts have specifically held that attorneys may not use confidential information to maintain a cause of action against a former client not encompassed by New York Rule of Professional Conduct 1.6.  See Eckhaus v. Alfa-Laval, Inc., 764 F.Supp. 34, 27-38 (S.D.N.Y. 1991).

126.    As noted above, New York has a greater interest in the application of its law in this case, because Lightbox's confidential information, which Plaintiffs obtained while representing Ligthbox in the New York Federal Matter, is required to maintain each cause of action against Lightbox in Pennsylvania.

127.    Plaintiffs' claims for injunctive relief, conspiracy, aiding and abetting breach of fiduciary duty, violation of the Pennsylvania Wiretap Act, and "general equity" all require Plaintiffs to reveal Lightbox's confidential client information.

128.    The entire basis for each of Plaintiffs' claims against Lightbox arises from Plaintiffs' prior representation of Lightbox in New York, Miller's current representation of Lightbox in New York, and Miller's prior representation of Plaintiffs in Pennsylvania.

129.    An analysis of these claims will require the court to evaluate whether the matters Miller was involved in on behalf of Plaintiff and on behalf of Lightbox are "substantially related".

130.    Critically, the phone calls Plaintiffs intend to rely on to support their claim for violation of the Pennsylvania Wiretap Act were made *during* the course of Plaintiffs' representation of Lightbox and to discuss the New York Federal Matter.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

131.     Plaintiffs are attempting to use Lightbox's confidential information to assert claims against it in Pennsylvania.  The confidential information is not being used to defend Plaintiffs against claims made by Lightbox, or to collect fees from Lightbox.

132.     New York law specifically prohibits Plaintiffs from using Lightbox's confidential information to establish a cause of action against Plaintiff that is unrelated to Plaintiffs having to defend themselves or collecting unpaid fees.

**WHEREFORE**, Defendants Andrew Ellner, Lightbox Capital Management LLC, and Lightbox Ventures LLC respectfully request this Honorable Court sustain their Preliminary Objection dismiss Plaintiffs' Second Amended Complaint with prejudice.

### 2.     Count XI of Plaintiffs' First Amended Complaint, "Violation of the PA Wiretap Act", fails as a matter of law.

133.     There is a conflict between Pennsylvania and New York law concerning Plaintiffs' claim for wiretapping.

134.     In Pennsylvania, "no person shall disclose the contents of any wire, electronic or oral communication, or evidence therefrom, in any proceeding in any court, board or agency of this commonwealth."  18 Pa.C.S.A. § 5721.1; Larrison v. Larrison, 750 A.2d 895, 897 (Pa. Super. 2000).

135.     Section 5704(4) of the Pennsylvania Wiretap Statute "allows for the interception of wire communications where *all the parties* to the recording have consented."  18 Pa.C.S.A. § 5404(4) (emphasis added); Com v. Deck, 954 A.2d 603, 605-606 (Pa. Super. 2008).

136.      Thus, Pennsylvania is a "two-party consent state" with respect to recording communications; all parties to a communication must consent to the communication being recorded.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

137.    Comparatively, in New York, "'Wiretapping' means the intentional overhearing or recording of a telephonic or telegraphic communication by a person other than a sender or receiver thereof, *without the consent of **either** the sender **or** receiver*, by means of any instrument, device or equipment." N.Y. C.L.S. Penal § 250.00 (cited in Larrison, 750 A.2d at 898).

138.    Unlike Pennsylvania, New York is a "one-party consent state", which means that so long as one party to a communication consents to it being recorded, the recording is lawful. See id.

139.    Pennsylvania courts have already determined that in situations involving recorded phone calls that either originated in New York or were made to New York, "New York possess[es] the greater interest in allowing its citizens to record telephone conversations lawfully with only the consent of the sender or receiver." Larrison, 750 A.2d at 898.

140.    "While this Commonwealth has an interest in protecting its citizens from having telephone conversations recorded without proper consent, *we, as the courts of this Commonwealth, have no power to control the activities that occur within a sister state*." Id. (emphasis added) (holding that a witness "did not violate any New York state law in obtaining the telephone recording" at issue, which was placed from Pennsylvania to New York, and recorded by the recipient of the call in New York).

141.    The calls Plaintiffs claim Lightbox recorded originated in New York. See Exhibit 1 to Exhibit "E"; see generally Exhibit "E".

142.    With specific regard to the phone call Plaintiffs allege Lightbox made while Plaintiffs were in Bucks County, Pennsylvania on Thanksgiving Day 2017 (Second Amended Complaint ¶ 56), Lightbox made that phone call from Ellner's personal residence in Manhattan,

25

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

New York, before driving to his son-in-laws' parents' house in Roslyn, New York for Thanksgiving. See Exhibit 1 to Exhibit "E"; See generally Exhibits "E" and "F".

143.   Every phone call Lightbox had with Plaintiff was to discuss the New York Federal Court matter, for which Plaintiffs provided Lightbox legal counsel. Exhibit "E" ¶ 16.

144.   All of the events supporting Plaintiffs' wiretapping claims originated in New York.

145.   New York thus has the greater interest in having its wiretapping laws apply to Lightbox's conduct. See Larrison 750 A.2d at 898.

146.   Lightbox consented to recording its phone calls with its Plaintiffs, its legal counsel.

147.   Because Lightbox's conduct was lawful in New York, and because New York has the greater interest in having its law apply to Plaintiff's wiretapping claims, Plaintiffs' wiretapping claims fail as a matter of law.

**WHEREFORE**, Defendants Andrew Ellner, Lightbox Capital Management LLC, and Lightbox Ventures LLC respectfully request this Honorable Court sustain their Preliminary Objection and dismiss Plaintiffs' Second Amended Complaint with prejudice.

### 3.   Counts I, IX, X, and XVI of Plaintiffs' First Amended Complaint, "Injunctive Relief", "Aiding and Abetting Malpractice", "Civil Conspiracy", and "General Equity", fail as a matter of law under the principle of collateral estoppel[5].

148.   Plaintiffs cannot maintain their cause of action for "injunctive relief", "aiding and abetting malpractice", "civil conspiracy", and "general equity", because the United States District Court for the Southern District of New York and the Supreme Court of New York, New

---

[5] There is no "real conflict" between New York and Pennsylvania law on the elements of collateral estoppel.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

York County, and this Court have already determined that Plaintiffs failed to prove that "Miller represented [Plaintiffs] in connection with [Plaintiffs'] representation of Lightbox," which is the entire basis for Plaintiffs' claims here.  See Exhibits "A", "B", and "C".

149.    Plaintiffs are collaterally estopped[6] from arguing that Miller should be disqualified from representing Lightbox, that Miller's representation of Lightbox constitutes malpractice, or that Lightbox "conspired with" or "aided and abetted" with Miller to breach Miller's fiduciary duties.

150.    Plaintiffs already sought to have Miller disqualified in the New York Federal Matter, the New York State Matter, and in this Court, and *all three* motions were denied by United States District Judge Denise Cote, New York Supreme Court Judge Anthony Cannataro, and Bucks County Court of Common Pleas of Pennsylvania Judge Robert O. Baldi.  "A", "B", and "C".

151.    "Collateral estoppel is a legal doctrine intended to preclude the relitigation of issues of law or fact in a subsequent action".  Bell v. Tp. of Spring Brook, 30 A.3d 554, 558 (Pa. Commw. 2011) (citing Galloway v. Workmen's Compensation Appeal Board, 690 A.2d 1288 (Pa. Commw. 1997)); Westchester County Correction Officers Benev. Ass'n, Inc. v. County of Westchester, 885 N.Y.S.2d 728, 731 (2009) ("Under the doctrine of collateral estoppel, or issue preclusion, 'a party is precluded from relitigating an issue which has been previously decided against [or her] in a prior proceeding where he [or she] had a full and fair opportunity to litigate such issue.").

---

[6] Although collateral estoppel must normally be raised as part of a defendant's new matter, "where the complaint makes reference to the prior action on which the defense of [collateral estoppel] may rest the defense may be raised by preliminary objection." Bell, 30 A.3d at 558.  Plaintiffs specifically reference Judge Cote's decision in the New York Federal Matter.  See Plaintiff's First Amended Complaint ¶¶ 66-67, 76.

Case# 2019-00793-105 - JUDGE.27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

152.    Collateral estoppel applies if: (1) the issue decided in the prior case is identical to one presented in a later case; (2) thee was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to actually litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. Id.; Westchester, 885 N.Y.S.2d at 731 ("The two elements that must be satisfied to invoke the doctrine of collateral estoppel are that (1) the identical issue was decided in the prior action and is decisive in the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to contest the prior issue.")).

153.    All of these elements are present here: (1) Plaintiffs already attempted to have Miller disqualified as counsel to Lightbox in the New York Federal Matter, the New York State Matter, and in this action; (2) there was a final judgment on the merits in favor of Lightbox in the New York Federal Matter, the New York State Matter, and this matter; (3) Miller was Lightbox's counsel in New York in the New York Federal Matter and the New York State Matter, and Plaintiffs are attempting to have him disqualified in New York and in Pennsylvania, even though Fox Rothschild LLP represents Lightbox here; (4) all parties had the opportunity to litigate whether Miller should be disqualified as counsel to Lightbox; and (5) the determination in the prior proceeding was essential to the judgment, because without it, Miller would have been disqualified and Lightbox forced to find new counsel.

154.    Plaintiffs are not entitled to re-litigate if Miller lawfully can represent Lightbox.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**WHEREFORE**, Defendants Andrew Ellner, Lightbox Capital Management LLC, and Lightbox Ventures LLC respectfully request this Honorable Court sustain their Preliminary Objection and dismiss Plaintiffs' Second Amended Complaint with prejudice.

### 4.    Counts IX and X of Plaintiffs' First Amended Complaint, "Aiding and Abetting Malpractice" and "Civil Conspiracy", fail as a matter of law even if collateral estoppel does not apply[7].

155.    Even if collateral estoppel does not apply, Plaintiffs have failed to adequately plead the elements for "aiding and abetting malpractice" and "civil conspiracy".

156.    To state a cause of action for aiding and abetting a breach of fiduciary duty, Plaintiffs must allege the following: (1) there was a breach of a fiduciary duty owed to another; (2) there was knowledge of the breach by the aider and abettor; and (3) there was substantial assistance of encouragement by the aider and abettor in effecting the breach.  Potok v. Rebh, 2017 WL 1232755, *4 (Pa. Super. 2017) (citing Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Cmwlth. 2003)).

157.    The second element requires *actual knowledge* of the breach; actual knowledge is a higher standard, distinguished from the concept that defendants "know or should have known" about a breach.  Mitchell Partners, L.P. v. Irex Corp., 2010 WL 3825719, at *9 (E.D. Pa. 2010).

158.    The third element, requiring substantial assistance and encouragement, occurs when a defendant favorably assists, helps conceal, or fails to act when obligated to do so, thereby facilitating the breach.  Mehrtens v. Fiduciary Trust Co., 2015 WL 7573091, fn. 8 (Pa. Super. 2015) (citing Kaufman v. Cohen, 760 N.Y.S.2d 157, 169 (N.Y.A.D. 1st Dep't 2003)).

---

[7] There is no "real conflict" between New York and Pennsylvania law on the elements of "aiding and abetting breach of fiduciary duty" and "conspiracy".

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

159.    Plaintiffs have not adequately alleged the elements necessary to sustain a cause of action for aiding and abetting malpractice.

160.    The entire basis of Plaintiffs' claims is that Miller breached his fiduciary duties to Plaintiffs by representing Lightbox against him in New York, after representing Plaintiffs in the Bucks County Action.

161.    Plaintiffs argue that Lightbox "aided and abetted" the breach by continuing to retain Miller as counsel in New York and in Pennsylvania.

162.    First, Plaintiffs cannot establish a breach of fiduciary duty.

163.    Judge Cote in the Southern District of New York, Judge Cannataro in the Supreme Court of New York, and Judge Robert O. Baldi in this Court already determined that no conflict existed between Miller's representation of Lightbox in New York, and Miller's representation of Plaintiffs in the Bucks County Action.

164.    Second, Plaintiffs have not and cannot plead actual knowledge of a purported breach by Lightbox.

165.    Plaintiffs allege that "when Lightbox required Counsel to take over representation in the [New York State Matter],...*Plaintiffs* reached out to [Miller] and raised the possibility of [Miller] being Counsel and working in conjunction with the Plaintiffs to defend Lightbox in both New York forums." Second Amended Complaint ¶ 46.

166.    Plaintiffs cannot contend that Lightbox had any actual knowledge that Miller's representation of Lightbox in New York would give rise to a legal malpractice claim, when Plaintiffs themselves encouraged Lightbox to retain Miller.  See Second Amended Complaint ¶ 101 ("In essence, Plaintiffs were referring Lightbox to their own lawyer for Lightbox to utilize.").

30

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

167.    Further still, Lightbox appropriately relied on the determinations by Judge Cote, Judge Cannataro, and Judge Baldi that there was no conflict between Miller's prior representation of Plaintiffs and current representation of Lightbox in New York.

168.    Finally, there are *no* facts in the Second Amended Complaint to suggest that Lightbox "substantially assisted" Miller in his purported breach, other than to generally state that "Lightbox encouraged, directed, and directly oversaw Mr. Miller's tortious actions, attacks against Plaintiffs, and multiple breaches of duties owed to the Plaintiffs."  Second Amended Complaint ¶¶ 238-239.

169.    Plaintiffs have failed to state a cause of action against Lightbox for aiding and abetting malpractice.[8]

170.    Plaintiffs have likewise failed to state a claim for civil conspiracy.

171.    To state a claim for civil conspiracy, a complaint must allege: 1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; 2) an overt act done in pursuance of the common purpose; and 3) actual legal damage. McKeeman v. Corestates Bank, N.A., 751 A.2d 655, 660 (Pa. Super. 2000); Conner v. Bryce, 170 N.Y.S. 94, 95-96 (N.Y.S.C. 1918) ("The essence of a conspiracy, so far as it justifies a civil action for damages, is a (1) concert or combination to defraud or to cause another injury to person or property, which (2) acts resulted in damage to the person or property of the plaintiff.").

172.    Additionally, "absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." McKeeman, 751 A.2d at 660.

---

[8] Plaintiffs' claim that Miller breached his fiduciary duties to Plaintiffs by representing Lightbox in Pennsylvania also fails.  Miller does not represent Lightbox in Pennsylvania; Fox Rothschild LLP represents Lightbox in Pennsylvania.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

173.    Proof of malice is an essential part of a cause of action for conspiracy. Burnside v. Abbott Laboratories, 505 A.2d 973, 980 (1985). "The mere fact that two or more persons, each with the right to do a thing, happen to do that thing at the same time is not by itself an actionable conspiracy." Burnside, 505 A.2d at 980.

174.    Plaintiffs cannot establish a claim for conspiracy because they have not established a "civil cause of action for a particular act" in the first place.

175.    Plaintiffs' claim that Lightbox aided and abetted Miller's purported breach of fiduciary duty fails, because as previously determined by Judge Cote, Judge Cannataro, and Judge Baldi, there is no conflict between Miller's representation of Lightbox in New York and Miller's prior representation of Plaintiffs in the Bucks County Action.  Based on Plaintiffs' inability to establish a breach for aiding and abetting alone, the claim for civil conspiracy must fail.

176.    Plaintiffs have likewise failed to plead any "overt act" in furtherance of a civil conspiracy, aside from alleging that Lightbox retained and continues to retain Miller in New York.

177.    Finally, Plaintiffs have plead no facts to support any claim that Lightbox acted with malicious intent in hiring Miller as counsel in New York.

**WHEREFORE**, Defendants Andrew Ellner, Lightbox Capital Management LLC, and Lightbox Ventures LLC respectfully request this Honorable Court sustain their Preliminary Objection and dismiss Plaintiffs' Second Amended Complaint with prejudice.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

5.     **Count I of Plaintiffs' First Amended Complaint, "Injunctive Relief", fails as a matter of law.**

178.    To state a cause of action for injunctive relief in Pennsylvania and New York[9], a plaintiff must plead the following elements: 1) irreparable harm that is not compensable by money damages; 2) greater injury will result from denial of injunctive relief; 3) an injunction will restore the status quo; and 4) the party seeking injunctive relief has a clear right to an actionable claim.  See Hatfield Tp. v. Lexan Ins. Co., 15 A.3d 547 (Pa. Commw. 2011), Caren EE. V. Alan EE., 124 A.D.3d 1102 (Supp. N.Y. 2014).

179.    Most critically, as established above, Plaintiffs have failed to state any claim for which relief may be granted.  For that reason alone, their claim for injunctive relief should fail.

180.    Judge Cote, Judge Cannataro, and Judge Baldi already issued orders in the Southern District of New York, the Supreme Court of New York, and in this matter denying identical motions filed by Plaintiffs requesting Miller's dismissal as counsel to Lightbox. Exhibits "A", "B", and "C".

181.    Further, Miller does not represent Lightbox in Pennsylvania.  Injunctive relief would thus have no impact in Pennsylvania.

182.    Plaintiffs' claim for injunctive relief is further belied by their repeated assertion that they have suffered at least $100,000 in damages.

183.    Plaintiffs have done nothing more than plead a threadbare recitation of the elements for injunctive relief.

---

[9] There is no "real conflict" between Pennsylvania and New York law as to a claim for injunctive relief.

**WHEREFORE**, Defendants Andrew Ellner, Lightbox Capital Management LLC, and Lightbox Ventures LLC respectfully request this Honorable Court sustain their Preliminary Objection and dismiss Plaintiffs' Second Amended Complaint with prejudice.

### 6.    Plaintiffs' requests for attorneys' fees and punitive damages fail as a matter of law.

184.    Plaintiffs' request punitive damages and attorneys' fees for every cause of action in their First Amended Complaint.[10]

185.    Plaintiffs, however, fail to set forth any facts that would support a claim for punitive damages.

186.    Indeed, there is not a single allegation demonstrating outrageous behavior on behalf of Lightbox, or demonstrating evil motive or reckless indifference to the rights of others.

187.    Pennsylvania and New York law is clear that punitive damages are only recoverable against a defendant for "conduct that is outrageous . . . because of the defendant's evil motive or reckless indifference to the rights of others." SHV Coal, Inc. v. Cont'l Grain Co., 587 A.2d 702 (Pa. 1991); Barnes v. Hodge, 989 N.Y.S.2d 467, 468 (2014) ("These legal conclusions are insufficient as the complaint does not allege any facts to demonstrate that [Defendant] engaged in any conduct which rose to the high level of moral culpability to support a claim for punitive damages.  Plaintiff cannot maintain the punitive damages demand on the hope that discovery might someday provide a basis for it.").

---

[10] There is no "real conflict" between Pennsylvania and New York law as to a claim for punitive damages or attorneys' fees.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

188.    "Punitive damages may not be awarded for misconduct which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." McDaniel v. Merck, 533 A.2d 436, 444 (Pa. Super. 1997).

189.    Likewise, punitive damages are not available for conduct that rises to the level of gross negligence. See Slappo v. J's Dev. Assocs., 791 A.2d 409, 417 (Pa. Super. 2002).

190.    To be entitled to punitive damages, a plaintiff must demonstrate, through specific facts, that a defendant's conduct was "malicious, wanton, reckless or oppressive." Chambers v. Montgomery, 192 A.2d 355, 358 (Pa. 1963).

191.    In this case, Plaintiffs fail to plead any actual facts against Lightbox that would indicate Lightbox acted with the intent or state of mind necessary to maintain a claim for punitive damages.

192.    Accordingly, Plaintiffs' request for punitive damages should be stricken.

193.    Not only have Plaintiffs failed to allege facts necessary to support a claim for punitive damages, they have also failed to allege any statutory or contractual basis for the recovery of attorneys' fees. See Merline v. Delaware County, 728 A.2d 949, 950 (Pa. 1999) (holding that Pennsylvania consistently follows the American rule "that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established condition"); Anyika v. Moneygram Payment Systems, Inc., 906 N.Y.S.2d 770 (2009) ("The American Rule provides that attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute, or court rule.") (Internal quotations omitted)).

194.    Therefore, the Court should also strike Plaintiffs' request for attorneys' fees.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**WHEREFORE**, Defendants Andrew Ellner, Lightbox Capital Management LLC, and Lightbox Ventures LLC respectfully request this Honorable Court sustain their Preliminary Objection and dismiss Plaintiffs' Second Amended Complaint with prejudice.

## IV. PRELIMINARY OBJECTION IN THE NATURE OF A MOTION FOR A MORE SPECIFIC PLEADING

195.    If the Court does not dismiss Plaintiffs' First Amended Complaint for lack of personal jurisdiction, improper venue, or for failure to state a claim, the Court should sustain Lightbox's Preliminary Objections and require Plaintiffs to plead their allegations with greater specificity.

196.    Pennsylvania Rule of Civil Procedure 1028(a)(3) provides that a party may file preliminary objections on the grounds of "insufficient specificity in a pleading." See Pa. R. Civ. P. 1028(a)(3).

197.    Pennsylvania Rule of Civil Procedure 1019(a) requires a complaint to set forth the material facts on which a cause of action or defense is based in a concise and summary form. See Pa. R. Civ. P. 1019(a).

198.    The purpose of this rule is to require the pleader to disclose the "material facts" sufficient to enable the adverse party to prepare its case. See Landau v. Western Pennsylvania National Bank, 282 A.2d 335, 339 (Pa. 1971).

199.    A specific complaint is required so that a defendant's right and ability to answer will not be impaired by a plaintiff's vagueness in stating grounds of his suit. See Local No.163 v. Watkins, 207 A.2d 776, 778 (Pa. 1965).

200.    The question presented on a preliminary objection for insufficient specificity of a pleading is "whether the complaint is sufficiently clear to enable the defendant to prepare his defense or whether the plaintiff's complaint informs the defendant with accuracy and

36

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

completeness of the specific basis on which recovery is sought so that he may know without question upon what grounds to make his defense." Rambo v. Green, 906 A.2d 1232, 1236 (Pa. Super. 2006) (quoting Ammlung v. City of Chester, 302 A.2d 491, 498 n. 36 (Pa. Super. 1973)).

201.    Moreover, the Court need not accept as true conclusions of law, unwarranted inferences, argumentative allegations or expressions of opinion.  See Luke v. Cataldi, 830 A.2d 655, 657 n. 4 (Pa. Commw. 2003).

202.    Plaintiffs' First Amended Complaint is insufficiently specific regarding their claims for legal malpractice and aiding and abetting legal malpractice.

203.    The First Amended Complaint is unclear as to whether Plaintiffs' causes of action sounding in legal malpractice arise from Miller's representation of Lightbox in New York or Pennsylvania.

204.    If the First Amended Complaint is targeting Miller's representation of Lightbox in New York, Plaintiffs' legal malpractice claims are rendered moot by Judge Cote's and Judge Cannataro's decisions to deny Plaintiffs' request to disqualify Miller from representing Lightbox in the Southern District of New York and the State of new York.

205.    If the First Amended Complaint is targeting Miller's representation of Lightbox in Pennsylvania, Plaintiff's legal malpractice claims are rendered moot because Miller does not represent Lightbox in Pennsylvania.  Fox Rothschild LLP represents Lightbox in Pennsylvania.

206.    Without a more specific pleading, Lightbox is forced to speculate as to the allegations against it and is therefore unable to prepare an adequate answer to the First Amended Complaint.

207.    Accordingly, because the First Amended Complaint lacks specificity, the Court should sustain Lightbox's Preliminary Objections and dismiss the First Amended Complaint

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

with prejudice, or, alternatively, require Plaintiffs to re-plead their allegations with greater specificity.

   **WHEREFORE**, Lightbox respectfully requests that this Court, if it does not dismiss the Plaintiffs' Second Amended Complaint for legal insufficiency, sustain the preliminary objection in the form of a motion for greater specificity.

         Respectfully submitted,
         **FOX ROTHSCHILD LLP**

       By: _____
         Emma M. Kline, Esquire
         Attorney I.D. No.: 314027
         *Attorneys for Defendants,*
         *Andrew Ellner, Lightbox Capital*
         *Management, LLC and Lightbox*
         *Ventures, LLC*

Dated:  September 4, 2019

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**FOX ROTHSCHILD LLP**
**BY:** EMMA M. KLINE, ESQUIRE
Attorney I.D. No: 31427
2700 Kelly Road, Suite 300
Warrington, PA 18976
ekline@foxrothschild.com
Telephone: (215) 345-7500
Fax: (215) 345-7507

*Attorneys for Defendants, Andrew*
*Ellner, Lightbox Capital Management,*
*LLC, & Lightbox Ventures, LLC*

| | |
|---|---|
| BREM MOLDOVSKY, LLC and BREM MOLDOVSKY, | COURT OF COMMON PLEAS BUCKS COUNTY, PENNSYLVANIA |
| Plaintiffs, | |
| v. | NO: 2019-00793 CIVIL ACTION - LAW |
| ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, LIGHTBOX VENTURES LLC, and JONATHAN MILLER, ESQUIRE | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2019 I served a true and correct copy of the

Preliminary Objections of Andrew Ellner, Lightbox Capital Management LLC, and Lightbox

Ventures LLC, upon the following parties via this Court's e-filing system as follows:

Jonathan R. Miller, Esquire
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
*Pro se*

Brem Moldovsky LLC
Brem Moldovsky
118 Oakdale Avenue
Washington, Crossing, PA 18977
*Plaintiffs*

Gerald J. Pomerantz, Esquire
7301 Coventry Ave, Suite 501
Elkins Park, PA 19027
*Attorneys for Plaintiffs*

By: _____
Emma M. Kline, Esquire

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM - Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

EXHIBIT "A"

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Moldovsky*
*Miller*
*Kline*

**IN THE COURT OF COMMON PLEAS, BUCKS COUNTY PENNSYLVANIA**
**CIVAL ACTION – LAW**

BREM MOLDOVSKY, LLC, et al.   :        NO.:  19-793

v.                            :

ANDREW ELLNER, et al.         :

<u>ORDER</u>

Currently before the Court are various Motions which were addressed in Court during Oral Argument August 20, 2019.  Consistent with the comments made in open Court on the record, this Order is being entered.  During Oral Argument counsel made various statements which are judicial admissions and binding on the parties throughoout the course of the litigation.

Plaintiff has brought a multi-count Complaint against the Defendants. Separating facts from hyperbole and grand statements has been a challenge. The Court concludes, based on the pleadings, and statements made by counsel that at all times relevant to this litigation Defendant Attorney Jonathan Miller has represented himself.  The law firm of Fox Rothschild, LLP represents Defendants Andrew Ellner, Lightbox Capital Management, LLC and Lightbox Ventures, LLC. Plaintiff's Motion to Disqualify Defendant Miller from representing the other Defendants is DENIED in that Defendant Miller is not the attorney of record for the other Defendants, nor has he been the attorney of record for the other Defendants in this litigation.  Plaintiff's request that I order Defendant Miller to not represent the other Defendants, Andrew Ellner, Lightbox Capital Management,

Case# 2019-00793-105 - JUDGE27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

LLC and Lightbox Ventures, LLC in litigation pending in New York is DENIED. This Court finds the request to be inappropriate and without a legal basis.

There are outstanding Motions for Protective Orders relating to discovery. The parties have acknowledged those Motions are now MOOT in that they related to discovery prior to Plaintiff's filing a Complaint. Plaintiff has filed a complaint and the parties are permitted to conduct appropriate discovery.

Plaintiff's general Motion to Seal the record is DENIED at this time without prejudice to the parties filing an appropriate motion to seal specific discreet items. There was a discussion on the record about when or if that would be appropriate going forward. The parties are expected to cooperate with each other and where appropriate, agree to seal confidential documents, if appropriate.

There are outstanding Preliminary Objections to Plaintiff's first Complaint. Plaintiff is filing an Amended Complaint and therefore Defendants preliminary objections are deemed MOOT at this time.

The Court has been advised that there will be a preliminary objection to personal jurisdiction with respect to one or more of the Defendants. The parties shall promptly conduct all appropriate discovery relevant to that preliminary objection. All preliminary objections should be brought before the Court at the same time. If there are extenuating circumstances relating to the objection for personal jurisdiction the Court might entertain bifurcated argument on personal jurisdiction alone; however, for purposes of judicial economy the Court would

prefer to hear all preliminary objections at once consistent with Pennsylvania Rules of Civil Procedure.

Defendant Miller's Motion to Strike Plaintiff's Certificate of Merit is DENIED at this time without prejudice to argue at a later time that the witness should not be permitted to testify because of inherent conflicts of interest, etc.  This ruling is based on procedural rules and does not constitute a finding by the Court as to the factual sufficiency of the opinions which were attached to the certificate of merit.  This Court is not finding in this Order that the expert opinions contained in the expert reports are sufficient on their own to prove "professional malpractice".

BY THE COURT:

ROBERT O. BALDI,    J.

8/28/19

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM; Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case 2:21-cv-00160-BR   Document 23-3   Filed 04/05/21   Page 212 of 364

EXHIBIT "B"

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
                                         :
LIGHTBOX VENTURES, LLC,                  :        16cv2379(DLC)
                                         :
                    Plaintiff,           :        ORDER
         -v-                             :
                                         :
3RD HOME LIMITED and WADE SHEALY,        :   ┌─────────────────────────────┐
                                         :   │ USDC SDNY                   │
                    Defendants.          :   │ DOCUMENT                    │
                                         :   │ ELECTRONICALLY FILED        │
-----------------------------------------X   │ DOC #:                      │
                                             │ DATE FILED: 6/26/2018       │
DENISE COTE, District Judge:                 └─────────────────────────────┘

     On June 14, 2018, the Court granted the request of plaintiff

Lightbox Ventures, LLC ("Lightbox") to file an interpleader

action to determine the competing charging liens of the three

attorneys who have represented it in this matter.  On June 19,

Brem Moldovsky, who previously represented Lightbox in this

matter, filed a motion to disqualify Johnathan Miller,

Lightbox's current counsel.  Miller and Moldovsky have since

filed several additional letters addressing the disqualification

dispute.  Because Moldovsky has not shown that Miller

represented Moldovsky in connection with Moldovsky's

representation of Lightbox, it is hereby

     ORDERED that the June 19 application to disqualify Miller is

denied.

Dated:    New York, New York
          June 26, 2018

                              _____
                                        DENISE COTE
                              United States District Judge

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

EXHIBIT "C"

NYSCEF DOC. NO. 464

INDEX NO. 651324/2017
RECEIVED NYSCEF: 07/08/2019

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

| | | |
|---|---|---|
| PRESENT: **HON. ANTHONY CANNATARO** | PART | IAS MOTION 41EFM |
| *Justice* | | |

-------------------------------------------------------------X

SCAROLA MALONE & ZUBATOV LLP,

                              Plaintiff,

                    - v -

ANDREW ELLNER, LIGHTBOX CAPITAL
MANAGEMENT, LLC, LIGHTBOX VENTURES,
LLC, BREM MOLDOVSKY, LLC

                         Defendant.

-------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 651324/2017 |
| MOTION DATE | 04/17/2019 |
| MOTION SEQ. NO. | 007 008 010 011 012 |

**DECISION AND ORDER**

The following e-filed documents, listed by NYSCEF document number (Motion 007)
141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159,
160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178,
179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197,
198, 199, 200, 246, 247, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 313, 320, 321,
322, 323, 324, 343, 344

were read on this motion to/for                 DISMISSAL          .

The following e-filed documents, listed by NYSCEF document number (Motion 008)
205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223,
224, 225, 226, 227, 228, 229, 244, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 283,
284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 314, 334, 335, 336, 337,
338, 339, 340, 341, 342

were read on this motion to/for      SUMMARY JUDGMENT (BEFORE JOINDER)     .

The following e-filed documents, listed by NYSCEF document number (Motion 010)
230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 248, 249, 250, 251, 252,
253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 271,
315, 326, 327, 328, 329, 330, 331, 332, 333

were read on this motion to/for                 SANCTIONS          .

651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW
Motion No.  007 008 010 011 012

Page 1 of 7

1 of 7

INDEX NO. 651324/2017
NYSCEF DOC. NO. 464
RECEIVED NYSCEF: 07/08/2019

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

The following e-filed documents, listed by NYSCEF document number (Motion 011) 309, 310, 311, 312, 316, 317, 318, 319, 325

were read on this motion to/for _____ STRIKE PLEADINGS _____.

The following e-filed documents, listed by NYSCEF document number (Motion 012) 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 373, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 420, 428, 429, 453

were read on this motion to/for _____ DISQUALIFY COUNSEL _____.

In this action, plaintiff, Scarola Malone & Zubatov LLP (the Scarola Firm), seeks attorney's fees from its former clients, defendants LightBox Capital Management, LLC, LightBox Ventures, LLC, and Andrew Ellner (all three together, the "LightBox defendants"). In its amended complaint, plaintiff included claims against defendant Brem Moldovsky, LLC, seeking a judgment declaring the priority of plaintiff's liens. The parties have made a variety of motions, which are all now before the Court. The Lightbox defendants move to dismiss the complaint, pursuant to CPLR 3211. Plaintiff moves for partial summary judgment pursuant to CPLR 3211 and CPLR 3212. Plaintiff separately moves for sanctions against Mr. Ellner, and the Lightbox defendants cross-move for sanctions against plaintiff. The Lightbox defendants move to have defendant Brem Moldovsky, LLC replead its answer, and defendant Brem Moldovsky, LLC moves to disqualify Jonathan Miller, Esq., as counsel for the Lightbox defendants. These motions, sequence numbers 007, 008, 010, 011, and 012, are consolidated for decision herein.

The facts of this case are as follows. The Scarola firm represented the LightBox defendants in a federal case docketed in the U.S. District Court for the Southern District of New York as *Lightbox Ventures, LLC v 3rd Home Ltd., et al.*, No. 16-cv-2379 (S.D.N.Y.)

651324/2017   SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW                    Page 2 of 7
Motion No.   007 008 010 011 012

2 of 7

INDEX NO. 651324/2017
NYSCEF DOC. NO. 464
RECEIVED NYSCEF: 07/08/2019

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(Cote, J.), between March 2016 and February 2017.  After the Lightbox defendants failed to timely pay certain of its legal fees, the Scarola firm was terminated as counsel.  The Lightbox defendants then retained defendant Brem Moldovsky, LLC as replacement counsel on March 3, 2017.  On March 13, 2017, plaintiff commenced this action to recover its legal fees.  The Lightbox defendants ultimately prevailed in the federal action and were awarded a total of $239,405.28, which included $38,888.01 in discovery sanctions, $83,338.19 in compensatory damages, $17,179.08 in prejudgment interest, and $100,000.00 in attorney's fees.

The Lightbox defendants' move to dismiss plaintiff's complaint.  On a motion to dismiss pursuant to CPLR 3211 "the court must accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Sokol v Leader*, 74 AD3d 1180, 1181 [2010] [internal quotation marks omitted]; *see Nonnon v City of New York*, 9 NY3d 825, 827 [2007]; *Leon v Martinez*, 84 NY2d 83, 87–88 [1994]).

CPLR 3211(a)(5) provides for dismissal of claims that are barred by reason of *res judicata* and/or collateral estoppel.  *Res judicata* applies "where a judgment on the merits exists from a prior action between the same parties involving the same subject matter" (*Matter of Hunter*, 4 NY3d 260, 269 [2005]).  "Collateral estoppel is an equitable doctrine that is based on the notion that a party should not be permitted to relitigate an issue previously decided against it" (*Nat'l Union Fire Ins. Co. v Hartford Ins. Co.*, 248 AD2d 78, 82 [1998]) (internal citations omitted). "The party seeking to invoke the doctrine need only establish two requirements: (1) that the identical issue was necessarily decided in the prior action and is decisive in the present action; and (2) that the party to be precluded from relitigating an issue must have had a full and fair opportunity to contest the prior determination" (*Id.*).

651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW
Motion No.  007 008 010 011 012                                                    Page 3 of 7

3 of 7

INDEX NO. 651324/2017

NYSCEF DOC. NO. 464

RECEIVED NYSCEF: 07/08/2019

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

In her decision in the underlying federal action, Judge Cote issued a partial ruling with regard to the Scarola firm's entitlement to attorney's fees for the case.  She found:

> [T]he reasonable value for litigating this matter between March 2016, when the complaint was filed, and October 2016, when the Preliminary Injunction Opinion was issued, was $100,000. Generously, a reasonable fee to litigate the following five months between October 2016 and the Scarola Firm's withdrawal in March 2017 would be substantially less than the $216,553.41 the Scarola Firm has already been paid in addition to that $100,000 . . . Because the Scarola Firm has already received more pursuant to its retainer agreement than the Court would award on a quantum meruit theory, it is not entitled to a charging lien.

Judge Cote went on to say that she would not address the question of whether or not the Scarola firm could recover additional damages on its breach of contract claim, because that claim was first filed with this Court, and so should be left to this Court to decide.

Under the doctrines of *res judicata* and collateral estoppel, plaintiff's cause of action seeking a charging lien, and its causes of action sounding in *quantum meruit* and unjust enrichment are all dismissed as they have already been litigated and decided in the federal action.

As to plaintiff's claims for breach of contract and account stated, it is well settled that an attorney discharged without cause is limited to compensation measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in a retainer agreement (*Sae Hwan Kim v M & Y Gourmet Grocers*, 239 AD2d 170 [1997] citing *Matter of Montgomery*, 272 NY 323, 326-327 [1936]); *see also Liddle & Robinson, LLP v Garrett*, 720 F. Supp. 2d 417, 425 (S.D.N.Y. 2010).  In contrast to claims for breach of contract, courts have held that account stated claims may be brought by

651324/2017   SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW
Motion No.  007 008 010 011 012

Page 4 of 7

4 of 7

INDEX NO. 651324/2017
NYSCEF DOC. NO. 464
RECEIVED NYSCEF: 07/08/2019

Case# 2019-00793-105 - JUDGE27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

attorneys discharged without cause (*see Ferraioli ex rel. Suslak v Ferraioli*, 8 AD3d 163, 164 [2004]; *Zanani v Schvimmer*, 50 AD3d 445, 446 [2008]; *Bartning v Bartning*, 16 AD3d 249, 249–50 [2005]; *see also Banker v Esperanza Health Sys., Ltd.*, 2011 WL 838909 (S.D.N.Y. 2011), *report and recommendation adopted*, 2011 WL 867217 (S.D.N.Y. 2011) (whatever limitations there may be in New York to the ability of a lawyer discharged without cause to recover under breach of contract or other theories, they do not preclude a claim for account stated).

In this case, plaintiff's claim for damages arising from a breach of the terminated retainer agreement must necessarily fail, as the federal court has decided that plaintiff has already recovered fees in excess of what it would be entitled to on a theory of *quantum meruit*. As such, plaintiff's cause of action sounding in breach of contract is dismissed. However, the branch of the Lightbox defendants' motion which seeks to dismiss the cause of action for account stated is denied.

Additionally, the branch of the Lightbox defendants' motion which seeks to dismiss plaintiff's request for piercing of the corporate veil is likewise denied. "'Veil piercing is a fact-laden claim' that is not well suited for resolution upon motion to dismiss (*Damianos Realty Group, LLC*, 35 AD3d 344 [2006], *quoting First Bank of Ams. v Motor Car Funding*, 257 AD2d 287, 294 [1999]). Before dismissal can be granted, plaintiff is entitled to obtain necessary discovery to ascertain whether there are grounds to pierce the corporate veil (*see First Bank of Ams.*, 257 AD2d at 294).

The Court next addresses plaintiff's motion for partial summary judgment, the only branch of which remains is the one seeking summary judgment on its cause of action for account stated. That motion is denied without prejudice as premature under CPLR 3212(a), as issue has not yet been joined in this case.

Both sides have requested sanctions against the other. Plaintiff's motion for sanctions is based upon Mr. Ellner's alleged submission of an exhibit which contained a

651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW          Page 5 of 7
Motion No.  007 008 010 011 012

5 of 7

INDEX NO. 651324/2017
NYSCEF DOC. NO. 464
RECEIVED NYSCEF: 07/08/2019

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

forged or false signature page to the retainer agreement. While Mr. Ellner's actions were questionable, they took place in the federal court, where the error was acknowledged, rectified, and addressed. Further, upon review of the matter, the federal court declined to issue sanctions. Under these circumstances this Court will also decline to issue sanctions at this time. Nevertheless, plaintiff's actions were not frivolous in that, although the issue of the allegedly forged signature page was addressed by the federal court, the issue was not fully briefed in that forum. As such, the Lightbox defendants' cross-motion for sanctions is denied.

Although the parties' motions for sanctions are denied, it is noted that the parties, in their conduct before the court, their communications with the Court, and in their general disregard for court rules, have exhibited unusually combative behavior, unbecoming of legal professionals. If their conduct in this action continues or worsens, all parties will expose themselves to the risk of incurring sanctions.

The Court next considers defendant Brem Moldovsky, LLC's motion to disqualify Jonathan Miller, Esq., as counsel for the Lightbox defendants. That motion is denied. As decided by Judge Cote's June 26, 2018 order, Mr. Moldovsky has failed to demonstrate that Mr. Miller's prior representation of Mr. Moldovsky and his wife "substantially relates" to Mr. Moldovsky's dispute with the Lightbox defendants (*see Lightning Park v Wise Lerman & Katz*, 197 AD2d 52, 55 [1994]; *see also Nomura Secs. Intl., Inc. v Hu*, 240 AD2d 249, 250 [1997]).

Lastly, the Lighbox defendants move to have Brem Moldovsky, LLC replead its answer. That motion is denied. Upon review, the contents of the answer meet basic pleading requirements, and if the Lightbox defendants have questions regarding ambiguities contained therein, they may seek amplification of the answer through a bill of particulars and/or other discovery.

651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW
Motion No.  007 008 010 011 012

Page 6 of 7

6 of 7

INDEX NO. 651324/2017
NYSCEF DOC. NO. 464                                                    RECEIVED NYSCEF: 07/08/2019

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Accordingly, it is

ORDERED that the Lightbox defendants' motion to dismiss the complaint is granted to the extent that the first, third, fourth, and sixth causes of action are dismissed, and otherwise denied; and it is further

ORDERED that plaintiff's motion for partial summary judgment is denied in its entirety; and it is further

ORDERED that plaintiff's and the Lightbox defendants' motions for sanctions are both denied; and it is further

ORDERED that the Lightbox defendants' motion to have defendant Brem Moldovsky, LLC replead its answer is denied; and it is further

ORDERED that defendant Brem Moldovsky, LLC's motion to disqualify Jonathan Miller, Esq., as counsel is denied, and counsel are directed to appear for a status conference in Room 490, 111 Centre Street on August 14, 2019 at 2:15PM.

|  |  |
|---|---|
| 7/8/2019 | 20190708123843ACANNATA7A7B30369D92EEBE83FDC3EE36BDBB |
| DATE | ANTHONY CANNATARO, J.S.C. |

CHECK ONE:

| | | | | |
|---|---|---|---|---|
| | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW                    Page 7 of 7
Motion No.  007 008 010 011 012

EXHIBIT "D"

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

BREM MOLDOVSKY, L.L.C.
Brem Moldovsky, Esquire (Attorney ID 79485)
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
Phone 215-546-9957

Gerald J. Pomerantz, Esquire (Attorney ID 3636)
THE COVENTRY HOUSE
7301 Coventry Ave, Suite 501
Elkins Park, PA 19027
Phone (267) 255-7229

Attorneys for the Plaintiffs

## IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CIVIL DIVISION

| | |
|---|---|
| BREM MOLDOVSKY, ESQUIRE; and<br>BREM MOLDOVSKY, L.L.C.;<br><br>               *Plaintiffs*,<br>   vs.<br><br>JONATHAN MILLER, ESQUIRE, D/B/A/<br>THE LAW FIRM OF JONATHAN R.<br>MILLER; ANDREW ELLNER;<br>LIGHTBOX VENTURES, LLC, and<br>LIGHTBOX CAPITAL MANAGEMENT, LLC.<br><br>               *Defendants*. | Case No: 2019-00793<br><br>TRIAL BY JURY OF 12 DEMANDED |

## NOTICE

      **You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Second Amended Complaint and notice are served by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Amended Complaint or for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.**

1

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

**Bucks County Bar Association**
**135 East State Street**
**Doylestown, PA 18901**
**Phone (215) 348-9413, 1-800-479-8585**
**www.bucksbar.org**
**PA Bar Association: www.pabar.org**

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

**LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO. VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.**

**Bucks County Bar Association**
**135 East State Street**
**Doylestown, PA 18901**
**Phone (215) 348-9413, 1-800-479-8585**
**www.bucksbar.org**
**PA Bar Association: www.pabar.org**

Brem Moldovsky, L.L.C.

2

Case 2:21-cv-00439-ER   Document 22-3   Filed 04/05/24   Page 225 of 364

3

Dated: August 15, 2019

BY: Bren Moldovsky, Esq.

BY: Gerald J Pomerantz, Esq.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

BREM MOLDOVSKY, L.L.C.
Brem Moldovsky, Esquire (Attorney ID 79485)
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
Phone 215-546-9957

Gerald J. Pomerantz, Esquire (Attorney ID 3636)
THE COVENTRY HOUSE
7301 Coventry Ave, Suite 501
Elkins Park, PA 19027
Phone (267) 255-7229

Attorneys for the Plaintiffs

<u>Notice to Plead</u>
**To: The Defendants, you are required
to reply to the allegations of this pleading
within 20 days from the date of service**

**/s/ Brem Moldovsky, Esq.**
**Attorney for Plaintiffs**

**/s/ Gerald J. Pomerantz, Esq.**
**Attorney for Plaintiffs**

**IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA**
**CIVIL DIVISION**

| | |
|---|---|
| BREM MOLDOVSKY, ESQUIRE; and | |
| BREM MOLDOVSKY, L.L.C.; | |
| | Case No: 2019-00793 |
| *Plaintiffs,* | |
| vs. | TRIAL BY JURY OF 12 DEMANDED |
| JONATHAN MILLER, ESQUIRE, D/B/A/ THE LAW FIRM OF JONATHAN R. MILLER; ANDREW ELLNER; | |
| LIGHTBOX VENTURES, LLC, and LIGHTBOX CAPITAL MANAGEMENT, LLC. | |
| *Defendants.* | |

1

## SECOND AMENDED  COMPLAINT IN CIVIL ACTION

AND NOW comes the Plaintiffs, Brem Moldovsky, L.L.C. and Brem Moldovsky, Esq. by and through his counsel, Brem Moldovsky, Esq., of Brem Moldovsky, L.L.C. and Gerald J. Pomerantz, Esq. and hereby complains of the Defendants as follows:

## PRELIMINARY STATEMENT

1.      Plaintiffs bring this Amended Complaint in Civil Action upon Rules to File an Amended Complaint filed by each Defendant after Pre-Amended Complaint Discovery served to ascertain certain specific facts for the purpose of this pleading was stayed pending the adjudication of two Motions for Protective Orders by the Defendants.

2.      This Amended Complaint is fundamentally an Amended Complaint about attorney malpractice by Jonathan R. Miller, Esq. based on his attorney client relationship with Plaintiffs, which included Bucks County, PA representation and counseling of the Plaintiffs in two related litigations (hereinafter the "prior litigations") and subsequent representation of Mr. Ellner and the Lightbox entities against the Plaintiffs in violation of the Pennsylvania Rules of Professional Conduct, including Rules1.6, 1.7, 1.8, 1.9, 3.2, 3.7  as confirmed by the expert report of Samuel Stretton, Esq., see, Stretton Report, incorporated herein by reference and attached hereto as Exhibit "A",[1] and the supplemental report of Samuel Stretton, Esq. See, Stretton Supplemental Report,

---

[1] For this and all Exhibits referenced in this Second Amended Complaint with the exception of Exhibit "D", since they are the same as the Exhibits to the Complaint, the attachment, reference and incorporation of them will be per the copies attached, referenced and incorporated with Plaintiffs' Complaint in this case, ECF Doc. #41, Pursuant to Pa. R.C.P. Rule 1010(g).

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

incorporated herein by reference and attached hereto as Exhibit "D". Mr. Stretton's report and supplemental report have also been filed with Certificates of Merit.

       3.      The Plaintiffs' claims are likely to prevail, because Mr. Miller is in deep conflict of interest, has committed blatant malpractice and has violated the Pennsylvania Rules of Professional Conduct, including but not limited to:

        a.  Rule 1.6 - an attorney cannot use client information without client/former client permission and against the client/former client;

        b.  Rule 1.7 - an attorney cannot proceed against a current client on behalf of another client;

        c.  Rule 1.8 - a lawyer shall not represent a client if the representation involves a concurrent conflict of interest, including a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client;

        d.  Rule 1.9 - an attorney cannot litigate against a client/former client on claims substantially similar to (about which the attorney has substantially related information from the prior representation on) claims for which the attorney previously represented the client/former client;

        e.  Rule 3.2 – an attorney cannot frustrate a client's right to expedient litigation;

        f.  Rule 3.3 (a) – an attorney shall not make a false or misleading statement of material fact to a tribunal; and

        g.  Rule 3.7 an attorney cannot be a witness as to a former client.

       4.      Mr. Ellner and Lightbox have been named as Defendants herein based on the persistence in retaining Mr. Miller as their Counsel in New York despite being aware that Mr.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Miller's representation against the Plaintiffs would raise conflicts of interests and make them privy to certain information and knowledge that they would not have but not for the representation by Mr. Miller (which Mr. Ellner and Lightbox have capitalized on). Mr. Ellner and Lightbox insisted that they did not have the means or ability to source different Counsel to proceed against the Plaintiffs, however, they have had no difficulty retaining Fox Rothschild in this matter, as well as the various attorneys they have hired and utilized, as explained at Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3, at ¶6.[2]

5.      Mr. Ellner and Lightbox have also been named as Defendants based on violations of the Pennsylvania Wiretap Act, 18 Pa. C.S.A. § 5703, and lack of candor to the tribunal in that regard, as a result of recording and transcribing telephone calls between them and the Plaintiffs, at least one of which took place on Thanksgiving Day while Plaintiffs were in Pennsylvania on a Pennsylvania phone, and distributing said recordings and transcriptions of recordings to Mr. Miller, the Court, co-litigants in New York, the public by filing on the record, and possibly others. Mr. Ellner has stated and verified with this Court that he has "never" made a call to the Plaintiffs on any line but a New York line while in New York. This is demonstrably false, however, the extent to which this is false is the subject of the Pre-Complaint Discovery. See, Plaintiffs' Response to Lightbox's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #26, at 44.

---

[2] Documents of record are incorporated by reference herein rather than attached pursuant to PA RCP §1019(g).

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## PARTIES

6.      Plaintiff Brem Moldovsky is an individual residing at 118 Oakdale Avenue, Washington Crossing, PA 18977.

7.      Plaintiff Brem Moldovsky, L.L.C. is a law firm with offices in Pennsylvania, New York, and New Jersey, and is also referred to herein as "the Moldovsky Firm."

8.      Defendant Jonathan R. Miller d/b/the Law Firm of Jonathan R. Miller is an attorney licensed to practice in Pennsylvania, New York, and New Jersey with a primary address at 100 Overlook Center, 2nd Floor, Princeton, NJ 08540.

9.      Defendant Andrew Ellner is an individual residing at 210 West 77th Street, Apt. 8W, New York, NY 10024.

10.     Defendant Lightbox Ventures, LLC is an entity owned by Andrew Ellner with a registered address at 210 West 77th Street, Apt. 8W, New York, NY 10024.

11.     Defendant Lightbox Capital Management, LLC is an entity owned by Andrew Ellner with a registered address at 24 West 40th Street, Second Floor, New York, NY 10024.

12.     Andrew Ellner, Lightbox Ventures, LLC, and Lightbox Capital Management, LLC are hereinafter collectively referred to as "Lightbox".

## JURISDICTION

13.     The actions, circumstances, transactions and facts of this case took place and/or arose at least mostly in Bucks County, Pennsylvania.

14.     The dispute includes disputes as between two Pennsylvania attorneys.

15.     The Plaintiffs are located in Bucks County, Pennsylvania, was acquainted with Mr. Miller and interacted with Mr. Miller mainly in and/or as Plaintiffs were in Pennsylvania.

5

16.     Defendant Jonathan R. Miller d/b/the Law Firm of Jonathan R. Miller represented and counseled the Plaintiffs as a Pennsylvania attorney in the prior litigations from which the malpractice complained of stems, to a significant extent, in the Court of Common Pleas of Bucks County, Pa.

17.     Defendants Mr. Ellner and the Lightbox entities made secret, unauthorized recordings of a Pennsylvania resident, at his home and otherwise in Pennsylvania, at times on a cellular phone with a Pennsylvania area code.

18.     Jurisdiction is appropriate pursuant to Pa.R.C.P.1910.2 (a)(2).

## FACTUAL BACKGROUND

## ACQUAINTANCE WITH MR. MILLER: BEGINNING OF ATTORNEY-CLIENT RELATIONSHIP

19.     The Plaintiffs became acquainted with Mr. Miller in roughly 2014 after meeting through a bar association list-serve and realizing that they had what seemed to be similar law practices, were proximately close to one another's homes and had various commonalities including both having spent significant time in Israel.

20.     Like Brem Moldovsky, Mr. Miller is an attorney in Pennsylvania, New York and New Jersey and thus bound to follow law and attorney ethical standards as an attorney in all three states.

21.     The genesis of colleague relationship was based on back and forth questions about legal issues, some general and some more specific.

22.     Upon discovering their similarities, the Plaintiffs and Mr. Miller discussed and provided advice to each other on many things related to their law practices, including managing small law practices, time management, usage of staff and attorneys and rates of pay, advertising

6

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and marketing, value of time and time as a marketable good, limitations, and other aspects of management and small law practice

23.     Brem Moldovsky and Mr. Miller began a colleague and friendly relationship and spoke and emailed on a somewhat regular basis about legal issues.  They also confided personal and sensitive information with each other as friends and colleagues, got together for meals and with family for holidays, including at the Moldovskys' home.

## MR. MILLER'S LEGAL REPRESENTATION AND ATTORNEY-CLIENT RELATIONSHIP IN PRIOR BUCKS COUNTY MATTERS

24.     In 2015-2016, simultaneous to much of the activity in the underlying Federal litigation of Lightbox Ventures, L.L.C. v. 3rd Home Ltd., et al., No. 16-cv-02379 (S.D.N.Y.), Mr. Miller represented, acted as counsel and was an attorney for Brem Moldovsky, Esquire and his wife, and co-counsel with Brem Moldovsky, L.L.C. in two Pennsylvania litigations (the prior litigations).

25.     Mr. Miller's client agreement letter was between Mr. Miller and Brem Moldovsky, however, Mr. Miller also "implicitly" represented Brem Moldovsky's wife and represented, provided counsel to and was co-counsel to Brem Moldovsky, L.L.C.  See, Mr. Millers Agreement Letter, incorporated herein and attached hereto as Ex. "B".

26.     Payment for legal service was made by Brem Moldovsky, L.L.C.

27.     Because of the colleague and friend relationship between Mr. Moldovsky and Mr. Miller, many of the correspondence, arrangements and agreements between the parties were oral.

28.     Mr. Miller's representation included lawyering in various capacities on the Moldovskys' claims of misrepresentation and breach of contract with damages and losses including loss and waste of time - of attorney, paralegal and legal professional time, seeking relief

7

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and compensation of payment of the value of the professional fees based on Brem Moldovsky, LLC.'s billing, legal fees, value of professional hours, etc.  See, true and correct copies of the Summonses and  Complaint in the Pennsylvania matter attached to Mr. Miller's Answer to the Plaintiffs' Motion to Disqualify him as Counsel to his co-Defendants in this matter, ECF Doc. #18.

29.     Based upon statements, actions and interaction, it was understood and reasonably believed that Mr. Miller would act as counsel in a manner that conformed with the duties inferred upon him as an attorney registered to practice in the Commonwealth, including a duty of loyalty, duty of trust, duty to keep confidences and a duty to act in the best interests of his clients.

30.     The Plaintiffs reasonably relied on these actions and representations.

31.     Mr. Miller appeared to act trustworthy, protective of client confidences and sensitivities, caring about legal questions raised and their impact, and seemed not be telling other Plaintiffs sensitive information or taking other such wrongful steps.  Later, as described herein, things changed and it was realized that Mr. Miller, particularly in 2018 and on, was acting quite improperly.

32.     Accordingly, it was reasonable under the circumstances to believe Mr. Miller was acting within an attorney client relationship with Plaintiffs, at least until about May 2018 when Mr. Miller turned against the Plaintiffs.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶34-35.

33.     During the two litigations in which Mr. Miller acted as Counsel for the Moldovskys, he acted as counsel providing guidance, counsel, advice, legal input and such to the Plaintiffs.  He also did act as a prime contact with the other counsel on the case and prepared, drafted and edited litigation documents, performed legal research, did analysis of and helped to build and work on claims and defenses, reviewed relevant rules and law, performed legal strategizing,

8

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of
the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

correspondence and negotiation with counsel, drafting of official correspondence documents on and related to the case, reviewed the facts of the matters, performed analysis and gave input about expert usage, engaged in settlement discussions, and more, all of which he billed for as appropriate and was compensated for accordingly. See, true and correct copies of Mr. Miller Retainer Agreement and Billing, redacted for confidentiality, attached hereto and incorporated herein as Exhibits "B" and "C" respectively.

34.    In the course of his representation Mr. Miller was provided with, made privy to, digested and/or absorbed hundreds of pages of financial details including legal billing and its components, liquidity and ability to make large payments, payment terms,  ability to litigate extensively, time and capability of the office, personal and law firm financial information, family information, bills, salaries and hourly rates as well as profits and expenses, payment of outside legal fees, and was acquainted with the manner in which the Plaintiffs negotiate and deal with other counsel and prefer to handle matters, the approach to risk and risk assessment, desire or willingness to be involved in ongoing litigation, other strengths and weaknesses that Lightbox and Ellner would not be otherwise exposed to, much if not all of it sensitive, personal and confidential, and more. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶3,14,88 and others.

35.    Mr. Miller has obtained confidential and sensitive information about Plaintiffs that is detrimental and unfair when employed by Mr. Miller to the benefit of Lightbox and Mr. Ellner and against Brem Moldovsky, this law firm, and thus its personnel, in violation of the rules of attorney ethical and professional conduct.

36.    Now Mr. Miller represents Lightbox, Brem Moldovsky, L.L.C.'s former clients, in this dispute against Brem Moldovsky, L.L.C. and Brem Moldovsky, Esquire, wherein the dispute

Case# 2019-00793-105 - JUDGE.27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

includes claims by Brem Moldovsky L.L.C. of misrepresentation and breach of contract with damages and losses including loss and waste of time - of attorney, paralegal and legal professional time, seeking relief and compensation of payment of the value of the professional fees based on Brem Moldovsky, LLC.'s billing, legal fees, value of professional hour, and more.  See, Brem Moldovsky, L.L.C.'s Answer, Defenses, Counter and Crossclaims, redacted according to Lightbox's requests while parties await the Court's determination of redactions, Ex. "H" to Plaintiffs' Response to Mr. Millers Answer to Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #27.

37.     Mr. Miller's knowledge gained by being the Plaintiffs' Counsel of their intimate and sensitive litigation and financial limitations and more is unfair in light of Lightbox's known penchant for aggressive litigation, ability to fund to the tune of at least hundreds of millions of dollars, strongly held beliefs of pursuing based on ego and grudge his version of justice no matter what the costs including "caging" business opponents he perceives have wronged him.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶88.

38.     Mr. Miller's knowledge of the Plaintiffs' strategic thinking, planning, actions, litigation approaches and tactics, negotiation approaches and more, as to how to engage, deal, litigate with, etc. a litigation onslaught by a well-funded and aggressive party harboring disdain toward Plaintiffs and their approaches, including tendencies to avoid and walk away from righteous claims and positions in light of such opposition, are and have been poisonously helpful to Lightbox, deeply and unfairly hurtful to Plaintiffs, and terribly troubling, complicating and time-wasting for these Lightbox disputes against both prior law firms based on failure to pay legal fees and costs based on written, signed and acknowledged agreements to pay.

10

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

39.    During and after the Pennsylvania litigations, the Plaintiffs maintained an attorney-client and attorney-colleague relationship with Mr. Miller in which he provided legal advice, guidance and counsel.  There were times when he provided more active representation as well. Mr. Miller was acting counsel from the Fall of 2015 through the Fall of 2016.  Over the course of years, between 2015 and 2018, there were in well in excess of 20 times when Mr. Miller made inquiries to the Plaintiffs – and various from this firm to him - about matters which included sensitive, important and challenging client and personal issues that a sophisticated attorney would not share with a casual acquaintance, including strategizing, reviewing submissions and filings to the Court, mediation and settlement considerations and more related to the Federal Lightbox matter. Many such emails were included as Exhibits to Brem Moldovsky, L.L.C.'s Motion to Disqualify Mr. Miller in the Federal Court, and are attached hereto along with Brem Moldovsky, L.L.C.'s Reply in Support of that application, redacted according to Lightbox and the Court's designations in that matter.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶35.

40.    Plaintiffs received, sought, were given and had interaction with Jonathan Miller and his firm.  They sought his counsel and he provided counsel and the attorney client relationship existed.  He advised them on many various matters and issues.

## MOLDOVSKY FIRM REPRESENTATION OF LIGHTBOX

41.    The Moldovsky Firm began interacting with Mr. Ellner and Lightbox in January 2017, then representing them in February 2017, upon referral by a bar association legal referral service.

11

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

42.     Mr. Ellner and Lightbox represented themselves as sophisticated, counseled, and capable and trustworthy of managing hundreds of millions of dollars in investments. Mr. Ellner had previously worked for Lehman Brothers, holding global and executive positions.

43.     The underlying litigation involved a failed joint venture for a global real estate venture Mr. Ellner claimed and believed had in excess of hundreds-of-millions of dollars-worth of potential, was a first in the industry, already had listings of hundreds-of-millions of dollars of real estate and more. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at fn8.

44.     During the time of discussions with Mr. Ellner over January and into February 2017 over terms of representation, including whether to take the matter on in a hybrid fee agreement and various details related thereto, the Plaintiffs discussed, reviewed and sought advice and received input from Mr. Miller, under an expectation of there being an ongoing counsel relationship, regarding these very issues, including key terms of the client agreement letter, fees and financial arrangements and issues that could arise related to contingent and hybrid arrangements. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶37.

45.     At one point over the course of the attorney-client and colleague relationship, Mr. Miller pointed out various components and potential issues with the Moldovsky Firm's fee agreement, which Mr. Miller is now attacking. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶37.

46.     When Lightbox required Counsel to take over representation in the New York Supreme Court litigation (which is ongoing), the Plaintiffs reached out to Mr. Miller and raised

12

the possibility of Mr. Miller being Counsel and working in conjunction with the Plaintiffs to defend Lightbox in both New York forums.

47.     The Plaintiffs referred their Counsel and colleague Mr. Miller to Lightbox (and they realized they knew each other from many years before) to represent them in the New York State Court against the Plaintiff in that case, Scarola Malone & Zubatov, LLP[3] (hereinafter "SMZ" or the "Scarola Firm"), in conjunction with the work the Plaintiffs were doing in the related Federal matter.  This firm assisted with setting up the working relationship between Mr. Miller and Lightbox on this case, and provided counsel regarding the State matter, and Mr. Miller provided counsel on the Federal matter, this firm's relationship with Lightbox and positions and claims as between this firm and SMZ (though each the Plaintiffs and Mr. Miller only entered their appearance in one matter for Lightbox: Plaintiffs in the Federal matter and Mr. Miller in the State matter (with Mr. Miller entering the Federal litigation only after the Moldovsky Firm withdrew and the disputes of Lightbox against the Moldovsky Firm and Mr. Miller against the Moldovsky Firm in the late Spring of 2018)).

48.     Lightbox was made aware that Mr. Miller had represented the Plaintiffs in prior litigations and had an ongoing relationship with the Plaintiffs.

Mr. Moldovsky made clear and explained to Mr. Ellner – who acknowledged - that Mr. Miller had been and ongoing was a personal and family attorney to Mr. Moldovsky and his family, as well as a friend, colleague  and someone in the same small firm set up with which Mr. Moldovsky exchanged advice, including regarding running and managing a small law firm.

---

[3] After the initiation of their action Scarola Malone & Zubatov, LLP was renamed Scarola Zubatov Schaffzin pllc.

13

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-00793-105 - JUDGE27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

49.     The Plaintiffs' reasonable belief was that Mr. Miller would not breach his duties to his client and betray his friend and colleague by using knowledge gained in his representation of the Plaintiffs to Lightbox's benefit against the Plaintiffs.  However, as described herein, this turned out not to be true.

50.     The Plaintiffs make considerable efforts to make sure there are no conflicts with former or current clients, former or current potential clients, friends, family members, or any other person prior to representation, and reasonably expected Mr. Miller to do the same, to at least an industry appropriate and acceptable extent.

51.     There were concerns raised by this firm about Mr. Miller's representation at the time, including that Mr. Miller did not have experience litigating a malpractice claim (which is anticipated in the State matter).  Apparently, this led to some animus by Mr. Miller against this firm, which was stoked further by the conflict with Lightbox.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶58.

52.     In November of 2017 The Moldovsky Firm exercised its contractual right to not have to continue on the litigation due concerns with the economic worthwhileness of the case and value, economic hardship on the firm, client misrepresentations and related, and this was part of what lead to the amending of the Agreement between the Firm and Lightbox.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶53.

53.     Mr. Miller, as counsel for Lightbox in this state court litigation was not only aware of and in touch with Lightbox about the Amended Agreement, he actually drafted paperwork to help secure the Moldovsky Firm's fees thereunder, particularly considering SMZ'S position and that Lightbox at the time wanted the Moldovsky Firm to be paid and to feel secure it would be

14

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

paid. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶.

54.    In early 2018 Lightbox and Ellner while continuing to be difficult in communication and at odds on various strategy with this firm also were failing to pay as agreed which lead to the Plaintiff Firm motioning the Federal Court to be withdrawn as counsel. Upon Court permission, this firm was withdrawn upon the Court's decision on the trial submissions. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶41,42,53.

55.    There is a common theme of Lightbox becoming dissatisfied with service providers related to the Third Home litigation, as evidenced by the fact that the Moldovsky Firm is the second firm for Lightbox in the Federal matter that is now involved in litigation averse to it. Lightbox has complained about every professional involved in the Federal matter. The New York State matter was initiated by prior counsel to Lightbox SMZ for account stated and other claims related to unpaid fees. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at fn6.

## WIRETAPPED PHONE CALL RECORDINGS ARE MADE BETWEEN JANUARY 2017 – FALL OF 2018, INCLUDING THANKSGIVING DAY, 2017

56.    Over 2017 and about the first half of 2018, without the Plaintiffs' knowledge or consent, an unknown number of phone calls were recorded by Ellner and Lightbox, including at least one conversation on Thanksgiving Day, 2017, while Mr. Moldovsky was at his home (which has an office) in Bucks County, Pennsylvania, though there were others based on Mr. Miller referring to them in the plural tense and there being many calls with Mr. Moldovsky and Mr. Ellner. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this

15

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

matter, ECF Doc. #3 at Ex. "H". It has been admitted that at least two recordings of these calls have occurred by Mr. Ellner, and it has been misrepresented that he never called Plaintiffs on a Pennsylvania phone number or when they were in Pennsylvania, both of which are false.

57.     Plaintiffs were not made aware of the recordings until at or around the time of Mr. Ellner and LightBox filed a transcription as an Exhibit to his Affirmation in Opposition to Statutory Charging Liens in the Southern District of New York litigation on October 12, 2018.

58.     Lightbox has affirmed to the Court that they *only* called the Plaintiffs' New York line while in New York, however, this is provably false. At least some calls were from Lightbox to a Pennsylvania cell phone. See, Plaintiffs' Response to Lightbox's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #26, at 44.

59.     Additionally, the Plaintiffs were often or mostly at Brem Moldovsky's home office in Bucks County, Pennsylvania when the majority of these phone calls took place and various of the calls were on Brem Moldovsky's cell phone number, which as a 610-area code. See, Plaintiffs' Response to Lightbox's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #26, at 45.

60.     Mr. Ellner was aware that Plaintiffs were based out of Bucks County, PA and were often in Bucks County, PA (and other places in Pennsylvania), Mr. Ellner regularly mailed payments and materials to the Bucks County, Pennsylvania office, which he utilized and treated as the primary address for contact.

61.     Mr. Ellner appreciated that part of what made the Plaintiffs more affordable than other firms he had contacted was the Pennsylvania location (despite having an active New York office).

16

62.     Ellner and Lightbox travel frequently to many different states and countries, and as such, their location at the time of the recordings is unknown.  However, based on vacation home ownership, relatives, business interests and other reasons, Mr. Ellner visited and spent time in other states in the relevant time period, which, like Pennsylvania, are also "two consent states".  Such states are believed to include Florida, Nevada and/or California. (See: https://www.justia.com/50-state-surveys/recording-phone-calls-and-conversations/).  See, Plaintiffs' Response to Lightbox's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #26, at 45.

63.     Lightbox and Mr. Miller have referred to at least one recording and have attached one transcript purported to be from a wiretapped recording of Brem Moldovsky on Thanksgiving 2017 from his Bucks County home surreptitiously recorded by Mr. Ellner and handled by Mr. Miller to a document of record in the Southern District of New York Federal and the Second Circuit Courts in violation of 18 Pa. C.S.A. § 5703.  See, Plaintiffs' Response to Lightbox's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #26, at 45.

64.     Thus, Lightbox and Mr. Ellner have violated the Wiretap Act's provisions against making and distributing unauthorized recordings.

65.     It has been indicated by Defendants, and at the least not denied, that there are other recordings, and Mr. Miller has threated to and release and play such illegal recordings to a jury with devastating impact.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at Ex. "H".  To be fair, based on the Plaintiffs' appropriate conduct and correspondence it is believed that any such recordings do not of course include Brem Moldovsky doing or saying anything inappropriate, but, Mr. Miller and Ellner will spin it that way

17

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and cause Brem Moldovsky and Brem Moldovsky, L.L.C. to spend more wasted time explaining away their false and out of context usages, as both have already spent much of the last 10 months doing. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at Ex. "A" at ¶ 34, Ex. "D" at ¶ 9.

66.     Despite several requests, Lightbox and Mr. Miller have not turned over any phone call recordings or transcripts. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at Ex. "I".

67.     Pre-Complaint discovery was served via email on February 5, 2019, via process server to Mr. Miller on February 26 and to Lightbox on February 27, 2019, and by US Mail on March 14, 2019. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. ## at Ex. "J".

68.     No Answer has been received yet, due to the Court's issuance of a Stay, though the Plaintiffs have been forced by Rule to file the Complaint regardless.

## PLAINTIFFS WITHDRAWAL AS COUNSEL FOR LIGHTBOX AND CONFLICT WITH MR. MILLER

69.     In or about April of 2018, based on the various conflict, communication, strategy differences and failure to pay issues with Lightbox, the Plaintiffs moved to withdrawal as Counsel from the Federal Matter. Judge Cote granted the motion, and the Plaintiffs were withdrawn upon Judge Cote rendering her Decision and Order on trial submission. Notably, the Plaintiffs prevailed in Lightbox's claims and successfully defended Lightbox against counter-claims in that matter, which Judge Cote has affirmed.

70.     Shortly thereafter, Mr. Miller on behalf of Lightbox began to raise attorney fee dispute issues against this firm, and, upon information and belief, Mr. Miller was acting in conflict

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

against Plaintiffs in advising, counseling and conspiring with Mr. Ellner and his companies at points and continuously from late 2017 through the Spring of 2018 – in particular in the late Winter and early Spring of 2018 - regarding Lightbox's making and raising hollow, false and unfounded fee and billing issues against Plaintiffs, including among which are those which Judge Cote found do not make out even a prima facie allegation of attorney wrongdoing.

71.    Mr. Miller worked behind the scenes and also on the front lines with the benefit of Plaintiffs' confidential, secret, private and sensitive information on behalf of the other Defendants and against the Plaintiffs in attacking Plaintiffs' billing, billing practice, account stated facts-on-the-ground and argument and more, as stated herein and will be further fleshed out in this case, including by discovery.

72.    Seeing, sensing and understanding inherently, generally and to various extents that conflicts of interest in Mr. Miller litigating against this firm were in play and activated by Lightbox being in real adversarial mode against this firm and Mr. Miller being their spearhead against this firm including on issues for which he had represented this firm were at play and with more to come, the Plaintiffs raised the conflicts of interest with Mr. Miller.  Unfortunately, and, as something of a prelude to what was to come, Mr. Miller became hostile, aggressive, retaliatory, and attacking, rather than acknowledge the conflicts and acting appropriately and ethically accordingly.

73.    Mr. Miller acted with hostility, anger, vitriol and derogation toward this firm, again, characterizing what was to come, what has already come to pass and more of which can be avoided or at least limited by granting injunctive relief estopping Mr. Miller from representing against the Plaintiffs.

Case# 2019-00793-105 - JUDGE.27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

74.     Mr. Miller thus then continued on with great zeal and malice and has used the veneer of litigation representing Lightbox against this firm related to legal fees and the agreement between clients and counsel fueled by a dissatisfied litigant (Lightbox – already litigating with the prior firm) to engage in a vendetta against the Plaintiffs, which manifested even further conflicts and problems in direct conflict of interest under the Pennsylvania (and New York) Rules of Professional Conduct.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶59.

75.     Mr. Miller maliciously conveyed that if the Moldovsky Firm continued to raise issue with Mr. Miller's conflicts of interest that Mr. Miller would use the processes on behalf of Lightbox to make things purposefully difficult and hard for the Moldovsky Firm and Brem Moldovsky, Esquire.

76.     Mr. Miller has acted and continues to act toward Plaintiffs in an attacking, enemy-like, hostile and unprofessional manner as part of his follow-through to make things difficult for Plaintiffs and to punish for daring to raise that there are conflicts of interest issues, and this includes and is not limited to making up false, overblown and inaccurate attacks against Plaintiffs, using their sensitive information against them and the various other conduct as plead herein.

77.     The Defendants acted for purposes including greed, profit, malice, enrichment, and/or to do favor or benefit to other Defendants per the facts as plead and as occurred.

78.     Mr. Miller refused any phone dialogues mainly because he did not like the Plaintiffs' raising of conflict of interest.  He then forbade phone conversation.  Accordingly, since that time, there has been no phone or in person dialogue between the Plaintiff firm and Lightbox or counsel for Lightbox.  The benefits of mature counsel communication have been absent in this case as between the Plaintiff firm and Lightbox due to Mr. Miller's obsessive and vehement denial

20

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of
the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

of his conflicts of interest and his resultant refusal to dialogue. Numerous times Mr. Miller has referred to the conflicts of interest raised by the Plaintiffs as the product of hallucination and derangement. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶84.

79.     The Moldovsky Firm moved to disqualify Mr. Miller as counsel for Lightbox and Ellner and in response and at various times Mr. Miller made threats to release confidential information and to some extent did, in violation of Pennsylvania Rules of Professional Conduct 1.6 and 1.9. Judge Cote did not grant the motion, since the matter before her was limited to a charging lien. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶67.

80.     Judge Cote did not review the expert report of Mr. Stretton, and she did not preclude any future motions to disqualify Mr. Miller. Judge Cote was not presented with the full facts and circumstances presented here, including so much that occurred after her decision, including but not limited to the conflicts arising with the crossclaims and this Pennsylvania suit and more. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶16, 164.

81.     The Moldovsky Firm, though it disagreed with Judge Cote's decision on its Motion to Disqualify Miller, did not appeal because ultimately, on a limited charging lien matter, Miller's involvement did not seem to impact the charging lien decision by Judge Cote, but it did make matters much more difficult, expensive and overburdened by false and wasteful issues. However, Miller's involvement against this firm is inappropriate for all of the reasons stated herein.

82.     His conflicts of interest raised and compounded, and animosity stoked, Mr. Miller then filed a wild and unauthorized Interpleader Complaint against Brem Moldovsky, L.L.C. (and

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

SMZ). Importantly Judge Cote totally rejected the false, made up, exaggerated, misconstrued, etc. allegations of Lightbox by Mr. Miller against the Plaintiff firm as not even worthy of a cause hearing and as not even making a *prima facie* case of their positions. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶69.

83.     With all the vast submissions by Mr. Ellner and Mr. Miller, including an allegedly damning (though it is not) and illegally recorded taped phone call between Mr. Ellner and Mr. Moldovsky on Thanksgiving Day, there was no legitimate issue raised by them.  Though their causes of action had been dismissed as not appropriate and not belonging, all of their 244 paragraphs and 50 pages of generally wild, made up, purposefully distorted, falsely demeaning, etc. allegations and more than 25 pages of exhibits were considered and rejected by Judge Cote. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶71.

84.     Judge Cote Ordered all parties to submit filings in support of (or opposition to) statutory charging liens in the Federal matter, upon which she Ordered that Brem Moldovsky, L.L.C. was entitled to a charging lien of $45,948. 00.  Judge Cote further found that this firm succeeded on behalf of Lightbox against Third Home on all that was possible, the firm's rates were reasonable, and that this firm comported itself appropriately. See, Opinion and Order, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at Ex. "K".

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### MR. MILLER ACTIONS UNDERTAKEN TO DELAY, FRUSTRATE, AND HARASS IN FURTHERANCE OF CONFLICT, BREACHES OF DUTIES, ABUSE OF CLIENT/FORMER CLIENT, AND LACK OF CANDOR TO THE COURT AND THE PARTIES

85.     Mr. Miller is now actively engaged in painting an intentionally distorted and inaccurate caricature of his former clients and disparaging his clients with wild allegations the likes of which the Plaintiffs have never been subjected to, involved in, or personally seen.

86.     Mr. Miller has engaged in behavior that is unprofessional, improper, unethical, and wrongful, acting in an unlawful manner that is lacking normal, industry standard, professional and appropriate standards, protocols, methods, reviews, controls and direction and thereby and by the actions herein complained acted in negligence, gross negligence, recklessness, negligent practices, policies and procedures.

87.     The Defendants violated the standards of care and the duties of loyalty, diligence and communication based on the conduct alleged hereto.

88.     Mr. Miller has violated the Pennsylvania Rules of Professional Conduct, including but not limited to:

      a. Rule 1.6 - an attorney cannot use client information without client/former client permission and against the client/former client;

      b. Rule 1.7 - an attorney cannot proceed against a current client on behalf of another client;

      c. Rule 1.8 - a lawyer shall not represent a client if the representation involves a concurrent conflict of interest, including a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client;

23

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

    d.   Rule 1.9 - an attorney cannot litigate against a client/former client on claims substantially similar to (about which the attorney has substantially related information from the prior representation on) claims for which the attorney previously represented the client/former client;

    e.   Rule 3.2 – an attorney cannot frustrate a client's right to expedient litigation;

    f.   Rule 3.3 (a) – an attorney shall not make a false or misleading statement of material fact to a tribunal; and

    g.   Rule 3.7 an attorney cannot be a witness as to a former client.

89.    The Plaintiffs have continued to raise Mr. Miller's conflicts of interest and sharp practices, and Mr. Miller has made good on his threats to make things hard on the Plaintiffs by taking advantage of his clients' anger and misdirection to engage in a non-stop, over-inflated, self-righteous, baseless, bitter, etc. assault on the Plaintiffs by litigation, threats, violations of the Moldovskys' rights, psychological attacks, and more. See e.g., Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶64.

90.    Mr. Miller has continually affirmed (falsely) to the Court that he has no knowledge as to the level of wealth and finances and the interplay of these with the Moldovsky Firm's practices, abilities, charging and collecting fees, facts that he would have learned in the prior matters. As described, even a cursory read of the Amended Complaint in the prior matter, which Mr. Miller commented on and verified, would prove that statement false. See, Plaintiffs' Response to Mr. Miller's Answer to Plaintiff's Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #27 at ¶20.

91.    Mr. Miller fabricated that the Plaintiffs said negative things about Mr. Ellner in the transcribed phone call(s), when really this firm was just explaining the rational for needing to

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

withdraw, including wrongful treatment experienced and observed. When pushed for specific examples, Mr. Miller could not provide them. At least in part based on his own history of wrongful behavior, even as reflected in this motion's allegations and that can be provided *in camera* so to avoid embarrassment, Mr. Miller held it against and turned on the Plaintiffs that the Plaintiffs were not willing to ignore Mr. Ellner's wrongful treatment of them and others.

92.     Mr. Miller has lead and/or facilitated Lightbox to pursue a frivolous 2nd Circuit appeal[4] with very little chance of any success and no articulable credible foundation in order to cause financial and time strain on the Moldovsky Firm and forego an appeal that would have been a much more prudent use of time and funds.

93.     In order to further delay and frustrate and cause inefficiency, and by a ploy elevating form over substance, Lightbox and Ellner filed a frivolous and unnecessary Motion to Replead in the New York Matter, and an unnecessarily onerous Opposition to a straightforward Motion for a Sealing Order in New York. See, Plaintiffs' Memorandum of Law in Support of their Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #28.

94.     Mr. Miller is now representing Lightbox in administrative proceedings, upon belief, in Pennsylvania and New York (which were each dismissed once and submitted by Mr. Miller for reconsideration).

95.     Mr. Miller advocated for Lightbox and Ellner to fraudulently convey proceeds of the Federal Case, forcing the New York Plaintiff SMZ, the Plaintiff Firm and the Court to waste time and resources dealing with a TRO/Emergency Motion essentially seeking to have funds from

---

[4] Although the Plaintiffs intend to likely proceed with claims of and related to tortious abuse of process in New York, they are not being pled here. However, various facts relevant thereto are presented in the context of Mr. Miller's malpractice, and Lightbox's aiding and abetting of it.

Case# 2019-00793-105 - JUDGE.27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the Federal case released to Lightbox Ventures, L.L.C. held pending the resolution of the attorney fee litigation. See, Plaintiffs' Memorandum of Law in Support of their Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #28.

96.   Mr. Miller has engaged in a letter writing campaign to the Second Circuit Court of Appeals CAMP Mediator to raise any instance of the Plaintiffs referencing the mediation in any way (though he himself has included reference to the mediation in almost all of his filings and there was nothing done improperly).

97.   Though examples are virtually boundless, Mr. Scarola's November 12, 2018 email captures at least some of the rancor, incorrigibility, obstreperousness, turning molehill into mountains - and thus time to be billed to the client – to the extent this has been, is or will be done - also exponentially growing – manner and spirit Mr. Miller has engaged in here: "Mr. Miller, as some of you recently threatening correspondence made clear, this case is taking an inordinate amount of time to litigate.   One of the reasons, at least in our view, is that you have an endless appetite for circular discussion, while at the same time engaging in that discussion in a way that is, again in our view, disingenuous." There are others as well.  See, Plaintiffs' Response to  Mr. Miller's Answer to the Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #27 at ¶88.

98.   Mr. Miller is purposely difficult, engages in sharp practice, is not being straightforward in the litigation and puts himself and his interests both at the center of the case and of primary concern to pursue, above those of his clients, current and past. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶90.

99.   Further examples of Mr. Miller's venomous conduct toward the Plaintiffs include in his disputing his own clients claims and the need to redact confidential information, accusing

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the Plaintiff law firm's paralegal of unauthorized practice of law before the Court simply because Plaintiffs dictated (and reviewed) a correspondence with paralegal support while they were away from the office (which was disclosed, and the dictation was made clear). See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶94.

100.    Another example of Mr. Miller sharp, untoward and uncivil conduct is his recently filed Praecipe to Dismiss the Plaintiffs' Motion to Disqualify him as Counsel because the Memorandum was filed timely, but procedurally rejected and subsequently, within an hour or so of business hours, accepted by the Prothonotary the next business day. See, Praecipe, ECF Doc. #25.

101.    Mr. Ellner and the corporate Defendants aided and abetted in the commission of and/or conspired in the commission of malpractice, including but not limited to refusing to hire non-conflicted Counsel against the Plaintiffs and authorizing, inspiring, requesting and directing Mr. Miller's actions as his advocate, and this continued well after they were well aware that there was a serious conflict of interest. Apparently, the conflicts and difficulties caused to the Plaintiffs due to them were and continue to be utilized strategically against Plaintiffs. Furthermore, Mr. Ellner was directly told that Mr. Miller was an attorney whose services and counsel the Plaintiffs had utilized and that their attorney client relationship continued. In essence, Plaintiffs were referring Lightbox to their own lawyer for Lightbox to utilize.

102.    In anticipation of this litigation against Mr. Miller for malpractice and other claims, Brem Moldovsky has retained the expert services of Mr. Samuel Stretton, Esq. Mr. Stretton has practiced in the area of legal and judicial ethics for more than 35 years and worked for some time as the Assistant Disciplinary Counsel for the Supreme Court of Pennsylvania. He has represented hundreds of attorneys and many judges in disciplinary matters. He is a regular expert author of

27

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the Ethics Forum section of the Legal Intelligencer and has contributed many dozens of articles to the publication. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at fn9.

103.   In response to a cease and desist letter from Mr. Stretton, Mr. Miller faxed his small firm hundreds of pages, breaking Mr. Stretton's fax machine and tying up the fax line for hours and has engaged in disparaging Mr. Stretton's reputation and professionalism. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶81.

104.   Mr. Stretton's expert report, which, meets the Pennsylvania requirements for a Certificate of Merit for licensed professionals pursuant to PA RCP 1042.3, unequivocally states that Mr. Miller is in deep and multi-faceted conflicts of interest and he cannot ethically act as Counsel against the Moldovskys, especially related to attorney's fees as he is doing in this case. Miller's psychological and demeaning attacks on the Plaintiffs for raising legitimate conflict of interest concern are deeply troubling, unethical and sufficient basis for disqualification. See, Report, Exhibit "A" hereto.

## REPRESENTATION IN SUBSTANTIALLY RELATED MATTERS

105.   During the time the Plaintiffs represented Lightbox, Mr. Miler occasionally consulted regarding the matter, and once he was counsel to Lightbox in the State matter (a fee dispute), he worked in conjunction with the Plaintiffs to coordinate defenses on behalf of Lightbox in both matters.

106.   Plaintiffs provided input into fee dispute issues between Lightbox and their former Counsel to Mr. Miller.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

107. Mr. Miller was aware of the fee issues between Plaintiffs and Lightbox leading up to the Plaintiffs withdrawing as counsel and consulted and advised Plaintiffs related to Lightbox.

108. Additionally, the matters in which Mr. Miller acted as co-counsel with the Moldovsky Firm in 2015-2016 are substantially related to many of the same prime issues in the current fee dispute with Lightbox and Mr. Ellner, and to this Amended Complaint. Aside from both involving the Plaintiffs primarily, this matter involves the same types of claims, damages and relief requested as in the prior case for which Mr. Miller represented the Moldovskys working with attorney client privileged and confidential knowledge of the Moldovsky firm. Particularly considering the nature of these same claims in both cases – breach of contract and misrepresentation involving the Moldovsky side suffering losses and damages of loss of the Moldovskys' attorney and legal professional time, the law firm's legal and professional time, and seeking compensation based on its value – Lightbox's side will be and has been severely and unfairly advantaged by their counsel knowing just how these same claims, allegations, damages, relief requested, discovery work and planning, etc. were plead, developed, planned, etc. and their evidentiary basis, proofs, etc. along with information of likely attacks by the other side and responses and planning for such, how to deal with the issues through intricate and detailed contractual litigation discovery, forensic and economic expert and such considerations and so much more. The Plaintiffs can explain further *in camera*. However, issues generally include Brem Moldovsky and, crucially, the Moldovsky Firm's ability and desire to litigate and finance litigation of this nature. Herein lies the essence of the confidential information the Plaintiffs believe is at risk of further exposure or abuse against the Moldovsky Firm.

109. The comparison between the Moldovsky Firm's claims, damages, relief requests, etc. between this current litigation and the prior Pennsylvania matter for which Mr. Miller was

29

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Counsel to the Moldovskys and co-Counsel to the Moldovsky Firm is clear.  Mr. Miller has

represented the Moldovskys on and now is opposing the Moldovsky Firm on claims for waste of

attorney time and resources and request for damages in the amount of the value of such

professional time:

| Excerpts from Pennsylvania Complaint (Miller Answer, ECF Doc. #18 at Ex. "15") | Excerpts from Crossclaims in SMZ Case (Plaintiff's Response to Mr. Miller's Answer to Plaintiff's Motion to Disqualify, ECF Doc. #27 at Ex. "H") |
|---|---|
| 11.  Plaintiff and his family trusted and believed [Defendant] when they were told and led to believe that [Defendant] had particular experience…<br><br>56.  [Defendant] would lure in… [based] on various misrepresentations.<br><br>76.  The issues [b]egan to require and draw a great deal of work day time and attention by Plaintiff and his wife, an attorney and office manager, bookkeeper, and legal secretary…<br><br>77.  Plaintiff was [d]amaged in losing much time which otherwise could have been used profitably…<br><br>151.  Plaintiff [l]ost in excess of 100-500 hours of Plaintiff's and his wife's time…<br><br>152.  Plaintiff [l]ost in excess of $100,000 in income due to the lost time, as this time is generally billed (in the $100-$300 per hour range) and profitable to Plaintiff in his law business…<br><br>154.  Plaintiff [m]iss[ed] work and investing time into work.<br><br>155.  Plaintiff [i]nvested much time and lost much time, in excess of hundreds of hours | 103.  The Agreement and Amended Agreement, in clause 10a, respectively, also include the following clauses, which, as described herein, were also breached by the Crossclaim Defendants: You agree to be totally truthful with this office and to give over to this office all relevant information and documents at all related to these matters; any failure in this regard will mean that you will have to pay legal fees at normal hourly rates for any time wasted due to such failure.<br><br>104.  Lightbox and Mr. Ellner were not truthful as described herein and are thus responsible to pay for this firm's time spent based on their misrepresentations.<br><br>109.  [e]xpended many hours reviewing the case and litigation that had occurred to that point, and engaged in almost constant email and telephone correspondence with Mr. Ellner, which went on throughout the case with, at times, greater and lesser frequency…<br><br>119.  [v]olume of work and time expended was enhanced due to it being discovered that… had been severely misrepresented…<br><br>131.  [a]dvised the client of approaches involving less time and work and the clients insisted upon approaches involving more time and work…<br><br>155.  [w]orked on the behalf of, at the direction and behest of and with regular input by Lightbox and Mr. Ellner that was often aggressive, [a]nd often included back and forth and mind changing.<br><br>156.  Mr. Ellner and Lightbox's demands were so great that it was often difficult to take in new matters or engage in other business and business opportunities.<br><br>157.  [a] great deal of time was spent on additional necessary but unanticipated work because of the misrepresentations… |

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| | 206.[m]isrepresentations worked in that the Moldovsky Firm entered into the Agreement in a reduced fee and partial contingency arrangement…<br><br>207. As a result of misrepresentations of the crossclaim Defendants, the Moldovsky Firm has been damaged… |

## CONFLICT WITH CURRENT CLIENT

110. Lightbox will be much benefited by independent counsel free of conflict presented by working in collaboration with Mr. Miller. Mr. Miller has been busy entangling his clients in active, ongoing and expensive litigation that has already become overburdened due to problems associated and resulting from Mr. Miller's conflicts.

111. Mr. Miller was attorney to the Plaintiffs specifically with regard to the Pennsylvania litigations mentioned but also generally until Mr. Miller turned on this firm and attacked it on behalf of Lightbox. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶54 and others.

112. The Plaintiffs were still within an attorney client and attorney colleague relationship with Mr. Miller over 2016-2017 and into 2018. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶ 34-35.

113. The Plaintiff's trusted and relied on Mr. Miller, as a Counsel, colleague and friend (who attended holiday meals and other events at the Plaintiffs' home and acted as counsel on sensitive, family involved and impacting matters), and trusted that Mr. Miller would act in the best interest of the Plaintiffs and safeguard their confidential information.

114. Mr. Miller essentially dropped the Moldovskys and the Moldovsky Firm as clients in violation of the "Hot Potato" doctrine to represent Lightbox against them, which is prohibited. See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶121-128.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

115.    Mr. Miller has now revealed certain of Plaintiffs' confidential information that Lightbox would not otherwise know but not for Mr. Miller's prior representation of the Plaintiffs and current representation against the Plaintiffs on behalf of Lightbox.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶3,89.

116.    Mr. Miller has revealed, shared with, used for the benefit of and/or such similar conduct with Plaintiffs' confidential, secret, private, etc. information for the benefit of the other Defendants to various extents; to reviewed more thoroughly through the discovery process.  One indication is at Lightbox's Brief in Reply to the Plaintiff's Motion for a Sealing Order, ECF. Doc. # 59 at Question "B".

117.    Lightbox was made aware of the conflicts of interests but persisted in hiring Mr. Miller and not seeking unconflicted Counsel, and in pushing Mr. Miller to further breach his ethical duties.  See, Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶6,7.

118.    The disqualification of Miller would be to the benefit of all parties, and the Court, as evidenced by the various problems, overblown issues and such caused to the matters he has been involved in under conflict of interest.  See, e.g., Plaintiffs' Motion to Disqualify Mr. Miller as Counsel to his co-Defendants in this matter, ECF Doc. #3 at ¶¶6, 63 .

## DAMAGES, LOSSES, AND IMPACTS TO THE PLAINTIFFS, AND RELIEF REQUESTED

119.    The Defendant Jonathan Miller utterly failed in his legal, ethical, professional and contractual duty to his clients, and deliberately and knowingly indifferent to conflicts being raised, participated in and drove (and continues with) hostile litigation against the Plaintiffs.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

120.    The Defendant Jonathan Miller utilized and continues to utilize his unique knowledge of the Plaintiffs' financial abilities, law firm functions, and abilities and desires and more to litigate against an aggressive adversary against the Plaintiffs for the benefit of Lightbox.

121.    Mr. Ellner and the Lightbox Defendants took advantage of Mr. Miller's willingness to be a conflicted Counsel to pursue excessively aggressive and frustrating litigation against the Plaintiffs with Mr. Miller acting as the perfect spearhead with a unique ability to harm the Plaintiffs due to his knowledge of the Plaintiffs' confidential information.

122.    The Defendants have dominated much of the time and bandwidth of the firm ,and the Plaintiffs' minds and time, and have caused stress and distress which should be considered as it relates to relevant issues including but not limited to malpractice, conflicts of interest, preliminary injunction, the disqualification of Mr. Miller as Counsel and other issues.

123.    Defendants have instilled a fear of what information Defendant Mr. Miller has and is using and giving over to his co-Defendants to use against the Plaintiffs, particularly in light of Mr. Miller's continued lies about not knowing what he does know.

124.    The Defendants have interfered with life and social events, business development and other life events much of which will be recoverable economically.

125.    The Defendant Mr. Miller fully and completely failed in their explicit and implied responsibility to comply with the Pa. Rules of Professional Conduct.

126.    Due to the various misconduct, attacks, attempts to waste time, conflicts of interest, trying to mitigate against the Mr. Miller's conflicts, misconduct and attacks, the Plaintiffs have incurred in well in excess of 200-1,000 hours of billable attorney hours, 200-1,000 paralegal hours, and in excess of 100 administrative hours, as well as hundreds of additional professional hours, all

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

of which equals well in excess of $100,000 in value as a reasonably foreseeable result of the Defendants' breaches and wrongful actions as plead herein.

127.    Much of Plaintiffs' lost time, but all of Plaintiffs' stress and distress will not be able to be adequately compensated economically for the wrongs done.

128.    Plaintiffs lost in excess of $100,000 in income due to the lost time, as this time is generally billed (in the $100-$360 per hour range) and profitable to Plaintiffs the law business.

129.    Plaintiffs have been damaged in excess of $100,000.00, and is entitled by law and equity to all damages, including incidental, consequential, punitive, and treble damages, statutory damages pursuant to the Pennsylvania Wiretap Act and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, attorney's fees and costs, and other related damages.

130.    Damages here were reasonably foreseeable to Defendants, particularly as they knew frivolous, aggressive, and often unnecessary litigation and quibbling would lead to the Plaintiffs having to choose prioritizing fighting against the Defendants over other work and investing time into work and their businesses.

131.    Plaintiffs invested much time and lost much time, in excess of hundreds of hours, due to the Defendants' various breaches, as stated herein.

132.    The Plaintiffs have suffered the negative impact and damage to their reputation of purposeful, willfully malicious, intentional and purposeful and/or recklessly negligent slanderous allegations and defamation of their character beyond what monetary damages can repair.

133.    The Plaintiffs have been publicly stripped of their economic ambiguity and anonymity, and Lightbox has been fully informed of the sensitive information Mr. Miller possesses.

34

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

134.    Mr. Miller had been hired by Brem Moldovsky, L.L.C. to provide counsel, representation, assistance, advice, etc. in its handling and representation of Brem Moldovsky and Melanie Moldovsky as well as its own interests regarding the prior Pennsylvania litigations.

135.    These services were billed and paid to the tune of thousands of dollars, approximately in excess of $3,000.00.

136.    Due to all of the conflicts of interest, wrongful use and revealing of client confidential, sensitive, private, etc. information, attorney misconduct, and all such as plead herein against Mr. Miller, the funds paid to him for services should and must be disgorged, forfeited, paid back, returned, compensated and recompensated to Plaintiffs with interest.

137.    Plaintiffs' losses are well in excess of $100,000 and include lost profits, income, revenue, time, compensation, clients, cases, billing, fees, funds, business and more.

138.    Plaintiffs have been damaged by Defendants - primarily through Mr. Miller – spreading, distributing, publishing, writing and stating information (including secret, private, sensitive, confidential, business, family, child-involved and more) learned and received by Mr. Miller in the course of his representation of Plaintiffs.

139.    Mr. Miller did this by purposefully and maliciously spreading, distributing, publishing, writing and stating information without justification in correspondence and in Court filings and doing so without making effort (or, sufficient effort) to redact, non-publicize, protect or secure such information.

140.    Mr. Miller knows better than this and often raises that even if attorneys believe they have a right to use client information in an allowed purpose in a dispute with a client, they must do so in a manner that protects, redacts, etc. the client information as much as possible, and, yet, still, Mr. Miller purposefully does what is wrong and does not practice what he preaches.  This is

35

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

particularly reprehensible, outrageous and along with various of the other conduct here sufficient to shock the sensibilities of a reasonable person so that punitive damages are warranted.

141.    Due to Mr. Miller's conflicts of interest, wrongfully litigating against a client/former client on behalf of another client and the rest as stated here Plaintiffs have incurred, expended and lost time, costs, fees and efforts in attempting to stop and mitigate against Defendants' wrongfully wielding Plaintiffs' own counsel with the benefit of Plaintiffs' information, sensitivities, strategies, confidences, etc. against them.

142.    Costs, expenses, fees, time, expert work and fees, professional work and representation and more have been incurred in efforts to disqualify Mr. Miller in Federal and State Courts in NY and PA that would not have to be have been expended were it not for and but for the wrongful acts of the Defendants in causing the conflicts, in taking advantage of the conflicts, in driving the conflicts deeper and deeper, in resisting efforts to disqualify, in not stopping the conflicts, in failing to make efforts to end the conflict problems and in the conduct complained of here.

143.    All of the Defendants are liable and have participated as Lightbox knew Mr. Miller was an attorney to Plaintiffs and learned Plaintiff was deeply concerned about conflicts of interest issues and confidential information possessed by the Mr. Miller that would be used for and leaked over to the other Defendants and Mr. Ellner and his companies eagerly, shamefully and wrongfully took serious advantage of these issues to knowingly and maliciously bring hardship and expense upon Plaintiffs.

144.    Defendants purposefully acted to drive up costs, concerns and difficulties for Plaintiffs.

36

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

145.     The Defendants wrongful actions have made the litigation process with and against Mr. Ellner and his companies here much more difficult, expensive and wasteful than they otherwise would have been.

146.     Plaintiffs have had to and will have to pay and incur expenses, expert time and fees and professional fees and time in these litigations that would not have had to happen were it not for Defendants' wrongful conduct as described herein.

147.     By the wrongful actions described herein, Defendants have wrongfully made the process of Plaintiffs collecting on the fees and costs which Ellner and Lightbox Ventures, LLC owe much more difficult, costly, time-consuming and problematic than it otherwise would be and Defendants are responsible under law for the damages, losses and expenses incurred that would not have been but for their wrongful conduct.

148.     The damages include damage for lost reputation, lost time money trying to mitigate and counter it and more, as well as lost income, profits and the other losses as stated herein as relate to these issues.

### PLEADING IN THE ALTERNATIVE, JOINT AND SEVERABLE LIABILITY, AND OTHER PROVISISIONS

149.     The totality of the Defendants' actual, anticipatory, apparent and implied breaches, negligence and failures and the resultant damages can be surmised from all permutations of the facts and elements plead at length herein and all facts and elements plead herein that are, by their nature, plead in the alternative.

150.     General principles of res judicata, issue preclusion and collateral estoppel are also incorporated to the extent that they apply to the instant Amended Complaint favor or either or both Plaintiffs.

Case# 2019-00793-105 - JUDGE27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

151.    Based upon the facts alleged and/or incorporated herein, joint and several liability should be found against all Defendants on all counts set forth in the remainder of the Amended Complaint where the Court deems appropriate.

152.    Unless contradicted by these pleadings or the facts as Plaintiffs have and are presenting them to the Court, the actions of Defendants were done for, under the direction of, in coordination and plan with and/or for the benefit of each of the other Defendants, so that actions and statements plead and alleged about, by or as committed or performed by any of the Defendants are imputed upon, ratified by, assumed by and understood to have been performed by all of them. And, there was a special plotting, coordinating and wrongfully benefiting each other between Jonathan Miller, Andrew Ellner, and his Lightbox entities.

153.    Various complained of conduct here, including but not limited to the aiding and abetting malpractice, civil conspiracy, swearing to false affidavits of an important matters (that are extremely pertinent to this and the New York litigation), and various other complained actions and actions of Defendants constitute ethical breaches, professional breaches, breaches of civil law and breaches of criminal law, including but not limited to laws against aiding and abetting, conspiracy, wiretaps, perjury and others. *Per se* civil liability which flows from liability for underlying statutory and/or criminal liability is hereby plead.

154.    The Plaintiffs are foreseeable plaintiffs so that Defendants were and should have been aware of their losses, suffering and damaged due to their conduct.

155.    The Plaintiffs were not aware of various activities until times later than when they occurred.  For instance, the wiretapped phone calls were not disclosed until several months later, and it is anticipated that there are other phone calls and other activities that will be uncovered during discovery and litigation.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

156.    Many and/or all of the causes of action, as complained of herein, did not become causes of action as such (including with sufficient standing, damages and the necessary components and elements of such causes of action) until Mr. Miller assumed representation for Lightbox against the Plaintiffs

157.    All allegations herein that by their nature and/or as read with the rest of this pleading are in the alternative, are plead in the alternative.

## COUNT I: PERMANENT AND TEMPORARY INJUNCTION AGAINST ALL DEFENDANTS REGARDING ATTORNEY CONFLICTS AND CLIENT INFORMATION

158.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

159.    Mr. Miller has made clear that only a Court Order barring his representation against the Plaintiffs will act to stop him.

160.    Mr. Miller's continued representation against the Plaintiffs will continue to compound irreparable harm upon them.

161.    The irreparable harm includes that there is much damage and suffering, including for wasted time and thus income and money, as well as loss of and losses from their information used against them for which the Plaintiffs cannot and for some may not recover, partly due to some of the time being difficult or impossible to recover.  Some of the exact losses will be difficult to determine precisely to Court standards.  Though there was stress and distress, damages for same are not practically recoverable, and thus are not sought.

162.    The loss of secrecy and privacy with their sensitive information now out in the public with the resulting and related reputational damage is something for which there is likelihood of irreparable harm and inability to recover damages sufficient to repair the losses and harm.

39

163.    It is likely that the Plaintiffs will prevail in the malpractice claims against Mr. Miller.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in any forum and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

### COUNT II. PERMANENT AND TEMPORARY INJUNCTION AGAINST ALL DEFENDANTS REGARDING ILLEGAL WIRETAPS

164.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

165.    Plaintiffs seek a temporary and permanent injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any information of Plaintiffs learned by Mr. Miller in his representation of them as this will help to maintain the status quo, as this is not allowed and thus Plaintiffs will prevail on this claim, and there is not adequate remediation and compensation to be had, including due to difficulty in assessing and recording full damages for the irreparable resulting harm and losses.

40

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

166.     Plaintiffs seek a temporary and permanent injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law as plead herein as it is likely Plaintiffs will prevail on the merits, the extent of the harm and damages will be difficult to determine for the irreparable resulting harm and losses, and this will help maintain the status quo.

167.     So too, Plaintiffs seek that all such records, copies, transcriptions and such be ordered to be turned over to Plaintiffs.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, permanent and temporary injunction barring Mr. Miller from representing against the Plaintiffs in any forum and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT II: LEGAL MALPRACTICE, BREACH OF TRUST AND OF DUTY OF LOYALTY AGAINST JONATHAN MILLER

168.     All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

169.     Mr. Miller has breached his duty of trust and loyalty to his clients in violation of Pa R.P.C. Rule 1.6 (and others).

41

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

170.   Mr. Miller has knowingly and purposely exposed his clients, the Plaintiffs' personal, confidential, sensitive information to Lightbox and/or to be used to benefit Lightbox against Plaintiffs.

171.   Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state.  Plaintiffs are asserting a professional liability claim against this defendant.

172.   Plaintiffs are former clients of Mr. Miller.

173.   To recover for legal malpractice, plaintiffs must establish as is established here (1) Employment of attorney or other basis for duty; (2) Failure of attorney to exercise ordinary skill and knowledge; and (3) The attorney's action was the proximate cause of damage to the plaintiff. See Rizzo v. Haines, 555 A.2d 58, 65 (1989);see also, Schenkel v. Monheit, 405 A.2d 493, 494 (1979).

174.   For the prior litigations in this Court, Mr. Miller's Agreement to represent Brem Moldovsky is incorporated herein and attached hereto as Exhibit "B".  Mr. Miller represented Brem Moldovsky's wife and Brem Moldovsky L.L.C. implicitly.

175.   Absent an express contract, an implied attorney-client relationship will be found if the purported client sought advice or assistance from the attorney, the advice sought was within the attorney's competence, the attorney expressly or impliedly agreed to render such assistance, and it is reasonable for the putative client to believe the attorney was representing him.  See Atkinson v. Haug, 622 A.2d 983, 986 (Pa. Super. 1993).

176.   There was an express attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

177.    In the alternative, if the Court decides that there is not an express representation, there was an implied attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C. because Brem Moldovsky, L.L.C. sought Mr. Miller's legal advice and he agreed to render such assistance.

178.    The attorney and law firm Defendant, licensed professionals in the Commonwealth, engaged in legal malpractice that was the proximate cause of damage to Plaintiffs when they failed to exercise ordinary skill and knowledge by engaging in the following intentional, reckless, and negligent actions:

a.  Failing to hold safe and keep confidential information known and learned in his representation of the Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.6;

b.  Assuming representation of Lightbox knowing that Lightbox was making claims against the Plaintiffs despite having a clear conflict of interest with his ongoing attorney-client relationship in violation of Pa. Rules of Prof'l Conduct R. 1.7

c.  Representing Lightbox against Plaintiffs in a matter in which Lightbox is unfairly advantaged due to Mr. Miller's prior representation of the Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.8(b);

d.  Representing Lightbox against in a matter in which Lightbox is materially adverse to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.9;

e.  Making false statements and breaching his duty of candor to the tribunal in violation of Pa. Rules of Prof'l Conduct R. 3.3;

f.  Breaching the duties of loyalty owed to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.7, 1.9;

g.  Perpetrating fraud by knowingly filing false statements in support of Lightbox's

43

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and his own positions. (See Eisenberg v. Gagnon, 766 F.2d 770, 778-79 (3d Cir. 1985) (privity of contract is not required to hold an attorney responsible for his intentional torts such as fraud));

h. Failing to withdraw himself from representing Lightbox thereby requiring the Plaintiffs to move to disqualify him; and

i. Such other misconduct, misrepresentations, fraud, chicanery and such as is explicitly and/or implicitly complained of herein.

179.   The aforementioned failures to exercise ordinary skill and knowledge were independently and jointly the proximate causes of damage to Plaintiffs.

180.   Pursuant to Pa.R.C.P. 1042.1-1042.8, a certificate of merit will be filed within 60 days of the filing of this Amended Complaint.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

44

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COUNT IIIV: LEGAL MALPRACTICE, BREACH OF DUTY TO CURRENT CLIENTS AGAINST JONATHAN MILLER

181.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

182.    Mr. Miller has breached his duties to his clients in violation of Pa R.P.C. Rules 1.6, 1.7 and 1.8 (and others).

183.    Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state.  Plaintiffs are asserting a professional liability claim against this defendant.

184.    Mr. Miller has knowingly and purposely litigated against his clients, the Plaintiffs, on behalf of Lightbox.

185.    To recover for legal malpractice, plaintiffs must establish as is established here (1) Employment of attorney or other basis for duty; (2) Failure of attorney to exercise ordinary skill and knowledge; and (3) The attorney's action was the proximate cause of damage to the plaintiff. See Rizzo v. Haines, 555 A.2d 58, 65 (1989); see also, Schenkel v. Monheit, 405 A.2d 493, 494 (1979).

186.    Though the attorney client relationship started earlier, Mr. Miller's Agreement to represent Brem Moldovsky is incorporated herein and attached hereto as Exhibit "B".  Mr. Miller represented Brem Moldovsky's wife and Brem Moldovsky L.L.C. implicitly.

187.    Absent an express contract, an implied attorney-client relationship will be found if the purported client sought advice or assistance from the attorney, the advice sought was within the attorney's competence, the attorney expressly or impliedly agreed to render such assistance, and it is reasonable for the putative client to believe the attorney was representing him.  See Atkinson v. Haug, 622 A.2d 983, 986 (Pa. Super. 1993).

45

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

188.    There was an express and implied ongoing, attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C.

189.    In the alternative, if the Court decides that there is not an express representation, there was an implied, ongoing, attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C. because Brem Moldovsky, L.L.C. sought Mr. Miller's legal advice and he agreed to render such assistance understanding that Plaintiffs were relying on such advice and the attorney client relationship as between them.

190.    The attorney and law firm Defendant, licensed professionals in the Commonwealth, engaged in legal malpractice that was the proximate cause of damage to Plaintiffs when they failed to exercise ordinary skill and knowledge by engaging in the following intentional, reckless, and negligent actions:

   a.   Failing to hold safe and keep confidential information known and learned in his representation of the Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.6;

   b.   Assuming representation of Lightbox knowing that Lightbox was making claims against the Plaintiffs despite having a clear conflict of interest with his ongoing attorney-client relationship in violation of Pa. Rules of Prof'l Conduct R. 1.7

   c.   Representing Lightbox against in a matter in which Lightbox is materially adverse to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.9;

   d.   Making false statements and breaching his duty of candor to the tribunal in violation of Pa. Rules of Prof'l Conduct R. 3.3;

   e.   Breaching the duties of loyalty owed to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.7, 1.9;

   f.   Perpetrating fraud by knowingly filing false statements in support of Lightbox's

46

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and his own positions. (See Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985) (privity of contract is not required to hold an attorney responsible for his intentional torts such as fraud));

g.  Failing to withdraw himself from representing Lightbox thereby requiring the Plaintiffs to move to disqualify him; and

h.  Such other misconduct, misrepresentations, fraud, chicanery and such as is explicitly and/or implicitly complained of herein.

191.   The aforementioned failures to exercise ordinary skill and knowledge were independently and jointly the proximate causes of damage to Plaintiffs.

192.   Pursuant to Pa.R.C.P. 1042.1-1042.8, a certificate of merit has been filed within 60 days of the filing of this Complaint.  See Warrant v. Folk, 886 A.2d 305 (Pa. Super. 2005) (requiring a certificate of merit to be filed within 60 days of filing a Complaint alleging that a professional deviated from a required professional standard of care).

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

47

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COUNT IV: LEGAL MALPRACTICE, BREACH OF DUTY TO FORMER CLIENTS AGAINST JONATHAN MILLER

193.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

194.    Mr. Miller has breached his duty of trust and loyalty to his former clients, the Plaintiffs, in violation of Pa R.P.C. Rule 1.9 (and others).

195.    Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state.  Plaintiffs are asserting a professional liability claim against this defendant.

196.    To recover for legal malpractice, plaintiffs must establish as is established here (1) Employment of attorney or other basis for duty; (2) Failure of attorney to exercise ordinary skill and knowledge; and (3) The attorney's action was the proximate cause of damage to the plaintiff. See Rizzo v. Haines, 555 A.2d 58, 65 (1989); see also, Schenkel v. Monheit, 405 A.2d 493, 494 (1979).

197.    Mr. Miller's Agreement to represent Brem Moldovsky is incorporated herein and attached hereto as Exhibit "B".  Mr. Miller represented Brem Moldovsky's wife and Brem Moldovsky L.L.C. implicitly.

198.    Absent an express contract, an implied attorney-client relationship will be found if the purported client sought advice or assistance from the attorney, the advice sought was within the attorney's competence, the attorney expressly or impliedly agreed to render such assistance, and it is reasonable for the putative client to believe the attorney was representing him.  See, Atkinson v. Haug, 622 A.2d 983, 986 (Pa. Super. 1993).

199.    There was an express attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

200.    In the alternative, if the Court decides that there is not an express representation, there was an implied attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C. because Brem Moldovsky, L.L.C. sought Mr. Miller's legal advice and he agreed to render such assistance.

201.    The attorney and law firm Defendant, licensed professionals in the Commonwealth, engaged in legal malpractice that was the proximate cause of damage to Plaintiffs when they failed to exercise ordinary skill and knowledge by engaging in the following intentional, reckless, and negligent actions:

a.    Failing to hold safe and keep confidential information known and learned in his representation of the Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.6;

b.    Representing Lightbox against Plaintiffs in a matter in which Lightbox is unfairly advantaged due to Mr. Miller's prior representation of the Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.8(b);

c.    Representing Lightbox against in a matter in which Lightbox is materially adverse to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.9;

d.    Making false statements and breaching his duty of candor to the tribunal in violation of Pa. Rules of Prof'l Conduct R. 3.3;

e.    Breaching the duties of loyalty owed to Plaintiffs in violation of Pa. Rules of Prof'l Conduct R. 1.7, 1.9;

f.    Perpetrating fraud by knowingly filing false statements in support of Lightbox's and his own positions. (See Eisenberg v. Gagnon, 766 F.2d 770 (3d Cir. 1985) (privity of contract is not required to hold an attorney responsible for his intentional torts such as fraud));

49

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

g.  Failing to withdraw himself from representing Lightbox thereby requiring the Plaintiffs to move to disqualify him; and

h.  Such other misconduct, misrepresentations, fraud, chicanery and such as is explicitly and/or implicitly complained of herein.

202.    The aforementioned failures to exercise ordinary skill and knowledge were independently and jointly the proximate causes of damage to Plaintiffs.

203.    Pursuant to Pa.R.C.P. 1042.1-1042.8, a certificate of merit will be filed within 60 days of the filing of this Amended Complaint. See Warrant v. Folk, 886 A.2d 305 (Pa. Super. 2005) (requiring a certificate of merit to be filed within 60 days of filing an Amended Complaint alleging that a professional deviated from a required professional standard of care).

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $50,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### COUNT VI: LEGAL MALPRACTICE, BREACH OF CANDOR TO TRIBUNAL AGAINST JONATHAN MILLER

204.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

205.    Mr. Miller has breached his duty of candor to the tribunal pursuant to Pa. R.P.C. Rule 3.3.

206.    Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state.  Plaintiffs are asserting a professional liability claim against this defendant.

207.    Mr. Miller has purposely, wantonly, continuously, and recklessly made misstatements to the tribunal regarding information learned in his representation of the Plaintiffs, and other material facts.

208.    Plaintiffs are former clients of Mr. Miller.

209.    To recover for legal malpractice, plaintiffs must establish as is established here (1) Employment of attorney or other basis for duty; (2) Failure of attorney to exercise ordinary skill and knowledge; and (3) The attorney's action was the proximate cause of damage to the plaintiff. See Rizzo v. Haines, 555 A.2d 58, 65 (1989); Schenkel v. Monheit, 405 A.2d 493, 494 (1979).

210.    Mr. Miller's Agreement to represent Brem Moldovsky is incorporated herein and attached hereto as Exhibit "B".  Mr. Miller represented Brem Moldovsky's wife and Brem Moldovsky L.L.C. implicitly.

211.    Absent an express contract, an implied attorney-client relationship will be found if the purported client sought advice or assistance from the attorney, the advice sought was within the attorney's competence, the attorney expressly or impliedly agreed to render such assistance,

51

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and it is reasonable for the putative client to believe the attorney was representing him. <u>See</u> <u>Atkinson v. Haug</u>, 622 A.2d 983, 986 (Pa. Super. 1993).

212.   There was an express attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C.

213.   In the alternative, if the Court decides that there is not an express representation, there was an implied attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C. because Brem Moldovsky, L.L.C. sought Mr. Miller's legal advice and he agreed to render such assistance.

214.   The attorney and law firm Defendant, licensed professionals in the Commonwealth, engaged in legal malpractice that was the proximate cause of damage to Plaintiffs when they failed to exercise ordinary skill and knowledge by engaging in intentional, reckless, and negligent actions.

215.   The aforementioned failures to exercise ordinary skill and knowledge were independently and jointly the proximate causes of damage to Plaintiffs.

216.   Pursuant to Pa.R.C.P. 1042.1-1042.8, a certificate of merit will be filed within 60 days of the filing of this Amended Complaint. <u>See</u> <u>Warrant v. Folk</u>, 886 A.2d 305 (Pa. Super. 2005) (requiring a certificate of merit to be filed within 60 days of filing an Amended Complaint alleging that a professional deviated from a required professional standard of care).

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT VI: LEGAL MALPRACTICE, BREACH OF FIDUCIARY DUTIES AGAINST JONATHAN MILLER

217.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

218.    Jonathan Miller breached the fiduciary duty of loyalty that he owed the Plaintiffs as a result of their attorney-client relationship by the various failures alleged herein including failing to ensure that he and his law firm remained free of conflicts of interest in representing Plaintiffs.

219.    Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state. Plaintiffs are asserting a professional liability claim against this defendant.

220.    In representing Lightbox, Mr. Miller failed to apply a duty of loyalty to Plaintiffs.

221.    Mr. Miller further breached his fiduciary duty to Plaintiffs by purposefully causing problems such as undertaking the representation of Lightbox and providing inaccurate and outright untruthful information to the tribunal, along with the ongoing harassment against Plaintiffs.

222.    Despite the conflict of interest of representing a party adverse to Plaintiffs' interest, upon information and belief, Mr. Miller neither advised Lightbox to seek unconflicted counsel, nor sought to withdraw from the representation.

53

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

223.    Pursuant to the Pa R.P.C. Rule 1.7(b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if: 1) the representation of one client will be directly adverse to another client; or 2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

224.    As a direct and proximate cause of Mr. Miller's breach of fiduciary duty, Plaintiffs were forced to file a lawsuit challenging Mr. Miller's representation of Lightbox against them, costing them substantial dollars in litigation costs, attorney time, and law firm legal time.

225.    For the foregoing reasons, injustice can only be avoided by finding Mr. Miller liable to Plaintiffs for his breach of fiduciary duty.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

Case# 2019-00793-105 - JUDGE27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## COUNT VII: BREACH OF CONTRACT FOR PROFESSIONAL LEGAL SERVICES AGAINST JONATHAN MILLER

226.     All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

227.     Exhibit "B" attached hereto and as described above includes the contract for legal services and consultation which have been breached.  Jonathan Miller agreed to and did act as counsel and as attorney to Brem Moldovsky, as well as for his wife and the Brem Moldovsky, L.L.C. "implicitly".  Jonathan Miller also represented Plaintiffs and/or their interests for some time after the conclusion of the prior litigations.

228.     Jonathan Miller and his firm entered into and later breached an agreement with Brem Moldovsky.  Implicit in Mr. Millers contractual undertaking to represent Brem Moldovsky was that Jonathan Miller and his law firm would exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession in similar circumstances.

229.     A plaintiff successfully establishes a breach of contract claim against an attorney by demonstrating that the attorney has breached his or her contractual duty to provide legal service in a manner consistent with the profession at large.  See  Gorski v. Smith, 2002 Pa. Super. 334, 812 A.2d 683 (Pa. Super. 2002).

230.     Pursuant to Pa. Rules of Prof'l Conduct R. 1.7, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest that is "directly adverse" to another client.  A lawyer must obtain client consent to conflicting representation after full disclosure and consultation concerning the potential or actual conflict of interest.

231.     Despite the conflict of interest of representing a party adverse to Plaintiffs' interests, Jonathan Miller actively sought out and became Lightbox's attorney against the Plaintiffs.  Mr. Miller neither advised Plaintiffs of these conflicts of interest (indeed he denies

55

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

them) nor presented Plaintiffs with an opportunity to consent to waiving such conflict (though they do not). Furthermore, Mr. Miller never sought to withdraw himself from the representation, though he was requested to in the Spring of 2018 and thereafter.

232.   Jonathan Miller and his law firm breached their implied contractual obligation to Plaintiffs by many of the actions complained of herein and by undertaking the "directly adverse" representation of Lightbox against the Plaintiffs in representing Lightbox related to fee disputes that are directly adverse to Plaintiffs' interests.

233.   If Jonathan Miller or his law firm had provided legal service in a manner consistent with the profession at large and observed basic rules of professional conduct on conflicts of interest, Plaintiffs would not have been subjected to the release and revealing of sensitive confidential information, and would not have had to file an action against Mr. Miller.

234.   Accordingly, Jonathan Miller and his law firm breached their contractual duty to provide legal service in a manner consistent with the profession at large.  As a direct and proximate cause of their breach of contract, Plaintiffs incurred in excess of $100,000 in legal fees, lost legal time, and costs and expenses.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation

56

Case# 2019-00793-105 - JUDGE27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT IX: AIDING AND ABETING MALPRACTICE AGAINST ANDREW ELLNER AND THE LIGHTBOX ENTITIES

235.     All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

236.     Mr. Miller has breached his attorney and fiduciary duties to the Plaintiffs.

237.     Andrew Ellner and Lightbox conspired with Mr. Miller to breach Mr. Miller's attorney and fiduciary duties to the Plaintiffs for the common goal of financial gain.

238.     Andrew Ellner and Lightbox encouraged, directed, and persisted in utilizing Mr. Miller's representation against the Plaintiffs despite being aware of Mr. Miller's conflicts of interests.

239.     Andrew Ellner and Lightbox encouraged, directed, and directly oversaw Mr. Miller's tortious actions, attacks against Plaintiffs, and multiple breaches of duties owed to the Plaintiffs.

240.     The Plaintiffs have been damaged and irreparably harmed a as a result of Mr. Ellner and Lightbox's aiding and abetting Mr. Miller.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT X: CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

241.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

242.    Defendants committed civil conspiracy in allowing, facilitating, causing, and participating in the malpractice of Mr. Miller against the Plaintiffs.

243.    To state a civil action for conspiracy, a complaint must allege (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. See Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. 2004).

244.    Through the symbiotic and mutually beneficial relationship that had developed over the course of approximately a year, Defendants had a shared understanding that Mr. Miller would work with Mr. Miller to 1. Preserve the balance of funds awarded to Lightbox in the Federal matter and 2. Disgorge the Plaintiffs of the fees paid to them by Lightbox and the statutory charging lien awarded in the Federal matter to the Plaintiffs for their own gain.  Defendants, for an unlawful purpose, namely for financial gain, wrongfully participated in a breach of contract, loyalty, trust and the various activities as plead herein to help achieve their aims.

245.    Furthermore, Lightbox gained a substantial advantage in obtaining legal advice and assistance in furtherance of his goal of avoiding paying the Plaintiffs for services and disgorging

58

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the statutory charging lien award by hiring Mr. Miller and continuing to utilize his services against the Plaintiffs despite knowing Mr. Miller is conflicted counsel.

246.    In addition, Defendants also committed the various actions and misrepresentations as complained of herein.

247.    As a direct and proximate cause of the aforementioned civil conspiracy between Defendants in furtherance of their wrongful participation in the breach of the legal representation agreement between Mr. Miller and the Plaintiffs, the Plaintiffs suffered actual losses as plead herein.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT XI: VIOLATION OF PA WIRETAP ACT AGAINST ALL DEFENDANTS

248.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

249.    As described herein, Defendants committed violations of the Pennsylvania Wiretap Act, 18 Pa. C.S.A. § 5703 (the "Wiretap Act") in surreptitiously and non-consensually recording

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

telephone conversations, transcribing telephone conversations, and distributed the recordings and/or transcriptions to others, the Court, and the public by filing certain transcripts of record.

250.    Lightbox violated § 5703 (1)(2)and (3) of the Wiretap Act by (1) intentionally intercepting and recording at least two phone calls with the Plaintiffs, and then transcribing them; (2) intentionally and knowingly disclosing the recordings and/or the transcriptions to at least one other person (Mr. Miller), and most likely others like in the case of the transcribed recording submitted to the Federal District and Circuit Courts; and (3) intentionally using the contents of the communication knowing that the information therein was obtained through interception.

251.    Mr. Miller violated § 5703 (2)and (3) of the Wiretap Act by (2) intentionally and knowingly disclosing the recordings and/or the transcriptions to at least one other person (at the very least, the Plaintiffs in the New York matter) , and most likely others; and (3) intentionally using the contents of the communication knowing that the information therein was obtained through interception.

252.    Upon information and belief (though it has not yet been confirmed by Discovery) Defendants violated § 5721.1 by disclosing the contents of at least one intercepted communication to administrative boards in this Commonwealth.

253.    According to 18 Pa. C.S.A. § 5725, any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person: (1) Actual damages, but not less than liquidated damages computed at the rate of $100 a day for each day of violation, or $1,000, whichever is higher. (2) Punitive damages. (3) A reasonable attorney's fee and other litigation costs reasonably incurred.

Case# 2019-00793-105 - JUDGE27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

254.   Furthermore, Defendants have leveraged the intercepted recordings by threatening to distribute them further, and by insinuating about the contents of the recordings in violation of § 5703.

255.   As a direct and proximate cause of the aforementioned violations of the Wiretap Act, the Plaintiffs incurred  stress, disparagement, damage to their reputation and other actual losses as plead herein.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

## COUNT XII: VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW AGAINST JONATHAN MILLER

256.   All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

257.   Through much of the complained of conduct, and by certain conduct in particular, Mr. Miller has violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law in general, and in Definitions, "Unfair methods of competition" and "Unfair or deceptive acts or

61

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

practices," and <u>Unlawful acts or practices; exclusions</u>, S 201-1 <u>et seq</u>. and 201-2(4) (vii),(viii), (ix), and S 201-3 and other pertinent sections.

258.    Mr. Miller purposefully mislead Plaintiffs to believe that they were represented by him as Counsel, and that he would reasonably comply with the laws and expected ethical codes applicable to counsel in the Commonwealth.

259.    Mr. Miller breached his duty to the Plaintiffs by violating the Rules of Professionally Conduct by purposely, willfully, and knowingly positioning himself in a conflict with current and former clients.

260.    Mr. Miller acted deceptively and with deceit when he began to aggressively attack the Moldovsky Firm once his conflicts of interest were raised, including by making threats to makes things "hard" on the Plaintiffs and then proceeding to do so by lying to the Court, lying about not having knowledge of Plaintiffs' confidential information, lying about the benefit gained by Lightbox from his knowledge of the Plaintiffs' sensitive confidential information, and purposely attacking the character of the Moldovsky Firm, Brem Moldovsky, and even the firm's paralegal.

261.    The Plaintiffs have suffered tremendous losses and damages due to the complained of conduct, as plead herein.

262.    Mr. Miller held himself out as a reputable and trustworthy professional, but he was involved with purposeful conflict, disparagement, misstatements to the Court, perjury and the various other problematic behavior complained of here.

263.    Mr. Miller neglected his fiduciary, loyalty and other obligations to the Plaintiffs as their lawyer.  He failed in his loyalty to the Plaintiffs to refrain from working with a party in conflict of interest.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

264.    The relationships here between the service providers and the Plaintiffs falls under and fits within the protections of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, treble damages, and any other relief the Court deems just and proper.

## COUNT XIII:  VIOLATION OF THE CONSUMER FRAUD ACT AGAINST JONATHAN MILLER

265.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

266.    Treble damages, attorneys fees, compensation and all appropriate remedies are sought by the Plaintiffs under the New Jersey Consumer Fraud Act (N.J. Stat., Title 56, Chapter 8) due to Defendants' violations of same

267.    The act, in part, states: "the act, use or employment by any person of any unconscionable commercial practice, deception or fraud, false pretense, false promise or misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the

63

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

sale or advertisement of any merchandise or real estate…is declared to be an unlawful practice…,'"
and this occurred here.

268.   Mr. Miller is an attorney practicing in New Jersey who was active in New Jersey at all relevant times and is a resident of New Jersey.

269.   Mr. Miller purposefully mislead Plaintiffs to believe that they were represented by him as Counsel, and that he would reasonably comply with the laws and expected ethical codes applicable to counsel in the Commonwealth.

270.   Mr. Miller breached his duty to the Plaintiffs by violating the Rules of Professionally Conduct by purposely, willfully, and knowingly positioning himself in a conflict with current and former clients.

271.   Mr. Miller acted deceptively and with deceit when he began to aggressively attack the Moldovsky Firm once his conflicts of interest were raised, including by making threats to makes things "hard" on the Plaintiffs and then proceeding to do so by lying to the Court, lying about not having knowledge of Plaintiffs' confidential information, lying about the benefit gained by Lightbox from his knowledge of the Plaintiffs' sensitive confidential information, and purposely attacking the character of the Moldovsky Firm, Brem Moldovsky, and even the firm's paralegal.

272.   The Plaintiffs have suffered tremendous losses and damages due to the complained of conduct, as plead herein.

273.   Mr. Miller held himself out as a reputable and trustworthy professional, but he was involved with purposeful conflict, disparagement, misstatements to the Court, perjury and the various other problematic behavior complained of here.

Case# 2019-00793-105 - JUDGE.27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

274.    Mr. Miller neglected his fiduciary, loyalty and other obligations to the Plaintiffs as their lawyer.  He failed in his loyalty to the Plaintiffs to refrain from working with a party in conflict of interest.

275.    To the extent that the relationships here between Mr. Miller and the Plaintiffs falls under and fits within the protections of the Under the New Jersey Consumer Fraud Act, Plaintiffs are seeking compensatory and treble damages, interest and attorneys fees, return of all of the monies that Plaintiffs paid to Defendant Mr. Miller and all other recoverable damages under the statute.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, treble damages, and any other relief the Court deems just and proper.

## COUNT XIV: VIOLATION OF NY GENERAL BUSINESS LAW § 349 (CONSUMER FRAUD) AGAINST JONATHAN MILLER

276.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

277. Mr. Miller purposefully mislead Plaintiffs to believe that they were represented by him as Counsel, and that he would reasonably comply with the laws and expected ethical codes applicable to counsel in New York.

278. Mr. Miller breached his duty to the Plaintiffs by violating the Rules of Professionally Conduct by purposely, willfully, and knowingly positioning himself in a conflict with current and former clients.

279. Mr. Miller acted deceptively and with deceit when he began to aggressively attack the Moldovsky Firm once his conflicts of interest were raised, including by making threats to makes things "hard" on the Plaintiffs and then proceeding to do so by lying to the Court, lying about not having knowledge of Plaintiffs' confidential information, lying about the benefit gained by Lightbox from his knowledge of the Plaintiffs' sensitive confidential information, and purposely attacking the character of the Moldovsky Firm, Brem Moldovsky, and even the firm's paralegal.

280. The Plaintiffs have suffered tremendous losses and damages due to the complained of conduct, as plead herein.

281. Mr. Miller held himself out as a reputable and trustworthy professional, but he was involved with purposeful conflict, disparagement, misstatements to the Court, perjury and the various other problematic behavior complained of here.

282. Mr. Miller neglected his fiduciary, loyalty and other obligations to the Plaintiffs as their lawyer. He failed in his loyalty to the Plaintiffs to refrain from working with a party in conflict of interest.

283. To the extent that the relationships here between Mr. Miller and the Plaintiffs falls under and fits within the protections of the Under NY General Business Law § 349, Plaintiffs are

66

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

seeking compensatory and treble damages, interest and attorneys fees, return of all of the monies that Plaintiffs paid to Defendant Mr. Miller and all other recoverable damages under the statute.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, treble damages, and any other relief the Court deems just and proper.

## COUNT XV: PROMISSORY AND EQUITABLE ESTOPPEL AGAINST JONATHAN MILLER

284.    All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

285.    The Equitable Estoppel cause of action – per Mr. Miller's objection to it – is plead to the extent this Court recognizes or may recognize it as a cause of action and to the extent it does not and never will in any phase of this matter, and, even so, it is plead as legal mechanisms, tools of justice, positions, applications of law to fact and as otherwise appropriate per the facts here and law.

286.    Mr. Miller spoke misleading words and acted in a misleading way and Plaintiff has suffered damages directly as a result of Defendants' breach of their attorney-client relationship. These damages are a reasonably foreseeable result of Defendants' conduct.

67

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

287.   Plaintiffs had the right to reasonably rely upon Mr. Miller's desire and intent to comply with his ethic obligations as counsel to the Plaintiffs.

288.   Defendants should be estopped from continuing to represent against the Plaintiffs.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## COUNT XVI: GENERAL EQUITY AGAINST ALL DEFENDANTS

289.   All of the paragraphs of the Amended Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

290.   This cause of action is plead based upon all the facts and circumstances herein, including specifically those expressed in the other causes of action in these pleading.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $100,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, preliminary injunction barring Mr. Miller from representing against the Plaintiffs and barring Defendants from using, possessing, communicating, distributing and publicizing Plaintiffs' information, as well as an injunction barring Defendants

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

from using, conveying, publicizing, sharing with others and distributing any phone transcriptions,

copies, records, documents and all such of and related to any recorded phone call done in violation

of the law, attorney's fees and costs, pre and post judgment interest and any other relief the Court

deems just and proper.

August 15, 2019

Brem Moldovsky, L.L.C.

BY: Brem Moldovsky, Esq.

100 N. 18th Street, Suite 300
Philadelphia, PA 19103

Phone: (215) 546-9957

BY: Gerald J. Pomerantz, Esq.
THE COVENTRY HOUSE
7301 Coventry Ave, Suite 501
Elkins Park, PA 19027
Phone (267) 255-7229

Case# 2019-00793-105 - JUDGE.27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

BREM MOLDOVSKY, L.L.C.
Brem Moldovsky, Esquire (Attorney ID 79485)
100 N. 18th Street, Suite 300
Philadelphia, PA 19103
Phone 215-546-9957

Gerald J. Pomerantz, Esquire (Attorney ID 3636)
THE COVENTRY HOUSE
7301 Coventry Ave, Suite 501
Elkins Park, PA 19027

Attorneys for the Plaintiffs

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CIVIL DIVISION

| | |
|---|---|
| BREM MOLDOVSKY, ESQUIRE; and BREM MOLDOVSKY, L.L.C.; | |
| *Plaintiffs,* | Case No: 2019-00793 |
| vs. | TRIAL BY JURY OF 12 DEMANDED |
| JONATHAN MILLER, ESQUIRE, D/B/A/ THE LAW FIRM OF JONATHAN R. MILLER; ANDREW ELLNER; LIGHTBOX VENTURES, LLC, and LIGHTBOX CAPITAL MANAGEMENT, LLC. | **VERIFICATION** |
| *Defendants.* | |

Brem Moldovsky, Esquire, being duly sworn, deposes, and says that I am the managing member of and qualified representative of Brem Moldovsky, L.L.C. in this action, that I have read the forgoing Second Amended Complaint, and know the contents thereof based upon personal knowledge and based upon a review of the relevant documents, that the same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

_____
Brem Moldovsky, Esquire

Sworn to before me this
15th day of August, 2019

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
SHERI FORNEY, Notary Public
Philadelphia County
My Commission Expires June 26, 2021
Commission Number 1275161

Exhibit "D"

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**SAMUEL C. STRETTON**
**ATTORNEY AT LAW**
**103 South High Street**
**P.O. Box 3231**
**West Chester, PA   19381-3231**

**610-696-4243**
**FAX 610-696-2919**

July 24, 2019

Brem Moldovsky, Esquire
100 North 18th Street
Suite 300
Philadelphia, PA   19103

        Re:  Lightbox Ventures, LLC v. Brem Moldovsky, LLP

Dear Mr. Moldovsky:

        You had requested I supplement my February 5, 2019 letter. In that letter, as you know, I raised the issue of conflict of interest of Attorney Jonathan Miller due to his representation of you and your wife and your law firm. I was particularly concerned about the confidentiality issues, which could be used against you.

        I further have an opinion with reasonable, ethical and legal certainty that the representation by Mr. Miller against you and your firm directly and indirectly contributed and was the proximate cause of your damages. Sufficient time and effort was spent by you and your law firm in having to respond to Attorney Miller's litigation and efforts to disqualify him to protect the confidentiality based on his prior representation of you. All additional expenses and loss of time and fees was directly caused by Mr. Miller's conflict of interest, personal knowledge and apparent desire to hurt you as his prior client.

        I incorporate my earlier report.

        Mr. Miller's breach of his common law and fiduciary obligations to you, your firm and your wife, and his breach of confidentiality was set forth in the summary of the Rules of Professional Conduct in my letter dated the February 5, 2019 and his conduct was egregious. The conduct breaches his duty and trust to Attorney Moldovsky, his firm and his wife. By that breach, the duty of trust and confidentiality resulted in

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Brem Moldovsky, Esquire
July 24, 2019
Page Two

damages flowing from the breach, including the time and effort
of Mr. Moldovsky's firm in defending this case, emotional and
mental distress, and any loss of income and business.

Mr. Miller's breach of his duty to Mr. Moldovsky, his firm
and his wife, clearly resulted in damages directly flowing from
that breach.

Mr. Miller's prior representation and knowledge of
confidential information and of Mr. Moldovsky's law practice and
procedures and his financial situation regarding his family gave
Mr. Miller an unfair advantage in the litigation.

From a review of the matters, it appears that Attorney
Miller has continued to misuse confidential information and has
not been truthful about the degree and extent of his prior
representation of Mr. Moldovsky, his wife and his law practice.

In reviewing the Amended Complaint of Mr. Moldovsky, it
appears Mr. Miller's conflict of interest and breach of
confidentiality rises to the level of a violation of a serious
breach of his fiduciary duty to his former client. This breach
forms the basis for this legal malpractice claim and the damages
that flow from the breach. Mr. Miller's misconduct is the
proximate cause of the damages sustained by Mr. Moldovsky, his
firm and his family in that complaint.

It is first surprising that Mr. Miller is continuing his
representation against his former client, Mr. Moldovsky. Mr.
Miller's accusations are directly contrary to his obligation to
his former clients. His conduct is such that any damages that
flow from that would be caused by his conflict of interest and
breach of his fiduciary duties and duties of confidentiality.

Mr. Miller's conduct is egregious and is not acceptable and
has caused Mr. Moldovsky, his wife and his firm substantial
damages.

It is my professional opinion with reasonable legal and
ethical certainty that Mr. Miller's conduct deviated
substantially from the acceptable professional standard and
fiduciary duties of an attorney. Mr Miller's conduct was the

Brem Moldovsky, Esquire
July 24, 2019
Page Three

direct and proximate cause in bringing harm to Mr. Moldovsky and his firm and his family.

All opinions set forth in this supplemental letter are to a reasonable degree of legal and ethical certainty.

Very truly yours,

Samuel C. Stretton

SCS:jac

VIA EMAIL (brem@bremlaw.com)

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM - Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

EXHIBIT "E"

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| BREM MOLDOVSKY, LLC and BREM MOLDOVSKY, | : COURT OF COMMON PLEAS : BUCKS COUNTY, PENNSYLVANIA : : : |
| Plaintiffs, | : : : NO: 2019-00793 |
| v. | : CIVIL ACTION - LAW : |
| ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, LIGHTBOX VENTURES LLC, and JONATHAN MILLER, ESQUIRE | : : : : : |
| Defendants. | : : : |

## <u>AFFIDAVIT OF ANDREW ELLNER, INDIVIDUALLY AND ON BEHALF OF LIGHTBOX VENTURES, LLC AND LIGHTBOX CAPITAL MANAGEMENT</u>

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF NEW YORK   )

1.      I am over the age of eighteen an am *sui juris*.

2.      I am the sole member of Lightbox Capital Management LLC and Lightbox Ventures. LLC (together, "Lightbox").  As such, I am authorized to make all statements contained in this Affidavit and to execute this Affidavit on behalf of myself and Lightbox.

3.      Lightbox and I file this Affidavit to contest Plaintiffs' Brem Moldovsky and Brem Moldovsky LLC (together, "Plaintiffs"), conclusory assertions and the exercise of personal jurisdiction by this court.

4.      I have personal knowledge of the facts and statements in this Affidavit and in mine and Lightbox's Preliminary Objections to Plaintiffs' Complaint filed in this Lawsuit.

5.      I reside at 210 West 77th Street, Apartment 8W, New York, New York 10024.

6.      Lightbox is a New York Limited Liability Company, incorporated in New York, with its principal place of business in New York, New York.

7.      Plaintiff previously represented Lightbox in litigation in the United States District Court for the Southern District of New York in the matter captioned <u>Lightbox Ventures, LLC v. 3rd Home Ltd., et al.</u>, No. 16-cv-2379 (S.D.N.Y.) (the "New York Litigation").

8.      Eventually, Plaintiff withdrew from representing Lightbox in the New York Litigation.

9.      Plaintiff has since sued Lightbox in State and Federal Court in New York. That litigation is ongoing.

10.     No aspect of my or Lightbox's attorney-client relationship with Plaintiff occurred in Pennsylvania.

11.     All aspects of my attorney-client relationship with Plaintiff occurred in New York.

12.     Every meeting I had with Plaintiffs occurred in Plaintiffs' New York office, a coffee shop near his New York office, and/or in depositions or mediations held in offices in New York.

13.     Every phone call I received from Plaintiff I received while in New York.

14.     Every phone call I made to Plaintiffs I made while I was in New York.

15.     Every time I called Plaintiffs I dialed either Plaintiff's New York phone number (212-563-3370), or his cell phone at Plaintiffs' or their administrative assistant's instruction.

16.     Every time I called Plaintiffs it was to discuss their representation of me in the New York Litigation.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

17.     I was physically in New York every time I recorded a phone conversation with Plaintiffs. A copy of my itemized Verizon Statement from November 8, 2017 through December 7, 2017 is attached as **Exhibit "1"**, and every call I made to Plaintiffs is highlighted for ease of reference. The "Origination" column reflects that every outgoing call to Plaintiffs was made from either New Hyde Park, NY or New York, NY.

18.     With specific regard to the phone call Plaintiffs allege that I made to them while they were in Bucks County, Pennsylvania on Thanksgiving Day 2017, I made that phone call from my personal residence in Manhattan, New York, before driving to my son-in-laws' parents' house in Roslyn, New York for Thanksgiving with my wife and son. My wife has submitted a separate affidavit in support of my whereabouts that day.

19.     The phone number I dialed to reach Plaintiffs on Thanksgiving Day 2017 was (212) 563-3170.

20.     No part of my relationship with Plaintiffs occurred anywhere other than New York.

21.     Co-defendant, Jonathan Miller, Esquire, is my attorney in New York. He is not my attorney in Pennsylvania and has never represented me in Pennsylvania. In fact, when Plaintiffs started this litigation, Miller recommended I get separate counsel.

22.     Jonathan Miller, Esquire represents me in the following lawsuits in New York: 1) Lightbox Ventures, LLC v. 3rd Home Ltd., et al., No. 16-cv-2379 (S.D.N.Y.) (disposed of in favor of Lightbox, appeal pending; Plaintiffs previously represented me in this matter before withdrawing); 2) Lightbox Ventures, LLC v. Brem Moldovsky, LLC, et al., No. 18-3721 (2d Circuit) (active); 3) Scarola Malone & Zubatov, LLP v. Ellner et al., No. 651326/2017 (N.Y. Sup. Ct., N.Y. County) (active).

3

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

23.    Lightbox and I conduct no business in Pennsylvania.

24.    Lightbox and I do not maintain a general course of business activity in Pennsylvania for pecuniary benefit.

25.    Lightbox and I do not work out of or maintain an office in Pennsylvania.

26.    Lightbox and I do not possess or maintain a license to do business in Pennsylvania.

27.    Lightbox and I do not regularly service clients in Pennsylvania.

28.    Lightbox and I do not either own or rent property in Pennsylvania.

29.    Lightbox and I do not have or maintain any Pennsylvania employees or agent.

30.    Lightbox and I do not have or maintain any Pennsylvania bank accounts.

31.    Lightbox and I do not have or maintain any telephone listings or mailing addresses in Pennsylvania.

32.    Lightbox and I do not derive any of our income from Pennsylvania.

33.    Lightbox and I do not have systematic and general business contact with Pennsylvania.

34.    None of the acts in the course of my relationship with Plaintiffs occurred in Pennsylvania.

Dated: 6/17/19

Andrew Ellner, Sole Member
Lightbox Ventures LLC &
Lightbox Capital Management, LLC

Sworn to and subscribed before me
this 17 day of June, 2019.

Notary Public

MILUSKA RIOS
NOTARY PUBLIC-STATE OF NEW YORK
No. 01RI6301526
Qualified in Bronx County
My Commission Expires 04-14-2022

4

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM - Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case 2:20-cv-00196-ER Document 23-3 Filed 04/09/21 Page 305 of 364

EXHIBIT "1"

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM - Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case 2:21-cv-00620-JFB Document 23-3 Filed 12/03/21 Page 306 of 364

**verizon⌄**

Billing period Nov 8, 2017 to Dec 7, 2017 | REDACTED

**Andrew Ellner**

516.314.0579 | iPhone 7

**Talk activity - continued**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|-----------------------|-------|

REDACTED

**Andrew Ellner**

516.729.9398 | IPHONE X

**Talk activity**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|-----------------------|-------|

REDACTED

11

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# verizon✓

**Andrew Ellner**

516.729.9398 | IPHONE X

Billing period Nov 8, 2017 to Dec 7, 2017 | REDACTED

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|
| Nov 13 | 2:40 PM | 212.463.3370 | New Hyde P, NY | Incoming, CL | 69 | - | - | - |
| Nov 13 | 7:01 PM | 212.463.3370 | New York, NY | Incoming, CL | 1 | - | - | - |
| | REDACTED | | | | | | | |
| Nov 14 | 3:47 PM | 610.606.4716 | New York, NY | Incoming, CL | 2 | - | - | - |
| Nov 14 | 4:01 PM | 610.606.4716 | New York, NY | Kangmasa, PA | 26 | - | - | - |
| | REDACTED | | | | | | | |
| Nov 14 | 4:55 PM | 610.606.4716 | New Hyde P, NY | Vel Deposit, CL | 1 | - | - | - |
| Nov 14 | 5:01 PM | 610.606.4716 | New York, NY | Kangmasa, PA | 56 | - | - | - |
| | REDACTED | | | | | | | |
| | | | REDACTED | | | | | |
| | | | REDACTED | | | | | |
| Nov 20 | 5:15 PM | 610.606.4716 | New Hyde P, NY | Kangmasa, PA | 1 | - | - | - |
| Nov 20 | 5:08 PM | 212.463.3370 | New Hyde P, NY | New York, NY | 1 | - | - | - |
| Nov 20 | 5:16 PM | 702.913.1700 | New Hyde P, NY | Las Vegas, NV | 14 | - | - | - |
| Nov 20 | 5:19 PM | 212.463.3370 | New Hyde P, NY | New York, NY | 1 | - | - | - |
| Nov 20 | 5:20 PM | 702.913.1700 | New Hyde P, NY | Las Vegas, NV | 13 | - | - | - |
| Nov 20 | 5:32 PM | 702.913.1700 | New Hyde P, NY | Las Vegas, NV | 1 | - | - | - |
| Nov 20 | 7:02 PM | 212.463.3370 | New York, NY | New York, NY | 1 | - | - | - |
| Nov 20 | 5:33 PM | 702.913.1700 | New York, NY | Las Vegas, NV | 1 | - | - | - |
| Nov 20 | 5:33 PM | 212.463.3370 | New York, NY | Las Vegas, NV | 26 | - | - | - |
| | | | | | 26 | - | - | - |

12

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case 2019-00793-105   Document   Filed 09/04/21   Page

# verizon✓

Billing period Nov. 8, 2017 to Dec 7, 2017 | REDACTED

## Andrew Ellner
### 516.729.9398 | IPHONE X

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|
| Nov 23 | 10:20 AM | 702.913.1700 | New Hyde P., NY | Las Vegas, NV | 1 | | | |
| Nov 23 | 10:20 AM | 702.913.1700 | Las Vegas, NV | | | | | |
| Nov 23 | 10:21 AM | 212.563.3370 | New York, NY | Las Vegas, NV | 2 | | | |
| Nov 23 | 10:24 AM | 702.913.1700 | New York, NY | New York, NY | 1 | | | |
| Nov 23 | 10:24 AM | 212.563.3370 | New York, NY | New York, NY | 1 | | | |
| Nov 23 | 10:24 AM | 702.913.1700 | New York, NY | Las Vegas, NV | 1 | | | |
| Nov 23 | 10:26 AM | 702.913.1700 | New York, NY | Las Vegas, NV | 1 | | | |
| Nov 23 | 10:27 AM | 212.563.3370 | New York, NY | Las Vegas, NV | 60 | | | |
| Nov 24 | 1:50 PM | 212.913.1700 | New York, NY | New York, NY | 88 | | | |
| Nov 24 | 1:00 PM | 212.563.3370 | New York, NY | Las Vegas, NV | 78 | | | |
| Nov 30 | 9:43 AM | 702.913.1700 | New Hyde P., NY | Las Vegas, NV | 16 | | | |

REDACTED

13

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# verizon⁄

**Billing period Nov 8, 2017 to Dec 7, 2017** | REDACTED

## Andrew Ellner
### 516.729.9398 | IPHONE X

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/Other Chgs | Total |
|---|---|---|---|---|---|---|---|---|
| Nov 30 | 9:43 AM | 212.563.3370 | New Hyde P, NY | New York, NY | 16 | – | – | – |
| Nov 30 | 9:59 AM | 212.563.3370 | New Hyde P, NY | New York, NY | 12 | | | |
| Nov 30 | 10:10 AM | 702.913.1700 | New York, NY | Las Vegas, NV | 1 | | | |
| Nov 30 | 10:11 AM | 212.563.3370 | New York, NY | New York, NY | 1 | | | |
| Nov 30 | 10:11 AM | 702.913.1700 | New York, NY | Las Vegas, NV | 1 | | | |
| Nov 30 | 10:11 AM | 212.563.3370 | New York, NY | New York, NY | 34 | – | – | – |
| Dec 1 | 10:18 AM | 702.913.1700 | New Hyde P, NY | Las Vegas, NV | 1 | | | |
| Dec 1 | 10:18 AM | 212.563.3370 | New Hyde P, NY | New York, NY | 1 | | | |
| Dec 1 | 11:20 AM | 702.913.1700 | New Hyde P, NY | Las Vegas, NV | 1 | | | |
| Dec 1 | 10:20 AM | 212.563.3370 | New York, NY | New York, NY | 1 | | | |
| Dec 1 | 10:21 AM | 702.913.1700 | New York, NY | Las Vegas, NV | 1 | | | |
| Dec 1 | 10:27 AM | 212.563.3370 | New York, NY | New York, NY | 1 | | | |
| Dec 1 | 10:24 AM | 702.913.1700 | New York, NY | Las Vegas, NV | 1 | | | |
| Dec 1 | 10:21 AM | 212.563.3370 | New York, NY | New York, NY | 65 | – | – | – |
| Dec 5 | 10:14 AM | 702.913.1700 | New York, NY | Las Vegas, NV | 1 | | | |
| Dec 5 | 10:14 AM | 212.563.3370 | New York, NY | New York, NY | 1 | | | |
| Dec 5 | 10:22 AM | 702.913.1700 | New York, NY | Las Vegas, NV | 85 | | | |
| Dec 5 | 10:23 AM | 212.563.3370 | New York, NY | New York, NY | 85 | – | – | – |

REDACTED





14

Case 2:21-cv-01090-ER   Document 23-3   Filed 04/09/21   Page 310 of 364

## verizon✓

**Andrew Ellner**

516.729.9398 | IPHONE X

Billing period Nov 8, 2017 to Dec 7, 2017 | REDACTED

REDACTED

## Talk activity - continued

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | Long Dist/ Other Chrgs | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------------|-------|
| Dec 7 | 12:46 PM | 702.973.1700 | New Hyde P., NY | Las Vegas, NV | 66 | - | - | - |
| Dec 7 | 12:46 PM | 610.606.4710 | New Hyde P., NY | Kingstses, PA | 60 | - | - | - |

15

Case# 2019-00793-105 - JUDGE:27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "F"

Case# 2019-00793-105 - JUDGE.27 Received at County of Bucks Prothonotary on 09/04/2019 2:27 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| BREM MOLDOVSKY, LLC and<br>BREM MOLDOVSKY, | : COURT OF COMMON PLEAS<br>: BUCKS COUNTY, PENNSYLVANIA<br>:<br>: |
| Plaintiffs, | :<br>:<br>: NO: 2019-00793 |
| v. | : CIVIL ACTION - LAW<br>: |
| ANDREW ELLNER, LIGHTBOX CAPITAL<br>MANAGEMENT, LLC, LIGHTBOX<br>VENTURES LLC, and JONATHAN MILLER,<br>ESQUIRE | :<br>:<br>:<br>: |
| Defendants. | :<br>: |

## AFFIDAVIT OF JILL ELLNER

STATE OF NEW YORK    )
                     ) ss.
COUNTY OF NEW YORK   )

1.    I am over the age of eighteen and am *sui juris*.

2.    My husband is Andrew Ellner. We have been married for 33 years.

3.    We live together at 210 West 77th Street, Apartment 8W, New York, New York 10024.

4.    I was with my husband in New York the entirety of Thanksgiving Day 2017.

5.    We were in our home in New York City Thanksgiving Morning, and then made an approximately 90-minute drive to Roslyn, New York to spend the holiday with my daughter and her in-laws.

6.    My daughter's in-laws are David and Rita Levy, and they live at 25 Wren Drive, Roslyn, New York 11576.

7.    We arrived in Roslyn early in the afternoon on Thanksgiving.

8.  My husband and I never left New York on Thanksgiving Day 2017.

9.  There were approximately 20 other people at my daughter's in-laws' house on Thanksgiving Day 2017.

Dated: 6/17/19

Jill Ellner

Sworn to and subscribed before me

this ___ day of _____, 2019.

Notary Public

MILUSKA RIOS
NOTARY PUBLIC STATE OF NEW YORK
No. 01RI6301528
Qualified in Bronx County
My Commission Expires 04-14-2022

2

# Exhibit "N"

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 315 of 364

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SCAROLA MALONE & ZUBATOV LLP, | Index No. 651324/2017 |
| Plaintiff, | Motion #21 |
| v. | |
| ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, LIGHTBOX VENTURES, LLC, and BREM MOLDOVSKY, LLC | |
| Defendants. | |

**SUPPLEMENTAL AFFIRMATION OF COUNSEL IN RESPONSE TO
MOLDOVSKY'S MAY 6, 2020 AFFIRMATION IN SUR-SUR-SUR-REPLY**

I, Jonathan R. Miller, Esq., being an attorney duly admitted to practice before the Courts of

the State of New York, hereby affirm and state the following pursuant to CPLR § 2106 and under

penalty of perjury:

1.       I am the attorney of record for Defendants Andrew Ellner, Lightbox Ventures LLC

("LBV") and Lightbox Capital Management LLC ("LBC") (collectively, "Lightbox") in this matter. I

am fully familiar with the matters set forth herein, based on my personal knowledge, review of the

case file and various public court dockets pertaining to this dispute, and/or information provided

to me by my clients.

2.       I submit this Supplemental Affirmation on behalf of Lightbox, in response to

Defendant Moldovsky's unauthorized supplemental affirmation in sur-sur-sur-reply (Dkt. #930). I

will try to be brief.

3.       In light of the Second Circuit's affirmance of the charging lien awarded by Judge

Cote in the 3rd Home Matter, *cf.* Dkt. #931, Crossclaims #1 and #2 are no longer viable, because

they are explicitly premised on a finding by the Second Circuit and/or by Judge Cote (on remand)

that Mr. Moldovsky breached his fiduciary duties owed to his clients and/or withdrew from the 3rd

Home Matter on false pretenses. *See* Crosscl., Dkt. #741, at ¶¶ 126, 132. Accordingly, these crossclaims should be considered withdrawn.

4. For similar reasons, Crossclaim #5, sounding in legal malpractice, should also be deemed withdrawn. It is settled law that an unappealed-from charging lien order generally precludes a claim for malpractice arising from the same legal services. *See, e.g., Lusk v. Weinstein*, 85 A.D.3d 445 (1st Dep't 2011). Because, in this case, Judge Cote's charging lien order was not vacated on appeal, LBV and Mr. Ellner's malpractice cross-claim is no longer viable and should be considered withdrawn.

5. And Crossclaim #4, which in substance alleges that Mr. Moldovsky knowingly deceived Mr. Ellner and LBV while representing them in the 3rd Home Matter, should similarly be deemed withdrawn.

6. Accordingly, Crossclaims #1, #2 and #5 should be considered withdrawn, and that part of the Moldovsky Firm's motion, seeking dismissal of those causes of action, should be denied as moot.

7. On the other hand, Lightbox submits that Crossclaims #3 and #4, both alleging violations of Judiciary Law § 487, remain viable and are not foreclosed by Judge Cote's charging lien decision or by the Second Circuit's affirmance.

8. Mr. Moldovsky has failed to submit any legal authority holding that a charging lien award precludes a Section 487 claim. I have not located any such authority, either.

9. As previously discussed, LBV and Mr. Ellner's Section 487 claims are not duplicative of their malpractice claim, because they rest on different facts (and different law, too):

> Moreover, Mr. Ellner and LBV's Section 487 claims do not arise from the same facts nor seek the same damages as their other causes of action. Counts 1 and 2 arise primarily from the Moldovsky Firm's self-dealing, breach of fiduciary duties, coercion of the amended fee agreement, and withdrawal on false pretenses, and seek disgorgement of legal fees paid to the Firm. Count 5 arises from the

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 317 of 364

Moldovsky Firm's negligence in failing to timely review critical case documents, and seeks compensatory damages for all fees paid to the Firm plus all fees paid for the Scalar Report and related litigation expenses incurred in the 3rd Home Matter. And the Section 487 claims, Counts 2 and 3, arise primarily from Mr. Moldovsky's intentionally deceptive misrepresentations in connection with his firm's retroactive billing scheme, and seek compensatory damages based on Mr. Ellner and LBV's attorney's fees and expenses incurred in challenging the Firm's invoicing in federal and state court, subject to statutory trebling.

*See* Lightbox's Amended Memorandum of Law (Dkt. #821), at 17-18.

10.     In addition to arising from different facts, LBV and Mr. Ellner's Section 487 claims are different from legal malpractice. *See Bill Birds, Inc. v. Stein Law Firm, P.C. ("Birds I")*, 164 A.D.3d 635, 637 (2d Dep't 2018) ("Contrary to the defendants' contention, the cause of action alleging a violation of Judiciary Law § 487 was not duplicative of the cause of action alleging legal malpractice. A violation of Judiciary Law § 487 requires an intent to deceive, whereas a legal malpractice claim is based on negligent conduct.") (citation omitted), *aff'd* 2020 NY Slip Op 02125, 2020 WL 1521903 (N.Y. March 31, 2020); *see also Sabalza v. Salgado*, 85 A.D.3d 436, 438 (1st Dep't 2011) ("The motion court was correct in denying defendant's motion to dismiss plaintiff's claim of a violation of Judiciary Law § 487. A cause of action for violation of the Judiciary Law statute related to attorney misconduct is not duplicative of causes of action alleging legal malpractice, since the statutory claim requires an intent to deceive, whereas a legal malpractice claim is based on negligent conduct.")

11.     In *Bill Birds, Inc. v. Stein Law Firm, P.C. ("Birds II")*, 2020 NY Slip Op 02125, 2020 N.Y. LEXIS 739, 2020 WL 1521903 (N.Y. March 31, 2020), the Court of Appeals further distinguished between Section 487 claims and both common law fraud and legal malpractice. Unlike common law fraud, a Section 487 claim does not require a showing of justifiable reliance. Unlike legal malpractice, a Section 487 claim does not arise from negligent acts or conduct, but rather from an attorney's intentional deceit of a party or a court.

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 318 of 364

> Similar to fraud, Judiciary Law § 487—covering intentional deceit and collusion—imposes liability for the making of false statements with scienter. But . . . Judiciary Law § 487 is not a codification of common law fraud and therefore does not require a showing of justifiable reliance. In other words, liability under the statute does not depend on whether the court or party to whom the statement is made is actually misled by the attorney's intentional false statement. Given the requirement that the conduct involve "deceit or collusion" and be intentional, liability under the statute does not extend to negligent acts or conduct that constitutes only legal malpractice, evincing a lack of professional competency.

*Id.*, 2020 N.Y. LEXIS 739 at *2.

12.     Mr. Moldovsky's insistence that LBV and Mr. Ellner's Section 487 claims are subject to dismissal because, supposedly, Judge Cote previously vindicated the Moldovsky Firm's retroactive invoicing, is utter nonsense.

13.     Judge Cote rendered her charging lien decision based on her familiarity with the proceedings before her, and otherwise ruled that many of the parties' submissions were irrelevant. *See* Charging Lien Decision (Dkt. #616) at 10 ("The parties have also submitted a significant number of irrelevant exhibits."). The Moldovsky Firm submitted its various invoices, including seven of its eight "final" invoices, and asserted it was owed $400,000. *See* Charging Lien Brief (Dkt. #615) at 11. Of that amount, almost $300,000 was based on retroactive billing. *See* Dkt. #741 at ¶ 106; #742. Judge Cote rejected this and instead ruled that the Firm was entitled, in *quantum meruit*, to just $45,948 — *less than half of the non-retroactive portion of the Firm's invoices*. Thus, rather than vindicate the Firm's retroactive invoicing scheme, Judge Cote implicitly found that the Firm's invoices were grossly excessive.

14.     I have already addressed and refuted Mr. Moldovsky's reliance on *Birds II*. *See* Supplemental Affirmation (Dkt. #918) at ¶¶ 3-11. The Court of Appeals simply reaffirmed that a Section 487 claim against an attorney is viable when the attorney intentionally tries to deceive the court or a party in ongoing litigation.

15.     As alleged, Mr. Moldovsky's deceitful conduct occurred in the midst of ongoing litigation. Crossclaim #3 alleges that Mr. Moldovsky intentionally submitted fraudulently retroactive invoices to the federal and state courts to support his claims for allegedly owed fees (whether as a charging lien or otherwise). *See* Dkt. #741 at ¶¶ 89-92. Crossclaim #4 alleges that Mr. Moldovsky intentionally deceived LBV and Mr. Ellner, in the midst of ongoing litigation, by falsely representing that there would be no retroactive invoicing under the amended fee agreement. *See id.* at ¶¶ 93-111.

16.     As alleged in Crossclaim #3, Mr. Moldovsky intentionally attempted to deceive Judge Cote as a party in the charging lien proceeding, and is again attempting to deceive this Court as a party in this current proceeding. As alleged in Crossclaim #4, Mr. Moldovsky intentionally deceived Mr. Ellner and LBV, as parties in the 3rd Home Matter. (Section 487 does not distinguish attempted from actual deception; a showing of reasonable reliance is not required. *Birds II*, 2020 N.Y. LEXIS 739 at *2.)

17.     Thus, *Birds II* does not preclude LBV and Mr. Ellner from maintaining their Section 487 claims. In fact, the Court of Appeals stated the following:

> [T]he purpose of Judiciary Law § 487 (1) is to safeguard an attorney's special obligation of honesty and fair dealing in the course of litigation—a pillar of the profession. Our legal system depends on the integrity of attorneys who fulfill the role of officers of the court, furthering its truth-seeking function (*see Amalfitano [v. Rosenberg*, 12 N.Y.3d 8, 14 (2009)]. Thus, "[t]he statute is limited to a peculiar class of citizens, from whom the law exacts a reasonable degree of skill, and the utmost good faith in the conduct and management of the business [e]ntrusted to them . . . To mislead *the court or a party* is to deceive it; and, if knowingly done, constitutes criminal deceit under the statute" (*id.* at 14, quoting *Looff v Lawton*, 14 Hun 588, 590 [2d Dept 1878] [emphasis added]). Moreover, the language of the statute is aimed at a particular type of deceit or collusion—done by an attorney with the intent to mislead the court or a party (*see id.*; *Looff*, 97 NY at 482). While attorneys must zealously advocate for their clients, such deception or collusion is antithetical to appropriate advocacy, functioning as a fraud on the court or a party. Given the statute's origins and purpose, it provides a particularized civil

Case 2:20-cv-06190-ER    Document 23-3    Filed 04/05/21    Page 320 of 364

remedy, and criminal liability, for a specialized form of attorney misconduct occurring during the pendency of litigation.

*Id.*, 2020 N.Y. LEXIS 739 at *6-7.

18.    For all the foregoing reasons, LBV and Mr. Ellner's first, second and fifth crossclaims should be deemed withdrawn; the Moldovsky Firm's motion to dismiss those claims should be denied as moot; and its motion to dismiss LBV and Mr. Ellner's third and fourth crossclaims should be denied.

Respectfully submitted,

Date: May 15, 2020

/s/ Jonathan R. Miller, Esq.
*Counsel for Andrew Ellner, Lightbox Capital Management, LLC and Lightbox Ventures, LLC*

*Main Office:*
100 Overlook Center, 2nd Floor
Princeton, N.J. 08540
Tel. 609-955-1226
Fax. 609-964-1026
jonathan.miller@lawyer.com

*New York Office:*
186 Joralemon Street, Suite 1202
Brooklyn, NY 11201

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 321 of 364

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SCAROLA MALONE & ZUBATOV LLP, | Index No. 651324/2017 |
| Plaintiff, | Motion #21 |
| v. | |
| ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, LIGHTBOX VENTURES, LLC, and BREM MOLDOVSKY, LLC | |
| Defendants. | |

## (CORRECTED) SUPPLEMENTAL AFFIRMATION OF COUNSEL IN RESPONSE TO MOLDOVSKY'S MAY 6, 2020 AFFIRMATION IN SUR-SUR-SUR-REPLY

I, Jonathan R. Miller, Esq., being an attorney duly admitted to practice before the Courts of

the State of New York, hereby affirm and state the following pursuant to CPLR § 2106 and under

penalty of perjury:

1.        I am the attorney of record for Defendants Andrew Ellner, Lightbox Ventures LLC

("LBV") and Lightbox Capital Management LLC ("LBC") (collectively, "Lightbox") in this matter. I

am fully familiar with the matters set forth herein, based on my personal knowledge, review of the

case file and various public court dockets pertaining to this dispute, and/or information provided

to me by my clients.

2.        I submit this Supplemental Affirmation on behalf of Lightbox, in response to

Defendant Moldovsky's unauthorized supplemental affirmation in sur-sur-sur-reply (Dkt. #930). I

will try to be brief.

3.        In light of the Second Circuit's affirmance of the charging lien awarded by Judge

Cote in the 3rd Home Matter, *cf.* Dkt. #931, Crossclaims #1 and #2 are no longer viable, because

they are explicitly premised on a finding by the Second Circuit and/or by Judge Cote (on remand)

that Mr. Moldovsky breached his fiduciary duties owed to his clients and/or withdrew from the 3rd

Home Matter on false pretenses. *See* Crosscl., Dkt. #741, at ¶¶ 126, 132. Accordingly, these crossclaims should be considered withdrawn.

4.       For similar reasons, Crossclaim #5, sounding in legal malpractice, should also be deemed withdrawn. It is settled law that an unappealed-from charging lien order generally precludes a claim for malpractice arising from the same legal services. *See, e.g., Lusk v. Weinstein*, 85 A.D.3d 445 (1st Dep't 2011). Because, in this case, Judge Cote's charging lien order was not vacated on appeal, LBV and Mr. Ellner's malpractice cross-claim is no longer viable and should be considered withdrawn.

5.       Accordingly, Crossclaims #1, #2 and #5 should be considered withdrawn, and that part of the Moldovsky Firm's motion, seeking dismissal of those causes of action, should be denied as moot.

6.       On the other hand, Lightbox submits that Crossclaims #3 and #4, both alleging violations of Judiciary Law § 487, remain viable and are not foreclosed by Judge Cote's charging lien decision or by the Second Circuit's affirmance.

7.       Mr. Moldovsky has failed to submit any legal authority holding that a charging lien award precludes a Section 487 claim. I have not located any such authority, either.

8.       As previously discussed, LBV and Mr. Ellner's Section 487 claims are not duplicative of their malpractice claim, because they rest on different facts (and different law, too):

> Moreover, Mr. Ellner and LBV's Section 487 claims do not arise from the same facts nor seek the same damages as their other causes of action. Counts 1 and 2 arise primarily from the Moldovsky Firm's self-dealing, breach of fiduciary duties, coercion of the amended fee agreement, and withdrawal on false pretenses, and seek disgorgement of legal fees paid to the Firm. Count 5 arises from the Moldovsky Firm's negligence in failing to timely review critical case documents, and seeks compensatory damages for all fees paid to the Firm plus all fees paid for the Scalar Report and related litigation expenses incurred in the 3rd Home Matter. And the Section 487 claims, Counts 2 and 3, arise primarily from Mr. Moldovsky's intentionally deceptive misrepresentations in connection with his

firm's retroactive billing scheme, and seek compensatory damages based on Mr. Ellner and LBV's attorney's fees and expenses incurred in challenging the Firm's invoicing in federal and state court, subject to statutory trebling.

*See* Lightbox's Amended Memorandum of Law (Dkt. #821), at 17-18.

9.        In addition to arising from different facts, LBV and Mr. Ellner's Section 487 claims are different from legal malpractice. *See Bill Birds, Inc. v. Stein Law Firm, P.C. ("Birds I")*, 164 A.D.3d 635, 637 (2d Dep't 2018) ("Contrary to the defendants' contention, the cause of action alleging a violation of Judiciary Law § 487 was not duplicative of the cause of action alleging legal malpractice. A violation of Judiciary Law § 487 requires an intent to deceive, whereas a legal malpractice claim is based on negligent conduct.") (citation omitted), *aff'd* 2020 NY Slip Op 02125, 2020 WL 1521903 (N.Y. March 31, 2020); *see also Sabalza v. Salgado*, 85 A.D.3d 436, 438 (1st Dep't 2011) ("The motion court was correct in denying defendant's motion to dismiss plaintiff's claim of a violation of Judiciary Law § 487. A cause of action for violation of the Judiciary Law statute related to attorney misconduct is not duplicative of causes of action alleging legal malpractice, since the statutory claim requires an intent to deceive, whereas a legal malpractice claim is based on negligent conduct.")

10.        In *Bill Birds, inc. v. Stein Law Firm, P.C. ("Birds II")*, 2020 NY Slip Op 02125, 2020 N.Y. LEXIS 739, 2020 WL 1521903 (N.Y. March 31, 2020), the Court of Appeals further distinguished between Section 487 claims and both common law fraud and legal malpractice. Unlike common law fraud, a Section 487 claim does not require a showing of justifiable reliance. Unlike legal malpractice, a Section 487 claim does not arise from negligent acts or conduct, but rather from an attorney's intentional deceit of a party or a court.

> Similar to fraud, Judiciary Law § 487—covering intentional deceit and collusion—imposes liability for the making of false statements with scienter. But . . . Judiciary Law § 487 is not a codification of common law fraud and therefore does not require a showing of justifiable reliance. In other words, liability under the statute does

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 324 of 364

not depend on whether the court or party to whom the statement is made is actually misled by the attorney's intentional false statement. Given the requirement that the conduct involve "deceit or collusion" and be intentional, liability under the statute does not extend to negligent acts or conduct that constitutes only legal malpractice, evincing a lack of professional competency.

*Id.*, 2020 N.Y. LEXIS 739 at *2.

11.     Mr. Moldovsky's insistence that LBV and Mr. Ellner's Section 487 claims are subject to dismissal because, supposedly, Judge Cote previously vindicated the Moldovsky Firm's retroactive invoicing, is utter nonsense.

12.     Judge Cote rendered her charging lien decision based on her familiarity with the proceedings before her, and otherwise ruled that many of the parties' submissions were irrelevant. *See* Charging Lien Decision (Dkt. #616) at 10 ("The parties have also submitted a significant number of irrelevant exhibits."). The Moldovsky Firm submitted its various invoices, including seven of its eight "final" invoices, and asserted it was owed $400,000. *See* Charging Lien Brief (Dkt. #615) at 11. Of that amount, almost $300,000 was based on retroactive billing. *See* Dkt. #741 at ¶ 106; #742. Judge Cote rejected this and instead ruled that the Firm was entitled, in *quantum meruit*, to just $45,948 — *less than half of the non-retroactive portion of the Firm's invoices*. Thus, rather than vindicate the Firm's retroactive invoicing scheme, Judge Cote implicitly found that the Firm's invoices were grossly excessive.

13.     I have already addressed and refuted Mr. Moldovsky's reliance on *Birds II*. *See* Supplemental Affirmation (Dkt. #918) at ¶¶ 3-11. The Court of Appeals simply reaffirmed that a Section 487 claim against an attorney is viable when the attorney intentionally tries to deceive the court or a party in ongoing litigation.

14.     As alleged, Mr. Moldovsky's deceitful conduct occurred in the midst of ongoing litigation. Crossclaim #3 alleges that Mr. Moldovsky intentionally submitted fraudulently retroactive invoices to the federal and state courts to support his claims for allegedly owed fees

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 325 of 364

(whether as a charging lien or otherwise). *See* Dkt. #741 at ¶¶ 89-92. Crossclaim #4 alleges that Mr.

Moldovsky intentionally deceived LBV and Mr. Ellner, in the midst of ongoing litigation, by falsely

representing that there would be no retroactive invoicing under the amended fee agreement. *See*

*id.* at ¶¶ 93-111.

15.     As alleged in Crossclaim #3, Mr. Moldovsky intentionally attempted to deceive

Judge Cote as a party in the charging lien proceeding, and is again attempting to deceive this Court

as a party in this current proceeding. As alleged in Crossclaim #4, Mr. Moldovsky intentionally

deceived Mr. Ellner and LBV, as parties in the 3rd Home Matter. (Section 487 does not distinguish

attempted from actual deception; a showing of reasonable reliance is not required. *Birds II*, 2020

N.Y. LEXIS 739 at *2.)

16.     Thus, *Birds II* does not preclude LBV and Mr. Ellner from maintaining their Section

487 claims. In fact, the Court of Appeals stated the following:

> [T]he purpose of Judiciary Law § 487 (1) is to safeguard an attorney's
> special obligation of honesty and fair dealing in the course of
> litigation—a pillar of the profession. Our legal system depends on
> the integrity of attorneys who fulfill the role of officers of the court,
> furthering its truth-seeking function (*see Amalfitano* [*v. Rosenberg*, 12
> N.Y.3d 8, 14 (2009)]. Thus, "[t]he statute is limited to a peculiar class
> of citizens, from whom the law exacts a reasonable degree of skill,
> and the utmost good faith in the conduct and management of the
> business [e]ntrusted to them . . . To mislead *the court or a party* is to
> deceive it; and, if knowingly done, constitutes criminal deceit under
> the statute" (*id.* at 14, quoting *Looff v Lawton*, 14 Hun 588, 590 [2d
> Dept 1878] [emphasis added]). Moreover, the language of the statute
> is aimed at a particular type of deceit or collusion—done by an
> attorney with the intent to mislead the court or a party (*see id.*; *Looff*,
> 97 NY at 482). While attorneys must zealously advocate for their
> clients, such deception or collusion is antithetical to appropriate
> advocacy, functioning as a fraud on the court or a party. Given the
> statute's origins and purpose, it provides a particularized civil
> remedy, and criminal liability, for a specialized form of attorney
> misconduct occurring during the pendency of litigation.

*Id.*, 2020 N.Y. LEXIS 739 at *6-7.

Case 2:20-cv-06190-ER   Document 23-3   Filed 04/05/21   Page 326 of 364

17.     For all the foregoing reasons, LBV and Mr. Ellner's first, second and fifth crossclaims should be deemed withdrawn; the Moldovsky Firm's motion to dismiss those claims should be denied as moot; and its motion to dismiss LBV and Mr. Ellner's third and fourth crossclaims should be denied.

Respectfully submitted,

Date: May 15, 2020

/s/ Jonathan R. Miller, Esq.
*Counsel for Andrew Ellner, Lightbox Capital Management, LLC and Lightbox Ventures, LLC*

*Main Office:*
100 Overlook Center, 2nd Floor
Princeton, N.J. 08540
Tel. 609-955-1226
Fax. 609-964-1026
jonathan.miller@lawyer.com

*New York Office:*
186 Joralemon Street, Suite 1202
Brooklyn, NY 11201

# Exhibit "O"

# 18-3721-cv

## United States Court of Appeals

### for the

## Second Circuit



LIGHTBOX VENTURES, LLC
*Plaintiff - Interpleader Plaintiff - Appellant,*

v.

3rd HOME LIMITED and WADE SHEALY,
*Defendants,*

BREM MOLDOVSKY LLC,
*Interpleader Defendant - Appellee,*

SCAROLA ZUBATOV SCHAFFZIN PLLC,
*Interpleader Defendant,*

v.

ANDREW ELLNER,
*Third Party Defendant - Interpleader Plaintiff.*

———————————

*On Appeal from the United States District Court
for the Southern District of New York*

## APPELLANT'S REPLY BRIEF

JONATHAN R. MILLER, ESQ.
100 Overlook Center, 2nd Floor
Princeton, N.J. 08540
Tel. 609-955-1226
*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ................................................................................................ 1

SUPPLEMENTAL PROCEDURAL HISTORY ................................................ 3

LEGAL ARGUMENT ......................................................................................... 4

    I.    MOLDOVSKY'S "ALTERNATIVE FACTS" ARE CONTRADICTED BY DOCUMENTARY EVIDENCE IN THE RECORD ................................................. 4

    II.    MOLDOVSKY DID NOT HAVE A CONTRACTUAL RIGHT TO ABANDON THE LAWSUIT IN MIDSTREAM, NOR TO UNILATERALLY CHANGE THE AGREED-UPON FEE ARRANGEMENT TO HOURLY BILLING. ......................................................................................................... 9

    III.    MOLDOVSKY'S OPPOSITION BRIEF CONFIRMS THAT THE DISTRICT COURT FAILED TO CONSIDER CLEAR EVIDENCE OF HIS MISCONDUCT AND FAILED TO ADDRESS LIGHTBOX'S FORFEITURE ARGUMENTS ........................................................................ 22

    IV.    MOLDOVSKY FAILS TO REBUT LIGHTBOX'S ARGUMENT THAT HE WITHDREW BASED ON FALSE PRETENSES AND MISSTATEMENTS TO THE TRIBUNAL ............................................................................... 26

CONCLUSION .................................................................................................. 30

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Benjamin v. Koeppel*, 85 N.Y.2d 549 (1995) ........................................................19

*Brem Moldovsky, LLC v. Miller et al.*, No. 2019-00793 (Pa. Ct. of Common Pleas, Bucks County) .............................................................................7, 27

*Brooks v. Lewin*, 48 A.D.3d 289 (1st Dep't), *lv. denied*, 11 N.Y.3d 826 (2018)................20

*Campagnola v. Mulholland*, 76 N.Y.2d 38 (1990)..............................................28

*Chow v. City of N.Y.*, 2010 U.S. Dist. LEXIS 23717 (E.D.N.Y. Mar. 12, 2010)....................13

*City of Burlington v. Dague*, 505 U.S. 557 (1992) .................................................12

*Countryman v. Watertown Hous. Auth.*, 13 Misc. 3d 632 (1st Dep't 2006).......................13

*Fresno Cty. Emples. Ret. Ass'n v. Isaacson*, 925 F.3d 63 (2d Cir. 2019) ................................12

*G.K. Las Vegas Ltd. Partnership v. Boies Schiller & Flexner LLP*, 96 A.D.3d 538 (1st Dep't 2012) .............................................................................12

*Greene v. Greene*, 56 N.Y.2d 86 (1982) ...............................................................17

*Grutman Katz Greene & Humphrey v. Goldman*, 673 N.Y.S.2d 649 (1st Dep't 1998) ................................................................................... 25

*Guzik v. Albright*, 2018 U.S. Dist. LEXIS 157264 (S.D.N.Y. Sep. 14, 2018) ...................... 29

*Holcombe v. Matsiborchuk*, 747 F. App'x 875 (2d Cir. 2018, *cert. denied*, 139 S. Ct. 2639 (2019) ............................................................................20

*Klein v. Eubank*, 87 N.Y.2d 459 (1996) ............................................................. 4

*Lawrence v. Miller*, 48 A.D.3d 1 (1st Dep't 2007), *aff'd* 11 N.Y.3d 588 (2008) ...................................................................................................12

*Maher v. Quality Bus Serv., LLC*, 144 A.D.3d 990 (2d Dep't 2016) ................................. 25

*Matter of Lawrence*, 24 N.Y.3d 320 (2014).........................................................18

*Olshan Grundman Frome Rosenzweig & Wolosky LLP v. Jeglitza*, 2000 U.S. Dist. LEXIS 4842 (S.D.N.Y. Apr. 14, 2000) ...............................................19

*Penson v. Ohio*, 488 U.S. 75 (1988) .......................................................................... 8

*Scarola Malone & Zubatov LLP v. Ellner et al.*, No. 651324/2017 (N.Y. Sup.
    Ct., N.Y. County) ............................................................................... 6, 20, 27

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999) ............................ 12

## RULES

Local Rule 31.2.............................................................................................................. 3

N.Y. RPC 1.5 ................................................................................................................. 12

N.Y. RPC 1.8 ................................................................................................................. 17

N.Y. RPC 1.16 ............................................................................................................ 11, 13

N.Y. RPC 1.16, Official Comment 8A .................................................................................. 13

Pa. RPC 1.16 ................................................................................................................. 13

## OTHER AUTHORITIES

NYSBA Comm. on Prof'l Ethics, Op. 910 (2012) .................................................................... 18

## INTRODUCTION

This is an appeal from a final judgment awarding Appellee Brem Moldovsky, LLC ("Moldovsky") a charging lien on funds recovered by Appellant Lightbox Ventures, LLC ("Lightbox") from Defendant 3rd Home Limited ("3rd Home") in this matter.

Lightbox argues that the charging lien award should be vacated because the district court (Cote, J.) erred by failing to consider clear evidence of Moldovsky's self-dealing, improper threats to withdraw, and exploitation of Lightbox in connection with its November 2017 demand to replace the agreed-upon contingency fee with hourly billing, and additionally failed to consider clear evidence that, in April 2008, Moldovsky withdrew as counsel on false pretenses. Among other things, Lightbox has shown that the district court misunderstood that Lightbox was suggesting that it had terminated Moldovsky for cause, when in fact Moldovsky withdrew on his own initiative; that the court deemed "a significant number" of the parties' exhibits "irrelevant" and did not consider them; and that the court entirely failed to address Lightbox's forfeiture argument. Indeed, the words "forfeit" and "forfeiture" do not appear anywhere in the court's opinion. *Cf.* A296-309.

In opposition, Moldovsky argues that the district court considered and properly discredited Lightbox's evidence, which Moldovsky dismisses as "hyperbole, falsehood and contradiction," and that the court appropriately declined to hold an

evidentiary hearing in order to consider the documentary evidence, take testimony, make determinations of credibility and issue findings as to the factual issues raised by Lightbox below.[1] Moldovsky further argues that even if the district court failed to consider evidence, take testimony, and address Lightbox's forfeiture arguments, this was merely "harmless error."

Moldovsky's opposition is flawed. It is premised on a badly skewed recitation of facts that are unsupported by documentary evidence and heavily reliant on Moldovsky's own, self-serving affidavits. The lack of documentary support for Moldovsky's version of the facts undermines his credibility and legal arguments, and also highlights the district court's failure to consider the voluminous documents submitted by Lightbox, to hold an evidentiary hearing and to take testimony, to review the actual tape recordings of Moldovsky's attorney misconduct as Lightbox suggested, to determine Moldovsky and Ellner's relative credibility in light of their polar opposite versions of what transpired between them, and ultimately to determine the facts relevant to Lightbox's forfeiture argument.

Indeed, the district court's focus on the non-issue of termination, together with its failure to address Lightbox's argument that Moldovsky's documented

---

[1] In his opposition brief, Moldovsky also argues that this Court erroneously denied his motion to dismiss the appeal as untimely. *See* Opp. Br. at 4, 49. However Moldovsky fails to raise any kind of legal argument on this point, which is accordingly waived. In any event, Lightbox filed its notice of appeal within thirty days of the court's final judgment as to the charging lien award. This appeal is timely.

misconduct effectively forfeited his right to a charging lien, and to consider clear evidence of that misconduct, is not "harmless error." It is grounds for reversal, or alternatively for vacatur and remand.

## SUPPLEMENTAL PROCEDURAL HISTORY

Lightbox timely filed and served its brief, appendix and supplemental appendix on March 29, 2019.

Pursuant to Moldovsky's April 1, 2019 request under Local Rule 31.2(a)(1)(B), his opposition was due by June 28, 2019. Instead of meeting this deadline, on June 17, 2019 Moldovsky moved to dismiss the appeal (as "untimely"), thereby tolling his briefing deadline indefinitely during the pendency of his motion. *Cf.* Local Rule 31.2(a)(3).

Moldovsky's motion to dismiss was denied on October 8, 2019. His opposition brief and appendix were filed on October 21, 2019. Although Moldovsky contends that this Court erroneously denied his motion, his opposition brief offers no legal argument whatsoever on this issue.

Lightbox's within reply brief was timely filed and served on November 12, 2019.

**LEGAL ARGUMENT**

## I.  MOLDOVSKY'S "ALTERNATIVE FACTS" ARE CONTRADICTED BY DOCUMENTARY EVIDENCE IN THE RECORD

One of the core issues in this appeal is Moldovsky's extensively documented self-dealing, in particular in November-December 2017, immediately after the district court ruled that neither of Lightbox's economics experts would be permitted to testify. *See generally* Br. at 8-12. At that time, Moldovsky threatened to withdraw unless Lightbox agreed to replace the agreed-upon contingency fee arrangement with one based on hourly fees. S24-25 at ¶¶ 89-92; S58-60. Moldovsky falsely represented to Lightbox's principal, Mr. Ellner, that once he (Moldovsky) deemed the lawsuit against 3rd Home Limited no longer worthwhile to his firm, he had a contractual right to withdraw from the representation and/or to unilaterally switch to hourly billing. S59; S62-64. Using the threat of withdrawal as leverage, Moldovsky compelled Lightbox to agree to the amended fee agreement, based on partly deferred hourly billing plus a revamped contingency fee. S26-27 at ¶¶ 95-98; *cf.* A285-289.[2]

---

[2] In his opposition brief, Moldovsky insists that he did not threaten to withdraw if his demands for hourly billing were not met, but merely insisted on his "right" to stop all work on the lawsuit. *See* Opp. Br. at 31-32. This is a distinction without a difference: Moldovsky made these threats, whether construed as a threat to withdraw or "merely" a threat to stop all work in a case, in November 2017 shortly before court-ordered mediation and with a trial scheduled shortly thereafter. *See* ECF #151 (scheduling order); *cf. Klein v. Eubank*, 87 N.Y.2d 459, 463 (1996) ("[A] charging lien is waived by an attorney who *without just cause* neglects or refuses to proceed with the prosecution of the case.").

Moldovsky's version of the facts is quite different, of course. According to Moldovsky, Lightbox/Ellner was a difficult client who had "trouble cooperating" with attorneys and who made "misrepresentations about the case" to Moldovsky and knowingly "concealed problems" regarding Lightbox's first expert. According to Moldovsky, once the district court disallowed Lightbox's two experts — i.e., including the second expert, whom Lightbox had retained *upon Moldovsky's own urging*[3] — Moldovsky decided that continuing on a partial contingency basis would no longer be worthwhile to him and asserted his "contractual right" to "normal hourly rates." Moldovsky insists that, after a month of "negotiating", Lightbox freely agreed to the amended fee arrangement. *See generally* Opp. Br. at 8-14.

As discussed, the court below did not address Lightbox's highly detailed and fully documented allegations of attorney misconduct and self-dealing, apparently deeming this information "irrelevant" to the "narrow issue" of whether Moldovsky was entitled to a charging lien. Instead of addressing the issue of forfeiture, the court discussed whether Lightbox had terminated Moldovsky for cause — something that Lightbox had never suggested. A305-306.

Moreover, Moldovsky's contention that "Lightbox did not rebut" his version of the facts is highly misleading. The court below did not afford any of the parties an opportunity to challenge the others' submissions. Instead, the parties were

---

[3] *See* S53 (Moldovsky email urging Lightbox to retain Mitch Rencher (Scalar Analytics) as "our best option here.").

instructed to file their submissions simultaneously, with no opportunity to directly challenge and refute the others' factual and legal arguments. A295.

Notwithstanding the unusual procedure employed by the district court, Moldovsky's version of the facts is fully refuted by the record and otherwise.

While Moldovsky tries to paint Mr. Ellner as a demanding and difficult client, the simple fact of the matter is that good lawyers routinely work successfully with many kinds of personalities. Although there are ongoing disputes between Lightbox and the Scarola and Moldovsky Firms pending *sub judice* in New York state court, which disputes involve claims for additional fees, counterclaims for malpractice and breach of fiduciary duty, etc.,[4] Lightbox has been represented by Mr. Miller, its present attorney, continuously since June 2017 without incident, undercutting Moldovsky's finger-pointing and suggesting that perhaps it is Moldovsky who is difficult to work with.[5]

Indeed, Moldovsky has accused Mr. Miller of "poaching" his former clients, i.e. Mr. Ellner and the two Lightbox entities, from him. *See* ECF #258 at ¶¶ 15-16. Moreover, in addition to asserting thirteen cross-claims against Lightbox in the

---

[4] The Court is respectfully requested to take judicial notice, generally, of the public docket in the matter of *Scarola Malone & Zubatov LLP v. Ellner et al.*, No. 651324/2017 (N.Y. Sup. Ct., N.Y. County), including the state court's July 8, 2019 dismissal of all but two of the Scarola Firm's causes of action (Dkt. #464); Lightbox's motion for reargument as to dismissal of the Scarola Firm's remaining causes of action (Dkt. #653); and Lightbox's motion to dismiss the Moldovsky Firm's thirteen cross-claims (Dkt. #472).

[5] *See Scarola v. Ellner*, *supra*, at Dkt. #33 (June 2017 substitution of counsel).

ongoing New York litigation, Moldovsky also sued Lightbox and its New York attorney, Mr. Miller, personally, in Pennsylvania, asserting as many as sixteen causes of action in that forum.[6] Among other things, Moldovsky petitioned the Pennsylvania court to disqualify Mr. Miller from representing Lightbox in this Appeal, which request was denied by that court,[7] and also requested the Pennsylvania court to bar Lightbox and Mr. Miller from using the recordings of Moldovsky's misconduct in this Appeal, which motion was later abandoned.[8] Ultimately, Moldovsky abandoned the Pennsylvania lawsuit just two days after filing his fifth amended complaint.[9]

Similarly, although Moldovsky asserts that Mr. Ellner "concealed problems" concerning Lightbox's first expert, the documentary evidence unequivocally shows that Mr. Ellner provided Moldovsky with all case-related documents for his due diligence review in January 2017, before Moldovsky agreed to represent Lightbox. Those documents included that expert report as well as the district court's preliminary injunction opinion stating that Lightbox's provable compensatory damages would likely be around $80,000. S16-17 at ¶¶ 52-55; S38-39; S41-42; A102

---

[6] The Court is respectfully requested to take judicial notice, generally, of the public docket in the matter of *Brem Moldovsky, LLC v. Miller et al.*, No. 2019-00793 (Pa. Ct. of Common Pleas, Bucks County).

[7] *See Moldovsky v. Miller*, *supra*, at Dkt. #104.

[8] *See id.* at Dkt. #99, #115.

[9] *See id.* at Dkt. #130, #133.

at n.6. Contrary to any notion of fraudulent concealment, in March 2017 Moldovsky stated to Mr. Ellner, "I believe that as you came to me, you did not have the understanding you have now of the challenges with the eco report," S52, and urged him to hire another expert in order to overcome those shortcomings, S53.

In short, while Moldovsky's brief is replete with character assassination, his attacks on Mr. Ellner are squarely refuted by documentary evidence in the record, casting a shadow on Moldovsky's credibility. If the district court had held an evidentiary hearing, the court would have had an opportunity to evaluate Moldovsky's credibility.[10]

Unfortunately, the district court did not address Lightbox and Moldovsky's wildly different accounts of what transpired between them. Instead of discussing Lightbox's highly detailed and fully documented allegations of attorney misconduct and self-dealing, the court apparently deemed this information "irrelevant" to the "narrow issue" of whether Moldovsky was entitled to a charging lien. A305-306. The court erred by failing to address Lightbox's documented allegations of attorney

---

[10] Similarly, if the interpleader had proceeded in the usual adversarial manner instead of by simultaneous submissions without opportunity to challenge the other parties' submissions, this would have assisted the court to address all disputes, both legal and factual. *Cf. Penson v. Ohio*, 488 U.S. 75, 84 (1988) ("the adversarial system of justice is premised on the well-tested principle that truth — as well as fairness — is best discovered by powerful statements on both sides of the question" (citation omitted)).

Although Lightbox's appeal arises from the district court's ultimate decision and not from its procedural orders *per se*, the simultaneous submission procedure, together with the failure to hold an evidentiary hearing, materially contributed to the court's failure to address Lightbox's forfeiture-through-misconduct argument and evidence.

misconduct, and instead considered whether Lightbox had terminated Moldovsky for cause — a red herring that even Moldovsky concedes was never an issue before the court.

## II. MOLDOVSKY DID NOT HAVE A CONTRACTUAL RIGHT TO ABANDON THE LAWSUIT IN MIDSTREAM, NOR TO UNILATERALLY CHANGE THE AGREED-UPON FEE ARRANGEMENT TO HOURLY BILLING.

The central premise upon which Moldovsky's opposition is founded, is that if he deemed the lawsuit against 3rd Home no longer worthwhile to his firm, he had a contractual right to stop working on the matter and/or to start billing his regular hourly fees. *See*, e.g., Opp. Br. at 11-12. Thus, according to Moldovsky, once the district court struck both of Lightbox's expert reports and effectively restricted Lightbox's recovery to out-of-pocket compensatory damages plus contractual fee-shifting, Moldovsky was free to conclude that the lawsuit was no longer sufficiently worthwhile for him to pursue on a contingency fee basis, and could instead choose between terminating the representation altogether, or billing all work according to his firm's normal hourly rates. According to such logic, Moldovsky's insistence on an amended fee agreement, calling for partly deferred hourly fees plus a reformulated contingency fee, was reasonable, well within his contractual rights, and financially less burdensome than the full, undeferred hourly billing to which he purports to have been entitled.

The problem with Moldovsky's argument, however, is that it is wholly unsupported in fact and law. He contracted to represent Lightbox for $75,000 plus a contingency fee. Nothing in the retainer agreement gave Moldovsky the right to stop working on the case if he deemed the contingency fee no longer worthwhile, and nothing gave Moldovsky the right to demand hourly fees for any trial-level work on the 3rd Home matter.

Instead, the retainer agreement provided that "normal billing" would only apply for legal services that were outside of the scope of the 3rd Home litigation, including "bankruptcy, post-Judgment work, appeals, post-trial work. third party litigation, fraudulent conveyance litigation, collateral and other litigation, matters in jurisdiction in which this firm does not practice, other litigation, and matters generally deemed outside of the lawsuit here." A281. Such services would be outside the scope of the contingency fee and subject to Moldovsky's regular hourly rates: "Should the contingency fee not apply for any reason, then the regular legal fee terms will apply." A281; *cf.* A280 (stating the firm's regular hourly rates).

The retainer agreement also provided that Moldovsky would not be obligated to work on frivolous matters: "This agreement is conditioned upon a finding of sufficient and lawful grounds and reasonable opportunity for recovery for your claims," and could move to withdraw from the lawsuit should Moldovsky come to understand that Lightbox's claims were frivolous: "In the event your attorney's investigation at any phase . . . indicates that you do not have sufficient and lawful

grounds and/or reasonable opportunity for worthwhile recovery, then this agreement shall not obligate your attorney to proceed any further. . .” A281.[11]

As explained in Lightbox's main brief, *see* Br. at 28-31, Moldovsky's topsy-turvy interpretation of these provisions is factually and legally untenable. Indeed, it would have been easy enough to draft language providing what Moldovsky contends the retainer agreement provided: “If Moldovsky should determine that the contingency fee arrangement is no longer financially worthwhile to his firm, Moldovsky shall have the right to replace the contingency fee with hourly billing.” However, the retainer agreement says nothing of the kind. Moreover, Mr. Ellner made it clear from the outset (January 2017) that Lightbox's out-of-pocket litigation budget was capped at $75,000 and that hourly fees were unacceptable. *See* S17-18 at ¶¶ 56-61 (Ellner certification); S44-46 (emails). And, even if the retainer agreement had included such a provision, essentially protecting Moldovsky from the risk inherent in any contingency fee, that would have been void and unenforceable as a matter of public policy. As a New York lawyer, Mr Moldovsky is ethically prohibited

---

[11] The foregoing language is largely consistent with Rule 1.16(c)(6) of the Rules of Professional Conduct, which permits an attorney to withdraw from representing a client when “the client insists on presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law.” N.Y. RPC 1.16(c)(6).

Of course, Lightbox's claims against 3rd Home were not frivolous; at the preliminary injunction hearing the district court found that Lightbox was likely to prevail on the merits, A99-101; and in fact Lightbox did prevail on the merits and was awarded compensatory damages and its reasonable attorneys fees, A290-291.

from make a retainer agreement for legal fees which are "excessive." *See* N.Y.

RPC 1.5(a). And, "[w]ithout the costs and risks generally associated with

contingency fee arrangements, such a fee agreement is nothing short of plain greed."

*Lawrence v. Miller*, 48 A.D.3d 1, 20 (1st Dep't 2007), *aff'd* 11 N.Y.3d 588 (2008).

There is no caselaw that supports the notion that an attorney can contract for

a contingency fee but then back out and switch to hourly billing once the attorney

calculates that hourly billing would be more lucrative or that the contingency fee

may not be as profitable as he or she initially hoped.[12]

Indeed, the very premise of a contingency fee is that the attorney assumes the

risk of losing the case or the client being awarded minimal damages. *Schlaifer Nance*

*& Co. v. Estate of Warhol*, 194 F.3d 323, 339 (2d Cir. 1999) ("Contingency fee

agreements . . . shift[] the risk of non-recovery to the attorney."); *Fresno Cty. Emples.*

*Ret. Ass'n v. Isaacson*, 925 F.3d 63, 68 (2d Cir. 2019) ("[a]n attorney operating on a

contingency-fee basis pools the risks presented by his various cases.") (quoting *City*

*of Burlington v. Dague*, 505 U.S. 557, 565 (1992)); *see also Lawrence*, 48 A.D.3d at 20

(risk-free contingency fee agreements are "nothing short of plain greed").

---

[12] Moldovsky's reliance on *G.K. Las Vegas Ltd. Partnership v. Boies Schiller & Flexner LLP*, 96 A.D.3d 538 (1st Dep't 2012), is unavailing. In *G.K.*, the court denied a former client's motion to vacate an arbitration award in favor of its former attorney. On appeal, the court affirmed, holding that the client had failed to preserve its public policy arguments, that the client knowingly agreed to arbitration, that the arbitrator permissibly disallowed parole evidence and did not deny the client "fundamental fairness." *Id.* at 539-540. Nothing in *G.K.* involved, as here, an attorney's purported contractual right to swap an unprofitable contingency fee with hourly billing.

Although the retainer agreement also purported that Moldovsky would be permitted to withdraw from representing Lightbox under "[c]ircumstances where our continued representation . . . will result in an unreasonable financial burden," *see* A283, this is contrary to New York law. *See Countryman v. Watertown Hous. Auth.*, 13 Misc. 3d 632, 633 (1st Dep't 2006) ("the fact that a lawsuit is of questionable liability, limited damages, and a likely unfavorable trial result is not the type of impairment of the attorney-client relationship that permits withdrawal of counsel"); *quoted by Chow v. City of N.Y.*, 2010 U.S. Dist. LEXIS 23717, at *24 (E.D.N.Y. Mar. 12, 2010).[13]

In short, Moldovsky contracted with Lightbox to represent it in its lawsuit with 3rd Home for an upfront fee of $75,000 plus a contingency fee. Having done so

---

[13] An "unreasonable financial burden" may justify an attorney's withdrawal in Pennsylvania, but not in New York. *Compare* Pa. RPC 1.16(b)(6) and N.Y. RPC 1.16(c)(7). Indeed, Official Comment 8A to New York's Rule 1.16 states, "That a representation will require more work or significantly larger advances of expenses than the lawyer contemplated when the fee was fixed is not grounds for withdrawal." N.Y. RPC 1.16, Official Comment 8A. As a New York attorney, Moldovsky is responsible for knowing and complying with New York's ethical rules.

Moldovsky purports to justify his "unreasonable financial burden" provision, which is disallowed under New York's Rules of Professional Conduct, with a nonpayment situation. *See* Opp. Br. at 35-36 ("retained counsel is generally allowed to withdraw due to financial difficulty created by non-payment of fees."). Here, Moldovsky is either genuinely confused or engaged in obfuscation. A lawyer may withdraw if the client "deliberately disregards" its payment obligations, *see* N.Y. RPC 1.16(c)(5), but not because a contingency fee agreement, *per se*, has become financially burdensome. Of course, there can be no nonpayment of fees so long as the contingency fee is in effect, and Moldovsky has failed to point to any evidence in the record that his November 2017 threats to stop working on the 3rd Home lawsuit was triggered by unpaid invoices. Moldovsky is simply indulging in after-the-fact rationalization of his documented misconduct.

— and having pocketed Lightbox's initial $75,000 — Moldovsky had no right, contractual or otherwise, to threaten to drop Lightbox once he concluded that the contingency fee was not going to be as lucrative as he initially thought — and he had no right, contractual or otherwise, to unilaterally commence hourly billing.[14] As documented by Lightbox's evidence, including in particular the November 2017 emails and telephone transcript, Moldovsky misused his legal expertise and abused Mr. Ellner's dependence on him, materially misrepresenting that he (Moldovsky) would indeed stop working and/or unilaterally commence hourly billing — unless Lightbox accepted the "compromise" of partly deferred hourly fees:

> Working on a primarily contingency arrangement is no longer worthwhile and the agreement here with my firm (page 5) specifically states that my firm is no longer required to work on the matter if in my firm's opinion the matter lacks reasonable opportunity for worthwhile

---

[14] Moldovsky argues that the complained-of contractual provision did not call for termination of the representation but rather fee modification. *See* Opp. Br. at 32. This is doubly incorrect; the retainer agreement called for Moldovsky to represent Lightbox through the conclusion of the trial for the agreed-upon $75,000 plus contingency fee. It was Moldovsky who misconstrued the agreement as if he was authorized to stop all work once he felt that the contingency fee was no longer "worthwhile," and who leveraged this argument to pressure Lightbox to "agree" to be liable for partly deferred hourly fees.

Moldovsky also purports that his "right" to hourly fees was triggered by Lightbox misleading him at the beginning of the representation. *See* Opp. Br. at 36. However, as discussed *supra*, pp. 7-8, Mr. Ellner provided Moldovsky with all case-related documents for due diligence review at least a month before Moldovsky agreed to represent Lightbox, including Lightbox's expert report and the district court's preliminary injunction opinion stating that Lightbox's provable compensatory damages would likely be around $80,000. S16-17 at ¶¶ 52-55; S38-39; S41-42; A102 at n.6. In any event, even if Moldovsky failed to understand the weaknesses in Lightbox's theory of damages until March 2017, *see* S52, that does not justify the re-negotiated fee arrangements in November 2017, eight months later.

> recovery. . . . Since the current largely contingency based
> agreement no longer requires my firm to work on the [3rd
> Home] matter . . . I am proposing an update to the client
> agreement.

S59 (11/15/2017 Moldovsky email to Mr. Ellner, proposing fees of $400/hour,

$150/hour payable on an ongoing basis and $250/hour deferred, and emphasizing

that "this can be very beneficial" to Lightbox).

Barely a week later, after Mr. Ellner resisted and did not agree with

Moldovsky's "very beneficial" proposal, Moldovsky threatened that if Mr. Ellner did

not agree to the part-deferred hourly fee concept, Moldovsky would simply bill at

fully hourly rates and sue him later:

> Once it's not worthwhile [i.e., the original contingency fee]
> . . . the hourly [fee] kicks in, so . . . if I have to stay on, I'm
> going to be billing on it . . . . I'll be billing and you won't be
> paying and eventually . . .  one of us can file suit to have
> those fees, you know, paid or not paid. . . . if I'm forced to
> stay on and work, I'm billing my hourly rate because that's
> what our agreement says.

S62-64 (11/23/2017 telephone transcript).

The documentary evidence, which the district court did not consider,

demonstrates that Moldovsky essentially conned Mr. Ellner into "agreeing" to the

amended fee structure by misrepresenting that he (Moldovsky) was contractually

entitled to stop working on the 3rd Home lawsuit once he felt that it was no longer

"worthwhile" for him to do so on a contingency fee basis[15] — and that, once this occurred, any and all additional work on the lawsuit would be billable at full hourly rates. Moldovsky does not dispute the sequence of events or the substance of his discussions with Mr. Ellner. Instead, Moldovsky doubles down and insists that he was contractually entitled to "modification of fees." *See* Opp. Br. at 32.

Setting aside Moldovsky's frankly bizarre attempt to portray this as an innocuous, contractually permitted fee modification, the fact remains that Moldovsky breached his fiduciary duties and violated Rule 1.8 of the Rules of Professional Conduct by engaging in a self-interested business transaction with his client without ensuring that the revised fee agreement was fair and reasonable to Lightbox, without advising Mr. Ellner in writing to seek independent legal counsel, and without obtaining Mr. Ellner's informed consent. *See* S24-27 at ¶¶ 89-98 (Ellner Certification); S58-60 (November 2017 emails); S62-64 (telephone transcript); A285-289 (fee amendment letter).

Rule 1.8(a) provides:

> A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise professional judgment therein for the protection of the client, unless:
>
> (1) the transaction is fair and reasonable to the client and the terms of the transaction are fully disclosed

---

[15] As noted elsewhere but worth repeating, the contingency fee was on top of the $75,000 up-front payment that Moldovsky had already pocketed (and apparently spent).

> and transmitted in writing in a manner that can be reasonably understood by the client;
>
> (2)    the client is advised in writing of the desirability of seeking, and is given a reasonable opportunity to seek, the advice of independent legal counsel on the transaction; and
>
> (3)    the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

N.Y. RPC 1.8(a); *cf.* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS, § 126.

As Lightbox's attorney, Moldovsky owed it fiduciary duties of honesty and loyalty which he breached by pressuring Lightbox to "agree" to the amended, hourly fee arrangement based on misrepresentation of the terms of the initial agreement and by failing to advise Lightbox to confer with independent counsel. *See Greene v. Greene*, 56 N.Y.2d 86, 92 (1982):

> [T]he relationship between an attorney and his client is a fiduciary one and the attorney cannot take advantage of his superior knowledge and position.  The basic rule . . . is that an attorney who seeks to avail himself of a contract made with his client, is bound to establish affirmatively that it was made by the client with full knowledge of all the material circumstances known to the attorney, and was in every respect free from fraud on his part, or misconception on the part of the client, and that a reasonable use was made by the attorney of the confidence reposed in him. Under this rule it is not necessary for the client to show that the agreement was obtained by fraud or undue influence on the part of the attorney, although, of course, that would make the agreement unenforceable if it were proven. Even in the absence of such misconduct the agreement may be invalid if it appears that the attorney "got the better of the

bargain", unless he can show that the client was fully aware
of the consequences and that there was no exploitation of
the client's confidence in the attorney.

*See also Matter of Lawrence*, 24 N.Y.3d 320, 336 (2014) ("A revised fee agreement

entered into after the attorney has already begun to provide legal services is

reviewed with even heightened scrutiny, because a confidential relationship has

been established and the opportunity for exploitation of the client is enhanced.").[16]

Unable to legally justify his misconduct, Moldovsky attempts to whitewash it

by pretending that no misconduct occurred, i.e. that he had a contractual right to

stop working once the contingency fee no longer seemed worthwhile to him; that

once he was thus "entitled" to stop working, the contingency fee no longer applied

and his normal hourly rates kicked in; and that, rather than threaten Mr. Ellner with

a future lawsuit in order to pressure him to accept the revised fee agreement,

Moldovsky was "merely reminding Lightbox of [his] contractual rights that are

---

[16] *See also* NYSBA Comm. on Prof'l Ethics, Op. 910 (2012):

> Retainer agreements, like all contracts, may be amended with
> the agreement of the lawyer and client. However, such an
> amendment raises ethical concerns, because lawyer is often in
> a position to take unfair advantage of the client. The client may
> expect the lawyer to exercise professional judgment on his or
> her behalf, and may believe that any proposed amendment is
> designed to be in the client's best interest. ***Moreover, the client
> is dependent upon the continued participation of the lawyer
> to achieve the goals of the representation and often has
> considerable sunk costs at the time an amendment is
> proposed. Therefore, the client may feel undue pressure to
> accede to the lawyer's wishes.***

(emphasis added).

customary in retainer agreements." *See* Opp. Br. at 32. As discussed *supra*, Moldovsky's account is utterly refuted by the documentary evidence in the record.

Unfortunately, the district court did not consider these issues and evidence, apparently deeming them "irrelevant" to the "narrow issue" of whether Moldovsky was entitled to a charging lien. S305-306.

Moldovsky also appears to argue that he was properly awarded a charging lien because his conduct did not "blatantly" violate his ethical obligations. *See* Opp. Br. at 36. For this rather dubious proposition, Moldovsky relies on *Benjamin v. Koeppel*, 85 N.Y.2d 549 (1995). However, *Benjamin* involved an attorney's failure to comply with biennial registration requirements, not a breach of fiduciary duty and not a violation of the Rules of Professional Conduct. *See id.* at 553-554.

Also, notwithstanding Moldovsky's reliance on an unpublished opinion for the uncontroversial proposition that "a violation of disciplinary rules does not **necessarily** relieve the client **entirely** from payment," *see Olshan Grundman Frome Rosenzweig & Wolosky LLP v. Jeglitza*, 2000 U.S. Dist. LEXIS 4842, at *7 (S.D.N.Y. Apr. 14, 2000) (emphasis added), Lightbox does not argue that every ethical misstep of an attorney, even if *de minimis* and/or corrected, automatically negates the attorney's right to legal fees. Instead, the question at bar is whether the district court erred by failing to consider clear evidence of Moldovsky's misconduct, and whether that documented misconduct was sufficient to forfeit his charging lien.

In this regard, Lightbox relies on *Holcombe v. Matsiborchuk*, 747 F. App'x 875, 878 (2d Cir. 2018) ("attorney misconduct, which includes the verbal abuse of a client or improper threats to withdraw, is sufficient to extinguish a lien"), *cert. denied*, 139 S. Ct. 2639 (2019). Moldovsky attempts to distinguish *Holcombe*, insisting that "Appellant cannot point to an instance of verbal abuse," *see* Opp. Br. at 37, but *Holcombe* speaks to attorney misconduct in general, including "improper threats to withdraw", and is squarely on point: Moldovsky threatened to stop working on the 3rd Home lawsuit unless Lightbox agreed to his demand for hourly fees, and in doing so misrepresented the material terms of the original retainer agreement and breached his fiduciary duties.[17]

Lightbox also relies on *Brooks v. Lewin*, 48 A.D.3d 289, 291 (1st Dep't) (attorney not entitled to a charging lien "[s]ince the evidence showed that the representation terminated as a result of attorney misconduct"), *lv. denied*, 11 N.Y.3d 826 (2018). Moldovsky attempts to distinguish *Brooks* as well, arguing that in that case the attorney threatened to withdraw while a dispositive motion was pending, but the holding in *Brooks* is not limited to such circumstances, nor can Moldovsky point to any caselaw that says that, so long as there is no motion pending, an attorney may freely threaten to abandon his client's case. Moldovsky also argues that his conduct

---

[17] Moreover, as a matter of judicial notice, Moldovsky also engaged in verbal abuse. *See Scarola v. Ellner*, *supra*, Dkt. #579 at ¶ 45 (describing Moldovsky email to Mr. Ellner, telling him to see a doctor regarding his "mental and emotional issues" and difficulty thinking and acting "rationally."

was not "coercive," but this is not true: Moldovsky threatened to stop working on the 3rd Home lawsuit unless Lightbox agreed to his demand for hourly fees, and further threatened that he would start hourly billing unilaterally and later sue Lightbox for the unpaid hourly fees. *See supra* at 14-15.

Indeed, notwithstanding Moldovsky's attempt to distinguish the facts of this appeal from each and every one of the cases relied upon by Lightbox, *see* Opp. Br. at 37-38, the general legal principles are consistent and clear: attorney misconduct, including but not necessarily limited to improper threats to withdraw, is sufficient to forfeit the attorney's right to a charging lien.

As a matter of routine, plain language contractual interpretation, Moldovsky did not have a right to stop work simply because he no longer considered the contingency fee worth his time, nor did he have a right to unilaterally start billing at hourly rates. Therefore, his threats to stop work and/or to bill on an hourly fee basis and then sue Lightbox if Lightbox did not submit to his fee demands, were coercive.

Likewise, Moldovsky's misrepresentation of the terms of the original retainer agreement, coupled with his failure to advise Lightbox to obtain the advice of independent counsel and his threat to stop working on the 3rd Home lawsuit unless his fee demands were met, amounted to attorney misconduct and forfeiture of his charging lien rights.

### III. MOLDOVSKY'S OPPOSITION BRIEF CONFIRMS THAT THE DISTRICT COURT FAILED TO CONSIDER CLEAR EVIDENCE OF HIS MISCONDUCT AND FAILED TO ADDRESS LIGHTBOX'S FORFEITURE ARGUMENTS

As set forth in Lightbox's main brief, this appeal arises from the failure of the court below to consider clear evidence of attorney misconduct, including documentary evidence, transcribed telephone calls and proffered tape recordings. In opposition, Moldovsky argues that his documented threats, misrepresentations and ultimatums are not what they appear to be; that he was merely asserting, politely, his contractual right to stop all work in an actively litigated matter and/or to swap out the agreed-upon contingency fee for full hourly rates.

While Moldovsky's whitewashing of his own behavior does not square with the plain language of the retainer agreement, the very fact that Moldovsky devotes the lion's share of his opposition to a version of the facts that is utterly opposite to that appearing in the record, paradoxically confirms that the district court erred by failing to resolve these extensive factual disputes. Instead of addressing Lightbox's forfeiture-through-misconduct argument, the court found that Lightbox failed to show that Moldovsky had been terminated for cause — something that Lightbox never suggested — and indicated that a large portion of the parties' submissions below were "irrelevant" to the charging lien issue.

There can be no question but that Judge Cote had total familiarity with the dispute between Lightbox and 3rd Home, the factual and legal issues germane to

that dispute, and the Scarola and Moldovsky Firms' relative role in obtaining a modest but favorable result in favor of Lightbox. Judge Cote used and relied upon that familiarity in determining that the Scarola Firm had already been paid substantially more than the reasonable value of its services and was not entitled to a charging lien for that reason. Likewise, Judge Cote used and relied upon her familiarity with the court proceedings in determining that the reasonable value of the Moldovsky Firm's services amounted to $150,000, for a net lien award of $45,948.

However, there is also no question but that Judge Cote had no prior knowledge of what occurred "behind the scenes" between Moldovsky and Lightbox. Judge Cote had no prior knowledge that Moldovsky pressured Lightbox to switch to "agree" to hourly billing instead of the contingency fee, once the court ruled that neither of Lightbox's economic experts would be permitted to testify. Judge Cote had no prior knowledge of the actual terms of Moldovsky's retainer agreement, or that Moldovsky misrepresented to Lightbox that he was contractually entitled to stop all work because the contingency fee was no longer "worthwhile" to him, or that Moldovsky misrepresented to Lightbox that he was contractually entitled to commence billing at full hourly rates and that Moldovsky threatened to sue Lightbox unless it agreed to the "compromise" of partly deferred hourly billing.

Judge Cote had no prior knowledge of any of the foregoing, and yet it appears that the district court deemed all of this "irrelevant" to the "narrow issue" of fixing

the amount of Moldovsky's charging lien. Certainly, the court's fourteen page decision makes no mention of these issues. Instead, the court summarized, "Lightbox asserts that its former attorneys' charging liens are entirely satisfied by the prior payments it made to those firms. . . . [and] Lightbox states or implies that it discharged its former attorneys for cause, but it has not made a prima facie showing that this is true. The parties have also submitted a significant number of irrelevant exhibits. After reviewing these submissions, the parties have not raised any genuine factual dispute about the narrow issue of whether the Scarola and Moldovsky Firms are entitled to charging liens." A304-306.

Notably, the district court reviewed the parties' October 12, 2018 simultaneous submissions, amounting to hundreds of pages each, and issued its decision ten days later, without the benefit of normal adversary procedures and without the benefit of an evidentiary hearing or oral argument. A295. The court did not make any assessments of credibility, nor did it address the parties' wildly disparate versions of what had transpired between them and compare their versions with the actual documentary evidence. *See generally* A296-309. Lightbox explicitly offered to provide the actual tape recordings of Moldovsky's misconduct for review *in camera*, but the court did not accept this proffer. *See* S28, S31.

Moreover, as Moldovsky helpfully points out, he never personally appeared before Judge Cote in this matter, not in oral argument and not in chambers, Opp. Br. at 29, so it is entirely unclear what the district court's assessment of his

"professional deportment" was based on.[18] Although Moldovsky latches on to a single sentence in the opinion below, i.e., that "counsel's deportment was within the range of professional conduct," as sweeping proof that Judge Cote analyzed, considered and rejected the extensive evidence of Moldovsky's misconduct, the simple fact of the matter is that Judge Cote misunderstood Lightbox's essential legal position as termination-for-cause, rather than forfeiture-through-misconduct, omitted any discussion or analysis of Lightbox's arguments regarding Moldovsky's misconduct, and generally referred to "a significant number of irrelevant exhibits." *See* A305-306.

In other words, it appears that Judge Cote declined to hold an evidentiary hearing based upon the idea that Lightbox had failed to make a prima facie showing that it had discharged Moldovsky for cause, *see Maher v. Quality Bus Serv., LLC*, 144 A.D.3d 990, 992 (2d Dep't 2016) (vague, generalized reference to dissatisfaction with the attorney is insufficient to trigger evidentiary hearing), when in fact Lightbox never alleged that it had discharged Moldovsky, period.

Instead, Lightbox argued that Moldovsky had forfeited his charging lien through his own misconduct (without being "discharged" by Lightbox), in support

---

[18] The district court, citing *Grutman Katz Greene & Humphrey v. Goldman*, 673 N.Y.S.2d 649 (1st Dep't 1998), noted that one of the factors in determining a charging lien is the attorney's "professional deportment." However, it is unclear what "professional deportment" refers to. The word "deportment" generally refers to how a person presents himself in public, i.e. their bearing, manner and demeanor. *See* https://www.merriam-webster.com/dictionary/deportment.

of which Lightbox presented extensive evidence, including contemporaneous documents, emails, telephone transcripts and tape recordings, fully establishing Moldovsky's misrepresentations, self-dealing, breach of fiduciary duty, substantial ethical lapses and fraud.

## IV.   MOLDOVSKY FAILS TO REBUT LIGHTBOX'S ARGUMENT THAT HE WITHDREW BASED ON FALSE PRETENSES AND MISSTATEMENTS TO THE TRIBUNAL

In addition to Moldovsky's extensively documented misconduct surrounding his November 2017 demand to swap the contingency fee with hourly billing plus a contingency, this appeal also concerns Moldovsky's April 2018 withdrawal from the 3rd Home litigation.

In its main brief, Lightbox demonstrated that Moldovsky misrepresented to the court that he was compelled to withdraw due to strategic differences, difficulty communicating, substantial arrears and irreconcilable differences, and that Lightbox essentially consented to his withdrawal, *see* A162-163, when in fact Moldovsky's motion to withdraw was directly triggered by Lightbox's questioning of his February and March 2018 invoices, which Moldovsky resented and to which Moldovsky responded, as per usual, with payment ultimatums and threats to withdraw. *See generally* Br. at 38-39; *see also* S30-33 at ¶¶ 107-114 (Ellner certification); S66-68 (telephone transcript, 3/29/18); S70-78 (emails, 4/2 – 4/5/18); S80-86 (emails, 4/6 – 4/8/18); S101-102 at ¶¶ 44-50 (Miller certification); S107-116 (emails, 4/5 – 4/22/18).

As Mr. Ellner put it, just days before Moldovsky's withdrawal: "I am being extorted to make a payment without the ability to fairly challenge the validity of the bills." *See* S85.

Moldovsky admits that, concurrent with his March 2018 threats to withdraw from the 3rd Home litigation, he was also pressuring Mr. Miller to withdraw from defending Lightbox and Mr. Ellner against the Scarola Firm's claims in state court. *See* Opp. Br. at 44 n.13. Moldovsky attempts yet again to whitewash his strongarm tactics by purporting that Mr. Miller was subject to "a deep conflict of interest" requiring his withdrawal, *see id.*, but in fact Moldovsky has filed not one, but three motions to disqualify Mr. Miller on precisely this basis, and all three courts rejected his arguments.[19]

Indeed, Moldovsky's March 2018 demands that Mr. Miller abandon Lightbox and Mr. Ellner in the *Scarola v. Ellner* matter occurred six months before Moldovsky was joined as a nominal defendant in that proceeding.[20] This confirms that Moldovsky's invocation of a purported, thrice-rejected "conflict of interest" is merely pretextual and that, in reality, Moldovsky was trying to strip Lightbox and Mr. Ellner of legal representation in both federal and state courts in order to pressure them into paying his firm's disputed invoices.

---

[19] *See* ECF #266; *see also Scarola v. Ellner*, *supra*, Dkt. #464 at 6; *Moldovsky v. Miller*, *supra*, Dkt. #104 at 1-2.

[20] *See Scarola v. Ellner*, Dkt. #69 (amended complaint, filed 9/26/2018).

Holding nothing back, Moldovsky even argues that Lightbox purposely manufactured a billing dispute in order to force him to withdraw, just so he could be replaced with less expensive replacement counsel. *See* Opp. Br. at 44. This makes no sense whatsoever. First, clients have an absolute right to discharge their attorneys at any time, with or without cause. *Campagnola v. Mulholland*, 76 N.Y.2d 38, 43 (1990). There was no need for Lightbox to create a billing dispute to force Moldovsky to withdraw. Second, Moldovsky had been threatening to withdraw (or to stop all work) since November 2017; this was just the latest episode. Third, Lightbox offered to pay a sizable portion of the disputed invoices, if only Moldovsky agreed not to withdraw until after the trial had concluded and a verdict had been issued. S31 at ¶¶ 110-111; S72-73.

Moreover, while Moldovsky argues that there is ample evidence in the record of "abundant communication and strategy differences and problems," *see* Opp. Br. at 46, those difficulties did not rise to a level to justify Moldovsky's withdrawal after most of the trial level work had been completed and the parties were essentially awaiting the verdict and any post-verdict work, such as the fee award application which Mr. Miller ultimately handled: "withdrawal based on a client's 'unreasonably difficult' behavior is permitted only in relatively extreme situations where, for example, the client hired new or additional counsel who interferes with the strategies of the original attorney or subjected the attorney to insults, lying, foul language, accusations of unprofessional behavior, lack of cooperation, and a failure

to communicate." *Guzik v. Albright*, 2018 U.S. Dist. LEXIS 157264, at *9 (S.D.N.Y. Sep. 14, 2018) (citation omitted).

Measured against such standards, it is clear that Moldovsky's accusations do not hold up. At the time of Moldovsky's letter motion the parties were essentially in a holding pattern, some but not much additional legal work was contemplated, and it was Moldovsky, not Mr. Ellner, who was responsible for the lion's share of the difficulties, starting with his November 2017 threats to stop all work on the case and/or to sue Lightbox and Mr. Ellner unless they paid him on an hourly fee basis, and culminating in his March 2018 personal insults, threats to withdraw, and payment ultimatums. *See id*. at *10 (in evaluating a lawyer's motion to withdraw based on irreconcilable attorney-client differences, a court must determine "which side is in fact responsible for the attorney-client conflict").

In short, notwithstanding Moldovsky's counterarguments, Lightbox presented strong, credible evidence that Moldovsky had withdrawn under false pretenses and without good cause. Moldovsky misrepresented to the court that there were irreconcilable differences and severe difficulties with Lightbox as a client, when in fact there were no strategic differences, communication difficulties, or deliberate refusal to pay Moldovsky's legal fees. Moldovsky further misled the court to believe that Mr. Ellner had consented to his withdrawal, when in fact Mr. Ellner had pleaded with Moldovsky to wait until the trial verdict, and had offered to pay Moldovsky a sizable portion of the disputed invoices in order to secure Moldovsky's

cooperation. There were certainly tensions between Moldovsky and Lightbox but these were mainly created by Moldovsky himself, and in any event did not rise to the level justifying Moldovsky's withdrawal.

The district court erred by failing to consider Lightbox's evidence; by entirely misconstruing Lightbox's position as if Lightbox was suggesting that it had terminated Moldovsky for cause, when it was Moldovsky who had moved to withdraw; by declining to review the actual tape recordings that Lightbox offered to submit to chambers; and by declining to hold an evidentiary hearing in order to evaluate Lightbox's forfeiture-through-misconduct argument.

<div align="center">

**CONCLUSION**

</div>

For all the foregoing reasons, and for those stated in its main brief, Lightbox respectfully requests that this Court vacate and reverse the lower court's decision and judgment awarding Moldovsky a charging lien. Alternatively, Lightbox requests that the Court vacate the award and remand this matter for an evidentiary hearing on the narrow issue presented herein, i.e. forfeiture due to attorney misconduct.

Respectfully submitted,

Date: November 12, 2019                    /s/ Jonathan R. Miller, Esq.

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with Rule 32(a)(7)(B) because it

contains 6267 words, excluding the portions of the brief exempted by Rule  32(f),

and that it complies with typeface and type-style requirements of  Rule 32(a)(5)-(6)

because it is printed in a proportionally spaced 14-point font, Crimson Pro.


 Date: November 12, 2019                    /s/ Jonathan R. Miller, Esq.

# Exhibit "P"

# UNITED STATES COURT OF APPEALS
## FOR THE
### SECOND CIRCUIT

_____

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of January, two thousand twenty,

_____

Lightbox Ventures, LLC,

               Plaintiff - Interpleader - Plaintiff - Appellant,

v.

Brem Moldovsky, L.L.C.,

               Interpleader - Defendant - Appellee,

3rd Home Limited, Wade Shealy,

               Defendants,

Scarola Zubatov Schaffzin PLLC,

               Interpleader - Defendant,

v.

Andrew Ellner,

               Third - Party - Defendant - Interpleader - Plaintiff,

_____

**ORDER**

Docket No. 18-3721

IT IS HEREBY ORDERED that appellee's motion to strike unauthorized portions of appellant's reply brief is DENIED.

For The Court:

Catherine O'Hagan Wolfe,
Clerk of Court