# Exhibit "Q"

18-3721-cv
Lightbox Ventures, LLC v. Brem Moldovsky, L.L.C.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

1      At a stated term of the United States Court of Appeals for the Second Circuit,
2  held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the
3  City of New York, on the 21st day of April, two thousand twenty.
4
5      PRESENT:  BARRINGTON D. PARKER,
6                      RAYMOND J. LOHIER, JR.,
7                              *Circuit Judges*,
8                      RICHARD K. EATON,*
9                              *Judge.*
10  -------------------------------------------------------------------------
11  LIGHTBOX VENTURES, LLC,
12
13              *Plaintiff - Interpleader - Plaintiff - Appellant,*
14
15          v.                                    No. 18-3721-cv
16
17  BREM MOLDOVSKY, L.L.C.,
18

---

* Judge Richard K. Eaton, of the United States Court of International Trade, sitting by designation.

1                        *Interpleader - Defendant - Appellee,*

2

3   3rd HOME LIMITED, WADE SHEALY,

4

5                        *Defendants,*

6

7   SCAROLA ZUBATOV SCHAFFZIN PLLC,

8

9                        *Interpleader - Defendant,*

10

11         v.

12

13  ANDREW ELLNER,

14

15               *Third - Party - Defendant -*

16               *Interpleader - Plaintiff.*

17  -----------------------------------------------------------------

18  FOR PLAINTIFF-

19  INTERPLEADER-

20  PLAINTIFF-APPELLANT:        JONATHAN R. MILLER (Alexander Fink, *on*

21                                        *the brief*), The Law Firm of Jonathan R.

22                                        Miller, Princeton, NJ.

23

24  FOR INTERPLEADER-

25  DEFENDANT-APPELLEE:        BREM MOLDOVSKY, Brem Moldovsky,

26                                        L.L.C., New York, NY.

27

28        Appeal from a judgment of the United States District Court for the Southern

29  District of New York (Denise L. Cote, *Judge*).

30        UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,

31  AND DECREED that the judgment is AFFIRMED.

1       Interpleader - Plaintiff - Appellant Lightbox Ventures, LLC ("Lightbox")

2    argues that the District Court abused its discretion when it enforced a charging

3    lien on behalf of Interpleader - Defendant - Appellee Brem Moldovsky, L.L.C. (the

4    "Moldovsky Firm") pursuant to New York Judiciary Law § 475. Lightbox

5    contends that the information it presented to the District Court clearly showed that

6    the Moldovsky Firm acted unethically by (1) coercing Lightbox to enter into an

7    amended retainer agreement, and (2) later withdrawing its representation without

8    just cause when Lightbox disputed a bill. For Lightbox, the Moldovsky Firm's

9    conduct justified a finding that it forfeited its charging lien, or at least warranted

10    a hearing on that issue.

11       We review a district court's decision to enforce a charging lien under New

12    York law for abuse of discretion.

13       We find that the District Court did not abuse its discretion either by

14    enforcing the Moldovsky Firm's charging lien, or by finding that it was

15    unnecessary to hold a hearing before it enforced the lien. New York's Judiciary

16    Law protects attorneys' right to fair and reasonable compensation for legal

17    services. New York courts will not enforce a lien where representation ends

18    because of attorney misconduct, e.g., where the attorney has been discharged for

1   cause or withdraws as counsel without cause. See N.Y. JUDICIARY LAW § 475;

2   Maher v. Quality Bus Serv., LLC, 42 N.Y.S.3d 43, 46 (2d Dep't 2016); Brooks v.

3   Lewin, 853 N.Y.S.2d 286, 288 (1st Dep't 2008). To be entitled to a hearing on the

4   issue of a charging lien, "the client must make a prima facie showing of cause."

5   Maher, 42 N.Y.S.3d at 46.

6        We have considered Lightbox's remaining arguments and conclude that

7   they are without merit. Here, Lightbox did not discharge its attorney for cause;

8   and the Moldovsky Firm withdrew for cause because it had a good-faith basis to

9   believe that the District Court would "find the existence of . . . good cause for

10  withdrawal." N.Y. R. Prof. Conduct 1.16(c)(12). Further, the District Court

11  reviewed the information submitted by Lightbox, and reasonably found the

12  submissions irrelevant under New York law. Accordingly, no hearing was

13  required.

14       For the foregoing reasons, the judgment of the District Court is AFFIRMED.

15                              FOR THE COURT:
16                              Catherine O'Hagan Wolfe, Clerk of Court

4

# Exhibit "R"

Case 2:20-cv-06190-ER   Document 23-4   Filed 04/05/21   Page 7 of 364

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT: __HON. ANTHONY CANNATARO__ | PART     IAS MOTION 41EFM |

*Justice*

-----------------------------------------------------------------------------------X

SCAROLA MALONE & ZUBATOV LLP,

         Plaintiff,

         - v -

ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC,LIGHTBOX VENTURES, LLC,BREM MOLDOVSKY, LLC

         Defendant.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 651324/2017 |
| MOTION DATE | N/A, N/A, N/A, 03/19/2020, N/A, N/A, N/A |
| MOTION SEQ. NO. | 017 018 020 023 024 025 026 |

## DECISION + ORDER ON MOTION

The following e-filed documents, listed by NYSCEF document number (Motion 017) 652, 653, 655, 656, 687, 688, 691, 882, 884, 887

were read on this motion to/for      REARGUMENT/RECONSIDERATION      .

The following e-filed documents, listed by NYSCEF document number (Motion 018) 692, 693, 694, 695, 696, 697, 698, 726, 736, 737, 738, 739, 740

were read on this motion to/for      SANCTIONS      .

The following e-filed documents, listed by NYSCEF document number (Motion 020) 727, 728, 729, 730, 731, 732, 752, 753, 755, 989, 990, 991, 992, 995

were read on this motion to/for      REARGUMENT/RECONSIDERATION      .

The following e-filed documents, listed by NYSCEF document number (Motion 023) 832, 833, 834, 835, 836, 837, 838, 839, 840, 841, 842, 843, 875, 876, 877, 878, 879, 888

were read on this motion to/for      MISCELLANEOUS      .

The following e-filed documents, listed by NYSCEF document number (Motion 024) 855, 856, 857, 858, 859, 860, 861, 862, 863, 864, 865, 866, 867, 868, 869, 870, 871, 885, 886, 912, 913, 919, 920, 921, 922, 923, 924, 925, 926, 927, 928, 929, 934, 935, 939

were read on this motion to/for      SANCTIONS      .

The following e-filed documents, listed by NYSCEF document number (Motion 025) 980, 981, 982, 983, 1001, 1002, 1003, 1004, 1005, 1006, 1007, 1008, 1009, 1051, 1052, 1054, 1055

were read on this motion to/for      CONTEMPT      .

The following e-filed documents, listed by NYSCEF document number (Motion 026) 945, 946, 947, 948, 949, 950, 951, 952, 953, 954, 955, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 984, 985, 986, 987, 988, 999, 1000, 1010, 1011, 1012, 1015, 1016, 1017, 1018, 1021, 1023, 1024, 1025, 1026, 1027, 1028, 1029, 1030, 1031, 1032, 1033, 1034, 1035, 1036, 1037

Case 2:20-cv-06190-ER   Document 23-4   Filed 04/05/21   Page 8 of 364

were read on this motion to/for _____SANCTIONS_____.

       In this action by the Scarola law firm for attorney's fees, the Court now has before it seven motions filed by the Lightbox defendants. One of the motions is for leave to reargue that branch of their prior motion which sought to dismiss plaintiff's claims for account stated and contractual lien, and a second motion is for leave to reargue the branch of their prior motion which sought to dismiss the crossclaims of defendant Brem Moldvosky, LLC, for account stated and contractual lien. They also have four separate motions for sanctions and/or contempt against plaintiff and defendant Brem Moldovsky, LLC, and a motion to compel defendant Brem Moldovsky, LLC, to supplement its bill of particulars. These motions, sequence numbers 017, 018, 020, 023, 024, 025 and 026, are consolidated for decision herein.

       A motion for leave to reargue is directed to the court's discretion and, to warrant reargument, the moving party must demonstrate that the court overlooked or misapprehended the relevant facts or misapplied a controlling principle of law (*see* CPLR 2221 [d]; *Cioffi v S.M. Foods, Inc.*, 129 AD3d 888, 891 [2015]; *Central Mtge. Co. v McClelland*, 119 AD3d 885, 886 [2014]).

       Initially, the branches of the Lightbox defendants' motions seeking leave to reargue the branches of their prior motions which sought to dismiss the causes of action for account stated do not persuasively point to any material fact that was overlooked, or controlling principle of law that was misapplied, by the Court. As such, those two reargument motions are denied.

       Next, in the remaining branches of the Lightbox defendants' motions for leave to reargue, they argue that the Court overlooked both their and the other parties' arguments regarding the portion of their prior motions which sought dismissal of the "contractual lien" claims. Upon closer examination of the parties' arguments, it appears that, in opposition to the contention of the Lightbox defendants that the "contractual

**651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**         **Page 2 of 4**
**Motion No.  017 018 020 023 024 025 026**

2 of 4

NYSCEF DOC. NO. 1098

lien" claim cannot exist as a separate cause of action, the Scarola firm and Brem Moldovsky, LLC, assert that it does so exist as its own separate cause of action pursuant to their respective retainer agreements with the Lightbox defendants.  The Scarola firm and Brem Moldovsky, LLC, argue that these claims still exist despite the federal court's dismissal of their charging lien claims, and this Court's dismissal of their breach of contract claims.  Further, they argue that this "contractual lien" claim separately enables them to collect the full amount of their fees owed pursuant to the retainer agreement.

Contrary to the Scarola firm's and Brem Moldvosky, LLC's arguments, the controlling caselaw does not recognize the workaround which they argue is contained in their retainer agreements.  Indeed, as discussed in this Court's July 8, 2019 and December 18, 2019 decisions and orders, it is well settled that an attorney discharged without cause is limited to compensation measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in a retainer agreement (*Sae Hwan Kim v M & Y Gourmet Grocers*, 239 AD2d 170 [1997], citing *Matter of Montgomery*, 272 NY 323, 326-327 [1936]); *see also Liddle & Robinson, LLP v Garrett*, 720 F Supp 2d 417, 425 (SDNY 2010).

Once the charging lien claims were dismissed by the federal court, and this Court dismissed the breach of contract claims in their entirety, no "contractual lien" claims survived.  As such, reargument is granted as to this issue and,  upon reargument, the portions of the Lightbox defendants' motions which sought dismissal of the causes of action based on a contractual lien are granted, and those causes of action are dismissed.

Regarding the Lightbox defendants' motion to compel Brem Moldovsky, LLC, to supplement its bill of particulars, the issues raised in that motion can and should be resolved at a court conference.  As such, that motion is denied.

Lastly, the Lightbox defendants' four motions for sanctions and/or contempt are denied in their entirety.

**651324/2017   SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**
**Motion No.  017 018 020 023 024 025 026**                                                   **Page 3 of 4**

3 of 4

Case 2:20-cv-06190-ER   Document 23-4   Filed 04/05/21   Page 10 of 364

Accordingly, it is

ORDERED that the branches of the Lightbox defendants' motion seeking leave to reargue the branches of their prior motions which sought to dismiss the causes of action against them for account stated are denied; and it is further

ORDERED that the branches of the Lightbox defendants' motions which seek leave to reargue the branches of their prior motions which sought to dismiss the causes of action for contractual lien are granted, and upon reargument, those branches of the Lightbox defendants' prior motions are granted, and the causes of action for contractual lien in plaintiff's complaint and defendant Brem Moldvosky, LLC's crossclaims are dismissed; and it is further

ORDERED that the Lightbox defendants' motion to compel defendant Brem Moldovsky, LLC, to supplement its bill of particulars is denied; and it is further

ORDERED that the Lightbox defendants' four motions for sanctions and/or contempt are all denied in their entirety; and counsel are directed to appear for a virtual status conference on December 23, 2020 at 10:15 AM.

20201210144041ACANNATA30FF769A494E4B89ADF6A6FFD1C457B9

| __12/10/2020__ | | | __ANTHONY CANNATARO, J.S.C.__ |
| DATE | | | |

| CHECK ONE: | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**                    **Page 4 of 4**
**Motion No.  017 018 020 023 024 025 026**

# Exhibit "S"

          At a Term of the Appellate Division of the Supreme
          Court held in and for the First Judicial Department in
          the County of New York on August 27, 2020.

Present - Hon. David Friedman,        Justice Presiding,
                Dianne T. Renwick
                Sallie Manzanet-Daniels
                Angela M. Mazzarelli,  Justices.

---------------------------------------x
Scarola Malone & Zubatov LLP,
     Plaintiff-Respondent/
     Plaintiff-Respondent-Respondent,

        -against-
                                        **CONFIDENTIAL**
Andrew Ellner, Lightbox Capital             M-1885
Management, LLC and Lightbox Ventures,      M-2094
LLC.,
     Defendants-Appellants,
     Defendants-Respondents-Appellants,   Index No. 651324/17

          -and-

Brem Moldovsky, L.L.C.,
     Defendant/
     Defendant-Appellant-Respondent.
---------------------------------------x

     An appeal have been taken by defendants-appellants
Andrew Ellner, Lightbox Capital Management, LLC and Lightbox
Ventures, LLC (collectively the Lightbox defendants) from an
order of the Supreme Court, New York County, entered on or about
July 8, 2019, and the appeal having been perfected for the
December 2020 Term of this Court (Case No. 2019-03384),

     And an appeal having been taken by the Lightbox defendants
and cross appeal having been taken by Brem Moldovsky, L.L.C. from
an order of the same court, entered on or about December 18,
2019, and Brem Moldovsky L.L.C. having perfected the cross appeal
for the November 2020 Term of this Court, designating itself as
defendant-appellant-respondent (Case No. 2019-02350),

     And defendant Brem Moldovsky L.L.C. having moved for an
order:(1) designating Brem Moldovsky L.L.C. as a respondent to
the Lightbox defendants' appeal taken from the July 8, 2019 order
(Case No. 2019-03384); (2) consolidating the appeal taken from
the July 8, 2019 order (Case No. 2019-03384)  with the appeal
taken from the December 18, 2019 order (Case No. 2019-02350); (3)
declaring the Lightbox defendants' Judiciary Law § 487 claims

(M-1885/M-2094)                    -2-                    August 27, 2020


impossible and moot, and disqualify Jonathan Miller, Esq. as
counsel for the Lightbox defendants or, in the alternative,
granting an enlargement of time to perfect the appeal and
granting leave to supplement the record on appeal by taking
judicial notice of developments in the case and facts since the
date of the order appealed from that are allegedly germane to it
(M-1885),

        And the Lightbox defendants having cross-moved for an order
imposing sanctions for frivolous conduct against defendant Brem
Moldovsky, L.L.C. and Brem Moldovsky, Esq., personally (M-2094),

        Now, upon reading and filing the papers with respect to the
motion and cross motion, and due deliberation having been had
thereon,

        It is ordered that the motion (M-1885) is granted to the
extent directing the Clerk to calendar the perfected appeals from
the July 8, 2019 order (Case Nos. 2019-03384) and December 18,
2019 order (Case No 2019-02350), to be heard together on the same
date of the December 2020 Term, to which Term the appeal taken
from the December 18, 2020 order (Case No. 2019-02350) is
adjourned, and the motion is otherwise denied.  The motion (M-
2094) seeking sanctions for frivolous conduct is denied (see M-
2554, decided simultaneously herewith).

            ENTERED:

                                        _____
                                                  CLERK

# Exhibit "T"

**BREM MOLDOVSKY**
Email: brem@bremlaw.com
Admitted in NJ, NY and PA

Brem Moldovsky, L.L.C. was formed
in PA & Registered in NJ & NY

**BREM MOLDOVSKY L.L.C.**

**www.bremlaw.com**

**NEW YORK**
305 BROADWAY
SEVENTH FLOOR
NEW YORK, NY 10007

PHONE (212) 563-3370
FAX      (212) 563-3371

**PENNSYLVANIA**
100 NORTH 18TH STREET
SUITE 300
PHILADELPHIA, PA 19103

PHONE   (215) 546-9957
FAX    (215) 546-9942

March 5, 2021

**NEW JERSEY**
103 CARNEGIE CENTER
SUITE 300
PRINCETON, NJ 08540

PHONE  (201) 894-8930
FAX      (201) 894-8933

**Via US Mail and Email (chaines@haines-law.com & DWeiss@haines-law.com)**
Clifford Haines, Esquire,
Danielle Weiss, and
Haines And Associates
The Widener Building, 5th Floor
1339 Chestnut Street,
Philadelphia, PA 19107

RE:      *Andrew Ellner v. Brem Moldovsky, L.L.C. et al.,*  Case No.: 2019-00793  -
           Frivolous Litigation Notice Pursuant to Pa.R.C.P. § 1023.1

Dear Counsel:

Hopefully this letter finds you well.  As you know, there is much litigation and

background here and we believe the Complaint in this case is erroneous, baseless,

frivolous and in bad faith.  I am sorry to have to send this type of letter, but in this

circumstance it is appropriate. Of course, we do not mean to personally attack you, make

a point here of saying so and plan to continue the same.  Still, the Complaint is baseless.

Mr. Ellner and his counsel Mr. Miller have built quite a record of problematic litigation

as reflected by numerous court dockets.  Lightbox has been known to pursue litigation

that is "foolhardy" (Judge Cote Attorney's Fees Order, at 7), to litigate overly-

aggressively (Judge Cote Trial Order, at 14) and Judge Cote even pointed out that Mr.

Ellner sought to cage his opponents (Judge Cote Trial Order, at 14).  Second Circuit Judge Eaton stated and indicated on the record that Mr. Ellner did not raise an appealable issue but rather that Mr. Ellner litigated an extensive Federal Circuit Court appeal without basis because Lightbox simply did not like Judge Cote's decision.  The appeal was found to be meritless and without basis, and Lightbox's allegations were found to be irrelevant.  These allegations included many of the same allegations your client brings before the Court yet again: that the Bucks County litigation was wrongfully done, etc.  Since these allegations have been fully adjudicated they are barred by the doctrines of *collateral estoppel*, *res judicata* and long-held caselaw in New York that bars claims of misconduct and malpractice once a finding such as the one by Judge Cote, which firmly found no prima facie showing of attorney misconduct sufficient to bar a statutory charging lien, finding that necessarily bars any claims of attorney misconduct (including fraudulent billing), malpractice, breach of fiduciary duties, etc.  See, e.g., Lusk v. Weinstein, 85 A.D.3d 445 (1 Dept. 2011) ("charging lien" bars client from "thereafter asserting a claim for legal malpractice"); Zito v. Fischbein Badillo Wagner Harding, 80 A.D.3d 520, 521, 915 N.Y.S.2d 260, 261 (1st Dep't 2011) (malpractice claim "barred under doctrine of res judicata by court's imprimatur of a retaining lien").

As already indicated,  the Second Circuit affirmed Judge Cote's Decision.  Judge Cote's Order and the Second Circuit Order rendered Lightbox's claims – including for fraudulent billing -  impossible and caused then to unilaterally withdraw almost all of its claims, including for fraudulent billing as part of malpractice and breach of fiduciary duty in the New York Supreme Court.  That Court has also declined to find in favor of sanctions based on some of the same background of factual allegations including fraudulent retroactive billing, and Judge Baldi declined to grant sanctions in the Bucks County matter based on similar allegations.  Thus, again, your client's attacks have been

fully and finally adjudicated and necessarily determined.  This is all part of the important context that your client apparently has concealed and/or misrepresented to you.

Accordingly, you are hereby politely warned that your client is a vexatious, out-of-control litigant who regularly lies and seeks to endlessly relitigate.  He has lied to this firm, to his former counsel SMZ and to the Court.  He is apparently and likely still lying to you.  Now he is suing SMZ for malpractice based on events that are at least in part a result of his own lies.  He has also sued this firm for malpractice, claims which he was forced to withdraw as baseless, meritless and impossible.  By these and other actions he has committed actual malicious prosecution and more.  It seems these are more critical points your client has not shared with you.  This is not a new or short pattern.  Ellner has raised issues with just about every professional he has worked with in the time this firm has known of him.  This extends from the Defendants in the 3rd Home matter to all his counsel who were entered on the case for him (with the exception of Mr. Miller, but we shall see).  It includes his own expert witnesses, various counsel, and other service providers.  You are coming in after a long line of counsel and with all this in mind, you must carefully test your client's veracity and honesty as they are not reliable.  Remember, Judge Cote found him liable of cybersquatting which includes a serious degree of malice.

Yet, there is more, but, before that, please inform as soon as possible whether and to what extent you will be acting as counsel on and are willing to accept service in the new litigation which will be filed very shortly against Mr. Ellner, his Lightbox entities and others.  If we do not hear from you, then we understand that we should serve people and entities directly and that you will not be acting as counsel.

An underlying driver of what has been going on is that your client has problems with good judgment, so much so that Judge Cote made findings of malice against him in the 3rd Home matter and found him to be foolhardy in his litigation strategy.  He has

challenges with good decision making, letting rage control him and more.  Judge Cote, Judges Lohier, Parker and Eaton, Judge Cannataro, and Judge Baldi have all made decisions detrimental to your client, and this included finding that he submitted fraudulent, fabricated material evidence to the both the Federal and State trial courts in NYC.  Judge Cote and Judge Cannataro both recognized that Lightbox submitted a fabricated signature page related to its agreement with the Scarola Firm as sworn and affirmed evidence, though both declined to grant the Scarola Firm sanctions based on it.

Now your client has engaged you to maliciously prosecute myself, this firm and my father-in-law in yet another forum.  Your lack of due diligence makes you liable for his malicious abuse as well.  Even the timing of your suit - filed when this firm would have 9 days or so on a New York Appeal Opposition and Reply brief that the Court said was inequitable – was intended to be abusive and was only thwarted by the appellate division decision pushing the timeframe off a month to give this firm more time and keep Lightbox to its deadline.  What is worse is that you proceeded with the suit despite Justice Cannataro  denying three sanction motions on December 10 which including his denying the very allegations that are the claims in this case as stated above.

Furthermore, and centrally, we are writing to you pursuant to Rule 11 of the Federal Rules of Civil Procedure (FRCP), which requires notice in writing of at least 21 days prior to filing a motion pursuant for sanctions for the following:

    1)    In your Complaint filed in this action, you have made false statements submitted for and advocating improper purposes in violation of FRCP 11(b)(1), including but not limited to:

        a.    In paragraph 30 you that ” All of the conversations allegedly recorded were between Ellner in New York and Moldovsky's phone number for his New York office.”  However, Plaintiff had

been confronted numerous times with unrebutted records showing
that some phone calls were placed by Plaintiff to Mr. Moldovsky's
Pennsylvania cell phone in Pennsylvania.   It is believed further
records will only demonstrate this further.  The documentary
evidence that exists has been in the possession of your client for
years now and some were also provided related to the Bucks
County litigation. The records are still available on the public
docket as ECF Doc. # 26;  You apparently have failed to due
diligence when pleading about the recordings.  Like Fox
Rothschild, you should be wary and careful about touching the
recordings;

b. Service was also proper on Mr. Ellner and Lightbox pursuant to
Pa. R.C.P. Rule 404 (1)(3), which provides:  "(3)  in the manner
provided by the law of the jurisdiction in which the service is made
for service in an action in any of its courts of general jurisdiction",
pursuant to CPLR Rule 308 (2) "by delivering the summons within
the state to a person of suitable age and discretion at the actual
place of business, dwelling place or usual place of abode of the
person to be served and by either mailing the summons to the
person to be served at his or her last known residence or by
mailing the summons by first class mail to the person to be served
at his or her actual place of business in an envelope bearing the
legend "personal and confidential" and not indicating on the
outside thereof, by return address or otherwise, that the
communication is from an attorney or concerns an action against

5

the person to be served, such delivery and mailing to be effected within twenty days of each other", and pursuant to CPLR Rule 308 (4) "where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other";

2)   You have asserted claims that fail to satisfy the elements of the controlling statutes and contradict controlling State and Federal authorities in violation of FRCP 11 (b)(2);

    a.   Your client did not achieve termination in his favor, including that the claims are alive and also will be filed shortly;

    b.   As already explained, the claims are precluded by *res judicata* and *collateral estoppel*;

    c.   Your client's complaint is precluded because the allegations therein regarding the underlying proceedings were brought as elements of sanctions motions in numerous courts and thus are barred by the precedents of the *Raynor* and *Pendergrass* actions

6

which hold that the same allegations cannot be the subject of a
malicious prosecution matter and thus the complaint must be
stripped of all of this; any aspect of the case that is not subject to a
malicious prosecution complaint must be taken out of the
complaint and not included going forward according to the <u>Raynor</u>
and <u>Pendergrass</u> Decisions which you know quite well;

d.   There was complete **<u>probable cause</u>** in the suit you are basing
your client's complaint on, evidenced by Judge Baldi stating on the
record that the claims could reach a jury, including but not limited
to:

  i)        There was probable Cause pursuant to 42 Pa. C.S. §
            8352;

  ii)       There was probable cause per the expert report of
            Samuel Stretton, Esq.;

  iii)      There was probable cause based on the information
            known about the wiretaps;

  iv)       There was probable cause based on the undersigned's
            knowledge that Mr. Ellner regularly traveled to and/or
            owned additional homes in other 2 consent states
            including Utah (Sundance), California (Calistoga) and
            Florida;

  v)        There was probable cause based on your client's
            former attorney at Fox Rothschild admitting that they

were not handling the recorded phone calls because of the potential illegality of them;

vi)    There was probable cause based on your client not turning over recordings, lying about them, and using them abusively to abuse and aid and abet Mr. Miller, raise false claims, undermine proceedings, etc.;

vii)   There was probable cause based on the standards established by the matter of <u>Calcagno vs. Aidman</u>, which holds that courts will weigh the differences in standards between two states when one state has a stricter or different standard than the other in order to prevent additional harm or damage.  This is also held by the <u>Larrison v. Larrison</u>  and <u>Mulder v. Wells Fargo</u> Courts.

e.   Your client's matter, if anything, belongs in New York and combined with the undersigned and Moldovsky Firm's federal suit;

f.    Your client's complaint suffers from an indispensable party issue; Mr. Miller and both Lightbox entities are indispensable parties in this suit if it is proceeding (though it should not);

3)    Retract and withdraw all aspects of the suit that must fail per the <u>Raynor</u> and <u>Pendergrass</u> decisions as elaborated above.

Accordingly, it is understood that your client will retract and correct his various misrepresentations of fact to the tribunal, which you have certified as true upon investigation and belief, and which you certify are likely to have evidentiary support (though they are not, and you do not) within 21 days of the date of this letter.

Please consider this a demand that the complaint itself be withdrawn and also that the various allegations, issues, falsehoods, etc. as identified herein be retracted and withdrawn and that the Court be informed immediately, wholly and truthfully.

We have raised  specific examples in the prior Frivolous Litigation notice sent to your client on June 18, 2019 and hereby renew these notices that such statements are frivolous, without basis, and made with malice and intention to harass or harm this firm and the Defendants here.  We reserve all rights to raise any such misrepresentations as we deem necessary and appropriate.  This letter does not act as a waiver of any rights by me or Brem Moldovsky, L.L.C.

As has been raised previously in the Bucks County case the in the Response to your Clients' Answer to the Motion to Disqualify Mr. Miller (Bucks ECF Doc. #26), your clients' Answer to the Plaintiff's Motion to Disqualify Mr. Miller (Bucks ECF Doc. #17) contains at least three demonstrably and absolutely false statements of material fact. Since your case relies on that case, this is all crucially relevant and raises the lack of due diligence here.  First, at ¶44 Mr. Ellner have stated that he "only ever called Plaintiffs [the undersigned and this firm] while in New York, Lightbox only ever dialed Plaintiffs' New York phone number…".  This has been shown to be false, See, Plaintiffs' Response to Lightbox's Answer, ECF Doc. #26 at ¶44 and in particular, Plaintiffs' Exhibit "E" thereto, which is a true and correct copy of phone records for Brem Moldovsky's Pennsylvania cell phone with a Pennsylvania area code, in which it is clear that your client called that Pennsylvania line on several occasions from their cell phone, 516-729-9398.

Second, at ¶46 of that same Answer (ECF Doc. # 17) Mr. Ellner stated that "it is specifically denied that Lightbox ever called Plaintiffs while they were in Pennsylvania." This too has been shown to be absolutely and demonstrably false, See, Plaintiffs'

Response to Lightbox's Answer, ECF Doc. #26 at ¶44, wherein it is described that at least one phone call, which was then transcribed and distributed to the Court by Mr. Miller on behalf of your Clients, was to Brem Moldovsky on Thanksgiving Day, when your clients (specifically Mr. Ellner) knew that Brem Moldovsky was at his home in Bucks County, Pennsylvania. See also, Plaintiffs' Response to Lightbox's Answer, Bucks ECF Doc. #26 at Exhibit "E", which shows that Brem Moldovsky's cell phone, and thus also Brem Moldovsky, was located in Pennsylvania at the time of some of the calls.

Finally, your client stated at ¶30 of your client's Motion for a Protective Order in the Bucks case (ECF Doc. #6)  that "Plaintiffs initiated this lawsuit solely to acquire materials they previously have been barred from obtaining in the New York action". This is absolutely and demonstrably false.  There is no Court order, directive, statement, or any communication from the Court whatsoever in either New York matter barring the turnover of documents and recordings related to Mr. Ellner's improperly wiretapped phone calls that are requested here.  Discovery has not commenced in the New York Supreme Court matter, and Discovery was not done in the Federal Interpleader Matter. Any demands for turnover have been made to Mr. Miller as he was acting and continues to act as counsel for your clients, and have been ignored, but there has been no request to compel turnover or denying, barring or otherwise rejecting a request to compel turnover. This has been explained in The Plaintiffs' Answer to Ellner and the Lightbox Entities' Motion for a Protective Order, Bucks ECF Doc. #31 at ¶30.

I am amenable and open to being cooperative in your efforts to retract the false statements and present the truth of each of these issues presented herein.  I look forward to being cooperative as you work to resolve these issues.

I think you will find upon investigation and over time that I am a reasonable and straightforward person.  At this stage, it is evident that your client has persisted with their

tendency to not be fully transparent with their counsel.  Although we are adverse, I do

hope that you will heed this notice to carefully investigate statements, allegations, claims

by your clients for truthfulness and confirm that there is valid evidentiary proof to be in

good faith.  As former counsel to your client, it was their misrepresentations, particularly

at the beginning of this Firm's representation that caused a host of issues, as was raised in

the Crossclaims in the New York litigation.  This is not exclusive to this Firm's

representation, either.  As mentioned above, Mr. Miller has had to concede that your

client falsified a pertinent document in the New York matter, which was the subject of

two serious motions for sanctions brought by Richard J.J. Scarola, Esq. and Alexander

Zubatov, Esq. on behalf of their firm.  There are other examples as well, that can be

found with some investigation and review of the various dockets.

    These misrepresentations, as well as any others, must be rectified with the Court.  The

failure to do so is clearly in violation of Rule 11(b) prohibiting statements known to be

false made despite having ample evidence to the contrary.  Failure to rectify false

statements to the Court will result in the Plaintiffs moving for sanctions pursuant to Rule

11(c) and other appropriate steps at the appropriate time.  Of course, this letter does not

act as a waiver of any rights by me or Brem Moldovsky, L.L.C.  Please confirm that your

client will rectify his false statements.

    Please also confirm whether you will be acting as counsel for Andrew Ellner and/or

the Lightbox entities related to the undersigned and the Moldovsky Firm's renewed

claims in the Southern District of New York and the Eastern District of Pennsylvania,

and whether you will accept service on some or all of their behalf.

    Finally, I wanted to raise with you that I have hired your firm in the past and thus

there are conflict of interest issues in your representation here that are a concern.  Your

client seems to have a habit of hiring my former counsel and has done so here too, which

should be rectified.

Thank you for your attention to these matters.  I truly hope that this letter is received in good faith, as it has been sent.  This office is available for any questions as appropriate  and hopes you take the concerns expressed herein with the seriousness which they deserve.

Truly Yours,

Brem Moldovsky, Esquire
Brem Moldovsky, L.L.C.

CC: Gerald J. Pomerantz, Esq.

# Exhibit "U"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x

| | | |
|---|---|---|
| BREM MOLDOVSKY, L.L.C. ; and | : | |
| | : | |
| BREM MOLDOVSKY, ESQUIRE. | : | |
| | : | **COMPLAINT** |
| *Plaintiffs*, | : | |
| vs. | : | |
| | : | Case No.: 1:21-cv-02452 |
| JONATHAN MILLER, ESQUIRE, D/B/A/ THE | : | |
| LAW FIRM OF JONATHAN R. MILLER; | : | |
| | : | |
| ANDREW ELLNER; | : | TRIAL BY JURY DEMANDED |
| | : | |
| JILL ELLNER; | : | |
| | : | |
| LIGHTBOX VENTURES, LLC | : | |
| UNITED STATES CORPORATION AGENTS, | : | |
| INC.; | : | |
| | : | |
| LIGHTBOX CAPITAL MANAGEMENT, LLC; | : | |
| and | : | |
| | : | |
| ALEXANDER FINK, ESQUIRE. | : | |
| | : | |
| *Defendants*. | : | |
| | : | |

------------------------------------------------------------- X

i

# Contents

The Nature Of The Action ..................................................................................................... 1

Preliminary Statement ............................................................................................................ 1

The Parties .............................................................................................................................. 3

Jurisdiction And Venue.......................................................................................................... 4

Background ............................................................................................................................. 5

Acquaintance With Mr. Miller And Start Of Collegial And Social Friendship In Roughly 2014-2015 ...... 5

Continued Colleague Relationship With Mr. Miller In 2016 – 2018........................................... 11

Moldovsky Firm Representation Of Lightbox And Ellner In 2017 – 2018 ................................. 12

Mr. Miller's Representation Of Lightbox And Mr. Ellner In New York Supreme Court Litigation And Ensuing Collusion With Lightbox In The Fall Of 2017 – Spring 2018....................................... 15

Lightbox And Mr. Ellner Negotiate The Amended Agreement With The Moldovsky Firm In The Fall Of 2017 ........................................................................................................................... 17

Inevitable Conflicts With Mr. Miller Are Raised By Plaintiffs In 2018 And Spark Animus That Continues To This Day ............................................................................................................................. 21

Mr. Miller's Entry As Counsel For Lightbox In 2018 Post-Trial In Opposition To His Former Client And Colleague Triggers His Conflict With His Former Clients, Plaintiffs, And Current Clients, Lightbox And Mr. Ellner .......................................................................................................................... 24

Lightbox's June 20, 2018 Sanctions Request In The Southern District...................................... 26

Mr. Miller Files Lightbox's 250 Paragraph False, Abusive  Interpleader Proceeding Containing Defamatory Allegations Of Fraud, Coercion, Misconduct, Rule Violations, Etc. That Was Determined By The Federal Courts In 2018 And Again 2020 In Its Attacks Against The Moldovsky Firm To Be Unfounded, Meritless And  Irrelevant ............................................................................................... 26

The Moldovsky Firm Is Brought In As A Defendant In The New York Supreme Court Matter By Plaintiff Smz In September 2018 ....................................................................................................... 30

Baseless And Meritless 2nd Circuit Appeal Taken By Lightbox In 2018 .................................... 33

Lightbox Persists In Frivolous, Malicious, And Defamatory Litigation In The New York Supreme Court From 2019 Through The Present ............................................................................................... 35

Lightbox And Mr. Miller Abuse Process In Order To Waste Time And Resourses, Cause Endless Litigation And Frustrate And Abuse Plaintiffs Beginning With The Federal Interpleader Complaint And Continuing Through The Present ................................................................................................ 37

Plaintiffs' Bucks County Litigation – Againstmr. Miller For Claims Related To His Conflicts, Including Legal Malpractice And Breaches Of Fiduciary Duties, And Against Lightbox For Aiding And Abetting Mr. Miller's Breaches And Malpractice And For Violations Of The Pennsylvania Wiretap Act – Is Initiated In February 2019 And Discontinued In October 2019 ................................................. 41

Lightbox And Miller's Frivolous Litigation And Abuse Continues In Pennsylvania ..................... 42

The Moldovsky Firm Discovers The Truth About Mr. Miller's Career Difficulties With His Prior Firms, Including New Jersey Firm Wong Fleming, Via Filings On The Public Record ...................... 44

Lightbox Seeks An Overly-Broad And Inappropriate Injection Based On The Plaintiffs' Discovery Of Mr. Miller's Unredacted Deposition Transcript On The *Kopel* Docket In New Jersey In March 2020 ..... 47

Second Circuit Court Of Appeals Summary Order Issued April 21, 2020 Holds That Lightbox's Claims Are Baseless, Without Merit And Impossible ........................................................................................ 48

Lightbox And Miller Make Repeated Requests For Sanctions Via Proceedings In The New York Supreme Court And Appellate Division, All Of Which Were Denied ...................................................... 50

Ellner's Malicious Frivolous, Defamatory, Harassing And Abusive Eastern District Of Pennsylvania Complaint ........................................................................................................................................... 56

Mr. Miller And Lightbox Various Actions And Proceedings Undertaken To Maliciously And Falsely Prosecute, Purposefully Damage, Delay, Frustrate, Harass, Attack, Embarrass, And Destroy And Monopolize The Time Of The Plaintiff ................................................................................................. 58

Damages, Losses, And Impacts To The Plaintiffs, And Relief Requested .............................................. 61

I.      First Cause Of Action – Malicious Prosecution (Malicious Abuse Of Legal Process) Against All Defendants ......................................................................................................................................... 70

Ii.     Second Cause Of Action – Abuse (Perversion) Of Process Against All Defendants ...................... 77

Iii.    Third Cause Of Action – Deceit And Collusion Violative Of Ny Jud. Law §487 And Unauthorized Practice Of Law Pursuant To Ny Jud Law §§ 478 And 484 Against All Defendants Except Mr. Ellner And The Lightbox Entities .................................................................................................................. 83

Iv.     Fourth Cause Of Action – Failure To Rectify Misrepresentations To The Court Against All Defendants ......................................................................................................................................... 88

V.      Fifth Cause Of Action - Prima Facie Tort Against All Defendants ................................................... 89

Vi.     Sixth Cause Of Action – Defamation And Libel Against All Defendants....................................... 91

Vii.    Seventh Cause Of Action - Tortious And Malicious Interference Against All Defendants Except Mr. Fink ............................................................................................................................................. 93

Viii.   Eighth Cause Of Action – Fraud And Fraud In The Inducement Against Jonathan Miller ........... 95

Ix.     Ninth Cause Of Action – Negligent Misrepresentation Against Jonathan Miller.......................... 98

X.      Tenth Cause Of Action – Breach Of Fiduciary Duty Against Jonathan Miller ................................ 99

Xi.     Eleventh Cause Of Action – Legal Malpractice Against Jonathan Miller.................................... 101

Xii.    Twelvth Cause Of Action – Violation Of The New Jersey Consumer Fraud Act Against Jonathan Miller  104

Xiii.   Thirteenth Cause Of Action – Violation Of The Pennsylvania Unfair Trade Practices And Consumer Protection Law Against Jonathan Miller ....................................................................... 107

Xiv.    Fourteenth Cause Of Action – Violation Of Ny General Business Law § 349 (Consumer Fraud) Against Jonathan Miller .................................................................................................................. 109

Xv.     Fifteenth Cause Of Action –  Breach Of Contract For Professional Legal Services Against Jonathan Miller ................................................................................................................................ 110

Xvi.    Sixteenth Cause Of Action – Aiding And Abeting Against All Defendants ................................. 113

Xvii.   Seventeenth Cause Of Action – Piercing The Corporate Veil, Alter Ego, Corporate Successor Against Andrew Ellner, Jill Ellner And Lightbox .............................................................................. 116

Xviii.     Eighteenth Cause Of Action – Concert Of Action Aginst All Defendants ............................... 117

Xix.     Nineteenth Cause Of Action – Permanent Injunction Against All Defendants Except Mr. Fink . 118

Xx.     Twentieth Cause Of Action – Equity ........................................................................................ 118

Prayer For Relief ................................................................................................................................ 119

Plaintiff Brem Moldovsky, L.L.C.  (the "Moldovsky Firm") and Brem

Moldovsky, Esquire, by their attorneys (themselves, for now), as and for their Complaint herein,

allege as follows:

## THE NATURE OF THE ACTION

1.     This action which includes causes of action for malicious prosecution,

wrongful abuse of process and various other causes of action and requests for relief arises from

various and prolonged dealings with the Defendants.

2.     As detailed below, Plaintiffs are entitled to compensatory, punitive and

other damages against all Defendants as well as attorneys' fees and costs under various statutes.

## PRELIMINARY STATEMENT

3.     This Complaint is fundamentally about long-term, ongoing abusive and

malicious prosecution, abuse of process, deceit on the court, malicious defamation, attorney

malpractice, violations of the NY and PA Rules of Professional Conduct 1.6, 1.7, 1.8, 1.9, and

3.2 (as applicable to the attorney Defendants and per the allegations herein), etc. by Jonathan R.

Miller, Esq. and by Plaintiffs' former clients Andrew Ellner, Lightbox Ventures, LLC and

Lightbox Capital Management, LLC (hereinafter "Lightbox"), and by other Defendants related

to Lightbox and Miller against the Plaintiffs including in a New York Federal matter and its

Appeal, a New York State matter and its Appeals and more.

4.     The Plaintiffs' claims include that the Defendants have perpetuated

endless malicious and abusive litigation and attacks in concert with one another with a sole and

main objective of harming and damaging Plaintiffs through malicious abuse, harassment,

breaches of duties, deceit upon the Court, defamation and libel, and other misconduct.  Mr.

Miller in particular is in deep conflict of interest, has committed blatant malpractice against

1

Plaintiffs, his former clients in two Bucks County, Pennsylvania matters (the "Bucks County matters") by persisting in representing Lightbox and Mr. Ellner as their Counsel in New York and in the Federal Appeal despite being aware that his representation against the Plaintiffs would raise conflicts of interests and make Lightbox and Mr. Ellner privy to and be advantaged by certain information and knowledge that they would not have but not for the representation by Mr. Miller (which Mr. Ellner and Lightbox have capitalized on).

5.      Mr. Miller has worked in concert with the other Defendants to perpetuate false, dismissed, adjudicated, and impossible claims against Plaintiffs across multiple venues based on his and Lightbox's animus, pride, and vow to make dealings and litigation abusively and unnecessarily difficult following the Plaintiffs raising Mr. Miller's conflicts and being in conflict with Mr. Ellner and Lightbox.

6.      Lightbox and the other Defendants in part have aided and abetted Mr. Miller and Mr. Ellner in pursuing their malicious vendetta despite the same alleged factual allegations and claims being dismissed by Judge Denise Cote of the Southern District of New York by Decision dated October 22, 2018 (attached hereto as Exhibit "A"), the Second Circuit Court of Appeals by Summary Order dated April 21, 2020 (attached hereto as Exhibit "B"), the New York Appellate Division, First Department by Order dated August 27, 2020 (attached hereto as Exhibit "C"), and by Order of Judge Anthony Cannataro of the Supreme Court of New York dated December 10, 2020 (attached hereto as Exhibit "D").

7.      This Complaint shows malicious, wrongful and abusive steps taken by Defendants to systematically and maliciously harass, abuse, damage, and destroy Plaintiffs.

2

## THE PARTIES

8.      Plaintiff Brem Moldovsky, L.L.C. is a law firm with offices in Pennsylvania, New York, and New Jersey, and is also referred to herein as "the Moldovsky Firm."

9.      Plaintiff Brem Moldovsky, Esquire is an attorney practicing with the Moldovsky Firm in Pennsylvania, New York, and New Jersey.

10.      Defendant Jonathan R. Miller d/b/the Law Firm of Jonathan R. Miller is an attorney licensed to practice in Pennsylvania, New York, and New Jersey with a primary address at 100 Overlook Center, 2nd Floor, Princeton, NJ 08540.

11.      Defendant Alexander Fink, Esquire is an attorney licensed to practice in New York with a primary address at 200 Vesey Street, New York, NY 10285-1000.

12.      Defendants Andrew Ellner and Jill Ellner, husband and wife, are individuals residing at 210 West 77th Street, Apt. 8W, New York, NY 10024.

13.      Defendant Lightbox Ventures, LLC is an entity owned by Andrew Ellner with a registered address at 210 West 77th Street, Apt. 8W, New York, NY 10024.

14.      Defendant Lightbox Capital Management, LLC is an entity owned by Andrew Ellner with a registered address at 24 West 40th Street, Second Floor, New York, NY 10024.Andrew Ellner, Lightbox Ventures, LLC, and Lightbox Capital Management, LLC are hereinafter collectively referred to as "Lightbox".

15.      Lightbox have been engaged with litigation against Moldovsky and the Moldovsky Firm since the termination of the Moldovsky Firm's representation of Lightbox in April 2018.  This includes litigation that has been determined to be without merit, baseless, and irrelevant (see, Exhibits "A" and "B" hereto).  Lightbox and its member Andrew Ellner have been described as "foolhardy" litigants (Lightbox Ventures, LLC v. 3rd Home Limited, , 2018

3

WL 2943742 at 3 (S.D.N.Y. 2018) who sought to "cage" their adversary (Lightbox Ventures, LLC v. 3rd Home Limited, 2016 WL 6562107 at 5 (S.D.N.Y. 2016). This has been exceedingly obvious through the course of the litigations over 2018 to the present that are the subject off this complaint as described in the paragraphs that follow.

16.     Mr. Miller has been counsel to Lightbox and Mr. Ellner for the duration of the abusive litigation that is the subject of this complaint, beginning with his representation of Lightbox in the Southern District of New York Interpleader matter with the exception of entering appearance on the Bucks County Pennsylvania Matter initiated by the Plaintiffs here against Mr. Ellner, Lightbox and Mr. Miller (Moldovsky v. Miller, et al., Court of Common Pleas of Bucks County, Pa., No. 2019-00793) and Lightbox's most recent Eastern District of Pennsylvania complaint (cite). Mr. Miller has continued to be the spearhead used by Lightbox to continually damage the Moldovsky Firm and his former client and colleague Mr. Moldovsky through frivolous, redundant, and abusive litigation, breaches of duties, breaches of professionalism, and consistent malicious non-compliance with Court rules and normative practice, much of which is described in the paragraphs that follow.

17.     Alexander Fink, Esquire is an attorney who worked for Mr. Ellner and the Lightbox entities on their Second Circuit Appeal Briefing and was presumably familiar with the background of the matter before working on the appeal brief. Mr. Fink would have or should have been aware that Lightbox's Appeal was frivolous.

**JURISDICTION AND VENUE**

18.     Jurisdiction in this Court is proper under 28 U.S.C. §1332(a) because plaintiffs are each citizens of the State of Pennsylvania, defendant Miller is a citizen of the State

of New Jersey, and all other defendants are citizens of the State of New York, and the amount in

controversy exceeds $75,000.

19.     Venue in this Court is proper under 28 U.S.C. §1391(b)(2) because a

substantial part of the events or omissions giving rise to the claim occurred in the State of New

York and insofar as the parties here operate business activities in State of New York and

Plaintiffs were damaged in New York.

## BACKGROUND

## ACQUAINTANCE WITH MR. MILLER AND START OF COLLEGIAL AND SOCIAL FRIENDSHIP IN ROUGHLY 2014-2015

Mr. Miller's False Representations About Litigation Background and Employment Difficulties in 2014 – 2016

20.     The Plaintiffs became acquainted with Mr. Miller in roughly 2014 after

meeting through a bar association list-serve and realizing that they had what seemed to be similar

law practices, were proximately close to one another's homes and had various commonalities.

21.     Like Brem Moldovsky, Mr. Miller is an attorney in Pennsylvania, New

York and New Jersey and thus bound to follow law and attorney ethical standards as an attorney

in all three states.

22.     The genesis of their colleague relationship was based on back and forth

questions about legal issues, some general and some more specific.

23.     Upon discovering their similarities, Brem Moldovsky and Mr. Miller

discussed and provided advice to each other on many things related to their law practices,

including managing small law practices, time management, usage of staff and attorneys and rates

of pay, advertising and marketing, value of time and time as a marketable good, limitations, and

other aspects of management and small law practice

5

24. Brem Moldovsky and Mr. Miller began a colleague and friendly relationship and spoke and emailed on a somewhat regular basis about legal issues. They also confided personal and sensitive information with each other as friends and colleagues, got together for meals and with family for holidays, including at the Moldovskys' home.

25. It was during this period of time that Mr. Miller recounted to Plaintiff Brem Moldovsky, during meals together in Bucks County and Mercer and Hunterdon Counties New Jersey and in phone calls in 2015 – 2016, that he had experienced difficulty with various colleagues and his former employers Wong Fleming and previous to that, Drinker Biddle, which Mr. Miller described as if he were victimized by each firm and some colleagues, and described unethical and underhanded conduct at each firm and by certain former colleagues.

26. Mr. Miller created misconceptions about the character of his former employers and colleagues that the Plaintiffs believed and relied on as true for some time.

27. Mr. Miller continued to reconfirm and reinforce these misconceptions about his former firm multiple times despite reasonable opportunities to be truthful, such as when conveying the reason he is without malpractice insurance.

28. Critically, Mr. Miller conveyed his side of the dispute as if he were not involved and to the extent he was it was as a victim, when in reality, he was a major participant in the circumstances, facts, issues and difficulties he had with Wong Fleming and its clients including what lead to the clients leaving the firm and suing it as well as Mr. Miller being fired from the firm. He conveyed the matters as if it was something he observed and was cognizant of rather than as something that he was at the heart of the whirlwind of and a major part of.

29. This, it would be discovered, were just some of Mr. Miller's conflicts and misrepresentations.

30.     In retrospect and having learned more, it was clear that Mr. Miller was purposefully inaccurate and dishonest.  He made a point of raising problems with his time as a lawyer so far and that the issues were from others and not himself.  He told a sanitized and not true version of events.  He hid that the problems he had had much to do with him and that he actually was the  main source of the problems he had.

31.     He misrepresented others as unethical, problematic and undermining of clients and later it was learned that it was he who acted in these ways and had been accused of so doing.

32.     Mr. Miller hid that he was considered, known to be and accused by his superiors, associates, lawyers he worked with and for of being disloyal, dishonest, disgruntled, harmful to the firm and its clients, undermining of colleagues, inappropriately aggressive, destructive of the law firm and its relationships and more like this, and he hid that he had been fired by law firms for these and various other and related attorney ethical misconduct.

<u>Mr. Miller's Legal Representation And Attorney-Client Relationship In Prior Bucks County<br>Matters in 2015 - 2016</u>

33.     Mr. Miller misrepresented himself as an upstanding, ethical, capable and amicable lawyer with integrity who did not have the issues, history, problems and challenges that he actually did.  So much so, that Plaintiffs, in a precarious and fragile condition, relied on Mr. Miller's representations about his experience and background and hired Mr. Miller to represent them in the Bucks County matters.  Plaintiffs would not have done so had they known the truth about Mr. Miller and the risks of hiring him – that he had deep a deep problematic history of which had Plaintiffs known they would not have involved him in the matters they did and for which the problems he hid were the same problems that have caused so much loss and damage here, as stated herein.

34. Thus, even when Plaintiffs specifically sought Mr. Miller's representation, he did not correct all the untruths but rather allowed them to be the false premises upon which the attorney client representation was built as he secured and added to the untruths. So, he did not correct them once Plaintiffs approached him for representation, nor did he disclose that he was, at that time and ongoing for a while, involved in litigating against his former law firm as a hostile witness.

35. Had Plaintiffs known that Mr. Miller even at that time was embroiled in litigation that included that Mr. Miller had a history as an attorney with negative, disloyal, dishonest, abusive, etc. behavioral and ethical issues, disputes with his employers, and abuse of subordinates, among other problems that still impede his fitness to practice law and continue to cause much wasted court, party and counsel time to this day, Plaintiffs would not have hired him.

36. Nevertheless, in 2015-2016, Mr. Miller represented, acted as counsel and was an attorney for Brem Moldovsky, Esquire and his wife, and co-counsel with Brem Moldovsky, L.L.C. in two Pennsylvania litigations (the "Bucks County matters").

37. Mr. Miller's client agreement letter was between Mr. Miller and Brem Moldovsky, however, Mr. Miller also "implicitly" represented Brem Moldovsky's wife and represented, provided counsel to and was co-counsel to Brem Moldovsky, L.L.C. See, Mr. Millers Agreement Letter, incorporated herein and attached hereto as Ex. "E".

38. Payment for legal service was made by Brem Moldovsky, L.L.C.

39. Because of the colleague and friend relationship between Mr. Moldovsky and Mr. Miller, many of the communication, arrangements and agreements between the parties were oral.

8

40.     Mr. Miller's representation included lawyering in various capacities on the Moldovskys' claims of misrepresentation and breach of contract with damages and losses including loss and waste of time - of attorney, paralegal and legal professional time, seeking relief and compensation of payment of the value of the professional fees based on Brem Moldovsky, LLC.'s billing, legal fees, value of professional hours, etc.

<u>Mr. Miller Learns Sensitive, Confidential Information about the Moldovskys and Brem Moldovsky, L.L.C. in the Course of His Representation in 2015 – 2016</u>

41.     During the two litigations in which Mr. Miller acted as counsel for the Moldovskys, he provided guidance, counsel, advice, legal input and such to the Plaintiffs.  At times he acted as a prime contact with the other counsel on the case and he also prepared, drafted and edited litigation documents, performed legal research, did analysis of and helped to build and work on claims and defenses, reviewed relevant rules and law, performed legal strategizing, correspondence and negotiation with counsel, drafting of official correspondence documents on and related to the case, reviewed the facts of the matters, performed analysis and gave input about expert usage, engaged in settlement discussions, and more, all of which he billed for as appropriate and was compensated for accordingly.

42.     In the course of his representation, Mr. Miller was provided with, made privy to, digested and/or absorbed much financial details and information including legal billing and its components, liquidity and ability to make large payments, payment terms,  ability to litigate extensively, time and capability of the office, personal and law firm financial information, family information, bills, ability to pay bills and how quickly, reserves, salaries and hourly rates as well as profits and expenses, payment of outside legal fees, and was acquainted with the manner in which the Plaintiffs negotiate and deal with other counsel and prefer to handle matters, the approach to risk and risk assessment, desire or willingness to be involved in

ongoing litigation, other strengths and weaknesses that Lightbox and Ellner would not be otherwise exposed to, much if not all of it sensitive, personal and confidential, and more.

43.     Plaintiff understood and reasonably believed that Mr. Miller would act as counsel in a manner that conformed with the duties inferred upon him as an attorney registered to practice in the Commonwealth of Pennsylvania and in NJ and NY, and including a duty of loyalty, duty of trust, duty to keep confidences and a duty to act in the best interests of his clients.

44.     The Plaintiffs reasonably relied on these actions and representations, and, as recounted here, were duly betrayed, disappointed and undermined by Mr. Miller's failures in all of these regards.

45.     Mr. Miller appeared to act trustworthy, protective of client confidences and sensitivities, caring about legal questions raised and their impact, and seemed not be telling others Plaintiffs' sensitive information or taking other such wrongful steps.  Later, as described herein, things changed and it was realized that Mr. Miller, particularly in 2018 and on, was acting quite improperly, including in these very concerns.

46.     Accordingly, it was reasonable under the circumstances to believe Mr. Miller was acting within an attorney client relationship with Plaintiffs, at least until about April/May 2018 when Plaintiff realized that Mr. Miller had turned against him.

47.     As it turns out, Mr. Miller acts as a disloyal lawyer and he hid and misrepresented about this as Plaintiffs would not have involved him in their personal and professional client matters had he not hid and misrepresented himself and his experiences.

48.     Now Mr. Miller represents Lightbox, Brem Moldovsky, L.L.C.'s former clients, in a series of disputes against Brem Moldovsky, L.L.C. and Brem Moldovsky, Esquire

wherein Mr. Miller's knowledge of the Plaintiffs' strategic thinking, planning, actions, litigation

approaches and tactics, negotiation and engagement approaches, and general methods of dealing

with and more, as to how to engage, deal, litigate with, etc. a litigation onslaught by a well-

funded and aggressive party harboring disdain toward Plaintiffs and their approaches, including

tendencies to avoid and walk away from righteous claims and positions in light of such

opposition, are and have been poisonously helpful to Lightbox, deeply and unfairly hurtful to

Plaintiffs, and terribly troubling, complicating and time-wasting for Plaintiffs in what should be

otherwise straightforward  disputes against both prior law firms by Lightbox based on failure to

pay legal fees and costs based on written, signed and acknowledged agreements to pay.

## CONTINUED COLLEAGUE RELATIONSHIP WITH MR. MILLER IN 2016 – 2018

<u>Attorney-Client and Colleague Relationship Continues During the Moldovsky Firm's Work with Lightbox Beginning in 2017</u>

49.     During and after the Pennsylvania litigations, the Plaintiffs maintained an

attorney-client and attorney-colleague relationship with Mr. Miller in which he provided legal

advice, guidance and counsel.

50.     There were times when he provided more active representation as well.

Mr. Miller was acting counsel for the Plaintiffs from the Fall of 2015 through the Fall of 2016.

51.      Over the course of years, between 2015 and 2018, there were well in

excess of 20 times when Mr. Miller made inquiries to the Plaintiffs and Plaintiffs made inquiries

to Mr. Miller about matters which included sensitive, important and challenging client and

personal issues that a sophisticated attorney would not share with a casual acquaintance, such as

strategizing approaches, reviewing submissions and filings to the Court, mediation and

settlement considerations and more related and unrelated to the Federal Lightbox matter.

11

## MOLDOVSKY FIRM REPRESENTATION OF LIGHTBOX AND ELLNER IN 2017 – 2018

Mr. Ellner, a Sophisticated Businessman, and Lightbox Ventures, A Global Company with In-House Counsel And Holding Out as Able to Manage Legal Operations Around the Globe, are Referred to the Moldovsky Firm in January 2017

52. The Moldovsky Firm began interacting with Mr. Ellner and Lightbox in January 2017 about representing them in place of their prior counsel Scarola Malone & Zubatov, LLP ("SMZ"), upon a referral from a bar association referral service.

53. SMZ and Lightbox had reached an impasse regarding SMZ's billing, which Lightbox has refused to pay, which is still the subject of litigation in the Supreme Court of New York.

54. Mr. Ellner had previously worked for Lehman Brothers, holding global and executive positions.

55. The underlying litigation involved a failed joint venture for a global real estate venture Mr. Ellner claimed and believed had in excess of hundreds-of-millions of dollars-worth of potential, was a first in the industry, already had listings of hundreds-of-millions of dollars of real estate and more.

56. During the time of discussions with Mr. Ellner over January and into February 2017 over terms of representation, including whether to take the matter on in a hybrid fee agreement and various details related thereto, the Plaintiffs discussed, reviewed and sought advice and received input from Mr. Miller, under an expectation of there being an ongoing counsel relationship, regarding these very issues, including key terms of the client agreement letter, fees and financial arrangements and issues that could arise related to contingent and hybrid arrangements.

12

<u>Mr. Ellner and Lightbox Have In House Counsel Review and Participation</u>

57.　Mr. Ellner being an experienced businessperson, Wharton Grad, former global Lehman executive and sophisticated litigant and Lightbox being a global real estate venture, it was not surprising that Mr. Ellner and Lightbox carefully negotiated the agreement for services with the Moldovsky Firm, and that Lightbox had in-house counsel, including Jill Ellner, review the agreement.

58.　All of Lightbox's agreements with the Plaintiffs (and other contracts) were presumably reviewed at the time by Lightbox's own in-house counsel Jill Stein and Jill Ellner, who were both trained as attorneys and held out by Lightbox as attorneys for it and Mr. Ellner (<u>see</u>, Email RE: "Andy's Angels" Ex. "F"), though it was later discovered that neither was a practicing attorney at the time, which may have caused them to misconstrue the agreement and amended agreement,  and which may have been  unauthorized practice of law pursuant to NY Jud. Law §§ 478 and 484, which is punishable as a misdemeanor or felony pursuant to NY Jud. Law §§ 485 and 485-a.

59.　Jill Ellner, in particular exercised power, control, influence, direction, counsel, etc. over the Lightbox and its activities, legal included, which is expected to be developed further in discovery, but appears to include her involvement, direction, etc. in Lightbox's activities as stated and complained of herein.

60.　Jill Ellner was also involved in drafting and reviewing affirmations submitted to the Court and some of which included misrepresentations.

61.　This includes an affidavit submitted to Judge Cannataro signed by Jill Ellner that describes conversations she allegedly had with Brem Moldovsky related to the agreement and Lightbox's litigation budget that actually never occurred.

13

62.     It stands to reason that when Lightbox and Mr. Ellner make allegations about the Moldovsky Firm's agreement, Jill Ellner knows the allegations are false, but assists in perpetuating them for the purpose of being abusive, to harass, to be in line with Mr. Ellner and as plead herein.

<u>Mr. Ellner's Purposeful Misrepresentations About the Expert Report Are Uncovered</u>

63.     After being retained on the matter, entering appearance and working on the case, it became clear that regarding the expert witness, Lightbox, and Mr. Ellner had misrepresented central issues regarding the already retained expert report by Lan Nguyen of Anvil Advisors in New York City.

64.     Lightbox and Mr. Ellner failed to disclose, hid, misrepresented and omitted various serious issues that were clearly known to Mr. Ellner and Lightbox's counsel.

65.     Mr. Ellner and Lightbox were clearly made aware of the issues by the expert, who had had strongly and clearly previously expressed same to Mr. Ellner and Lightbox and the details of which can be further elaborated as appropriate.  Mr. Ellner and Lightbox concealed, hid, misrepresented and did not disclose such reservations and challenges to the Moldovsky Firm.

66.     Mr. Ellner made these misrepresentations and omissions over the course of several conversations.

67.     Mr. Ellner retained a second expert witness, Mitch Rencher, a qualified expert and attorney.  When it became clear that Mr. Rencher's report would have the same deficiencies as Mr. Nguyen's – related to, relying on and the fault of Mr. Ellner, Mr. Ellner attacked Mr. Rencher as well, caused issues with payment and worked to undermine him which played out in the Report being rejected by the Court.

68.     When it became clear during the deposition of 3rd Home's expert that there were additional damages that could be sought, Mr. Rencher was not engaged further to opine and no funds were allocated to do so.  Judge Cote later found that Lightbox could have presented those damages and that this failure ultimately hurt Mr. Ellner's case and the expert's work. (Lightbox Ventures, LLC v. 3rd Home Limited, Not Reported in Fed. Supp., 2017 WL 2017 WL 5312187 at 13 (2017)).

## MR. MILLER'S REPRESENTATION OF LIGHTBOX AND MR. ELLNER IN NEW YORK SUPREME COURT LITIGATION AND ENSUING COLLUSION WITH LIGHTBOX IN THE FALL OF 2017 – SPRING 2018

### Mr. Miller is Referred to Lightbox in About the Fall of 2017

69.     When Lightbox and Mr. Ellner found that they needed Counsel to take over representation in the New York Supreme Court litigation initiated by former counsel SMZ (which is ongoing, Scarola Malone & Zubatov, LLP v. Lightbox Ventures, et al., NY. Supp., 651324/2017), the Plaintiffs reached out to Mr. Miller and raised the possibility of Mr. Miller being Counsel and working in conjunction with the Plaintiffs to represent Lightbox in both New York forums.

70.     Plaintiffs assisted with setting up the working relationship between Mr. Miller and Lightbox in the State matter,  provided counsel regarding the State matter, and Mr. Miller provided counsel on the Federal matter though each the Plaintiffs and Mr. Miller only entered their appearance in one matter each for Lightbox: Plaintiffs in the Federal matter and Mr. Miller in the State matter (with Mr. Miller entering the Federal litigation only after the Moldovsky Firm withdrew and the disputes of Lightbox against the Moldovsky Firm and Mr. Miller against the Moldovsky Firm surfaced in the late Spring of 2018).

71.     Mr. Miller assisted with this firm's work with Lightbox and positions and claims as between this firm and SMZ.

72.     In essence, Plaintiffs were referring Lightbox to their own lawyer for Lightbox to utilize and Lightbox was made aware that Mr. Miller had represented the Plaintiffs in prior litigations and had an ongoing relationship with the Plaintiffs.

73.     Mr. Moldovsky made clear and explained to Mr. Ellner – who acknowledged - that Mr. Miller had been and ongoing was a personal and family attorney to Mr. Moldovsky and his family, as well as a friend, colleague  and someone in the same small firm set up with which Mr. Moldovsky exchanged advice, including regarding running and managing a small law firm.

74.     The Plaintiffs' reasonable belief was that Mr. Miller would not breach his duties to his client and betray his friend and colleague by using knowledge gained in his representation of the Plaintiffs to Lightbox's benefit against the Plaintiffs.  However, as described herein, this turned out not to be true.

<u>Mr. Miller and Mr. Ellner's Childhood Relationship</u>

75.     Once Mr. Miller and Mr. Ellner became introduced, they discovered they had known one another previously.

76.     Upon information and belief, Mr. Miller and Mr. Miller had been childhood acquaintances or friends, and have since resumed this relationship and grown it.  Part of this is that it is believed that Mr. Miller has been more active for Mr. Ellner and Lightbox than all or almost any other client.  This of course was part of the motivation to betray and be disloyal and undermining to Plaintiffs on behalf of a more attractive client and relationship.

16

Case 2:21-cv-06492-JLR Document 23 Filed 03/24/25 Page 48 of 364

Disagreement with Mr. Miller Regarding His Input into the Southern District Litigation

77.     As the Plaintiffs worked in conjunction with Mr. Miller, it became apparent from time to time that there were disagreements as to strategies, approaches, and litigation styles.

78.     There were concerns raised by this firm about Mr. Miller's representation at the time, including ethical concerns about some of Mr. Miller's approaches, tactics, treatment of others and such.  Apparently, this led to some animus by Mr. Miller against this firm, which was stoked further by the conflict with Lightbox.

79.     It was later discovered that there were similar concerns raised related to the New Jersey matter that Mr. Miller had been involved in, but Mr. Miller still had not disclosed the truth of that matter.

## LIGHTBOX AND MR. ELLNER NEGOTIATE THE AMENDED AGREEMENT WITH THE MOLDOVSKY FIRM IN THE FALL OF 2017

80.     Following the Decision and Order of the Federal Court on the Summary Judgement Motions dated November 22, 2017 (Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC), 2017 WL 5312187 (S.D.N.Y. Nov. 13, 2017)), the Moldovsky Firm raised with Lightbox and Mr. Ellner that based on its investigation and the facts of the case and circumstances as they were becoming better known upon investigation and work, and in light of the Decision and Order, that pursuant to clause 10 (a) and 14 of the Agreement that based on the case lacking sufficient and lawful grounds and reasonable opportunity for worthwhile economic recovery that the Firm was no longer required to work on the matter under the Agreement's terms.  Accordingly, from thereon, either normal hourly rates would have to be paid or the fee agreement would have to be amended if Lightbox and Mr. Ellner wished to proceed with the firm in that matter.

17

81.     Mr. Ellner and Lightbox wished to proceed, and wished to do so with the Moldovsky Firm.

82.     Mr. Ellner and Lightbox were instrumental in negotiating and proposing terms of the Amended Agreement and ultimately agreed to and accepted the Amended Agreement for Legal Services on or about December 12, 2017.

83.     This is when the issues that give rise to this immediate matter were taking root.

84.     Mr. Ellner resented that he was not being treated like he thought he should be, even though this firm was doing its best and achieving good results under the circumstances. Mr. Ellner was mad that the terms of the agreement were enforced and that he would have to be paying more than he liked as the litigation continued.

85.     Over time, malice developed from this and Mr. Ellner already had this deep anger and malice toward Third Home's Mr. Shealy and to SMZ's Mr. Scarola and he developed it more deeply and perhaps moved somewhat from them and onto the undersigned where it has remained, and has been stirred, amplified, weaponized by the Ellners, Lightbox and Mr. Miller.

86.     Mr. Miller apparently, in retrospect, was taking cues from his role in the Kopel litigation in some of his proposed strategies and steps, some of which the Plaintiffs raised as problematic and concerning.

87.     Mr. Ellner had animosity toward the undersigned that developed out of about different approaches in the litigation, trying to resolve, the raising of some personal conflicts in that the Plaintiffs did not tolerate the abuse of others and that Mr. Ellner and Mr.

Miller were uncomfortable with this and more, and this animosity was deepened when the undersigned withdrew, as described below.

<u>Mr. Miller and Mr. Ellner Work in Concert to Undermine the Moldovsky Firm and Cause Strategic and Communication Difficulties in 2017 – 2018 Beginning with Colluding Against the Plaintiffs in Negotiations Related to the Amended Agreement Between Lightbox and the Moldovsky Firm And Onward</u>

88.    Mr. Miller, as counsel for Lightbox in this state court litigation was not only aware of and in touch with Lightbox about the Amended Agreement, but he actually provided counsel and drafted paperwork to help secure the Moldovsky Firm's fees thereunder (even as he also represented Lightbox), particularly considering SMZ'S position and that Lightbox at the time wanted the Moldovsky Firm to be paid and to feel secure it would be paid.

89.    Even as he did so, it is understood and believed that Mr. Miller was involved and colluding with Mr. Ellner and convincing Mr. Ellner and Lightbox that the Plaintiffs' intentions and motives were contrary to Lightbox's interests.

90.    Thereafter, the relationship between the undersigned and Mr. Ellner began to strain, there were differences in opinion about certain strategies, and communication became difficult.  Still though, until the failures to pay in the Spring of 2018, it was believed that Mr. Ellner would pay his bills – if even out of honor, ego and such – even if there were some tensions.

91.    At various times in the representation the Moldovsky Firm advised the client of approaches involving less time and work and the clients insisted upon approaches involving more time and work.

92.    This was even though this firm advised that doing more work in various instances would not likely lead to any better result.

93.    The clients persisted, insisted and directed that they be followed.

94.     Often the clients expressed that they knew, understood and could handle any extra costs associated with doing things their way even if it meant spending on time and costs beyond what a reasonable business perspective of the value of the case would warrant.

95.     The clients expressed they were pursuing what they perceived to be justice and they would and could spend what they wanted to try to achieve justice.

The Moldovsky Firm Proceeds to Trial and Largely Prevails on Behalf of Lightbox in April 2018

96.     Ultimately, while being represented by the Moldovsky Firm, Lightbox and Mr. Ellner prevailed on most the claims in the case and was awarded damages, the right to be paid fee-shifting attorney's fees and costs and payment-based on sanctions.  It could have lost the case and been liable for hundreds of thousands of dollars and significant attorney's fees, interest, statutory penalties and more.

97.     Judge Cote found Lightbox liable for one count of cybersquatting and made additional findings about the aggressive tactics of Lightbox and Mr. Ellner in her Trial Order in early 2018.

98.     Judge Cote found Mr. Ellner to be a "foolhardy" litigant (Lightbox Ventures, LLC v. 3rd Home Limited, Not Reported in Fed. Supp., 2018 WL 2943742 at 3 (S.D.N.Y. 2018) who sought to "cage" their adversary (Lightbox Ventures, LLC v. 3RD Home Limited,. Not Reported in Fed. Supp., 2016 WL 6562107 at 5 (S.D.N.Y. 2016).  Mr. Miller, seemingly finding a similarly aggressive client who he commiserated with, undermined the Plaintiffs in the perverse pursuit of ill-conceived justice.

The Court Allows the Moldovsky Firm to Withdraw as Counsel to Lightbox in the Southern District of New York in April 2018

99.     In early 2018 Lightbox and Ellner continued to be difficult in communication and at odds on various strategies with this firm while also failing to pay as

20

agreed which lead to the Plaintiff Firm motioning the Federal Court to be withdrawn as counsel

and Judge Cote granting this upon the issuance of Judge Cote's trial order.

100.    Some time thereafter, Mr. Miller on behalf of Lightbox began to raise

issues against this firm, and, upon information and belief, Mr. Miller was acting in conflict

against Plaintiffs in advising and counseling Mr. Ellner and his companies at points and

continuously from late 2017 through the Spring of 2018 – in particular in the late Winter and

early Spring of 2018 (and ongoing) - regarding Lightbox's making and raising hollow, false and

unfounded fee and billing issues against Plaintiffs, including among which are those which Judge

Cote found do not make out even a prima facie allegation of attorney wrongdoing.

### INEVITABLE CONFLICTS WITH MR. MILLER ARE RAISED BY PLAINTIFFS IN 2018 AND SPARK ANIMUS THAT CONTINUES TO THIS DAY

101.    Plaintiffs could see, sense and understand inherently and generally that

conflicts of interest that were the natural consequence of Mr. Miller litigating against Plaintiffs

were in play and activated by Lightbox litigating  against Plaintiffs with Mr. Miller as their

spearhead, including on issues for which he had represented this firm related to were at play and

likely to arise since Mr. Miller and Mr. Ellner would and did raise and attack on, even if the

Courts fortunately saw through their various, sordid and extraneous attacks against the

undersigned as Judge Cote focused on awarding the Moldovsky Firm a charging lien of $45,948.

00 and Judge Cannataro holding that the main issue as between Mr. Ellner and the Moldovsky

Firm is whether at trial there was or was not legally sufficient objections to the Moldovsky

Firm's still unpaid invoices.

102.    Plaintiffs raised the conflicts of interest with Mr. Miller.  Unfortunately,

and, as something of a prelude to what was to come, Mr. Miller became hostile, aggressive,

21

retaliatory, and attacking, rather than acknowledge the conflicts and acting appropriately and ethically accordingly.

103. Mr. Miller acted with hostility, anger, vitriol and derogation toward this firm, again, characterizing what was to come, what has already come to pass and more of which can be avoided or at least limited by granting injunctive relief estopping Mr. Miller from representing against the Plaintiffs and not being allowed to file related to Plaintiffs without Court permission to the extent this Court has the ability to do so and finds this appropriate here (to be addressed further below).

104. The colleague and friendly relationship with Mr. Miller that had continued for approximately four year definitively ended at this time, in the Spring of 2018, without the Plaintiffs even learning the truth about Mr. Miller's misrepresentations about his problematic activities at the center of his difficulties in New Jersey.

105. Mr. Miller thus then continued on with great zeal and malice and has used the veneer of litigation fueled by a dissatisfied litigant (Lightbox – already litigating with SMZ and also Third Home) against Plaintiffs related to legal fees and the agreement between Plaintiffs and Lightbox to engage in a vendetta against the Plaintiffs, which manifested even further conflicts and problems in direct conflict of interest under the Pennsylvania (and New York) Rules of Professional Conduct.

106. The Ellners and Lightbox, now aided and abetted by Mr. Miller's malice, bitterness and jealousy, concocted the knowingly false allegations about the Plaintiffs' agreement and amended agreement letters rooted in their own misconceptions about them from Jill Ellner's faulty review and analysis that have been a driving force behind much of Defendants' malicious abuse.

22

107.    This unauthorized practice of law by Lightbox and Jill Ellner – aided and abetted by Mr. Ellner - has acted to misunderstand, misconstrue, misguide and drive the Defendants in the various actions complained of herein, to the extent logical and inferred, so that much of the damages plead herein was caused by this.

### Mr. Miller Makes Retaliatory Threats to Reveal Confidential Information

108.    Mr. Miller maliciously conveyed that if the Plaintiffs  continued to raise issue with Mr. Miller's conflicts of interest that Mr. Miller would use the processes on behalf of Lightbox to make things purposefully difficult and hard for the Plaintiffs.

109.    Mr. Miller has made good on his threat by acting and continuing to act in an attacking, enemy-like, hostile and unprofessional manner towards Plaintiffs as part of his follow-through to make things difficult for Plaintiffs and to punish Plaintiffs for daring to raise that there are conflicts of interest issues, including but not limited to making up false, overblown and inaccurate attacks against Plaintiffs, using their sensitive information against them and the various other conduct as plead herein.

110.    The malicious prosecution as described below, specifically in initiating and carrying on with many false proceedings which were successfully terminated, was essentially carrying out the vendettas and malice of Mr. Miller and Mr. Ellner.

111.    The Defendant acted for purposes including greed, profit, malice, to wrongfully punish and abuse, enrichment, and/or to do favor or benefit Lightbox and themselves per the facts as plead and as occurred.

**MR. MILLER'S ENTRY AS COUNSEL FOR LIGHTBOX IN 2018 POST-TRIAL IN OPPOSITION TO HIS FORMER CLIENT AND COLLEAGUE TRIGGERS HIS CONFLICT WITH HIS FORMER CLIENTS, PLAINTIFFS, AND CURRENT CLIENTS, LIGHTBOX AND MR. ELLNER**

<u>Mr. Miller's Conflicts Based on the Substantial Relation of the Lightbox Litigation with the Subject Matter of his Prior Representation of Plaintiffs</u>

112.     Mr. Miller on behalf of Lightbox received permission from Judge Cote to file an Interpleader Complaint to resolve the statutory charging liens of the Moldovsky Firm and SMZ.

113.     Mr. Miller's conflicts of interest based on his prior representation of the Moldovsky Firm began to come to fruition.

114.     The matters in which Mr. Miller acted as co-counsel with the Moldovsky Firm in 2015-2016 were about issues and damages that Mr. Miller and Mr. Ellner would argue were substantially related to many of the same prime issues in the current fee dispute with Lightbox and Mr. Ellner in the Supreme Court, and with the prime issues that were anticipated (and ultimately were) raised in the Interpleader Complaint – breach of contract and misrepresentation resulting in  the Moldovsky side suffering losses and damages of loss of the Moldovskys' attorney and legal professional time, the law firm's legal and professional time, and seeking compensation based on its value.  Even though the Courts determined these issues generally to be extraneous and thus found no attorney misconduct but also generally did not see the need to disqualify.

115.     However, it was correctly anticipated that Lightbox would be and has been severely and unfairly advantaged by their counsel's prior representation of Plaintiffs, which has been shown to be true.

116.     Aside from both involving the Plaintiffs primarily, the claims between the Moldovsky Firm, Mr. Ellner and Lightbox involved the same types of claims, damages and relief

requested as in the prior cases for which Mr. Miller represented the Plaintiffs and was provided

with and/or made privy to attorney client privileged and confidential knowledge and information

about the Moldovsky firm.

117.    Mr. Miller knowing just how these same claims, allegations, damages,

relief requested, discovery work and planning were plead, developed, and planned,  and their

evidentiary basis, proofs, and backings along with information of likely attacks by the other side

and planning for responses and, how to deal with the issues through intricate and detailed

contractual litigation discovery, forensic and economic experts and other such considerations

(and so much more) has proven to be immensely and prejudicially beneficial to Lightbox and

unfair to Plaintiffs as described herein.

### Mr. Miller's Conflicts of Interests with Lightbox and Mr. Ellner

118.    Mr. Miller has also been busy entangling his clients in active, ongoing and

expensive litigation that has already become overburdened due to problems associated and

resulting from Mr. Miller's conflicts, which were foreshadowed above and will be further

elaborated below.

119.    Lightbox and Mr. Ellner were made aware of the conflicts of interests

between Plaintiffs and Mr. Miller,  and with Mr. Miller's guidance has persisted in utilizing the

services of Mr. Miller and not seeking unconflicted Counsel, and in pushing Mr. Miller to further

breach his ethical duties and maliciously abuse his former clients.

### The Moldovsky Firm's SDNY Motion to Disqualify Mr. Miller as Counsel for Lightbox

120.    The Moldovsky Firm moved to disqualify Mr. Miller as counsel for

Lightbox and Ellner and in response and at various times Mr. Miller made threats to release

confidential information and to some extent did, in violation of Pennsylvania Rules of

Professional Conduct 1.6 and 1.9.

### LIGHTBOX'S JUNE 20, 2018 SANCTIONS REQUEST IN THE SOUTHERN DISTRICT

121.     In relation to the Moldovsky Firm's Motion to Disqualify Mr. Miller as

counsel to Lightbox on the basis as stated above, Mr. Miller sought Rule 11 sanctions against the

Moldovsky Firm.

122.     Judge Cote did not grant the motion to Disqualify Mr. Miller, since the

matter before her was to be limited to a charging lien.  Neither did she grant sanctions.

### MR. MILLER FILES LIGHTBOX'S 250 PARAGRAPH FALSE, ABUSIVE INTERPLEADER PROCEEDING CONTAINING DEFAMATORY ALLEGATIONS OF FRAUD, COERCION, MISCONDUCT, RULE VIOLATIONS, ETC. THAT WAS DETERMINED BY THE FEDERAL COURTS IN 2018 AND AGAIN 2020 IN ITS ATTACKS AGAINST THE MOLDOVSKY FIRM TO BE UNFOUNDED, MERITLESS AND IRRELEVANT

Lightbox and Ellner's Claims are Largely Based on Purposely False Distortions and Misrepresentations About the Agreement and Amended Agreement and Lightbox Through Miller Makes Numerous Untrue and Defamatory Allegations Including of Fraud, Deceit, Billing Schemes, Blackmail and Extortion That Are Ultimately Dismissed As Baseless, Meritless and Unfounded

123.     Lightbox filed its vast and wildly unauthorized Interpleader Complaint on

July 3, 2018 intended ostensibly to determine the statutory charging liens due to Brem

Moldovsky, LLC and prior counsel SMZ from the proceeds of the 3rd Home matter.

124.     The Interpleader was premised on purposeful misrepresentations about the

Moldovsky Firm's Agreement and Amended Agreement with Lightbox, and said

misrepresentations were a basis for Lightbox's arguments in favor of not awarding the

Moldovsky Firm a statutory charging lien and disgorging the fees the Moldovsky Firm had been paid by Lightbox related to the litigation.

125.    Lightbox and Ellner created a wrongful caricature of Plaintiff Brem Moldovsky by misrepresenting that the Agreements were extorted, that they enabled a wrongful retroactive billing scheme, that Mr. Ellner was emotionally blackmailed into accepting the amended agreement and other mistruths.

126.    Lightbox and Ellner created a wrongful caricature of Ellner by misrepresenting that he is a legal neophyte, barely capable of understanding the agreements be negotiated.

127.    The Interpleader action was rife with false, malicious, and libelous allegations of fraud, extortion, usury, ethical violations, fraudulent billing, misconduct, and abuse by the Plaintiffs.

128.    This was particularly inappropriate since Judge Cote had ordered the Interpleader Complaint to proceed on the narrow issue of resolving statutory charging liens as to two law firms.

129.    Bringing additional claims when Lightbox sought permission on a motion to reargue to have statutory charging liens set as to amount and priority was malicious and an abuse of process for an ulterior motive.

130.    They brought and alleged many additional claims and attacks way beyond what they indicated when they sought permission and on a motion to reargue to have charging liens set.  They were only allowed to bring the claims as to determinations of amount and priority

131.    Judge Cote dismissed all of Lightbox's causes of action unrelated to the determination of the statutory charging lien as beyond the scope of what was allowed, but she

considered all of their attacks about misconduct, fraud and anything that if true could interfere with the award of an attorney charging lien.

<u>Judge Cote's October 22, 2018 Statutory Charging Lien Award Determines the Moldovsky Firm's Deportment was Professional and Bars Misconduct and Malpractice Allegations</u>

132.    Judge Cote totally rejected the false, made up, exaggerated, misconstrued, etc. allegations of Lightbox by Mr. Miller against the Plaintiff firm as not even worthy of a cause hearing and as not even making a *prima facie* case of their positions.

133.    Judge Cote Ordered that Brem Moldovsky, L.L.C. was entitled to a charging lien of $45,948. 00.  Judge Cote further found that this firm succeeded on behalf of Lightbox against Third Home on all that was possible, the firm's rates were reasonable, and that this firm comported itself appropriately.

134.    With all the vast submissions by Mr. Ellner and Mr. Miller, including an allegedly damning (though it is not) and illegally recorded taped phone call between Mr. Ellner and Mr. Moldovsky on Thanksgiving Day, there was no legitimate issue raised by them.  Though their causes of action had been dismissed as not appropriate and not belonging, all of their 244 paragraphs and 50 pages of generally wild, made up, purposefully distorted, falsely demeaning, etc. allegations and more than 25 pages of exhibits were considered and rejected by Judge Cote.

135.    Judge Cote made findings and Decision in her 2018-10-22 Memorandum Opinion and Order RE: The Interpleader Complaint (Exhibit "A" hereto) that are *Res Judicata* and Collateral Estoppel here, including that:

          a.   Lightbox and Mr. Ellner failed to adequately state any prima facie allegations of "wrong" (also known as cause).

          b.   As such, the Agreement and Amended Agreement were deemed enforceable, and Brem Moldovsky, L.L.C. has a right to seek to

recover on contractual claims, account stated, Quantum Meruit, etc., to which

Lightbox are not entitled to any set-off nor do they have any other claims;

        c.  "The hourly rates asserted by Lightbox's former counsel

are reasonable." (2018-10-22 Memorandum Opinion and Order at 10.);

        d.  Neither counsel was discharged for cause. (2018-10-22

Memorandum Opinion and Order at 10);

        e.  Brem Moldovsky, L.L.C. comported itself professionally.

(2018-10-22 Memorandum Opinion and Order at 10);

        f.  Brem Moldovsky, L.L.C. did not breach its contract with

Lightbox and Mr. Ellner or commit fraud or otherwise comport itself in such a

way that required a cause hearing. (2018-10-22 Memorandum Opinion and

Order at 10-11); and

        g.  Brem Moldovsky prevailed on Lightbox and Mr. Ellner's

claims (2018-10-22 Memorandum Opinion and Order at 12-13).

    136.   Defendants, therefore, should be stopped from raising any such allegations

as defenses or in any additional litigation, and should be barred by doing so without the explicit

permission of the Court by permanent injunctions.  This is all the more so since the Second

Circuit Court of Appeals affirmed Judge Cote's Decision and Findings.  Still though, as

expressed below, this has not stopped them from attacking, alleging, initiating proceedings and

seeking sanctions based on the same false and outrageous allegations which were rejected as

unfounded.  This is the malicious prosecution.

## THE MOLDOVSKY FIRM IS BROUGHT IN AS A DEFENDANT IN THE
## NEW YORK SUPREME COURT MATTER BY PLAINTIFF SMZ IN
## SEPTEMBER 2018

Anticipated Additional Aspects of Miller Conflict Comes to Fruition

137.     On September 26, 2018 SMZ Amended its Complaint to include the

Moldovsky Firm as co-Defendants along with Lightbox and Mr. Ellner in their New York

Supreme Court litigation for attorneys fees.

138.     Mr. Miller with the Ellners and Lightbox thus then continued on with

great zeal and malice and has used the veneer of litigation representing Lightbox against this

firm related to legal fees and the agreement between clients and counsel fueled by a dissatisfied

litigant to engage in a vendetta against the undersigned and this firm, which manifested even

further conflicts and problems in direct conflict of interest under the Pennsylvania and New York

Rules of Professional Conduct.

139.     Mr. Miller refused any phone dialogues mainly because he did not like the

undersigned's raising of conflict of interest due to Mr. Miller's obsessive and vehement denial of

his conflicts of interest.  Numerous times Mr. Miller has referred to the conflicts of interest

raised by the undersigned as the product of hallucination and derangement, and Mr. Miller has

continued to similarly disparage and discredit the Plaintiffs ever since, even though Mr. Miller is

very familiar with the expert reports supporting the claims of legal malpractice, breach of

fiduciary duty and ethical misconduct against him.

Mr. Miller Exposes Sensitive Information and Threatens to Expose More

140.     Mr. Miller has acted and continues to act in an attacking, enemy-like,

hostile and unprofessional manner towards Plaintiffs as part of his follow-through to make things

difficult for Plaintiffs and to punish Plaintiffs for daring to raise that there are conflicts of interest

issues, including but not limited to making up false, overblown and inaccurate attacks against Plaintiffs, using their sensitive information against them and the various other conduct as plead herein.

141.    The Defendant acted for purposes including greed, profit, malice, enrichment, and/or to do favor or benefit Lightbox per the facts as plead and as occurred.

142.    At various times Mr. Miller made threats to release confidential information and to some extent did, in violation of Pennsylvania Rules of Professional Conduct 1.6 and 1.9, including by purposely filing more of the prior Pennsylvania litigations and thus revealing and bringing to the public and Mr. Ellner more confidential information than was necessary for the purposes of defending against the motion to disqualify him in the New York Supreme Court.

143.    Mr. Miller fabricated that the Plaintiffs said negative things about or involving Mr. Ellner in transcribed phone call(s) that he threatened to release, but never did - because they do not exist.

144.    Lightbox and Mr. Ellner have admitted to having had access to confidential and sensitive information about Plaintiffs that is detrimental and in violation of the rules of attorney ethical and professional conduct. (see, Lightbox's excerpted memorandum in the prior Bucks Case (ECF Doc. #59), Exhibit "G" at Suggested Answer "B".)

Mr. Miller Utilizes His Knowledge of the Plaintiffs' Confidential and Sensitive Information from his Prior Representation to Attack the Plaintiffs' Vulnerabilities on Behalf of Lightbox

145.    In part, Mr. Miller knows from discussing with Plaintiffs that some vulnerabilities lie in time management, usage of staff and attorneys and rates of pay, advertising and marketing, value of time and time as a marketable good, limitations, and other aspects of management and small law practice.

31

146.     Mr. Miller's representation included lawyering in various capacities on the Moldovskys' claims of misrepresentation and breach of contract with damages and losses including loss and waste of time - of attorney, paralegal and legal professional time, seeking relief and compensation of payment of the value of the professional fees based on Brem Moldovsky, LLC.'s billing, legal fees, value of professional hours and related.

147.     As had been anticipated when the Moldovsky Firm motioned to disqualify Mr. Miller in the Southern District of New York, his involvement and knowledge did make matters much more difficult, expensive and overburdened by false and wasteful issues.

<u>The Moldovsky Firm's New York Supreme Court Motion to Disqualify Mr. Miller as Counsel for Lightbox</u>

148.     Because Mr. Miller remained conflicted, the Moldovsky Firm moved to disqualify Mr. Miller as counsel for Lightbox and Ellner in the New York Supreme Court matter.

149.     Mr. Miller opposed the motion by submitting an affirmation that distorted the truth and makes misrepresentations, including about the nature of his role as counsel to Plaintiffs, the knowledge had had gained during his representation, and, oddly, how long he had represented Lightbox against the Moldovsky Firm.

150.     Mr. Miller additionally cited to two exhibits in his claim that attorney work product has been revealed to his clients' detriment,  further evidence of the serious conflict of interest issues raised in the Firm's motion to disqualify Mr. Miller.  One such document is an email exchange between counsel with no reference or implied relation to Mr. Miller's current clients, this matter, the Federal case, the Scarola firm or Mr. Miller's strategy in this matter, and which occurred long before there were any claims by or against this Firm by Mr. Miller's current clients.

151. Judge Cannataro denied that motion, mis-citing to Judge Cote's decision regarding the substantial relationship between the fee dispute and the prior Bucks County matters.

152. Both Courts had determined that their relatively straightforward litigations (the first narrowly focused on a statutory charging lien and the second on attorneys' fees disputed against Lightbox) were not likely to impose any prejudice on Plaintiffs.

## BASELESS AND MERITLESS 2ND CIRCUIT APPEAL TAKEN BY LIGHTBOX IN 2018

Second Circuit Briefing Includes Allegations of Attorney Misconduct, Fraud, Extortion, Blackmail, Duress, Deceit, Collusion, Defamation, Misconduct Violative Of Multiple Rules Of Professional Conduct, Statutes, And Laws And More

153. Lightbox and Mr. Ellner, not satisfied with Judge Cote's Statutory Charging Lien Award, filed a baseless appeal of Judge Cote's award of a charging lien to Brem Moldovsky, L.L.C.

154. The briefing on the appeal drafted by counsel Jonathan Miller, Esq. and Alexander Fink, Esq. and reviewed and approved, it is understood and believed by Lightbox's in-house counsel including Jill Ellner contained the same purposefully malicious and false misrepresentations about the Moldovsky Firm's Agreement and Amended Agreement and more.

155. The briefing also included the same false and defamatory allegations of fraudulent billing, attorney misconduct, fraud, extortion, blackmail, duress, deceit, collusion, defamation, misconduct violative of multiple rules of professional conduct, statutes, and laws and more.

156. What the briefing did not include was any actual dispute as to the application of law by Judge Cote.

<u>Ongoing Excessively Disruptive, Aggressive, Venomous, Frivolous Litigation and Comportment</u>

157.   The Second Circuit Court of Appeals proceedings were fraught with the same type of obstructive, time wasting, disruptive and abusive conduct as the matters that had come before with the intention of wasting attorney time, wasting law firm time, wasting resources, and causing harm to Plaintiffs.

158.   Lightbox maliciously and without basis sought to supplement the record with extraneous material from the Trial Court and Pennsylvania in support of their appeal, and submitted a Reply brief containing allegations about the Bucks County, PA matter and a further requested leave to provide a supplemental appendix of materials.  Lightbox did so in a Reply brief knowing that it was a vehicle that could be wrongfully  misused to bring in unrelated and new issues that were not related to the appeal and that the Plaintiffs (here) had no ability to respond to as a further perversion of process with the intent to wrongfully ambush, abuse, harm and harass Plaintiffs.

159.    The Moldovsky Firm Moved to Strike the references to the Pennsylvania matter from Lightbox's brief, which was denied – meaning allegations similar to those made in the current PA complaint were considered by the Second Circuit and later again by New York State Trial and Appellate Courts and now in the Federal District Court for the Eastern District of Pennsylvania.  Again, on yet another issue, they continue to litigate on and on based on already adjudicated and lost allegations and proceedings.

160.    On March 10, 2020 Mr. Miller wrote a letter to the Second Circuit seeking permission to play "smoking gun" telephone recordings as a part of Lightbox's oral argument presentation, presumably to waste time and harass the Moldovsky Firm with the threat of using alleged phone call recordings that the Moldovsky Firm was not in possession of (the request was denied).

161.     Lightbox also made a blatant lie to the 2nd Circuit Court of Appeals wherein Lightbox Ventures LLC's position that there was only a single unpaid invoice just 3 days past due – a lie undermined by its own words in Mr. Ellner's April 9, 2018 Opposition to the Moldovsky Firm's Motion to withdraw, wherein Mr. Ellner writes that the withdrawal is about two bills, one from the prior month and one from the week before.

162.     Lightbox's obstreperousness was noted by Judge Eaton, who noted at oral argument to Mr. Miller that Lightbox and Mr. Ellner just disagree with Judge Cote but lack basis for the appeal.

163.     Lightbox and Mr. Ellner persisted in the malicious prosecution by opposing a standard bill of costs based on a frivolous basis, forcing the Plaintiffs to litigate more than necessary for a $640 award of costs by the Second Circuit Court of Appeals, which Lightbox has since failed to pay.

## LIGHTBOX PERSISTS IN FRIVOLOUS, MALICIOUS, AND DEFAMATORY LITIGATION IN THE NEW YORK SUPREME COURT FROM 2019 THROUGH THE PRESENT

164.     Following Judge Cote's Charging Lien Decision and while the Second Circuit Appeal was ongoing, Mr. Miller and Lightbox engaged in a kitchen sink offensive against the Moldovsky Firm that was be based on frivolously and maliciously abusing the Court, abusing process and abusing Plaintiffs and wasting time by relitigating the same issues that had been adjudicated by Judge Cote and were being considered by the Second Circuit across a variety of courts in an almost boundless number of filings in order to waste time, disparage and frustrate Plaintiffs, harm Plaintiffs' reputation and business, drain and waste Plaintiffs' resources and generally wear Plaintiff down in order to avoid paying legal fees and attempting to extract as much as it could from Plaintiffs.

165.    The Moldovsky Firm first served an Answer, Counterclaims, Crossclaims and 3rd Party Action in response to SMZ's Amended Complaint on February 1, 2019 that included claims against Lightbox largely related to Lightbox's breaches of the agreements for legal services, account stated, and piercing the corporate veil.

166.    Lightbox responded by filing a motion to strike/replead that was completely frivolous and not allowable under the CPLR just to waste time and resources on February 19, 2019.

167.    The trial Court denied Lightbox's motion to strike on July 8, 2019, and Lightbox moved to dismiss the Moldovsky Firm's Crossclaims on July 19, 2019.

168.    On July 18, 2019, just prior to moving to dismiss the Moldovsky Firm's Crossclaims, Mr. Miller submitted an affirmation pursuant to CPLR § 3011 stating that because the Moldovsky Firm did not demand an Answer, Lightbox was not required to file one.

169.    Lightbox's motion to dismiss was denied on December 18, 2020.

170.    Lightbox, then, on January 17, 202 Lightbox filed an unauthorized "amended answer" with hyperbolic crossclaim allegations that the Moldovsky Firm acted with evil intent, breaching the Agreement, violating ethical rules, and acted coercively, abusively, etc. essentially, a rehash of the already dismissed Interpleader Complaint (e.g. Ex. "A"  at 10, ("Lightbox states or implies that it discharged its former attorneys for cause, but it was adjusted to have failed to have made a prima facie showing that this is true"), and the same allegations that were being briefed before the Second Circuit Court of Appeals, including about the Moldovsky Firm's agreements with Lightbox and billing.

171.     Lightbox's crossclaim put forth five causes of action against the

Moldovsky Firm: disgorgement, declaratory judgment regarding the Moldovsky Firm's

withdrawal as counsel, two violations of NY Jud. Law §487, and legal malpractice.

172.     Each cause of action was premised on the same underlying facts as the

federal Interpleader Complaint and thus these allegations were already determined to be baseless,

meritless and irrelevant, but not only did this not stop Mr. Miller and the Ellners from realleging

and attacking based on them, it seemed to actually inspire them to do more of the same, driven

by malice, vengeance, anger, a need to inflict pain and punish, etc.

## LIGHTBOX AND MR. MILLER ABUSE PROCESS IN ORDER TO WASTE TIME AND RESOURSES, CAUSE ENDLESS LITIGATION AND FRUSTRATE AND ABUSE PLAINTIFFS BEGINNING WITH THE FEDERAL INTERPLEADER COMPLAINT AND CONTINUING THROUGH THE PRESENT

173.     In between the more normative motion practice, Lightbox and Mr. Miller

made sure to utilize process to waste the time, energy, and resources of the Plaintiffs by engaging

in nearly endless litigation, sharp practice, and unrelenting wasteful and malicious attacks.

174.     There has been no shortage of name calling by them, such as "[y]our

incessant, infantile and obsessive recitation of purely hallucinatory "conflict of interest" issues

and purported ethical violations are disgraceful to the legal profession, degrading to yourself,

personally, and render even the most minimal level of professional courtesy and cooperation all

but impossible." (e.g., NY Sup. ECF Doc. # 350 at 59), of this firm and of the plaintiff firm.

175.     This has been coupled with vast violations of the rules and part rules

including but not limited blatant misrepresentations to the Second Circuit; Lightbox's multiple

unauthorized sur-replies (e.g., NY Sup. ECF Docs. # 814, 905), letter motions (e.g., NY Sup.

ECF Doc. #874), pleadings (e.g., NY Sup.  ECF Doc. # 734), last minute and untimely

"amended" and "supplemental" motion materials (e.g., NY Sup. ECF Docs. # 819-821, 886, 889-890 etc.); unwelcomed letters to the Court (e.g., NY Sup. ECF Docs. #818); abuse of process by filing over-night, on weekends, and over holidays (e.g., NY Sup. ECF Doc. # 845); short notice requests for correspondence on a Saturday night with a Sunday afternoon reply "deadline"; regular requests for sanctions; and more.

176.    The abuse includes the almost constant filing of unauthorized sur-replies and letters, including but not limited to:

a.    Mr. Miller's unauthorized March 4, 2019 Sur Reply related to SMZ's motion for summary judgment (NY Sup. ECF Docs ## 340-342);

b.    Mr. Miller's March 25, 2019 unauthorized Sur Reply letter related to the Moldovsky Firm's motion to disqualify him (NY Sup. ECF Doc. # 417);

c.    Mr. Miller's April 2, 2019 unauthorized 745-page letter (NY Sup. ECF Doc. # 428), complaining of "vexatious motion practice" based on the undersigned counsel filing a "739-page motion" in Pennsylvania (which Mr. Miller has attached as Ex, "1" to his letter, NY Sup. ECF Doc. #429);

d.    Mr. Miller's September 10, 2019 unauthorized sur-reply disguised as a letter request for leave to file a sur-reply to the Moldovsky Firm's Motion for Partial Summary Judgment filed by Mr. Miller on behalf of Lightbox and Mr. Ellner (NY Sup. ECF Doc. #637). This letter is particularly and egregiously defamatory and restates and reargues dismissed claims while also making inappropriate attacks about Passover;

e.    Mr. Miller's February 7, 2020 letter sent to complain about the Moldovsky Firm filing its motion to Dismiss Lightbox's Crossclaims without providing Lightbox 3 days to review it for redactions (NY Sup. ECF Doc. # 781). Lightbox hypocritically did not

provide its opposition 3 days in advance, nor did Lightbox provide its unauthorized pleading 3 days in advance of filing. The Moldovsky Firm continued to do redactions pursuant to the protective orders in place related to confidential material. Mr. Miller did not provide any additional redactions;

      f.  Mr. Miller's letter dated February 24, 2020 attempting to relitigate Lightbox's Motion to Dismiss SMZ's claims (NY Sup. ECF Doc. #818);

      g.  Mr. Miller, on behalf of his clients, filing an unauthorized, untimely second Affirmation in Opposition to the Moldovsky Firm's Motion to Dismiss dated February 24, 2020 (NY Sup. ECF Docs. # 819-820) and an "Amended" memorandum of law at 5:14 p.m. on the date the Reply was due, failing to provide unredacted copies until 6:58 p.m. that evening, and never providing a blackline or any indication of the amendments to the memorandum of law;

      h.  Mr. Miller's Affirmation of Service dated February 25, 2020 affirming that he served unredacted copies of unredacted documents at 7:00 p.m. on the due date of the Reply, several hours after they were filed did not deny that he did not give a blackline or any indication of what he changed in the "Amended" Memo;

      i.  Mr. Miller, on behalf of his clients, Affirmed in Reply to Lightbox's Motion to Compel on March 17, 2020 that the Moldovsky firm is " a recalcitrant, oppositional party" who tries "to consume endless hours of the Court's precious time" (NY Sup. ECF Doc. # 888 at ¶ 23). Mr. Miller's caricature and name calling is just another *ad hominem* attack. Footnote 4 of that same document misleads the Court by stating: "Indeed, obfuscation and misdirection seem to be Mr. Moldovsky's primary tools of trade. For example, he filed three separate motions to disqualify me in three jurisdictions, lost all three,

but dropped his related Pennsylvania case against me and my clients like the proverbial hot potato just four days after I served him with initial discovery demands.".  This, of course, was known to be untrue, since the Moldovsky Firm had already stated multiple times that among reasons to not pursue the Pennsylvania case were Mr. Miller's lack of malpractice insurance and Mr. Miller and Lightbox's own argument that the claims belong in this Court; and

          j.    The numerous instances of including new issues and dismissed and inappropriate issues in Reply submissions that the Plaintiffs have no right to respond to was in a twisted and perverse attempt to use process to abuse Plaintiffs.

        177.    This is separate and apart from the many filings made over night, on weekends, and on holidays.

        178.    There have also been almost countless misrepresentations to the Court, including but not limited to misrepresentations about the application of CPLR § 2214(b) to the Court on at least two occasions on February 14, 2020 and the endless lies and misrepresentations about the Moldovsky Firm's conduct in the Southern District representation, all of which were (and are) already dismissed and disproven.

        179.    Lightbox, Mr. Ellner and Mr. Miller should be ordered to cease in their disruptive and purposely abusive filing, and permanently estopped from further filing related to any Plaintiff without court permission.

**PLAINTIFFS' BUCKS COUNTY LITIGATION – AGAINST MR. MILLER FOR CLAIMS RELATED TO HIS CONFLICTS, INCLUDING LEGAL MALPRACTICE AND BREACHES OF FIDUCIARY DUTIES, AND AGAINST LIGHTBOX FOR AIDING AND ABETTING MR. MILLER'S BREACHES AND MALPRACTICE AND FOR VIOLATIONS OF THE PENNSYLVANIA WIRETAP ACT – IS INITIATED IN FEBRUARY 2019 AND DISCONTINUED IN OCTOBER 2019**

<u>Writ of Summons is Served With Pre-Complaint Discovery In February, 2019 Narrowly Aimed at Gathering Information about Lightbox's Violations of the PA Wiretap Act</u>

180.    The Moldovsky Firm initiated the Bucks County Action in 2019 based on Miller's legal malpractice, and violations of the Pennsylvania Wiretap Act (18 Pa. C.S.A. §§ 5701 et. seq., hereinafter the "Wiretap Act") by Ellner and related causes of action by serving a summons along with Pre-Complaint discovery requests (as allowed by Pa. R.C.P. §4003.8(a)).

181.    The Moldovsky Firm and Mr. Moldovsky's Pennsylvania action against Mr. Miller for Malpractice and related claims were certified to have merit by Mr. Samuel Stretton, Esq., a respected Pennsylvania attorney malpractice expert, despite Mr. Miller's inappropriate suggestions otherwise.

<u>The Moldovsky Firm's Pennsylvania Motion to Disqualify Mr. Miller as Counsel for Lightbox</u>

182.    The Plaintiff's moved to disqualify Mr. Miller from representing Lightbox and Mr. Ellner in the Pennsylvania matter prior to the entry of any counsel for Lightbox and Ellner.

183.    Lightbox, Mr. Ellner and Mr. Miller opposed the motion on the basis that Mr. Miller was not representing Mr. Ellner in the litigation, indicating the understanding that Mr. Miller should not represent Lightbox and Mr. Ellner against the Plaintiffs (but did anyway in other forums).

184.    Judge Baldi ultimately denied the motion to disqualify Mr. Miller on the sole basis that he was not entered as counsel.  As stated below, Judge Baldi also indicated that

his denial of that motion had no effect on the Moldovsky Firm's ability to bring malpractice or breach of fiduciary duties claims against Mr. Miller to a jury.

<u>Lightbox, Ellner and Miller Demand a Complaint in March, 2019</u>

185.     Mr. Ellner and Lightbox retained Emma Kline, Esq., of Fox Rothschild to represent them, and both Ellner and Miller filed motions for protective orders to avoid responding to discovery, followed by demands for a complaint.

186.     The Complaint was amended a number of times to clarify issues, add more specificity and then to leave out claims and parties.

## LIGHTBOX AND MILLER'S FRIVOLOUS LITIGATION AND ABUSE CONTINUES IN PENNSYLVANIA

187.     Lightbox, Mr. Ellner and Mr. Miller continued with their bogus and malicious re-litigation of false and dismissed allegations in the proceedings before Judge Baldi.

188.     When Mr. Stretton (who has tried over 1,000 jury trials and is one of the most respected attorney ethics experts in Pennsylvania) sent Mr. Miller a cease and desist letter, Mr. Miller faxed his small firm hundreds of pages, breaking Mr. Stretton's fax machine and tying up the fax line for hours and has engaged in disparaging Mr. Stretton's reputation and professionalism.

189.     Mr. Miller also defamed Mr. Stretton with accusations of being, among other things, "spoon-fed" information, intimating that this experienced expert could not or did not read or think for himself.

190.     Further examples of Mr. Miller's venomous conduct toward the Plaintiffs include disputing his own clients' claims and the need to redact confidential information, and of accusing the Plaintiff law firm's paralegal of unauthorized practice of law because Plaintiffs

dictated (and reviewed) correspondence with paralegal support while away from the office (which was disclosed, and the dictation made clear).

191.     Miller, Lightbox and Ellner additionally asked for sanctions of "attorneys' fees and costs they were forced to incur" pursuant to 42 Pa. C.S.A. 2503(7), Pa RCP Rule 1023.3 and generally for the "imposition of appropriate sanctions" in at least six filings in the Pennsylvania matter, none of which were granted.

### Judge Baldi Recognizes, at an Oral Argument in August 2019, that Claims Could Reach a Jury, and Also that Discovery as to Jurisdiction is Needed

192.     Mr. Miller's continual failure to carry malpractice insurance undermined some of the worthwhile-ness to pursue that matter, though Judge Baldi pointed out that there likely was credible basis to reach a jury on some of the claims (Transcript of August 2019 argument before Judge Baldi at 111:22-25).

193.     Judge Baldi also recognized that the discovery as to jurisdiction should take place and the record is clear that discovery about the phone records was needed as well, and still is.

194.     Judge Baldi did not grant or give credence to any of Lightbox and Mr. Miller's requests for sanctions against Plaintiffs.

### Plaintiffs Voluntarily Discontinue the Matter for Several Reasons, Including that Claims May Be Placed in New York, And Because Defendants Argued for New York as Forum

195.     The Moldovsky Firm voluntarily discontinued its action on November 8, 2019 in part because it discovered at oral argument that Mr. Miller still did not carry malpractice insurance making malpractice claims of limited value at the time.  (Baldi Transcript, Exhibit "H" at 57:18-25.)

196.     The firm also recognized that Judge Baldi seemed to agree that the claims could be heard in New York, and so the Firm intended to bring the claims in this Court once a series of orders in other courts had been issued, which they mostly have over the course of 2020, although but some are still pending.

197.     Notably, despite Mr. Miller and Lightbox's stated contention, the discontinuance was unrelated to Mr. Miller's discovery requests.  Although this has been sworn to the Court, Mr. Miller and Lightbox persist in maliciously perpetuating this false narrative.

### THE MOLDOVSKY FIRM DISCOVERS THE TRUTH ABOUT MR. MILLER'S CAREER DIFFICULTIES WITH HIS PRIOR FIRMS, INCLUDING NEW JERSEY FIRM WONG FLEMING, VIA FILINGS ON THE PUBLIC RECORD

Mr. Miller had Misrepresented his Career Difficulties Early in His Relationship with Plaintiffs, Upon Which Plaintiffs Justifiably Relied and Have Suffered Damages

198.     In or about February 2020 the Moldovsky Firm discovered the public docket in the matter of Kopel v. Wong Fleming, LLC, No. MER-L-1816-17 (N.J. Super. Ct.)

199.     It came as a surprise that Mr. Miller had been a hostile witness in the matter against his former employers and colleagues between 2017 and 2018, during the time Mr. Miller was acquainted with Brem Moldovsky.

200.     Mr. Miller had not disclosed that he was involved in this litigation, its origins, initiation, activity, etc., and this is in stark contrast to what Wong Fleming described in its filings on the docket in the matter.

201.     Plaintiffs thus learned that Mr. Miller had greatly misrepresented the difficulties (now understood to be, at least very largely, self-imposed) he had been experiencing at Wong Fleming (and had at Drinker Biddle) to deflect from his own disloyalty and to hide the

problems that, had Plaintiffs known of them, they would never have hired or involved Mr. Miller to represent them or a client.

202.     Mr. Miller continued to misrepresent and conceal the difficulties with Wong Fleming, reaffirm and reconfirm the false version of his lack of involvement in the events from the earliest conversations through the end of their friendship about four years or so later despite the fact that the Kopel litigation in which Mr. Miller was a primary player, was ongoing, tumultuous, rancorous, deeply involving and engulfing him and distracting him (something Mr. Miller never mentioned).  He expressed about the matter that it was something he observed, not participated in and certainly not precipitated, stirred up, caused, was active in and so forth, as the truth has shown.

### Mr. Miller's Former Law Firm has Characterized him as "Bitter" and "Disgruntled" and Describes his Betrayal of the Firm

203.     It was discovered via the documents still of public record in that matter that Mr. Miller was terminated, at least from Wong Fleming, due to being bitter, disgruntled, for insubordination and for misconduct.

204.     Wong Fleming describes that after Mr. Miller was terminated from the Firm for leaving a disparaging online review of the firm (which he denies, but the firm claims to have evidence of), Mr. Miller attempted to rally former colleagues against Wong Fleming related to a billing dispute with Wong Fleming's former client Kopel and more.

205.     Mr. Miller was eventually used by Kopel as a witness against Wong Fleming.

206.     Mr. Miller seems to have a pattern of making client litigations about his own issues and honor, which was apparently true in New Jersey when the *Kopel* matter became complicated by the addition of Mr. Miller as a witness as did its underlying matter which became

45

more difficult for the clients when Mr. Miller worked (like here against this Firm and the undersigned) to break up an attorney and client relationship.

207. Mr. Miller has used the pending New York State court attorney's fees case against Lightbox to file numerous motions relating solely to Mr. Miller's personal issues that are without relevance to Lightbox's legal problems and that Lightbox lacks standing to raise in the first place (4 motions for sanctions and a TRO / PI motion, which are described below).

208. This pattern was unknown to the Moldovsky Firm and hid from and misrepresented to Mr. Moldovsky during Mr. Moldovsky's friendship and interacting with Mr. Miller. Mr. Miller disclosed to Mr. Moldovsky that he had issues with his prior employers including Drinker Biddle and Wong Fleming in particular and spoke negatively and disparagingly about both firms while representing that each firm was, for various reasons, at fault, unethical, unfair to clients and to him, problematic and/or abusive and so forth. If not for these misrepresentations – as it is now the undersigned's belief that it was Mr. Miller and not his employers who were at fault[1] and at least Mr. Miller was inappropriate, problematic and dangerous to a small law firm's client relations and more – the undersigned and this Firm would not have hired Mr. Miller as Counsel or recommended him to Lightbox.

209. However, Mr. Miller continued it when he began contacting colleagues of Mr. Moldovsky to attempt to rally them against him, spreading negativity against the Plaintiffs, trying to make the Plaintiffs toxic and seemingly problematic and such.

---

[1] Neither Ms. Wong nor Mr. Fleming were disciplined in New Jersey (related to the case against the Kopels or otherwise), indicating that, like here, the Court found no actual evidence of wrongdoing.

**LIGHTBOX SEEKS AN OVERLY-BROAD AND INAPPROPRIATE
INJUCTION BASED ON THE PLAINTIFFS' DISCOVERY OF MR.
MILLER'S UNREDACTED DEPOSITION TRANSCRIPT ON THE *KOPEL*
DOCKET IN NEW JERSEY IN MARCH 2020**

210.    In the very early morning hours of March 6, 2020 Lightbox moved *ex
parte* motion for a temporary and permanent injunction seeking to block the Plaintiffs from
utilizing any portion of the *Kopel* deposition transcript of Mr. Miller that had been discovered on
the New Jersey public docket, where it had been available fully unredacted to the public for more
than 20 months.

211.    Lightbox's request for prior restraint runs contrary to the guarantees of
freedom of speech contained in the New York and United States constitutions.

212.    Lightbox's stated basis for doing so is a false claim that the *Kopel*
transcripts contain Mr. Miller's confidential medical information.  No such information has ever
been established to be present in the transcripts, however.

213.    Such a motion by Lightbox is entirely inappropriate, in any event.
Lightbox lacks standing to seek relief based on supposed violations of Mr. Miller's privacy
arising from docketing problems in another state's courts.

214.    This motion highlights Mr. Miller's conflict of interests with his clients
and willingness to place his own interests above those of his clients.

215.    Mr. Miller's remedy (not that he deserves one) lies with the New Jersey
Superior Court, and does not involve Lightbox.

216.    Nevertheless, Lightbox has become involved in a TRO proceeding entirely
removed from its fee disputes with its prior counsel.

217.    This was and continues to be done as abuse of process in that this process
was not designed for how they are abusing it.

218. Since it became known to Mr. Miller that the Moldovsky Firm was aware of the public record in New Jersey, Mr. Miller has been disseminating the information he sought to seal with a TRO on his own, anyway. Mr. Miller and Lightbox have done so through various emails to the Court and counsel, pin citations to the *Kopel* transcript, and by needlessly bringing the supposedly-confidential information to the attention of the Second Circuit.

219. It appears, based on Mr. Miller and Lightbox's willingness to wield this information, that the TRO proceeding was entirely frivolous and meant to waste Plaintiff's time and resources.

220. The TRO has also served as an excuse for him and Lightbox to file two inappropriate, baseless and meritless motions for sanctions (which are described below) in the New York Supreme Court. Not surprisingly, they too were denied.

**SECOND CIRCUIT COURT OF APPEALS SUMMARY ORDER ISSUED APRIL 21, 2020 HOLDS THAT LIGHTBOX'S CLAIMS ARE BASELESS, WITHOUT MERIT AND IMPOSSIBLE**

221. Ultimately, on April 21, 2020 Justices Parker, Lohier, and Eaton (sitting by designation) of the Second Circuit Court of Appeals dismissed Lightbox's appeal of Judge Cote's denial of Lightbox's requests for disgorgement of the Plaintiff's attorneys' fees. These claims were based on allegations of attorney misconduct including but not limited to fraud, extortion, blackmail, duress, deceit, collusion, defamation, misconduct violative of multiple rules of professional conduct, statutes, and laws and more. A copy of that Summary Order is attached hereto as Exhibit "B".

222. The Second Circuit Court of Appeals denied Lightbox's self-righteous and disparaging appeal allegations as without merit. Yet, Lightbox continues to make them and to maliciously raise and initiate proceedings based on these claims, without regard to the fact that

48

Judge Cote dismissed them as unfounded and notwithstanding the *res judicata and* collaterally estoppel effect of the Second Circuit's affirmation of that dismissal.

223.    Lightbox's multitude of false and disparaging allegations – many of which, if true (which of course, they are not) could be career-ending, financially devastating and severely reputation damaging for a small practice attorney- had already been fully dismissed by the Federal Court as without merit, were thus rendered completely impossible, though Lightbox has yet to retract or otherwise correct a great deal of them. Lightbox unilaterally withdrew its claims for malpractice and breaches of fiduciary duties against the Moldovsky Firm along with one of two NY Jud. Law § 487 claims, by Affirmation of Mr. Miller, and then attempted to reinstate its NY Jud. Law § 487 claim by a "corrected" affirmation.

224.    This withdrawal did not, however, prevent Lightbox and Mr. Miller from submitting a letter to the Court rearguing the same facts and allegations that had been assessed and rejected by Judge Cote.

225.    The withdrawal was yet another successful termination of maliciously prosecuted proceedings as all or most of the malicious prosecution proceedings being complained of here, were terminated successfully in favor of the Plaintiffs here.

226.    Although Lightbox and Mr. Miller had already been committing rampant malicious prosecution and abuse of process, it was around the time of and following this Summary Order and the withdrawal of claims that Lightbox and Mr. Miller released a cascade of malicious prosecution intended to harass, malign, smear and harm the Plaintiffs to assuage the anger of a still dissatisfied litigant and his angry and ineffective counsel.

**LIGHTBOX AND MILLER MAKE REPEATED REQUESTS FOR
SANCTIONS VIA PROCEEDINGS IN THE NEW YORK SUPREME COURT
AND APPELLATE DIVISION, ALL OF WHICH WERE DENIED**

227.    Following briefing on the Second Circuit, Lightbox and Mr. Miller ramped up the magnitude of their irrelevant, abusive and malicious assault on the parties in the New York Supreme Court matter, as well as their deceit on the Court.

228.    Enraged by the Second Circuit loss, and with venom and malice, Lightbox and Mr. Miller engaged in a flurry of frivolous, malicious and abusive litigation, including in relation to their sanctions motions, allegations based on the same false rendering of underlying facts, allegations, and malicious and defamatory claims as the Interpleader Complaint and Second Circuit Appeal.  The same rendering of underlying facts, allegations, and malicious and defamatory claims that had just been held to still be impossible, *res judicata*, collaterally estopped, meritless, baseless and irrelevant was again being proceeded upon by Mr. Miller and the Ellners.

<u>Lightbox's Motions for Sanctions Against SMZ</u>

229.    Lightbox's first New York Supreme Court sanctions motion (Mot. Seq. # 10) was a cross-motion against SMZ that concerned Lightbox' submission of a falsified document (and the Plaintiff Firm's Motion for Sanctions regarding it) and was denied (NY Sup. ECF Doc. # 464).  Judge Cannataro did find, as did Judge Cote, that Lightbox had submitted a falsified document, but did not grant sanctions on that basis.

230.    Lightbox's second motion (NY Sup. Mot. Seq. # 18) concerned a mistyped citation in SMZ's brief.  That motion was denied on December 10, 2020 (Order, Exhibit "D" hereto.)  By this point Mr. Miller and Mr. Ellner's appetite for sanction litigation had barely been sated.

50

Lightbox's First Motion for Sanctions Against the Moldovsky Firm for Alleged Violations of the
Non-Existent TRO

231.    Lightbox's third sanctions motion (Mot. Seq. # 24) filed on March 10,
2020 was its first against the Moldovsky Firm.

232.    This motion raised the pretense of preempting the then-unissued TRO
when the Firm briefly stated its position on Lightbox's TRO application to the Court clerk and
parties in an email to the Court while Brem Moldovsky was en route to the *ex parte* hearing Mr.
Miller had noticed at about 1:00 that morning.

233.    The Moldovsky Firm opposed that motion, and that allegation in
particular.  Still, through all of this, including the many motions based on perceived slights to
Mr. Miller, there is no showing of personal or medical information involved here, and this is
because there is none.

234.    Mr. Miller and Lightbox did, however, take the opportunity to pepper their
motion with false and malicious allegations and personal attacks on the Plaintiffs, including
intimations that the Plaintiffs threatened Mr. Miller, colluded with SMZ to deceive the Court
about Mr. Miller's transcripts, made misrepresentations to the Court about citations that the
Moldovsky Firm stated were on the record and Lightbox stated were not (Lightbox was utterly
wrong, and has never corrected this misrepresentation), and that Plaintiffs lied to the Court to
excuse prior misconduct, threats, and blackmail, and had committed defamation.

235.    In a particularly malicious reply memorandum, which followed the
issuance of the Second Circuit Summary Order, Lightbox again put forth the same allegations
that had been shown to be impossible (and they admitted were impossible), by submitting an
Affidavit by Mr. Ellner dated May 5, 2020 and with help from other Defendants that contains the

following passages whose substance had been fully, firmly and finally rejected as baseless, meritless and irrelevant <u>by the Second Circuit a few days before</u>:

       a.   "What I do have factual information about, is Mr. Moldovsky's misconduct towards me, including how he conned and extorted me into "agreeing" to his demands for an amended fee agreement in November – December 2017…and how he later threatened to hurt Lightbox in federal and state court, simply because I disputed his Firm's February and March 2018 Invoices …When I did not agree to Mr. Moldovsky's attempted extortion, he did in fact follow through by withdrawing from the 3rd Home Matter a few days later". (Ellner May 5, 2020 Affidavit, Exhibit "I" hereto at ¶5.)

       b.   "Mr. Moldovsky lied to me, blatantly and on tape, when he promised that under the amended fee agreement there would be no retroactive billing for work he performed before the amendment… and how, to this very day, he lies to the Court by claiming that I am a 'sophisticated' client who had attorneys review and approve his firm's amended fee agreement…in those November – December 2017 fee 'negotiations', which Mr. Moldovsky conducted at gunpoint (metaphorically)". (Ellner May 5, 2020 Affidavit, Exhibit "I" hereto at ¶6.)

       c.   "Mr. Moldovsky has repeatedly engaged in wildly out-of-control, abusive misconduct, including a pattern of trying to blackmail, extort, or otherwise improperly coerce Lightbox and Mr. Miller to submit to Mr.

Moldovsky's demands." . (Ellner May 5, 2020 Affidavit, Exhibit "I" hereto at ¶9.)

<u>Lightbox's Second Motion for Sanctions Against the Moldovsky Firm</u>

236.    Lightbox and Mr. Miller, however, were still not satisfied. Lightbox's fifth motion for sanctions (NY. Sup. Mot. Seq. # 26), third in the New York Supreme Court against the Moldovsky Firm, was filed on June 19, 2020.

237.    It concerns the same subject matter as motions three (above) and four (below): the Moldovsky Firm's perspective regarding Mr. Miller's professional conduct in New Jersey, as if it were sanctionable to have a perspective, which based on the unauthorized practice of law, misconstrued understanding, perspective and acting on that, and based on the various Defendants' malicious intentional attacking of the Plaintiffs that is what this came to. Defendants' sanctions motion was basically about trying to punish and silence Plaintiffs for having and expressing views they don't like, and, this is as Plaintiffs have and continue to defend themselves against endless false onslaughts that have been dismissed, denied, found to be meritless, baseless, etc.

238.    Per Lightbox, this motion was premised on Plaintiffs' June 5, 2020 letter to the Court in which the Firm clarified that, when it wrote that it believed that Mr. Miller committed malpractice in the New Jersey matter, it was due to his conduct in opposing his prior employer / law firm after turning the firm's prior clients against the firm and instigating a billing dispute.

<u>Lightbox's Third Motion for Sanctions Against the Moldovsky Firm for Alleged Violations of TRO</u>

239.    Lightbox's sixth motion for sanctions against the Moldovsky Firm (its third in the New York Supreme Court, NY Sup. Mot. Seq. #25) was filed on June 27, 2020 and

53

although purported to be about the Moldovsky Firm's violation of the Court's TRO, did little but relitigate the same subject material as motions three, four and five (Mot. Seq. #s 24, 26 and the Appellate Cross-motion).

240. This motion's sole novel accusation was that the Moldovsky Firm violated the TRO by making a general statement that Mr. Miller's deposition would show information about Mr. Miller's knowledge of Wong Fleming's allegations about him in the New Jersey litigation in which he was being deposed. This was not at all violative of the TRO.

241. Lightbox took the opportunity, however, to once again make *ad hominem* attacks and lodge malicious and abusive, false, dismissed allegations about Plaintiffs, including about Plaintiffs' alleged misconduct, misuse of proceedings, and that Plaintiff Brem Moldovsky is vexatious and unprincipled. This was and still is baseless and false, in line with the many Court decisions here.

<u>Sanctions Requests in The New York Supreme Civil Court Appellate Division First Department</u>
<u>Were Dismissed By The Court's August 27, 2020 Order</u>

242. Lightbox has also made a proceeding via motion for sanctions in the New York Supreme Civil Court Appellate Division, First Department. Lightbox's fourth sanctions motion, second against The Moldovsky Firm, was made to the Appellate Division on June 15, 2020, and sought relief including for the similar perceived wrong: mentioning Mr. Miller's involvement in a matter involving allegations of fraudulent billing.

243. Lightbox sought sanctions nebulously based on frivolous conduct in violation of 22 NYCRR § 130-1.1.

244. The New York Appellate Division stated that "The motion (M-2094) seeking sanctions for frivolous conduct is denied" (Order M-2094, Exhibit "C". at 2).

245.     This must be read as a finding that there has been no demonstration of frivolous conduct by Plaintiffs in any of the claims made to the Appellate Division, and thus any such claims have been determined, adjudicated, and denied.

246.     This is another malicious prosecution and baseless proceeding that was successfully terminated in favor of the Plaintiffs.

Sanctions Requests in The New York Supreme Civil Court and December 10, 2020 Orders

247.     Despite Lightbox, Mr. Ellner, and Mr. Miller's best efforts, the New York Supreme Court was not convinced, not at all.

248.     Lightbox's second, third, fourth, and sixth motions for sanctions in the New York Supreme Court were denied by Judge Anthony Cannataro on December 10, 2020. (Order, Exhibit "D".)

249.     Notably, this would be the **THIRD** time that Lightbox and Ellner's claims as recited above at  a-c, were completely and totally dismissed as baseless, meritless, and irrelevant.

250.     These were yet more malicious prosecution baseless proceedings that were successfully terminated in favor of the Plaintiffs.

251.     That does not, however, mean that Lightbox and Mr. Ellner have abandoned them as they see their relief being denied by a Court as an opportunity to seek the relief again and in other forums, as an expansion of their malicious prosecutions.

252.     Accordingly, Lightbox has initiated yet another action, this time in the Eastern District of Pennsylvania, with a "basis" of facts that is nearly identical to those already considered and rejected by several courts in New York, including this court, the Second Circuit

and Judge Cannataro, regarding the Plaintiffs' Bucks County litigations against them, as described and elaborated below.

### ELLNER'S MALICIOUS FRIVILOUS, DEFAMATORY, HARASSING AND ABUSIVE EASTERN DISTRICT OF PENNSYLVANIA COMPLAINT

253.     Most recently Mr. Ellner has initiated an Eastern District of Pennsylvania lawsuit (*Ellner v. Moldovsky*, United States District Court for the Eastern District of Pennsylvania, Case No.: 2:20-cv-06190-KSM) against the Plaintiffs alleging malicious prosecution, and abuse of process stemming from the Plaintiffs' Bucks County, PA litigation against Lightbox, Mr. Ellner and Mr. Miller.

254.     Mr. Ellner's lawsuit is just another furtherance of his own frivolous and malicious prosecution and was specifically timed to interfere with a 9-day response window to a Lightbox-related First Department Appeal brief, but fortunately the Appellate Division extended the Plaintiffs' time to respond.  And, instead, the date was met with the New York Trial Court's denial of three false malicious prosecution sanction motions adding more successfully terminated proceedings to the list against the involved Defendants.

255.     Mr. Ellner's factual allegations began with the regurgitation of allegations that had already been adjudicated as a part of the SDNY Interpleader proceeding, including that during the Moldovsky Firm's representation of Lightbox disputes arose as to the Moldovsky Firm's "billing practices"; that the Moldovsky Firm "demanded" that Lightbox enter into an Amended Agreement.

256.     They continue with allegations that had been raised before and adjudicated by this Court and affirmed by the Second Circuit Court of Appeals and by Judge Cannataro, including claims that the Pennsylvania litigation against Lightbox and Ellner was frivolous.  The Second Circuit found no *prima facie* evidence of it, despite being presented with the same

argument (Ex. "B") and Judge Cannataro declined to find sanctions based at least in part on the same argument of frivolity (Ex. "D").

257.    Mr. Ellner even uses that forum to espouse a further lie that he never called Plaintiffs at a Pennsylvania phone number (related to wiretaps Mr. Ellner made), which is demonstrably false and has already been proven to Mr. Ellner in the course of the Bucks County litigation.  And, yet, this is another example of an easily disproven, false allegation which Mr. Ellner and his counsel continue to propound.

258.    Plaintiffs have notified Mr. Ellner's counsel in that matter of the impossibility of his client's claims, but unfortunately at Mr. Ellner's insistence, counsel is continuing to perpetuate his client's abuse and malicious prosecution, stating that he intends to amuse himself by frivolously deposing Brem Moldovsky, brutally and falsely defaming Brem Moldovsky's late father as a criminal, making statements about "taking off the gloves" and being overly and inappropriately aggressive, just like Mr. Ellner wants.  It is clear that the case is baseless and abusive, including by Plaintiff's Counsel stating that he does not know about Mr. Ellner being a party in litigation in New York regarding the Moldovsky Firm.  Whether purposeful or by recklessness, this severe lack of due diligence and dishonesty – particularly as it is being argued that various court decisions occurring in NY have preclusive impact on this case – along with the other complained of conduct are the manifestation of Mr. Ellner and Mr. Miller's malice and continuing efforts, activities and desires to utilize the courts and court procedures for perverse, malicious and wrongful purposes in harassing and abusing Plaintiffs, as stated herein.

259.    Unfortunately and obviously, truthful and sincere pursuit of valid claims is not Mr. Ellner, Lightbox, or Mr. Miller's goal.

**MR. MILLER AND LIGHTBOX VARIOUS ACTIONS AND PROCEEDINGS UNDERTAKEN TO MALICIOUSLY AND FALSELY PROSECUTE, PURPOSEFULLY DAMAGE, DELAY, FRUSTRATE, HARASS, ATTACK, EMBARRASS, AND DESTROY AND MONOPOLIZE THE TIME OF THE PLAINTIFF**

260.     The Moldovsky Firm has been essentially under siege by Mr. Ellner and Mr. Miller's ongoing personal attacks and disparagements for almost three years – since before the Interpleader Complaint (filed July 3, 2018) to the present, including attempts at disgorgement, forfeiture, and constant, generally monthly, requests for sanctions - at least over 20 requests.  That followed almost 14 months of tedious, voluminous, highly demanding, often challenging, but ultimately successful work for Mr. Ellner and Lightbox for which they still owe legal fees, with much of their antics being wrongful abuse of process efforts to avoid their payment responsibilities.  Lightbox, Mr. Ellner, and Mr. Miller have, unfortunately, been an involuntary focus of the Firm's time since February 2017.

261.     Lightbox, aided by the Ellners and Mr. Miller, has not only consistently maliciously levied vast disproven and wild allegations against the Moldovsky Firm and the undersigned, including, but not limited to: fraud, abuse, duress, criminal violations of various degrees, unauthorized practice of law (e.g., ECF Doc. # 350 at 58), defamation, blackmail, extortion (e.g., ECF Doc. # 886 at ¶¶ 18, 26,41, etc.), and others since 2016, Lightbox, but it has also initiated proceedings (which have been successfully terminated against them) based on them, as has been outlined above, including:

    a.   the unauthorized SDNY Interpleader Complaint;

    b.   The Second Circuit Appeal;

    c.   New York Supreme Court Crossclaims, which were rendered impossible and mostly but not fully withdrawn;

    d.   The New York Supreme Court motion for a TRO;

e.  Three New York Supreme Court Motions for sanctions;

f.  One Appellate Division Motion for sanctions; and

g.  An Eastern District of Pennsylvania lawsuit.

262.  All of the aforementioned proceedings by Lightbox and Ellner have been lost with the exception of the ongoing Eastern District of Pennsylvania Lawsuit and the yet to be dismissed remaining Crossclaims and TRO.

263.  Lightbox, Mr. Ellner and Mr. Miller have also lied and misrepresented to the court about the other proceedings and about Judge Cote's findings, including by consistently stating to the New York Supreme Court that Judge Cote had adjudicated contractual lien claims (she clearly did not, see, Ex. "A").

264.  Each misrepresentation, lies, relitigation, cherry-picked quote and curated recorded phone call or transcript requires the Plaintiffs to respond to correct the record and causes waste of time and money, waste of resources, sucks attention from other work, and maintains Lightbox, Mr. Ellner and Mr. Miller as a focus of activity to the detriment of the Plaintiffs.

265.  Mr. Miller on behalf of the other Defendants regularly skirts court rules and conventions, purposefully causing additional waste of time, attention and resources – such as submitting two supplemental affirmations in opposition to a simple Second Circuit Bill of Costs (which was awarded to Plaintiffs). Both were rejected for filing, but not before the Plaintiffs had to waste time and attention on them.

266.  Mr. Miller also had no fewer than five filings stricken from the Appellate Department's docket in January 2021 because they were inappropriate and unauthorized,

prompting a clerk to threaten to remove e-filing privileges from Mr. Miller. While this is rare to see it was not surprising given Mr. Miller's behavior and ethical misconduct.

267. Even raising Mr. Miller and Lightbox's obstructive behavior becomes an all-day affair, as it has too often.

268. The difficulty of dealing with Mr. Miller makes it impossible to get even a simple extension or stipulation agreed to without Mr. Miller wasting time and resources.

269. SMZ's Counsel Matthew Flannagan wrote as much to Judge Cannataro on August 12, 2020 in a letter wherein he describes being held hostage by the barrage of filings. A copy of that letter is attached hereto as Exhibit "J".

270. The raw numbers available on the public docket in New York speak for themselves – over a thousand documents, a huge majority were filed by Mr. Miller and Lightbox or in response to one of their filings.

271. Mr. Zubatov of SMZ has confirmed this in his Affirmation in opposition to Lightbox's Motion to Strike in First Department Appeal No. 2019-03384 (attached hereto as Exhibit "K") that Lightbox and Mr. Miller seek to waste time, attention, costs, expenses and other resources of the litigants who oppose them. Mr. Zubatov writes: "LightBox's motion to strike … is a baseless and egregiously bad-faith motion" (at ¶2) and "LightBox's motion also represents a deplorable course of conduct by it and its counsel, Mr. Miller, and this Court should award us the costs, based upon our time as attorneys, of having to oppose this motion in order to deter such conduct in the future." (at ¶13).

272. There also has been no shortage of name calling and statements committing to not to be cooperative, courteous and civil by Mr. Miller and Lightbox, such as "for reasons that perhaps could best be explained by a psychologist, Mr. Moldovsky seems

60

fixated…." (NY Sup. ECF Doc. #20 at 5 thereof)  "[y]our incessant, infantile and obsessive recitation of purely hallucinatory "conflict of interest" issues and purported ethical violations are disgraceful to the legal profession, degrading to yourself, personally, and render even the most minimal level of professional courtesy and cooperation all but im-possible." (e.g., NY Sup. ECF Doc. # 16 at 6 fn 1), of this firm and of the plaintiff firm.  There are many other examples.

## DAMAGES, LOSSES, AND IMPACTS TO THE PLAINTIFFS, AND RELIEF REQUESTED

273.  The Defendant Jonathan Miller utterly failed in his legal, ethical, professional and contractual duty to his clients, and was deliberately and knowingly indifferent to conflicts being raised, and participated in and drove (and continues with) malicious, abusive and improper hostile litigation against the Plaintiffs.

274.  The Defendant Jonathan Miller utilized and continues to utilize his unique knowledge of the Plaintiffs' financial abilities, vulnerabilities, law firm functions, and abilities and desires and more to litigate against an aggressive adversary against the Plaintiffs for the benefit of Lightbox.

275.  Mr. Miller, as conflicted Counsel purposefully pursued excessively aggressive and frustrating litigation against the Plaintiffs, acting as the perfect spearhead with a unique ability to harm the Plaintiffs due to his knowledge of the Plaintiffs' confidential information.

276.  Mr. Miller, with the Ellners' efforts and aid, has dominated much of the time and bandwidth of the firm ,and the Plaintiffs' minds and time, and has caused stress and distress which should be considered as it relates to relevant issues including but not limited to malicious prosecution, wrongful abuse of process, fraud, breach of fiduciary duty, wrongful

interference with contract and business of another, malpractice, conflicts of interest, preliminary injunction and the various issues as plead herein.

277.    Mr. Miller has instilled a fear of what information Defendant Mr. Miller has and is using and giving over to his co-Defendants to use against the Plaintiffs, particularly in light of Mr. Miller's continued lies about not knowing what he does know.

278.    The Defendants have interfered with life and social events, business development and other life events, much of which will not be recoverable economically.

279.    Mr. Miller fully and completely failed in his explicit and implied responsibility to comply with the Pennsylvania and NY versions of the Rules of Professional Conduct.

280.    Due to the various misconduct, attacks, attempts to waste time, conflicts of interest, trying to mitigate against the Mr. Miller's conflicts, misconduct and attacks, the Plaintiffs have incurred well in excess of 1,000-2,000 hours of billable attorney hours, 1,000-2,000 paralegal hours, and in excess of 100 administrative hours, as well as hundreds of additional professional hours, all of which equal well in excess of $1,000,000 in value as a reasonably foreseeable result of the Defendants' breaches and wrongful actions as plead herein.

281.    Much of Plaintiffs' lost time, but all of Plaintiffs' stress and distress will not be able to be adequately compensated economically for the wrongs done.

282.    Plaintiffs lost in excess of $1,000,000 in income due to the lost time, as this time is generally billed (in the $100-$400 per hour range) and profitable to Plaintiffs' law business.

283.    Plaintiffs have been damaged in excess of $1,000,000.00, and are entitled by law and equity to all damages, including compensatory, pecuniary, special incidental,

consequential, punitive, and treble damages, statutory damages pursuant to the Pennsylvania

Unfair Trade Practices and Consumer Protection Law §201-9.2 (a) (costs and attorneys fees), the

New Jersey Consumer Fraud Act § 56:8-19 (threefold damages, attorneys' fees, filing fees and

reasonable costs), the New York General Business Law § 349, (treble damages, interest, costs

and attorneys fees), the Pennsylvania Dragonetti Act, § 8353 (punitive damages, costs and

attorneys fees), NY Jud. Law §§ 478 and 484 (punitive damages, costs and attorneys fees),

which is punishable as a misdemeanor or felony pursuant to NY Jud. Law §§ 485 and 485-

a.attorney's fees and costs, and other related damages and damages and relief appropriate under

this suit and its causes of action.

284.    Damages here were reasonably foreseeable to Defendants, particularly as

they knew frivolous, aggressive, and often unnecessary litigation and quibbling would lead to the

Plaintiffs having to choose prioritizing defending themselves against the Defendants malicious

prosecutions over other work and investing time into work and their businesses.

285.    Plaintiffs invested much time and lost a tremendous amount of  time, in

excess of hundreds of hours, due to the Defendants' various breaches and wrongful actions, as

stated herein.

286.    Plaintiffs have suffered a loss of business opportunities and business

advancements.

287.    The Plaintiffs have suffered the negative impact and damage to their

reputation of purposeful, willfully malicious, intentional and purposeful and/or recklessly

negligent slanderous allegations and defamation of their character beyond what monetary

damages can repair.

288.    Plaintiffs have suffered irreparable public embarrassment, defamation, humiliation, etc. due to Defendants' conduct, including that confidential and sensitive information have been exposed to the public due to Mr. Miller's wrongful actions as stated herein.

289.    The Plaintiffs have been publicly stripped of their economic ambiguity and anonymity, and Lightbox has been fully informed of the sensitive information Mr. Miller possesses and have used it and continue to use it to their benefit and Plaintiffs' detriment.

290.    Mr. Miller had been hired by Brem Moldovsky, L.L.C. to provide counsel, representation, assistance, advice, etc. in its handling and representation of Brem Moldovsky and Melanie Moldovsky as well as its own interests regarding the prior Pennsylvania litigations.

291.    These services were billed and paid to the tune of thousands of dollars, approximately in excess of $3,000.00.

292.    Due to all of the conflicts of interest, wrongful use and revealing of client confidential, sensitive, private, etc. information, attorney misconduct, and all such as plead herein against Mr. Miller, the funds paid to him for services should and must be disgorged, forfeited, paid back, returned, compensated and recompensated to Plaintiffs with interest.

293.    Plaintiffs' losses are well in excess of $1,000,000 and include lost profits, income, revenue, time, compensation, clients, cases, billing, fees, funds, business and more. This includes attorney time at $400 per hour, and paralegal time at $150 per hour -the rates determined to be reasonable by Judge Cote (Ex. "A" at 10)- for approximately in excess of 500 to 1,000 hours of attorney time and 500 to 1,000 hours of paralegal time per year for three years and ongoing.

294. Plaintiffs have been damaged by Mr. Miller spreading, distributing, publishing, writing and stating information (including secret, private, sensitive, confidential, business, family, child-involved and more) learned and received by Mr. Miller in the course of his representation of Plaintiffs.

295. Mr. Miller did this by purposefully and maliciously spreading, distributing, publishing, writing and stating information without justification in correspondence and in Court filings and doing so without making effort (or, sufficient effort) to redact, non-publicize, protect or secure such information.

296. Mr. Miller knows better than this and often raises that even if attorneys believe they have a right to use client information in an allowed purpose in a dispute with a client, they must do so in a manner that protects, redacts, etc. the client information as much as possible, and, yet, still, Mr. Miller purposefully does what is wrong and does not practice what he preaches. This is particularly reprehensible, outrageous and along with various of the other conduct here sufficient to shock the sensibilities of a reasonable person so that punitive damages are warranted.

297. Due to Mr. Miller's conflicts of interest, wrongfully litigating against a client/former client on behalf of another client and the rest as stated here Plaintiffs have incurred, expended and lost time, costs, fees and efforts in attempting to stop and mitigate against Mr. Miller's wrongfully wielding Plaintiffs' own counsel with the benefit of Plaintiffs' information, sensitivities, strategies, confidences, etc. against them.

298. Costs, expenses, fees, time, expert work and fees, professional work and representation and more have been incurred in efforts to disqualify Mr. Miller in Federal and State Courts in NY and PA that would not have to be have been expended were it not for and but

65

for the wrongful acts of the Defendants in causing the conflicts, in taking advantage of the conflicts, in driving the conflicts deeper and deeper, in resisting efforts to disqualify, in not stopping the conflicts, in failing to make efforts to end the conflict problems and in the conduct complained of here.

299.     The Defendants knew Mr. Miller was an attorney to Plaintiffs and knew and learned Plaintiffs were deeply concerned about conflicts of interest issues and confidential information possessed by the Mr. Miller that would be used for and leaked over to the other Defendants for them to be able to take advantage of these issues.

300.     Mr. Miller purposefully acted to drive up costs, concerns and difficulties for Plaintiffs, in particular since doing so played to the vulnerabilities, sensitivities and concerns of Moldovsky which Mr. Miller learned about as counsel to Moldovsky.

301.     Mr. Miller's wrongful actions as complained of herein have made the litigation process with and against Mr. Ellner and his companies here much more difficult, expensive and wasteful than they otherwise would have been.

302.     Plaintiffs have had to and will have to pay and incur expenses, expert time and fees and professional fees and time in these litigations that would not have had to happen were it not for Mr. Miller's wrongful conduct as described herein.

303.     By the wrongful actions described herein, Mr. Miller has wrongfully made the process of Plaintiffs collecting on the fees and costs which Ellner and Lightbox Ventures, LLC owe much more difficult, costly, time-consuming and problematic than it otherwise would have been and Defendants are responsible under law for the damages, losses and expenses incurred that would not have been but for their wrongful conduct complained of herein.

304. The damages include damage for lost reputation, lost time and money trying to mitigate and counter the problematic conduct and more, as well as lost income, profits and the other losses as stated herein as relate to these issues.

305. The issued TRO and related have negatively impacted Plaintiffs and they incurred special damages thereby, including in being wrongfully restrained from free speech, their defense of their reputations, their defense in court and in public, their clearing false accusations and being the subject of libel, slander and defamation.

306. The special damages include free speech infringement based on unconstitutional and wrongful reasons impinging on and interfering with the Plaintiff's ability to respond to false attacks in court and otherwise by Defendants and to protect themselves, their reputations, their income and more.

307. All of the false malicious prosecutions, defenses, notices to insurance providers, insurance provider expenses and more have lead to increased insurance rates and issues so that ongoing extra insurance expenses based on false allegations, malicious prosecution, abuse of process, etc. has lead to more damages, expenses, costs and losses due to the actions complained of herein.

308. Plaintiffs have been damaged in excess of $1,000,000.00, and are entitled by law and equity to all damages, including compensatory, pecuniary, special incidental, consequential, punitive, and treble damages, statutory damages pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law §201-9.2 (a) (costs and attorneys fees), the New Jersey Consumer Fraud Act § 56:8-19 (threefold damages, attorneys' fees, filing fees and reasonable costs), the New York General Business Law § 349, (treble damages, interest, costs and attorneys fees), and the Pennsylvania Dragonetti Act, § 8353 (punitive damages, costs and

attorneys fees) NY Jud. Law §§ 478 and 484 (punitive damages, costs and attorneys fees), which is punishable as a misdemeanor or felony pursuant to NY Jud. Law §§ 485 and 485-1 attorney's fees and costs, and other related damages and damages and relief appropriate under this suit and its causes of action.

## PLEADING IN THE ALTERNATIVE, JOINT AND SEVERABLE LIABILITY, AND OTHER PROVISISIONS

309.   The totality of the Defendants' actual, anticipatory, apparent and implied breaches, wrongful actions, purposeful abuse, recklessness, negligence and failures and the resultant damages can be surmised from all logical permutations of the facts and elements plead at length herein and all facts and elements plead herein that are, by their nature, plead in the alternative.

310.   General principles of res judicata, issue preclusion and collateral estoppel are also incorporated to the extent that they apply to the instant Amended Complaint favor or either or both Plaintiffs.

311.   Based upon the facts alleged and/or incorporated herein, joint and several liability should be found against all Defendants on the counts set forth in the remainder of the Complaint where all Defendants are included (in the count) and where the Court deems appropriate.

### Alter-Ego and Piercing the Corporate Veil

312.   Lightbox Ventures, LLC was, at all relevant times, dominated, controlled and used as a d/b/a solely and exclusively by Mr. Ellner and Mrs. Ellner to certain extents as well.

313.   Upon information and belief, Mr. Ellner and Mrs. Ellner have used the Defendant corporations to perpetrate wrongdoing and abuse of corporate formation.

314.    The Ellner Defendants' actions, including forming, running and controlling the Defendant corporations, as plead herein, were intended to and did carry out and perpetrate fraud, so that corporate forms need to be disregarded, corporate veils pierced, and the individual Ellner Defendants be held accountable and liable.

315.    The Ellner Defendants acted with a unity of interests in the wrongful conduct complained of here and they should not be unjustly enriched by evading payment responsibilities here due to their improper manipulation of corporate forms.

### Lightbox Was Represented By Counsel At All Relevant Times

316.    The Defendants here, lead by Andrew Ellner, Jill Ellner, Susan Stein, and the Lightbox entities collaborated and colluded with one another and directed Lightbox to maliciously prosecute the Plaintiffs.

317.    Defendants joined in and followed along with Mr. Ellner's malice and malicious prosecution.

318.    Unless contradicted, and, as limited by these pleadings, causes of actions or the facts as Plaintiffs have and are presenting them to the Court, the actions of Defendants were done for, under the direction of, in coordination and plan with and/or for the benefit of each of the other Defendants, so that actions and statements plead and alleged about, by or as committed or performed by any of the Defendants are imputed upon, ratified by, assumed by and understood to have been performed by all of them.

319.    Various complained of conduct here, including but not limited to the malpractice, swearing to false affidavits of an important matters (that are extremely pertinent to this and the New York litigation), and various other complained actions and actions of Defendants constitute ethical breaches, professional breaches, breaches of civil law and breaches

69

of criminal law, including but not limited to laws against wiretaps, perjury and others. *Per se* civil liability which flows from liability for underlying statutory and/or criminal liability is hereby plead.

320.    The Plaintiffs are foreseeable plaintiffs so that Defendants were and should have been aware of their losses, suffering and damaged due to their conduct.

321.    The Plaintiffs were not aware of various activities until times later than when they occurred.  For instance, the wiretapped phone calls were not disclosed until several months later, and it is anticipated that there are other phone calls and other activities that will be uncovered during discovery and litigation.

322.    Many of the causes of action, as complained of herein, did not become causes of action as such (including with sufficient standing, damages and the necessary components and elements of such causes of action) until Mr. Miller assumed representation for Lightbox against the Plaintiffs and at other critical points, as conveyed herein.

323.    All allegations herein that by their nature and/or as read with the rest of this pleading are in the alternative, are plead in the alternative.

324.    While aspects of the causes of action are plead within each cause of action, each cause of action plead herein is plead under the entirety of the facts alleged and each fact and set of facts herein applies to each cause of action as appropriate and logical.

## I.    FIRST CAUSE OF ACTION – MALICIOUS PROSECUTION (MALICIOUS ABUSE OF LEGAL PROCESS) AGAINST ALL DEFENDANTS

325.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

326. Defendants have persisted for three years in malicious prosecution directed at the Plaintiffs and resulting in a near constant abuse of legal process to harm the Plaintiffs as describe throughout this Complaint.

327. Defendants maliciously commenced an overlybroad, utterly false and malicious Interpleader Complaint that included claims of extortion, blackmail, retroactive billing, fraud, withdrawal on false pretenses, crimes, other misconduct tantamount to malpractice and many more serious (if real, but false here) vicious, brutal and untrue allegations against the Moldovsky Firm.

328. The proceeding was terminated in favor of the Moldovsky Firm when Judge Cote awarded a statutory charging lien to the Moldovsky Firm, which barred any claims of misconduct or malpractice premised on the same allegations or allegations that could have been brought in that proceeding.

329. Judge Cote made further findings as to the professional deportment of the Moldovsky Firm, the validity of the Firm's billing, and that Lightbox's allegations and claims fail to make a *prima facie* showing of cause. Lightbox then appealed this decision to the Second Circuit Court of Appeals, which affirmed Judge Cote's award and decision by Summary Order, foreclosing all of Lightbox's claims based on the same factual allegations of the Interpleader Complaint or any claims that could have been alleged.

330. Lightbox maliciously filed, pursued and refused to withdraw its New York Supreme Court allegations of attorney misconduct, deceit, malpractice, etc. based on the same factual allegations that Judge Cote had determined, subjecting the Moldovsky Firm to crossclaims without probable cause and which are barred by *res judicata* and at this point largely totally withdrawn and lost.

331.     Lightbox proceeded to seek many sanctions in the New York Supreme Court, including in the Appellate Division, maliciously asserting the same false and dismissed allegations over the course of four separate motions for sanctions and contempt without probable cause and this was on top of numerous sanctions requests and requests to punish in courts in Pennsylvania and New York . These proceedings all ended in Plaintiff's favor.

332.     Lightbox further sought and continues to seek a New York Supreme Court TRO and Permanent Injunctions based in part on the malicious re-allegation of the same false and dismissed allegations.

333.     Lightbox has additionally lodged at least two other sanction and false attack proceeding against Brem Moldovsky based on the same false and dismissed allegations and all have ended in Plaintiffs' favor.

334.     Most recently Mr. Ellner initiated an Eastern District of Pennsylvania Complaint against the Moldovsky Firm and Brem Moldovsky based on some of the same false allegations.

335.     All of the attempts to relitigate its demonstrably false, dismissed, fraudulent and defamatory allegations were for the purpose of harassing, defaming, damaging and destroying the Moldovsky Firm, despite the lack of validity of Lightbox's claims.

336.     Aside from the litigations on their face, in the course of all of Defendants' various malicious litigations, Defendants have maliciously abused Plaintiffs including but not limited to:

              a.   Defendants maliciously abused Plaintiffs when they filed an unauthorized crossclaim;

72

b.   Defendants maliciously abused Plaintiffs when Lightbox maliciously refused to withdraw its New York Supreme Court crossclaims when they were impossible;

c.   Defendants maliciously abused Plaintiffs when they made various lies and misrepresentations to the Court (aside from the false allegations);

d.   Defendants maliciously abused Plaintiffs when they stated that Plaintiffs refused to respond regarding a confidentiality order, and then by motioning to prevent the Moldovsky Firm from being included on the existing Order;

e.   Defendants maliciously abused Plaintiffs when Mr. Stretton's (who has tried over 1,000 jury trials and is one of the most respected attorney ethics experts in Pennsylvania) cease and desist letter to Mr. Miller was met with a response of wildly sending hundreds of pages of documents to Mr. Stretton via facsimile;

f.   Defendants maliciously abused Plaintiffs when they filed a completely frivolous motion to strike that was not allowed;

g.   Defendants maliciously abused Plaintiffs when Mr. Miller misrepresented his representation of Lightbox;

h.   Defendants maliciously abused Plaintiffs when Mr. Miller misrepresented his representation of the Plaintiffs, his involvement and role in their matters, and the information he learned in the process;

i.   Defendants maliciously abused Plaintiffs when Mr. Miller on behalf of Lightbox filed (and continues to file) a seemingly endless amount of unauthorized letters, sur-replies, supplements, and corrected documents;

j.   Defendants maliciously abused Plaintiffs when Mr. Miller on behalf of Lightbox filed a 745 page letter falsely accusing the Moldovsky Firm of "vexatious motion practice";

k.   Defendants maliciously abused Plaintiffs when they filed an especially defamatory and misleading "request" to file a sur-reply to the Moldovsky Firm's motion for summary judgment that attached a sur-reply that restated and reargued dismissed claims;

l.   Defendants maliciously abused Plaintiffs (and others) when they filed no less than six frivolous sanctions motions;

m.  Defendants maliciously abused Plaintiffs when they motioned to compel a Bill of Particulars that the Moldovsky Firm had already provided;

n.   Defendants maliciously abused Plaintiffs when they wrote to the court on several occasions to hypocritically complain about violations of rules that they themselves have violated;

o.   Defendants maliciously abused Plaintiffs when they misrepresented CPLR§2214(b) to the Court on at least two occasions;

p.   Defendants maliciously abused Plaintiffs when they attempted to litigate via inappropriate vehicles such as letters and certificates of service;

q.   Defendants maliciously abused Plaintiffs when they attempted to introduce wiretapped and unauthenticated phone recordings as evidence to the Second Circuit days before the oral argument;

r.   Defendants maliciously abused Plaintiffs when they consistently and routinely misrepresented to Courts that the Plaintiffs "abandoned" their Bucks County case because of Mr. Miller's discovery requests, when it was articulated that it was discontinued

there (at least partly) because Mr. Miller still did not have malpractice insurance, and the claims belong in this Court;

        s.  Defendants maliciously abused Plaintiffs when they filed multiple last minute interim motion requests for extensions of time in the Appellate Department on false pretenses that Plaintiffs must respond to within hours, including one that was indicated to be "prophylactic" based on Plaintiff's religious observance but was instead based on religious discrimination and false motives;

        t.  Defendants maliciously abused Plaintiffs when they filed two frivolous motions to reargue and two frivolous appeals based on issues already determined by Judge Cote;

        u.  Defendants maliciously abused Plaintiffs when they vehemently and impossibly argued both sides of the issue about whether or not there were communication and strategic difficulties between Plaintiffs, Lightbox and Mr. Ellner;

        v.  Defendants maliciously abused Plaintiffs when they reached out to colleagues and others known to Plaintiffs to attempt to undermine Plaintiffs;

        w.  Defendants maliciously abused Plaintiffs when they wrote a letter to the Second Circuit Court of Appeals regarding the transcripts protected by the TRO to which the Plaintiffs are limited in ability to respond;

Defendants maliciously abused Plaintiffs when they made a purposefully false and frivolous argument to the New York Trial Court that the Appellate Court has already decided the NY Jud. Law §487 claims in Lightbox's favor (NY Sup. ECF Doc. # 1028);

       x.   Defendants maliciously abused Plaintiffs when they cross-moved for summary judgment despite the Court already determining that summary judgment could not be reached as to account stated;

       y.   Defendants maliciously abused Plaintiffs when they even recently filed an appellate department reply brief and motion to strike which, together, are rife with dismissed claims, misrepresentations, and seeks discriminatory relief; and

       z.   Defendants maliciously abused Plaintiffs in a myriad of other ways large and small over the course of three years with a mindboggling amount of litigation and correspondence.

337.    By reason of the foregoing and as fully plead herein, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorneys fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action.

338.    As already stated, Plaintiffs have been damaged in excess of $1,000,000.00, and are entitled by law and equity to all damages, including compensatory, pecuniary, special incidental, consequential, punitive, and treble damages, statutory damages pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law §201-9.2 (a) (costs and attorneys fees), the New Jersey Consumer Fraud Act § 56:8-19 (threefold damages, attorneys' fees, filing fees and reasonable costs), the New York General Business Law § 349, (treble damages, interest, costs and attorneys fees), the Pennsylvania Dragonetti Act, § 8353 (punitive damages, costs and attorneys fees), NY Jud. Law §§ 478 and 484 (punitive damages, costs and attorneys fees), which is punishable as a misdemeanor or felony pursuant to NY Jud.

Law §§ 485 and 485-a. attorney's fees and costs, and other related damages and damages and relief appropriate under this suit and its causes of action.

## II.  SECOND CAUSE OF ACTION – ABUSE (PERVERSION) OF PROCESS AGAINST ALL DEFENDANTS

339.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

340.    Defendants, to various extents and as plead herein, have perpetuated an ongoing fraudulent, false, abusive and frivolous series of litigations and proceedings against Plaintiffs over the course of three years as described at length above throughout the entirety of the Plaintiffs' Complaint.

341.    Defendants have done so without justification and with the main or sole objective of harming Plaintiffs, wasting time and resources, damaging and destroying Plaintiffs.

342.    Defendants have perversely and wrongfully misused and mis-utilized frivolous process to do so as described at length throughout this Complaint, occurred even more and to further extents than as stated here, and specifically including but not limited to:

a.  resorting to persistent defamatory slurs  including on the record , such as "[y]our incessant, infantile and obsessive recitation of purely hallucinatory "conflict of interest" issues and purported ethical violations are disgraceful to the legal profession, degrading to yourself, personally, and render even the most minimal level of professional courtesy and cooperation all but impossible." (e.g., NY Sup. ECF Doc. # 350 at 59)  While this particular one also displays their rejection by statement (accompany their many such acts) of the appropriate legal process and its

measures in favor of wrongful and perverse abuse of process, there are plenty more attacks by defamation, including as stated herein;

   b. The wrongful and perverse misuse of process included vast violations of the rules and part rules including but not limited blatant misrepresentations to the Second Circuit;

   c. The wrongful and perverse misuse of process included multiple unauthorized sur-replies (e.g., NY Sup. ECF Docs. # 814, 905), letter motions (e.g., NY Sup. ECF Doc. #874), pleadings (e.g., NY Sup.  ECF Doc. # 734), last minute and untimely "amended" and "supplemental" motion materials (e.g., NY Sup. ECF Docs. # 819-821, 886, 889-890 etc.);

   d. The wrongful and perverse misuse of process included unwelcomed letters to the Court (e.g., NY Sup. ECF Docs.#818); abuse of process by filing over-night, on weekends, and over holidays (e.g., NY Sup. ECF Doc. # 845); short notice requests for correspondence on a Saturday night with a Sunday afternoon reply "deadline"; regular requests for sanctions; notice in the middle of the night to appear in Court the next morning; using the New York Appellate docket as a way of correspondence with the Court's Clerks so that Mr. Miller was warned if it continued he would be precluded from making further filings;

   e. The wrongful and perverse misuse of process by many filings of unauthorized sur-replies and letters;

   f. The wrongful and perverse misuse of process included Mr. Miller's unauthorized March 4, 2019 Sur Reply related to SMZ's motion for summary judgment (NY Sup. ECF Docs ## 340-342);

78

g.  The wrongful and perverse misuse of process included Mr. Miller's March 25, 2019 unauthorized Sur Reply letter related to the Moldovsky Firm's motion to disqualify him(NY Sup. ECF Doc. # 417);

h.  The wrongful and perverse misuse of process included Mr. Miller's April 2, 2019 unauthorized 745-page letter (NY Sup. ECF Doc. # 428), complaining of "vexatious motion practice" based on the undersigned counsel filing a "739-page motion" in Pennsylvania (which Mr. Miller has attached as Ex, "1" to his letter, NY Sup. ECF Doc. #429);

i.  The wrongful and perverse misuse of process included Mr. Miller's September 10, 2019 unauthorized sur-reply disguised as a letter request for leave to file a sur-reply to the Moldovsky Firm's Motion for Partial Summary Judgment filed by Mr. Miller on behalf of Lightbox and Mr. Ellner (NY Sup. ECF Doc. #637);

j.  The wrongful and perverse misuse of process included Mr. Miller's February 7, 2020 letter sent to complain about the Moldovsky Firm filing its motion to Dismiss Lightbox's Crossclaims without providing Lightbox 3 days to review it for redactions (NY Sup. ECF Doc. # 781).  Lightbox hypocritically did not provide its opposition 3 days in advance, nor did Lightbox provide its unauthorized pleading 3 days in advance of filing.  The Moldovsky Firm continued to do redactions pursuant to the protective orders in place related to confidential material;

k.  The wrongful and perverse misuse of process included Mr. Miller's letter dated February 24, 2020 attempting to relitigate Lightbox's Motion to Dismiss SMZ's claims (NY Sup. ECF Doc. #818);

l.   The wrongful and perverse misuse of process included Mr. Miller, on behalf of his clients, filing an unauthorized, untimely second Affirmation in Opposition to the Moldovsky Firm's Motion to Dismiss dated February 24, 2020 (NY Sup. ECF Docs. # 819-820) and an "Amended" memorandum of law at 5:14 p.m. on the date the Reply was due, failing to provide unredacted copies until 6:58 p.m. that evening, and never providing a blackline or any indication of the amendments to the memorandum of law;

m.  The wrongful and perverse misuse of process as indicated by Mr. Miller's Affirmation of Service dated February 25, 2020 affirming that he served unredacted copies of unredacted documents at 7:00 p.m. on the due date of the Reply, several hours after they were filed and did not deny that he did not give a blackline or any indication of what he changed in the "Amended" Memo;

n.   The wrongful and perverse misuse of process included Mr. Miller, on behalf of his clients, affirming in Reply regarding Lightbox's Motion to Compel on March 17, 2020 that the Moldovsky firm is " a recalcitrant, oppositional party" who tries "to consume endless hours of the Court's precious time" (NY Sup. ECF Doc. # 888 at ¶ 23) when it knows this to be false and rather that this has been and continues to be Defendants strategy and activity;

o.   The wrongful and perverse misuse of process included Mr. Miller's caricature and false attacks, *ad hominem* attacks, etc.

p.   The wrongful and perverse misuse of process included Footnote 4 of that same document, which misconstrues, omits materials facts and misleads the Court by stating: "Indeed, obfuscation and misdirection seem to be Mr. Moldovsky's

primary tools of trade. For example, he filed three separate motions to disqualify me in three jurisdictions, lost all three, but dropped his related Pennsylvania case against me and my clients like the proverbial hot potato just four days after I served him with initial discovery demands.";

q.  The wrongful and perverse misuse of process included the excessive filings, correspondence and demands made over night, on weekends, and on holidays;

r.  There have also been almost countless misrepresentations to the Court, including but not limited to misrepresentations of CPLR § 2214(b) to the Court on at least two occasions on February 14, 2020 and the endless lies and misrepresentations about the Moldovsky Firm's conduct in the Southern District representation, all of which were (and are) already dismissed and disproven and this, at this point, is the law;

s.  The wrongful and perverse misuse of process included Lightbox, Mr. Ellner and Mr. Miller's disruptive and purposely abusive filings including so many unauthorized Appellate Division filings that the Clerk had to issue a warning that e-filing privileges would be revoked, as indicated above;

t.   The wrongful and perverse misuse of process included  by repeatedly relitigating decided, dismissed, *res judicata* and collaterally estopped claims based on purposefully and intentionally malicious and false allegations; by refusing to withdraw impossible claims; by regularly making misrepresentations to the Court; disregarding Court rules and procedures in order to inundate Plaintiffs with burdensome and inappropriate litigation such as inappropriate motions and unwelcomed letters, sur-replies and supplemental pleadings, and impertinent reply

submissions that contain new and unrelated, already dismissed issues that Plaintiffs cannot respond to;

u.  The wrongful and perverse misuse of process included regularly abusing process, harassing Plaintiffs,  and wasting Plaintiffs' time and resources by sending letters and filing process on holidays, late at night, and on weekends; and seeking sanctions in excess of 20 times;

v.  The wrongful and perverse misuse of process included using these processes for purposes for which they were not made and devised, including using replies as an opportunity for new materials, wrongful attacks, defamation, libel, etc.; The wrongful and perverse misuse of process included on reply before the Second Circuit raising issues not otherwise before the Court and with no opportunity for opposition and not appropriately there;

w.  The wrongful and perverse misuse of process included filing an opposition and two sur-reply oppositions to the Moldovsky Firm's Second Circuit Bill of Costs, both of which had to be stricken from the docket, to harm Plaintiffs by further waste of time;

x.  The wrongful and perverse misuse of process included using legal process not for legitimate purposes but to attack the Plaintiffs with twisted falsehoods, to harm Plaintiffs' reputation, to fill internet search engines with ongoing negative attacks on the Plaintiffs and such as complained of herein;

y.  the wrongful and perverse misuse of process includes the overlybroad and unduly limiting, improper TRO proceeding that should have taken place in New Jersey (if at all) with the parties involved in the Kopel matter;

z. The wrongful and perverse misuse of process continues to this day with the newly initiated Eastern District of Pennsylvania Complaint against Plaintiffs by Mr. Ellner that consists of the same false and defamatory allegations that have already been dismissed; and

aa. more.

343. By reason of the foregoing, Plaintiff is entitled to compensatory, punitive, pecuniary and all damages appropriate per law and equity in an amount in excess of one million dollars and to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action.

## III. THIRD CAUSE OF ACTION – DECEIT AND COLLUSION VIOLATIVE OF NY JUD. LAW §487 AND UNAUTHORIZED PRACTICE OF LAW PURSUANT TO NY JUD LAW §§ 478 AND 484 AGAINST ALL DEFENDANTS EXCEPT MR. ELLNER AND THE LIGHTBOX ENTITIES

344. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

345. As described herein, various of the Defendants' fraudulent deceit violative of NY Jud. Law §487 included when they purposely and knowingly misrepresented the Plaintiffs' fee agreements with Lightbox and made further intentional and/or reckless false allegations against the Plaintiffs in the S.D.N. Y. Interpleader action and also as described herein.

346. Defendants did so with the intent of damaging Plaintiffs, wrongfully disgorging fees paid, blocking a statutory charging lien, monopolizing Plaintiffs' time and resources and defaming and damaging Plaintiffs.

347. Defendants' fraudulent deceit continued when Defendants raised the same knowingly false misrepresentations in the Second Circuit Appeal with the intent of damaging

Plaintiffs, wrongfully disgorging fees paid, wrongfully remanding the statutory charging lien, and further defaming and damaging Plaintiffs.

348. Defendants' fraudulent deceit continued when Defendants raised the same knowingly false misrepresentations in the New York Supreme Court, including in impossible crossclaims and three motions for sanctions with the intent of damaging Plaintiffs, wrongfully disgorging fees paid, wrongfully nullifying the fees due to the Plaintiffs by Lightbox, and further defaming and damaging Plaintiffs.

349. Defendants' fraudulent deceit continued when Defendants raised the same knowingly false misrepresentations in the New York Supreme Court Appellate Division First Department, including in appellate briefs wrongfully intended to void claims for account stated and a duplicate motion for sanctions, with the intent of damaging Plaintiffs, wrongfully disgorging or blocking fees paid or to be paid, wrongfully nullifying the fees due to the Plaintiffs by Lightbox, and further defaming and damaging Plaintiffs.

350. Defendants' fraudulent deceit continued when Defendants raised the same knowingly false misrepresentations in the Eastern District of Pennsylvania, including in an impossible Complaint, with the intent of damaging Plaintiffs, wrongfully nullifying the fees due to the Plaintiffs by Lightbox, and further defaming and damaging Plaintiffs in yet another forum.

351. Aside from the regular and ongoing fraudulent and deceptive allegations, Defendants continued to mislead, lie and misrepresent to the Courts as described above, including but not limited to:

a. The purposefully false, fraudulent, and contrived allegations about the Moldovsky Firm in the interpleader Complaint and every litigation thereafter, including extortion, fraudulent billing, blackmail, wrongful withdrawal, and other misconduct;

b.   The purposeful misrepresentations about the Moldovsky Firm's Agreement and Amended Agreement with Lightbox;

c.   The purposeful and regular flip-flopping over whether or not the Moldovsky Firm and Mr. Ellner had communication and strategic difficulties;

d.   Filing a Motion to Strike/Replead that was completely frivolous and not allowable under the CPLR;

e.   Mr. Miller's blatant misrepresentations to the Court about his representation of the Moldovsky Firm and Brem Moldovsky, including his role as counsel, the level of his involvement, the information he was privy to, the substantial relation of that information to the fee dispute with Lightbox, and how long he has represented Lightbox against the Firm;

f.   Mr. Miller also cited an email exchange (NY Sup. ECF Doc. #355) between counsel with no reference or implied relation to Mr. Miller's current clients, this matter, the Federal case, the Scarola firm or Mr. Miller's strategy in this matter, and which occurred long before there were any claims by or against this Firm by Mr. Miller's current clients to Plaintiffs' detriment;

g.   Mr. Miller made a blatant misrepresentation of CPLR § 2214(b) to the Court on at least two occasions;

h.   Mr. Miller's Motion for a TRO on false pretenses and misrepresented to be on behalf of Lightbox;

i.   Mr. Miller's regular misrepresentation to the Court that Plaintiffs did not proceed with the Bucks County matter due to his discovery demands even though it has been

repeatedly stated that the reasons include that Mr. Miller did not carry malpractice insurance and that the claims belonged in New York;

       j.   Mr. Miller's entirely frivolous New York motion to compel a Bill of Particulars is premised on the misrepresentation that Plaintiffs did not produce on, however, the Plaintiffs did and Mr. Miller simply rejected it;

       k.   Mr. Miller filed a Second Circuit Reply brief replete with misrepresentations, including about the Bucks County matter and the same dismissed allegations, that Plaintiffs cannot respond to correct;

       l.   Mr. Miller's multiple Appellate Division Interim Motions for extensions of time are based on false pretenses, such as "prophylactic" religious observance issues during Plaintiffs' reply time;

       m.  Mr. Miller's Affirmation of Service dated February 25, 2020 affirming that he served unredacted copies of unredacted documents at 7:00 p.m. on the due date of the Reply, several hours after they were filed did not deny that he did not give a blackline or any indication of what he changed in the "Amended" Memo;

       n.  Mr. Miller's lie and misrepresentation to the court about the other proceedings and about Judge Cote's findings, including by consistently stating to the New York Supreme Court that Judge Cote had adjudicated contractual lien claims (she clearly did not, see, Ex. "A") as well as his misrepresenting that he did not know Plaintiffs' financial and personal information when he actually did;

       o.  vast violations of the rules and part rules including but not limited blatant misrepresentations to the Second Circuit; Lightbox's multiple unauthorized sur-replies (e.g., NY Sup. ECF Docs. # 814, 905), letter motions (e.g., NY Sup. ECF Doc. #874), pleadings

(e.g., NY Sup. ECF Doc. # 734), last minute and untimely "amended" and "supplemental"

motion materials (e.g., NY Sup. ECF Docs. # 819-821, 886, 889-890 etc.); unwelcomed

letters to the Court (e.g., NY Sup. ECF Docs. #818); abuse of process by filing over-night, on

weekends, and over holidays (e.g., NY Sup. ECF Doc. # 845); short notice requests for

correspondence on a Saturday night with a Sunday afternoon reply "deadline"; regular

requests for sanctions.

352.    Mr. Miller, while still reasonably believed to be counsel to Plaintiffs was,

it is believed, from Fall 2017 through Spring 2018 (till it became known to Plaintiffs) actually

wrongfully colluding with Andrew Ellner, Jill Ellner and Lightbox against Plaintiffs including as

stated herein and by:

     a.  Undermining the negotiations around the amended agreement;

     b.  Creating strategic differences in the Federal Litigation;

     c.  Fabricating allegations to help Mr. Ellner avoid paying legal fees;

     d.   Working to undermine the attorney client relationship between the Plaintiffs,

        Lightbox and Mr. Ellner; and

     e.  Concocting and persisting in malicious prosecution against Plaintiffs.

353.    Plaintiffs have been deeply damaged over the course of three years due to

the unceasing fraudulent, deceitful litigation perpetuated by Defendants and the vast time taken

to defend against the many false allegations.

354.    Plaintiffs' damages have been augmented and expanded due to Jill

Ellner's unauthorized practice of law in violation of NY Jud. Law §§ 478 and 484.

355.    Jill Ellner was an in-house attorney for Lightbox who drafted, edited,

reviewed, and approved legal documents, including the agreement and amended agreement.

356. Jill Ellner's failures related to the documents enabled her, Mr. Ellner and Lightbox to misconstrue and then misrepresent the intent and language of them.

357. Plaintiffs have been damaged by Jill Ellner's unauthorized practice of law.

358. By reason of the foregoing, Plaintiff is entitled to statutory damages, including pursuant to NY Jud. Law §§ 485 and 485-a for violations of NY Jud. Law §§ 478 and 487, etc. punitive damages, and compensatory damages in an amount in excess of one million dollars and to be proven at trial, attorney's fees, plus associated interest and the fees and costs incurred in connection with this action.

## IV.   FOURTH CAUSE OF ACTION – FAILURE TO RECTIFY MISREPRESENTATIONS TO THE COURT AGAINST ALL DEFENDANTS

359. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

360. Defendants have made misrepresentations to the Court that they have failed to rectify, including but not limited to:

a. Lightbox has consistently maliciously levied vast disproven lies and wild allegations against the Moldovsky Firm and the undersigned, including, as already stated herein and not limited to: fraud, abuse, duress, criminal violations of various degrees, unauthorized practice of law (e.g., ECF Doc. # 350 at 58), defamation, blackmail, extortion (e.g., ECF Doc. # 886 at ¶¶ 18, 26,41, etc.), and others since 2018 to at least 6 Courts, which they have not rectified, corrected or withdrawn;

b. Defendant have falsely misrepresented Lightbox as legal neophytes, when it suits Mr. Ellner, when in reality Mr. Ellner is a Wharton educated Lehman Brothers partner capable of managing a global real estate venture and Lightbox includes two trained attorneys;

c. Lightbox, Mr. Ellner and Mr. Miller have misrepresented to the courts about the other courts proceedings and about Judge Cote's findings, including by consistently stating to the New York Supreme Court that Judge Cote had adjudicated contractual lien claims (a lie, see Ex. "A");

d. Mr. Miller has made regular misrepresentations to the Court regarding the non-existent confidential nature of his New Jersey Transcripts, and the contents thereof as well as claiming lack of knowledge of Plaintiff's financial and other confidential information that he did and does know of;

e. Jill Ellner has lied to the Court regarding alleged conversations with Plaintiffs that did not happen;

f. Jill Ellner drafted, reviewed, and assisted with submitting affirmations to the Court that were full of lies and misrepresentations; and

g. There are others as stated herein and that will certainly come to light and be fleshed out further as the matter progresses.

361. By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000 including compensatory and punitive damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action.

## V.    FIFTH CAUSE OF ACTION - PRIMA FACIE TORT AGAINST ALL DEFENDANTS

362. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

## A.  Negligent Harm

363.    Defendants have a duty or standard of care requiring each to be truthful to the tribunal in their sworn statements and to abide by the rules of the Courts;

364.    Defendants have breached their duties by making regular purposefully false misrepresentations to the Court for the purpose of harassing and abusing Plaintiffs;

365.    Defendants' breaches have resulted in consistently disruptive, abusive, frivolous and harassing endless litigation.

366.    Defendants' breaches have harmed Plaintiffs both by purposely defaming Plaintiff and harming Plaintiffs' reputations and by causing waste of time and resources.

## B.  Malicious harm to another (prima facie tort)

367.    Defendants' tortious actions across a series of Courts were intended to be harmful, were intentionally meant to harm Plaintiffs, and were motivated by anger and malice with no excuse or justification.

368.    Defendants' tortious actions would otherwise be generally unlawful even if they were not intended specifically to cause damages and done with malice as was here.

369.    Plaintiffs have suffered miserable, quantifiable losses as described herein as a result of Defendants' tortious actions.

370.    Special damages, as plead herein and as appropriate, are alleged and sought as a result of Defendants' tortious abuse.

## C.  Malfeasance Against Defendant Jonathan Miller

371.    Jonathan Miller is an attorney licensed in Pennsylvania New York, and New Jersey.

372.     Mr. Miller has acted recklessly and negligently in his relations with his clients, the Plaintiffs.

373.     Mr. Miller has recklessly and negligently represented against his clients, the Plaintiffs.

374.     Mr. Miller has recklessly and negligently failed to protect the confidential and sensitive information of his clients, the Plaintiffs.

375.     By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

## VI.     SIXTH CAUSE OF ACTION – DEFAMATION AND LIBEL AGAINST ALL DEFENDANTS

376.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

377.     Defendants have purposely and regularly defamed the Plaintiffs across the public dockets of multiple courts for at least three years with the intention of harming and abusing Plaintiffs by relentlessly making baseless allegations that Plaintiffs committed:

    i.     Fraud;

    ii.     Abuse;

    iii.     Duress;

    iv.     vexatiousness;

    v.     ethical misconduct;

    vi.     malpractice;

    vii.     usury;

viii.     criminal violations of various degrees;

ix.      unauthorized practice of law (e.g., ECF Doc. # 350 at 58);

x.      Defamation;

xi.     Blackmail;

xii.     extortion (e.g., ECF Doc. # 886 at ¶¶ 18, 26,41, etc.); and

xiii.    more and others as stated herein.

378.    Defendants have put forth these defamatory allegations on the public dockets in six courts across two states.

379.    Defendants' motivation for doing so was to maliciously and deliberately cause harm to Plaintiffs personal and professional reputations and business.

380.    Defendants have also defamed Plaintiffs by making false, unfounded and *ad hominem* attacks and insulting the Plaintiffs in letters and filings before the Court on so many occasions that it is difficult to quantify, however, this includes calling the Plaintiffs "vexations", "recalcitrant", "obstreperous", mocking Brem Moldovsky's law degree, and other unnecessary, false and abusive insults.

381.    Defendants' defamation and having to fend and defend against it has caused damages, losses, reputation loss, the loss of business and other opportunities the Plaintiff may otherwise have been available for.

382.    There is Defamation per se here, including in that it is false defamation related to and about the practice of a profession.

A. <u>Libel and Slander</u>

383.    Defendants have also libeled and slandered Plaintiffs in their utterances by publishing hundreds of pages of knowingly false and maliciously misrepresented defamatory allegations about individual Plaintiffs across in excess of 5 public dockets.

384.    Defendants have purposefully acted to build as much negative online information as possible to hurt Plaintiffs' reputations, including via google search and other search engines, including those of courts.

385.    Defendant's only and main reason for doing so was to cause harm to Plaintiffs.

386.    By reason of the foregoing, Plaintiff is entitled in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action.

## VII.    SEVENTH CAUSE OF ACTION - TORTIOUS AND MALICIOUS INTERFERENCE AGAINST ALL DEFENDANTS EXCEPT MR. FINK

387.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

388.    Defendant Miller, from Fall 2017 through the Spring of 2018 during the Plaintiff Firm's representation of Lightbox, upon information and belief made malicious, false allegations about Plaintiffs to Mr. Ellner that interfered with the Firm and Lightbox's working relationship.

389.    Mr. Miller's interference was the fulcrum of the issues leading to the Moldovsky Firm's withdrawal from representation before completing contemplated and planned for post-trial and appeal work.

93

390.    Mr. Miller and Lightbox then abandoned more fruitful post-trial work and appeal work to launch a malicious retaliatory attack on Plaintiffs, including to blame Plaintiffs for their own failures.

A.    Intentional Interference with Contractual Relationship

391.    Mr. Miller knew that Lightbox and the Plaintiff firm were operating pursuant to a contract for services and was counsel for Lightbox during the time the Agreement was being amended.

392.    Upon information and belief Mr. Miller interfered with Lightbox, Mr. Ellner and Plaintiffs' negotiations during the process of creating the amendment.

393.    Mr. Miller interfered with Lightbox and Mr. Ellner causing an attorney-client break up, losses thereby and the losses of lost time and fees including by the failure of Mr. Ellner and Lightbox to make agreed upon payments to Plaintiffs.

394.    Mr. Miller did so for the purpose of taking on Mr. Ellner and Lightbox as his clients, self-dealing, self-benefit and such as stated herein.

395.    Because of Mr. Miller's interference, Plaintiffs were deprived of their earned payments, stripped of their clients, and forced into protracted litigation with Lightbox Mr. Ellner and Mr. Miller.

396.    Plaintiffs, by this action, have been damaged and irreparably harmed.

B.    interference with economic advantage

397.    Defendants have interfered with other third-party business relationships as well.

398.    Aside from purposely defaming Plaintiffs on the public dockets, Defendants have attempted to interfere with business relationships by reaching out to Plaintiffs'

94

colleagues to attempt to malign Plaintiffs and by trying to destroy Plaintiffs' reputations, time and ability to serve clients.

399. Defendants have known just what they are doing and their intent, aim and impact have been inline; to deprive Plaintiffs of time and resources and block their ability to practice law, take on other matters, serve clients, have any personal time, etc.

400. Defendants acted with the sole and purpose of harming Plaintiffs and used dishonesty and malice to injure the Plaintiffs' relationships including by making it so that Plaintiffs would have no time for other clients and to take on new clients and this has been happening to a substantial way for years now.

401. By reason of the foregoing, Plaintiff is entitled in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action.

## VIII.    EIGHTH CAUSE OF ACTION – FRAUD AND FRAUD IN THE INDUCEMENT AGAINST JONATHAN MILLER

402. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

403. Mr. Miller was counsel to Plaintiffs including pursuant to an agreement for services.

404. Mr. Miller, prior to being hired, misrepresented his employment history, conflicts, and ongoing issues of central to concern to Plaintiffs.

405. Mr. Miller did so purposely in order to foster a colleague relationship with Plaintiffs, ingratiate himself, secure referrals and gain benefit.

406. Plaintiffs proceeded to hire Mr. Miller based on the false premises he provided about his background and experience with Wong Fleming and Drinker Biddle.

407. Mr. Miller misrepresented himself because he knew that being truthful about his role and involvement in the <u>Kopel matter and his issues at Wong Fleming generally, Plaintiffs would not have been colleagues with him, hired him, or referred him to others.</u>

408. <u>Mr. Miller continued to conceal and misrepresent his issues in New Jersey for approximately four years, compounding the fraud.</u>

409. It is unknown whether and to what extent Lightbox was aware of Mr. Miller's involvement in the <u>Kopel</u> litigation during the time he was working for Lightbox, but it is likely he fraudulently misrepresented to Lightbox as well. .

410. Plaintiffs reasonably and justifiably relied on Mr. Miller's misrepresentations and reinforcements, confirmations and reconfirmations of his misrepresentations and deceit as he knew and reasonably foresaw and expected that they would.

411. Plaintiffs suffered damages and losses as a result of the fraudulent activity and misrepresentations all of which were reasonably foreseeable to Defendants, as plead herein.

412. If not for Mr. Miller's fraud, he would not have been involved with Plaintiffs and Plaintiffs would not have suffered much of the losses as stated herein.

413. An important part of the damages and losses here are as a result of Mr. Miller's conduct against the Plaintiffs is the same sort of conduct that Mr. Miller lied about, misrepresented, hid from, omitted, purposefully obscured from and tried to cover over and keep from Plaintiffs. Thus, Plaintiffs would not have worked with Mr. Miller had they known the truth and since they did not and worked with Mr. Miller they ended up being injured and damaged by the very information that Mr. Miller lied about and hid from them.

A. <u>Fraudulent Concealment by Fiduciary</u>

414. Mr. Miller was counsel to Plaintiffs pursuant to an agreement for services.

96

415.     Mr. Miller, prior to being hired, misrepresented his employment history, conflicts, and ongoing issues of central to concern to Plaintiffs.

416.     Mr. Miller did so purposely in order to foster a colleague relationship with Plaintiffs, ingratiate himself, secure referrals and gain benefit.

417.     Plaintiffs reasonably relied on Mr. Miller's misrepresentations and hired him as counsel related to two sensitive, personal matters and also deeply involved him with and referred him to Mr. Ellner.  Mr. Miller did not rectify or clarify his misrepresentations at these time but rather allowed the reliance to continue.

418.     Because of these misrepresentations Plaintiff was damaged.  Had the Plaintiffs known Mr. Miller's real history, they would not have hired him and their sensitive and confidential information would not have been exposed.  They also would not have involved them with an active and important client, Mr. Ellner and Lightbox.

B.  Legal Fraud

419.     Mr. Miller has continued and continues to perpetuate and attempt to perpetuate his fraud per the actions stated herein, including by misrepresenting, obscuring and hiding his problematic past experiences as an attorney with conduct and problems that make it less desirable to work with or hire him, and in fighting to conceal parts of  the New Jersey public docket and thus his own conduct relevant to those interacting with him.

420.     Mr. Miller's attempts to obscure and hide his problematic past experiences as an attorney with conduct and problems that make it less desirable to work with or hire him and to conceal the public record have a detrimental effect on Plaintiffs, the courts, other clients and potential clients and the public interests because it removes the ability of the public to know the

truth about potential counsel and an officer of the court and his interactions with other attorneys, clients and the courts.

C.     Equitable Fraud

421.    In the event Mr. Miller's misrepresentation was not fully purposeful, Mr. Miller still committed fraud on the Plaintiffs and public by concealing material facts relevant to potential clients, other attorneys, the courts and the public.

422.    Mr. Miller's negligent misrepresentation, concealment, and further attempts at concealment are inequitable and fraudulent.

423.    By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action..

## IX.    NINTH CAUSE OF ACTION – NEGLIGENT MISREPRESENTATION AGAINST JONATHAN MILLER

424.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

425.    Mr. Miller made negligent misrepresentations about his background, experience, conflicts and misconduct with his former employers.

426.    Mr. Miller's negligent misrepresentations are detrimental to the Plaintiffs and public as stated herein and because they conceal or misconstrue material facts relevant to his fitness as an attorney.

427.    Mr. Miller's negligent misrepresentation, concealment, and further misrepresentations are negligent and inequitable.

428.     By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action.

## X.    TENTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTY AGAINST JONATHAN MILLER

429.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

430.     Jonathan Miller breached the fiduciary duty of loyalty that he owed the Plaintiffs as a result of their attorney-client relationship by the various failures alleged herein including failing to ensure that he and his law firm remained free of conflicts of interest in representing Plaintiffs and also including making Plaintiffs vulnerable and exposed to those wishing to harm them based on using Plaintiff's own confidential, personal, private, financial, etc. information against them.

431.     Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state.  Plaintiffs are asserting a professional liability claim against this defendant.  He has offices in N.J. and N.Y., apparently.

432.     In representing Lightbox, Mr. Miller failed to apply a duty of loyalty, care, honesty and more to Plaintiffs.

433.     Mr. Miller further breached his fiduciary duty to Plaintiffs by purposefully causing problems such as undertaking the representation of Lightbox and providing inaccurate and outright untruthful information to the tribunal about Plaintiffs and the extent of his knowledge of their confidential, financial, private, etc. information, along with the ongoing harassment and abuse against Plaintiffs.

99

434.    Despite the conflict of interest of representing a party adverse to Plaintiffs' interest, upon information and belief, Mr. Miller neither advised Lightbox to seek unconflicted counsel, nor sought to withdraw from the representation.

435.    Pursuant to the Pa R.P.C. Rule 1.7(b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.  A concurrent conflict of interest exists if: 1) the representation of one client will be directly adverse to another client; or 2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

436.    As a direct and proximate cause of Mr. Miller's breach of fiduciary duty, Plaintiffs were forced to file various legal papers and motions challenging Mr. Miller's representation of Lightbox against them, costing them substantial time and costs in litigation costs, attorney time, and law firm legal time.

437.    For the foregoing reasons, injustice can only be avoided by finding Mr. Miller liable to Plaintiffs for his breaches of fiduciary duty beginning with his failure to rectify his misrepresentations to his former clients, the Plaintiffs, regarding his prior employment, continuing with his adverse representation of Lightbox and Mr. Ellner against his former clients, and ongoing to this day.

438.    Judge Baldi confirmed that the Plaintiffs have asserted claims against Mr. Miller that could go to a jury.

439.    By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorneys fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller,

100

attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action.

## XI.    ELEVENTH CAUSE OF ACTION – LEGAL MALPRACTICE AGAINST JONATHAN MILLER

440.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

441.    Mr. Miller has breached his duty of trust and loyalty to his clients in violation of Pa R.P.C. Rule 1.6 (and others).

442.    Mr. Miller has knowingly and purposely exposed his clients, the Plaintiffs' personal, confidential, sensitive information to Lightbox and/or to be used to benefit Lightbox against Plaintiffs.

443.    Pursuant to Pa.R.C.P. 1042.2(a), Defendant Jonathan R Miller is a licensed professional with offices out of state.  Plaintiffs are asserting a professional liability claim against this defendant.  He has offices in N.J. and N.Y., apparently.

444.    Plaintiffs are former clients of Mr. Miller.

445.    To recover for legal malpractice, plaintiffs must establish as is established here (1) Employment of attorney or other basis for duty; (2) Failure of attorney to exercise ordinary skill and knowledge; and (3) The attorney's action was the proximate cause of damage to the plaintiff. See Rizzo v. Haines, 555 A.2d 58, 65 (1989); see also, Schenkel v. Monheit, 405 A.2d 493, 494 (1979).

446.    For the prior litigations in this Court, Mr. Miller's Agreement to represent Brem Moldovsky is incorporated herein and attached hereto as Exhibit "B".  Mr. Miller represented Brem Moldovsky's wife and Brem Moldovsky L.L.C. implicitly.

447.    Absent an express contract, an implied attorney-client relationship will be found if the purported client sought advice or assistance from the attorney, the advice sought was within the attorney's competence, the attorney expressly or impliedly agreed to render such assistance, and it is reasonable for the putative client to believe the attorney was representing him.  See Atkinson v. Haug, 622 A.2d 983, 986 (Pa. Super. 1993).

448.    There was an express attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C.

449.    In the alternative, if the Court decides that there is not an express representation, there was an implied attorney-client relationship between Jonathan Miller and Brem Moldovsky, L.L.C. because Brem Moldovsky, L.L.C. sought Mr. Miller's legal advice and he agreed to render such assistance.

450.    The attorney and law firm Defendant, licensed professionals in PA, NJ and NY, engaged in legal malpractice that was the proximate cause of damage to Plaintiffs when they failed to exercise ordinary skill and knowledge by engaging in the following intentional, reckless, and negligent actions:

      a.   Failing to hold safe and keep confidential information known and learned in his representation of the Plaintiffs in violation of Pa. Rules of Professional Conduct R. 1.6 as well as the corresponding parts of NY and NJ's attorney ethical rules;

      b.   Assuming representation of Lightbox knowing that Lightbox was making claims against the Plaintiffs despite having a clear conflict of interest with his ongoing attorney-client relationship in violation of

Pa. and NY Rules of Prof'l Conduct R. 1.7, as well as the corresponding parts of NJ's attorney ethical rules;

       c.   Representing Lightbox against Plaintiffs in a matter in which Lightbox is unfairly advantaged due to Mr. Miller's prior representation of the Plaintiffs in violation of Pa. and NY Rules of Prof'l Conduct R. 1.8(b), as well as the corresponding parts of NJ's attorney ethical rules;

       d.   Representing Lightbox against in a matter in which Lightbox is materially averse to Plaintiffs in violation of Pa. and NY Rules of Prof'l Conduct R. 1.9, as well as the corresponding parts of NJ's attorney ethical rules;

       e.   Making false statements and breaching his duty of candor to the tribunal in violation of Pa. and NY Rules of Prof'l Conduct R. 3.3, as well as the corresponding parts of NJ's attorney ethical rules;

       f.   Breaching the duties of loyalty owed to Plaintiffs in violation of Pa. and NY Rules of Prof'l Conduct R. 1.7, 1.9, as well as the corresponding parts of NJ's attorney ethical rules;

       g.   Perpetrating fraud by knowingly filing false statements in support of Lightbox's and his own positions. (See Eisenberg v. Gagnon, 766 F.2d 770, 778-79 (3d Cir. 1985) (privity of contract is not required to hold an attorney responsible for his intentional torts such as fraud));

       h.   Failing to withdraw himself from representing Lightbox thereby requiring the Plaintiffs to move to disqualify him;

          i.    Allowing himself and the information he possesses from and of the Plaintiffs to be wrongfully used against the Plaintiffs;

          j.    Failing to diligently communicate about start, end, the ongoing nature (or not) of representation, related to conflicts of interest and more, as stated herein; and

          k.    Such other misconduct, misrepresentations, fraud, chicanery and such as is explicitly and/or implicitly complained of herein.

451.    The aforementioned failures to exercise ordinary skill and knowledge were independently and jointly the proximate causes of damage to Plaintiffs.

452.    Judge Baldi confirmed the viability of these claims by stating that they could go to a jury.

453.    By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorneys fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

## XII.    TWELVTH CAUSE OF ACTION – VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT AGAINST JONATHAN MILLER

454.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

455.    Treble damages, attorneys fees, compensation and all appropriate remedies are sought by the Plaintiffs under the New Jersey Consumer Fraud Act (N.J. Stat., Title 56, Chapter 8) due to Defendants' violations of same

456.     The act, in part, states: "the act, use or employment by any person of any unconscionable commercial practice, deception or fraud, false pretense, false promise or misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate…is declared to be an unlawful practice…," and this occurred here.

457.     Mr. Miller is an attorney practicing in New Jersey who was active in New Jersey at all relevant times and is a resident of New Jersey.

458.     Mr. Miller dealt with, served, mis-served, betrayed, wronged and acted badly upon the Plaintiffs as stated herein. For much of that Mr. Miller was in New Jersey and for some of it Plaintiffs were in New Jersey and with Mr. Miller in New Jersey.

459.     Mr. Miller purposefully mislead Plaintiffs to believe that they were represented by him as Counsel, and that he would reasonably comply with the laws and expected ethical codes applicable to counsel in the Commonwealth.

460.     Mr. Miller breached his duty to the Plaintiffs by violating 3 states' Rules of Professional Conduct by purposely, willfully, and knowingly positioning himself in a conflict with current and former clients.

461.     Mr. Miller acted deceptively and with deceit when he wrongfully colluded against, aggressively attacked, committed fraud against and more against the Moldovsky, as plead herein, and, including pursuant to and in line with his threats to makes things "hard" on the Plaintiffs and then proceeding to do so by lying to the Court, lying about not having knowledge of Plaintiffs' confidential information, lying about the benefit gained by Lightbox from his knowledge of the Plaintiffs' sensitive confidential information, and purposely attacking the

character of the Moldovsky Firm, Brem Moldovsky, and even the firm's paralegal and all as plead herein.

462.    The Plaintiffs have suffered tremendous losses and damages due to the complained of conduct, as plead herein.

463.    Mr. Miller held himself out as a reputable and trustworthy professional, but he was involved with purposeful conflict, disparagement, misstatements to the Court, perjury and the various other problematic behavior complained of here.

464.    Mr. Miller neglected his fiduciary, loyalty and other obligations to the Plaintiffs as their lawyer.  He failed in his loyalty to the Plaintiffs to refrain from working with a party in conflict of interest and by allowing Plaintiffs' confidential information to be used against them.

465.    To the extent that the facts, circumstances, relationships, etc. here between Mr. Miller and the Plaintiffs falls under and fits within the protections of the Under the New Jersey Consumer Fraud Act, Plaintiffs are seeking compensatory, punitive, penal and treble damages, interest and attorneys fees and all relief under the Act as well as a return of all of the monies that Plaintiffs paid to Defendant Mr. Miller along with all other recoverable damages under the statute and at law.

466.    By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential, statutory treble damages and punitive damages, attorney's fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action.

### XIII. THIRTEENTH CAUSE OF ACTION – VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW AGAINST JONATHAN MILLER

467.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

468.    Through various of the complained of conduct, and by certain conduct in particular, Mr. Miller has violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law in general, and in Definitions, "Unfair methods of competition" and "Unfair or deceptive acts or practices," and Unlawful acts or practices; exclusions, S 201-1 et seq. and 201-2(4) (vii),(viii), (ix), and S 201-3 and other pertinent sections.

469.    Mr. Miller purposefully mislead Plaintiffs to believe that they were represented by him as Counsel, and that he would reasonably comply with the laws and expected ethical codes applicable to counsel in the Commonwealth.

470.    Mr. Miller breached his duty to the Plaintiffs by violating 3 states' Rules of Professional Conduct by purposely, willfully, and knowingly positioning himself in a conflict with current and former clients.

471.    Mr. Miller acted deceptively and with deceit when he wrongfully colluded against, aggressively attacked, colluded against, committed fraud against and more against the Moldovsky, as plead herein, and, including pursuant to and in line with his threats to makes things "hard" on the Plaintiffs and then proceeding to do so by lying to the Court, lying about not having knowledge of Plaintiffs' confidential information, lying about the benefit gained by Lightbox from his knowledge of the Plaintiffs' sensitive confidential information, and purposely attacking the character of the Moldovsky Firm, Brem Moldovsky, and even the firm's paralegal and all as plead herein.

107

472. The Plaintiffs have suffered tremendous losses and damages due to the complained of conduct, as plead herein.

473. Mr. Miller held himself out as a reputable and trustworthy professional, but he was involved with purposeful conflict, disparagement, misstatements to the Court, perjury and the various other problematic behavior complained of here.

474. Mr. Miller neglected his fiduciary, loyalty and other obligations to the Plaintiffs as their lawyer. He failed in his loyalty to the Plaintiffs to refrain from working with a party in conflict of interest, using Plaintiffs' confidential, personal, private, financial, etc. information with their permission, to their detriment and against them.

475. The relationships here between the service provider and the Plaintiffs falls under and fits within the protections of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

476. By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential, statutory damages and punitive damages, attorneys fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action.

477. Plaintiffs are seeking all possible and appropriate statutory, compensatory and treble damages, interest and attorney's fees, return of all of the monies that Plaintiffs paid to Defendant Mr. Miller and all other recoverable damages, penal and otherwise, under the statute.

## XIV.   FOURTEENTH CAUSE OF ACTION – VIOLATION OF NY GENERAL BUSINESS LAW § 349 (CONSUMER FRAUD) AGAINST JONATHAN MILLER

478.   Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

479.   Mr. Miller purposefully mislead Plaintiffs to believe that they were represented by him as Counsel, and that he would reasonably comply with the laws and expected ethical codes applicable to counsel in New York.

480.   Mr. Miller breached his duty to the Plaintiffs by violating the various applicable attorney professional conduct rules by purposely, willfully, and knowingly positioning himself in a conflict with current and former clients.

481.   Mr. Miller acted deceptively and with deceit when he wrongfully colluded against, aggressively attacked, colluded against, committed fraud against and more against the Moldovsky, as plead herein, and, including pursuant to and in line with his threats to makes things "hard" on the Plaintiffs and then proceeding to do so by lying to the Court, lying about not having knowledge of Plaintiffs' confidential information, lying about the benefit gained by Lightbox from his knowledge of the Plaintiffs' sensitive confidential information, and purposely attacking the character of the Moldovsky Firm, Brem Moldovsky, and even the firm's paralegal and all as plead herein.

482.   The Plaintiffs have suffered tremendous losses and damages due to the complained of conduct, as plead herein.

483.   Mr. Miller held himself out as a reputable and trustworthy professional, but he was involved with purposeful conflict, disparagement, misstatements to the Court, perjury and the various other problematic behavior complained of here.

484.   Mr. Miller neglected his fiduciary, loyalty and other obligations to the Plaintiffs as their lawyer.  He failed in his loyalty to the Plaintiffs to refrain from working with a party in conflict of interest, using Plaintiffs' confidential, personal, private, financial, etc. information with their permission, to their detriment and against them.

485.   To the extent that the relationships here between Mr. Miller and the Plaintiffs falls under and fits within the protections of the Under NY General Business Law § 349, Plaintiffs are seeking all possible and appropriate statutory, compensatory and penal damages, interest and attorney's fees, return of all of the monies that Plaintiffs paid to Defendant Mr. Miller and all other recoverable damages under the statute.

486.   By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential, statutory damages and punitive damages, attorneys fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action.

## XV.   FIFTEENTH CAUSE OF ACTION – BREACH OF CONTRACT FOR PROFESSIONAL LEGAL SERVICES AGAINST JONATHAN MILLER

487.   All of the paragraphs of the Complaint and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

488.   Exhibit "E" attached hereto and as described above includes the contract for legal services and consultation which have been breached.  Jonathan Miller agreed to and did act as counsel and as attorney to Brem Moldovsky, as well as for his wife and the Brem Moldovsky, L.L.C. "implicitly".  Jonathan Miller also represented Plaintiffs and their interests for some time after the conclusion of the prior litigations with Plaintiffs understanding it to be an ongoing attorney client relationship until the open fall out with Mr. Miller in Spring 2018.

110

489.    Jonathan Miller and his firm entered into and later breached an agreement with Brem Moldovsky.  Implicit in Mr. Millers contractual undertaking to represent Brem Moldovsky was that Jonathan Miller and his law firm would exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession in similar circumstances and abide by an attorney's ethical duties and obligations, including to clients and the Plaintiffs.

490.    A plaintiff successfully establishes a breach of contract claim against an attorney by demonstrating that the attorney has breached his or her contractual duty to provide legal service in a manner consistent with the profession at large.  See  Gorski v. Smith, 2002 Pa. Super. 334, 812 A.2d 683 (Pa. Super. 2002).

491.    Pursuant to Pa. Rules of Prof'l Conduct R. 1.7, a lawyer shall not represent a client if the representation involves a concurrent conflict of interest that is "directly adverse" to another client.  A lawyer must obtain client consent to conflicting representation after full disclosure and consultation concerning the potential or actual conflict of interest.

492.    Despite the conflict of interest of representing a party adverse to Plaintiffs' interests and with the benefit of Plaintiffs' confidential, privileged, sensitive, financial, etc. information, Jonathan Miller actively sought out and became Lightbox's attorney against the Plaintiffs.  Mr. Miller neither advised Plaintiffs of these conflicts of interest (indeed he denies them) nor presented Plaintiffs with an opportunity to consent to waiving such conflict (though they did not and do not). Furthermore, Mr. Miller never sought to withdraw himself from the representation, though he was requested to in the Spring of 2018 and thereafter.

493.    Jonathan Miller and his law firm breached their implied and express contractual obligation to Plaintiffs by many of the actions complained of herein and by

111

undertaking the "directly adverse" representation of Lightbox against the Plaintiffs in representing Lightbox related to fee disputes, misuse of Plaintiffs' information and all the attacks as stated herein that are directly averse to Plaintiffs' interests.

494.    If Jonathan Miller or his law firm had provided legal service in a manner consistent with the profession at large and observed basic rules of professional conduct on conflicts of interest, Plaintiffs would not have been subjected to the release and revealing of sensitive confidential information, and would not have had to file an action against Mr. Miller and take various defensive and legal steps and incurred so much expense and lost time, as stated herein.

495.    Accordingly, Jonathan Miller and his law firm breached their contractual duty to provide legal service in a manner consistent with the profession at large.  As a direct and proximate cause of their breach of contract, Plaintiffs incurred in excess of $1,000,000 in damages, legal fees, lost professional time, and costs and expenses.

WHEREFORE, Plaintiff requests judgment against Mr. Miller in excess of $1,000,000.00, including compensatory, incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to Mr. Miller, attorney's fees and costs, pre and post judgment interest and any other relief the Court deems just and proper.

## XVI.    SIXTEENTH CAUSE OF ACTION – AIDING AND ABETING AGAINST ALL DEFENDANTS

496.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

497.    The Defendants have each committed and are each liable for this cause of action based on the allegations herein and this pleading in general.  There are various formulations and permutations of which Defendants are liable for aiding and abetting the various tortious, wrongs, bad acts, statutory violations, violations of law, etc. as plead herein so that all such that are viable and logical are hereby plead.

498.    Still, this pleading here includes specific articulation of some of the many actionable aiding and abetting that occurred here.

Aiding and Abetting Attorney Misconduct (Counts I – VIII) Breach of Fiduciary Duty (Count X) and Malpractice (Count XI) Against Andrew Ellner, Jill Ellner and Lightbox

499.    Mr. Miller has breached his attorney and fiduciary duties to the Plaintiffs.

500.    Andrew Ellner, Jill Ellner and Lightbox conspired with Mr. Miller and provided substantial assistance to Mr. Miller in their shared desire to breach Mr. Miller's attorney and fiduciary duties to the Plaintiffs for the common goal of financial gain and malicious harm.

501.    Andrew Ellner, Jill Ellner and Lightbox encouraged, directed, and persisted in utilizing Mr. Miller's representation against the Plaintiffs despite being aware of Mr. Miller's conflicts of interests and benefits to them and him of his having the benefit of Plaintiffs' confidential, sensitive, privileged, personal, financial, etc. information.

113

502.     Andrew Ellner, Jill Ellner and Lightbox encouraged, directed, funded and directly oversaw Mr. Miller's tortious actions, attacks against Plaintiffs, and multiple breaches of duties owed to the Plaintiffs.

503.     Andrew Ellner, Jill Ellner and Lightbox encouraged, directed, and directly oversaw Mr. Miller's tortious actions, malicious attacks against Plaintiffs, and multiple malicious prosecutions by allowing, funding, encouraging, directing, etc. Mr. Miller to litigate under the veil of representing Lightbox and Mr. Ellner and on their behalf.

504.     Andrew Ellner, Jill Ellner and Lightbox encouraged, funded, directed, and directly oversaw and participated in Mr. Miller's defamation, libel and slander against Plaintiffs.

505.     Andrew Ellner, Jill Ellner and Lightbox encouraged, directed, funded and directly oversaw  Mr. Miller's continued fraudulent misrepresentations and concealment of his misconduct from the Plaintiffs and the public.

506.     The Plaintiffs have been damaged and harmed as a result of Mr. Ellner, Jill Ellner and Lightbox's aiding and abetting Mr. Miller.

Aiding and Abetting Unauthorized Practice of Law (Count III) Against Andrew Ellner, and Lightbox

507.     Andrew Ellner, Jill Ellner and Lightbox represented that Jill Ellner was an attorney with the ability to draft, edit, review, and approve legal documents.

508.     It was not disclosed until a later date that Jill Ellner was no longer licensed to practice law.

114

509.     Jonathan Miller, Andrew Ellner and Lightbox encouraged, directed, and directly oversaw and participated in Jill Ellner's unauthorized practice of law.

510.     The Plaintiffs have been damaged and seriously harmed as a result of Andrew Ellner, Lightbox and Mr. Miller aiding and abetting Jill Ellner's unauthorized practice of law.

<u>Aiding and Abetting Tortious Abuse of Process (Count II) and Tortious Interference (Count VII) Against Jonathan Miller</u>

511.     Andrew Ellner, Jill Ellner and Lightbox utilized counsel to launch a malicious and abusive attack on the Plaintiffs.

512.     Mr. Miller has provided substantial assistance to Andrew Ellner, Jill Ellner and Lightbox in their shared desire to maliciously prosecute and abuse Plaintiffs for the common goal of financial gain and malicious harm.

513.     Mr. Miller encouraged, directed, and persisted in utilizing Mr. Miller's representation against the Plaintiffs despite being aware of his conflicts of interests and ability to wrongfully use Plaintiff's information against them.

514.     The Plaintiffs have been damaged and seriously harmed as a result of Mr. Miller aiding and abetting Mr. Ellner, Jill Ellner and Lightbox.

<u>Alternative Liability</u>

515.     All possible tortfeasors are before the court and all have breached a duty or aided and abetted breaching a duty to the Plaintiffs.

516.     The conduct of one Defendant has caused Plaintiff's injuries, as had the conduct of all.

517.    The Defendants, as a group, have greater knowledge as to the extent of their breaches and the extent they were aided and abetted by various other Defendants.

518.    By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorney's fees and costs, plus associated interest and the fees and costs incurred in connection with this action.

## XVII.    SEVENTEENTH CAUSE OF ACTION – PIERCING THE CORPORATE VEIL, ALTER EGO, CORPORATE SUCCESSOR AGAINST ANDREW ELLNER, JILL ELLNER AND LIGHTBOX

519.    All of the foregoing paragraphs and all Exhibits to this Pleading are incorporated herewith as if set forth fully and at length.

520.    There is a definite comingling of funds between the Ellners and the Lightbox Defendants and the Ellners acceptance of responsibility for the Lightbox Defendants' liabilities upon information and belief.

521.    The Ellners (Mr. Ellner in particular) were similarly responsible for attending to the liabilities of Lightbox Ventures, L.L.C. pursuant to clause 10(a) of the Agreement and Amended Agreement with Brem Moldovsky, L.L.C.

522.    Upon information and belief, the Ellners have consistently comingled Lightbox's interests with their own, and have comingled Lightbox's assets with their own.

523.    Furthermore, upon information and belief, the Ellners have used and misused Lightbox as a cudgel to persist in endless litigation behind the asset protection of an entity.

524.    The Ellners dominate Lightbox and it is essentially an alter -ego for them individually, and each Lightbox entity is an alter-ego of the other.

525.    SMZ plead extensively about the known informalities and bases for Mr. Ellner's assumption of liability from Lightbox in the New York Supreme Court matter, New York Sup. Ct. Case No. 651324/2017, ECF Doc. 69 at ¶¶23-51 (the document on the public record is redacted.  Unredacted copies can be provided by the parties here upon request).

526.    The claims that Lightbox's veil should be pierced and the Ellners should assume responsibility for it as a *prima facie* determination has been held by Judge Cannataro's decisions keeping these claims open (Ny Sup. ECF Docs. #464 and 685).

527.    By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorney's fees and costs, plus associated interest and the fees and costs incurred in connection with this action.

## XVIII.    EIGHTEENTH CAUSE OF ACTION – CONCERT OF ACTION AGINST ALL DEFENDANTS

528.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

529.    Each named Defendant herein jointly and severally and on the part of one another purposely and expressly and with a tacit intent participated with one another with a common plan to maliciously prosecute and abuse the Plaintiffs.

530.    Each Defendant individually acted with individual intent to commit their own acts in furtherance of the common plan to maliciously prosecute, injure and damage Plaintiffs.

531.    Mr. Ellner, Mr. Miller, and Lightbox each specifically acted individually and in concert in furtherance of the common plan to maliciously prosecute the Plaintiffs by authorizing, initiating, and perpetuating abusive litigation.

117

532. By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorney's fees and costs, plus associated interest and the fees and costs incurred in connection with this action.

## XIX. NINETEENTH CAUSE OF ACTION – PERMANENT INJUNCTION AGAINST ALL DEFENDANTS EXCEPT MR. FINK

533. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here.

534. Defendants should be precluded from filing any new litigation, process, pleading, motion or any statements related to either Plaintiff and the already dismissed claims or religious practices without judicial approval.

535. Plaintiffs seek this relief due to the vast and incessant pattern of Defendants' lying, misrepresentation, re-litigation of dismissed claims and allegations, ongoing malicious abuse, and regular unending defamation and abuse.

536. By reason of the foregoing, Plaintiff is entitled to in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorneys fees and costs, plus associated interest, an order of permanent injunction barring Defendants from initiating any additional proceedings or making any additional filings against the Plaintiffs in or related to any forum within this Court's authority to do so, and barring Mr. Miller from using, possessing, communicating, distributing and publicizing Plaintiffs' information and the fees and costs incurred in connection with this action.

## XX. TWENTIETH CAUSE OF ACTION – EQUITY

537. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth here

118

538.    This cause of action is plead based upon all the facts and circumstances herein, including specifically those expressed in the other causes of action in these pleading.

### A.  Equitable Estoppel

539.    The Equitable Estoppel cause of action is plead to the extent this Court recognizes or may recognize it as a cause of action, and, it is plead as legal mechanisms, tools of justice, positions, applications of law to fact and as otherwise appropriate per the facts here.

540.    Mr. Miller spoke misleading words and acted in a misleading way and Plaintiff has suffered damages directly as a result of Defendants' breach of their attorney-client relationship.  These damages are a reasonably foreseeable result of Defendants' conduct.

541.    Plaintiffs had the right to reasonably rely upon Mr. Miller's duty to comply with his ethic obligations as counsel to the Plaintiffs.

542.    Defendants should be estopped from continuing to represent against the Plaintiffs.

Wherefore, Plaintiffs are entitled to in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action

### PRAYER FOR RELIEF

By reason of the foregoing, Plaintiffs are entitled to in excess of $1,000,000, including compensatory, pecuniary, incidental, consequential and punitive damages, all damages as appropriate per law and the relevant statutes, including as plead herein, attorneys fees and costs, plus pre and post judgment at the highest rate allowed by law per the circumstances here, interest and the fees and costs incurred in connection with this action, and thus Plaintiffs make this prayer for relief as follows:

119

1.    On the first cause of action – malicious prosecution- in in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, (on aspects) statutory damages pursuant to the Pennsylvania Dragonetti act, 18 Pa. C.S. A. § 8352,  attorneys fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

2.    On the second cause of action – abuse of process - in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, statutory damages, attorneys fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

3.    On the third cause of action, deceit and collusion violative of NY Jud. Law, in excess of $1,000,000, including statutory damages including pursuant to NY Jud. Law §§ 478, 487, 485 and 485-a, punitive damages, and compensatory damages in an amount to be proven at trial, plus associated interest and the fees and costs incurred in connection with this action;

4.    On the fourth cause of action, failure to rectify misrepresentations to the court, in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, plus associated interest and the fees and costs incurred in connection with this action;

5.    On the fifth cause of action, prima facia tort, in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorney's fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

6.    On the sixth cause of action, defamation and libel *pro se*, in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorney's fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

7.    On the seventh cause of action, tortious and malicious interference, in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorney's fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

8.    On the eighth cause of action, fraud and fraud in the inducement, in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorney's fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

9.    On the ninth cause of action, negligent misrepresentation, in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorney's fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

10.    On the tenth cause of action, breach of fiduciary duty, in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages, attorney's fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

11.    On the eleventh cause of action, legal malpractice, in excess of $1,000,000, including compensatory, incidental, consequential and punitive damages,

attorney's fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

12. On the twelfth cause of action, violation of the New Jersey Consumer Fraud Act, in excess of $1,000,000, including compensatory, incidental, consequential, statutory treble damages and statutory damages pursuant to N.J. Stat., Title 56, Chapter 8, punitive damages, attorneys fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorney's fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

13. On the thirteenth cause of action, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, in excess of $1,000,000, including compensatory, incidental, consequential, statutory damages pursuant to S 201-1 et seq. and punitive damages, attorney's fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

14. On the fourteenth cause of action, violation of the NY General Business Law, in excess of $1,000,000, including compensatory, incidental, consequential, statutory damages pursuant to NY General Business Law § 349, and punitive damages, attorney's fees, litigation costs, forfeiture and disgorgement of fees paid to Mr. Miller, attorneys fees and costs, plus associated interest and the fees and costs incurred in connection with this action;

15. On the fifteenth cause of action, breach of contract for professional services, judgment against Mr. Miller in excess of $100,000.00, including compensatory,

incidental, consequential and punitive damages, forfeiture and disgorgement of fees paid to

Mr. Miller, attorney's fees and costs, pre and post judgment interest and any other relief the

Court deems just and proper;

16.   On the sixteenth cause of action, aiding and abetting, in excess of

$1,000,000, including compensatory, incidental, consequential and punitive damages,

attorney's fees and costs, plus associated interest and the fees and costs incurred in

connection with this action;

17.   On the seventeenth cause of action, piercing the corporate veil, alter ego

and corporate successor, in excess of $1,000,000, including compensatory, incidental,

consequential and punitive damages, statutory damages to the extend allowed by law,

attorney's fees and costs, plus associated interest and the fees and costs incurred in

connection with this action;

18.   On the eighteenth cause of action, concert of action, in excess of

$1,000,000, including compensatory, incidental, consequential and punitive damages,

attorney's fees and costs, plus associated interest and the fees and costs incurred in

connection with this action;

19.   On the nineteenth cause of action, permanent injunction, in excess of

$1,000,000, including compensatory, incidental, consequential and punitive damages,

attorney's fees and costs, plus associated interest, an order for permanent injunction barring

Defendants from initiating any additional proceedings or making any additional filings

against the Plaintiffs in or related to any forum within this Court's authority to do so, and

barring Mr. Miller from using, possessing, communicating, distributing and publicizing

Plaintiffs' information and the fees and costs incurred in connection with this action; and

20.  On the twentieth cause of action, equity, in excess of $1,000,000,
including compensatory, incidental, consequential and punitive damages, attorney's fees and
costs, plus associated interest and the fees and costs incurred in connection with this action**;**
and

21.  such other and further relief as the Court deems appropriate.

Dated:      Bucks County, Pennsylvania
            March 19, 2021

BREM MOLDOVSKY, L.L.C.

By: Brem Moldovsky, Esq.
305 Broadway, 7th Floor
New York, New York 10007
(212) 563-3370

*Attorneys for Plaintiffs*

**Exhibit "A"**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
LIGHTBOX VENTURES, LLC,             :
                                    :    16cv2379(DLC)
                    Plaintiff,      :
                                    :    MEMORANDUM
          -v-                       :    OPINION AND
                                    :    ORDER
3RD HOME LIMITED and WADE SHEALY,   :
                                    :
                    Defendants.     :
                                    :
------------------------------------ X
------------------------------------X
                                    :
LIGHTBOX VENTURES, LLC, and ANDREW  :
ELLNER,                             :
                                    :
                    Interpleader:   :
                    Plaintiffs,     :
                                    :
          -v-                       :
                                    :
SCAROLA ZUBATOV SCHAFFZIN PLLC, and :
BREM MOLDOVSKY LLC,                 :
                                    :
                    Interpleader:   :
                    Defendants.     :
                                    :
------------------------------------X
DENISE COTE, District Judge:

     Plaintiff Lightbox Ventures, LLC ("Lightbox") has filed an

interpleader complaint seeking resolution of its former

attorneys' charging liens pursuant to New York Judiciary Law

§ 475 ("Section 475").  Lightbox and its former attorneys,

Scarola Zubatov Schaffzin PLLC (the "Scarola Firm") and Brem

Moldovsky LLC (the "Moldovsky Firm"), have filed briefs,

affidavits, and exhibits addressing the proper amount of the

liens.  For the following reasons, the Scarola Firm is not
entitled to a charging lien, and the Moldovsky Firm is entitled
to a charging lien of $45,948.

## Background

Familiarity with the Court's Opinions and Orders is assumed.
This action was filed on March 31, 2016, and arose out of a
failed joint venture between Lightbox and 3RD Home Limited
("Third Home").  Over the course of this litigation, Lightbox
has been represented by three law firms:  the Scarola Firm from
March 2016 through March 3, 2017, the Moldovsky Firm, from March
3, 2017 through April 13, 2018, and the Law Firm of Jonathan R.
Miller, from April 27, 2018 to the present.  Lightbox and its
former attorneys now dispute the portions of Lightbox's recovery
to which the Scarola and Moldovsky Firms are entitled under a
charging lien theory.

On April 13, 2018, the Court awarded Lightbox $83,338.19
against Third Home and Wade Shealy.  See Lightbox Ventures, LLC
v. 3RD Home Ltd., No. 16cv2379(DLC), 2018 WL 1779346 (S.D.N.Y.
Apr. 13, 2018) (the "Trial Opinion").  The Court had previously
awarded Lightbox a discovery sanction against the defendants.
See Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC),
2017 WL 5526073 (S.D.N.Y. Nov. 15, 2017).  The amount of the
discovery sanction was set in an order of January 18, 2018 (the

"January 2018 Order") at $38,888.01, composed of the following: reimbursement of $18,888.01 in expenses, an award of $10,000 for work performed by the Scarola Firm, and an award of $10,000 for work performed by the Moldovsky Firm.  On June 12, the Court awarded Lightbox $100,000 in attorneys' fees pursuant to the parties' contract.  See Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC), 2018 WL 2943742 (S.D.N.Y. June 12, 2018) (the "Fee Opinion").  That $100,000 award reflected the reasonable value of services provided by the Scarola Firm between the initiation of this case and the issuance of the Court's Opinion denying a preliminary injunction on October 28, 2016.  See id. at *3; Lightbox Ventures, LLC v. 3RD Home Ltd., No. 16cv2379(DLC), 2016 WL 6562107 (S.D.N.Y. Oct. 28, 2016) (the "Preliminary Injunction Opinion").

The Court has not disbursed any of the awards described above.  On deposit with the Court is $222,226.20.  That amount comprises the $38,888.01 discovery sanction awarded in the January 2018 Order, the $83,338.19 awarded in the Trial Opinion, and the $100,000 awarded in the Fee Opinion.

On May 15, Lightbox requested permission to file an interpleader complaint to resolve its former attorneys' entitlements to statutory liens.  Lightbox also noted that the Scarola Firm had filed a contract action in state court arising out of its retainer agreement with Lightbox, but that the

3

Scarola Firm did not seek a charging lien in that action.

Lightbox's May 15 request was initially denied by Order of
May 31. The Court granted Lightbox's motion for reconsideration
by Order of June 14. On July 3, Lightbox and Andrew Ellner,
Lightbox's CEO, filed an interpleader complaint asserting claims
against Scarola and Moldovsky. Counts 2 through 5 of the
interpleader complaint, however, asserted claims for
declarations that Lightbox's retainer agreements with Scarola
and Moldovsky are invalid. Scarola and Moldovsky filed motions
to dismiss the interpleader complaint on September 4 and 5,
respectively.

An Order of September 7 indicated that the interpleader
complaint appeared to seek relief not authorized by the Court
and that the Court was inclined to dismiss Counts 2 through 5 of
the interpleader complaint. After Lightbox responded, Counts 2
through 5 of the interpleader complaint were dismissed on
October 9. The interpleader defendants filed answers to Count
1, and all parties filed briefs addressing the charging liens,
on October 12.

Lightbox had a retainer agreement with each of its prior
attorneys. Its agreement with the Scarola Firm is dated March
11, 2016, and provides for payment at the firm's hourly rates.[1]

_____

[1] Lightbox and the Scarola Firm dispute whether Lightbox
submitted a falsified version of the Scarola retainer agreement

4

Under this agreement, the Scarola Firm's partners billed at
hourly rates between $495 and $765, associates billed at hourly
rates between $250 and $450, and paralegals and legal assistants
billed at hourly rates between $40 and $220.  Lightbox entered
into an amended retainer agreement with the Scarola Firm on
October 26, 2016, which permitted Lightbox to defer part of the
Scarola Firm's bills in exchange for granting the Scarola Firm a
contingency fee.  Lightbox has paid $316,535.41 to the Scarola
Firm under the retainer agreements and the Scarola Firm asserts
that it is entitled to an additional $301,468.91 under the
agreements.

Lightbox's initial retainer agreement with the Moldovsky
Firm is dated February 10, 2017, and provides for immediate
payment of $75,000 and a contingency fee at a sliding rate
depending on when the action ceased.  This agreement provides
for the Moldovsky Firm to receive 35% of Lightbox's recovery if
received after a trial.  An amended agreement between Lightbox
and the Moldovsky Firm dated November 14, 2017 provides for
payment at one-third of the Moldovsky Firm's hourly rates, with

---

to the Court.  The only difference alleged by the Scarola Firm
relates to whether only Lightbox was the Scarola Firm's client,
or whether Ellner was also a client.  Only Lightbox has a net
judgment in its favor.  See Trial Opinion, 2018 WL 1179346, at
*18.  Because a charging lien is limited to a net judgment, the
Scarola Firm cannot obtain one against Ellner.  Thus, this
dispute is not relevant to the charging lien issue.  The Scarola
Firm's motion for sanctions is denied.

the remaining two-thirds to be paid out of any recovery.  The
Moldovsky Firm asserts that under its amended agreement it is
entitled to all of the available proceeds.  Lightbox contests
the validity of this agreement.  The Moldovsky Firm has already
received payments of $104,052.00.[2]

## Discussion

Section 475 provides as follows:

> From the commencement of an action . . . in any court
> . . . the attorney who appears for a party has a lien
> upon his or her client's cause of action, claim or
> counterclaim, which attaches to a verdict, report,
> determination, decision, award, settlement, judgment
> or final order in his or her client's favor, and the
> proceeds thereof in whatever hands they may come; and
> the lien cannot be affected by any settlement between
> the parties before or after judgment, final order or
> determination.  The court upon the petition of the
> client or attorney may determine and enforce the lien.

N.Y. Judiciary Law § 475 (emphasis supplied).

The statutory lien in Section 475 reflects the codification

of an equitable remedy available to attorneys at common law.

See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140

F.3d 442, 449 (2d Cir. 1998).  An attorney discharged without

---

[2] Lightbox asserts that it has paid $119,742.41 to the Moldovsky
Firm, but has not submitted bank records or other proof of
payment.  The Moldovsky Firm's billing records submitted in
connection with the Fee Opinion indicate that the additional
$15,690 represents fees paid to the Moldovsky Firm to represent
Lightbox in separate litigation against the Scarola Firm.  That
amount is thus not relevant to the Moldovsky Firm's charging
lien in this action.

cause by a client may pursue one or more "cumulative remedies," including a charging lien, a retaining lien, or a quantum meruit recovery.[3]  Roe v. Roe, 985 N.Y.S.2d 335, 337 (3d Dep't 2014); see also People v. Keeffe, 50 N.Y.2d 149, 155-56 (1980) ("[T]he rendition of services by an attorney gives rise to . . . a contract claim, express or implied, by the attorney against his client[, and] the attorney's retaining and charging liens."). "[A]n attorney's participation in the proceeding at one point as counsel of record is a sufficient predicate for invoking [a charging lien]."  Klein v. Eubank, 87 N.Y.2d 459, 462 (1996).

The New York Court of Appeals has explained the entitlement of a discharged attorney to fees as follows:

> When a client discharges an attorney without cause, the attorney is entitled to receive compensation from the client measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in the contract or retainer agreement.  As between them, either can require that the compensation be a fixed dollar amount determined at the time of discharge on the basis of quantum meruit or, in the alternative, they may agree that the attorney, in lieu of a presently fixed dollar amount, will receive a contingent percentage fee determined either at the time of substitution or at the conclusion of the case.
>
> When the dispute is only between attorneys, however, the rules are somewhat different.  The outgoing attorney may elect to take compensation on the basis

---

[3] An attorney who is discharged by a client for cause is not entitled to compensation or a lien.  See Maher v. Quality Bus Serv., LLC, 42 N.Y.S.3d 43, 46 (2d Dep't 2016).  A client, however, "must make a prima facie showing of cause in order to trigger a hearing on the issue."  Id.

of a presently fixed dollar amount based upon quantum
meruit for the reasonable value of services or, in
lieu thereof, the outgoing attorney has the right to
elect a contingent percentage fee based on the
proportionate share of the work performed on the whole
case.

Lai Ling Cheng v. Modansky Leasing Co., 73 N.Y.2d 454, 457-58

(1989) (emphasis supplied).

A charging lien must be based on "the nature of the

litigation, the difficulty of the case, the actual time spent by

plaintiff and the necessity therefor, the amount of money

involved, the results achieved, amounts customarily charged for

similar services in the same locality, the certainty of

compensation, and plaintiff's professional deportment." Grutman

Katz Greene & Humphrey v. Goldman, 673 N.Y.S.2d 649, 650 (1st

Dep't 1998) ("Grutman Katz"). "[I]n calculating the value of

the services rendered prior to termination of [an] attorney-

client relationship," in order to set the value of a charging

lien, "the terms of the original retainer [are] a relevant

consideration." Klein v. Eubank, 693 N.Y.S.2d 541, 542 (1st

Dep't 1999). "[T]he overriding criterion for determining the

amount of a charging lien," however, "is that it be fair."

Sutton v. N.Y.C. Transit Auth., 462 F.3d 157, 161 (2d Cir. 2006)

(citation omitted). Where the proper amount of an attorney's

charging lien is less than what a client has already paid, the

proper course of action is to deny a charging lien. See Grutman

8

Katz, 673 N.Y.S.2d at 650-51.

Lightbox asserts that its former attorneys' charging liens are entirely satisfied by the prior payments it made to those firms.  The Scarola Firm asserts that it is entitled to $301,468.91 from Lightbox -- more than the total amount recovered in this action -- and that its lien has priority over the Moldovsky Firm's lien.  The Moldovsky Firm asserts that it is entitled to the balance of the funds held by the Court -- $222,226.20 -- less any appropriate amount allocated to the Scarola Firm.

The present dispute is unusual in that it is both between two attorneys and their former client and between the attorneys themselves.  The parties have not identified a New York case with a similar posture.  The guiding principles, however, are that a charging lien should reflect the equities of the situation and reasonably compensate an attorney out of the proceeds of the action.

The factors applied by New York courts in setting charging liens are addressed as follows, based on the Court's familiarity with this litigation, having presided over it from its inception and having issued five prior opinions, and on the parties' briefs and evidentiary submissions.  The core dispute between Lightbox and Third Home was over a failed joint venture that never produced revenue; the scope of the documentary record was

accordingly modest.  See Fee Opinion, 2018 WL 2943742, at *2.
The key factual issues regarding the scope of Lightbox's claims
were largely resolved in the Preliminary Injunction Opinion
issued in October 2016.  See Preliminary Injunction Opinion,
2016 WL 6562107, at *7-*10.  The remaining disputes were not
especially complex or difficult.  Lightbox's counsel spent a
significant amount of time on this case, but this time was out
of proportion to the amounts at issue after the Preliminary
Injunction Opinion was issued.  See Fee Opinion, 2018 WL
2943742, at *3.  The amount that Lightbox could reasonably have
hoped to recover, after October 2016, was no more than $123,000.
See id.

The hourly rates asserted by Lightbox's former counsel are
reasonable.  Counsel were not guaranteed compensation in this
matter, particularly given that Lightbox -- a failed joint
venture that had not realized any revenue -- was their client.
Finally, counsel's deportment was within the range of
professional conduct.

Lightbox states or implies that it discharged its former
attorneys for cause, but it has not made a prima facie showing
that this is true.  The parties have also submitted a
significant number of irrelevant exhibits.  After reviewing
these submissions, the parties have not raised any genuine
factual disputes about the narrow issue of whether the Scarola

and Moldovsky Firms are entitled to charging liens.
Accordingly, no hearing need be held to resolve the charging
liens.  See Maher, 42 N.Y.S.3d at 46.

The Scarola Firm is not entitled to a charging lien.
Applying the relevant factors, the Court finds that the Scarola
Firm has not shown its entitlement to a charging lien that would
exceed the $316,553.41 it has already received from Lightbox.
As explained in detail in the Fee Opinion, the reasonable value
for litigating this matter between March 2016, when the
complaint was filed, and October 2016, when the Preliminary
Injunction Opinion was issued, was $100,000.  Generously, a
reasonable fee to litigate the following five months between
October 2016 and the Scarola Firm's withdrawal in March 2017
would be substantially less than the $216,553.41 the Scarola
Firm has already been paid in addition to that $100,000.[4]  During
this time, the parties had a few discovery disputes and the case
was stayed for two months during which the parties pursued
mediation.  Because the Scarola Firm has already received more
pursuant to its retainer agreement than the Court would award on

---

[4] This analysis is without prejudice to any account stated or
contractual claim the Scarola Firm may hold against Lightbox.
Although the Scarola Firm contends that its charging lien should
be fixed on the basis of its account stated claim, an account
stated claim sounds in contract and is distinct from a statutory
lien, at least where an attorney has been discharged prior to
the termination of litigation.

a quantum meruit theory, it is not entitled to a charging lien.
See Grutman Katz, 673 N.Y.S.2d at 650-51.

For the following reasons, $150,000 is a reasonable fee in
quantum meruit for the Moldovsky Firm's representation of
Lightbox.[5]  Lightbox has already paid the Moldovsky Firm
$104,052; accordingly, the Moldovsky is entitled to a charging
lien of $45,948.

A charging lien of $45,948, for a total fee of $150,000 for
work performed between March 2017 and April 2018 is reasonable
in light of the Fee Opinion.  That Opinion awarded $100,000 for
work done by the Scarola Firm from March through October 2016,
during which time a preliminary injunction hearing was held that
addressed the key issues that were later tried.  See Fee
Opinion, 2018 WL 2943742, at *3.  An award greater than $100,000
reflects that the Moldovsky Firm represented Lightbox for
approximately 13 months, during which time discovery was
completed, summary judgment motions were litigated, and a bench
trial was held.  This award also recognizes the work that the
Moldovsky Firm did largely defeating Third Home's counterclaims
at trial.

As stated above, the bench trial resulted in a net judgment

---

[5] This analysis solely pertains to the Moldovsky Firm's charging
lien and is without prejudice to any other theory of recovery or
claim the Moldovsky Firm may have against Lightbox.

of $83,338.19 in favor of Lightbox, plus fees.  The initial
retainer agreement between the Moldovsky Firm and Lightbox
provided that the Moldovsky Firm would be paid 35% of Lightbox's
recovery after trial, in addition to the $75,000 retainer.  With
this award of a charging lien, the Moldovsky Firm will be paid a
total of $150,000, or $75,000 in addition to its retainer.  That
payment of another $75,000 is far in excess of 35% of the
judgment of $83,338.19.

Lastly, the conclusions that the Scarola Firm is not
entitled to a charging lien and that the Moldovsky Firm is
entitled to a charging lien of $45,948 are reasonable in light
of the amounts of money at issue and actually recovered in this
case.  Over the course of this litigation, the Court has
concluded that at least $270,000 is a reasonable amount of fees:
$20,000 in connection with the January 2018 sanctions award,
$100,000 in favor of the Scarola Firm in the Fee Opinion, and
$150,000 in this Opinion.[6]  $270,000 is greater than the
$222,226.20 deposited with the Court, over twice as great as the
$123,000 that the Court estimated as Lightbox's maximum possible
recovery after the Preliminary Injunction Opinion, and over

---

[6] Even $270,000 is a partial amount, given that the Court has not
allocated fees for the Scarola Firm's representation of Lightbox
between the Preliminary Injunction Opinion in October 2016 and
the beginning of the Moldovsky Firm's representation of Lightbox
in March 2017.

three times as great as the $83,338.19 that Lightbox recovered
at trial.  Any recovery beyond that already received by the
Scarola and Moldovsky Firms, as supplemented by this Opinion,
would not be reasonable in the context of this case.

## Conclusion

The Scarola Firm is not entitled to a charging lien and the
Moldovsky Firm is entitled to a charging lien in the amount of
$45,948.  The parties are directed to submit a proposed final
judgment allocating the proceeds of this action as outlined in
this Opinion, within 14 days of the date of this Opinion.


Dated:    New York, New York
          October 22, 2018

                                _____
                                      DENISE COTE
                                United States District Judge

# Exhibit "B"

18-3721-cv
Lightbox Ventures, LLC v. Brem Moldovsky, L.L.C.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

1    At a stated term of the United States Court of Appeals for the Second Circuit,
2    held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the
3    City of New York, on the 21st day of April, two thousand twenty.
4
5    PRESENT:   BARRINGTON D. PARKER,
6                RAYMOND J. LOHIER, JR.,
7                    *Circuit Judges*,
8                RICHARD K. EATON,*
9                    *Judge*.
10   ------------------------------------------------------------------------
11   LIGHTBOX VENTURES, LLC,
12
13               *Plaintiff - Interpleader - Plaintiff - Appellant*,
14
15        v.                                      No. 18-3721-cv
16
17   BREM MOLDOVSKY, L.L.C.,
18

---

* Judge Richard K. Eaton, of the United States Court of International Trade, sitting by designation.

1

1       *Interpleader - Defendant - Appellee,*

2

3  3rd HOME LIMITED, WADE SHEALY,

4

5      *Defendants,*

6

7  SCAROLA ZUBATOV SCHAFFZIN PLLC,

8

9      *Interpleader - Defendant,*

10

11    v.

12

13  ANDREW ELLNER,

14

15      *Third - Party - Defendant -*
16      *Interpleader - Plaintiff.*

17 ------------------------------------------------------------------

18  FOR PLAINTIFF-
19  INTERPLEADER-
20  PLAINTIFF-APPELLANT:  Jᴏɴᴀᴛʜᴀɴ R. Mɪʟʟᴇʀ (Alexander Fink, *on*
21           *the brief*), The Law Firm of Jonathan R.
22           Miller, Princeton, NJ.

23

24  FOR INTERPLEADER-
25  DEFENDANT-APPELLEE:  Bʀᴇᴍ Mᴏʟᴅᴏᴠsᴋʏ, Brem Moldovsky,
26           L.L.C., New York, NY.

27

28  Appeal from a judgment of the United States District Court for the Southern

29 District of New York (Denise L. Cote, *Judge*).

30  UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,

31 AND DECREED that the judgment is AFFIRMED.

2

1      Interpleader - Plaintiff - Appellant Lightbox Ventures, LLC ("Lightbox")

2    argues that the District Court abused its discretion when it enforced a charging

3    lien on behalf of Interpleader - Defendant - Appellee Brem Moldovsky, L.L.C. (the

4    "Moldovsky Firm") pursuant to New York Judiciary Law § 475. Lightbox

5    contends that the information it presented to the District Court clearly showed that

6    the Moldovsky Firm acted unethically by (1) coercing Lightbox to enter into an

7    amended retainer agreement, and (2) later withdrawing its representation without

8    just cause when Lightbox disputed a bill. For Lightbox, the Moldovsky Firm's

9    conduct justified a finding that it forfeited its charging lien, or at least warranted

10   a hearing on that issue.

11     We review a district court's decision to enforce a charging lien under New

12   York law for abuse of discretion.

13     We find that the District Court did not abuse its discretion either by

14   enforcing the Moldovsky Firm's charging lien, or by finding that it was

15   unnecessary to hold a hearing before it enforced the lien. New York's Judiciary

16   Law protects attorneys' right to fair and reasonable compensation for legal

17   services. New York courts will not enforce a lien where representation ends

18   because of attorney misconduct, e.g., where the attorney has been discharged for

3

1 cause or withdraws as counsel without cause. See N.Y. JUDICIARY LAW § 475;

2 Maher v. Quality Bus Serv., LLC, 42 N.Y.S.3d 43, 46 (2d Dep't 2016); Brooks v.

3 Lewin, 853 N.Y.S.2d 286, 288 (1st Dep't 2008). To be entitled to a hearing on the

4 issue of a charging lien, "the client must make a prima facie showing of cause."

5 Maher, 42 N.Y.S.3d at 46.

6   We have considered Lightbox's remaining arguments and conclude that

7 they are without merit. Here, Lightbox did not discharge its attorney for cause;

8 and the Moldovsky Firm withdrew for cause because it had a good-faith basis to

9 believe that the District Court would "find the existence of . . . good cause for

10 withdrawal." N.Y. R. Prof. Conduct 1.16(c)(12). Further, the District Court

11 reviewed the information submitted by Lightbox, and reasonably found the

12 submissions irrelevant under New York law. Accordingly, no hearing was

13 required.

14   For the foregoing reasons, the judgment of the District Court is AFFIRMED.

15       FOR THE COURT:
16       Catherine O'Hagan Wolfe, Clerk of Court

4

# Exhibit "C"

At a Term of the Appellate Division of the Supreme
Court held in and for the First Judicial Department in
the County of New York on August 27, 2020.

Present - Hon. David Friedman,          Justice Presiding,
                Dianne T. Renwick
                Sallie Manzanet-Daniels
                Angela M. Mazzarelli,  Justices.

---------------------------------------x
Scarola Malone & Zubatov LLP,
     Plaintiff-Respondent/
     Plaintiff-Respondent-Respondent,

          -against-                          **CONFIDENTIAL**

Andrew Ellner, Lightbox Capital            M-1885
Management, LLC and Lightbox Ventures,     M-2094
LLC.,
     Defendants-Appellants,
     Defendants-Respondents-Appellants,   Index No. 651324/17

          -and-

Brem Moldovsky, L.L.C.,
     Defendant/
     Defendant-Appellant-Respondent.
---------------------------------------x

     An appeal have been taken by defendants-appellants
Andrew Ellner, Lightbox Capital Management, LLC and Lightbox
Ventures, LLC (collectively the Lightbox defendants) from an
order of the Supreme Court, New York County, entered on or about
July 8, 2019, and the appeal having been perfected for the
December 2020 Term of this Court (Case No. 2019-03384),

     And an appeal having been taken by the Lightbox defendants
and cross appeal having been taken by Brem Moldovsky, L.L.C. from
an order of the same court, entered on or about December 18,
2019, and Brem Moldovsky L.L.C. having perfected the cross appeal
for the November 2020 Term of this Court, designating itself as
defendant-appellant-respondent (Case No. 2019-02350),

     And defendant Brem Moldovsky L.L.C. having moved for an
order:(1) designating Brem Moldovsky L.L.C. as a respondent to
the Lightbox defendants' appeal taken from the July 8, 2019 order
(Case No. 2019-03384); (2) consolidating the appeal taken from
the July 8, 2019 order (Case No. 2019-03384)  with the appeal
taken from the December 18, 2019 order (Case No. 2019-02350); (3)
declaring the Lightbox defendants' Judiciary Law § 487 claims

(M-1885/M-2094)                    -2-                    August 27, 2020


impossible and moot, and disqualify Jonathan Miller, Esq. as
counsel for the Lightbox defendants or, in the alternative,
granting an enlargement of time to perfect the appeal and
granting leave to supplement the record on appeal by taking
judicial notice of developments in the case and facts since the
date of the order appealed from that are allegedly germane to it
(M-1885),

      And the Lightbox defendants having cross-moved for an order
imposing sanctions for frivolous conduct against defendant Brem
Moldovsky, L.L.C. and Brem Moldovsky, Esq., personally (M-2094),

      Now, upon reading and filing the papers with respect to the
motion and cross motion, and due deliberation having been had
thereon,

      It is ordered that the motion (M-1885) is granted to the
extent directing the Clerk to calendar the perfected appeals from
the July 8, 2019 order (Case Nos. 2019-03384) and December 18,
2019 order (Case No 2019-02350), to be heard together on the same
date of the December 2020 Term, to which Term the appeal taken
from the December 18, 2020 order (Case No. 2019-02350) is
adjourned, and the motion is otherwise denied.  The motion (M-
2094) seeking sanctions for frivolous conduct is denied (see M-
2554, decided simultaneously herewith).

            ENTERED:

                                    _____
                                    CLERK

# Exhibit "D"

Case 2:20-cv-06190-FB Document 23-4 Filed 04/02/21 Page 180 of 364

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. ANTHONY CANNATARO** | **PART** | **IAS MOTION 41EFM** |
| | *Justice* | | |

-----------------------------------------------------------------------------X

| | |
|---|---|
| SCAROLA MALONE & ZUBATOV LLP, | **INDEX NO.**   651324/2017 |
| Plaintiff, | **MOTION DATE**   N/A, N/A, N/A, 03/19/2020, N/A, N/A, N/A |
| - v - | **MOTION SEQ. NO.**   017 018 020 023 024 025 026 |
| ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC,LIGHTBOX VENTURES, LLC,BREM MOLDOVSKY, LLC | |
| Defendant. | **DECISION + ORDER ON MOTION** |

-----------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 017) 652, 653, 655, 656, 687, 688, 691, 882, 884, 887

were read on this motion to/for _____ REARGUMENT/RECONSIDERATION _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 018) 692, 693, 694, 695, 696, 697, 698, 726, 736, 737, 738, 739, 740

were read on this motion to/for _____ SANCTIONS _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 020) 727, 728, 729, 730, 731, 732, 752, 753, 755, 989, 990, 991, 992, 995

were read on this motion to/for _____ REARGUMENT/RECONSIDERATION _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 023) 832, 833, 834, 835, 836, 837, 838, 839, 840, 841, 842, 843, 875, 876, 877, 878, 879, 888

were read on this motion to/for _____ MISCELLANEOUS _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 024) 855, 856, 857, 858, 859, 860, 861, 862, 863, 864, 865, 866, 867, 868, 869, 870, 871, 885, 886, 912, 913, 919, 920, 921, 922, 923, 924, 925, 926, 927, 928, 929, 934, 935, 939

were read on this motion to/for _____ SANCTIONS _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 025) 980, 981, 982, 983, 1001, 1002, 1003, 1004, 1005, 1006, 1007, 1008, 1009, 1051, 1052, 1054, 1055

were read on this motion to/for _____ CONTEMPT _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 026) 945, 946, 947, 948, 949, 950, 951, 952, 953, 954, 955, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 984, 985, 986, 987, 988, 999, 1000, 1010, 1011, 1012, 1015, 1016, 1017, 1018, 1021, 1023, 1024, 1025, 1026, 1027, 1028, 1029, 1030, 1031, 1032, 1033, 1034, 1035, 1036, 1037

**651324/2017   SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**
**Motion No.  017 018 020 023 024 025 026**

Page 1 of 4

1 of 4

Case 1:20-cv-06192-AB2 Document 23-4   Filed 04/02/21   Page 181 of 364

were read on this motion to/for _____SANCTIONS_____.

     In this action by the Scarola law firm for attorney's fees, the Court now has before it seven motions filed by the Lightbox defendants.  One of the motions is for leave to reargue that branch of their prior motion which sought to dismiss plaintiff's claims for account stated and contractual lien, and a second motion is for leave to reargue the branch of their prior motion which sought to dismiss the crossclaims of defendant Brem Moldvosky, LLC, for account stated and contractual lien.  They also have four separate motions for sanctions and/or contempt against plaintiff and defendant Brem Moldovsky, LLC, and a motion to compel defendant Brem Moldovsky, LLC, to supplement its bill of particulars.  These motions, sequence numbers 017, 018, 020, 023, 024, 025 and 026, are consolidated for decision herein.

     A motion for leave to reargue is directed to the court's discretion and, to warrant reargument, the moving party must demonstrate that the court overlooked or misapprehended the relevant facts or misapplied a controlling principle of law (*see* CPLR 2221 [d]; *Cioffi v S.M. Foods, Inc.*, 129 AD3d 888, 891 [2015]; *Central Mtge. Co. v McClelland*, 119 AD3d 885, 886 [2014]).

     Initially, the branches of the Lightbox defendants' motions seeking leave to reargue the branches of their prior motions which sought to dismiss the causes of action for account stated do not persuasively point to  any material fact that was overlooked, or controlling principle of law that was misapplied, by the Court.  As such, those two reargument motions are denied.

     Next, in the remaining branches of the Lightbox defendants' motions for leave to reargue, they argue that the Court overlooked both their and the other parties' arguments regarding the portion of their prior motions which sought dismissal of the "contractual lien" claims.  Upon closer examination of the parties' arguments, it appears that, in opposition to the contention of the Lightbox defendants that the "contractual

**651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**                    **Page 2 of 4**
**Motion No.  017 018 020 023 024 025 026**

2 of 4

Case 20-cv-06019-JSR Document 23-4 Filed 04/02/21 Page 187 of 364

lien" claim cannot exist as a separate cause of action, the Scarola firm and Brem Moldovsky, LLC, assert that it does so exist as its own separate cause of action pursuant to their respective retainer agreements with the Lightbox defendants. The Scarola firm and Brem Moldovsky, LLC, argue that these claims still exist despite the federal court's dismissal of their charging lien claims, and this Court's dismissal of their breach of contract claims. Further, they argue that this "contractual lien" claim separately enables them to collect the full amount of their fees owed pursuant to the retainer agreement.

Contrary to the Scarola firm's and Brem Moldvosky, LLC's arguments, the controlling caselaw does not recognize the workaround which they argue is contained in their retainer agreements. Indeed, as discussed in this Court's July 8, 2019 and December 18, 2019 decisions and orders, it is well settled that an attorney discharged without cause is limited to compensation measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in a retainer agreement (*Sae Hwan Kim v M & Y Gourmet Grocers*, 239 AD2d 170 [1997], citing *Matter of Montgomery*, 272 NY 323, 326-327 [1936]); *see also Liddle & Robinson, LLP v Garrett*, 720 F Supp 2d 417, 425 (SDNY 2010).

Once the charging lien claims were dismissed by the federal court, and this Court dismissed the breach of contract claims in their entirety, no "contractual lien" claims survived. As such, reargument is granted as to this issue and, upon reargument, the portions of the Lightbox defendants' motions which sought dismissal of the causes of action based on a contractual lien are granted, and those causes of action are dismissed.

Regarding the Lightbox defendants' motion to compel Brem Moldovsky, LLC, to supplement its bill of particulars, the issues raised in that motion can and should be resolved at a court conference. As such, that motion is denied.

Lastly, the Lightbox defendants' four motions for sanctions and/or contempt are denied in their entirety.

**651324/2017  SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**                    **Page 3 of 4**
**Motion No.  017 018 020 023 024 025 026**

3 of 4

Accordingly, it is

ORDERED that the branches of the Lightbox defendants' motion seeking leave to reargue the branches of their prior motions which sought to dismiss the causes of action against them for account stated are denied; and it is further

ORDERED that the branches of the Lightbox defendants' motions which seek leave to reargue the branches of their prior motions which sought to dismiss the causes of action for contractual lien are granted, and upon reargument, those branches of the Lightbox defendants' prior motions are granted, and the causes of action for contractual lien in plaintiff's complaint and defendant Brem Moldvosky, LLC's crossclaims are dismissed; and it is further

ORDERED that the Lightbox defendants' motion to compel defendant Brem Moldovsky, LLC, to supplement its bill of particulars is denied; and it is further

ORDERED that the Lightbox defendants' four motions for sanctions and/or contempt are all denied in their entirety; and counsel are directed to appear for a virtual status conference on December 23, 2020 at 10:15 AM.

20201210144041ACANNATA10FF769A494E4B89ADF6A6FFD1C457B9

_____
**12/10/2020**
DATE

_____
ANTHONY CANNATARO, J.S.C.

| CHECK ONE: | | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**651324/2017   SCAROLA MALONE & ZUBATOV LLP vs. ELLNER, ANDREW**                    **Page 4 of 4**
**Motion No.  017 018 020 023 024 025 026**

4 of 4

# Exhibit "E"

# LEGAL SERVICES AGREEMENT

      **THIS AGREEMENT**, dated November 6, 2015, is made between Brem Moldovsky, residing at ███████████████████████████ ("You"), and Jonathan R. Miller, Esq., an attorney maintaining an office at ███████████████ (the "Attorney").

1. **Legal Services To Be Provided.** You agree that the Attorney will represent you in connection with your dispute with ████████████ (the "Dispute"). The legal work may include research, correspondence, preparation and drafting of pleadings and other legal documents, conferences in person and by telephone with you and with others, dictating and reviewing letters, negotiations, and any other related work or service to properly represent you in this matter.

2. **Co-counsel Relationship.** In light of the fact that you are an attorney duly licensed to practice law in Pennsylvania, it is understood and agreed the Attorney will be serving as co-counsel to you in the following matters:

    (a) ███████████████ No. 2015-████████████

    (b) ███████████████ No. 2015-████████████

3. **Other Legal Services.** You and the Attorney may make additional agreements to provide for legal services not covered by this Agreement. Without such agreements, the Attorney is not required to do any of the following: (a) provide any legal services after the judgment of the trial court; (b) appeal any decisions of the trial court; (c) enforce any judgment or order of the trial court; or (d) represent you in any other matter, or in any other court or tribunal.

4. **Legal Fees.** The Attorney cannot predict or guarantee what your final bill will be. Your final bill will depend on the time spent on your case and the amount of other expenses. You agree to pay the Attorney for all legal services related to the Dispute, at an ongoing billable rate of $50.00 per hour (the "**Ongoing Hourly Fees**", *plus* an additional $200.00 per hour that shall be billable in the event of a recovery by you, capped at no more than 20% of your net recovery (the "**Contingent Hourly Fees**"). The aforesaid 20% cap shall not apply to the Ongoing Hourly Fees as defined herein.

5. **Services Billed.** Subject to the foregoing fee schedule and except as otherwise provided therein, you will be billed for all time spent in handling your case, which may include, but is not limited to: consultation and meeting time; telephone calls; written correspondence and emails; attending court proceedings, including waiting time; research; preparation of pleadings, motions and other documents; preparing, conducting and analyzing discovery, including depositions, interrogatories, production and inspection of documents, and requests for admission; settlement

discussions and analysis; and general preparation for any of the above. You will be billed in increments of one-tenth of an hour.

6. **Costs and Expenses.** In addition to legal fees, you agree to pay all reasonable costs and expenses preapproved and incurred by you and/or by the Attorney in the Dispute.

7. **Bills.** The Attorney will send you itemized bills on a periodic basis. All invoices are thirty (30) days from receipt. In the event any invoice is not paid within sixty (60) days, the Attorney shall have the right to withdraw from representing you. Any invoiced amount that is not paid within ninety (90) days shall be subject to per diem interest from the date due until paid in full, at the rate of six percent (6%) annual interest, or the maximum rate allowed by law, whichever is less.

8. **Methods of Payment.** You may make payments by cash, check, credit card and/or electronic fund transfer.

9. **Your Responsibilities as Client.** You agree to fully cooperate with the Attorney and provide all requested information and documents relevant to the issues involved in this matter. You also agree to pay all bills as required by this Agreement. You further agree that, if you do not comply with these requirements, the Attorney may withdraw from representing you. The Attorney will also withdraw at your request.

10. **No Guarantee.** The Attorney agrees to provide conscientious, competent and diligent services and at all times will seek to achieve solutions which are just and reasonable for you. However, because of the uncertainty of legal proceedings, the interpretation and changes in the law and many unknown factors, attorneys cannot and do not warrant, predict or guarantee results or the final outcome of any case.

**WE HEREBY ACKNOWLEDGE** that we have read, understand, and fully agree with the terms and provisions of this Agreement:

Jonathan R. Miller, Esq.

Brem Moldovsky, Esq.

Date: 11 / 10 / 2015

# Exhibit "F"

**From:** Andy Ellner [mailto:aellner@lightboxcap.com]
**Sent:** Friday, May 20, 2016 3:30 PM
**To:** ████████████
**Cc:** ████████████
**Subject:** Re: LightBox v. 3rdHome

████████████████████ forwarded it in to "Andy's Angels" for editing and improving.

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████

████████████████████

Andy

# Exhibit "G"

Case# 2019-00793-59 - JUDGE:35 Received at County of Bucks Prothonotary on 06/17/2019 8:24 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**FOX ROTHSCHILD LLP**
**BY:** EMMA M. KLINE, ESQUIRE
Attorney I.D. No: 314027
2700 Kelly Road, Suite 300
Warrington, PA 18976
ekline@foxrothschild.com
Telephone: (215) 345-7500
Fax: (215) 345-7507

*Attorneys for Defendants, Andrew*
*Ellner, Lightbox Capital Management,*
*LLC, & Lightbox Ventures, LLC*

---

| | |
|---|---|
| BREM MOLDOVSKY, LLC and | : COURT OF COMMON PLEAS |
| BREM MOLDOVSKY, | : BUCKS COUNTY, PENNSYLVANIA |
| | : |
| | : |
| Plaintiffs, | : |
| | : |
| | : NO: 2019-00793 |
| v. | : CIVIL ACTION - LAW |
| | : |
| ANDREW ELLNER, LIGHTBOX CAPITAL | : |
| MANAGEMENT, LLC, LIGHTBOX | : |
| VENTURES LLC, and JONATHAN MILLER, | : |
| ESQUIRE | : |
| | : |
| Defendants. | : |
| | : |

---

### MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO SEAL AND FOR A PROTECTIVE ORDER

Defendants, Andrew Ellner ("Ellner"), Lightbox Capital Management, LLC ("LCM"), and Lightbox Ventures, LLC ("LV") (Ellner, LCM, and LV are collectively "Lightbox"), by and through their attorneys Fox Rothschild LLP, respectfully submit this Memorandum of Law in Opposition to Plaintiffs' Motion to Seal and for a Protective Order.

## I.    INTRODUCTION

Issuing a sealing order in this case is contrary to long-standing law in Pennsylvania that all court proceedings are open to the public. Once again, Plaintiffs filed a motion requesting relief that is not only unnecessary, but unsupported by the facts and without the requisite showing that their "interest in secrecy" outweighs the presumption of openness. Plaintiffs'

Case# 2019-00793-59 - JUDGE:35 Received at County of Bucks Prothonotary on 06/17/2019 8:24 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

position also fails to account for the fact that the information they seek to protect – purportedly privileged communications between Plaintiffs and their former attorney, co-Defendant, Jonathan Miller, Esquire ("Miller") – is already protected from disclosure by the Pennsylvania and New York Rules of Professional Conduct. Finally, even if Plaintiffs *were* entitled to a sealing order, the *only* information that should be sealed is the confidential information Plaintiffs obtained during their prior representation of Lightbox.

## II. QUESTIONS PRESENTED

A. Whether Plaintiffs' request for a sealing order should be denied because they failed to prove they have any interest in secrecy, or that their interest in secrecy outweighs the presumption of openness in Pennsylvania.

**Suggested Answer: Yes.**

B. Whether Plaintiffs' request for a sealing order should be denied because the purportedly confidential information they seek to redact is already protected under Pennsylvania Rule of Professional Conduct 1.6, and Defendants are entitled use privileged information to defend themselves against Plaintiffs' claims sounding in legal malpractice.

**Suggested Answer: Yes.**

C. Whether the only information subject to a sealing order should be the confidential information Plaintiffs possess from their prior representation of Lightbox in New York state and federal court.

**Suggested Answer: Yes.**

Active\96715925.v1-6/13/19

Case# 2019-00793-59 - JUDGE:35 Received at County of Bucks Prothonotary on 06/17/2019 8:24 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(S.D.N.Y. 1991)).  Accordingly, Plaintiffs are expressly prohibited from disclosing Lightbox's confidential information in this action, and likewise cannot use the information to pursue their legal malpractice claims against them.  A sealing order is therefore entirely unnecessary, and Plaintiffs' motion should therefore be denied.

## V.     CONCLUSION

For all of the foregoing reasons, Lightbox respectfully requests that the Motion to Seal the Record and for Protective Order be denied.

Respectfully submitted,

**FOX ROTHSCHILD LLP**

By: _____

Emma M. Kline, Esquire
Attorney I.D. No.: 314027
*Attorneys for Defendants,*
*Andrew Ellner, Lightbox Capital*
*Management, LLC and Lightbox*
*Ventures, LLC*

Dated:  June 17, 2019

Active\96715925.v1-6/13/19

**Exhibit "H"**

Case# 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1

```
                    IN THE COURT OF COMMON PLEAS
                    BUCKS COUNTY, PENNSYLVANIA
                       CIVIL ACTION - LAW

                            *  *  *


     BREM MOLDOVSKY, LLC      :  No. 2019-00793
     and BREM MOLDOVSKY       :
                              :
            vs.               :
                              :
     LAW FIRM OF              :
     JONATHAN R. MILLER;      :
     ANDREW ELLNER;           :
     LIGHTBOX CAPITAL         :
     MANAGEMENT, LLC;         :
     and LIGHTBOX             :
     VENTURES, LLC            :


                            *  *  *
        BEFORE:  THE HONORABLE ROBERT O. BALDI, J.
                            *  *  *


                       August 20, 2019
                     Doylestown, Pennsylvania


                            *  *  *
                       (Oral Argument)
                            *  *  *


     APPEARANCES:

     BREM MOLDOVSKY, ESQUIRE
     Appearing Pro Se

     EMMA KLINE, ESQUIRE
     ADAM SILVERSTEIN, ESQUIRE
     Counsel for Ellner and the Lightbox Defendants

     JONATHAN R. MILLER, ESQUIRE
     Appearing Pro Se
                            *  *  *
                       Beth A. Barkocy, CCR
                       Official Court Reporter
```

Case# 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania. Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

19

```
1    information about other cases other
2    than this particular case for me to
3    issue a blanket order, an injunction of
4    sorts against an attorney against
5    representing a specific client in other
6    litigation.  It borders on absurd.
7              Furthermore, I'm assuming that
8    the defendant Ellner -- is there any
9    question but that the defendant Ellner
10   and Lightbox wish or desire to continue
11   with the representation of Mr. Miller?
12             MS. KLINE:  Your Honor, myself
13   and Fox Rothschild are the only
14   attorneys who have represented
15   Mr. Ellner and the Lightbox entities in
16   Pennsylvania for the entirety of this
17   litigation.  We entered our appearance
18   in April.  All of the pleadings on
19   behalf of my clients, Mr. Ellner and
20   Lightbox, have been filed with my name
21   on them, with Fox Rothschild
22   letterhead, et cetera, et cetera.
23             THE COURT:  So then let me ask
24   you this -- Counsel, you may remain
25   standing -- it's your contention that I
```

Case# 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

20

1    should be ordering Mr. Miller to not
2    represent Andrew Ellner in this case?
3    Because I'm hearing he is not
4    representing him in this case.
5           MR. MOLDOVSKY:  Your Honor,
6    would you prefer me to stand?
7           THE COURT:  I don't care,
8    whichever you want to do.
9           MR. MOLDOVSKY:  He should not
10   in this case whether it's behind the
11   scenes, because that is what's
12   happening and that's how the lawyers,
13   including when I worked for Mr. Ellner,
14   we would work on matters --
15          THE STENOGRAPHER:  Sir, I
16   can't understand what you're --
17          THE COURT:  Try to answer my
18   question directly.
19          MR. MOLDOVSKY:  Yes.
20          THE COURT:  What is the nature
21   of the order I would issue in this
22   case?
23          MR. MOLDOVSKY:  Not allowing
24   him to -- certainly including not
25   allowing him to represent those parties

Case# 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

21

1      against me in this case or in front of

2      the Pennsylvania disciplinary board,

3      which he's done, or in any Pennsylvania

4      forum or wherever you see -- as broadly

5      as you see appropriate, but certainly

6      for this case or any other Pennsylvania

7      forum.

8              THE COURT:  I'm being told

9      right now, and you are not contending

10     otherwise, that -- and for purposes of

11     this litigation, Mr. Ellner and

12     Lightbox are represented by an

13     independent law firm separate and apart

14     from Mr. Miller.  You agree with that,

15     right?

16             MR. MOLDOVSKY:  As well as him

17     behind the scenes, yes.

18             THE COURT:  Hold it.  I can

19     talk -- if I'm a lawyer, I can talk to

20     any other lawyer I want and ask them

21     for counsel, advice, et cetera.  If you

22     have some issue about him disclosing

23     something, something that he has

24     breached some duty, that is a different

25     point, but in terms of the

Case# 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

57

1     acts unprofessionally, in violation of

2     the requirements.  I have an

3     affirmative duty to report them, but

4     I'm not -- how do I want to put this --

5     but it's not my job to police lawyers.

6              There is a distinction there.

7     If I see a lawyer doing stuff, you

8     know, I should report it, but it's the

9     disciplinary board that has the

10    obligation and responsibility for

11    disciplining lawyers, it's not me.

12    It's someone else that does that, so --

13    and I will tell you, I'm just --

14             Maybe this is inappropriate,

15    and I don't mind if you say that's

16    inappropriate, I'm not going to answer

17    that question.  Honestly, I'm just

18    curious.  Don't you have malpractice

19    insurance?  Don't you have an insurance

20    company defending you on a malpractice

21    claim?

22             MR. MILLER:  I do not, your

23    Honor.

24             THE COURT:  You do not have

25    malpractice insurance?

Case# 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

59

```
 1            MS. KLINE:  As I indicated
 2     before, this matter was initiated by
 3     writ of summons, a complaint was
 4     originally filed, we asserted on behalf
 5     of Mr. Ellner and the Lightbox entities
 6     preliminary objections, and two of the
 7     most important preliminary objections
 8     we're raising are that this Court,
 9     respectfully, doesn't have personal
10     jurisdiction over Mr. Ellner and the
11     Lightbox entities, and then also for
12     improper venue.
13            THE COURT:  Quite frankly, I
14     thought we were going to discuss it
15     today, but I can't get to it this
16     morning, and you want oral argument on
17     it?
18            MS. KLINE:  Yes.  Since that
19     time, Mr. Moldovsky has filed a first
20     amended complaint without any real
21     substantive changes, in our opinion.
22     We asserted essentially the same
23     preliminary objections, and now we are
24     on the second amended complaint and,
25     again, it has no substantive changes,
```

Case # 2019-00793-128 - JUDGE:27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

60

```
1        at least with respect to my clients,

2        Mr. --

3                THE COURT:  But you haven't

4        filed formal preliminary objections to

5        the second amended complaint yet?

6                MS. KLINE:  We will be.

7                THE COURT:  But you haven't.

8        That's why I haven't ruled on that,

9        because I happened to notice that.

10               I'll issue an order that the

11       first preliminary objections are now

12       moot because he has filed an amended

13       complaint.  You can proceed with the

14       preliminary objections to the second

15       amended complaint through the local

16       practice of praeciping the matter

17       forward.

18               MS. KLINE:  Sure, so what I

19       wanted to discuss, hopefully, was the

20       issue that I think we'll obviously need

21       some discovery with respect to the

22       issue of personal jurisdiction.

23               THE COURT:  You do.

24               MS. KLINE:  I don't think it

25       will be much discovery, but my concern
```

Case# 2019-00793-128 - JUDGE27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1      discovery deadlines, production of

2      expert reports, et cetera.

3              If you're seriously going to

4      pursue a malpractice action and you're

5      really serious about this and you want

6      to do this litigation, then I want to

7      put a leash on it because without a

8      leash, you're going to just -- you are

9      going to go use judicial resources in

10     an abusive way, so I'm telling you, go

11     online.  There are case management

12     orders that you can enter into by

13     agreement.  Give serious consideration

14     into entering into an agreed upon case

15     management order.  It's not something

16     that I'll necessarily deal with this

17     month or next month, but be aware of

18     that.

19              I, at some point, would expect

20     there is going to be a summary judgment

21     motion to figure out whether there

22     really is a malpractice claim.  I would

23     welcome that, frankly, because you may

24     have pled things that could go to a

25     jury under a different theory, but I

113

# CERTIFICATION

I hereby certify that the proceedings, evidence, and rulings are contained fully and accurately in the notes taken by me in the matter of the above cause and that this copy is a correct transcript of same.

_____

Beth A. Barkocy, CCR
Official Court Reporter

Date: _____

The foregoing transcript of the proceedings before me is hereby approved and certified.

_____

THE HONORABLE ROBERT O. BALDI, J.

Dated: _____

Case# 2019-00793-128 - JUDGE 27 Received at County of Bucks Prothonotary on 11/01/2019 12:37 AM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Exhibit "I"

Case 1:20-cv-01905-ER Document 23-4 Filed 03/05/21 Page 204 of 364

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SCAROLA MALONE & ZUBATOV LLP, | Index No. 651324/2017 |
| Plaintiff, | Motion #24 |
| v. | |
| ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, LIGHTBOX VENTURES, LLC, and BREM MOLDOVSKY, LLC | **AFFIDAVIT OF ANDREW ELLNER** |
| Defendants. | |

STATE OF NEW YORK     )
                       )ss:
COUNTY OF NEW YORK   )

I, Andrew Ellner, being of full age and duly sworn, hereby state and depose the following under penalty of perjury:

1.      I am a Defendant and the managing member of Defendants Lightbox Ventures LLC ("LBV") and Lightbox Capital Management LLC ("LBC"). I am fully familiar with the matters set forth herein.

2.      I submit this Affidavit on behalf of myself, LBV and LBC (together, "Lightbox") and in support of Lightbox's motion for sanctions against Brem Moldovsky, Esq.

3.      Lightbox's motion arises from Mr. Moldovsky's attempt to misuse a confidential deposition transcript from an unrelated matter, basically to blackmail Lightbox's attorney, Mr. Miller, into withdrawing Lightbox's motion for an amended bill of particulars. As I understand the situation, Mr. Moldovsky found what he considers to be damaging information about Mr. Miller, and then implied that he would use that information against him if Mr. Miller did not "agree" to withdraw Lightbox's motion. And to make matters worse, after Lightbox moved for a TRO against Mr. Moldovsky to prevent him from using Mr. Miller's confidential information, Mr. Moldovsky tried to the preempt the Court's authority by racing to disclose Mr. Miller's confidential

information before a TRO could be issued. And then lie to the Court about it — and also claim that Mr. Miller had committed malpractice against his former clients, the Kopels.

4.     I, personally, do not have factual information about this latest episode of Mr. Moldovsky's misconduct as an attorney, but what is striking to me is that, based on this latest episode, Mr. Moldovsky is apparently a repeat offender who will continue undeterred unless he is stopped.

5.     What I do have factual information about, is Mr. Moldovsky's misconduct towards me, including how he conned and extorted me into "agreeing" to his demands for an amended fee agreement in November-December 2017, *see* Lightbox's Verified Crossclaims ("Crosscl.") (Dkt. #741) at ¶¶ 39-57; *see also* Dkt. #485 (emails), and how he later threatened to hurt Lightbox in federal and state court, simply because I disputed his firm's February and March 2018 invoices. *See, e.g.,* Dkt. #609 at 6.[1] When I did not agree to Mr. Moldovsky's attempted extortion, he did in fact follow through by withdrawing from the 3rd Home Matter a few days later — just as, after Mr. Miller did not agree to Mr. Moldovsky's attempted blackmail, Mr. Moldovsky followed through by disclosing Mr. Miller's confidential information.

6.     I also have factual information about how Mr. Moldovsky lied to me, blatantly and on tape, when he promised that under the amended fee agreement there would be no retroactive billing for work performed before the amendment, *see* Crosscl. at ¶¶ 89-111; *see also* Dkt. #799-804 (recordings); how he responded to my criticism by calling me irrational and saying I need a psychiatrist, *see* Dkt. #624 at 2 (email), and how, to this very day, he lies to this Court by claiming that I am a "sophisticated" client who had attorneys review and approve his firm's amended fee agreement, when in fact the lawsuit against 3rd Home was my very first involvement in business

---

[1] Moldovsky email, dated April 5, 2018, threatening to move to withdraw "this afternoon" and that, "in this process the Court, the parties, the public, Mr. Scarola, Mr. Zubatov, Jonathan [Miller], Tony [Harwood], Mark [Goldey], etc. . . . are notified, know or will know."

Case 1:20-cv-01904-JMF Document 23-4 Filed 04/03/21 Page 206 of 364

litigation, and when in fact I had to use the bar's lawyer referral service to find a lawyer to replace

Mr. Scarola, and when in fact no other attorney was involved at all in those November-December

2017 fee "negotiations," which Mr. Moldovsky conducted at gunpoint (metaphorically), under

imminent threat to drop my case if I did not agree to an hourly fee agreement.

7.    I also have factual information about how Mr. Moldovsky has weaponized the

court systems in two states against Lightbox. In Pennsylvania, Mr. Moldovsky sued Lightbox and

also sued Mr. Miller, personally, eating up about nine months of my life and causing me to incur

tens of thousands of dollars in legal fees, wildly claiming that Mr. Miller and Lightbox engaged in

illegal wiretapping and that Lightbox aided and abetted and conspired with Mr. Miller to commit

legal malpractice against him (Mr. Moldovsky), demanding that the Pennsylvania judge prohibit

Mr. Miller from representing Lightbox in this New York matter, and demanding that the judge

order that the tape-recorded evidence of Mr. Moldovsky's misconduct be destroyed.[2]

8.    Mr. Miller has advised, and I understand, that Lightbox's current motion is about

punishing Mr. Moldovsky's misconduct in connection with Mr. Miller's confidential New Jersey

deposition transcript, and that this is not the time to decide the ultimate merits of Lightbox's

claims against the Moldovsky Firm (and vice versa).

9.    Nevertheless it is amazing to me that Mr. Moldovsky has repeatedly engaged in

wildly out-of-control, abusive misconduct, including a pattern of trying to blackmail, extort, or

otherwise improperly coerce Lightbox and Mr. Miller to submit to Mr. Moldovsky's demands.

---

[2] I respectfully refer the Court to the public docket in the matter of Moldovsky v. Miller *et al.*, No. 2019-00793 (Pa. Ct. Common Pleas, Bucks County). Mr. Moldovsky's original and five amended complaints appear on that docket as #41, #73, #98, #111, #119, #130. Mr. Moldovsky's Pennsylvania motion to disqualify Mr. Miller from representing Lightbox, including in this current, New York matter, appears as Pa. Docket #3. Judge Baldi's denial of that motion has already been submitted to this Court. *See* Dkt. #820. Mr. Moldovsky's Pennsylvania motion to destroy the tape-recorded evidence of his misconduct appears on the Pennsylvania docket as Pa. Docket #99.

10.     Based on his repeated misconduct over the past few years, it is clear to me that Mr.
Moldovsky's lawless threats and blatant lying will continue unless this Court takes appropriate
action. I respectfully request that the Court impose meaningful and substantial sanctions on Mr.
Moldovsky.


Date: May 5 , 2020                           *Andrew Ellner*
                                             Andrew Ellner


Sworn to before me this 5th day of

_____May_____, 2020.


*Yuliya Fazekas*            Yuliya Fazekas      State of Texas, Collin County
Notary Public      Electronic Notary Public

Date Commission Expires:   05/29/2022



Notarized online using audio-video communication

**Exhibit "J"**



**CATALANO GALLARDO & PETROPOULOS, LLP**
ATTORNEYS AT LAW
100 JERICHO QUADRANGLE, SUITE 326
JERICHO, NEW YORK 11753

TEL. 516.931.1800
FAX 516.931.1033

Matthew K. Flanagan
Partner
mflanagan@cgpllp.com

August 12, 2020

**VIA ECF**

Hon. Anthony Cannataro
Justice of the Supreme Court
Supreme Court, New York County
111 Centre Street, Room 838
New York, New York 10013

Re:   *Scarola Malone & Zubatov LLP v. Andrew Ellner, et al.*
    Index No.    :    651324/17
    Our File No.   :    120-2223

Honorable Sir:

This firm represents plaintiff Scarola Malone & Zubatov LLP ("SMZ"), in connection with the counterclaims asserted by Defendants/Counterclaim Plaintiffs Lightbox Ventures, LLC ("Lightbox") and Andrew Ellner ("Ellner").

We write regarding our motion seeking to dismiss the counterclaims asserted against SMZ by Lightbox and Ellner (Mot. Seq. 19).[1] Our motion was scheduled by Your Honor for oral argument on March 17, 2020 (during a conference held on March 4), but the date was of course adjourned due to the pandemic. Specifically, for the reasons discussed herein, we ask that the Court reschedule our motion or take the motion on submission (as set out more fully in our concluding paragraph).

The personal dispute between the two defendants' attorneys - which dispute has nothing whatsoever to do with the claims and counterclaims asserted in this matter - has grown increasingly bitter and has generated countless emails and dozens of filings with the Court, including no fewer than four presently-pending sanctions motions made by Jonathan Miller, the attorney for Lightbox and Ellner, against Brem Moldovsky, Esq., who is representing his own firm.

---

[1] SMZ moved to dismiss Lightbox and Ellner's legal malpractice counterclaim on the grounds that SMZ succeeded in obtaining the results which, at the time, Lightbox and Ellner wanted: to preserve and grow the joint venture. See SMZ's Memorandum of Law in Support of its Motion to Dismiss (ECF Dckt #684) at p. 3; see also Ellner's email dated March 23, 2016 (ECF Dckt #662) (███████████████████████████████████████████████████). *See id.*

One of the most recent submissions, from late Sunday night (ECF Dckt. # 1010), reflects that the two attorneys have now resorted to accusing each other of "religious hypocrisy."

Since SMZ's motion to dismiss was fully submitted on February 18, 2020, there have been 194 additional documents filed in this matter by Mr. Miller or Mr. Moldovsky. By contrast, there have been only three filings by SMZ and two filings by the Court during the same 175 day period. The filings by Miller and Moldovsky average more than one per day, and this includes a period of time when filings were prohibited because of the pandemic. The overwhelming majority of these filings have nothing to do with the attorney fee dispute at the heart of this case, and instead pertain to a public airing of personal grievances between Mr. Miller and Mr. Moldovsky to which this Court, SMZ, and the undersigned are, unfortunately, a captive audience.

The additional filings unrelated to the attorney fee dispute include: 1) an Order to Show Cause seeking a temporary restraining order with respect to Mr. Miller's deposition testimony in an unrelated New Jersey lawsuit from several years ago (Mot. Seq. 22, ECF Dckt #844-854, 872-874, 889-911, 915, 973-975, 977-979) (notably, an issue that not only does not involves the plaintiff, but does not appear to involve Mr. Miller's clients as opposed to Mr. Miller personally and in his individual capacity); 2) a motion for sanctions against Mr. Moldovsky "for knowingly engaging in conduct designed and intended for no substantial purpose but to embarrass Lightbox's undersigned counsel and blackmail the undersigned into withdrawing his clients' pending motion, and for knowingly lying to this Court in connection therewith" (Mot. Seq. 24, ECF Dckt #855-871, 885-886, 912-913, 919-929, 934-935, 939); 3) a second motion for sanctions against Mr. Moldovsky "for knowingly engaging in conduct designed and intended for no substantial purpose but to maliciously injure Lightbox's undersigned counsel" (Mot. Seq. 26, ECF Dckt #945-966, 984-988, 999-1000, 1010-1012); and 4) a third motion for contempt sanctions against Mr. Moldovsky "for knowingly violating the Court's March 6, 2020 temporary restraining order" (Mot. Seq. 25, ECF Dckt #980-983, 1001-1009). There have also been a multitude of letters to the Court and "supplemental" affirmation and affidavits submitted in connection with other fully submitted motions (ECF Dckt #819-821, 874, 880-883, 916-918, 930-944, 968-972, 976, 989-992, 995). As well, there have been dozens of similar filings in connection with various interlocutory appeals by the each of the defendants stemming from this case and currently before the Appellate Division (including additional motions for sanctions, disqualification and intervention on their disagreements as to routine matters such as the content of the record in one appeal and briefing schedules).

In a letter filed on July 2, 2020, we sought the Court's aid in avoiding the continued waste of resources by the Court and the non-feuding attorneys. Mr. Miller and Mr. Moldovsky both filed letters in response to our letter, and their responses illustrate how their personal feud has enveloped every aspect of this litigation (ECF Dckt #997-998). Mr. Miller referred to Mr. Moldovsky as a "vexatious litigant" who "continues to barrage the Court and counsel with 'supplemental' affidavits and similar filings relating to fully-briefed motions" and "has requested that the First Department direct Your Honor to hold a hearing concerning my past employment history", while Mr. Moldovsky lamented that it was "odd and frankly unsettling that Mr. Miller turned Mr. Flanagan's letter request for a hearing and/or for their motion to be decided on the submissions into another opportunity to attack the undersigned for various unrelated matters" and insisted that one of the affidavits to which Mr. Miller referred "was filed to refute Mr. Miller

and Mr. Ellner's regular and ongoing disparagement, slurs and attacks against this Firm and the undersigned."

Since then, Mr. Miller and Mr. Moldovsky have only continued to utilize this lawsuit to attack each other, culminating with the accusation of "religious hypocrisy" on Sunday (ECF Dckt. # 1010). This attorney fee dispute is clearly not a proper forum, nor is this Court a proper tribunal, for assessing whether Mr. Miller and Mr. Moldovsky are conducting themselves according to their respective religious beliefs or more generally, for these attorneys to play out what is obviously a dispute as between them that is personal in nature.

In view of the foregoing, we respectfully request that the Court schedule oral argument on our pending motion to dismiss at the Court's earliest convenience (by video conference, telephone conference, or any other method reasonably available to the Court under the present circumstances). Alternatively, if this Court prefers to take the motion on submission, we are willing to waive oral arguments. We also request specifically that our motion be considered on a separate track from the proliferation of intramural motion practice the defendants and their counsel have placed before the Court.

We make this request with some amount of trepidation given that the pandemic has necessitated delay in *all* issues before the courts, and we do not seek special attention over the interests of others similarly situated. But we believe the objectively extraordinary and ongoing dispute between Mr. Miller and Mr. Moldovsky warrants at least asking that Your Honor consider adjudicating our motion on a track separate from the issues between the defendants so the core issues in the case can move forward.

Thank you for your attention to this matter.

Very truly yours,

MATTHEW K. FLANAGAN

MKF:kod

cc: **VIA ECF**

Richard J. J. Scarola, Esq.
Jonathan R. Miller, Esq.
Brem Moldovsky, Esq.

# Exhibit "K"

FILED: APPELLATE DIVISION - 1ST DEPT 11/09/2020 01:52 PM

NYSCEF DOC. NO. 51                                      RECEIVED NYSCEF: 11/09/2020

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SCAROLA MALONE & ZUBATOV LLP, | Case No. 2019-03384 |
| Plaintiff, | N.Y. County Index No. 651324/17 |
| - against - | AFFIDAVIT OF ALEXANDER ZUBATOV IN OPPOSITION TO LIGHTBOX'S MOTION TO STRIKE MATERIAL FROM THE RECORD |
| ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC and LIGHTBOX VENTURES, LLC, | |
| Defendants. | |

STATE OF NEW YORK    )
                           : ss.:
COUNTY OF NEW YORK  )

ALEXANDER ZUBATOV, being duly sworn, deposes and says:

1.     I am an attorney admitted to practice in the State of New York, and am an attorney with the law firm Scarola Zubatov Schaffzin PLLC, formerly known as Scarola Malone & Zubatov LLP ("SMZ"), plaintiff *pro se*, in this case. I make this Affidavit in opposition to the motion of defendants Andrew Ellner, LightBox Capital Management, LLC and LightBox Ventures, LLC (together, the "LightBox Defendants") to strike material from the Record on Appeal.

*Preliminary Statement*

2.     To begin with, we make clear our belief that LightBox's motion to strike the entirety of SMZ's Supplemental Appendix and significant portions of SMZ's Opposition Brief on Appeal — including all the brief's references to the complaint in the case, as well as its exhibit, the governing agreement in the case, both documents LightBox itself has included in its

own Appendix — is a baseless and egregiously bad-faith motion. We believe we should not have had to bear the cost and time of preparing opposition and hope that if the Court agrees, it will award us our costs, based upon our time as attorneys, in connection with this motion. On substance, as described in §I. below, the motion is wholly meritless (in the event this Court had any inclination to grant it in any respect, we address, in an abundance of caution, possible forms of relief in §II.), and as described in §III. below, the surrounding circumstances of LightBox's counsel's conduct leading up to the making of this motion are beyond the pale. In summary, the details are as follows:

- First and foremost, all the materials in the Supplemental Appendix that LightBox seeks to strike (but for one document which is a judicial decision that may be cited and of which this Court may take judicial notice in any event) were expressly recited by the court below as having been considered as part of the same Decision and Order now on appeal. As such, they are plainly part of the Record on Appeal under the terms of CPLR 5526.

- Specifically, our motion papers on the particular motion that is the subject of this appeal were submitted shortly after we had submitted our own motion for summary judgment — in certain respects a mirror-image of this motion — and which had included an affidavit and exhibits and an extensive recitation of the material facts at issue in *this* motion as well. Having done so, we did not include an independent "Statement of Facts" in our opposition to the motion to dismiss now on appeal here, but rather, simply referred the court below to the facts and papers submitted on our summary judgment motion. The court below, in deciding those motions, decided

them in a single decision, which is the decision currently on appeal. As such, the
material we included in the Record by way of our Supplemental Appendix was
unquestionably part of the record considered by the court below on this motion.

- Further illustrating the absurdity of what LightBox is seeking to do in this motion,
much of the material it wishes to strike from our Supplemental Appendix *and from
our opposition brief* includes every quotation from our retainer agreement (in this
action for unpaid legal fees) that is at the heart of this appeal, including our quotations
of contractual lien and account stated clauses in that retainer agreement *that reflect
the claims LightBox is seeking to have dismissed in this appeal!* LightBox's motion
is an obvious ploy to prevent us from relying on the very language in our retainer
agreement that, in addition to relevant background law, supports our position on this
appeal.

- Worse still, LightBox's markup of our brief appended as Exhibit 6 to its motion
papers would, by and large, exclude citations to material, including the retainer
agreement and the Amended Complaint in the case, *that is also included in
LightBox's own Appendix on this appeal.* The apparent pretext on which LightBox
would have this Court strike our references to those documents in our brief is that we
cite to those documents in our Supplemental Appendix rather than to those same
documents in LightBox's filed Appendix.

- Beyond these substantive responses, however, it is the background that led to the
making of this motion that highlights the motion's frivolousness. LightBox elected to

3

proceed on this appeal by the appendix method but, without consulting with SMZ, created and filed an appendix that inexplicably omitted *the entirety* of SMZ's submissions in the court below, even while LightBox included in its appendix material that was *outside* the record in the court below (such as a "consent to change attorney" document, *see* Dkt. No. 24 at A30, a letter to the court below from LightBox's counsel, *see id.* at A253, and a transcript of a hearing on a completely different motion. *See id.* at A31-91).

- When SMZ asked that these obvious defects in the appendix be corrected, LightBox's counsel Mr. Miller asked that we avoid wasting time on motion practice and, instead, identify what documents we wanted to include in the appendix so that he could prepare a supplemental appendix that would include such documents, thereby ,we believed, resolving the issue.

- When our time to oppose the appeal drew closer and we had had a chance to consider what documents we would be relying upon, we saw that our opposition to this motion had drawn as background on the more complete set of documents appended as exhibits to our contemporaneously filed and simultaneously decided summary judgment motion, and so we reached out to Mr. Miller again to include those documents in the supplemental appendix that had been previously discussed.

- Mr. Miller, at that point, flatly refused to include *any* of the documents we would be relying upon.

- Desiring, again, to avoid an undue waste of time on motion practice, we prepared our own supplemental appendix, at our own expense, and filed it on September 21, 2020 (Dkt. No. 45), 10 days in advance of the October 1, 2020 due date for our opposition brief that had been agreed to by stipulation. We did this to give Mr. Miller a chance to raise whatever issues he might wish to raise with any particular document in our supplemental appendix, so that, if there emerged a need to correct anything in it or in the brief to be filed later, *i.e.*, on October 1st, we would be able to do so.

- Mr. Miller, however, stayed silent at that time.

- As his November 12th due date to file his reply brief for the December Term (to which this appeal had been adjourned from the September Term) approached, however, Mr. Miller wrote to us, asking for a further adjournment of the appeal to the January Term (together with a related appeal he has as to a different party in the case below) because, he claimed, a debilitating eye condition that would last for weeks had disabled him from being able to work on his reply brief. We did not oppose his request, and he made a motion (that this Court granted) to adjourn the appeal to the January term based on that eye condition.

- Given the additional time he had now secured, Mr. Miller, despite his professed disability to work on the appeal, proceeded to file, on October 28, 2020, *this 901-page motion*. It appears, in retrospect, that he had secured additional time (to which we did not object) on entirely false pretenses, as his eye condition clearly had not

5

prevented him from using that additional time to work on these motion papers instead of on his reply brief on appeal.  This, in itself, is deeply troublesome conduct.

For all these reasons, this motion is outlandish and should not be countenanced.  Below, we discuss, first, the substance of the motion, *viz.*, why the materials LightBox seeks to exclude are unquestionably part of the Record on Appeal on this motion (whereupon, in an abundance of caution, we discuss briefly our view of what this Court could do if it saw any merit to LightBox's motion) and, second, Mr. Miller's egregious conduct in bringing this motion.

## I.

### THE MATERIALS LIGHTBOX SEEKS TO EXCLUDE ARE UNQUESTIONABLY PART OF THE RECORD BELOW

3.      There is, to begin with, as described above, a very simple response to LightBox's contention that the materials included in the SMZ's Supplemental Appendix are not part of the Record below:  this is simply incorrect as a technical matter.  CPLR 5526 clearly states that "[t]he record on appeal from an interlocutory judgment or any order shall consist of the notice of appeal, the judgment or order appealed from, the transcript, if any, *the papers and other exhibits upon which the judgment or order was founded* and any opinions in the case" (emphasis added).  The decision on appeal (the "Decision"), attached as Exhibit 1 to LightBox's current motion ("LightBox Mot."), on its first two pages, lists all the documents upon which the Decision was founded (they are broken out by motion, but because these motions were decided together, they are the totality "upon which the judgment or order was founded" within the meaning of CPLR 5526).  Among those documents are Supreme Court Docket Entries 206 through 229, *which are the exact contents of the Supplemental Appendix SMZ submitted on this*

6

*appeal*.[1]  As such, the judgment or order was clearly founded upon, *inter alia*, these documents, and they are part of the record below and, in accordance with CPLR 5525, part of the Record on Appeal.  On this basis alone, LightBox's motion fails.

        4.      There is, moreover, a very good reason why SMZ's moving Affidavit and exhibits on its summary judgment motion would have been considered at the same time as and decided (along with several other motions) in the same Decision as LightBox's motion to dismiss that is the immediate subject of this appeal:  the motions were, in many respects, essentially mirror images of one another, and so many of the same facts underpinned both.  They were briefed essentially contemporaneously, with SMZ filing its summary judgment motion on December 31, 2018, and its opposition papers on LightBox's motion to dismiss just over a month later, on February 12, 2019.  Critically, SMZ's memorandum of law in opposition to LightBox's motion to dismiss that was filed in the court below, the first five pages of which are attached as

---

[1] There is only one additional document included in the Supplemental Appendix.  This document, beginning on the 441st page of LightBox motion, is not a factual exhibit at all, but rather, a later decision by the court below with regard to LightBox's motion to dismiss similar cross-claims against it by another defendant in this case, Brem Moldovsky, LLC, which decision is the subject of an appeal pending simultaneously with this one.  *See* Case No. 2020-02530.  The reason for the inclusion of this decision in the Supplemental Appendix is that LightBox has argued on appeal that one of the two claims at issue in this appeal — SMZ's contractual lien claim — was not dismissed by the court below *inadvertently*, as it is not discussed in the Decision.  To counter this assertion, SMZ has relied, in part, on the decision of the court below of a very similar claim for a contractual lien by Brem Moldovsky, LLC, in which decision the court below *did* discuss that claim explicitly, declining to dismiss it.  LightBox itself, in communication with me about the inclusion of this decision in the record, stated it will "stipulate to judicial notice of Dkt. #685, Justice Cannataro's decision regarding Lightbox's motion to dismiss Mr. Moldovsky's crossclaims."  LightBox Mot. at p. 898.  Indeed, as this is a court decision rather than a factual exhibit of any sort, there is no reason it could not be considered by this Court much as any other court decision could be considered, and LightBox's present attempt to strike it is frivolous.  *See, e.g., Allen v. Strough*, 301 A.D.2d 11, 18 (2d Dept. 2002) ("In New York, courts may take judicial notice of a record in the same court of either the pending matter or of some other action"); *In re Wesley R.*, 307 A.D.2d 360, 363 (2d Dept. 2003) (taking judicial notice of decision of the court below in a companion appeal).

Exhibit 1 hereto, contained no "Statement of Facts" and relied expressly on the detailed facts recited as part of its earlier-filed summary judgment motion. Specifically, the first substantive sentence of its brief states that "SMZ's contemporaneously filed summary judgment motion describes this attorneys' fees collection case in detail" and proceeds to summarize those facts "in brief," *i.e.*, in the three sentences that follow. *See* Ex. 1 at 1. After a brief preliminary statement, the opposition brief then launches immediately into the "Argument" section, with no "Statement of Facts," and still more pointedly, includes a footnote appended to the "Argument" heading itself that contains the following text: "SMZ presents a fuller discussion of the background of this case in the *Statement of Facts* in its contemporaneously submitted motion for partial summary judgment and does not reiterate those facts here." *See* Ex. 1 at 5, n.6.

5. It is clear from these statements that SMZ — following what we believe is a widespread practice that benefits both attorneys and judges by avoiding needless duplication of contemporaneously presented exhibits and discussions of facts — was expressly referring the court below to those contemporaneously filed papers on a related motion and assuming, on that basis, the familiarity of the court below with the detailed facts at issue on the motion. Not surprisingly, the Court below considered the two motions (as well as several other contemporaneously filed motions) together, and ruled upon them in a single Decision and Order, the one now on appeal.[2] Of course, SMZ could not assume similar familiarity with the facts on

---

[2] Notably, LightBox's counsel completely misrepresents the disposition of SMZ's summary judgment motion when it asserts that it "successfully opposed" the summary judgment motion. *See* LightBox's Mot. at ¶7. The summary judgment motion was not decided at all. Rather, despite having initially given SMZ permission to move for summary judgment at an early stage in the proceedings, the court below denied the summary judgment motion "without prejudice" as "premature" when LightBox later raised the objection that issue had not yet been joined. *See* LightBox's Mot., Ex. 1 at 5. To be sure, SMZ intends to renew that motion.

the part of *this* Court, and so SMZ had to include in its Supplemental Appendix the affidavit and exhibits on the related summary judgment motion that the court below considered alongside the motion to dismiss at issue on this appeal.  For that reason as well, even if the Decision did not expressly state — as it does — that the affidavit and exhibits on the summary judgment motion were considered, the need for and propriety of their inclusion here are obvious.

      6.      There is yet a third reason why LightBox's effort to strike the entire Supplemental Appendix and significant portions of SMZ's brief is frivolous:  large parts of the materials included in the Supplemental Appendix and discussed in the brief were otherwise part of the Record on Appeal in any event.  LightBox itself filed multiple affidavits and exhibits in making its motion to dismiss in the court below, *see* New York County Supr. Ct. Dkt. Nos. ("Supr. Ct. Dkt.) 142-177, 179-197 & 320-23, and although SMZ did not file on this motion in the court below the full panoply of documents it had filed in its contemporaneous summary judgment motion, it did also file a separate affidavit and exhibits in support of *this* motion on *this* appeal.  *See* Supr. Ct. Dkt. 299-308.  Among these documents filed by LightBox and SMZ are many of the same core documents in the Supplemental Appendix, including the Amended Complaint containing the causes of action on appeal, and including its Exhibit A, which is SMZ's Retainer Agreement, *see* Supr. Ct. Dkt. 300, SMZ's invoices pertinent to its account stated claim that LightBox seeks to have dismissed, *see* Supr. Ct. Dkt. 160, certain decisions from Judge Denise L. Cote that are pertinent to the issues on appeal, *see* Supr. Ct. Dkt. 301-02, and various relevant e-mails among the parties.  *See* Supr. Ct. Dkt. 162-63, 165-173, 175, 177, 183, 197 & 305-07.  In fact, the Amended Complaint and the Retainer Agreement are not only

unquestionably part of the Record on Appeal but *are also clearly exhibits included in LightBox's own Appendix filed on appeal.  See* Dkt. No. 24 at A92-100 & A259-278.

7.     Despite these facts, LightBox's present motion seeks to strike these same documents from the Supplemental Appendix *and seeks, moreover, to strike out all of SMZ's brief's references to these documents.  See, e.g.,* LightBox Mot., Ex. 6, at 8-12, 15-21, 30-31, 40, 48-49, 52 & 54.  LightBox, in fact, has made no effort to determine which of the documents in the Supplemental Appendix are otherwise in the Record and has, instead, indiscriminately sought to strike all references to documents that are included in the Supplemental Appendix, *even if those documents are located elsewhere in the Record or in LightBox's own Appendix in any event.*  It has done merely, it appears, because the brief cites to the Supplemental Appendix rather than to LightBox's Appendix.

8.     Still more egregiously, LightBox's proposed "strikeouts" from SMZ's brief include not only SMZ's descriptions of the allegations in the Amended Complaint *pertaining to the two claims that LightBox wishes to have dismissed on this appeal*, *see* LightBox Mot., Ex. 6, at 15-16, but also all of SMZ's direct quotations from the language of its Retainer Agreement — which, again, along with the Amended Complaint*, see* Dkt. No. 24 at A259-278, is an exhibit in LightBox's own Appendix*, see id*. at A92-100 — *where SMZ quotes, for instance, the very Retainer Agreement paragraph creating its contractual lien entitlement, see* LightBox Mot., Ex. 6 at 17, 48-49, 52 & 54, *and its Retainer Agreement paragraph advising the client, i.e., LightBox, of SMZ's entitlement to an account stated in the circumstances at issue in this case.  See id*. at 17-18 & 40.  It is clear, in that light, that LightBox is attempting to use this frivolous motion to prevent SMZ from relying on the very language in the Retainer Agreement

10

that, along with relevant background law, entitles SMZ to maintain the very claims LightBox is

seeking to have dismissed on this appeal.

9.     None of the caselaw LightBox cites in its counsel's Affirmation in support

of its motion is relevant to the circumstances at issue here. *E. Funding LLC v. San Jose 63*

*Corp.*, 172 A.D.3d 818 (2d Dept. 2019), involved a situation where a plaintiff had "failed to

establish its entitlement to a default judgment," *id.* at 819, in the court below by virtue of neither

having submitted a copy of a key document, *viz.*, its affidavit of service of the Summons and

Complaint, nor having referred to it by docket number, as mandated under CPLR 2214(c), which

requires the moving party to " furnish all other papers *not already in the possession of the court*

necessary to the consideration of the questions involved." (Emphasis added.)  In affirming the

decision below, the Second Department refused to consider a copy of the affidavit of service that

the plaintiff had attempted to introduce into the Record on Appeal, as it had not been part of the

submission below. *See E. Funding LLC*, 172 A.D.3d at 819.  For the Second Department to have

admitted into the Record on Appeal the key affidavit of service document, the very absence of

which from the submissions below had resulted in the denial of a default judgment, would, of

course, have made no sense.  No such situation is at issue here.  First, the papers in the

Supplemental Appendix certainly *were "*already in the possession of the court below," CPLR

2214(c), as they were being submitted contemporaneously on SMZ's related mirror-image

motion, as described above; and second, those papers were expressly considered as part of the

same Decision by the court below, as also described above, such that here, in contrast to *E.*

*Funding LLC*, *not* deeming them part of the Record on Appeal would make no sense.

10.     The other cases LightBox cites for the proposition that papers submitted on one motion should not be included in the Record on Appeal of a different motion, *see* LightBox Mot., ¶16, all involve distinguishable circumstances in which there was no indication, as here, that (i) the two motions were contemporaneously submitted and interrelated, (ii) with one referencing and relying upon the papers submitted in the other, and as such, (iii) were decided in a single Decision and Order, *viz.*, the one currently on appeal.

## II.

### IF THIS COURT SAW ANY MERIT TO LIGHTBOX'S MOTION, THE REMEDY WOULD NOT BE THE ONE LIGHTBOX PROPOSES

11.     If, despite the facts adduced at §I. above and those additional considerations adduced at §III. below, this Court were to see any merit to LightBox's motion, the remedy should not be to strike the entire Supplemental Appendix and all portions of the brief citing to it.  If, for example, this Court were to see any need to enlarge the Record on Appeal formally or to take judicial notice of the material at issue, it would be able to do so and, given LightBox's conduct in bringing this late-breaking motion after securing an adjournment of the appeal on what appear to us to be false pretenses, as described further at §III. below, it would be more than appropriate for the Court to grant such relief, if, again, there should be any need for it.[3]  *See, e.g., F. I. duPont, Glore Forgan & Co. v. Chen*, 58 A.D.2d 789, 789 (1st Dept. 1977)

---

[3] While LightBox argues that this Court cannot take judicial notice of the facts presented in the Supplemental Appendix because they are disputed and because there has been no discovery as yet, *see* LightBox Mot. at ¶¶19-20, this is an appeal of LightBox's motion to dismiss two of SMZ's claims.  As such, even to the extent any facts may be disputed, the Court would merely be taking judicial notice of SMZ's *allegations* — facts alleged by SMZ that should be assumed to be true on a motion to dismiss.  *See, e.g., Ingle v. Glamore Motor Sales, Inc.*, 73 N.Y.2d 183,

12

("While the application comes with poor grace at this belated stage, we believe it better, since we should review all the facts to deal with the matter appropriately, to grant the motion, which we do, without costs"); *People v. Singleton*, 36 A.D.2d 725, 726 (2d Dept. 1971) ("The record on appeal, as amplified by other court records, is adequate for appellate review by this court.… Assuming that that determination is technically not part of the record, this court may take judicial notice of it").  If this Court were to see a need for a formal motion on our part in order to enlarge the Record, we would ask for an opportunity to make such a motion.

12.     Furthermore, if this Court were to conclude that anything in the Supplemental Appendix is improperly included, the remedy would not be to strike out all portions of the brief citing to the Supplemental Appendix, but rather, where appropriate, to revise the citations in the brief so that they point to material otherwise in the Record on the Appeal, such as in LightBox's own Appendix.

III.

THE CIRCUMSTANCES SURROUNDING LIGHTBOX'S MAKING
OF THIS MOTION AND THE PALPABLE DEFECTS IN LIGHTBOX'S
OWN APPENDIX MAKE CLEAR THAT THIS MOTION IS FRIVOLOUS

13.     In addition to being substantively baseless as a legal matter, as described at §I. above, LightBox's motion also represents a deplorable course of conduct by it and its counsel, Mr. Miller, and this Court should award us the costs, based upon our time as attorneys, of having to oppose this motion in order to deter such conduct in the future.

---

194 ("in opposing motions to dismiss for failure to state a cause of action and motions for summary judgment the plaintiff's submissions must be accepted as true").

14.     LightBox chose, in this case, to proceed based on the "Appendix" method rather than proceeding on a full Record.  In composing its Appendix, however, LightBox's counsel did not abide by the customary protocol of reaching out to SMZ to determine what SMZ might want to included in the Appendix, nor did LightBox's counsel make any attempt, as required by CPLR 5528(a)(5), to anticipate what parts of the Record "will be relied upon by the respondent."  *See also* CPLR 5528 at cmt. C5528:2 ("The appellant and respondent should confer in advance about what portions of the record should go into the appendix.  The appellant, whose brief is first drawn, is required to include in its appendix not only the parts of the record necessary to consider the appellant's points, but also 'those parts the appellant reasonably assumes will be relied upon by the respondent.'  CPLR 5528(a)(5).  Actually, the appellant should make no assumption at all, but should consult with the respondent to find out precisely what the respondent wants included, and, if the request is not unreasonable, include it").

15.     Instead of doing so, LightBox's counsel, while including in the Appendix *its own* materials relied upon below, including even its own briefs below, *did not include so much as a single piece of paper SMZ had filed in opposition to the motion on appeal*.  *See* Dkt. No. 24.  This, in itself, is conduct that this Court has previously thought worthy of a strongly worded reprimand.  *See, e.g., 2001 Real Est. v. Campeau Corp. (U.S.), Inc.*, 148 A.D.2d 315, 316 (1st Dept. 1989) ("The omission from the appeal record by third-party defendant of much of the record before the Supreme Court, specifically documents filed by third-party plaintiff, is not only in violation of the statute but is highly unprofessional as well.  It appears that third-party defendant was only interested in having this court examine fully its own arguments and not those presented by the other side.  Accordingly, third-party plaintiff was compelled to submit its own

14

extensive supplemental record on appeal, which is nearly three times the length of the original record on appeal.  The failure by third-party defendant to file a full and complete record can only be deplored"); *see also* Siegel, N.Y. Prac. §539 (6th ed. 2020) ("Whatever appeal method is used, it is 'highly unprofessional' for the appellant to include only materials favorable to his own side and omit matter favorable to the other").  In such circumstances, courts have also seen fit to shift the costs of preparing the Supplemental Appendix to the appellant.  *See, e.g., Kimberly-Clark Corp. v. Power Auth.*, 35 A.D.2d 330, 338-39 (4th Dept. 1970) (holding, where the appellant had included material supportive of its case but not of respondents' case in its appendix, that "we can not say that the material contained in respondents' appendix was not relevant to the issues presented," and that, therefore, "[r]espondents should be permitted to include in their disbursements the cost of preparing this supplemental appendix"); *cf. Hayden v. Bruni Constr. Co., Inc.*, 247 A.D.2d 350, 350 (1[st] Dept. 1998) (imposing monetary sanctions on party and its counsel where "[t]hey also omitted from the record on appeal certain documents referred to in the motion papers, but then opposed plaintiff's motion to enlarge the record," such that, as here, "[t]he frivolous and obstructionist conduct of defendants and their counsel has wasted the time and resources of this Court and of their opponent").

16.     Worse still — especially in light of the ironic fact that LightBox has now made this motion to exclude the entirety of the Supplemental Appendix SMZ created and filed at its own expense to remedy LightBox's omission — *LightBox's own Appendix included material not properly part of the Record on Appeal*.  Unlike the material in SMZ's Supplemental Appendix — which, as described above, was expressly referenced and relied upon by SMZ's papers below on this motion and which was considered as part of the same Supreme Court

Decision and Order now on appeal — it appears that the extraneous material in *LightBox's*

Appendix is not properly part of this Record on Appeal in any respect.  *See* Dkt. No. 24 at 30-31

& 253.  (Again, to avoid a burdensome waste of time for all involved, SMZ, in contrast to

LightBox, is not requesting that the extraneous material and all references to it in LightBox's

brief be stricken but is merely discussing this material here in order to make clear the egregious

bad-faith of a party that files an Appendix that includes only its own filings and includes material

wholly extraneous to this appeal and then proceeds to file a motion seeking to have the whole of

its party-opponent's Supplemental Appendix and large portions of its brief stricken on the false

premise that the exhibits included in the Supplemental Appendix are not part of the Record.)

    17. When I brought the incompleteness of LightBox's Appendix to its counsel

Mr. Miller's attention by an e-mail of August 12, 2020, attached as Exhibit 2 hereto, asking him

to remedy the defects in order to avoid motion practice, Mr. Miller responded in an e-mail later

the same day, attached as Exhibit 3 hereto, in which he struck a conciliatory tone, expressing the

wish to avoid "wast[ing] time on motion practice," stating that he was "sure we can get this done

amicably," and asking that I specify "by docket number which documents [I] want added."  In a

further e-mail the next day, attached as Exhibit 4 hereto, he stated the best approach would be

"for [him] to prepare a supplemental appendix."  Yet, once we had made enough progress on our

opposition brief on appeal to know which additional documents we would be relying upon —

whereupon I also saw that our opposition on this appeal had expressly relied on the more

complete affidavit and set of exhibits on our contemporaneously filed summary judgment motion

decided as part of the same Decision on appeal here — when I reached back out to Mr. Miller to

specify which documents we would want included, *see* Exhibit 5, he responded with a blanket

refusal to include *any* of those papers in a supplemental appendix, claiming (falsely, as described above), that they were not properly part of the Record on Appeal. *See* Exhibit 6 hereto.

18.     At that point, in lieu of wasting everyone's time with motion practice, we simply proceeded to do our own Supplemental Appendix, at our own expense, and filed it on September 21, 2020 (Dkt. No. 45), 10 days in advance of the October 1, 2020 due date for our opposition brief that had been agreed to by stipulation.  We proceeded in that fashion to give Mr. Miller an opportunity to raise any issues he wished to raise to so that they could be promptly remedied in advance of our October 1st filing deadline.  He did not raise any issue, express any objection or take any action at that time.

19.     What Mr. Miller did instead is this:  on October 7, 2020, he sent us an e-mail, attached as Exhibit 7 hereto, stating that he would not be able to meet his November 12, 2020 filing date for his reply papers on this appeal (and another related appeal from the same case) due to an eye condition (conjunctivitis) that had substantially impaired his vision and that would continue to substantially impair his vision for weeks.  He asked for an adjournment. Despite the fact that this appeal had been adjourned several terms previously, we did not object to his request in light of the medical situation he described.  On October 21, 2020, Mr. Miller proceeded to file a motion for the adjournment of both appeals to the December term based on this same medical situation, which motion was granted on that basis.  *See* Exhibit 8 hereto.

20.     Despite professing an inability to see sufficiently well to work on his papers on appeal, just a week later Mr. Miller filed this frivolous 901-page motion seeking to have SMZ's entire Supplemental Appendix and all portions of the brief relying upon it stricken. It is obvious, in retrospect, that he had used his pretextual medical excuse to buy himself time to

engage in motion practice rather than to work on his reply brief on this appeal. Such conduct should not be countenanced.

21.     For all these reasons, LightBox's frivolous motion should be denied, and this Court should award us the costs of opposing this motion, based upon our time as attorneys, and order such further relief for SMZ and against LightBox as it deems just and proper.

_____
Alexander Zubatov

Sworn to before me this
9th day of November, 2020

_____
Notary Public

MICHAEL VAHALA
Notary Public, State of New York
Reg. No. 01VA6333035
Qualified in New York County
Commission Expires November 16, 2023

# Exhibit "V"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
------------------------------------------------------------ X
                                        :        Case No.:
                                        :
BREM MOLDOVSKY, L.L.C.; and             :        JURY TRIAL DEMANDED
BREM MOLDOVSKY, ESQUIRE                 :
                                        :
                    Plaintiffs,         :
         vs.                            :        COMPLAINT
                                        :
ANDREW ELLNER;                          :
LIGHTBOX VENTURES, LLC;  and            :
LIGHTBOX CAPITAL MANAGEMENT, LLC        :
                    Defendants.         :
                                        :
                                        :
------------------------------------------------------------ X
```

Plaintiff Brem Moldovsky, L.L.C. (the "Moldovsky Firm") and Brem

Moldovsky, Esquire, *pro se* and by its attorney, Brem Moldovsky, Esq, as and for its Complaint

herein, alleges as follows:

## THE NATURE OF THE ACTION

1.      This action arises from plaintiff Moldovsky Firm and Defendants' prior

relationships as attorney and client.  Defendants were previously clients of Plaintiffs.  Between

the time before and in the course of the representation, Defendants recorded an unknown number

of telephone calls between themselves and Plaintiff.

2.      Defendants thereafter used the recordings and transcriptions of them to

harm, injure, harass, and abuse the Plaintiff, cause stress and distress, and threaten the Plaintiff.

3.      Defendants utilized the recordings and transcriptions of them to defame

Defendants but submitting them to the public record in order to make misrepresentations and

promote mistruths.

1

## THE PARTIES

4.     Plaintiff Brem Moldovsky, L.L.C. is a law firm with offices in Pennsylvania, New York, and New Jersey, and is also referred to herein as "the Moldovsky Firm."

5.     Plaintiff Brem Moldovsky, Esquire is an attorney with the Moldovsky Firm and with offices in Pennsylvania, New York, and New Jersey.

6.     Defendant Andrew Ellner is an individual residing at 210 West 77th Street, Apt. 8W, New York, NY 10024.

7.     Defendant Lightbox Ventures, LLC is an entity owned by Andrew Ellner with a registered address at 210 West 77th Street, Apt. 8W, New York, NY 10024.

8.     Defendant Lightbox Capital Management, LLC is an entity owned by Andrew Ellner with a registered address at 24 West 40th Street, Second Floor, New York, NY 10024.

9.     Andrew Ellner, Lightbox Ventures, LLC, and Lightbox Capital Management, LLC are hereinafter collectively referred to as "Lightbox".

## JURISDICTION AND VENUE

10.     Jurisdiction in this Court is proper under 28 U.S.C. §1 332(a) because plaintiff is a citizen of the State of Pennsylvania and Ellner and the Lightbox Defendants are citizens of the State of New York, and the amount in controversy exceeds $75,000.

11.     Venue in this Court is proper under 28 U.S.C. §1 391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the State of Pennsylvania insofar as plaintiff operated the business at issue from the State of Pennsylvania and was damaged in Pennsylvania.

2

12.     At the time of the occurrences of this Complaint, a series of recorded phone conversations that were made by Lightbox, Lightbox was aware that Plaintiffs were based out of Bucks County, PA and were often in Bucks County, PA (and other places in Pennsylvania) as elaborated below.  Lightbox regularly mailed payments and materials to the Bucks County, Pennsylvania office, which he utilized and treated as the primary address for contact.  Lightbox received calls from and called to Defendants including outside of business hours and often on a Pennsylvania cell phone line with a 610 area code on a sufficiently regular basis, including on professional and personal time, on weekends and on holidays.  One phone call, memorialized by an alleged recording, was on Thanksgiving Day when Plaintiffs were in Bucks County.

13.     Now Lightbox has entered into the Commonwealth, has delivered the contraband recordings into the Commonwealth or plans to, and has introduced the contraband recordings to others, or so it is understood and believed.  Lightbox has availed itself of and the Commonwealth's jurisdiction including by the process of finding and hiring counsel, preparing for and then initiating an Eastern District of Pennsylvania action, Ellner v. Moldovsky, Case No.: 2:20-cv-06190-KSM, wherein Lightbox intends to use the recordings, information about the recordings, and misrepresentations about the recordings, within the litigation and without it, to others in the Commonwealth, etc. to further attack and damage the Plaintiffs as described below.

**BACKGROUND**

**ACQUAINTANCE WITH LIGHTBOX AND LIGHTBOX LITIGATION 2016-2018**

14.     The Moldovsky Firm began interacting with Mr. Ellner and Lightbox in January 2017, then representing them in February 2017.

15.     Mr. Ellner and Lightbox represented themselves as sophisticated, counseled, and capable and trustworthy of managing hundreds of millions of dollars in investments.  Mr. Ellner had previously worked for Lehman Brothers for many years, holding global and executive positions.

16.     The underlying litigation involved a failed joint venture for a global real estate venture Mr. Ellner claimed and believed had in excess of hundreds-of-millions of dollars-worth of potential, was a first in the industry, already had listings of hundreds-of-millions of dollars of real estate and more.

17.     During the time of discussions with Mr. Ellner over January and into February 2017 over terms of representation, the Plaintiffs discussed and received input from colleague and prior counsel, attorney Jonathan Miller regarding this potential representation.

### STRATEGIC AND COMMUNICATION ISSUES WITH LIGHTBOX

18.     In November 2017 The Moldovsky Firm exercised its contractual right to not have to continue on the litigation due concerns with the economic worthwhileness of the case and value, economic hardship on the firm, client misrepresentations and related, and this was part of what lead to the amending of the Agreement between the Firm and Lightbox.

19.     The Moldovsky Firm and Lightbox negotiated the Amended Agreement extensively, eventually reaching a consensus in December 2017 and executing an Amended Agreement that was substantially beneficial to Lightbox and to the Ellner Defendants in particular.

**WIRETAPPED PHONE CALL RECORDINGS ARE MADE BETWEEN JANUARY 2017 – LATE SPRING OF 2018, INCLUDING THANKSGIVING DAY, 2017**

20.     Over 2017 and about the first third of 2018, without the Plaintiffs' knowledge, permission or consent, an unknown number of phone calls (from some to many) between Mr. Ellner and Mr. Moldovsky were recorded by Ellner and Lightbox.

21.     The recordings included at least one conversation on Thanksgiving Day, 2017, while Mr. Moldovsky was at his home (which has an office) in Bucks County, Pennsylvania, though there were others based on Mr. Miller Lightbox's counsel in the New York Supreme Court, who had assumed representation of Lightbox as their counsel in the S.D.N.Y. matter as well, referring to them in the plural tense and there being many calls with Mr. Moldovsky and Mr. Ellner.

22.     It has been admitted that at least two recordings of these calls have occurred by Mr. Ellner, and it has been misrepresented that he never called Plaintiffs on a Pennsylvania phone number or when they were in Pennsylvania, both of which are false.

23.     Plaintiffs were not made aware that there were recordings until at or around the time Lightbox filed a transcription as an Exhibit to Mr. Ellner's Affirmation in Opposition to Statutory Charging Liens in a Southern District of New York ancillary interpleader litigation on October 12, 2018.

24.     Upon information and belief there are as many as fifty to one hundred or more of recordings based on how many recordings Mr. Ellner could have recorded of the phone calls between him and Mr. Moldovsky.  Lightbox has never denied that there are more than two and more than what they have so far disclosed.

25.     Over time more recordings were learned about.

5

26. Lightbox has affirmed to the Court that they *only* called the Plaintiffs' New York line while in New York, however, this is prov-ably false. At least some calls were from Lightbox to a Pennsylvania cell phone.

27. Mr. Ellner appreciated that part of what made the Moldovsky Firm more affordable than other firms he had contacted was the Pennsylvania location (despite having an also having an office in New York).

28. Ellner and Lightbox travel frequently to many different states and countries, and as such, their location at the time of various of the recordings is unknown some or more of the time. However, based on vacation home ownership, relatives, business interests and other reasons, Mr. Ellner visited and spent time in other states in the relevant time period, which, like Pennsylvania, are also "two consent states" for wiretap statute purposes. Such states are believed to include Florida, Nevada and/or California. Of course, there may be others too.

29. Lightbox and Mr. Ellner have already violated the Wiretap Act's provisions against making and distributing unauthorized recordings by 1) making them and 2) submitting them or transcripts of them to various courts already, including the USD Southern District of New York, New York Civil Supreme Court, and the Second Circuit Court of appeals and with intention for further use and likely further use already occurring.

30. Lightbox has threated to release and play such illegal recordings to a jury with what they indicate will be devastating impact. Plaintiffs are less concerned with such being dynamic but more that Defendants continued to present facts and evidence in misleading and false ways without legitimate purposes and thus causing more waste, fees, costs, expenses, etc. including in having to rebut, answer, explain away, etc.

6

31.     Lightbox sought to insert them last minute as additional evidence in the Second Circuit Appeal by playing them on their counsel's laptop, where they would be further recorded by the Court's livestream and hosted on the internet indefinitely for availability to the public (without restrictions).  That request was denied.

32.     It is still unknown just how many phone calls were recorded or transcribed, since only two have been turned over but Lightbox has never denied that there are others, and, actually, as indicated above at ¶ 24, they intimated that there were at least several others.

33.     It is unknown when the recordings took place and what was said on them, however, it is believed that any such recordings do not of course include Brem Moldovsky doing or saying anything inappropriate because he did not and because if he did Lightbox certainly would have used them by now.

34.     Plaintiffs sought to be provided with copies of the recordings, which Lightbox and Mr. Ellner (through counsel) refused to provide.

35.     The Defendants possessed and still possesses recordings from various to numerous of these phone conversations recorded by Mr. Ellner without permission or consent by Mr. Moldovsky that are violative of the Pennsylvania Wiretap Act, and, depending on the location, of the wiretap statutes in the other locations from where Mr. Ellner was secretly recording.

## THE BUCKS COUNTY LITIGATION IN 2019

<u>Writ of Summons in this Case and Pre-Complaint Discovery Served Seeking Phone Calls and Transcripts in February 2018</u>

36.     The Moldovsky Firm initiated a Bucks County Action (<u>Moldovsky v. Miller et al.</u>, Bucks County Court of Common Pleas No.: 2019-00793) on February 5, 2019

7

based in part on Mr. Ellner's violations of the Pennsylvania Wiretap Act (18 Pa. C.S.A. §§ 5701 et. seq., hereinafter the "Wiretap Act") by Ellner and his entities and related causes of action as well as other causes of action.

37.     Pre-Complaint discovery was served via email on February 5, 2019, and via process server along with the summons to Lightbox on February 27, 2019 with a narrow focus of gathering specific information about the recorded phone calls.

38.     Mr. Ellner hired Emma Klein, Esq. of Fox Rothschild to represent him in the matter.  On his behalf, Ms. Klein filed for a protective order to avoid responding to discovery, followed by a demand for a complaint.

39.     Mr. Ellner continued to evade discovery, particularly as to Mr. Ellner's recorded phone calls.  To date, the Moldovsky Firm has only seen partial transcripts of what is believed to be two separate phone calls, though it is believed others exist.   Lightbox has never denied allegations that there were many more recordings, and there could be recordings of all of the phone calls between Plaintiffs and Lightbox.  Lightbox has lied about the recordings by stating that they "never" called into a Pennsylvania line even though there are records that show otherwise and there is a recording from Thanksgiving day while Plaintiffs were in Pennsylvania.

40.     The extent to which Ellner was recording is still unknown for sure, as is Mr. Ellner's location when he was doing the various to many recordings, but there is reason to believe that some of the recordings of calls occurred from other two consent states and that even for the ones recorded in New York that under the circumstances here the interest of Pennsylvania is greater than the interests of New York and thus Pennsylvania's Wiretap Act will apply.  This is due in part that after years of litigation in New York these recordings have not helped but only

have been part of wasting much judicial, party and public time. It appears that New York has no interest as it does not need more judicial, party and public time and energy wasted.

<u>Lightbox Counsel's Acknowledgement of Potential Illegality of Phone Recordings in August 2019</u>

41.     On August 20, 2019 Bucks County Judge Robert O. Baldi held an Oral Argument in that matter in part as to multiple motions for protective orders blocking discovery as to the phone calls.

42.     It was admitted by Ms. Klein to Mr. Moldovsky and a paralegal with the firm who was with Mr. Moldovsky at the time and with Mr. Miller nearby that the phone recordings were questionable enough that she and Fox Rothschild would not even handle them and that she had not listened to them. She made clear that they were handling them as a sort of (or potential) contraband where they were careful not to possess or have custody over them. She made a point of conveying this information apparently for a few reasons, including making it clear that she and her firm were treating these with care and working to avoid a claim of them holding, possessing, using, etc. these materials.

<u>Discontinuation of Claims in Bucks County Court</u>

43.     Among other issues, Mr. Ellner and Lightbox argued that the majority of the claims the Plaintiffs brought in Bucks County that included claims related to the breach of fiduciary duties of Lightbox and Mr. Ellner's counsel and Plaintiff's former counsel Jonathan R. Miller, were properly placed in New York and not in Pennsylvania.

44.     Judge Baldi directed that and per the applicable rules there was to be discovery as to jurisdiction and case and discovery planning.

45.     There were some attempts to coordinate on setting a calendar and such for discovery.

46.     For various reasons, including Mr. Miller's ongoing lack of malpractice insurance, on November 7, 2019, Plaintiffs filed a praecipe to discontinue and end the matter without prejudice pursuant to Pa. R. C. P. Rule 229 until the issues had ripened in New York.

47.     That time has sufficiently come at this point, and the Plaintiffs have initiated the matter of <u>Moldovsky v. Miller et al.</u>, Case No.: 1:21-cv-02452, in the Southern District of New York.  However, the claims related to Mr. Ellner and Lightbox's wiretap violations appear still better placed in Pennsylvania.

### ANDREW ELLNER'S EASTERN DISTRICT OF PENNSYLVANIA LAWSUIT

48.     On or about December 8, 2020 Mr. Ellner initiated a proceeding against Brem Moldovsky, L.L.C., Brem Moldovsky, and Gerald Pomerantz in the Eastern District of Pennsylvania for Malicious Prosecution and Abuse of Process related to the Bucks County Matter (<u>Ellner v. Moldovsky</u>, United States District Court for the Eastern District of Pennsylvania, Case No.: 2:20-cv-06190-KSM).

49.     A primary focus of Mr. Ellner in that Complaint is the Moldovsky Firm's ability to raise their legitimate wiretap violation claims against Mr. Ellner and Lightbox at all.

50.     Once again, the Plaintiffs find themselves in a compromised position because Mr. Ellner and Lightbox are privy to the extent and contents of the recordings, the circumstances surrounding them, where they were recorded and when, and Plaintiffs' information is more limited.

51.     Plaintiffs will be forced to spend time and resources on litigation to uncover information needed to defend against the Complaint.

52.     Mr. Ellner already uses that forum to espouse the continuing and repeated perjurious falsehood that he never called Plaintiffs at a Pennsylvania phone number (related to

10

wiretaps Mr. Ellner made), which is demonstrably false and has already been proven to Mr. Ellner in the course of the Bucks County litigation. And, yet this is another example of an easily disproven, false allegation which Mr. Ellner and his counsel continue to propound. [1]

53.    This propounding includes that Mr. Ellner has initiated the Eastern District of Pennsylvania matter with an intent to utilize the alleged recorded phone calls within or related to the case, and otherwise as well.

54.    Lightbox thus perpetuates its violations of 18 Pa. C.S.A. § 5703 by using or endeavoring to use the recorded phone calls and transcripts of them.

55.    It is expected that the Plaintiffs will need to waste more time and resources rebutting further mistruths, misconstructions, the presentation of materials out of context or without full or fair context, etc. as Plaintiffs have had to do so far based on Defendants' actions, presentations and misleading assertions as stated above at ¶55.

## DAMAGES, LOSSES, AND IMPACTS TO THE PLAINTIFFS DUE TO THE VARIOUS USEAGES OF THE WIRETAPPED PHONE CALLS, AND RELIEF REQUESTED

56.    The Plaintiffs have suffered the negative impact and damage to their reputation of purposeful, willfully malicious, intentional and purposeful and/or recklessly negligent slanderous allegations and defamation of their character beyond what monetary damages can repair while causing damages as well.

---

[1] Mr. Ellner and Lightbox's obsession with relitigating claims that were dismissed by the Southern District of New York (Lightbox Ventures, LLC v. 3rd Home Limited, 2018 WL 5255169 (S.D.N.Y. October 22, 2018), which was affirmed by the Second Circuit Court of Appeals (https://www.ca2.uscourts.gov/decisions/isysquery/bff2aa54-54a3-4b48-8dd3-5de39063be5a/1/doc/18-3721_so.pdf#xml=https://www.ca2.uscourts.gov/decisions/isysquery/bff2aa54-54a3-4b48-8dd3-5de39063be5a/1/hilite/) is part of the basis and background of the Plaintiffs' Southern District of New York action, Moldovsky v. Miller at al., US District Court for the Southern District of New York Case No: 1:21-cv-02452.

57.     Plaintiffs have suffered irreparable damages, lost time, costs and more due to Lightbox and Mr. Ellner's misusing, misconstruing and threatening with wiretapped recordings.

58.     Plaintiffs have spent much lost time, costs, expenses, fees and efforts to stop these and related wrongful activities and further of them.

59.     Much of Plaintiffs' lost time, but all of Plaintiffs' stress and distress will not be able to be adequately compensated economically for the wrongs done.

60.     Plaintiffs' losses include time, income, and fees due to the time lost attempting to uncover the extent of Mr. Ellner and Lightbox's wiretap violations.

61.     Plaintiffs' losses include income, time and fees due to the time lost litigating in an attempt to defend against the wrongful use of the recordings and to learn of them and to stop them being used in violation of the applicable law, wrongfully, wastefully, etc.

62.     The damages include damage for lost reputation, lost time and income trying to mitigate and counter it and more, as well as lost opportunity, profits and the other losses as stated herein as relate to these issues.

63.     Lost time is in excess of hundreds of hours of legal professional time with hourly for attorneys at $400 and for paralegals and law clerks at $150 or within those ranges and as confirmed by Judge Cote in her Charging Lien decision. [2]

64.     Plaintiffs have been damaged in excess of $100,000.00 and are entitled by law and equity to all damages, including compensatory incidental, consequential, pecuniary, punitive, and statutory damages pursuant to the Pennsylvania Wiretap Act, attorney's fees and costs, and other related damages.

---

[2] Lightbox Ventures, LLC v. 3rd Home Limited, 2018 WL 5255169 (S.D.N.Y. October 22, 2018).

## PLEADING IN THE ALTERNATIVE, JOINT AND SEVERABLE LIABILITY, AND OTHER PROVISISIONS

65.     The totality of the Defendants' actual, anticipatory, apparent and implied breaches, negligence and failures and the resultant damages can be surmised from all permutations of the facts and elements plead at length herein and all facts and elements plead herein that are, by their nature, plead in the alternative.

66.     Based upon the facts alleged and/or incorporated herein, joint and several liability should be found against all Defendants on the counts set forth in the remainder of the Complaint where all Defendants are included (in the count) and where the Court deems appropriate.

67.     The Plaintiffs are foreseeable plaintiffs so that Defendants were and should have been aware of their losses, suffering and damaged due to their conduct.

68.     The Plaintiffs were not aware of various activities until times later than when they occurred.  For instance, the wiretapped phone calls were not disclosed until well after they were made, and it is anticipated that there are other phone calls and other activities that will be uncovered during discovery and litigation.

69.     All allegations herein that by their nature and/or as read with the rest of this pleading are in the alternative, are plead in the alternative.

## I.       FIRST CAUSE OF ACTION: DECLARATORY JUDGEMENT THAT PA WIRETAP ACT LAW IS APPLICABLE

70.     Plaintiff repeats and realleges each and every allegation set forth above and below as if fully set forth here.

71.     According to 18 Pa. C.S.A. § 5725, any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil

cause of action against any person who intercepts, discloses or uses or procures any other person

to intercept, disclose or use, such communication; and shall be entitled to recover from any such

person: (1) Actual damages, but not less than liquidated damages computed at the rate of $100 a

day for each day of violation, or $1,000, whichever is higher. (2) Punitive damages. (3) A

reasonable attorney's fee and other litigation costs reasonably incurred.

72.    Even though all the actual circumstance of Mr. Ellner and Lightbox's

recordings are unknown, the prohibition against wiretapping in Pennsylvania can be applied to

citizens of Pennsylvania who are wiretapped in Pennsylvania pursuant to prevailing caselaw.

73.    The application of the Pennsylvania Wiretap Act can be subject to the

weighing and balancing of each relevant state's wiretap laws and considering various factors

including the greatest protection of the person being wiretapped.  This can be the case for someone

recording from New York when the other person is in Pennsylvania, depending on the

circumstances of the case.  Specifically, the court can find that party to a call who is outside of

Pennsylvania can be liable under the PA Wiretap Statute based on a weighing of damage and harm

to the victim.  See, Mulder v. Wells Fargo Bank, N.A., 2018 WL 3750627 (W.D.P.A., July10,

2018) and Larrison v. Larrison, 750 A.2d 895 (Pa. Super. 2000); see also, Calcagno vs. Aidman,

20 Misc. 3d 1132(A) (Sup. Ct., Richmond Co. 2008)

74.    The Moldovsky Firm and Moldovsky know that Mr. Ellner had made calls

into a Pennsylvania line (despite Mr. Ellner's perjury, Complaint at ¶30), because it had phone

records to show that he did, which were shared with Mr. Ellner and his counsel.  The Plaintiffs

know that Lightbox and Mr. Ellner proceeded to utilize those recordings to harm Plaintiffs (by

wasting their time and resources, including forcing responses and explanations) over the course of

three years in multiple Courts.

14

75.     Plaintiffs are wiretap victims and have suffered damages due to Defendants' violations of the Wiretap Act, 18 Pa. C.S.A. § 5703.

76.     Pursuant to 28 U.S. Code § 2201(a) and law, Plaintiff is entitled to a declaratory judgment against Defendants determining that the Pennsylvania Wiretap Act can be applied to the wiretaps that are known to have been made while Plaintiffs were in Pennsylvania.

77.     Plaintiff is entitled to a declaratory judgment against Defendants determining that the Wiretap Acts of  California, Florida and Nevada  can be applied to Defendants for violations of those statutes when Defendants were in those jurisdictions recording phone calls in violation of said statutes when Plaintiffs were in Pennsylvania.

WHEREFORE, Plaintiff requests declaratory judgment against the Defendants determining that the Pennsylvania Wiretap Act can be applied to the wiretaps that are known to have been made while Plaintiffs were in Pennsylvania and the relevant wiretap acts can be applied to the wiretaps that are known to have been made while Lightbox was in California, Florida and Nevada. .

## II.     SECOND CAUSE OF ACTION: VIOLATIONS OF THE PENNSYLVANIA WIRETAP ACT 18 PA. C.S.A. § 5703

78.     Plaintiff repeats and realleges each and every allegation set forth above and below as if fully set forth here.

79.     As described herein, Defendants committed violations of the Pennsylvania Wiretap Act, 18 Pa. C.S.A. § 5703 (the "Wiretap Act") in surreptitiously and non-consensually recording telephone conversations, transcribing telephone conversations, and distributed the recordings and/or transcriptions to others, the Court, and the public by filing certain transcripts of record.

80.     Upon information and belief, the use, possession, dissemination, etc. is more and more widespread than as alleged and currently known to Plaintiffs with more to be learned in discovery.

81.     The Defendants violated § 5703 (1)(2)and (3) of the Wiretap Act by (1) intentionally intercepting and recording at least two phone calls with the Plaintiffs, and then transcribing them; (2) intentionally and knowingly disclosing the recordings and/or the transcriptions to at least one other person (Lightbox's counsel Mr. Miller), and most likely others like in the case of the transcribed recording submitted to the Federal District and Circuit Court; and (3) intentionally using, possessing, disseminating, etc. the contents of the communication knowing that the information therein was obtained through wrongful interception, recording, usage, etc.

82.     By their counsel the Defendants violated § 5703 (2)and (3) of the Wiretap Act by (1) intentionally and knowingly disclosing the recordings and/or the transcriptions to at least one other person, and most likely others; and (2) intentionally using the contents of the communication knowing that the information therein was obtained through illegal interception.

83.     Upon information and belief (though it has not yet been confirmed by Discovery) Defendants violated § 5721.1 by disclosing the contents of at least one intercepted communication to others in this Commonwealth.

84.     According to 18 Pa. C.S.A. § 5725, any person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication; and shall be entitled to recover from any such person: (1) Actual damages, but not less than liquidated damages computed at the rate of $100 a

16

day for each day of violation, or $1,000, whichever is higher. (2) Punitive damages. (3) A reasonable attorney's fee and other litigation costs reasonably incurred.

85. Furthermore, Defendants have leveraged the intercepted recordings by threatening to distribute them further, and by insinuating about the contents of the recordings in violation of § 5703.

86. As a direct and proximate cause of the aforementioned violations of the Wiretap Act, the Plaintiffs incurred losses, damages, waste of professional, attorney and paralegal time, costs, expenses, disparagement, damage to their reputation and other actual losses as plead herein.

87. WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $75,000.00, including compensatory, incidental, consequential and punitive damages, statutory damages pursuant to 18 Pa. C.S.A. §5725, attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

### III.    THIRD CAUSE OF ACTION AGAINST LIGHTBOX: PERMANENT INJUNCTION ESTOPPING THE FURTHER USE OF ANY WIRETAPPED PHONE CALLS AND TRANSCRIPTS

88. Plaintiff repeats and realleges each and every allegation set forth above and below as if fully set forth here.

89. Plaintiffs seek a permanent injunction barring Defendants from using, conveying, publicizing, sharing with others, disseminating and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law as plead herein as it is likely Plaintiffs will prevail on the merits, the extent of the harm and damages will be difficult to determine for the irreparable resulting harm and losses, and this will help maintain the status quo.

17

90. So too, Plaintiffs seek that all such records, copies, transcriptions and such be ordered to be turned over to Plaintiffs.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $75,000.00, including compensatory, incidental, consequential and punitive damages, permanent injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

## IV. FOURTH CAUSE OF ACTION: VIOLATIONS OF THE WIRETAP STATUTES OF FLORIDA (FLA. STAT. CH. 934.03), CALIFORNIA STATUTE (CAL. PENAL CODE § 632) NEVADA STATUTE (NRS 200.620)

91. Plaintiff repeats and realleges each and every allegation set forth above and below as if fully set forth here.

92. Lightbox has been known to travel to other two-party consent states, including to California, Florida and Nevada.

93. Pursuant to Fla. Stat. ch. 934.03 a person who "Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication; (b) Intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:1. Such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or 2. Such device transmits communications by radio or interferes with the transmission of such communication; (c) Intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that

18

the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; (d)   Intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection"  shall be subject to a fine for as much as three times the gross value of loss caused plus court costs and the costs of investigation and prosecution, reasonably incurred pursuant to Fla. Stat. ch. 934.41.

94.    Pursuant to Cal. Penal Code § 632, "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation, or imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation of this section or Section 631, 632.5, 632.6, 632.7, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000) per violation, by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment."

95.    Pursuant to NRS 200.620, "it is unlawful for any person to intercept or attempt to intercept any wire communication unless: (a) The interception or attempted interception is made with the prior consent of one of the parties to the communication." Pursuant to NRS 22.690, "1. A person who willfully and knowingly violates NRS 200.620 to 200.650, inclusive:(a) Shall be punished for a category D felony as provided in NRS 193.130.(b)

19

Is liable to a person whose wire or oral communication is intercepted without his or her consent for:(1) Actual damages or liquidated damages of $100 per day of violation but not less than $1,000, whichever is greater;(2) Punitive damages; and (3) His or her costs reasonably incurred in the action, including a reasonable attorney's fee, all of which may be recovered by civil action."

96.　　To the extent Lightbox has violated the wiretap statutes of these or other states, Lightbox should be liable for damages under them to the Plaintiffs.

WHEREFORE, Plaintiff requests judgment against the Defendants in excess of $75,000.00, including statutory damages pursuant to Fla. Stat. ch. 934.41, Cal. Penal Code § 632, and/or NRS 200.690 the compensatory, incidental, consequential and punitive damages, permanent injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that judgment be entered in their favor and against Lightbox Ventures, L.L.C., Lightbox Capital Management, L.L.C. and Andrew Ellner as follows:

1.　　　　on the first cause of action, Plaintiff requests declaratory judgment against the Defendants determining that the Pennsylvania Wiretap Act (and the other two consent state's wiretap acts, as relevant) can be applied to the wiretaps that are known to have been made while Plaintiffs were in Pennsylvania;

20

2.         on the second cause of action, awarding and ordering judgment against the Defendants in excess of $75,000.00, including compensatory, incidental, consequential and punitive damages, statutory damages pursuant to 18 Pa. C.S.A. §5725 attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper; and

3.         on the third cause of action, ordering judgment against the Defendants in excess of $75,000.00, including compensatory, incidental, consequential and punitive damages,  and a permanent injunction barring Defendants from using, conveying, publicizing, sharing with others, disseminating and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, as well as attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

4.         on the fourth cause of action, ordering judgment against the Defendants in excess of $75,000.00, including statutory damages pursuant to Fla. Stat. ch. 934.41, Cal. Penal Code § 632, and/or NRS 200.690 the compensatory, incidental, consequential and punitive damages, and a permanent injunction barring Defendants from using, conveying, publicizing, sharing with others and distributing any phone transcriptions, copies, records, documents and all such of and related to any recorded phone call done in violation of the law, as well as attorney's fees and costs, pre and post judgment interest, litigations costs, and any other relief the Court deems just and proper.

Dated:      Bucks County, Pa
             March 22, 2021

                              BREM MOLDOVSKY, L.L.C.

                              By: Brem Moldovsky, Esq.
                              100 N. 18th Street, Suite 100
                              Philadelphia, Pa 19103
                              *Attorney for Plaintiff*

# Exhibit "W"

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LIGHTBOX VENTURES, LLC, | No. 16-cv-02379 (DLC) |
| Plaintiff, | |
| v. | |
| 3RD HOME LIMITED and WADE SHEALY, | |
| Defendants. | |
| 3RD HOME LIMITED and WADE SHEALY, | |
| Third-Party Plaintiffs, | |
| v. | |
| ANDREW ELLNER, | |
| Third-Party Defendant. | |
| LIGHTBOX VENTURES, LLC, and ANDREW ELLNER, | **THIRD PARTY COMPLAINT FOR INTERPLEADER AND DECLARATORY RELIEF** |
| Third Party Plaintiffs, | |
| v. | |
| SCAROLA ZUBATOV SCHAFFZIN PLLC, and BREM MOLDOVSKY LLC, | |
| Third Party Defendants. | |

Third Party Plaintiffs, LIGHTBOX VENTURES, LLC and ANDREW ELLNER, by and through their undersigned counsel, hereby submit this Complaint against Third Party Defendants, SCAROLA ZUBATOV SCHAFFZIN PLLC, and BREM MOLDOVSKY LLC, and in support thereof aver as follows:

## INTRODUCTION

1.      This third party complaint is brought by Mr. Ellner and his company, Lightbox Ventures ("Lightbox" or "Lightbox Ventures") (together with Mr. Ellner, the "Lightbox Parties"), against their former attorneys in this matter. The third party

defendants, Scarola Zubatov Schaffzin PLLC (the "Scarola Firm") and Brem Moldovsky

LLC (the "Moldovsky Firm") (together, the "Defendant Law Firms"), represented Mr.

Ellner and Lightbox as of record, successively.

2.       The Defendant Law Firms assert competing statutory charging liens

against substantially all monies recovered and/or to be recovered by the Lightbox

Parties in this matter.

3.       In addition, the Defendant Law Firms purport to have contract-based

claims against the Lightbox Parties, and the Scarola Firm has commenced a state court

proceeding for breach of contract and related claims against Mr. Ellner, Lightbox and a

related entity ("LBC")[1].

4.       To date, Lightbox has been awarded compensatory damages in the

amount of $100,517.27 (including prejudgment interest) and attorney's fees in the

amount of $100,000.00. Lightbox has also been awarded discovery sanctions in the

amount of $38,888.01. These awards (together, the "Funds") have been all paid into

court, pursuant to Lightbox and Mr. Ellner's motion for leave to commence this third

party proceeding, and pending the Court's decision as to the ultimate disposition of the

Funds.

---

[1] LBC refers to Lightbox Capital Management, LLC. LBC is an affiliate of Lightbox Ventures but is a nonparty herein. As used in this complaint, the term "Lightbox Parties" refers to Lightbox Ventures and Mr. Ellner but not to Lightbox Capital Management.

5.      To the extent that either of the Defendant Law Firms have a bona fide, enforceable lien over any part of the Funds, neither Lightbox nor Mr. Ellner have an interest therein.

6.      Because of the competing nature of the Defendant Law Firms' asserted liens, Lightbox and Mr. Ellner are exposed to multiple liability.

7.      Lightbox also owes substantial money to creditors, at least one of whom may be secured.

8.      Lightbox and Mr. Ellner seek interpleader and declaratory relief, including: (a) an order, directing the Defendant Law Firms to interplead their asserted lien claims before this Court and restraining them from instituting or maintaining a proceeding in another tribunal or jurisdiction, relating to the Funds and/or a lien on any part of said Funds; (b) judicial determination of the priority and amount of each law firm's lien, including setoffs for amounts previously paid; (c) a declaration that the Scarola Firm has no *contractual* remedies against the Lightbox Entities and is instead limited to the equitable remedies of a charging lien and *quantum meruit* against Lightbox Ventures, only; (d) a declaration that the Moldovsky Firm has no *contractual* remedies against the Lightbox Entities and is instead limited to the equitable remedies of a charging lien and *quantum meruit*; and (e) judicial determination of the amount of each law firm's *quantum meruit* claim, including setoffs for amounts previously paid.

## PARTIES

9.      Third Party Plaintiff LIGHTBOX VENTURES, LLC ("Lightbox" or

"Lightbox Ventures") is a New York limited liability company with a principal place of

business located in New York, N.Y.

10.      Third Party Plaintiff ANDREW ELLNER is an individual residing in New

York, N.Y.

11.      Third Party Defendant SCAROLA ZUBATOV SCHAFFZIN PLLC (the

"Scarola Firm") is, on information and belief, a New York limited liability company

with a principal place of business located in New York, N.Y.

12.      On information and belief, the Scarola Firm's managing member is

Richard J.J. Scarola, Esq., a non-party herein.

13.      Third Party Defendant BREM MOLDOVSKY LLC (the "Moldovsky

Firm") is, on information and belief, a Pennsylvania professional limited liability

company with a principal place of business located in New York, N.Y.

14.      On information and belief, the Moldovsky Firm's sole member is Brem

Mica Moldovsky, Esq., a non-party herein.

## JURISDICTION AND VENUE

15.      This Court has subject matter jurisdiction over this matter under 28 U.S.C.

§ 1367(a). *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442 (2d Cir.

1998).

16.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District and because the Funds are situated in this District.

17.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because the Defendant Law Firms both reside in this District within the meaning of 28 U.S.C. § 1391(c)(2).

## FACTUAL BACKGROUND

### The Scarola Firm's Representation

18.     Lightbox retained the Scarola Firm on March 11, 2016 in connection with Lightbox's dispute with 3rd Home Limited and Mr. Shealy.

19.     On information and belief, Scarola Zubatov Schaffzin PLLC ("SZS")  was formerly Scarola, Malone & Zubatov LLP ("SMZ"), a New York limited liability partnership with the same principal place of business located in New York, N.Y.[2]

20.     A true and correct copy of the Scarola Firm's March 11, 2016 retainer agreement with Lightbox (the "Scarola Agreement") is annexed hereto as **Exhibit 1**.

21.     By and through the Scarola Firm, Lightbox filed suit against 3rd Home Limited on March 31, 2016 (ECF #1).

22.     On or about August 25, 2016, Lightbox filed an amended complaint, naming Wade Shealy as an additional defendant (ECF #46).

---

[2] The managing partner of the Scarola Firm, Richard J.J. Scarola, Esq., has repeatedly maintained, including in various court filings, that SZS is the same entity as SMZ, not a successor.

23.     On or about September 6, 2016, 3rd Home filed a counterclaim against Lightbox and also a third party complaint against Mr. Ellner (ECF #48).[3]

24.     Upon Mr. Ellner being named as a third party defendant, the Scarola Firm began to represent him as well pursuant to the Scarola Agreement.

25.     Mr. Ellner did not sign the Scarola Agreement in his personal capacity.

26.     Mr. Ellner did not sign a different form of retainer agreement with the Scarola Firm in his personal capacity.

27.     All legal representation services provided to Mr. Ellner by the Scarola Firm were provided pursuant to the Scarola Agreement.

28.     Lightbox terminated the Scarola Agreement on February 27, 2017.

29.     A true and correct copy of Lightbox's February 27, 2017 letter terminating the Scarola Agreement is annexed hereto as **Exhibit 2**.

30.     Until it was terminated by Lightbox, the Scarola Agreement was not modified or amended in any way.

31.     Until it was terminated, the Scarola Agreement provided that the Scarola Firm would be paid hourly, with hourly fee ranges for partners, associates, counsel and of counsel attorneys, and paralegals and legal assistants.

32.     Despite the foregoing, the Scarola Firm assigned no work whatsoever to associates and almost no work to paralegals. Instead, virtually all billable work was

---

[3] Mr. Shealy did not assert a counterclaim or third party complaint in this matter. *See* ECF #48. The caption reflected in the docket and on court filings is incorrect; Mr. Shealy is a defendant but not a third party plaintiff.

assigned to the firm's managing partner, Mr. Scarola, who billed at $765 per hour, and

to his law partner, Alex Zubatov, who billed at $495 per hour.

33.     Under the Scarola Agreement, the Scarola Firm tacked on a 3.5%

surcharge on all invoices for routine office expenses and overhead, without attempting

to reconcile the surcharge, dubbed "ordinary expenses," with actual expenses incurred

in this matter. For example, if the firm's billable time amounted to $50,000 in a given

month — which it repeatedly did — the "ordinary expenses" surcharge would be

$1,750 — regardless of the firm's actual expenses, if any. This arbitrary 3.5% surcharge

was in addition to charges for court fees or expenses for court reporters, express

delivery, messengers or couriers, electronic research, "extraordinary" photocopying and

scanning, or travel outside of New York City, which were billed separately.

34.     The Scarola Agreement also contained other notable provisions, including:

a.  non-mutual fee-shifting in the event of a fee dispute, which is
    unenforceable under New York law, *see Shukla v. Sharma*, 586 Fed.
    Appx. 752 (2d Cir. 2014);

b.  a one-year contractual limitation period for malpractice instead of
    the three-year statute of limitations under CPLR § 214(6), in direct
    violation of Rule 1.8(h) of New York's Rules of Professional
    Conduct, which prohibits lawyers from "making an agreement
    prospectively limiting the lawyer's liability to a client for
    malpractice;" *and*

c.  a *contractual lien* over "any recovery and any other recovery or
    settlement [Lightbox] may obtain in connection with the Matter,"
    which lien is purported to be "in addition to and not in place of"
    any *statutory lien* that the Scarola Firm might have.

35.     For the reasons set forth in Paragraphs 31-34 above, the Scarola

Agreement violated Rule 1.5(a) of New York's Rules of Professional Conduct, which

prohibits lawyers from making an agreement for, charging and/or collecting an

excessive or illegal fee or expense.

36.     Over the roughly twelve months of its representation, the Scarola Firm

issued invoices in the amount of $611,726.77 and was paid $316,735.41.

37.     Lightbox objected to the Scarola Firm's invoices beginning as early as June

2016.

38.     In or around June or July 2016, Mr. Scarola orally agreed to defer 40% of

the Scarola Firm's invoices, starting with the invoices for June and July 2016, which

invoices were more than $160,000 combined.

39.     On or about September 20, 2016, Mr. Scarola sent Mr. Ellner an email,

proposing to formally amend the Scarola Agreement, deferring up to 40% of the Scarola

Firm's fees — but in exchange for Lightbox being liable for double the deferred amount

once this matter would be fully adjudicated or otherwise resolved. According to this

proposal, the aforesaid doubling would take effect *regardless of Lightbox's actual monetary

recovery*, so long as its claims were not dismissed outright.

40.     Under the Scarola Firm's aforesaid proposal, the Scarola Firm was

essentially proposing to drastically increase the effective hourly billing rates of its

attorneys by forty percent (40%), as follows:

| | Scarola | Zubatov |
|---|---|---|
| **nominal hourly rate** | **$765** | **$495** |
| 60% non-deferred rate | $459 | $297 |
| 40% deferred rate | $306 | $198 |
| deferred rate (*after doubling*) | $612 | $396 |
| **proposed effective hourly rate** | **$1,071** | **$693** |
| *percent increase (over nominal rate)* | *40%* | *40%* |

41.     Stated another way, the Scarola Firm's aforesaid proposal would have
been equivalent to charging Lightbox a usurious interest rate of about 40%, depending
on how long it would take to settle or fully adjudicate the dispute with 3rd Home and
Mr. Shealy, as compared to the 12% interest rate provided under the Scarola Agreement
— which rate was itself one-third higher than the statutory rate of 9% permitted under
CPLR § 5004.

42.     The Scarola Firm's aforesaid proposal was contrary to Rule 1.5(a) of New
York's Rules of Professional Conduct, which prohibits lawyers from making an
agreement for, charging and/or collecting an excessive or illegal fee or expense.

43.     The proposal set out in Mr. Scarola's September 20th email was not
accepted by Lightbox (nor by Mr. Ellner, who in any event was not a party to the
Scarola Agreement).

44.     On or about October 26, 2018, Mr. Scarola drafted a revised proposed
amendment to the Scarola Agreement, purporting to formalize the terms of his
September 20th email proposal but also including language that would have made Mr.
Ellner personally responsible for paying attorney's fees, not just Lightbox as provided
under the original agreement.

45.     The October 26th proposed amendment also provided that, in the event of a recovery, that money would first be paid to the Scarola Firm towards the first 25% of its "contingency fee," i.e. double the amount of deferred fees, before Lightbox would be entitled to any money at all.

46.     Although amenable in principle to a contingency-based fee deferral in light of the overbilling it had complained about, Lightbox did not accept the Scarola Firm's unethical and usurious fee-doubling proposal, nor to its proposal for allocating Lightbox's recovery in this matter, nor did Mr. Ellner agree to be personally responsible for the Scarola Firm's fees. In short, the Scarola Firm's unlawful, unethical and blatantly self-interested proposal fell flat and went nowhere.

47.     On October 28, 2016, this Court denied Lightbox's application for a preliminary injunction, finding, among other things, that

> Lightbox's argument that the Joint Venture was poised to capture a large share of the vacation homes sales business is speculative. The loss of theoretical future sales is too speculative to warrant a preliminary injunction.

*See* ECF #69 (the "PI Opinion") at 31.

48.     In that same decision, this Court further stated:

> Based on the evidence presented at the preliminary injunction hearing, it appears Lightbox will be able to show at trial that Third Home is liable for approximately $80,000. This amount includes approximately $60,000 that Lightbox paid to develop the Website and approximately $20,000 for Lightbox's share of the roughly $40,000 Third Home obtained through the Regional Transactions. Lightbox may also be able to show that it is entitled to attorney's fees under the Agreement as well as prejudgment interest.

*See* ECF #69 at 29 n.6.

49.     After the Court's preliminary injunction opinion was issued, Lightbox requested the Scarola Firm to provide an estimate as to its future legal fees in this matter, something which the Court itself had suggested to both sides at the preliminary injunction hearing.

50.     The Scarola Firm declined to provide such an estimate.

51.     Instead, the Scarola Firm downplayed the clear message of the PI Opinion regarding the speculative nature of loss of theoretical future sales and the likelihood that Lightbox will not be able to recover more than $80,000 plus prejudgment interest and attorney's fees, and expressly advised Lightbox and Mr. Ellner that "we have very solid research that a solid expert opinion would entitle you to damages beyond what the Judge indicated in her decision, assuming the opinion is truly sound and accepted/believed by a jury."

52.     Lightbox and Mr. Ellner relied on the Scarola Firm's aforesaid legal advice and accepted their recommendation to retain a damages expert, Lân Nguyen (Anvil Advisors, LLC).

53.     In November 2016, shortly after the October 28, 2016 preliminary injunction opinion and after the Scarola Firm declined to give Lightbox an estimate for future legal fees in this matter, Lightbox instructed the Scarola Firm to limit its services (and its invoices) to only those tasks directly required by actual litigation and court proceedings.

54.     The Scarola Firm did not comply with Lightbox's instructions and request.

55.     This fee dispute led to a wholly avoidable breakdown in communication, whereby Mr. Scarola refused to discuss the Scarola Firm's invoices in any substantive fashion, refused to meet with Mr. Ellner in person even though they both worked in the same office suite,[4] and "forbade" Mr. Ellner from discussing such issues with the other partner working on this matter, Mr. Zubatov, and ultimately "forbade" Mr. Ellner from speaking at all with Mr. Zubatov or anyone else.

56.     On information and belief, a motivating factor in Mr. Scarola's aforesaid misconduct was Lightbox's refusal to go along with the Scarola Firm's usurious and unlawful demand to raise its effective billing rates by 40%, and Mr. Ellner's refusal to assume personal liability for the Scarola Firm's fees, in exchange for partial deferment of its invoices.

57.     The Scarola Firm is no stranger to fee disputes with its clients. Out of all the lawsuits appearing on the electronic public docket of the New York State court system ("NYSCEF") in which Mr. Scarola has appeared as attorney of record, seven out of thirty, or 23.33%, are matters in which the Scarola Firm either sued its former clients — or vice versa — due to a dispute over legal fees. Annexed hereto as **Exhibit 3** is a listing of all such matters.

58.     Because of these and other frustrations, including Mr. Scarola's overly aggressive and counterproductive settlement posturing, Lightbox was compelled to hire

---

[4] At that time, Mr. Ellner's employer was a tenant in the Scarola Firm's office.

outside counsel to try to reinstate settlement discussions with 3rd Home and Mr. Shealy and/or to try to negotiate an amicable resolution with the Scarola Firm.

59.     When these efforts did not succeed, Lightbox was left with no choice but to terminate the Scarola Agreement and to replace the Scarola Firm with substitute counsel.

**The Scarola Firm's Claims**

60.     The Scarola Agreement was terminated on February 27, 2017. *See* Exh. 2.

61.     The Scarola Firm's appearance as Lightbox's counsel of record in this matter was formally terminated on March 1, 2017 by way of consent order for substitution of counsel. ECF #99.

62.     Just twelve days later, on March 13, 2017, the Scarola Firm filed a civil action in the New York State Supreme Court (Kings County), captioned *Scarola Malone & Zubatov LLP v. Ellner et al.*, No. 651324/2017 (the "State Court Matter").

63.     The State Court Matter is currently pending.

64.     In the State Court Matter, the Scarola Firm is suing Lightbox and Mr. Ellner, as well as a related entity, Lightbox Capital Management, LLC ("LBC").

65.     In the State Court Matter the Scarola Firm asserts claims for breach of contract, account stated, unjust enrichment, and declaratory judgment (regarding its alleged contractual lien). The unjust enrichment claim is asserted against Mr. Ellner. The other claims are asserted jointly and severally against Lightbox, Mr. Ellner, and LBC.

66. In response, Lightbox, Mr. Ellner, and LBC have filed a motion to dismiss, which motion is fully briefed and pending before the state court.

67. In addition, the Scarola Firm asserts that it has a statutory charging lien over substantially all of the Funds held with this Court, pursuant to New York Judiciary Law § 475 and commencing as of the Scarola Firm's appearance in this matter on March 31, 2016. *See* ECF #1.

68. The Scarola Firm has threatened Lightbox, Mr. Ellner and their below-signed counsel with additional legal proceedings, claims and liability if the Funds are distributed in a way that does not fully accord with its alleged statutory and contractual liens.

69. Under New York law, a lawyer who is terminated or otherwise discharged from representation cannot enforce his or her retainer agreement in contract, but is limited to asserting a claim for enforcement of his or her statutory charging lien and/or asserting a claim for *quantum meruit*. If he or she is terminated or otherwise discharged for cause, then the lawyer has no claim whatsoever but must disgorge all fees he or she received.

70. The Scarola Firm has no contractual claims or remedies against Mr. Ellner or LBC, because neither of them ever was a party to the Scarola Agreement.

71. The Scarola Firm has no contractual claims or remedies whatsoever, including against Lightbox, because the Scarola Agreement was lawfully terminated.

72. The Scarola Firm has no contractual claims or remedies whatsoever, including against Lightbox, because the Scarola Firm was prematurely discharged from

representing Lightbox (and Mr. Ellner) in this matter, i.e. before the firm completed

providing the services it contracted to provide.

73.     The Scarola Firm does have a claim for determination and enforcement of

its statutory charging lien, based on *quantum meruit* and any other equitable

considerations (such as the existence of competing liens), and subject to setoff for prior

payments, in the amount of $316,735.41.

74.     This Court has already determined that the reasonable value of the Scarola

Firm's services, from its initial retainer and until issuance of the PI Opinion on October

28, 2016, is $100,000.00. *See* ECF #252.

75.     Upon review and consideration of all of the Scarola Firm's legal invoices

and billing entries for this time period, which invoices amounted to $467,200.00, the

Court determined that the reasonable value of the firm's legal services was $100,000.00.

76.     The Scarola Firm had a full and fair opportunity to be heard on this issue,

including but not limited to the following:

    a.  Before submitting their fee application to the Court, counsel for Lightbox
           and Mr. Ellner engaged in protracted good faith efforts to obtain from the
           Scarola Firm a mutually acceptable sworn statement setting forth the
           Scarola Firm's position as to the reasonableness of its invoices.

    b.  Despite good faith efforts on both sides, Lightbox's undersigned counsel
           and Mr. Scarola were unable to agree on a mutually acceptable
           submission, in large part because Mr. Scarola was unwilling to

unqualifiedly attest to the issue of reasonableness, i.e. that the legal fees generated by the Scarola Firm in this matter were reasonable.

c.  Despite the ultimate failure of those good faith efforts, Lightbox included in its fee application a lengthy excerpt from a prior statement by Mr. Scarola attesting to the qualifications, experience, and billing rate of both himself and his law partner, Attorney Alex Zubatov, and also submitted the Scarola Firm's invoices for the Court's review.

d.  Before submitting the fee application, Lightbox also offered to assign outright its entire right to a fee award to the Scarola Firm. If accepted, the Scarola Firm would have had full rein to argue the merits of the fee application, including but not limited to the issue of reasonableness and the applicable lodestar, without any interference by Lightbox.

e.  However, the Scarola Firm declined this offer and opportunity of an outright assignment.

f.  After its fee application was submitted, Lightbox furthered suggested to the Scarola Firm that it might move to intervene, and that Lightbox would not oppose intervention so that the Scarola Firm would, as intervenor, have a full and fair opportunity to submit papers and oral argument, if any, as to the reasonableness of its legal invoices.

g.  However, the Scarola Firm did not accept this offer and opportunity to intervene.

77.     In addition to determining that the reasonable value of the Scarola Firm's legal services up to October 28, 2016 was $100,000.00, the Court also determined that the reasonable value of its legal services related to the discovery dispute between Lightbox and 3rd Home was $10,000.00. *See* ECF #172.

78.     That $10,000.00 determination was made upon review and consideration of the Scarola Firm's related legal invoices and billing entries spanning from August 22, 2016 through December 30, 2016, amounting to $114,715.55, and upon the sworn affidavits of Mr. Scarola and Mr. Zubatov that they "believe[d]" that the invoiced amounts were "reasonable and necessary." *See* ECF #163, 163-1, -2, #164, 164-1, -2; *see also* ECF #172.

79.     In light of the foregoing, and for all the equitable and other considerations and factors set forth in this Third Party Complaint, the reasonable value of the Scarola Firm's legal services does not exceed $110,000.00 subject to setoff for prior payments in the amount of $316,735.41.

**The Moldovsky Firm's Representation**

80.     Lightbox and Mr. Ellner retained the Moldovsky Firm as substitute counsel in this matter on February 20, 2017.

81.     A true and correct copy of the Moldovsky Firm's retainer agreement, signed by Lightbox and Mr. Ellner (the "Moldovsky Agreement") is annexed hereto as **Exhibit 4**.

82.     The Moldovsky Firm first appeared in this matter on March 1, 2017. *See* ECF #98.

83.     Mr. Ellner first contacted the Moldovsky Firm about representing Lightbox and himself, as substitute counsel for the Scarola Firm, as early as January 11, 2017.

84.     On February 10, 2017, Mr. Moldovsky prepared the Moldovsky Agreement and emailed it to Mr. Ellner for review and execution.

85.     Before emailing the Moldovsky Agreement to Mr. Ellner, Mr. Moldovsky had exchanged no fewer than eighty-four emails with Mr. Ellner about this matter. In addition, as early as January 16, 2017 Mr. Ellner provided to the Moldovsky Firm, for its due diligence review, copies of virtually the entire public docket plus numerous undisclosed and/or confidential documents, including prior settlement communications and the December 2016 valuation prepared by an expert, Lân Nguyen (Anvil Advisors, LLC), chosen by the Scarola Firm.

86.     On information and belief, the Moldovsky Firm reviewed and analyzed the aforesaid emails and documents before agreeing to represent Lightbox and Mr. Ellner in this matter.

87.      Under the Moldovsky Agreement, the Moldovsky Firm agreed to represent Lightbox and Mr. Ellner "through and up to trial" for an up-front payment of $75,000 plus a contingency fee.

88.     The Moldovsky Agreement provides a complicated method of determining the contingency fee. Essentially, depending on the phase of litigation in

which a recovery was obtained, the contingency fee would be between 20% and 40% of any amount recovered, except that the fee would apply only to amounts recovered over and above a certain threshold.

89.     The contractual language in the Moldovsky Agreement, dealing with determining the applicable threshold below which no contingency fee would be incurred, is ambiguous and self-contradictory, and must be construed against the Moldovsky Firm and in favor of Lightbox and Mr. Ellner.

90.     Under the Moldovsky Agreement, the aforesaid shifting contingency fee would only apply to amounts recovered by the Lightbox Parties in excess of $100,000, but subject to a minimum overall contingency fee of 10%.

91.     The Moldovsky Agreement also contains other notable provisions, including:

      a.   non-mutual fee-shifting in the event of a fee dispute, which is unenforceable under New York law, *see Shukla v. Sharma*, 586 Fed. Appx. 752 (2d Cir. 2014);

      b.   a *contractual lien* over "any recovery, award, settlement, judgment or payment you may or will receive based upon any project (including what is stated herein) upon which this law firm is working;" and

      c.   interest of 18% per annum applied to any past-due invoices, which rate is *double* the 9% statutory rate permitted under CPLR § 5004, and which is usurious and unlawful under N.Y. Gen. Oblig. Law § 5-501 and N.Y. Banking Law § 14-a.

92.     The Moldovsky Agreement also provides that the Moldovsky Firm could terminate representation if, upon investigation, it determined that Lightbox and Mr.

Ellner did not have "sufficient and lawful grounds and/or reasonable opportunity for worthwhile recovery."

93.    On October 28, 2016, months before the Moldovsky Firm agreed to represent Lightbox and Mr. Ellner "through and up to trial," this Court denied Lightbox's application for a preliminary injunction based, in large part, on the speculative nature of Lightbox's damages.

94.    In so doing, the Court expressly stated the following:

> Lightbox's argument that the Joint Venture was poised to capture a large share of the vacation homes sales business is speculative.  The loss of theoretical future sales is too speculative to warrant a preliminary injunction.

*See* ECF #69 (the "PI Opinion") at 31.

95.    In that same decision, this Court further stated:

> Based on the evidence presented at the preliminary injunction hearing, it appears Lightbox will be able to show at trial that Third Home is liable for approximately $80,000. This amount includes approximately $60,000 that Lightbox paid to develop the Website and approximately $20,000 for Lightbox's share of the roughly $40,000 Third Home obtained through the Regional Transactions. Lightbox may also be able to show that it is entitled to attorney's fees under the Agreement as well as prejudgment interest.

*See* ECF #69 at 29 n.6.

96.    On or about January 16, 2017, Mr. Ellner provided to the Moldovsky Firm a copy of the Court's preliminary injunction opinion for its due diligence review.

97.     On information and belief, Mr. Moldovsky reviewed and analyzed the Court's preliminary injunction opinion before agreeing to represent Lightbox and Mr. Ellner in this matter.

98.     On November 13, 2017, this Court issued an Opinion and Order deciding Lightbox's and 3rd Homes' motions for summary judgment (ECF #149, the "SJ Opinion").

99.     Among other things, the Court granted 3rd Homes' motion to strike both of Lightbox's expert reports, the "Anvil Report" and the "Scalar Report."

100.    The Anvil Report was prepared in or around December 2016 by an expert, Lân Nguyen (Anvil Advisors, LLC), selected and approved by the Scarola Firm. It provided a valuation for Lightbox's and 3rd Homes' former joint venture in excess of $6 million.

101.    On or about January 16, 2017, Mr. Ellner provided a copy of the Anvil Report to the Moldovsky Firm for its due diligence review.

102.    On information and belief, Mr. Moldovsky reviewed and analyzed the Anvil Report before agreeing to represent Lightbox and Mr. Ellner in this matter.

103.    A supplemental expert report (the "Supplemental Anvil Report") was prepared by Mr. Nguyen in April 2017.

104.    On information and belief, Mr. Moldovsky reviewed and analyzed the Supplemental Anvil Report in or around the time it was prepared and finalized, i.e. around April 2017.

105.     On March 28, 2017, *six weeks* after receiving and presumably reviewing and analyzing the Anvil Report, and only after his law firm had been retained and had received the initial $75,000 payment under the Moldovsky Agreement, Mr. Moldovsky advised the Lightbox and Mr. Ellner that the Anvil Report had "severe problems" that were "of case-sinking proportions" and recommended that a second expert, Mitch Rencher (Scalar Analytics, Inc.) be retained.

106.     Mr. Moldovsky discussed the court case with Mr. Rencher, assessed his suitability to serve as a damages expert in this matter, and expressly advised Mr. Ellner that Mr. Rencher "may be our best option."

107.     Lightbox and Mr. Ellner relied on Mr. Moldovsky's legal advice, and Lightbox retained Mr. Rencher as an additional expert on economic damages.

108.     The Scalar Report was prepared in or around April 2017.

109.     It provided a valuation for Lightbox's and 3rd Homes' former joint venture, in excess of $11 million.

110.     On information and belief, Mr. Moldovsky reviewed and analyzed the Scalar Report in or around the time it was prepared and finalized, i.e. around April 2017.

111.     In the SJ Opinion, the Court held that the Anvil Report and Supplemental Report were inadmissible and should be excluded because they were impermissibly speculative:

> Anvil's valuations rely . . . on unverified information and optimistic projections provided by Lightbox and industry data that is of limited relevance. . . . The number of

> unsupported assumptions at play in Anvil's analysis renders
> it unreliable. . . . In addition, the disclaimers that accompany
> the valuation analyses and the large range in the potential
> valuations undermine any remaining value in the expert
> opinion and invite jury speculation.

ECF #149 at 27-28.

112.    In the SJ Opinion, the Court held that the Scalar Report was also

inadmissible and should also be excluded because it, too, was impermissibly

speculative:

> The Scalar Report must also be excluded. Without a showing
> that it is customary and reasonable for an expert to value a
> new enterprise based on listings of property on a website,
> particularly when no commissions have yet been earned from
> the sale of any listed properties, the expert report fails to meet
> the evidentiary standards imposed by *Daubert*. Moreover,
> without a basis to find that the data regarding the listings and
> the projections for the business were reliable, any valuations
> based on the data must be stricken. Despite the volume of
> analysis provided by Scalar, its valuation is ultimately a
> projection built on sand.

ECF #149 at 30.

113.    Because it had received a copy of the Court's PI Opinion almost one

month before agreeing to represent the Lightbox Parties in this matter, the Moldovsky

Firm had been on notice since January 2017 that a theory of damages based on lost

future joint venture profits and/or valuation of the joint venture *per se* would likely be

deemed speculative by the Court, whether or not accompanied by an expert report.

114.    For the same reason, the Moldovsky Firm should have been alert to the possibility, if not the likelihood, that the Anvil and Scalar Reports would be excluded as speculative.

115.    Nevertheless, immediately after the SJ Opinion was issued, Mr. Moldovsky notified Mr. Ellner that, unless the Lightbox Parties agreed to amend the Moldovsky Agreement and to pay the Moldovsky Firm an hourly fee, the Moldovsky Firm would stop all work on this matter.

116.    Mr. Moldovsky's initial email on this issue was sent on November 15, 2017, just two days after the SJ Opinion was issued.

117.    As expressed in that email, the Moldovsky Firm initially demanded to amend the Moldovsky Agreement by converting the contingency fee into an hourly fee of $400 per hour, $150 to be paid on an ongoing basis by Lightbox and Mr. Ellner and the remaining $250 to be paid by Lightbox at the conclusion of this matter — regardless of the actual result of the litigation.

118.    The Moldovsky Firm's demand was outrageously unfair, unconscionable, unethical and otherwise improper in a number of ways, including but not limited to the following:

    a.  It blatantly disregarded the assumed risk inherent in any contingent fee by implicitly permitting the Moldovsky Firm to keep the initial $75,000 up-front payment while also *retrospectively* converting the contingent portion of the firm's fee into an hourly fee "from beginning to end of the matter."

b. It shifted the financial consequences of Mr. Moldovsky's fully
informed but nevertheless woefully inaccurate assessment of the
likelihood of a seven- or eight-figure recovery, away from Mr.
Moldovsky's law firm and onto the shoulders of his clients.

c. It saddled Lightbox and Mr. Ellner with retrospective liability for
hourly attorney's fees, something that the Moldvosky Agreement
squarely contradicted and something that Lightbox and Mr. Ellner
expressly ruled out when engaging the Moldovsky Firm to
represent them.

d. It utterly disregarded the fact that Mr. Moldovsky had been on
notice since January 2017 about the inherently speculative nature of
the vast majority of Lightbox's damages, including lost future
profits and the inherent value of a joint venture that never got off
the ground, but set aside and/or downplayed those concerns.

e. It utterly disregarded the fact that Mr. Moldovsky should have
known about the "case-sinking proportions" of the "severe
problems" in the Anvil Report since January 2017, but nevertheless
agreed to accept a contingency fee (in addition to the $75,000 initial
payment).

f. It provided Mr. Moldovsky an hourly rate of $400, which, on
information and belief, is 11% higher than his normal hourly rate —
while allowing the Moldovsky Firm to also keep the initial $75,000
up-front payment.

g. It materially changed the financial terms of the Moldovsky Firm's
engagement, retrospectively and also prospectively, without legal
or equitable justification besides the Moldovsky Firm's pecuniary
interests.

h. It was based on the false premise that the Moldovsky Firm was
contractually entitled to walk away from Lightbox and Mr. Ellner's
case in the middle of litigation, when Mr. Moldovsky knew that, as
attorney of record, he could not terminate the representation
without cause and, more importantly, without leave of Court.

i. It was based on Mr. Moldovsky's "creative" but false and self-
serving misinterpretation of the Moldovsky Agreement, which did
not authorize client abandonment — in the midst of litigation —
based on the Moldovsky Firm's pecuniary self-interest and contrary
to its fiduciary duties.

119.     In addition, Mr. Moldovsky failed to advise the Lightbox Parties that they should seek legal advice of another, unconflicted lawyer before agreeing to his demands — in violation of N.Y. RPC 1.8(a)(2).

120.     Mr. Moldovsky bombarded Mr. Ellner with dozens of emails over the following month, demanding a more lucrative fee arrangement that would protect the Moldovsky Law Firm from the financial consequences of the downside of a contingent fee arrangement, but at Lightbox and Mr. Ellner's expense — all the while holding out the unlawful threat of client abandonment in the very home stretch of a hotly contested lawsuit.

121.     Mr. Moldovsky's threat that his firm would abandon Lightbox and Mr. Ellner unless they agreed to his demand for a more lucrative fee arrangement, occurred at a time when Lightbox and Mr. Ellner were fully engaged in active litigation, including: trying to fully understand the consequences and implications of the SJ Opinion (ECF #149, dated November 13, 2017); gearing up for court-ordered mediation (ECF #150, also dated November 13, 2017); preparing an application for attorney's fees related to discovery sanctions (ECF #152, dated November 15, 2017); finalizing and filing Lightbox's Second Amended Complaint (ECF #153, filed November 17, 2017); and preparing for a jury trial, scheduled for the first week of February 2018 (*see* ECF #151), including all pretrial submissions.

122.     Under such circumstances, and as Lightbox and Mr. Ellner were painfully aware, the likelihood of finding a new lawyer was essentially nil, since that lawyer would have to be willing and able to get up to speed and handle mediation, a fee

application, and all pretrial submissions before the quickly approaching trial date, all

for a contingency fee on a case which the trial judge had already suggested would result

in a five-figure damages award —which award, moreover, would be subject to charging

liens held by two prior law firms.

123.    Faced with no alternatives, Lightbox and Mr. Ellner had no choice but to

accede, under duress, to the Moldovsky Firm's unlawful demands.

124.    A true and correct copy of the Moldovsky Firm's amended fee

arrangement (the "Moldovsky Fee Amendment") is annexed hereto as **Exhibit 5**.

125.    On information and belief, Mr. Moldovsky began drafting the Fee

Amendment on November 14, 2017 — just one day after issuance of the SJ Opinion.

126.    Lightbox and Mr. Ellner did not sign the Moldovsky Fee Amendment

until December 12, 2017.

127.    Instead of the $75,000 up-front fee plus shifting contingency fee of up to

40% applied to any recovery in excess of $100,000 as set out in the Moldovsky

Agreement, the Moldovsky Fee Amendment purports to provide the Moldovsky Firm

its full hourly fees going forward — for its attorneys and paralegals, but not for its law

clerks — from the effective date of the Fee Amendment, deferral of two-thirds of those

fees, a shifting contingency fee of either 40% or 65% depending on the Scarola Firm's

own recovery, and various and conflicting allocation scenarios — all pursuant to an

extremely complicated and ultimately indecipherable and unintelligible formula.

128.    Among its many flaws, the Moldovsky Fee Amendment does not account

for the $75,000.00 up-front payment that the firm received in February 2017.

129.    As best as it can be deciphered, and disregarding multiple internal contradictions and inconsistencies, and ignoring language that verges on incoherence, and subject to the usual rules pertaining to contract interpretation and construing ambiguities in a retainer agreement in favor of clients and against lawyers, the Fee Amendment purported to modify the fee arrangement in the February 2017 Moldovsky Agreement very roughly as follows:

|  | Initial Agreement | "Amended" Fees |
|---|---|---|
| *Up-front payment* | $75,000 | n/a |
| *Hourly fees — attorneys* | n/a | **Up to $500/hour, no cap** |
| *Hourly fees — paralegals* | n/a | **$150/hour, no cap** |
| *Hourly fees — law clerks* | n/a | n/a |
| *Contingent fee* | Up to 40% | **Up to 65%** |

130.    As described above, and for all the reasons set forth in Paragraph 118(a)-(i) herein, the Moldovsky Fee Amendment is unconscionable, unintelligible and otherwise unenforceable.

131.    For the reasons set forth in Paragraphs 115-122 and 127-129 above, the Moldovsky Fee Amendment violates Rule 1.5(a) of New York's Rules of Professional Conduct, which prohibits lawyers from making an agreement for, charging and/or collecting an excessive or illegal fee or expense.

132.    The purported amended fee arrangement set out in the Moldovsky Fee Amendment is described in language that is convoluted and almost unintelligible, in violation of N.Y. RPC 1.8(a)(1).

133.    Prior to the SJ Opinion and Mr. Moldovsky's immediately subsequent demand to "renegotiate" the Moldovsky Firm's fee arrangement to include an

undiscounted hourly billing rate, Mr. Moldovsky's recorded time entries were generally less than 10 hours per month, and did not exceed 20 hours per month, averaging 8.73 attorney hours per month over nine months, from February 2017 through October 2017.

134.    After that, however, Mr. Moldovsky's monthly recorded hours began to skyrocket, averaging 84.42 attorney hours per month over five months, from November 2017 through March 2018.

135.    While "renegotiating" the firm's fee arrangement to include compensation based on hourly fees, Mr. Moldovsky omitted to advise Lightbox and Mr. Ellner that his average monthly hours would likely increase almost ten-fold.

136.    A side-by-side, "before and after" comparison of Mr. Moldovsky's monthly recorded hours, not including additional time recorded by Mr. Moldovsky at paralegal rates, is shown as follows:

| before SJ Opinion | | after SJ Opinion | |
|---|---|---|---|
| February 2017 | 1.2 | November 2017 | 44.4 |
| March 2017 | 7.3 | December 2017 | 44.7 |
| April 2017 | 9.8 | January 2018 | 90.4 |
| May 2017 | 9.2 | February 2018 | 164.4 |
| June 2017 | 1.6 | March 2018 | 78.2 |
| July 2017 | 8.8 | **5-month subtotal** | **422.1** |
| August 2017 | 12.9 | | |
| September 2017 | 15.8 | | |
| October 2017 | 12.0 | | |
| **9-month subtotal:** | **78.6** | | |

137.    Mr. Moldovsky's above monthly totals were in addition to recorded time attributed to the Moldovsky Firm's other lawyer, paralegal and law clerks, as well as additional time billed by Mr. Moldovsky at paralegal rates.

138.     Up until the February 2018 invoice, issued on or about March 6, 2018, Lightbox and Mr. Ellner had paid all monthly invoices promptly and in full.

139.     The February 2018 invoice, issued on or about March 6, 2018, was for $35,000, not including the deferred hourly fees.

140.     Upon reviewing that invoice, Mr. Ellner questioned the large and disproportionate amount.

141.     In that month, Mr. Moldovsky claimed that he personally worked 164.4 hours at attorney rates, 17.6 hours at paralegal rates, and an additional 3.0 hours (2.8 attorney hours + 0.2 paralegal hours) on the State Court Matter, for a grand total of 185.0 hours that month, not including time spent on other clients and matters.

142.     On information and belief, Mr. Moldovsky had other clients and matters during the month of February 2018, and billed time for those other clients' matters as well.

143.     After Mr. Ellner raised concerns about the amount and the time billed during February 2018, Mr. Moldovsky did not address the substance of those concerns, nor did he review that invoice for accuracy. Instead, he insisted that the invoice was correct and demanded that it be paid immediately.

144.     Mr. Ellner offered to pay a significant portion of that invoice on account, while continuing to review it for reasonableness and subject to a reservation of rights, but Mr. Moldovsky did not agree. Instead, he continued to insist that the invoice was fully accurate, fully owed, and must be paid in full without delay. A true and correct copy of Mr. Ellner's letter to the Court about these issues is annexed hereto as **Exhibit 6**.

145.     On April 4, 2018, the Moldovsky Firm issued an invoice demanding immediate payment of $60,000, including $35,000 for February 2018, $13,000 for March 2018, plus an additional $12,000 retainer fee.

146.     Neither the Moldovsky Agreement nor the Fee Amendment permit the Moldovsky Firm to demand a retainer fee of any kind, notwithstanding the $75,000 up-front payment received by the firm at the beginning of representation.

147.     On April 9, 2018, after filing various pretrial and trial-related submissions on behalf of Lightbox and Mr. Ellner and while the Court's decision was pending, the Moldovsky Firm formally moved for leave to withdraw from representing them in this matter, falsely purporting that there were "irreconcilable differences" including "difficulty communicating" and "strategic differences" in addition to the unpaid invoice. *See* ECF #229.

148.     Mr. Ellner disagreed with Mr. Moldovsky's aforesaid representations to the Court, and requested an opportunity to be heard on these issues, but Mr. Moldovsky presented Mr. Ellner's written request after the Court had already granted the motion. *See* ECF #232.

149.     Mr. Moldovsky's representations to the Court were untrue, made no sense and were otherwise immaterial, because by then all required trial-related submissions had been submitted and there was little left to do but await the Court's decision.

150.     A few days before filing the motion to withdraw, Mr. Moldovsky attempted to convince and/or compel Lightbox and Mr. Ellner's below-signed state court counsel to withdraw from the State Court Matter.

151.    On information and belief, in doing so, Mr. Moldovsky was attempting to gain leverage over Lightbox and Mr. Ellner with respect to the disputed invoice by unethically and tortiously interfering with the contractual relations between Lightbox, Mr. Ellner, LBC, and their state court counsel.

152.    The Moldovsky Firm's motion to withdraw was granted that same day it was filed and made effective as of the date that the Court rendered a decision in the trial of the dispute with 3rd Home and Mr. Shealy, which was April 16, 2018. *See* ECF #231, #233.

153.    In granting the motion to withdraw, the Court credited and relied on the presumed veracity of Mr. Moldovsky's representations to the Court.

154.    Because Mr. Moldovsky was formally terminated as counsel of record as of April 16, 2018, Lightbox and Mr. Ellner were compelled to retain new counsel for purposes of submitting an application for contractual fee-shifting as awarded by the Court, and also for purposes of submitting a proposed form of final judgment in this matter. *See* ECF #236, #238, #243, #253, #265.

155.    On April 12, 2018, the Moldovsky Firm issued a "final" invoice to Lightbox and Mr. Ellner, contending that the firm is owed $245,717.10.

156.    In additional to being based on the unconscionable, unintelligible, and unenforceable Moldovsky Fee Amendment, the April 12th invoice is rife with errors of basic arithmetic.

157.    The April 12th invoice incorrectly reports 254.8 attorney hours and 23.3 paralegal hours for Mr. Moldovsky in February 2018, which is 52.8% higher than his

already unreasonably-high contemporaneously reported hours for that month, i.e. 164.4 attorney hours and 17.6 paralegal hours.

158.    On June 18, 2018, the Moldovsky Firm issued an "updated" final invoice to Lightbox and Mr. Ellner, which tacitly admitted, *sub silentio*, that the April 12th invoice was erroneous and inflated.

159.    The "updated" June 18th invoice asserts that the Moldovsky Firm is owed $227,957.50, which is almost $18,000 less than the April 12th invoice.

160.    In additional to being based on the unconscionable, unintelligible, and unenforceable Moldovsky Fee Amendment, the June 18th invoice is also rife with errors, omissions and inconsistencies, including but not limited to the following:

    a.  it incorrectly includes 23.3 paralegal hours for Mr. Moldovsky in February 2018, which is incorrect and inflated;

    b.  it unlawfully includes recorded time entries from prior to the effective date of the Fee Amendment, applying the Amendment ten months retroactively, contrary to the parties' understanding;

    c.  it incorrectly claims, without explanation or calculations, and without factual or legal justification, that Mr. Ellner is personally responsible for paying $48,400.00;

    d.  it fails to apply prior payments to non-deferred legal fees otherwise payable by Mr. Ellner;

    e.  it incorrectly accounts for prior payments;

    f.  it incorrectly claims, without explanation or calculations, and without factual or legal justification, that $120,000.00 of the total invoice must be paid out of the Funds;

    g.  it incorrectly claims, without explanation or calculations, and without factual or legal justification, and contrary to the above-described assertion of a $120,000.00 lien on the Funds, that the

Moldovsky Firm has "equitable, charging and other liens" on the Funds, in the full invoice amount of $227,957.50;

h.  it threatens Lightbox and Mr. Ellner with usurious interest in violation of N.Y. Gen. Oblig. Law § 5-501 and N.Y. Banking Law § 14-a;

i.  it misrepresents that Mr. Moldovsky "can explain and review these calculations" when in fact he rudely rebuffed and declined to provide any substantive response to Lightbox and Mr. Ellner's concerns; *and*

j.  it misleadingly glosses over the $18,000 error in the prior invoice.

161.   As of the date of this Complaint, neither Mr. Moldovsky nor anyone else at the Moldovsky Firm have expressly admitted to the egregious $18,000.00 billing error, much less apologized for it.

162.   As of the date of this Complaint, Mr. Moldovsky has neither apologized to Mr. Ellner nor otherwise taken responsibility for his improper refusal to investigate Mr. Ellner's concerns about overbilling, for falsely blaming him for faux "communication difficulties" and "strategic differences," or for the Moldovsky Firm's unwarranted premature termination of representation..

163.   To date, Lightbox and Mr. Ellner have paid the Moldovsky Firm at least $119,742.41 for its services, including invoiced expenses.

164.   On information and belief, the Moldovsky Firm has not accounted for all payments that it has received.

165.   The Moldovsky Firm's invoices suggest it has received "only" $104,052.41, including $102,500.00 for its fees and $1,552.41 for its alleged expenses.

166.     According to the "updated" June 16, 2018 invoice, the Moldovsky Firm claims that it is owed another $227,957.50 including illegal 18% interest and miscellaneous purported expenses.

167.     Lightbox and Mr. Ellner dispute this invoice and prior invoices on a number of grounds:

   a.  the invoices were issued pursuant to the unconscionable and otherwise unlawful and unenforceable Moldovsky Fee Amendment;

   b.  the billable hours reflected in the invoice are excessive and/or incorrect, particularly those of Mr. Moldovsky;

   c.  Mr. Moldovsky's billing entries are largely indecipherable;

   d.  Mr. Moldovsky improperly billed for unbillable secretarial work;

   e.  Mr. Moldovsky improperly billed at partner rates for paralegal work;

   f.  Mr. Moldovsky improperly billed for tasks outside the scope of the Moldovsky Agreement and/or outside the scope of his representation;

   g.  the invoices fail to account for all payments received by the Moldovsky Firm;

   h.  the invoices demand payment for alleged expenses, but without receipts documenting that such expenses were actually incurred;

   i.  the invoices include unreasonable and unlawful 18% interest in violation of N.Y. Gen. Oblig. Law § 5-501 and N.Y. Banking Law § 14-a; *and*

   j.  such other and further issues as may be identified during the litigation of this Third Party Complaint.

**The Moldovsky Firm's Claims**

168.    On information and belief, the Moldovsky Firm asserts that it has contractual claims against Lightbox and Mr. Ellner in the neighborhood of $227,957.50 or more.

169.    On information and belief, the Moldovsky Firm further asserts that it has a statutory charging lien over substantially all of the Funds held with this Court, pursuant to New York Judiciary Law § 475 and commencing as of the Moldovsky Firm's appearance in this matter on March 1, 2017. *See* ECF #97.

170.    On information and belief, the Moldovsky Firm further asserts that it has a contractual lien securing its allegedly unpaid legal fees, which alleged lien attaches to substantially all of the Funds held with this Court.

171.    The Moldovsky Firm has threatened Lightbox, Mr. Ellner and their below-signed counsel with additional legal proceedings, claims and liability if the Funds are distributed in a way that does not fully accord with its alleged statutory and contractual liens.

172.    Under New York law, a lawyer who is terminated or otherwise discharged from representation cannot enforce his or her retainer agreement in contract, but is limited to asserting a claim for enforcement of his or her statutory charging lien and/or asserting a claim for *quantum meruit*. If he or she is terminated or otherwise discharged for cause, then the lawyer has no claim whatsoever but must disgorge all fees he or she received.

173.     The Moldovsky Firm has no contractual claims or remedies whatsoever against Lightbox and Mr. Ellner because it was discharged as counsel of record on its own motion while this matter was still pending, before it had completed the legal services it had contracted to provide, as a result of which Lightbox and Mr. Ellner were compelled to retain new counsel in order to conclude the litigation and related proceedings arising from the dispute between Lightbox and Mr. Ellner, and 3rd Home and Mr. Shealy.

174.     The Moldovsky Firm's withdrawal from this matter did not result from any improper act or omission by Lightbox and Mr. Ellner but instead precipitated from Mr. Moldovsky's refusal to investigate Mr. Ellner's timely stated concerns about Mr. Moldovsky's skyrocketing reported hours and excessive and unreasonable legal fees, Mr. Moldovsky's refusal to accept a partial payment in good faith while Mr. Ellner continued to analyze those fees, and Mr. Moldovsky's adamant and self-serving insistence on payment in full without delay and without double-checking the accuracy of his firm's invoicing, which invoices are now known to be rife with errors, inconsistencies and omissions.

175.     Moreover, the Moldovsky Firm has no contractual claims or remedies arising from the Moldovsky Fee Amendment, because that amendment was procured unlawfully, under conditions of duress, in gross violation of the New York Rules of Professional Responsibility, and is otherwise unreasonable and unconscionable.

176.     Instead of contractual claims, the Moldovsky Firm's putative claim for determination and enforcement of its statutory charging lien must be based on *quantum*

*meruit* and any other equitable considerations (such as the existence of competing liens and the firm's wrongful actions in prematurely seeking to be discharged from this matter based on false pretenses and its own neglectful and erroneous billing practices), and subject to setoff for prior payments in the amount of about $119,742.41.

177.    This Court has already determined that the reasonable value of the Moldovsky Firm's services related to the discovery dispute between Lightbox and 3rd Home was $10,000.00. *See* ECF #172.

178.    That $10,000.00 determination was made upon the Court's review and consideration of the Moldovsky Firm's related legal invoices and billing entries spanning from its retainer at the end of February 2017 through November 30, 2017, amounting to $69,669.00, and upon the sworn declaration of Mr. Moldovsky. *See* ECF #165, 165-4; *see also* ECF #172.

179.    Because the Moldovsky Firm fully participated in presenting its legal invoices and billing entries for the Court's consideration and in explaining and justifying the reasonableness of its billing rates, method of staffing, and total amount of time incurred, it had a full and fair opportunity to be heard on the issue of whether its legal invoices, billing entries and staffing were reasonable.

180.    In light of the foregoing, and for all the equitable and other considerations and factors set forth in this Third Party Complaint, including in particular the firm's wrongful actions in abruptly and prematurely seeking to be discharged from this matter based on false pretenses and its own neglectful and erroneous billing practices,

the reasonable value of the Moldovsky Firm's legal services does not exceed $75,000.00,

subject to setoff for prior payments in the amount of about $119,742.41.

**Other Legal Fees and Expenses Incurred in this Matter**

181.    In addition to $316,735.41 paid to the Scarola Firm and about $119,742.41

paid to the Moldovsky Firm, Lightbox and Mr. Ellner have incurred and paid over

$160,000.00 in other legal fees and expenses in this matter, including but not limited to

the following:

| | |
|---|---|
| Scalar Analytics (*expert report*) | $45,550.00 |
| Anvil Advisors (*expert report*) | $43,100.00 |
| Jack Olivo, Esq. (*settlement efforts*) | $30,000.00 |
| Discovia (*ediscovery*) | $20,404.28 |
| Tony Harwood, Esq. (*defense of IP claims*) | $6,900.00 |
| court reporters/deposition support | $6,791.66 |
| vDiscovery (*printing/binding*) | $5,650.93 |
| mediator fees | $2,927.33 |
| | **$161,324.20** |

182.    Almost $90,000.00 were incurred for Lightbox's two expert reports in this

matter.

183.    Lightbox retained Anvil Advisors based on Mr. Scarola's legal advice and

recommendation, which ran contrary to the clear message in the Court's PI Opinion

regarding the inherently speculative nature of a theory of damages based on lost future

profits from a joint venture that never got off the ground.

184.    Lightbox retained Scalar Analytics, and also spent tens of thousands of

dollars for the Supplemental Anvil Report, based on Mr. Moldovsky's legal advice and

recommendation, which ran contrary to the clear message in the Court's PI Opinion

regarding the inherently speculative nature of a theory of damages based on lost future

profits from a joint venture that never got off the ground.

**The Funds**

185.    On January 18, 2018 the Court awarded Lightbox $38,888.01 in discovery

sanctions, including $10,000 on account of the Scarola Firm's fees, $10,000 on account of

the Moldovsky Firm's fees, and $18,888.01 on account of Lightbox's out-of-pocket

forensic examination expenses. ECF #172.

186.    On April 16, 2018 the Court awarded Lightbox $100,517.27 in damages

and prejudgment interest. ECF #233.

187.    On June 12, 2018 the Court awarded Lightbox $100,000.00 in attorney's

fees. ECF #252.

188.    All of these amounts (the "Funds") have been paid by 3rd Home and have

been deposited into court.

**COUNT I – INTERPLEADER**

189.    Third Party Plaintiffs incorporate by reference the allegations set forth in

the preceding paragraphs as if set forth at length herein.

190.    Section 475 of New York's Judiciary Law provides that, in any court

proceeding, the attorney who appears for a party has a lien upon his or her client's

cause of action, claim or counterclaim, which attaches to a verdict, report,

determination, decision, award, settlement, judgment or final order in his or her client's

favor, and the proceeds thereof in whatever hands they may come, and further provides

that upon petition of the client or the attorney the court may determine the amount of and enforce said lien.

191. On information and belief, the Scarola Firm asserts that it has a statutory lien pursuant to N.Y. Judiciary Law § 475 as of the date that the Scarola Firm appeared in this matter on behalf of Lightbox, and that its statutory lien attaches to all or substantially all of the Funds.

192. On information and belief, the Scarola Firm asserts that it also has a contractual lien pursuant to the Scarola Agreement that attaches to all or substantially all of the Funds.

193. On information and belief, the Moldovsky Firm asserts that it has a statutory lien pursuant to N.Y. Judiciary Law § 475 as of the date that the Moldovsky Firm appeared in this matter on behalf of Lightbox, and that its statutory lien attaches to all or substantially all of the Funds.

194. On information and belief, the Moldovsky Firm asserts that it also has a contractual lien pursuant to the Moldovsky Agreement that attaches to all or substantially all of the Funds.

195. The Scarola Firm has threatened Lightbox, Mr. Ellner and their below-signed counsel with additional legal proceedings, claims and liability if the Funds are distributed in a way that does not fully accord with its alleged statutory and contractual liens.

196. The Moldovsky Firm has threatened Lightbox, Mr. Ellner and their below-signed counsel with additional legal proceedings, claims and liability if the Funds are

distributed in a way that does not fully accord with its alleged statutory and contractual liens.

197.    Mr. Ellner, in his personal capacity, does not have a legal or equitable right to the Funds, which were awarded by the Court to Lightbox, only.

198.    Lightbox and Mr. Ellner admit that, under N.Y. Judiciary Law § 475, the Scarola and Moldovsky Firms have statutory liens attaching to the Funds, each in an amount that must be determined by this Court according to principles of *quantum meruit* and other equitable considerations.

199.    The amount of each firm's statutory liens are subject to setoff by the amount of legal fees already received by each of them in this matter.

200.    The Scarola and Moldovsky Firms' alleged contractual liens are null and void and otherwise unenforceable.

201.    Lightbox admits that its right to the Funds is inferior to that of the Scarola and Moldovsky Firms' statutory liens, but only according to the net amount of each lien after setoff as described herein.

202.    The Funds have been deposited into Court and are subject to the Court's custody, control and *in rem* jurisdiction.

**WHEREFORE**, Lightbox and Mr. Ellner demand that the Scarola and Moldovsky Firms be required to interplead each other concerning their competing claims to the Funds; that the Scarola and Moldovsky Firms be restrained, enjoined and otherwise prohibited from commencing and/or litigating any other proceeding in any other

tribunal concerning the Funds; and that the Court determine the validity and amount of

the Scarola and Moldovsky Firms' competing claims to the Funds, including setoff

amounts applicable to each of them.

## COUNT II – DECLARATORY JUDGMENT
*(Unenforceability of the Scarola Agreement)*

203.    Third Party Plaintiffs incorporate by reference the allegations set forth in

the preceding paragraphs as if set forth at length herein.

204.    Lightbox and the Scarola Firm entered into the Scarola Agreement on

March 11, 2016.

205.    Mr. Ellner, in his personal capacity, was not a party to the Scarola

Agreement.

206.    Lightbox terminated the Scarola Agreement on February 27, 2017.

207.    The Scarola Firm formally withdrew from representing Lightbox and Mr.

Ellner in this matter on March 1, 2017 by way of consent order for substitution of

counsel

208.    Under New York law, a lawyer who has been terminated or otherwise

discharged from representation cannot enforce his or her retainer agreement in contract.

Unless the lawyer was terminated or otherwise discharged for cause, he or she may

assert a claim for enforcement of his or her statutory charging lien and/or asserting a

claim for *quantum meruit*, but not for breach of contract nor for enforcement of any part

of the retainer agreement. If the lawyer was terminated or otherwise discharged for

cause, then he or she has no claim whatsoever for legal fees and must disgorge all fees

he or she received.

209.    In addition, certain provisions of the Scarola Agreement are unlawful and

unenforceable *per se*:

      a.   the provision for unilateral and non-mutual fee-shifting in the event of a fee dispute, *see Shukla v. Sharma*, 586 Fed. Appx. 752 (2d Cir. 2014);

      b.   the one-year contractual limitation period for malpractice, in violation of N.Y. RPC 1.8(h); and

      c.   the 3.5% surcharge for routine office expenses and overhead, unrelated to the firm's actual expenses incurred in this matter, in violation of N.Y. RPC 1.5(a).

210.    In addition, the Scarola Agreement may not be enforced by the Scarola

Firm because the firm was terminated and further withdrew from the representation

before completing the scope of representation that it had contracted to provide.


**WHEREFORE**, Lightbox and Mr. Ellner demand judgment against the Scarola

Firm, declaring that the Scarola Agreement is terminated and unenforceable against

Lightbox and/or against Mr. Ellner; that the Scarola Firm's purported contractual lien is

null and void; and that the purported contractual one-year limitation period for

bringing an action for legal malpractice against the Scarola Firm is null and void.

## COUNT III – DECLARATORY JUDGMENT
*(Unenforceability of the Moldovsky Agreement and Fee Amendment)*

211.    Third Party Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

212.    Lightbox, Mr. Ellner and the Moldovsky Firm entered into the Moldovsky Agreement on February 20, 2017.

213.    Lightbox and Mr. Ellner signed the Moldovsky Fee Amendment on December 12, 2017.

214.    The Moldovsky Firm moved for leave to withdrew from representing Lightbox and Mr. Ellner in this matter on April 9, 2018, before the Court had entered its decision and judgment in the trial of this matter, i.e. the dispute between Lightbox, Mr. Ellner, 3rd Home, and Mr. Shealy.

215.     The Moldovsky Firm tried to justify its motion by falsely purporting that there were "irreconcilable differences" including "difficulty communicating" and "strategic differences" in addition to Mr. Ellner's concerns about overbilling, the firm's improper demand for a $12,000 retainer and Mr. Moldovsky's refusal to accept partial payment on account while Mr. Ellner's reasonable concerns were hashed out.

216.    The Moldovsky Firm's motion was granted.

217.    The Moldovsky Firm withdrew before completing the scope of representation that it had contracted to provide.

218.    Under New York law, a lawyer who has been terminated or otherwise discharged from representation cannot enforce his or her retainer agreement in contract.

Unless the lawyer was terminated or otherwise discharged for cause, he or she may

assert a claim for enforcement of his or her statutory charging lien and/or asserting a

claim for *quantum meruit*, but not for breach of contract nor for enforcement of any part

of the retainer agreement. If the lawyer was terminated or otherwise discharged for

cause, then he or she has no claim whatsoever for legal fees and must disgorge all fees

he or she received.

219.    In addition, the certain provisions of the Moldovsky Agreement are

unlawful and unenforceable *per se*:

      a.    the provision for unilateral and non-mutual fee-shifting in the
          event of a fee dispute, *see Shukla v. Sharma*, 586 Fed. Appx. 752 (2d
          Cir. 2014); *and*

      b.    interest of 18% per annum applied to any past-due invoices, which
          rate is *double* the 9% statutory rate permitted under CPLR § 5004
          and violates N.Y. RPC 1.5(a), and which is in fact illegal under N.Y.
          Gen. Oblig. Law § 5-501 and N.Y. Banking Law § 14-a.

220.    In light of the usurious 18% interest rate, the Moldovsky Agreement, in its

entirety, is void and unenforceable under N.Y. Gen Oblig. Law § 5-511.

221.    In addition, the Moldovsky Agreement may not be enforced by the

Moldovsky Firm because the Firm withdrew before completing the scope of

representation that it had contracted to provide.

222.    Moreover, the Moldovsky Fee Amendment, in its entirety, is

unconscionable, unintelligible, and unenforceable *per se*.

**WHEREFORE**, Lightbox and Mr. Ellner demand judgment against the Moldovsky Firm, declaring that the Moldovsky Agreement and the Moldovsky Fee Amendment are unenforceable against Lightbox and/or against Mr. Ellner and that the Moldovsky Firm's purported contractual lien is null and void.

## COUNT IV – DECLARATORY JUDGMENT
*(Determination of the Scarola Firm's Right to Quantum Meruit)*

223.    Third Party Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

224.    On information and belief, the Scarola Firm may have a claim for *quantum meruit* against Lightbox.

225.    The Scarola Firm does not have a claim for *quantum meruit* against Mr. Ellner, because Mr. Ellner was not a party to the Scarola Agreement and never agreed to be personally responsible for paying legal fees to the Scarola Firm.

226.    The Scarola Firm has not asserted a claim for *quantum meruit* in the State Court Matter nor in any proceeding.

227.    An award of legal fees in *quantum meruit* is determined in light of the time spent, the character and nature of the services rendered, the complexity, difficulty and novelty of the case and the issues confronting the attorney, the attorney's standing in the bar and his or her professional reputation and experience, the skill exercised in handling the case, the possible consequences of the action and the result obtained.

228.    This Court is fully familiar with the foregoing issues as relevant to the Scarola Firm's services and performance in this matter.

229.    This Court has already rendered two decisions regarding the reasonable value of the Scarola Firm's services.

230.    The reasonable value of the Scarola Firm's services is not more than $110,000.00 plus its documented vendor expenses and disbursements.

231.    The Scarola Firm has already been paid $316,735.41 in this matter.

232.    Lightbox is entitled to a setoff and reimbursement of the excess amount.

**WHEREFORE**, Lightbox and Mr. Ellner demand judgment against the Scarola Firm, declaring that Mr. Ellner has no liability in *quantum meruit* to the Scarola Firm; that the reasonable value of the Scarola Firm's services in this matter is $110,000.00 plus its documented vendor expenses and disbursements; that the $316,735.41 in prior payments to the Scarola Firm are a setoff against that amount; and that Lightbox is entitled to a refund of the excess payments.

## COUNT V – DECLARATORY JUDGMENT
*(Determination of the Moldovsky Firm's Right to Quantum Meruit)*

233.    Third Party Plaintiffs incorporate by reference the allegations set forth in the preceding paragraphs as if set forth at length herein.

234.    On information and belief, the Moldovsky Firm may have claims for *quantum meruit* against Lightbox and Mr. Ellner.

235.    The Moldovsky Firm has not asserted a claim for *quantum meruit* in any tribunal or proceeding.

236. An award of legal fees in *quantum meruit* is determined in light of the time spent, the character and nature of the services rendered, the complexity, difficulty and novelty of the case and the issues confronting the attorney, the attorney's standing in the bar and his or her professional reputation and experience, the skill exercised in handling the case, the possible consequences of the action and the result obtained.

237. This Court is fully familiar with the foregoing issues as relevant to the Moldovsky Firm's services and performance in this matter.

238. The vast majority of the Moldovsky Firm's services in this matter were rendered to, for and on behalf of Lightbox.

239. On information and belief, the Moldovsky Firm incurred only limited time in defending Mr. Ellner, personally, in this matter; the great majority of Mr. Ellner's defense was handled behind the scenes by Attorney Tony Harwood, an experienced IP litigator.

240. Mr. Harwood was paid separately from the Moldovsky Firm and was paid in full. If and to the extent the Moldovsky Firm has any claim at all in *quantum meruit* related to defending Mr. Ellner in this matter, the amount is *de minimis*.

241. This Court has already rendered at least one decision regarding the reasonable value of the Moldovsky Firm's services in this matter, i.e. the $10,000.00 awarded on account of the firm's services in connection with the discovery dispute between Lightbox and 3rd Home.

242. The reasonable value of the Moldovsky Firm's services is not more than $75,000.00 plus its documented vendor expenses and disbursements.

243.    The Moldovsky Firm has already been paid about $119,742.41 in this matter.

244.    Lightbox is entitled to a setoff and reimbursement of the excess amount.


**WHEREFORE**, Lightbox and Mr. Ellner demand judgment against the Moldovsky Firm, declaring that the reasonable value of the Moldovsky Firm's services to Lightbox in this matter is $75,000.00 plus its documented vendor expenses and disbursements; that the $119,742.41 in prior payments to the Moldovsky Firm are a setoff against that amount; and that Lightbox is entitled to a refund of the excess payments.


                                        Respectfully submitted,

Date: July 3, 2018                      /s/ Jonathan R. Miller, Esq.
                                        **The Law Firm of Jonathan R. Miller**
                                        100 Overlook Drive, 2nd Floor
                                        Princeton, N.J. 08540
                                        Tel. 609-955-1226
                                        Fax 609-964-1026
                                        Email: jonathan.miller@lawyer.com

                                        *Counsel for Lightbox Ventures, LLC*
                                        *and Andrew Ellner*

# Exhibit "X"

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA
 2                        -  -  -

 3   ANDREW ELLNER,                    :  CIVIL ACTION NO.
         Plaintiff,                    :  20-6190
 4                                     :
         v.                            :
 5                                     :
     BREM MOLDOVSKY, LLC; BREM         :
 6   MOLDOVSKY; and GERALD J.          :
     POMERANTZ, ESQUIRE,               :  PRETRIAL CONFERENCE
 7       Defendants.                   :
     _____

 8

 9                              James A. Byrne U.S. Courthouse
                                Via videoconference
10                              Philadelphia, PA 19106
                                March 17, 2021
11                              Commencing at 3:01 p.m.

12   _____

            BEFORE THE HONORABLE KAREN S. MARSTON
13   _____

14   APPEARANCES:

15   FOR THE            HAINES & ASSOCIATES
     PLAINTIFF:         BY:  CLIFFORD E. HAINES, ESQUIRE
16                      BY:   DANIELLE M. WEISS, ESQUIRE
                        1339 Chestnut Street
17                      Suite 530
                        Philadelphia, Pennsylvania 19107
18                      (215) 246-2200
                        chaines@haines-law.com
19                      dweiss@haines-law.com

20
                              -  -  -
21
                  Ann Marie Mitchell, CRR, RDR, RMR
22                     Official Court Reporter
                  ann_marie_mitchell@paed.uscourts.gov
23                        (267) 299-7250

24   Proceedings taken stenographically and prepared utilizing
     computer-aided transcription
25
```

```
1   APPEARANCES CONTINUED:

2
      PRO SE:                BREM MOLDOVSKY, LLC
3                            BY:  BREM MOLDOVSKY, ESQUIRE
                             100 N. 18th Street
4                            Suite 300
                             Philadelphia, Pennsylvania 19103
5                            (215) 546-9957
                             brem@bremlaw.com
6

7
      PRO SE:                GERALD JAY POMERANTZ & ASSOCIATES
8                            BY:  GERALD JAY POMERANTZ, ESQUIRE
                             1500 John F. Kennedy Boulevard
9                            2 Penn Center, Suite 1320
                             Philadelphia, Pennsylvania 19102
10                           (215) 569-8866
                             gjpomlaw@hotmail.com
11

12                                      -   -   -

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                (Court called to order at 3:01 p.m.)

2                THE COURT:  Hello, everyone.  I'm sorry to be a little

3    formal with this Rule 16, but looking over everything that you

4    have provided to date made me think it might be best to have

5    everything on the record with a court reporter.

6                So I'm going to ask for counsel for plaintiff to

7    please identify yourself for the record.

8                MR. HAINES:  Clifford Haines.

9                MS. WEISS:  Danielle Weiss.

10               THE COURT:  Hello to both of you.

11               And for the defendants?

12               MR. MOLDOVSKY:  Brem Moldovsky, Esquire, for myself

13   and for Brem Moldovsky, LLC.

14               MR. POMERANTZ:  And Gerald Jay Pomeranz, pro se, for

15   my own self.

16               THE COURT:  Okay.  I think we have one other

17   individual in the bottom.  At least on my screen she's on the

18   bottom.

19               Is that somebody's paralegal?

20               MR. MOLDOVSKY:  Yes, it is.  It's Sheri Forney with

21   our office.  Particularly with all the background, she has a

22   tremendous knowledge of the file and so can help me.

23               THE COURT:  That's fine.  All right.

24               (Technological interruption.)

25               THE COURT:  First of all, wherever the exposure, I

1  hope everyone is well and safe, and thank you all for reverting

2  to doing it virtually.

3          It looks like we have a real complicated situation

4  pending here.

5          Do I have a grasp of that?

6          What I want to know, first of all, is what -- I want

7  to start with plaintiff.

8          What is plaintiff's role in any of the cases that are

9  not pending before me?

10          MR. HAINES:  Judge, I'm sorry, you are continuing to

11  echo, but I think I heard your question, and that is, what is

12  plaintiff's role in any of the cases that are pending.

13          And the answer, as I understand it -- and I don't

14  represent him in any other cases -- I'm not aware that he's

15  involved in any other cases.

16          THE COURT:  Okay.  That's what I thought.  I just

17  wanted to make sure of that.

18          MR. MOLDOVSKY:  Your Honor, may I speak to that?  May

19  I speak to that, Your Honor?

20          THE COURT:  Just a second.

21          MR. MOLDOVSKY:  I'm sorry.

22          THE COURT:  Yes.  Everyone will get their chance,

23  don't worry.

24          Go ahead, sir.  Mr. Moldovsky, you can go ahead.

25          MR. MOLDOVSKY:  Yes.  Your Honor, currently speaking,

1  the answer.  And we will get a scheduling order out if that is

2  not the case then related to the issues that we've talked about

3  here today.

4          Okay.  Thank you all.  I hope you're able to hear me

5  right now, because I'm looking like I'm frozen, so --

6          I'm sorry for our technical glitches.  And hope

7  everyone stays safe.  Thank you.

8          RESPONSE:  Thank you, Your Honor.

9          (Proceedings concluded at 3:30 p.m.)

10

11

12

13          I certify that the foregoing is a correct transcript

14  from the record of proceedings in the above-entitled matter.

15

16  _____

17  Ann Marie Mitchell, CRR, RDR, RMR
    Official Court Reporter
18

19  Date:  March 26, 2021

20

21

22

23

24

25

# Exhibit "Y"

FILED: APPELLATE DIVISION - 1ST DEPT 03/30/2021 07:35 AM
NYSCEF DOC. NO. 80
2019-03384
RECEIVED NYSCEF: 03/30/2021

# Supreme Court of the State of New York

## Appellate Division, First Judicial Department

PRESENT: Hon. Judith J. Gische,                    Justice Presiding,
Angela M. Mazzarelli
Peter H. Moulton
Saliann Scarpulla,                    Justices.

---

| | | |
|---|---|---|
| Scarola Malone & Zubatov, LLC, | Motion No. | 2021-00214 |
|     Plaintiff-Respondent | | 2020-00234 |
|     Plaintiff-Respondent-Respondent, | Index No. | 651324/17 |
| | Case Nos. | 2019-03384 |
|        -against- | | 2020-02530 |
| | | 2021-00300 |
| Andrew Ellner, Lightbox Capital | | 2021-00301 |
| Management, LLC, and Lightbox Ventures, LLC, | | |
|     Defendants-Appellants/ | **SEALED** | |
|     Defendants-Respondents-Appellants, | | |
| | | |
| Brem Moldovsky, LLC, | | |
|     Defendant/ | | |
|     Defendant-Appellant-Respondent | | |

---

An appeal having been taken by defendants-appellants Andrew Ellner, Lightbox Capital Management, LLC and Lightbox Ventures, LLC (collectively the Lightbox defendants) from an order of the Supreme Court , New York County, entered on or about July 8, 2019 (Case No. 2019-03384) and said appeal having been perfected,

And an appeal and cross appeal having been taken defendant Brem Moldovsky LLC and the Lightbox defendants and from an order, same court, entered on or about December 18, 2019 (Case No. 2020-02530) and said appeals having been perfected,

And unperfected appeals having been taken by defendant Brem Moldovsky LLC from orders of the same court, entered on or about October 21, 2020 (Case No. 2021-00300) and on or about December 10, 2021 (Case No. 2021-00301),

And plaintiff having moved in Case No. 2019-03384 for an order striking Appendix, Volume III filed by the Lightbox defendants, disallowing certain material said defendants submitted for judicial notice, and striking all references to the stricken and disallowed material in said defendants' reply brief (M-2021-00214),

And defendant Brem Moldovsky LLC having moved for an order (1) consolidating the appeals taken from the orders entered on or about July 8, 2019 (Case No. 2019-03384), December 18, 2019 (Case No. 2020-02530), October 21, 2020 (Case No. 2020-00300) and December 10, 2021 (Case No. 2020-00301), and (2) striking the portions of the Lightbox defendants 's reply brief in the appeal from the July 8, 2019 order (Case No. 2019-03384) and the supplemental appendix and reply brief in the appeal and cross appeal from the December 18, 2019 order (Case No. 2020-02530) that are dehors the record (M-2021-00234),

Now, upon reading and filing the papers with respect to the motions, and due deliberation having been had thereon, it is

Ordered that plaintiff's motion (M-2021-00214) is granted and Volume III of the Lightbox defendants' appendix in Case No. 2019-03384 and the portions of said defendants' reply brief, as set forth in Exhibits A and B to the Scarola Affirmation, are stricken.  Sua sponte, the perfected appeal is adjourned to the September 2021 Term and the Lightbox defendants may file a revised reply brief for said Term omitting all references to the stricken material, and it is further

Ordered that defendant Brem Moldovsky LLC's motion (M-2021-00234) is granted to the extent that (1) the perfected appeals under Case Nos. 2019-03384 and 2020-02530 are adjourned to the September 2021 Term and the appeals under Case Nos. 2021-00300 and 2021-00301 are to be placed on the same day calendar as the perfected appeals on condition said appeals are perfected for said September 2021 Term; (2) striking the passages in the reply brief filed by the Lightbox defendants in Case No. 2019-03384 at pages 11 and 13 concerning Moldovsky, with leave to file a revised reply brief for the September 2021 Term omitting such material; and (3) striking  passages in the Reply Brief filed by the Lightbox defendants in Case No. 2019-02530 at p. 5, 13, and 14 with leave to file a revised brief for the September 2021 Term omitting such material. The motion is denied to the extent it seeks to strike the supplemental appendix filed by the Lightbox defendants in Case No. 2020-02530.  (See, M-2021-00480/Case No. 2021-00380, decided simultaneously herewith).

ENTERED: March 30, 2021

Susanna Molina Rojas
Clerk of the Court

# Exhibit "Z"

FILED: APPELLATE DIVISION - 1ST DEPT 06/15/2020 09:51 PM

NYSCEF DOC. NO. 13

2019-03384

RECEIVED NYSCEF: 06/15/2020

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION — FIRST DEPARTMENT

| | |
|---|---|
| SCAROLA MALONE & ZUBATOV LLP, <br><br>           Plaintiff, <br><br>   v. <br><br> ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, LIGHTBOX VENTURES, LLC, and BREM MOLDOVSKY, LLC, <br><br>           Defendants. | Appellate No. 2019-03384 <br><br> N.Y. County Index No. 651324/2017 |

| |
|---|
| BREM MOLDOVSKY, LLC, <br><br>           Cross-claim Plaintiff, <br><br>   v. <br><br> ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, and LIGHTBOX VENTURES, LLC, <br><br>           Cross-claim Defendants. |

| |
|---|
| ANDREW ELLNER and LIGHTBOX VENTURES, LLC, <br><br>           Cross-claim Plaintiffs, <br><br>   v. <br><br> BREM MOLDOVSKY, LLC, <br><br>           Cross-claim Defendants. |

## <u>NOTICE OF CROSS-MOTION</u>

**PLEASE TAKE NOTICE** that, upon the accompanying papers:

      Affirmation of Counsel, dated June 15, 2020
      Affidavit of Jill Ellner, dated June 8, 2020
      Affidavit of Susan Simms Stein, dated June 8, 2020
      Affidavit of Kenneth Kornblau, dated June 11, 2020
      Affidavit of Joseph Kopel, dated June 8, 2020
      Affirmation of Frank Derby, Esq., dated June 5, 2020
      Memorandum of Law

and all accompanying exhibits, Andrew Ellner, Lightbox Capital Management, LLC and Lightbox Ventures, LLC (together, "Lightbox") will move this Court, in the Office of the Clerk of the Supreme Court of the State of New York, Appellate Division, First Department, at the Courthouse located at 27 Madison Avenue, New York, N.Y. 10010, on June 22, 2020 at 10:00 a.m. or as soon thereafter as counsel may be heard, for an order pursuant to 22 NYCRR § 130-1.1 imposing frivolous litigation sanctions against Brem Moldovsky, LLC and Brem Moldovsky, Esq., individually, and such other and further relief as the Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE** that, under CPLR § 2214(b), any papers in opposition to this Motion must be served upon the undersigned at least one day before such time.

Date: June 15, 2020

/s/ Jonathan R. Miller, Esq.
*Counsel for Lightbox*

*Main Office:*
100 Overlook Center, 2nd Floor
Princeton, N.J. 08540
Tel. 609-955-1226 (cell)
Fax 609-964-1026
jonathan.miller@lawyer.com

*New York Office:*
186 Joralemon Street, Suite 1202
Brooklyn, NY 11201

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION — FIRST DEPARTMENT

| | |
|---|---|
| SCAROLA MALONE & ZUBATOV LLP,<br><br>                    Plaintiff,<br><br>      v.<br><br>ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, LIGHTBOX VENTURES, LLC, and BREM MOLDOVSKY, LLC,<br><br>               Defendants. | Appellate No. 2019-03384<br><br>N.Y. County Index No. 651324/2017 |
| BREM MOLDOVSKY, LLC,<br><br>               Cross-claim Plaintiff,<br><br>      v.<br><br>ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, and LIGHTBOX VENTURES, LLC,<br><br>               Cross-claim Defendants. | |
| ANDREW ELLNER and LIGHTBOX VENTURES, LLC,<br><br>               Cross-claim Plaintiffs,<br><br>      v.<br><br>BREM MOLDOVSKY, LLC,<br><br>                Cross-claim Defendants. | |

**LIGHTBOX'S MEMORANDUM OF LAW IN OPPOSITION TO MOLDOVSKY'S MOTION TO DISQUALIFY AND OTHER RELIEF, AND IN SUPPORT OF LIGHTBOX'S CROSS-MOTION FOR SANCTIONS**

Jonathan R. Miller, Esq.
*Counsel for Lightbox*
186 Joralemon Street, Suite 1202
Brooklyn, N.Y. 11201
Tel. 609-955-1226 (cell)
Fax 609-964-1026
jonathan.miller@lawyer.com

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................1

FACTUAL BACKGROUND ...................................................................................3

PERTINENT PROCEDURAL HISTORY ...............................................................3

LEGAL ARGUMENT ...........................................................................................4

I.     Moldovsky's unsworn, *pro se* "affirmation" should be disregarded as a matter of law ...................................................................................4

II.    Moldovsky has failed to show good cause for a third extension of time to perfect his appeal ........................................................................5

III.   Moldovsky is collaterally estopped from moving to disqualify Lightbox's counsel..............................................................................7

IV.   Moldovsky's attempt to create a disqualifying conflict of interest through his "draft" third party complaint fails as a matter of law..............10

      A.    Moldovsky's attempt to fabricate a disqualifying conflict via his unsigned, unverified, unfiled and unserved "draft" third party complaint is improper and premature. ....................................11

      B.    Moldovsky's putative third party claims for contribution cannot create a disqualifying conflict, because claims for contribution in connection with Judiciary Law § 487 claims are disallowed as a matter of law and public policy. .........................13

V.    Moldovsky's other disqualification arguments are without merit .............17

      A.    Legal Standards ........................................................................17

      B.    Even if Moldovsky's "draft" third party contribution claims were not frivolous, they would not create a concurrent conflict of interest between Lightbox and Mr. Miller. ....................................19

      C.    As other courts have already determined, Mr. Miller's prior representation of Moldovsky is not substantially related to Moldovsky's dispute with Lightbox. ...................................... 20

           1.    Applicable Legal Standards ........................................... 21

           2.    Mr. Miller's former representation of Moldovsky is not substantially related to Moldovsky's dispute with Lightbox ..............................................................22

3.  Moldovsky, as "client", did not provide Mr. Miller, as "attorney", with confidential information that is substantially related to Moldovsky's dispute with Lightbox. ...................................................................25

D.  Mr. Miller is not a "necessary witness" under the witness-advocate rule.................................................................. 28

E.  Moldovsky's request that this Court disqualify Mr. Miller based on *alleged* misconduct in *other* courts is highly improper and should be rejected........................................... 31

VI.  Moldovsky's request for judicial notice should be denied ...........................35

VII.  Moldovsky's request for consolidation should be denied ........................... 37

VIII.  Sanctions are appropriate and should be imposed in light of Moldovsky's frivolous and vexatious fourth motion to disqualify Lightbox's counsel ...........................................................................40

A.  Legal Standards ...........................................................40

B.  Moldovsky's fourth, 632-page motion to disqualify Mr. Miller is frivolous and warrants sanctions........................................ 41

CONCLUSION..............................................................................44

## **TABLE OF AUTHORITIES**

### **CASES**

*Abrams Hebrew Academy v. Moldovsky et al.*, No. 2015-02876 (Pa. Ct. of
Common Pleas, Bucks County) .................................................................23

*Aiu Ins. Co. v. Unicover Managers*, 282 A.D.2d 260 (1st Dep't 2001) .................................14

*Amalfitano v. Rosenberg*, 12 N.Y.3d 8 (2009) ........................................................16

*Anzel v. Pistorino*, 105 A.D.3d 784 (2d Dep't 2013)....................................................38

*Bank of Tokyo Trust Co. v. Urban Food Malls Ltd.*, 229 A.D.2d 14 (1st Dep't
1996) ...............................................................................22, 25, 28

*Broadwhite Assocs. v. Truong*, 237 AD2d 162 (1st Dep't 1997) ......................................18, 29

*Calamar Enters. v. Blue Forest Land Grp, LLC*, 222 F. Supp. 3d 257
(W.D.N.Y. 2016) .................................................................................23

*Calandriello v. Calandriello*, 32 A.D.3d 450 (2d Dep't 2006) ...................................... 22, 26

*Dishi v. Fed. Ins. Co.*, 112 A.D.3d 484 (1st Dep't 2013) .............................................. 29

*Fawcett v. St. James Mercy Hosp.*, 2008 N.Y. Misc. LEXIS 10317, 2008 NY
Slip Op 32920(U) (Sup. Ct., Steuben County Oct. 27, 2008) .............................. 30

*Feeley v. Midas Props.*, 199 A.D.2d 238 (2d Dep't 1993) ......................................17

*Ferolito v. Vultaggio*, 99 A.D.3d 19 (1st Dep't 2012)....................................................18

*Finger v. Saal*, 56 A.D.3d 606 (2d Dep't 2008) ...................................................... 4

*Fitch v. Turner Constr. Co.*, 241 A.D.2d 166 (1st Dep't 1998) ..............................38

*Front, Inc. v. Khalil*, 24 N.Y.3d 713 (2015) ........................................................33

*Graziano v. Andzel-Graziano*, 169 A.D.3d 1195 (3d Dep't 2019)..........................12

*Hamilton v. Miller*, 23 N.Y.3d 592 (2014)........................................................ 36

*Harris v. Sculco*, 86 A.D.3d 481 (1st Dep't 2009) ..................................................17

*Jean v. Chinitz*, 163 A.D.3d 497 (1st Dep't 2018) ........................................................16

*Kelleher v. Adams*, 148 A.D.3d 692 (2d Dep't 2017) ................................................. 8

*Kopel v. Wong Fleming, PC, et al.*, No. MER-L-1816-17 (N.J. Super. Ct.) .................... 33, 34

*LaRusso v. Katz*, 30 A.D.3d 240 (1st Dep't 2006) ................................................. 4

*Levy v. Carol Mgmt. Corp.*, 260 A.D.2d 27 (1st Dep't 1999) ...................................... 41

*Lightbox Ventures, LLC v. 3rd Home Limited et al.*, No. 16-cv-2379 (S.D.N.Y.) ........................................................................ 8

*Lightning Park v. Wise Lerman & Katz*, 197 A.D.2d 52 (1st Dep't 1994) ...................... 21, 25

*Matter of Colello*, 167 A.D.3d 1445 (4th Dep't 2018) ............................................. 22

*Matter of George (State Comm'n on Judicial Conduct)*, 22 N.Y.3d 323 (2013) .................. 26

*Matter of Knopf v. Feldman & Assocs., PLLC*, 180 A.D.3d 508 (1st Dep't 2020) ............................................................................ 12

*McCabe v. St. Paul Fire & Marine Ins. Co.*, 79 A.D.3d 1612 (4th Dep't 2010) ............. 16, 20

*Med. Capital Corp. v. MRI Global Imaging, Inc.*, 27 A.D.3d 427 (2d Dep't 2006) ............................................................................ 21

*Merck Eprova AG v. ProThera, Inc.*, 670 F. Supp. 2d 201 (S.D.N.Y. 2009) .......................... 9

*Michael R. Gianatasio, PE, P.C. v. City of N.Y.*, 159 A.D.3d 659 (1st Dep't 2018) ............................................................................ 35

*Moldovsky v. Abrams Hebrew Academy et al.*, No. 2015-03839 (Pa. Ct. of Common Pleas, Bucks County) .......................................................... 23

*Moldovsky v. Miller et al.*, No. 2019-00793 (Pa. Ct. of Common Pleas, Bucks County) ............................................................................ 9, 24, 27

*Muriel Siebert & Co., Inc. v. Intuit Inc.*, 32 A.D.3d 284 (1st Dep't 2006), *aff'd* 8 N.Y.3d 506 (2007) ......................................................... 22, 25

*Nat'l Union Fire Ins. Co. v. Hartford Ins. Co.*, 248 A.D.2d 78 (1st Dep't 1998) ............................................................................ 7, 8

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ........................................................... 7

*Nomura Secs. Intl., Inc. v. Hu*, 240 A.D.2d 249 (1st Dep't 1997) ................................. 21

*NYK Line v. Mitsubishi Bank, Ltd.*, 171 A.D.2d 486 (1st Dep't 1991) ................................. 21

*Olmoz v. Town of Fishkill*, 258 A.D.2d 447 (2d Dep't 1999) ................................................ 17

*Paramount Pictures Corp. v. Allianz Risk Transfer AG*, 31 N.Y.3d 64 (2018)....................... 7

*Pellegrino v. Oppenheimer & Co., Inc.*, 49 A.D.3d 94 (1st Dep't 2008) ...............................18

*People v. Berroa*, 99 N.Y.2d 134 (2002) .............................................................................. 28

*People v. Ortiz*, 26 N.Y.3d 430 (2015) ................................................................................. 28

*People v. Townsley*, 20 N.Y.3d 294 (2012).......................................................................... 28

*Pilewski v. Solymosy*, 266 A.D.2d 83 (1st Dep't 1999) ......................................................... 15

*Promanagement Assocs. v. DeMott*, 284 A.D.2d 124 (1st Dep't 2001)................................. 31

*Prudential Sec. v. Wyser-Pratte*, 187 A.D.2d 306 (1st Dep't 1992) ............................... 21, 27

*Ptasznik v. Schultz*, 247 A.D.2d 197 (2d Dep't 1998) ......................................................... 36

*Regina v. Friedman*, 272 A.D.2d 461 (2d Dep't 2000) ......................................................... 13

*Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381
  (S.D.N.Y. 2010) ................................................................................................................23

*S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437 (1987) ................. *passim*

*Skanska USA Bldg. Inc. v. Atl. Yards B2 Owner, LLC*, 146 A.D.3d 1 (1st Dep't
  2016) .................................................................................................................................18

*Slavenburg Corp. v. Opus Apparel*, 53 N.Y.2d 799 (1981)..................................................... 4

*Solow v. W. R. Grace & Co.*, 83 N.Y.2d 303 (1994) .............................................................18

*Specialized Indus. Servs. Corp. v. Carter*, 99 A.D.3d 692 (2d Dep't 2012) .............. 15, 16, 20

*Tekni-Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123 (1996) ................................................18

*Ullmann-Schneider v. Lacher & Lovell-Taylor PC*, 110 A.D.3d 469 (1st Dep't
  2013)..................................................................................................................................17

*Walker v. City of N.Y.*, 46 A.D.3d 278 (1st Dep't 2007)................................................. 13, 35

*Youmans v. Smith*, 153 N.Y. 214 (1897) .............................................................................33

**STATUTES**

CPLR § 1401 ................................................................................................... 14, 15

CPLR § 5511 ........................................................................................................ 38

Judiciary Law § 487 ........................................................................................... 15

**RULES**

22 NYCRR § 100.3 ............................................................................................. 26

22 NYCRR § 1250.1 ............................................................................................ 41

22 NYCRR § 1250.9 ............................................................................................. 5

22 NYCRR § 130-1.1 ..................................................................................... 34, 41

RPC 1.7 .............................................................................................................. 20

RPC 1.9 ......................................................................................................... 31, 40

RPC 3.1 .............................................................................................................. 34

RPC 3.3 .............................................................................................................. 34

RPC 3.4 .............................................................................................................. 34

RPC 3.5 .............................................................................................................. 26

RPC 4.4 .............................................................................................................. 34

RPC 8.4 .............................................................................................................. 34

**TREATISES**

RESTATEMENT (SECOND) OF JUDGMENTS ........................................................... 7

## PRELIMINARY STATEMENT

Andrew Ellner, Lightbox Ventures LLC ("LBV") and Lightbox Capital Management LLC ("LBC") (collectively, "Lightbox") submit this Memorandum of Law in opposition to Brem Moldovsky, LLC's motion to disqualify and other relief.

Moldovsky's motion should be denied in its entirety.

As a preliminary matter, Moldovsky's supporting affirmation is unsworn and must be disregarded as a matter of law.

Moldovsky's request to disqualify Lightbox's counsel, Mr. Miller, should be denied because: (1) his arguments for disqualification are barred by collateral estoppel and issue preclusion arising from his three prior motions to disqualify Lightbox's counsel, Mr. Miller; (2) his attempt to use an un-filed, un-served "draft" third party complaint to fabricate a disqualifying conflict of interest is improper and premature at best; (3) his "draft" third party claims for contribution are frivolous because lawyers are not allowed to seek contribution in connection with their liability under Judiciary Law § 487; (4) even if not frivolous, his "draft" third party complaint does not create a disqualifying conflict of interest between Lightbox and Mr. Miller; (5) as other courts have already determined, Mr. Miller's prior representation of Moldovsky, personally, is not substantially related to Moldovsky's dispute with Lightbox; (6) Mr. Miller is not a "necessary witness" under the witness-advocate rule; and (7) Moldovsky's request that this Court disqualify Mr. Miller based on *alleged* misconduct in *other* courts is highly improper.

Moldovsky's request for a third extension of time to perfect his appeal should be denied because Moldovsky has failed to show good cause.

Moldovsky's request for judicial notice and to supplement the record should be denied, because the matters Moldovsky seeks to inject into the record — wildly contentious, unproven (and disproven) allegations against Mr. Miller, and Moldovsky's unfiled (and frivolous) third party claims — are not adjudicative facts suitable for judicial notice.

Moldovsky's request for consolidation and/or respondent standing should be denied, because under CPLR § 5511 Moldovsky is not a proper respondent to Lightbox's appeal concerning its motion to dismiss the Scarola firm's account stated and contractual charging lien claims. Instead, some of the five pending appeals may be calendared for oral argument together, others need not be, and the case caption below should be modified by designating Moldovsky as co-plaintiff, aligned with the Scarola firm against Lightbox.

Lightbox's cross-motion for sanctions should be granted in light of (1) the utterly vexatious, dilatory and harassing nature of this, Moldovsky's fourth motion to disqualify Lightbox's counsel, including Moldovsky's submission of an unsigned "draft" third party complaint as the primary reason for asking this Court to revisit the disqualification issue; (2) the fact that Moldovsky's eleven "draft" third party claims are all barred as a matter of law and public policy; as well as (3) Moldovsky's

broad pattern of conduct in these and related proceedings, including arguments and tactics that at least one court considered to be bordering on absurdity.

## FACTUAL BACKGROUND

Lightbox incorporates by reference the facts presented in the accompanying affidavits and affirmations of Andrew Ellner ("Ellner Aff."); Jonathan R. Miller ("Miller Aff."); Jill Ellner ("Jill Ellner Aff."); Susan Stein ("Stein Aff."); Kenneth Kornblau ("Kornblau Aff."); Frank Derby ("Derby Aff."); and Joseph Kopel ("Kopel Aff."), and all exhibits thereto.

## PERTINENT PROCEDURAL HISTORY

This matter was commenced in March 2017. Lightbox has been represented by its current counsel, Mr. Miller, since June 2017. This current motion is Moldovsky's <u>fourth</u> such motion. He previously filed essentially identical motions in the U.S. District Court for the Southern District of New York, the N.Y. Supreme Court, and the Pennsylvania Court of Common Pleas. *See* Miller Aff. at ¶¶ 18-24 & Exhs. 16-18, 24-26. All three courts rejected his arguments and denied his prior motions. Moldovsky has appealed the denial of his second such motion. His appeal has not yet been perfected. Instead, Moldovsky now moves for disqualification a fourth time.

priority of each firm's alleged contractual liens,[31] but as a practical reality they are co-plaintiffs aligned against Lightbox — as shown by Moldovsky's unusual request for standing in order to oppose Lightbox's appeal regarding its motion to dismiss Scarola's claims.[32] The case caption should be corrected to reflect the true configuration of the parties.

## VIII.   SANCTIONS ARE APPROPRIATE AND SHOULD BE IMPOSED IN LIGHT OF MOLDOVSKY'S FRIVOLOUS AND VEXATIOUS <u>FOURTH</u> MOTION TO DISQUALIFY LIGHTBOX'S COUNSEL

### A.   Legal Standards

Under 22 NYCRR § 130-1.1, this Court has the discretion to impose sanctions, including reasonable attorney's fees, costs, and additional financial sanctions on any party or attorney who engages in frivolous litigation conduct. Conduct is found to be frivolous if: "(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements

---

[31] Lightbox disputes that either firm retains a valid, enforceable lien. As Judge Cote determined, both firms have been paid the reasonable value, at least, of their legal services. *See* Mold. Aff., Exh. A at 11-12.

[32] Moldovsky's request is especially worrisome because it implicates Moldovsky's continuing ethical obligations owed to his former clients, LBV and Mr. Ellner. Under the Rules of Professional Conduct, Moldovsky may not use protected information gleaned from the former attorney-client relationship in order to help Scarola against Lightbox. RPC 1.9(c)(1).

that are false." 22 NYCRR § 130-1.1(c). Sanctions may be imposed upon motion or on the Court's own initiative. 22 NYCRR § 1250.1(h).

"The goals [of Part 130.1] include preventing the waste of judicial resources, and deterring vexatious litigation and dilatory or malicious litigation tactics." *Levy v. Carol Mgmt. Corp.*, 260 A.D.2d 27, 34 (1st Dep't 1999).

In determining whether litigation conduct is frivolous, New York courts consider, among other issues, "the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, or should have been apparent, or was brought to the attention of counsel or the party." 22 NYCRR § 130-1.1(c).

Courts "look at the broad pattern of the [litigant's] conduct in this regard and not just the question whether a strand of merit, illusory at that, might be parsed from the overwhelming pattern of delay, harassment and obfuscation." *Levy*, 260 A.D.2d at 33.

### B.    Moldovsky's fourth, 632-page motion to disqualify Mr. Miller is frivolous and warrants sanctions.

As discussed at length throughout this Memorandum, Moldovsky has moved a fourth time to disqualify Mr. Miller as Lightbox's counsel in New York, after three prior efforts, premised on essentially the same grounds, were rejected by three different judges. Judge Cote (S.D.N.Y.) and Justice Cannataro (below) both found

that Moldovsky had failed to demonstrate a substantial relationship between Mr. Miller's prior representation of Moldovsky, personally, in a Pennsylvania dispute with Moldovsky's children's school, and Moldovsky's current dispute with Lightbox in New York. Judge Baldi (Pa. Ct. of Common Pleas) stated that Moldovsky's attempt to exploit the Pennsylvania court system to disqualify Mr. Miller in pending New York litigation bordered on the absurd.

Yet, Moldovsky continues, undeterred. Instead of using the past eleven months, two statutory extensions of time and a coronavirus-related suspension of filing deadlines to focus on perfecting his appeal of Justice Cannataro's denial of motion #2, Moldovsky elected to file a fourth, 632-page motion, wasting this Court's precious time and causing Lightbox to incur unnecessary legal fees.

Apparently aware that he is collaterally estopped from moving a fourth time for the same relief and on the same grounds, Moldovsky purports to sidestep this obvious pitfall by submitting as his primary exhibit an unverified draft third party complaint, purporting that he intends to sue Mr. Miller (and four other nonparties: Jill Ellner, Susan Stein, Kenneth Kornblau and Jack Olivo, Esq.) for "contribution."

Moldovsky's sharp tactics are utterly meritless and undertaken primarily for purposes of delay and harassment: (1) an unverified, unsigned, unfiled and unserved "draft" third party complaint is a palpably improper basis for disqualification; (2)  Moldovsky's putative third party claims for contribution, relating to his liability under Judiciary Law § 487, are barred as a matter of law and public policy; and

(3) even if not barred, such claims would not create a disqualifying conflict of interest between Lightbox and Mr. Miller.

Moreover, Moldovsky is a repeat offender. Before moving below to disqualify Mr. Miller (motion #2), Moldovsky filed a summons in Pennsylvania against Lightbox and Mr. Miller, personally — and argued to Justice Cannataro that the Pennsylvania action created a situation that mandated Mr. Miller's disqualification in New York — and also argued to Judge Baldi, in Pennsylvania, that the Pennsylvania court should enjoin Mr. Miller from continuing as Lightbox's counsel in this New York matter, even though Lightbox was represented by independent Pennsylvania counsel.

Even after Judge Baldi excoriated Moldovsky for asserting a disqualification argument that bordered on absurdity, Moldovsky persisted, and amended his Pennsylvania complaint *five times* before abandoning that action mere days after being served with initial discovery demands. As Mr. Miller explains, those discovery demands were laser-focused on further proving the utter absence of evidence supporting Moldovsky's spurious disqualification theories. *See* Miller Aff. at ¶¶ 45-49 & nn. 20-21.

Not content with victimizing Lightbox, only, with his weaponization of these court proceedings, Moldovsky's out-of-control vendetta now includes, in addition to Mr. Miller, several individuals whose alleged role in this dispute is tangential at best,

if not outright fictitious. *See* Jill Ellner Aff. at ¶¶ 8-9; Stein Aff. at ¶¶ 9-10; Kornblau Aff. at ¶¶ 5-10.[33]

In light of the broad pattern of Moldovsky's conduct, Lightbox respectfully submits that the Court should issue sanctions in an amount sufficient to deter Moldovsky's vexatious litigation maneuvers, including Lightbox's reasonable attorney's fees and costs and such additional and further relief that the Court deems appropriate.

## CONCLUSION

For all the foregoing reasons, Moldovsky's motion should be denied and Lightbox's cross-motion should be granted.

Moldovsky's request for a third extension of time should be denied for absence of good cause. His fourth motion to disqualify Lightbox's counsel should be denied on grounds of collateral estoppel / issue preclusion and also on the merits. And, his requests for judicial notice and to supplement the record, and for consolidation, should both be denied as inappropriate based on the circumstances of this matter.

Lightbox's cross-motion for frivolous litigation sanctions should be granted, in light of this being Moldovsky's fourth motion in four courts, seeking essentially

---

[33] There is already a motion for sanctions pending against Moldovsky below. *See* Miller Aff., n.9. That motion involves litigation conduct and other issues which are not properly before this Court — just as the issues set forth in Lightbox's cross-motion, here, are not *sub judice* below.

the same relief on essentially the same grounds; in light of his frivolous reliance on an unfiled "draft" pleading to fabricate ostensibly new grounds for disqualification; in light of the frivolous nature of those "draft" claims for contribution; and in light of his ongoing harassment of nonparties to this litigation.

Respectfully submitted,

Date: June 15, 2020

/s/ Jonathan R. Miller, Esq.
*Counsel for Lightbox*

*Main Office:*
100 Overlook Center, 2nd Floor
Princeton, N.J. 08540
Tel. 609-955-1226 (cell)
Fax 609-964-1026
jonathan.miller@lawyer.com

*New York Office:*
186 Joralemon Street, Suite 1202
Brooklyn, NY 11201

# Exhibit "AA"

Case 2:20-cv-06190-ER   Document 23-4   Filed 04/05/21   Page 334 of 364

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| SCAROLA MALONE & ZUBATOV LLP, | Index No. 651324/2017 |
| Plaintiff, | Motion #25 |
| v. | |
| ANDREW ELLNER, LIGHTBOX CAPITAL MANAGEMENT, LLC, LIGHTBOX VENTURES, LLC, and BREM MOLDOVSKY, LLC | |
| Defendants. | |

**AFFIRMATION OF JONATHAN R. MILLER, ESQ. IN SUPPORT OF
LIGHTBOX'S MOTION FOR SANCTIONS AGAINST BREM MOLDOVSKY, ESQ.**

I, Jonathan R. Miller, Esq., being an attorney duly admitted to practice before the Courts of

the State of New York, hereby affirm and state the following pursuant to CPLR § 2106 and under

penalty of perjury:

1.     I am the attorney of record for Defendants Andrew Ellner, Lightbox Ventures LLC

("LBV") and Lightbox Capital Management LLC ("LBC") (collectively, "Lightbox") in this matter. I

am fully familiar with the matters set forth herein, based on my personal knowledge and on my

familiarity with the proceedings in this matter.

2.     I submit this Affirmation in support of Lightbox's June 19, 2020 motion for

sanctions against Brem Moldovsky, Esq.

3.     This current motion arises from Mr. Moldovsky's June 5, 2020 letter to the Court

(Dkt. #940), falsely and maliciously accusing me of committing malpractice toward my former

New Jersey clients, the Kopel family.

4.     The following documents are submitted in connection herewith. A number of these

were previously filed in this matter.

Case 2:20-cv-06190-ER   Document 23-4   Filed 04/05/21   Page 335 of 364

| Exh. # | | Dkt. # |
|:---:|:---|:---:|
| 1 | Moldovsky letter, 6/5/20 | 940 |
| 2 | Affidavit of Joseph Kopel, 6/8/20 | |
| 3 | Affirmation of Frank Derby, Esq., 6/5/20 | |
| 4 | Complaint, *Kopel v. Wong Fleming,*[1] 8/22/17 | 921 |
| 5 | Answer, *Kopel v. Wong Fleming,* 12/22/17 [2] | 922 |
| 6 | Amended Complaint, *Kopel v. Wong Fleming,* 11/13/18 | 923 |
| 7 | Answer to Amended Complaint, *Kopel v. Wong Fleming,* 12/19/18 | 924 |
| 8 | RPC 3.3(a) demand letter, 3/8/20 | 869 |
| 9 | Lightbox notice of motion (Motion #24), 3/10/20 | 855 |
| 10 | Miller Affirmation, 4/6/20 | 920 |
| 11 | Lightbox letter, 5/15/20 | 935 |
| 12 | Affidavit of Jill Ellner, 6/8/20 | |
| 13 | Affidavit of Susan Simms Stein, 6/8/20 | |
| 14 | Affidavit of Kenneth Kornblau, 6/11/20 | |
| 15 | Moldovsky email, 5/2/18 | |
| 16 | Hearing transcript, 8/20/19 (*abridged*) | |
| 17 | Miller discovery demands (Pa. Ct. of C.P.), 11/4/19 (*abridged*) | |
| 18 | Moldovsky discontinuance (Pa. Ct. of C.P.), 11/7/19 | |
| 19 | Lightbox notice of cross-motion & memorandum of law (1st Dep't), 6/15/20 (*abridged*) | |
| 20 | Moldovsky "draft" pleading, 5/28/20 (*abridged*)[3] | |

5.     Continuing his out-of-control and wildly unhinged attempts to derail these court proceedings by turning them into a circus,[4] Mr. Moldovsky accuses me of two forms of malpractice

---

[1] *Kopel v. Wong Fleming, P.C. et al.*, No. MER-L-1816-17 (N.J. Super. Ct.).

[2] Mis-dated as "2016."

[3] Filed as "Exhibit Q" to Mr. Moldovsky's 5/28/20 motion to disqualify, filed in the First Department.

[4] On March 6, 2020, Lightbox applied for a TRO and injunctive relief, in seeking to prevent Mr. Moldovsky from publishing and disseminating confidential personal and medical information from an unrelated New Jersey matter in which I was deposed as a fact witness. Motion #22.

Before the Court had time to consider Lightbox's application and issue a TRO, Mr. Moldovsky raced to disclose this confidential information anyway, in order to circumvent and undermine the Court's ability to grant effect relief. This resulted in Lightbox's March 10, 2020 motion for sanctions, which has been fully briefed and is pending before this Court. Motion #24.

Mr. Moldovsky has also moved — ***for the fourth time*** — to disqualify me as Lightbox's counsel. He filed that motion in the First Department in connection with his appeal of this Court's July 8, 2019 denial of his second such motion. Lightbox has cross-moved for frivolous litigation sanctions in connection with this fourth motion, which raises the same issues and seeks the same relief as his three prior motions to

Case 2:20-cv-06190-ER   Document 23-4   Filed 04/05/21   Page 336 of 364

toward the Kopels: (a) "purposely interfer[ing] with and harm[ing] the [Kopels'] relationship with

their counsel" (i.e., the Wong Fleming law firm); and (b) complicity with (alleged) fraudulent

billing by Wong Fleming.

6.      Mr. Moldovsky's accusations are utterly and irredeemably false and malicious. As

presented in my April 6, 2020 affirmation (Exh. 10 at ¶ 5), the true facts are as follows:

    a.   Between 2007 and 2012, while employed as an associate with Wong Fleming, I

         represented the Kopels in a lawsuit against the Rumson-Fair Haven Regional High

         School. *See* Kopel Aff. (Exh. 2) at ¶ 2; Kopel Am. Compl. (Exh. 6) at ¶¶ 8-9.

    b.   I left Wong Fleming in November 2013.

    c.   On information and belief, Wong Fleming withdrew from representing the Kopels

         in May 2014, whereupon the Kopels settled that lawsuit through substitute counsel

         in June 2014.  *See* Kopel Compl. (Exh. 4) at ¶¶ 27-28; Wong Fleming Countercl.

         (Exh. 5) at ¶¶ 10-11.

    d.   The Kopels sued Wong Fleming and its name partners, Daniel Fleming and Linda

         Wong, in August 2017. *See* Kopel Compl. & Am. Compl. (Exhs. 4 & 6).

    e.   I was not a defendant in that lawsuit, nor was I a third-party defendant. *Cf.*

         Exhs. 4-7.

    f.   The Kopels never alleged any misconduct whatsoever by me. Instead, they asserted

         claims for fraudulent billing against Wong Fleming and its named partners in

         connection with Mr. Fleming's billing (and not my own). *See* (Exhs. 4 & 6); Kopel

         Aff. (Exh. 2) at ¶¶ 5-9; Derby Aff. (Exh. 3) at ¶¶ 7-8.

---

disqualify me. (His other two motions were filed in the U.S. District Court for the Southern District of New York and the Pennsylvania Court of Common Pleas in Bucks County, Pa.)

g. On information and belief, the Kopels' lawsuit was settled. I do not know the settlement terms, which I believe are confidential.

h. I was not a party to the settlement. I paid no money to the Kopels on account of that settlement, nor to anyone else. Not directly and not indirectly.

7.   Contrary to Mr. Moldovsky's rabid accusations of "malpractice," Mr. Kopel states, under oath: "We have never accused Mr. Miller of misconduct. We have not even suspected that he engaged in misconduct.  To the contrary, we believe Jonathan to be of the highest moral character." Kopel Aff. (Exh. 2) at ¶ 5.

8.   Mr. Kopel also states that Mr. Moldovsky's notions of malpractice are "wildly irresponsible and uninformed at best." *Id.* at ¶ 9.

9.   Similarly, Attorney Frank Derby, who represented the Kopels against Wong Fleming, states,

> At no time did the Kopels allege or even suspect that Mr. Miller was involved in the alleged misconduct. Nor did the extensive billing records produced by Wong Fleming, which I personally reviewed, suggest that Mr. Miller had been involved in any way. To the extent that Mr. Moldovsky contends that Mr. Miller is tainted by his association with Wong Fleming, or that Mr. Miller committed some misconduct vis-a-vis the Kopels, this is categorically untrue. To the contrary, I believe that Mr. Miller acted consistent with the highest and best values of our profession.

Derby Aff. (Exh. 3) at ¶¶ 7-8 (numbering omitted).

10.   On information and belief, Mr. Moldovsky has known all along that he had no factual or legal basis to accuse me of malpractice toward the Kopels — at least since January 2020, when, by his own admission, he discussed my role in *Kopel v. Wong Fleming* with Mr. Scarola. *See* Dkt. #880.

11.     Mr. Moldovsky has certainly been on notice since March 2020, when I demanded that he retract his knowingly false accusations as required under Rule 3.3(a)(1) of the Rules of Professional Conduct. *See* Exh. 8.

12.     If this was not sufficient to rouse Mr. Moldovsky out of his *idée fixe*, his fact-free insistence that I had committed malpractice toward the Kopels (and that this imaginary misconduct was somehow relevant to Mr. Moldovsky's dispute with Lightbox), Mr. Moldovsky certainly should have been alerted to this by Lightbox's May 5, 2020 submission in further support of its prior motion for sanctions against him, wherein Lightbox submitted my affirmation and a complete set of pleadings from *Kopel v. Wong Fleming*. *See* Exh. 10 at ¶¶ 5-6.

13.     Despite all of the foregoing, and despite the fact that there was already a motion for sanctions pending against him, on June 4, 2020 Mr. Moldovsky doubled-down with his baseless, malicious and defamatory accusations against me, for no palpable reason but to harass me and attack my professional reputation.

14.     As Mr. Moldovsky seems to have forgotten, I am not a party in this litigation. I am Lightbox's counsel, and have represented Lightbox since June 2017, longer than the Moldovsky and Scarola Firms combined.[5] Apparently that enrages Mr. Moldovsky. He has falsely accused me of "poaching" his clients from him — even though it was Mr. Moldovsky who dropped LBV and Mr. Ellner, not vice versa.[6] He has moved four times, in four different courts and two different states, for my disqualification. He unearthed my confidential personal and medical information and tried to blackmail me with it, demanding that I withdraw one of Lightbox's motions that he did not like.[7] He sued me in Pennsylvania for multiple counts of malpractice, illegal wiretapping,

---

[5] *Cf.* Dkt. #33 (consent to change attorney).

[6] *See* Exh. 15 (Mold. email); Dkt. #190 (Mold. letter motion to withdraw).

[7] *See* Dkt. #861 (Mold. email); Dkt. #845 (Miller aff.) at ¶¶ 10-14.

Case 2:20-cv-06190-ER   Document 23-4   Filed 04/05/21   Page 339 of 364

and consumer fraud in violation of New York, New Jersey and Pennsylvania law — only to hear the judge tell him that his request that a Pennsylvania judge disqualify me in this New York matter "borders on absurd" [8] — and then abandoned that Pennsylvania lawsuit after nine long months, just three days after I served him with discovery demands that, I believe, would have confirmed that he had no evidence at all to support his wildly unhinged accusations.[9]

15.     Mr. Moldovsky may be passionate about his beliefs, but passion is no substitute for facts and evidence. In addition to pursuing a two-state personal vendetta against me since 2018, Mr. Moldovsky has announced his intention to sue me again, in this court. In fact, his unsigned, unverified, un-filed and un-served "draft" third party complaint is the centerpiece of his fourth motion to disqualify me, filed in the First Department.[10] Mr. Moldovsky's sharp tactics in the First Department precipitated another motion for sanctions against him.[11]

16.     In addition to announcing his intention to sue me again in order to disqualify me as Lightbox's counsel, Mr. Moldovsky also announced that he is going to sue Mr. Ellner's wife and three other individuals. Apparently, the general legal theory behind his eleven "draft" third party claims is that each of these individuals owed Lightbox a duty to protect it from Mr. Moldovsky's alleged predatory abuse of their attorney-client relationship and other misconduct.[12] *See* Exh. 20 at ¶ 136. Three of these individuals have filed affidavits objecting to Mr. Moldovsky's outrageously frivolous and harassing conduct and have called for Mr. Moldovsky to be appropriately disciplined.

---

[8] *See* Exh. 16 (hearing transcript) at T18:22-19:6.

[9] *See* Exh. 17 (discovery demands) & Exh. 18 (discontinuance).

[10] *See* Exh. 20 (Mold. draft pleading).

[11] *See* Exh. 19 (abridged opposition brief).

[12] Mr. Moldovsky's third party claims are frivolous, for reasons set forth in Lightbox's memorandum of law filed in the First Department. *See* Exh. 19. To be clear, this present motion does *not* arise from the frivolousness of Mr. Moldovsky's filings in the First Department (which are *sub judice* there) but rather from his frivolous, malicious, harassing and utterly false filings in *this* Court, purporting that I committed malpractice against the Kopels in New Jersey.

*See* Jill Ellner Aff. (Exh. 12) at ¶¶ 8-9; Stein Aff. (Exh. 13) at ¶¶ 9-10; Kornblau Aff. (Exh. 14) at ¶¶ 6-10.

17.     Lightbox respectfully submits that unless Mr. Moldovsky is sanctioned with meaningful monetary and other sanctions his unhinged misconduct will continue to spin wildly out of control and make a mockery of these proceedings.

### Basis for Relief

#### A.    Legal Standards

18.     Under 22 NYCRR § 130-1.1, this Court has the discretion to impose sanctions, including reasonable attorney's fees, costs, and additional financial sanctions on any party or attorney who engages in frivolous litigation conduct. Conduct is found to be frivolous if: "(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false." 22 NYCRR § 130-1.1(c).

19.     "The goals [of Part 130.1] include preventing the waste of judicial resources, and deterring vexatious litigation and dilatory or malicious litigation tactics." *Levy v. Carol Mgmt. Corp.*, 260 A.D.2d 27, 34 (1st Dep't 1999).

20.     In determining whether litigation conduct is frivolous, New York courts consider, among other issues, "the circumstances under which the conduct took place, including the time available for investigating the legal or factual basis of the conduct, and whether or not the conduct was continued when its lack of legal or factual basis was apparent, or should have been apparent, or was brought to the attention of counsel or the party." 22 NYCRR § 130-1.1(c). Courts "look at the broad pattern of the [litigant's] conduct in this regard and not just the question whether a strand

Case 2:20-cv-06190-ER    Document 23-4    Filed 04/05/21    Page 341 of 364

of merit, illusory at that, might be parsed from the overwhelming pattern of delay, harassment and obfuscation." *Levy*, 260 A.D.2d at 33.

21.      "Courts of this state have not hesitated to issue sanctions, including the dismissal of actions, where litigants demonstrate a pattern of behavior clearly disruptive to the judicial process." *Barr v. Bentley Motors Ltd.*, No. 601718/16, 2017 N.Y. Misc. LEXIS 5275, at *8 (Sup. Ct., Nassau County Dec. 5, 2017).

22.      The egregiousness of a litigant's disruptive behavior — and the need for appropriate sanctions — are especially pronounced where, as here, the litigant is a registered attorney. *See id.* at *8; *see also Corsini v. U-Haul Int'l*, 212 A.D.2d 288, 291 (1st Dep't 1995) ("Allowances are normally made for *pro se* litigants. Plaintiff, however, was an officer of the court, with a duty to comport himself accordingly. He is subject to the New York Code of Professional Responsibility.") (affirming trial court's dismissal of *pro se* attorney's complaint due to attorney's "campaign of harassment" of opposing counsel).

23.      New York courts routinely look to New York's Rules of Professional Responsibility for guidance. Although, in litigation, the Rules are not controlling statutory or decisional law, their importance "is not to be diminished or denigrated by indifference." *S & S Hotel Ventures Ltd. P'ship v. 777 S. H. Corp.*, 69 N.Y.2d 437, 443 (1987). In appropriate circumstances, courts "should not hesitate to enforce [the Rules] with vigor." *Id.*

24.      A judge who receives information showing a substantial likelihood that an attorney has substantially violated the Rules of Professional Conduct must take "appropriate action." 22 NYCRR § 100.3(D)(2) ("A judge who receives information indicating a substantial likelihood that a lawyer has committed a substantial violation of the Rules of Professional Conduct (22 NYCRR Part 1200) shall take appropriate action.").

25.     Depending on the nature and severity of the attorney's misconduct, "the judge has the discretion to take less severe, appropriate measures, including but not limited to, counseling and/or warning a lawyer, reporting a lawyer to his/her employer, and/or sanctioning a lawyer." *Muhametaj v. Town of Orangetown*, 2019 NY Slip Op 29358, ¶ 12, 114 N.Y.S.3d 201, 215 (Sup. Ct., Kings County); *see also* N.Y. Jud. Adv. Op. 10-85 (same);[13] *Massey v. Anand*, 2012 NY Slip Op 31634(U), 2012 N.Y. Misc. LEXIS 2945, **33-39 (Sup. Ct., Suffolk County May 10, 2012) (same; setting hearing to determine whether to issue sanctions and/or to refer attorney for formal disciplinary proceedings).

26.     Rule 3.1 of the Rules of Professional Conduct ("Non-meritorious claims and contentions") forbids attorneys from engaging in conduct that "serves merely to harass or maliciously injure another." RPC 3.1(b)(2).

27.     Rule 3.3 ("Conduct before a tribunal") similarly directs that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer," RPC 3.3(a)(1), or "engage in conduct intended to disrupt the tribunal." RPC 3.3(f)(4).

---

[13] As New York's Advisory Committee on Judicial Ethics explains:

> [W]hen a judge receives information indicating a substantial likelihood that a lawyer has committed a substantial violation of the Rules [of Professional Conduct], but the conduct does not rise to such an egregious level that it seriously calls into question the attorney's fitness as a lawyer, the judge has the discretion to take less severe, appropriate measures. Such measures may include, but are not limited to, counseling and/or warning a lawyer, reporting a lawyer to his/her employer, and sanctioning a lawyer.
>
> What determines "appropriate action" in such inquiries depends upon all the surrounding circumstances known to the judge, including an assessment of whether the lawyer, if confronted by the judge, shows genuine remorse, contrition, or ignorance of a rule; whether the lawyer has any history of unprofessional or other conduct in violation of the Rules; or any other relevant conduct or factor known to the judge.

N.Y. Jud. Adv. Op. 10-85 (citations omitted).

28.     Rule 3.4 ("Fairness to opposing party and counsel")  prohibits lawyers appearing

before a tribunal from "stat[ing] or allud[ing] to any matter that the lawyer does not reasonably

believe is relevant." RPC 3.4(d)(1).

29.     Rule 8.4 ("Misconduct") prohibits lawyers from engaging in conduct that is

"prejudicial to the administration of justice." RPC 8.4(d).

**B.     Sanctions should be imposed.**

30.     Respectfully, Mr. Moldovsky's continuing misconduct is outrageous and should be

deterred and stopped.

31.     Instead of litigating the merits of his claims, Mr. Moldovsky has been on a personal

vendetta against Mr. Ellner and me for two years, and now intends to expand the "zone of

destruction" to include Mr. Ellner's wife and three other individuals who had the misfortune of

crossing Mr. Moldovsky's path.

32.     For reasons that perhaps could best be explained by a psychologist, Mr. Moldovsky

seems fixated on the idea that I "poached" Lightbox from him, when in fact he was the one who

terminated that representation.

33.     In addition to four motions to disqualify me as Lightbox's counsel, Mr. Moldovsky

has tried to use my confidential personal and medical information in order to blackmail me into

withdrawing one of Lightbox's motions; undermined the Court's ability to issue a TRO by racing to

disseminate that information before the Court could consider Lightbox's emergent application;

sued Lightbox and me, personally, in Pennsylvania in order to trump up purported grounds for my

disqualification in New York; submitted a frivolous "draft" third party complaint to the First

Department as the primary exhibit for his fourth motion to disqualify; and persists in falsely

accusing me of malpractice and complicity in fraudulent billing against my former New Jersey

clients, roughly a decade ago, contrary to the actual pleadings filed in New Jersey — and contrary to the sworn affidavits of the persons actually involved.

34.     Contrary to Mr. Moldovsky's contention that his First Amendment rights trump this Court's authority to impose frivolous litigation sanctions, *see* Exh. 1 at 2, that argument is utterly without merit. "Just as false statements are not immunized by the First Amendment right to freedom of speech, baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 743 (1983) (citations omitted); *see also Gordon v. Marrone*, 202 A.D.2d 104 (2d Dep't 1994):

> we reject the petitioner's contention that an award of sanctions under the circumstances here impermissibly infringes upon his First Amendment right of access to the courts. Enforcement of the sanctions rule is essential to deter conduct that wastes judicial resources and inhibits the proper administration of the court system. Any effect it may have on substantive rights, as alleged by the petitioner, is merely incidental and not prohibited.

*Id.* at 111 (citing *Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 552 (1991)); *Providian Nat'l Bank v. Forrester*, 277 A.D.2d 582, 584 (3d Dep't 2000); *Pettus v. Bd. of Dirs., Owners 800 Grand Concourse*, 63 Misc. 3d 133(A) (App. Term, 1st Dep't March 22, 2019). "A vexatious litigant does not have a First Amendment right to abuse official processes with baseless filings in order to harass someone to the point of distraction or capitulation." *Riccard v. Prudential Ins. Co. of Am.*, 307 F.3d 1277, 1298 (11th Cir. 2002).[14]

35.     Notwithstanding Mr. Moldovsky's evident proclivity to discern hidden meaning and esoteric connections where none exist, my relationship with the Kopels in New Jersey, roughly a decade ago, has no bona fide connection with Mr. Moldovsky's dispute with Lightbox here in

---

[14] Mr. Moldovsky's invocation of the litigation privilege is even more far-fetched. Where applicable, the litigation privilege immunizes a litigant from being sued for defamation, which of course is different from frivolous litigation sanctions. *Pomerance v. McTiernan*, 51 A.D.3d 526 (1st Dep't 2008). No one has sued Mr. Moldovsky for defamation.

New York. Instead, Mr. Moldovsky's false accusations of malpractice are malicious acts intended for the primary purpose of harassing me and hurting my professional reputation, disrupting the attorney-client relationship between Lightbox and me, and derailing these legal proceedings.

36.     In my March 13, 2020 affirmation, filed in support of Lightbox's prior motion for sanctions, I stated:

> Absent the imposition of sanctions and/or the Court's referral of Mr. Moldovsky to the attorney disciplinary process, his misconduct is likely to continue and worsen. This is especially true in view of Lightbox's documented allegations that Mr. Moldovsky is a repeat offender.

*See* Dkt. #885 at ¶ 59. This was true in March, and equally true today.

37.     For all the foregoing reasons, Lightbox respectfully requests that the Court impose monetary sanctions on Mr. Moldovsky in an amount sufficient to deter future misconduct and also that the Court award Lightbox its fees and costs incurred in connection herewith.

38.     Lightbox further requests that the Court strike all papers filed by Mr. Moldovsky in which he accuses me of malpractice or other forms of misconduct toward the Kopels in New Jersey, including NYSCEF Dkt. #912 and #940.

39.     Alternatively, Lightbox respectfully requests that the Court refer Mr. Moldovsky for attorney discipline before the First Judicial Department Attorney Grievance Committee.

Respectfully submitted,

Date: June 19, 2020                    /s/ Jonathan R. Miller, Esq.
                                       *Counsel for Andrew Ellner, Lightbox Capital*
                                       *Management, LLC and Lightbox Ventures, LLC*

                                       *Main Office:*
                                       100 Overlook Center, 2nd Floor
                                       Princeton, N.J. 08540
                                       Tel. 609-955-1226
                                       Fax. 609-964-1026
                                       jonathan.miller@lawyer.com

*New York Office:*
186 Joralemon Street, Suite 1202
Brooklyn, NY 11201

# Exhibit "BB"

FILED: APPELLATE DIVISION - 1ST DEPT 02/05/2021 03:55 PM

NYSCEF DOC. NO. 47

2020-02530

RECEIVED NYSCEF: 02/05/2021

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION — FIRST DEPARTMENT

|  |  |
|---|---|
| SCAROLA MALONE & ZUBATOV LLP, <br>      *Plaintiff-Respondent,* <br>    v. <br> ANDREW ELLNER, LIGHTBOX CAPITAL <br> MANAGEMENT, LLC, and LIGHTBOX VENTURES, <br> LLC, <br>      *Defendants-Appellants,* <br>   and <br> BREM MOLDOVSKY, LLC, <br>      *Defendant.* | **Case No. 2019-03384** <br><br> N.Y. County Index No. <br> 651324/2017 |

|  |  |
|---|---|
| SCAROLA MALONE & ZUBATOV LLP, <br>      *Plaintiff,* <br>    v. <br> ANDREW ELLNER, LIGHTBOX CAPITAL <br> MANAGEMENT, LLC, and LIGHTBOX VENTURES, <br> LLC, <br>      *Defendants-Appellants-Respondents,* <br>   and <br> BREM MOLDOVSKY, LLC, <br>      *Defendant-Respondent-Appellant.* | **Case No. 2020-02530** <br> **Motion #234** <br><br> N.Y. County Index No. <br> 651324/2017 |

**AFFIRMATION OF COUNSEL IN OPPOSITION TO
BREM MOLDOVSKY, LLC'S MOTION FOR CONSOLIDATION
AND OTHER RELIEF**

     I, Jonathan R. Miller, Esq., being an attorney duly admitted to practice before

the Courts of the State of New York, hereby affirm and state the following pursuant

to CPLR § 2106 and under penalty of perjury:

     1.    I am the attorney of record for Andrew Ellner, Lightbox Ventures LLC

("LBV") and Lightbox Capital Management LLC ("LBC") (collectively, "Lightbox") in

this matter. I am fully familiar with the matters set forth herein, based on my

personal knowledge and on my familiarity with the proceedings in this matter.

2.        I make this Affirmation on behalf of Lightbox and in opposition to

Defendant Brem Moldovsky, LLC's ("Moldovsky") motion for consolidation and

other relief. (Motion #234.)[1]

3.        The following exhibits are submitted in connection herewith. Where

relevant, I have provided the NYSCEF docket number below in the rightmost

column.

| Exh. # | | Dkt. # |
|---|---|---|
| 1 | Mold. notice of motion, 5/28/20 (M-1885) | |
| 2 | Order & notice of entry, 8/27/20 (M-1885) | |
| 3 | Mold. notice of appeal, 11/19/20 (No. 2021-00300) | 1040 |
| 4 | Mold. notice of appeal, 1/8/21 (No. 2021-00301) | 1064 |
| 5 | Lightbox notice of motion, 1/15/21 | 1073 |

[1] Parroting Scarola, Moldovsky has taken the position that this opposition is time-barred. *See* Exh. 14. Moldovsky's position is utterly without merit. His motion was served on only seven days' notice and initially made returnable on February 1st. *See* Notice of Motion; *cf.* 22 NYCRR § 1250.4(a)(4) (requiring motions to be served at least eight days prior to the return date, as provided under CPLR § 2214(b)).

Under CPLR § 2214(b), Lightbox's opposition was to be served two days before the return date. Lightbox subsequently moved for an adjournment, which was granted, and the return date was pushed back to Monday, February 8th. Accordingly, Lightbox's opposition must be filed by Friday, February 5th at 4:00 p.m. *See* 22 NYCRR § 1250.4(a)(5) and may be served no later than Monday, February 8th. *See* CPLR § 2214(b); GEN. CONSTR. LAW § 25-a; *see also Mitchell v. N.Y. Univ.* (*"NYU"*), 129 A.D.3d 542, 544 (1st Dep't 2015), *lv. denied*, 27 N.Y.3d 949 (2016).

Alternatively, if the initial February 1st return date was defective and clerically reset to February 8th due to Moldovsky's noncompliance with the minimal eight-day notice requirement, Moldovsky's motion was still not served with sixteen days advance notice (but only *fifteen*), and Lightbox's opposition is still timely served and filed in accordance with CPLR § 2214(b) and 22 NYCRR § 1250.4(a)(5).

| 6 | Excerpt from Mold. Brief, 1/15/21 (No. 2020-02530) | |
| 7 | Excerpt from Lightbox Brief, 1/25/21 (No. 2020-02530) | |
| 8 | Affirmation of counsel, 8/3/20 (*abridged*) (M-2554) | |
| 9 | Order & notice of entry, 8/27/20 (M-2554) | |
| 10 | Affirmation of counsel, 6/15/20 (*abridged*) (M-1885) | |
| 11 | Excerpt from Scarola Brief, 1/5/21 (No. 2019-03384) | |
| 12 | Mold. notice of motion, 2/6/20 | 756 |
| 13 | Affirmation of counsel, 5/15/20 | 933 |
| 14 | Emails, 2/4/21 | |

**<u>Moldovsky's request for consolidation was previously denied by this Court, reconsideration is procedurally barred, and consolidation is technically impossible and utterly moot.</u>**

4.    Moldovsky previously moved for consolidation on May 28, 2020. Exh. 1. That request (M-1885) was denied on August 27, 2020. Exh. 2. Moldovsky has set forth no factual or legal basis for reconsideration, and in any event the time for reargument has long expired. CPLR § 2221(d), (e); 22 NYCRR § 1250.16(d)(1).

5.    Moreover, consolidation is a moot issue. Cases No. 2019-03384 and No. 2020-02530 have both been fully briefed, with different interlocutory records and different appendices.

6.    "Consolidation" means combining of two or more causes arising out of the same action or proceeding in one record or appendix and one brief. 22 NYCRR § 1250.1(a)(4). It is not possible to consolidate appeals which have already been separately briefed, with separate interlocutory records and/or appendices.

7.      Likewise, it is not possible to consolidate Lightbox's fully briefed appeals with Moldovsky's two most recent appeals, *see* Exhs. 3-4, because they have not been perfected.[2]

8.      The Court has already directed that No. 2019-03384 and No. 2020-02530 should be heard on the same date, *see* Exh. 2, but consolidation has been utterly moot since July 2020, when No. 2019-03384 was perfected.

9.      On the other hand, if Moldovsky truly wished to consolidate his two latest appeals he could do so by following the procedure provided in the court rules. No motion is required. *See* 22 NYCRR § 1250.9(f)(3). Instead, however, and based on Moldovsky's litigation conduct over the past three-plus years, it appears to me that this is unfortunately yet another motion from a vexatious *pro se* attorney.[3]

10.     Instead of bona fide consolidation, Moldovsky's true purpose appears to be dilatory, i.e. to postpone the hearing in Case No. 2020-02530 indefinitely, until

---

[2] Moldovsky recently filed these new appeals as Case Nos. 2021-00300 and 2021-00301.

[3] Moldovsky's prior antics have included four unsuccessful motions to disqualify me as Lightbox's counsel; suing Lightbox and me in Pennsylvania in order to manufacture an ostensibly disqualifying conflict of interest and then asking the Pennsylvania judge to disqualify me in this New York matter; preparing a never-filed "draft" third party complaint against me in this New York matter to again manufacture an ostensibly disqualifying conflict of interest and then asking this Appellate Court to disqualify me; amending his Pennsylvania complaint five times before abandoning his claims upon being served with initial discovery demands. (This information was previously presented to this Court as part of Lightbox's opposition to Moldovsky's fourth motion to disqualify me. *See* Exh. 10 at ¶¶ 16-27. )

As set forth in this Affirmation, Moldovsky's current motion seems to be born of the same vexatiousness, including moving to consolidate fully briefed appeals, even though its substantially identical prior request for consolidation was already denied, moving to strike a supplemental record which was expressly authorized by this Court, and moving to strike a brief in an appeal in which Moldovsky is neither appellant nor respondent.

such time that both of his newly filed appeals are fully briefed. This is an improper use of appellate motion practice and lacks a plausible legal foundation.

11.     Among other things, this current appeal, relating to dismissal of Moldovsky's cross-claims under CPLR § 3211(a),[4] rests on different legal grounds and standards of appellate review than No. 2021-00301, relating to the denial of Moldovsky's motion for partial summary judgment under CPLR § 3212. Also, Lightbox has moved for partial summary judgment against Moldovsky, *see* Exh. 5. If granted, Moldovsky will almost certainly appeal that outcome as well, in which case it would be appropriate for this Court to schedule both appeals to be heard together, i.e. Moldovsky's appeal as to the denial of his motion for partial summary judgment together with his likely appeal as to Lightbox's own motion for partial summary judgment. Moreover, Moldovsky has filed five interlocutory appeals so far, and it would be inappropriate to allow his evident proclivity for filing appeals to delay the hearing as to the two fully briefed appeals.

12.     Moreover, Moldovsky's fourth appeal, No. 2021-00301, is entirely superfluous and redundant. That appeal arises from the motion court's granting reargument and dismissing Moldovsky's (and Scarola's) contractual lien claims under CPLR § 3211(a). As such, the issues raised in that appeal are entirely identical to and subsumed within those raised in the two fully briefed appeals. In fact, both

---

[4] This appeal involves the CPLR § 3211(a) dismissal of Moldovsky's contractual indemnification claim as well as the non-dismissal of his account stated and contractual lien claims.

sides have recognized this. Moldovsky's reply/opposition brief in No. 2020-02530

expressly argues that reargument was erroneously granted:

> The court below initially correctly refused to dismiss the
> Moldovsky firm's contractual lien claims. Its dismissal
> upon reconsideration was error. . . .
>
> Upon reconsideration, the trial court premised its dismissal
> of contractual lien claims on the Judge Cote's *quantum
> meruit* determination of the statutory charging lien,
> stating:
>
>> Once the charging lien claims were dismissed
>> by the federal court, and this Court dismissed
>> the breach of contract claims in their entirety,
>> no "contractual lien" claims survived.
>
> (NY Sup. ECF # 1056) This statement is confused. . . . Judge
> Cannataro's [reargument] decision is in error.

*See* Exh. 6 at 25-26 (footnote omitted). And, Lightbox similarly recognized that the

legal issues (and factual record, *see* CPLR § 2221(d)(2)) in both appeals, No. 2020-

02630 and No. 2021-00301, are essentially identical:

> I.   THE COURT BELOW INITIALLY ERRED IN
>      DECLINING TO DISMISS MOLDOVSKY'S
>      CONTRACTUAL CHARGING LIEN, AND PROPERLY
>      CORRECTED THAT ERROR ON MOTION FOR
>      REARGUMENT
>
> As set out in Lightbox's opening brief, the motion court
> erred when it initially declined to dismiss Moldovsky's
> contractual charging lien claim — an error that the court
> later corrected on motion to reargue during the pendency
> of this appeal, dismissing that claim.[4] *See* Dkt. #1063 (also
> filed as this Court's Dkt. #34).
>
> [4] This aspect of the present appeal is not moot, however,
> because Moldovsky promptly filed a notice of appeal below
> and argues in this current appeal that the initial decision

was correct and that the subsequent dismissal of his
contractual charging lien claim was erroneous. *See Hearst
Corp. v. Clyne*, 50 N.Y.2d 707, 714 (1980); *cf.* Moldovsky Reply
Brief ("MRBr.") at 25-28.

*See* Exh. 7 at 1 (bolding omitted).

13.    Regardless of how Moldovsky wishes to proceed with his two latest,

not-yet-perfected appeals, his request to consolidate No. 2019-03384 and No. 2020-

02530 is precluded by prior court order, *see* Exh. 2, time-barred, *see* 22 NYCRR

§ 1250.16(d)(1),  technically impossible, *see* 22 NYCRR § 1250.1(a)(4), and utterly moot.

It should be denied.

## Moldovsky's request to strike Lightbox's supplemental record in Case No. 2020-02530 is precluded by prior order of this Court.

14.    On August 4, 2020 Lightbox filed a motion (M-2554) in this Case. In

part, Lightbox sought leave to file a supplemental record including a number of

documents that were part of the interlocutory record on appeal but omitted from

Moldovsky's filed record. *See* Exh. 8 at ¶¶ 26-34 (listing specific documents).

15.    On August 27, 2020, the Court expressly granted Lightbox leave "to file

a supplemental record containing the documents specified in the moving papers."

*See* Exh. 9.

16.    Now, Moldovsky argues that the Court's August 27, 2020 order was in

error, because the Court "misapprehended" the nature of those documents. Mold.

Aff. at ¶ 46.

17.     Moldovsky's time for rearguing Lightbox's August 2020 motion has long expired. 22 NYCRR § 1250.16(d)(1).

18.     Moreover, Moldovsky cannot rationally dispute that the documents in Lightbox's supplemental record are *precisely* those listed in its motion papers, *cf.* Exh. 8 at ¶ 30, and that all of them were submitted in connection with Lightbox's motion to dismiss Moldovsky's crossclaims, i.e. the motion that is at the center of this appeal (No. 2020-02530). *Cf.* CPLR § 2214(c).

19.     Moldovsky's request to strike portions of Lightbox's court-authorized supplemental record in No. 2020-02530 is precluded by prior court order, *see* Exhs. 8-9, time-barred, *see* 22 NYCRR § 1250.16(d)(1), and utterly without merit, *cf.* CPLR § 2214(c). It should be denied.

### Moldovsky's request to strike portions of Lightbox's reply brief in Case No. 2019-03384 is barred by lack of standing, lack of prejudice and lack of merit.

20.     Although the point seems to elude Moldovsky, he is not a respondent in Case No. 2019-03384. That appeal arises from and concerns the motion court's July 2019 decision, declining to dismiss account stated and contractual lien claims asserted against Lightbox by Plaintiff Scarola Schaffzin Zubatov PLLC f/k/a Scarola Malone Zubatov LLP ("Scarola").[5] Lightbox is the appellant, and Scarola is the

---

[5] Scarola's contractual lien claims were subsequently dismissed on reargument below, but this branch of the appeal is not moot, for reasons discussed in Lightbox's reply brief (and not relevant here).

respondent. Moldovsky is not a participant — not directly and not by way of consolidation.[6] As discussed, Moldovsky's motion for consolidation was denied last August. *See supra*, ¶¶ 4-5 & Exh. 2. In fact, Moldovsky's motion expressly sought standing as a designated respondent to Lightbox's appeal concerning Scarola's claims, but that aspect of the motion was denied, too. *See* Exhs. 1-2.

21.    Because Moldovsky is not a respondent in Case No. 2019-03384 he does not have standing to move to strike Lightbox's reply brief filed in that proceeding.

22.    Likewise, Moldovsky cannot rationally argue that he has been unduly prejudiced by Lightbox's reply brief in an appeal in which he is not involved.

23.    Instead, Moldovsky's focus appears to be that he simply *disagrees* with the contents of Lightbox's reply brief. Moldovsky objects to any reference to the factual (and frankly well supported) allegations of retroactive invoicing by his law firm, *see* Mold. Aff. at ¶ 37(a); any suggestion that Lightbox had "two bad experiences" with the Scarola and Moldovsky firms, *id.* at ¶ 37(b), (d); any reference to Moldovsky's four motions to disqualify me, his abandoned appeal concerning the disqualification issue, and his similarly abandoned Pennsylvania lawsuit against

---

[6] Moldovsky initially filed a concurrent appeal under the same case number, concerning Justice Cannataro's denial of one of his four failed motions to disqualify me.  After this Appellate Court denied his fourth such motion, Moldovsky elected not to perfect that appeal, which is deemed dismissed. 22 NYCRR § 1250.10(a).

In hindsight, it is clear to me that, just like Moldovsky filed the Pennsylvania action primarily for purposes of asking a Pennsylvania judge to disqualify me in this New York matter, Moldovsky filed his now-abandoned appeal in this Court primarily for purposes of gaining access to a fourth tribunal in which to move to disqualify me. *See supra*, n.3.

Lightbox, *id.* at ¶ 37(c); and the lawsuit filed against him in federal court for wrongful use of civil proceedings and abuse of process, *id.* at ¶ 37(d).

24.     Moldovsky cannot rationally argue that this information is scandalous or prejudicial within the meaning of CPLR § 3024(b), nor does he even try. Saying that Lightbox has had "bad experiences" with the Scarola and Moldovsky law firms is an extremely mild, anodyne description of the current proceedings. *Cf.* Reply Br. (2019-00384) at 11.

25.     Likewise, reference to Moldovsky's "massively retroactive, allegedly fraudulent invoicing" fairly describes Lightbox's sworn factual allegations concerning Moldovsky. *See* Dkt. #741 (Verified Crossclaims) at ¶¶ 87-111.

26.     Moldovsky argues that this information is not "relevant" to Case No. 2019-03384, but that is not a basis to strike Lightbox's reply brief. *See In re Emberger*, 24 A.D.2d 864 (2d Dep't 1965) ("irrelevancy" is not a basis for striking a pleading under the CPLR); *see also* Siegel, N.Y. Prac. § 230 at 380 (4th ed.)

27.     Moreover, Lightbox's reply brief explains that this information is presented in order to respond to Scarola's improper attempt to leverage Moldovsky's dispute with Lightbox to falsely suggest that Lightbox has a pattern of stiffing its attorneys and to bolster Scarola's position by making common cause with Moldovsky against Lightbox. *See* Lightbox's Reply Br. at 11-13.

28.     Among other things, Scarola argues:

> [LBV and Ellner] continued to fall further behind and owed SMZ in excess of $300,000 at the time SMZ was substituted out of the case. Ironically, they then apparently did essentially the same thing to defendant Brem Moldovsky, LLC, the attorneys defendants brought in to substitute for SMZ and who contend, in their cross-claims in this case, that they are themselves owed over $300,000 in fees by these defendants.

*See* Exh. 11 at 3 (*citing to nothing*).

29.    Scarola further claims:

> At the conclusion of the Federal Case, Judge Cote awarded a total of $222,226.20 to LightBox as plaintiff. [A-221] Defendants, by that point, had left hundreds of thousands in fees unpaid to both SMZ and also to the Moldovsky Firm (per its allegations in this case), with neither firm still representing them in the Federal Case as a consequence of their non-payment of fees.

*See id.* at 12.

30.    But for Scarola's improper invocation of Moldovsky and his claims against Lightbox as somehow supporting the viability of Scarola's own claims, i.e. by falsely suggesting that Lightbox has a pattern of stiffing attorneys, I would not have included the objected-to material in Lightbox's reply brief. But, precisely because Scarola opened the door to these issues by implying that both law firms have been mistreated by Lightbox in "essentially the same" way, it became necessary and appropriate to respond.

31.     Because Scarola and Moldovsky have made common cause with each other against Lightbox on almost all issues,[7] it is also reasonable and appropriate to highlight Moldovsky's vexatious litigation conduct as a *pro se* attorney, including Moldovsky's four failed motions to disqualify me from continuing as Lightbox's counsel, his lawsuit against Lightbox and me in Pennsylvania, which he abandoned only after an original and five amended complaints, immediately upon being service with discovery demands, and the inevitable result of his Pennsylvania gambit, Ellner's current lawsuit against Moldovsky in the Eastern District of Pennsylvania.

32.     Accordingly, Moldovsky's objections to this material should be overruled. Alternatively, the Court should strike all parts of Scarola's brief that refer to Moldovsky's allegations against Lightbox, not just the objected-to material in Lightbox's reply brief.

33.     Moldovsky misuses his motion, ostensibly to strike portions of Lightbox's reply brief in an appeal in which he is not even participating, in order to advance a lengthy argument that Lightbox's verified Judiciary Law § 487 cross-claims against him are without merit and/or are foreclosed by the federal court's charging lien decision. *See* Mold. Aff. at ¶¶ 8-14, 39-44. Lightbox disagrees, both on substance and on procedural propriety. The merits of Lightbox's Judiciary

---

[7] To my knowledge, Scarola and Moldovsky are on opposite sides on only one issue, the relative priority of their contractual lien claims against LBV. This is now a non-issue, because both law firms' contractual lien claims have been dismissed. Otherwise, Scarola and Moldovsky are fully aligned and cooperating with one another.

Law § 487 are before this Court — not in No. 2020-02530 and not in No. 2019-03384. Those issues are *sub judice* below, as part of Moldovsky's fully briefed motion to dismiss Lightbox's cross-claims which is pending before Justice Cannataro. *See* Exh. 12. I addressed Moldovsky's contentions below several months ago, *see* Exh. 13 at ¶¶ 11-17, and out of respect for the Court's valuable time will not reiterate them in this context but merely incorporate that legal argument by reference.

34.     Moldovsky's request to strike portions of Lightbox's reply brief in Case No. 2019-03384, a matter in which he is not even participating, is barred by lack of standing, lack of prejudice and lack of merit. It should be denied.

## **Conclusion**

35.     On behalf of Lightbox I respectfully submit that Moldovsky's motion should be denied.

36.     Moldovsky's request for consolidation was previously denied by this court, and his new request is procedurally time-barred (as a motion to reargue), technically impossible and moot. There is no procedural path to "consolidate" two fully briefed appeals arising from two different court orders with two newly filed, unperfected appeals arising from another two different orders. If Moldovsky wishes to consolidate his two latest appeals, he should simply follow the court rules instead of wasting everyone's time with motion practice.

37.     Likewise, Moldovsky's request to strike Lightbox's supplemental record in Case No. 2020-02530 is precluded by prior order of this Court, which expressly authorized Lightbox's filing. Notwithstanding Moldovsky's insistence that the Court "misapprehended" the issues raised in that prior motion, his 30-day deadline for moving for reargument expired several months ago.

38.     And, Moldovsky's request to strike portions of Lightbox's reply brief in Case No. 2019-00384  fails for lack of standing. In addition, Moldovsky cannot rationally argue that he is unduly prejudiced by material that is well-supported, simply because he disagrees with Lightbox. And, Lightbox's inclusion of the objected-to material was prompted by Scarola's improper invocation of "me-too," i.e. that Moldovsky and his cross-claims against Lightbox supposedly lend credence to Scarola's own claims. If Scarola is permitted to invoke Moldovsky to support its position in Case No. 2019-00384, then Lightbox should likewise be permitted to point to Moldovsky as well. Either Moldovsky's request to strike should be denied, or the Court should likewise strike portions of Scarola's brief as well.

Respectfully submitted,

Date: February 5, 2021            /s/ Jonathan R. Miller, Esq.
                                 *Counsel for Lightbox*

# Exhibit "CC"

ALLEGATIONS RAISED IN MR. ELLNER'S COMPLAINT THAT HAVE ALREADY BEEN ADJUDICATED, DENIED, AND/OR DISMISSED

| EDPa. Complaint Allegation | July 2018 Interpleader Complaint (Ex. "W") (adjudicated by 10/21/2018 Charging Lien Order) | September 2019 Ct. Common Pleas, Bucks County Preliminary Objections by Ellner and Lightbox to the Second Amended Complaint (Ex. "M") (adjudicated by August 29, 2019 Order) | November 2019 2d Cir. Appeal Reply (Ex. "O") (adjudicated by April 21, 2020 Summary Order) | June 2020 AD1 Sanctions Cross-Motion (Ex. "Z") (adjudicated by August 27, 2020 Order) | June 2020 New York Supreme Motion for Sanctions (Ex. "AA") (adjudicated by December 10, 2020 Order) | February 2021 Opposition to AD1 Motion to Strike (Ex. "BB") (adjudicated by March 30, 2021 Order) | AD1 Reply Briefs (relitigated false allegations stricken by March 30, 2021 Order) |
|---|---|---|---|---|---|---|---|
| Frivolous Bucks County Action | | | "Moldovsky also sued Lightbox and its New York attorney, Mr. Miller, personally, in Pennsylvania, asserting as many as sixteen causes of action in that forum...Ultimately, Moldovsky abandoned the Pennsylvania lawsuit just two days after filing his fifth amended complaint." at 7 | "Moldovsky filed a summons in Pennsylvania against Lightbox and Mr. Miller, personally ... and amended his Pennsylvania complaint five times before abandoning that action mere days after being served with initial discovery demands. As Mr. Miller explains, those discovery demands were laser-focused on further proving the utter absence of evidence supporting Moldovsky's spurious disqualification theories. " at 43 | "and then abandoned that Pennsylvania lawsuit after nine long months" at paragraph 14 | "Moldovsky's prior antics have included...suing Lightbox and me in Pennsylvania in order to manufacture an ostensibly disqualifying conflict of interest" at 4 fn 3. | "Moldovsky vexatiously moved to disqualify Lightbox's undersigned counsel four times before four courts, and abandoned his appeal before this Court concerning the same issue. Moldovsky also sued Lightbox and the undersigned, personally, in Pennsylvania, and amended his complaint five times before abandoning that action immediately upon being served with initial discovery demands. See This Court's Dkt. #15 (Aff. of Counsel at ¶¶ 16-27)." 2019-03384 Reply Brief at 13 |
| ¶ 11 "During that engagement, various disputes and disagreements arose between Ellner and Defendant Moldovsky, with respect to Moldovsky's billing practices" | "Upon reviewing that invoice, Mr. Ellner questioned the large and disproportionate amount" at paragraph 140; and "Mr. Ellner's concerns about overbilling, the firm's improper demand for a $12,000 retainer and Mr. Moldovsky's refusal to accept partial payment on account while Mr. Ellner's reasonable concerns were hashed out." at paragraph 215 | | | "Moldovsky even argues that Lightbox purposely manufactured a billing dispute" at 28 | | "reference to Moldovsky's "massively retroactive, allegedly fraudulent invoicing" fairly describes Lightbox's sworn factual allegations concerning Moldovsky. " at paragraph 25. | "Moldovsky's "final" invoice is based on massively retroactive, allegedly fraudulent invoicing" 2019-03384 Reply Brief, at Heading 3, page 11 |
| ¶ 12 "Defendant Moldovsky, Moldovsky, demanded that Ellner enter into a new and revised fee agreement or else Moldovsky would leave the representation" | "Mr. Moldovsky bombarded Mr. Ellner with dozens of emails over the following month, demanding a more lucrative fee arrangement ... ll the while holding out the unlawful threat of client abandonment in the very home stretch of a hotly contested lawsuit." at paragraph 120; and "Faced with no alternatives, Lightbox and Mr. Ellner had no choice but to accede, under duress, to the Moldovsky Firm's unlawful demands." at paragraph 123 | | | "Moldovsky essentially conned Mr. Ellner into "agreeing" to the amended fee structure by misrepresenting that he (Moldovsky) was contractually entitled to stop working on the 3rd Home lawsuit" at 15; and "Moldovsky threatened to stop working on the 3rd Home lawsuit unless Lightbox agreed to his demand for hourly fees" at 20 | | | |
| ¶ 13 "Despite a modification to the agreement, Ellner and Defendant Moldovsky continued to disagree over Defendant Moldovsky's billing practices" | "Mr. Ellner raised concerns about the amount and the time billed during February 2018," at paragraph 143 | | | "Moldovsky's motion to withdraw was directly triggered by Lightbox's questioning of his February and March 2018 invoices" at 26 | | "reference to Moldovsky's "massively retroactive, allegedly fraudulent invoicing" fairly describes Lightbox's sworn factual allegations concerning Moldovsky. " at paragraph 25. | Lightbox contends that Moldovsky's invoices for its legal services, incorporating 1,091 hours and $295,509 of retroactive billing, are fraudulent. See Dkt. #741 below (Verified Crossclaims, at ¶¶ 87-111 ("Mr. Moldovsky and his Firm engage in fraudulent billing")). |
| ¶ 14 "In or about the spring 2018, Moldovsky made certain demands on Ellner with respect to payments Ellner putatively owed to him" | "Mr. Moldovsky did not address the substance of those concerns, nor did he review that invoice for accuracy. Instead, he insisted that the invoice was correct and demanded that it be paid immediately" at paragraph 143 | | | "Moldovsky responded, as per usual, with payment ultimatums and threats to withdraw." at 26 | | | |
| ¶ 15 "As a result of these disagreements and disputes over the bills, Moldovsky and his firm terminated the professional relationship with Plaintiff in May 2018" | "... the firm's wrongful actions in abruptly and prematurely seeking to be discharged from this matter based on false pretenses and its own neglectful and erroneous billing practices" at paragraph 180 | | | "Moldovsky's motion to withdraw was directly triggered by Lightbox's questioning of his February and March 2018 invoices" at 26 | | | Lightbox contends that Moldovsky's invoices for its legal services, incorporating 1,091 hours and $295,509 of retroactive billing, are fraudulent. See Dkt. #741 below (Verified Crossclaims, at ¶¶ 87-111 ("Mr. Moldovsky and his Firm engage in fraudulent billing")); The documentary evidence further shows that the last two versions of Moldovsky's "final" invoice effectively discredited the first six versions and were themselves the product of massively retroactive billing, issued only after Lightbox had already brought legal proceedings against him." 2019-03384 Reply Brief at page 5; |

| Col 1 | Col 2 | Col 3 | Col 4 | Col 5 | Col 6 | Col 7 |
|---|---|---|---|---|---|---|
| | | | | | | "Moldovsky vexatiously moved to disqualify Lightbox's undersigned counsel four times before four courts, and abandoned his appeal before this Court concerning the same issue. Moldovsky also sued Lightbox and the undersigned, personally, in Pennsylvania, and amended his complaint five times before abandoning that action immediately upon being served with initial discovery |
| | | | | | "Moldovsky's prior antics have includedfour unsuccessful motions to disqualify [Miller] as Lightbox's counsel...preparing a never filed "draft" third party complaint against me in this New York matter to again manufacture an ostensibly disqualifying conflict of interest and then asking this Appellate Court to disqualify me; amending his Pennsylvania complaint five times before abandoning his claims before being served with initial discovery demands." at 4 fn 3. | demands. See this Court's Dkt. #15 (Aff. of Counsel at ¶¶ 16-27)." 2019-03384 Reply Brief at 13; and "I offered to make a partial payment, not because I agreed with those invoices but because I disputed them and wanted to literally buy additional time to review them in detail. At that time Mr. Moldovsky was threatening to quit the 3rd Home Matter if I did not pay. That's how Mr. Moldovsky was extorting me." 2020-02530 Reply Brief at 14. |
| ¶ 18 "Within weeks of the change of counsel, Defendant Moldovsky launched a campaign against Miller, accusing Miller of disloyalty to him and various other wrongful acts" | "A few days before filing the motion to withdraw, Mr. Moldovsky attempted to convince and/or compel Lightbox and Mr. Ellner's below-signed state court counsel to withdraw from the State Court Matter." at paragraph 150; and "Mr. Moldovsky was attempting togain leverage over Lightbox and Mr. Ellner with respect to the disputed invoice by unethically and tortiously interfering with the contractual relations between Lightbox, Mr. Ellner, LBC, and their state court counsel." at paragraph 151 | "concurrent with his March 2018 threats to withdraw from the 3rd Home litigation, he was also pressuring Mr. Miller to withdraw from defending Lightbox and Mr. Ellner against the Scarola Firm's claims in state court...by purporting that Mr. Miller was subject to "a deep conflict of interest" requiring his withdrawal, see id., but in fact Moldovsky has filed not one, but three motions to disqualify Mr. Miller on precisely this basis" at 27 | | "Moldovsky doubled-down with his baseless, malicious and defamatory accusations against me, for no palpable reason but to harass me and attack my professional reputation." at Paragraph 13 | | |
| ¶ 49 "Defending against this frivolous litigation caused Ellner to incur expense and losses in efficiency and time from work, which is tied to financial loss" | | | "Moldovsky has moved a fourth time to disqualify Mr. Miller as Lightbox's counsel in New York" at 41 | | "Moldovsky's prior antics have included...suing Lightbox and me in Pennsylvania in order to manufacture an ostensibly disqualifying conflict of interest" at 4 fn 4. | |
| | | | "Moldovsky elected to file a fourth, 632-page motion, wasting this Court's precious time and causing Lightbox to incur unnecessary legal fees." at 42 | | | |
| ¶ 50 "Defending against this frivolous litigation also caused stress and anguish to Ellner as well as embarrassment and humiliation" | | | "Moldovsky's sharp tactics are utterly meritless and undertaken primarily for purposes of delay and harassment" at 42; | | "Moldovsky's prior antics have included...suing Lightbox and me in Pennsylvania in order to manufacture an ostensibly disqualifying conflict of interest" at 4 fn 3. | "Apparently, he is planning on denigrating me to the Judge and others in his motion, again just as the Judge is deciding my fate. . . I am being extorted to make a payment without the ability to fairly challenge the validity of the bills." 2020-02530 Reply Brief at13 |
| ¶ 51 "There was no proper purpose to including Ellner in the Bucks County Action" | "Plaintiff not only fails to establish jurisdiction and venue is proper in this matter, but they also fail to state a claim for which relief may be granted as to Lightbox." at paragraph 31 | | | | "Moldovsky's prior antics have included...suing Lightbox and me in Pennsylvania in order to manufacture an ostensibly disqualifying conflict of interest" at 4 fn 3. | |
| ¶ 52 "Doing so was designed purely to harass Ellner, which is not a proper purpose for litigation and is a perversion of the legal system and a miscarriage of justice" | "Plaintiffs' Second Amended Complaint is nothing more than an attempt to weaponize the Court system against Miller and Lightbox. " at paragraph 32 | | "utterly vexatious, dilatory and harassing nature of this, Moldovsky's fourth motion to disqualify Lightbox's counsel" at 2; and "Moldovsky's sharp tactics are utterly meritless and undertaken primarily for purposes of delay and harassment" at 42 | "Mr. Moldovsky's outrageously frivolous and harassing conduct" at paragraph 16 | | "Apparently, he is planning on denigrating me to the Judge and others in his motion, again just as the Judge is deciding my fate. . . I am being extorted to make a payment without the ability to fairly challenge the validity of the bills." 2020-02530 Reply Brief at13 |
| ¶ 53 "Defendants Moldovsky and Pomerantz are practicing lawyers, who have engaged in the wrongful use of civil proceedings and abuse of process against Ellner causing Plaintiff financial losses and emotional and reputational harm. | | "Moreover, as a matter of judicial notice, Moldovsky also engaged in verbal abuse. See Scarola v. Ellner, supra, Dkt. #579 at ¶ 45 (describing Moldovsky email to Mr. Ellner, telling him to see a doctor regarding his "mental and emotional issues" and difficulty thinking and acting "rationally."" at 20 fn 17 | "Not content with victimizing Lightbox, only, with his weaponization of these court proceedings, Moldovsky's out-of-control vendetta... " at 43 | | "Moldovsky's prior antics have included...suing Lightbox and me in Pennsylvania in order to manufacture an ostensibly disqualifying conflict of interest" at 4 fn 3. | |