**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ANDREW ELLNER<br>            Plaintiff,<br><br>      v.<br><br>BREM MOLDOVSKY, LLC;<br>BREM MOLDOVSKY, ESQUIRE; and<br>GERALD J. POMERANTZ, ESQUIRE,<br>            Defendants. | Case No. 2:20-cv-06190-ER |

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**</u>
<u>**MOTION TO DISMISS COMPLAINT**</u>

Clifford E. Haines
**HAINES & ASSOCIATES**
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
(215) 246-2200 (T)
(215) 246-2211 (F)
*Attorney for Plaintiff*

Dated: April 19, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………..ii

I.    INTRODUCTION ..................................................................................................... 1

II.   FACTS RELEVANT TO THE MOTION........................................................................ 2

III.  ARGUMENT ............................................................................................................ 5

    A.  Standards of Review ....................................................................................... 6

        1.   Standard to be applied in resolving a Rule 12(b)(1) motion ............................ 6

        2.   Standard of review in resolving a Rule 12(b)(3) motion ................................. 7

        3.   Standard of review in resolving a Rule 12(b)(6) motion ................................. 8

        4.   Standard of review in resolving a Rule 12(b)(7) motion ................................. 9

    B.  This Court Has Subject Matter Jurisdiction Over This Matter. ........................................... 9

    C.  The Complaint Is Appropriately Litigated in This Court. ................................................. 12

    D.  There Are No Necessary Parties to Be Joined. ................................................................. 13

    E.  The Doctrines of Lis Pendens, Res Judicata, Collateral Estoppel, and Unclean Hands Do Not Apply........................................................................................................................ 18

        1.   There is no prior pending action alleging that Ellner violated the Pennsylvania Wiretap Act. ..................................................................................................................... 18

        2.   Neither res judicata nor collateral estoppel bar this Complaint. ................................... 20

        3.   The doctrine of unclean hands is not a proper defense to this action............................ 23

    F.  The Complaint Properly States Claims for Wrongful Use of Civil Proceedings and Abuse of Process. ....................................................................................................................... 23

        1.   The Complaint properly pleads each element of a claim for Wrongful Use of Civil Proceedings under Pennsylvania's Dragonetti Act, 42 Pa.C.S.A. § 8351, *et seq.* ......... 23

        2.   The Abuse of Civil Process Claim is Properly Pleaded and Cannot Be Dismissed....... 33

        3.   The Complaint seeks appropriate forms of relief and the claims for emotional harm and punitive damages should not be dismissed at this early stage of litigation.................... 38

IV.  CONCLUSION........................................................................................................ 40

CERTIFICATE OF SERVICE…………………………………………………………..41

# TABLE OF AUTHORITIES

**Cases**

*Al Hamilton Contracting Co. v. Cowder,* 644 A.2d 188  (Pa. Super. 1994) ................................ 35

*Allstate Ins. Co. v. Pennsylvania Chiropractic Servs. Corp.*, Civ. A. No. 16-13118, 2016 U.S. Dist. LEXIS 147297 at \*15 (E.D. Pa. Oct. 24, 2016) ................................ 8

*Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49 (2013) ................................ 8, 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................ 8, 9

*Beasley v. Hartman*, Civ. A. No. 01-0973, 2002 U.S. Dist. LEXIS 21517  (E.D. Pa. Nov. 6, 2002) ................................ 28

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................ 8

*Burke v. Pittsburgh Limestone Corp.*, 375 Pa. 390, 100 A.2d 595 (Pa. 1953) ................................ 21

*Cardio-Med. Assoc. Ltd. v. Crozer-Chester Med. Ctr.,* 721 F.2d 68  (3d Cir. 1983) ................................ 6

*Chrestman v. NHB, LLC*, No. 07-cv-492, 2007 U.S. Dist. LEXIS 39371  (E.D. Pa. May 31, 2007) ................................ 10

*County of Dauphin v. City of Harrisburg*, 24 A.3d 1083 (Pa. Commw. Ct. 2011) ................................ 18

*Crutchfield v. Eaton Corp.*, 806 A.2d 1259 (Pa. Super. 2002) ................................ 18

*Day v. Volkswagenwerk Aktiengesellschaft,* 464 A.2d 1313 (Pa. Super. Ct. 1983) ................................ 20

*Develcom Funding, LLC v. Am. Atl. Co.,* CA No. 09-1839, 2009 U.S. Dist. LEXIS 81960  (D. N.J. Sept. 9, 2009) ................................ 9, 14

*Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) ................................ 8

*General Refractories Co. v. First State Ins. Co.,* 500 F.3d 306  (3d Cir. 2007) ................................ 14, 15, 17

*Glunk v. Greenwald*, No. 3229, 2013 Phila. Ct. Com. Pl. LEXIS 536 (Pa. C.P., Phila. Co. Nov. 8, 2013) ................................ 36, 37

*Grant v. GAF Corp.*, 608 A.2d 1047 (Pa. Super. 1992) ................................ 21

*Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 434 F. App'x 83 (3d Cir. 2011) ................................ 8, 12

*Hartenstine v. Bullock*, No. 250 EDA 2015, 2016 Pa. Super. Unpub. LEXIS 1938  (Pa. Super. June 3, 2016) ................................ 35, 36, 37, 40

*Hayfield v. Home Depot U.S.A., Inc.,* 168 F. Supp. 2d 436  (E.D. Pa. 2001) ................................ 11

*Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160  (3d Cir. 2001)................................... 23

*Huber v. Taylor*, 532 F.3d 237  (3d Cir. 2008) ....................................................... 15, 17

*Ideal Aerosmith, Inc. v. Acutronic United States, Inc.,* Civ. A. No. 07-1029, 2007 U.S. Dist. LEXIS 91644 (W.D. Pa. Dec. 13, 2007) ................................................................... 31

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc*., 11 F.3d 399 (3d Cir. 1993) .............. 15, 18

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ........................................ 8, 12

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,* 201 F.R.D. 337  (D. Del. 2001) ............. 9, 14

*Jurimex Kommerz Transit G.M.B.H. v. Case Corp*., No. 02-1916, 65 Fed. Appx. 803, 2003 U.S. App. LEXIS 7690, *4-*5 (3d Cir. April 23, 2003) ............................................. 9, 14

*Kehr Packages, Inc. v. Fidelcor,* 926 F.2d 1406 (3d Cir. 1991).................................... 7

*Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240 (1933)................................ 23

*Krauss v. Steelmaster Bldgs., LLC*, 2006 U.S. Dist. LEXIS 78885, No. 06-cv-796 (E.D.Pa. Oct. 27, 2006) ............................................................................. 10

*Langman v. Keystone Nazareth Bank & Trust Co.*, 502 Fed. Appx. 220 (3d Cir. 2012) ............ 27

*Liggon-Redding v. Am. Sec. Ins. Co.*, CA No. 06-227, 2009 U.S. Dist. LEXIS 87331 (M.D. Pa. Sept. 23, 2009) ............................................................................ 15

*LSI Title Agency, Inc. v. Evaluation Svcs.,* 951 A.2d 384  (Pa. Super 2008) .............................. 21

*Ludmer v. Nurnberg,* 553 A.2d 924 (Pa. 1989). ..................................................... 17, 26

*Marra v. Smithkline Beecham Corp*., 789 A.2d 704  (Pa. Super. 2001)....................................... 31

*McClellan v. Carland*, 217 U.S. 268 (1910)........................................................... 19

*McNeil v. Jordan,* 894 A.2d 1260 (Pa. 2006) ...................................................... 26, 27

*Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Ronis*, 1975 Pa. Dist. & Cnty. Dec. LEXIS 301, 73 Pa. D. & C. 2d 588 (1975) ................................................................. 21

*Mersky v. Beschel*, No. CI-16-04491, 2017 Pa. Dist. & Cnty. Dec. LEXIS 730 (Pa. C.P., Lancaster Co. Feb. 8, 2017)................................................................... 37

*Miller v. St. Luke's Univ. Health Network,* 142 A.3d 884 (Pa. Super. 2016)........................ 28, 30

*Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884 (3d Cir. 1977)................................... 6

*Myers v. American Dental Ass'n*, 695 F.2d 716 (3d Cir. 1982).............................................. 8, 12

*Oruska v. Kelly*, No. 1120 MDA 2013, 2014 Pa. Super. Unpub. LEXIS 499 (Pa. Super. Dec. 9, 2014) ................................................................................................................. 37

*Packard v. Provident Nat'l Bank*, 994 F.2d 1039 (3d Cir. 1993) ................................. 10

*Palmieri v. Zokaites*, No. GD 11-4430, 2011 Pa. Dist. & Cnty. Dec. LEXIS 356  (Pa. C.P., Alleg. Co. Oct. 28, 2011) ..................................................................................................... 38

*Park v. Gross,* No. 02453, 2012 Phila. Ct. Com. Pl. LEXIS 229  (Pa. C.P., Phila. Co. July 11, 2012) ........................................................................................................... 36, 37

*Phillies Tomato & Produce Corp. v. Veneman,* Civ. A. No. 01-3502, 2002 U.S. Dist. LEXIS 12266  (E.D.Pa. March 28, 2002) .................................................................... 6

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (3d Cir. 2002) ....................................... 8

*Raynor v. D'Annunzio,* 243 A.3d 41 (Pa. 2020) ................................................... 24, 25

*Rosen v. American Bank of Rolla*, 627 A.2d 190  (Pa. Super. 1993) ........................ 33, 34, 35, 36

*Rudolph v. Zoning Hearing Bd. of College Township*, 80 Pa. Commw. 28, 470 A.2d 1104 (1984) ................................................................................................................. 21

*RX Billing Servs., Inc. v. Fazio*, No. 1778 MDA 2015, 2017 Pa. Super. Unpub. LEXIS 624  (Pa. Super. Feb. 17, 2017) ................................................................................. 36, 39

*Scherer Design Group, LLC v. Ahead Engineering, LLC,* 764 Fed. Appx. 147 (3d Cir. 2019) ... 23

*Schmidt v. Currie*, 470 F.Supp.2d 477 (E.D. Pa. 2005) ........................................ 27, 28

*Shahin v. Darling*, No. 09-3298, 350 Fed. Appx. 605, 2009 U.S. App. LEXIS 23829 (3d Cir. Oct. 29, 2009) ............................................................................................... 9, 14

*Shiner v. Moriarty,* 706 A.2d 1228 (Pa. Super. 1998) ................................. 33, 34, 36, 38

*St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283  (1938) .......................... 10

*Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828 (Pa. Super. 2008) ..... 21

*U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002) .............................. 27

*Valhal Corp. v. Sullivan Assocs., Inc*., 48 F.3d 760 (3d Cir. 1995) ............................ 10

*Valley v. State Farm Fire & Cas. Co.*, 504 F. Supp. 2d 1 (E.D. Pa. 2006) ................ 10

*Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77 (3d Cir. 2011) ................................. 8

*Werner v. Plater-Zyberk*, 799 A.2d 776  (Pa. Super. 2002) ....................................... 34

*Will v. Calvert Fire Insurance Co.*, 437 U.S. 655 (1978) ............................................................... 19

**Statutes**

18 Pa.C.S. § 5701 ............................................................................................................................ 31

28 U.S.C. § 1332 ............................................................................................................................. 10

28 U.S.C. § 1391 ............................................................................................................................. 12

42 Pa. C.S. § 8351 ............................................................................................. 23, 24, 38, 39

42 Pa. C.S. § 8352 ............................................................................................................ 26, 27

42 Pa. C.S. § 8353 ................................................................................................ 11, 38, 39

45 Pa. C.S. § 5524 ........................................................................................................................... 31

**Other Authorities**

*Restatement (Second) of Torts*, § 682 ................................................................... 34, 35

**Rules**

Fed. R. Civ. P. 12 (b)(1) ............................................................................................. 6, 11

Fed. R. Civ. P. 12 (b)(3) .................................................................................................. passim

Fed. R. Civ. P. 12 (b)(6) ....................................................................................................... 6, 8

Fed. R. Civ. P. 12 (b)(7) ....................................................................................... 6, 9, 13, 14

Fed. R. Civ. P. 19 ......................................................................................................... 13, 14, 15

Plaintiff Andrew Ellner ("Plaintiff" or "Ellner"), by and through his undersigned counsel, hereby files this memorandum of law in opposition to Defendants' Amended Motion to Dismiss. (Doc. 23).  For all the reasons stated below, the motion must be denied.

## I.     INTRODUCTION

The dispute between these parties, as stated in this Complaint, in *this action,* is narrow and limited.  While there may be other, prior pending litigation between these parties in another jurisdiction which does not raise the same claims by Moldovsky and his firm against Ellner, that proposition entirely misses the point of this lawsuit.  This case is narrowly focused on the propriety of a single lawsuit filed by Moldovsky and his firm, through counsel, Mr. Pomerantz, in Bucks County, Pennsylvania. That Pennsylvania lawsuit asserted frivolous claims as against Ellner, a New Yorker with no ties to Pennsylvania, for an improper purpose and in a manner that perverts civil process.  Defendants' motion provides a rambling recitation of facts extraneous to the pleadings in this case which are neither relevant nor should they be considered when deciding the motion to dismiss under Rule 12 (b)(1) or (6).[1]  (Doc. 23-2).  To the extent the Court considers the facts set forth in Moldovsky's Declaration, the one issue that should immediately jump out is that, notwithstanding the multiple ongoing lawsuits in New York courts between these parties, not one of the lawsuits filed *before* the instant action, raises any claim that Ellner violated the Pennsylvania Wiretap Act (other than the frivolous claim that forms the basis for this lawsuit).  No Court has been asked to specifically find that filing a claim against Ellner for violating the Pennsylvania Wiretap Act was a tortious act, which are the claims now before the Court. While the Defendants have done their best to muddy the waters with myriad facts the court may not necessarily consider

---

[1]     The Court may consider facts outside of the pleadings to address the motion filed pursuant to Rule 12(b)(3) and 12(b)(7).   However, there are no facts from Moldovsky's Declaration (Doc. 23-2) cited in support of the 12(b)(3) motion or the 12 (b)(7) motion.

at this stage of litigation, in an effort to complicate this case, the dispute between these parties is simple and straightforward.  The Complaint properly pleads claims for Wrongful Use of Civil Proceedings and Abuse of Civil Process (Doc. 1) and should not be dismissed.

## II.    FACTS RELEVANT TO THE MOTION

While the Defendants may wish to confuse the issues in this case by laying out a contentious history of litigation involving these parties in New York, *this action* concerns liability for filing *one specific lawsuit*, frivolously, in the Pennsylvania Court of Common Pleas, Bucks County.   That specious action is the only subject of this lawsuit.  By this lawsuit Ellner limits his claim to holding these Defendants accountable for their conduct in filing that lawsuit only.  Below is a recitation of the facts relevant for consideration on this motion.

The clearest summary of the dispute is set forth in the introduction to Plaintiff's Complaint (Doc. 1), which reads as follows:

> On February 15, 2019, Defendants brought a specious, unjustifiable, and malicious lawsuit against plaintiff, a former client, in Bucks County, Pennsylvania.   Although that lawsuit was principally directed at Jonathan Miller, Esquire who had replaced Defendant Moldovsky as Plaintiff's lawyer in a lawsuit then pending in New York, Defendants insisted on dragging Plaintiff into the Bucks County dispute, when Plaintiff is a New York resident who hired Moldovsky and his firm to represent Plaintiff in a New York lawsuit.   Moldovsky's claims against Ellner in the Bucks County lawsuit were baseless.   Ellner was forced to defend himself through three iterations of Moldovsky's misguided claims, all of which have been dismissed in Plaintiff's favor.   Plaintiff now seeks to recover the legal expenses and all other damages provided for by law to which he is now entitled under the Dragonetti Act 42 Pa. C.S.A. § 8353, and for Defendants' abuse of civil process.

(Doc. 1, Compl., at Intro., pp. 1-2).  That summary is fleshed out by the recitation of the facts set forth in the Complaint.

On or about Feb 15, 2019, Moldovsky and his firm, who were represented *pro se* and by Moldovsky's father-in-law, Gerald J. Pomerantz, Esquire, filed a Writ of Summons against Ellner,

some of his businesses, and his attorney, Jonathan Miller in the Pennsylvania Court of Common Pleas, Bucks County (the "Bucks County Action"), captioned *Brem Moldovsky, Esquire and Brem Moldovsky, LLC v. Jonathan Miller d/b/a The Law Firm of Jonathan R. Miller, Andrew Ellner, Lightbox Ventures, LLC, and Lightbox Capital Management, LLC*, 2019-00793. (A true and correct copy of the complaint in the Bucks County Action is attached to the Complaint as Exhibit A (Doc. 1-4 )). (Compl., ¶ 21).  Ellner engaged the services of the law firm Fox Rothchild, LLP to represent him in the Bucks County Lawsuit.  (Compl., ¶ 22).

On May 17, 2019, Plaintiff, through Fox Rothchild, filed a Rule to File a Complaint on Moldovsky and his firm.  (Compl., ¶ 23).  In response to the Rule to file a Complaint, Moldovksy and his firm, through Pomerantz, filed a motion to take pre-complaint discovery.  (Compl., ¶ 24). The motion was opposed and was denied.  (Compl., ¶¶ 25, 26).  Moldovsky and his firm, through Moldovsky and Pomerantz, then filed a 279-paragraph complaint in the Bucks County Lawsuit against Miller, Ellner.  (Compl., ¶ 27; see also Doc. 1-4).

The Bucks County Action complaint contained claims of a fractured personal friendship with Miller, deceit by Miller, and putative breach of attorney-client privilege between Moldovsky and Miller.  (Compl., ¶ 28).  The complaint in the Bucks County Lawsuit also claimed that Ellner had, on one or more occasions, recorded phone conversations between Moldovsky and Ellner. (Compl., ¶ 29; Doc. 1-4, at pp. 15-16, ¶¶ 56-65).[2]   All of the conversations allegedly recorded

_____

[2]     To the extent the Defendants' exhibits support the potential viability of claims against Miller in the Bucks County Action, those documents have no place here. The issue is not whether the Bucks County Action was at all meritorious (which it was not), it is very narrowly: whether that lawsuit was meritorious *as against Ellner*.  The exhibits to the Motion to Dismiss, do nothing more than create evidence of the factual dispute between these parties on the issues of probable cause and improper purpose.  They do not form a basis on which to conclude as a matter of law that this case must be dismissed. Further, the court may not consider the self-serving Declaration of Brem Moldovsky (Doc. 23-2) insofar as that document contains descriptions of any documents, or statements of fact.  The Declaration may only be considered, except in very narrow

were between Ellner in New York and Moldovsky's phone number for his New York office. (Compl., ¶ 30).[3] There is no prohibition on recording phone conversations in New York. (Compl., ¶ 31). Yet, Defendants claimed in the Bucks County Action that the recordings allegedly made by Ellner were illegal. (Compl., ¶ 32). At all relevant times, Moldovksy held himself as a New York lawyer practicing law in New York from a New York address. (Compl., ¶ 33). Any in-person meetings between Moldovksy and Ellner were in New York and the representation took place in New York. Ellner had no relationship to Bucks County, Pennsylvania. (Compl., ¶ 33).

Even assuming the facts as alleged in the Bucks County Lawsuit were true and correct, which they were not, Ellner did not violate the Pennsylvania Wiretap Act, which Defendants, as attorneys, should have known before filing the claims. (Compl., ¶ 34). Moreover, when the Bucks County Lawsuit was filed, Pennsylvania Courts had no jurisdiction over Ellner, which Defendants also should have known. (Compl., ¶ 33).

On June 17, 2019, Fox Rothchild, on Ellner's behalf, filed Preliminary Objections to Defendants' complaint in the Bucks County Lawsuit to raise these issues. (Compl., ¶ 35). Defendants then filed an amended complaint in the Bucks County Lawsuit on July 8, 2019. (Compl., ¶ 36). No material aspect of Defendants' putative claims against Ellner were changed in the amended complaint filed in the Bucks County Lawsuit. (Compl., ¶ 37).

Again, Ellner filed preliminary objections, which resulted in the filing of further amended complaints. (Compl., ¶ 38). Indeed, Defendants filed a second (on August 15, 2019) and a third

---

circumstances as addressed below in the argument, to the extent it purports to aver the veracity of the copies of attached exhibits.

[3]   Moldovsky, apparently disputes this and argues that Ellner was aware that Moldovsky was not in New York when recording certain calls without consent. (Doc. 23-2, at pp. 15-16). This dispute alone requires the Court to deny the motion to dismiss. A jury will have to resolve this dispute at a more appropriate time.

Amended Complaint (on September 24, 2019) against Miller, Ellner, and others, each time repeating the original claims they had made as against Ellner. (A true and correct copy of the Third Amended Complaint is attached as Exhibit B (Doc. 1-5)). (Compl., ¶ 39).  Each time, Ellner filed preliminary objections to the pleading.  (Compl., ¶ 40).  Each round of preliminary objections cost money for Fox Rothschild to prepare and file.  (Compl., ¶ 41).

Finally, Defendants filed a fourth Amended Complaint but did not name Ellner as a party, effectively discontinuing the claim.  (Compl., ¶ 42).  On or about November 7, 2019, Defendants voluntarily withdrew their action against Plaintiff Ellner.  (Compl., ¶ 43).  At the time the Bucks County Lawsuit was ended against Ellner, Ellner had incurred in excess of $50,000.00 in legal bills for Fox Rothschild's defense of the claims. (Compl., ¶ 44).  Defending against this frivolous litigation caused Ellner to incur expense and losses in efficiency and time from work, which is tied to financial loss.  (Compl., ¶ 49).  Defending against this frivolous litigation also caused stress and anguish to Ellner as well as embarrassment and humiliation, for which Ellner seeks damages. (Compl., ¶¶ 50, 57, 71).  Ellner also seeks punitive damages.  (Compl., ¶¶ 59, 60).

## III.      ARGUMENT

The Defendants' motion is rambling and disjointed.  Plaintiff has done his best to decipher the arguments raised to determine the bases for seeking dismissal.  This was not an easy task. Regardless of which subsection of Rule 12 the Defendants potentially argue entitles them to relief, they are not entitled to dismissal as a matter of law.

The organization of the Defendants' motion is lacking.  Accordingly, for clarity, Plaintiff has addressed each argument, but not in the order in which each was articulated in Defendants' papers.  This memorandum begins with a statement of each standard of review.  Next, it addresses each threshold issue: subject matter jurisdiction, venue, and whether the proper parties have been named.  The response concludes with a response to each aspect of the Defendants' arguments for

dismissal under Fed. R. Civ. P. 12 (b)(6) for failure to state a claim.  Each argument articulated by the Defendants must be rejected for the reasons more fully set forth below.

### A.      Standards of Review

Although it is not entirely clear, Defendants appear to move for dismissal under Fed. R. Civ. P. 12 (b)(1), (3), (6), and (7).  None of these provides a basis on which to dismiss this Complaint.

### 1.      Standard to be applied in resolving a Rule 12(b)(1) motion

The Defendants argue that this court does not have subject matter jurisdiction over these claims because the amount in controversy in this diversity action does not exceed $75,000.  The Defendants are mistaken about that.

In evaluating this motion under Fed.R.Civ.P. 12(b)(1), the Court must first determine whether the challenge is on the face of the complaint itself or to defects in the jurisdictional allegations.  *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977); *Phillies Tomato & Produce Corp. v. Veneman,* Civ. A. No. 01-3502, 2002 U.S. Dist. LEXIS 12266, at *14-15 (E.D.Pa. March 28, 2002).  A facial attack asserts that the complaint on its face fails to allege sufficient grounds to establish subject matter jurisdiction.  *Cardio-Med. Assoc. Ltd. v. Crozer-Chester Med. Ctr.,* 721 F.2d 68, 75 (3d Cir. 1983).  When a facial attack is raised, the Court must take all of the allegations in the complaint for their truth and must resolve all reasonable inferences from the facts as stated in the complaint in the light most favorable to the plaintiff. *Mortensen,* 549 F.2d at 891.  When a factual challenge is raised, that is, when the defendant argues that jurisdiction is lacking based on facts outside of the complaint, the court may rely on any evidence to assess the question of whether subject matter jurisdiction exists.  *Id.*  The burden of proof as to the issue of subject matter jurisdiction falls on the plaintiff, as the party asserting the

court's jurisdiction to hear the matter.  *Kehr Packages, Inc. v. Fidelcor,* 926 F.2d 1406, 1408-09 (3d Cir. 1991).

Defendants' motion is a facial challenge, because it looks only to the pleading itself. Defendants ignore that Plaintiff has asserted in his complaint that he has suffered not only quantifiable, liquidated damages, but also that he has suffered unquantifiable, unliquidated damages for loss of reputation and emotional distress and punitive damages.  At this stage of litigation, the pleading is sufficient to overcome this facial challenge to the Complaint and this matter should proceed, without prejudice to Defendants' ability to raise this question at some future time, if it applies.

### 2.    Standard of review in resolving a Rule 12(b)(3) motion

Defendants argue that this Court is not the appropriate forum in which to litigate this action and that it belongs more properly in a New York court.  This lawsuit alleges that Defendants have violated a Pennsylvania statute, the Dragnoetti Act, in Pennsylvania.  A motion to dismiss for lack of venue is appropriate only when the chosen forum is statutorily improper, and not just merely inconvenient.[4]  *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S.

---

[4]    The Defendants have asked that this case be dismissed because venue cannot lie in the Eastern District of Pennsylvania.  The assertion is preposterous given that the Complaint alleges that Defendants each reside in this judicial district (Compl., ¶ ¶ 2, 3, 4) and that the case arises out of a set of circumstances arising out of the filing of frivolous claims against Plaintiff in the Pennsylvania Court of Common Pleas, Bucks County.  (Compl., ¶ 22; Doc. 1-4; Doc. 1-5). That court is within this judicial district.  Nothing in the Defendants' papers challenges those facts. When venue is proper in the Plaintiff's chosen forum, but the Defendants have an argument for litigating in another forum, this Court would have the discretion to transfer the action, not outright dismiss it.  The Defendants have not articulated a proper motion to transfer.  They do not cite the legal authorities, statutory and otherwise, under which this Court may grant a request for transfer, nor have the Defendants set forth the elements for evaluating the request, or the facts to support the request.  Rather they inappropriately seek an outright dismissal of the action on venue grounds under Pa. R. Civ. P. 12 (b)(3) and suggest that the Court may transfer the claims to a New York Court. Plaintiff reserves the right to seek leave of court to file a sur-reply to the extent that Defendants more specifically articulate a motion to transfer venue in their Reply. Plaintiff has

49, 55 (2013).  A defendant seeking dismissal under Rule 12(b)(3) bears the burden of showing that venue is improper. *See Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86 (3d Cir. 2011); *see also Myers v. American Dental Ass'n*, 695 F.2d 716, 725 (3d Cir. 1982). In deciding a motion to dismiss and/or transfer for improper venue under Rule 12(b)(3) the Court must generally accept as true the allegations in the pleadings. In "ruling on defendant's motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

### 3.     Standard of review in resolving a Rule 12(b)(6) motion

It is well established that a federal court sitting in diversity applies federal procedural rules. *Allstate Ins. Co. v. Pennsylvania Chiropractic Servs. Corp.*, Civ. A. No. 16-13118, 2016 U.S. Dist. LEXIS 147297 at *15 (E.D. Pa. Oct. 24, 2016) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). When considering a motion to dismiss under Rule 12(b)(6), the court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n. 7 (3d Cir. 2002)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

responded only to the motion filed, but fears being prejudiced by Defendants' Reply. Suffice it to say, Plaintiff does not believe that this matter would be more appropriately litigated in New York, given that Plaintiff seeks relief under a Pennsylvania statute, the Dragonetti Act, for a frivolous claim filed against him in a Pennsylvania state court. Venue is entirely proper in this Court.  While this Court may not dismiss this claim under Rule 12 (b)(3), to the extent the Court may consider a motion to transfer, if properly made, Plaintiff requests an opportunity to respond.

### 4.    Standard of review in resolving a Rule 12(b)(7) motion

Finally, Defendants argue that this claim should be dismissed because it fails to join an indispensable party.  Ellner has chosen to file this claim to recover personal losses.  While other parties may have been sued in the Bucks County action, as alleged in the Complaint, Mr. Ellner was a named defendant in that action and Mr. Ellner seeks relief for his individual harms.  He is under no obligation to vindicate the rights of his business entities.

In reviewing a Rule 12(b)(7) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party.  *Jurimex Kommerz Transit G.M.B.H. v. Case Corp*., No. 02-1916, 65 Fed. Appx. 803, 2003 U.S. App. LEXIS 7690, *4-*5 (3d Cir. April 23, 2003); *see also Shahin v. Darling*, No. 09-3298, 350 Fed. Appx. 605, 2009 U.S. App. LEXIS 23829, * 4 (3d Cir. Oct. 29, 2009) (*quoting Iqbal*, 556 U.S. at 678, for the principle that "[t]he assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'").  A court making a Rule 19 determination may consider evidence outside the pleadings.  *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,* CA No. 00-83, 201 F.R.D. 337, 2001 U.S. Dist. LEXIS 10551, *6 (D. Del. July 23, 2001). The moving party bears the burden of showing that a non-party is both necessary and indispensable. *Develcom Funding, LLC v. Am. Atl. Co.,* CA No. 09-1839, 2009 U.S. Dist. LEXIS 81960, *5 (D. N.J. Sept. 9, 2009).

This tort action alleges harm to a specific individual.  There can be no necessary or indispensable additional plaintiffs under the circumstances.

### B.    This Court Has Subject Matter Jurisdiction Over This Matter.

The Defendants argue that this Court does not have subject matter jurisdiction over this claim because the Complaint does not properly plead the amount in controversy exceeds $75,000.

Absent such a showing, this Court cannot have subject matter jurisdiction over this diversity jurisdiction action.

Federal courts, being courts of limited jurisdiction, have a continuing duty to satisfy themselves of jurisdiction before addressing the merits of a case. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1049 (3d Cir. 1993). 28 U.S.C. § 1332 provides, *inter alia*, that in order for federal diversity jurisdiction to exist, the   amount in controversy must "exceed[] the sum or value of $75,000." *See* 28 U.S.C. § 1332(a). "It is well-settled that '[w]hen deciding a motion to dismiss pursuant to [Rule] 12(b)(1) on an allegation that the amount in controversy does not meet the jurisdictional minimum, the sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Chrestman v. NHB, LLC*, No. 07-cv-492, 2007 U.S. Dist. LEXIS 39371 at *1 (E.D. Pa. May 31, 2007) (first alteration in original) (second set of internal quotation marks omitted) (quoting *Krauss v. Steelmaster Bldgs., LLC*, 2006 U.S. Dist. LEXIS 78885, No. 06-cv-796, at *1 (E.D.Pa. Oct. 27, 2006)). To determine whether the purported amount in controversy is sufficient to establish diversity jurisdiction, courts employ the "legal certainty" standard, which provides that:

> [I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the [C]ourt is satisfied to a like certainty that the plaintiff never was entitled to recover that amount . . . the suit will be dismissed.

*Valhal Corp. v. Sullivan Assocs., Inc*., 48 F.3d 760, 761 (3d Cir. 1995) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 288-89 (1938)).

The burden associated with establishing that the amount in controversy is sufficient to bestow federal subject matter jurisdiction is not particularly stringent. *See Valley v. State Farm Fire & Cas. Co.*, 504 F. Supp. 2d 1, 3-4 (E.D. Pa. 2006) (discussing the requirements imposed by

the "legal standard" for purposes of ascertaining whether the amount in controversy has been met and stating that under the governing authority, "a case must be dismissed . . . if it appears to a legal certainty that the plaintiff cannot recover more than . . . $75,000"). On a motion to dismiss under Rule 12(b)(1), the Court can, in a tort action where damages are not liquidated, look to the pleading itself and any demand.

There is no dispute that the Complaint alleges that Ellner spent roughly $50,000 on legal fees and defense costs.  (Compl., ¶ 44).  But this is not the limit of what is claimed on the face of the complaint.  The Complaint alleges two tort claims which each allow Ellner to recover for emotional distress, mental anguish and, punitive damages (for the wrongful use of civil proceedings claim).  (Compl., ¶¶ 50, 54, 57, 71).  Indeed, the wrongful use of civil proceedings claim is statutory and the statute itself contemplates that punitive damages are an available remedy. 42 Pa.C.S. § 8353 (6).  In tort actions, compensatory damages for non-economic losses are left to the jury to determine but are considered compensatory damages and are allowable in the calculation of the amount in controversy for purposes of overcoming a 12(b)(1) motion to dismiss. The same is true of punitive damages.  In a claim for wrongful use of civil proceedings, the Court may consider all allowable items of damage under the statute to conclude that when all of the damages are considered it is probable that Plaintiff's damages will exceed $75,000 as pleaded. See, *e.g., Hayfield v. Home Depot U.S.A., Inc.,* 168 F. Supp. 2d 436, 462-65 (E.D. Pa. 2001)(evaluating a motion for lack of subject matter jurisdiction at the summary judgment stage, on a full record, arguing that Plaintiff could not meet the amount in controversy requirement for a diversity suit).

On its face, the Complaint properly pleads damages in excess of $75,000 in good faith. As subject matter jurisdiction is a threshold issue, it may be raised at any time. After discovery, if necessary, the Court may revisit this issue on a full record after discovery.

### C.   The Complaint Is Appropriately Litigated in This Court.

The Defendants have argued that venue is improper in this Court and this matter must be dismissed pursuant to Fed. R. Civ. P. 12 (b)(3). Dismissal on grounds of improper venue is appropriate only when the chosen forum is statutorily improper, and not just merely inconvenient. *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 55 (2013). A defendant seeking dismissal under Rule 12(b)(3) bears the burden of showing that venue is improper. *See Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 434 F. App'x 83, 86 (3d Cir. 2011); *see also Myers v. American Dental Ass'n*, 695 F.2d 716, 725 (3d Cir. 1982). In deciding a motion to dismiss and/or transfer for improper venue under Rule 12(b)(3) the Court must generally accept as true the allegations in the pleadings. In "ruling on defendant's motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In resolving this motion, the Court need look no further than to the face of the Complaint and the venue statue, 28 U.S.C. § 1391(b). Venue is proper in the judicial district in which the defendant resides, if all defendants reside in the same state as the forum and one of them lives within the judicial district where the complaint was filed. 28 U.S.C. § 1391(b)(1). Venue is also proper in the place where a substantial portion of the facts giving rise to the claim took place. 28 U.S.C. § 1391(b)(2). The Complaint alleges facts supporting both.

The Defendants have not challenged that they reside in this judicial district. They also do not dispute that they filed (or caused to be filed) a lawsuit against Ellner in the Pennsylvania Court

of Common Pleas, Bucks County, which is located in this judicial district.  Accordingly, this Court cannot dismiss this action for lack of venue.  Venue is entirely proper in this Court. The Complaint should not be dismissed pursuant to Rule 12(b)(3).[5]

### D.  There Are No Necessary Parties to Be Joined.

Citing no legal authority for their position, the Defendants argue that there are necessary parties that must be joined in the Complaint as Plaintiffs, pursuant to Fed. R. Civ. P. 19.  They argue that if Plaintiff refuses to join these "necessary parties" as additional plaintiffs, the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(7).  Defendants suggest that in order for there to be a complete adjudication of these claims, Ellner must join as additional plaintiffs all of the other defendants in the Bucks County action, two business entities Ellner controls and an attorney, Jonathan Miller, Esquire.  This position makes little sense, given that the tort claims asserted in the Complaint are narrowly focused on harm suffered by Ellner specifically.  Ellner has every right to choose not to take action on behalf of businesses he controls and does not have standing to pursue claims for harm to another person, like Jonathan Miller. Even if he did have standing, Miller does not need to be a party for Ellner to be fully and fairly compensated for the tortious harm by the filing of the Bucks County Action.

---

[5]       Without making a proper showing, the Defendants argue that this Court should transfer this matter to a federal court in New York.  For all the reasons stated, *supra*, at n.3, the Defendants have not offered the Court the proper authority under which such a request may be made, the elements for making a transfer, nor have they set forth the factual basis for a transfer. Plaintiff should not have to make the counterargument without the benefit of Defendants' argument.  Plaintiff, however, notes that Defendant Pomerantz is a resident of Pennsylvania, and all of the conduct for which he is allegedly liable took place in Pennsylvania.  Plaintiff does not believe, under the circumstances, that he would be able to sue Mr. Pomerantz in New York, because personal jurisdiction over Mr. Pomerantz is likely lacking in New York.  This favors denying any request to transfer the action out of the Eastern District of Pennsylvania because Ellner would not be able to fully recover against all responsible parties in New York.

In reviewing a Rule 12(b)(7) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party. *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, No. 02-1916, 65 Fed. Appx. 803, 2003 U.S. App. LEXIS 7690, *4-*5 (3d Cir. April 23, 2003); *see also Shahin v. Darling*, No. 09-3298, 350 Fed. Appx. 605, 2009 U.S. App. LEXIS 23829, * 4 (3d Cir. Oct. 29, 2009). A court making a Rule 19 determination may consider evidence outside the pleadings. *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.,* CA No. 00-83, 201 F.R.D. 337, 2001 U.S. Dist. LEXIS 10551, *6 (D. Del. July 23, 2001). The moving party bears the burden of showing that a non-party is both necessary and indispensable. *Develcom Funding, LLC v. Am. Atl. Co.,* CA No. 09-1839, 2009 U.S. Dist. LEXIS 81960, *5 (D. N.J. Sept. 9, 2009).

The Court's inquiry begins with a review of Rule 19, which specifies the circumstances in which joinder of a party is compulsory. G*eneral Refractories Co. v. First State Ins. Co.,* 500 F.3d 306, 312 (3d Cir. 2007). Under Rule 19(a), the court must engage in a two-part analysis. First, the Court must determine whether the absent parties should be joined as "necessary;" and if they should be joined, but their joinder is not feasible because it would, for example, defeat diversity jurisdiction, the Court must then decide if the party is "indispensable." If under Rule 19 (b), the answer is yes, then the case must be dismissed unless those parties are joined. *General Refractories, id.*

"Required parties" under Rule 19(a) are those who are "subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a)(1). In considering this clause, the Court determines whether "in that party's absence, the Court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). At this step, the Court limits its inquiry to whether it can "grant complete relief to persons *already named* as parties to

the action; what effect a decision may have on absent parties is immaterial." *General Refractories*, 500 F.3d at 313 (emphasis in original); *Huber v. Taylor*, 532 F.3d 237, 248 (3d Cir. 2008). Alternatively, the court should consider whether the absent party "claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest," Fed. R. Civ. P. 19(a)(1)(B).  If an absent party is deemed to be necessary under either of these two alternatives, it must be joined if feasible. *General Refractories*, 500 F.3d at 313; *see also* J*anney Montgomery Scott, Inc. v. Shepard Niles, Inc*., 11 F.3d 399, 405 (3d Cir. 1993).

If a party is not found to be necessary, the Court's analysis stops because a party cannot be "indispensable" if it is not "necessary." See *Janney*, 11 F.3d at 405 (the determination that joinder is compulsory under Rule 19(a) is a "necessary predicate" to determining that it is indispensable under Rule 19(b)).  However, if joinder of a necessary absent party is not feasible, the court must then determine whether the absent party is "indispensable," applying the four factors set out in Fed. R. Civ. P. 19(b).  See *Liggon-Redding v. Am. Sec. Ins. Co.*, CA No. 06-227, 2009 U.S. Dist. LEXIS 87331, *10 (M.D. Pa. Sept. 23, 2009); *General Refractories,* 500 F.3d at 320-321.   If an indispensable party cannot be joined, the "action should proceed among the existing parties *or* should be dismissed."  Fed. R. Civ. P. 19(b)(emphasis supplied). Where the court's jurisdiction arises from diversity, "the question of whether a party is necessary or indispensable is a question of federal law." *Huber*, 532 F.3d at 247.

This Complaint alleges Wrongful Use of Civil Proceedings and Abuse of Civil Process, two torts, the gravamen of which is the harm to a person who is subjected to litigation filed in bad

faith.  Regardless of whether, for example, Mr. Miller may have a claim, there is no reason why his claims would necessarily have to be litigated together with Ellner's claims.  Their harms are not intertwined nor are they necessarily identical.[6]  Moreover, this Complaint seeks redress for damage to Ellner's personal reputation and for emotional harm associated with having been sued. His businesses that were also sued in the Bucks County Action are not required to join this action as Plaintiffs in order for Ellner to recover for his personal injuries.  Even if his businesses were also harmed, they still do not need to be parties here for Mr. Ellner's individual claims to be completely litigated.[7]  The businesses' absence from this lawsuit simply does not prevent Ellner from vindicating his own rights for having been wrongfully sued in his individual capacity.

---

[6]     Plaintiff attached the Complaint in the Bucks County Lawsuit as Exhibit A to the Complaint.  (Doc. 1-4).  On its face the Bucks County Lawsuit states thirteen causes of action. Only one of them is specifically directed at Ellner and his businesses, Count X for violation of the Pennsylvania Wiretap Act.  (Doc. 1-4, at ¶¶ 218-225).  There were other causes of action stated against Ellner and his businesses, equally frivolous, but entirely derivative of claims made against Miller, for example, a claim that Ellner aided and abetted Miller and conspired with Miller against Moldovsky and the Moldovsky firm.  Those claims necessarily focus on Miller's conduct. Regardless, all of the claims against Ellner (and his businesses) only were dismissed on November 7, 2019. That is, the claims against Miller continued to be litigated past that point. In general, the Bucks County Action was directed at Miller.  As the Complaint argues, Ellner was included entirely to harass him and cause him to incur expense. (Compl., at ¶ 52).

[7]     The fear of being sued later by Ellner's business entities is a red herring.  First, the statute of limitations likely will have expired on any future claims, since the claims asserted in this Complaint accrued, at the latest, on November 7, 2019.  While there are still may be time remaining in which Ellner's companies could file suit, it is unlikely they will do so, since they have not already.  Ellner does not control Miller.  Even if he did, Miller's claims are entirely independent of Ellner's—different claims were asserted as against Miller in the Bucks County Action. Moreover, the Bucks County Action was not voluntarily dismissed as against Miller.  Whether that case has yet resolved is not factually part of these pleadings.  While the Court may go outside the pleadings to resolve the issue, the Defendants have not asked the Court to do so by putting facts supporting this defense in front of the Court on the motion to dismiss.

In addition, arguing that Mr. Eller will file later file a second lawsuit against these Defendants on behalf of his businesses is non-sensical.  Doing so would create unnecessary expense.  Filing one lawsuit is in the best interest of economy.

The same is true as to the inclusion of Mr. Miller.  This lawsuit is directed at vindicating Andrew Ellner's personal, individual rights. Ellner does not have standing to sue on behalf of Mr. Miller.  Harm to Miller is not harm to Ellner under the circumstances presented by the Bucks County lawsuit.  Moreover, Ellner's claim accrued before any claim may have accrued for Miller, if it has, and could expire before Miller's claims would be ripe.  A claim for wrongful use of civil proceedings does not ripen until after a termination in favor of the party bringing the suit is filed, through any appeals process.  *Ludmer v. Nurnberg,* 553 A.2d 924, 926 (Pa. 1989). When this matter terminated in favor of Ellner, Moldovsky was still pursuing claims against Miller in Bucks County.  Ellner should not have to risk the expiration of his claims while Miller's claim could potentially ripen.  The cases need not be brought together, because they are entirely independent.

Applying the *General Refractories* analysis, Miller is not a necessary party here.  First, joining him will deprive the Court of subject matter jurisdiction because Miller, a Pennsylvania resident, would be joined as a plaintiff, destroying complete diversity.  Under the circumstances, *General Refractories* and its progeny instructs that necessary joinder requires an inquiry into whether there would be inconsistent results if Miller is not joined.  *General Refractories*, 500 F.3d at 313 (emphasis in original); *Huber*, 532 F.3d at 248.  There is no chance that there would be an inconsistent result if Miller were to pursue his claims in a separate action.  Miller's claims are independent of Ellner's.  Miller's litigation expenses for the Bucks County action are not the same as Ellner's, since they were not jointly represented.  Any harm to Miller's reputation or to his business, or any emotional distress he may have suffered are damages unique to Miller and for which Ellner is not entitled to any redress and *vice versa*.

Since none of these parties that the Defendants have identified are "necessary," they cannot be legally "indispensable." *Janney*, 11 F.3d at 405. Accordingly, there is no basis to require joinder of additional parties or to dismiss this action if Ellner refuses to do so.[8]

### E.   The Doctrines of Lis Pendens, Res Judicata, Collateral Estoppel, and Unclean Hands Do Not Apply.

The Defendants have asserted a number of potential affirmative defenses, each of which are unavailing. Plaintiff does not wish, by his providing a response, to suggest that it would be appropriate for this Court to convert the motion to a motion to dismiss. Plaintiff does believe it is within the Court's purview to review these affirmative defenses at the motion to dismiss stage and may do so without triggering conversion of the motion to a motion for summary judgment.

### 1.   There is no prior pending action alleging that Ellner violated the Pennsylvania Wiretap Act.

Pursuant to the doctrine of *lis pendens*, dismissal of a cause of action may be appropriate when the same parties are involved in two pending lawsuits, the same rights are asserted in both, and identical relief is sought in another action. *Crutchfield v. Eaton Corp.*, 806 A.2d 1259, 1262 (Pa. Super. 2002). The purpose of the *lis pendens* doctrine is to protect a defendant from being forced to defend multiple suits on the same cause of action at the same time. *County of Dauphin v. City of Harrisburg*, 24 A.3d 1083 (Pa. Commw. Ct. 2011). Critically, the doctrine of *lis pendens* will potentially act as a bar to the claim that was filed second. A prior pending state court action will not bar proceedings in a federal court for the same claim. *McClellan v. Carland*, 217 U.S.

---

[8]     Indeed, this request for compulsory joinder is curious. It remains to be seen why the Defendants would want to encourage more claims filed against them by additional plaintiffs in this case, or to be subject to additional liability when, at present, the claim is limited to liability to one party. Query also whether the Defendants are tacitly admitting that they are liable, not just Ellner, but these other parties, too, by arguing that there should be more plaintiffs in this action in the interest of fully and fairly adjudicating the claims asserted. Such admission should weigh heavily in favor of denying this motion to dismiss.

268, 282 (1910). It is within this Court's discretion to decide to hear this dispute, if it determines that any other prior pending litigation is pending in a state court. *Will v. Calvert Fire Insurance Co.*, 437 U.S. 655 (1978).

The Defendants do not identify any *prior* pending actions in which either Moldovsky or his firm have brought suit against Ellner under the Pennsylvania Wiretap Act (other than the dismissed Bucks County Action claim) or in which Ellner has sued Moldovsky, his firm, and Pomerantz for filing a frivolous claim against him in Bucks County, Pennsylvania. Rather, they argue that they recently filed two actions, one in New York and one in this Court ostensibly raising similar claims under the Wiretap Act against Ellner each filed *after* this action was filed.[9] These lawsuits are obvious attempts to circumvent proceedings in this Court. The doctrine of *lis pendens* may be raised as a defense in one of those newer actions to bar one or the other of *them* from proceeding. *Lis pendens* not apply to bar this Complaint.

The Defendants, in any event, do not identify any Complaint between these parties in which Ellner is the Plaintiff against Moldovsky and or the Moldovsky firm, as Defendants, alleging claims of wrongful use of civil proceedings, which is a Pennsylvania statutory claim, or for abuse of civil process under Pennsylvania law for having filed the Bucks County Action. See generally, Doc. 23-2, Declaration of Brem Moldovsky. At best, the Declaration seems to argue that Ellner tried to argue in a piece of New York litigation that his legal expenses for the Bucks County Action should be included as an element of damages and Mr. Moldovsky asked for the Court to strike that request as irrelevant to the claims being litigated, which relief was denied. (Doc. 23-2 at pp. 15). But Ellner requested leave to supplement the record so that the Court could consider the abusive

---

[9]     Neither lawsuit has been properly served on Ellner. Attaching them to a motion to dismiss is not service. Argument about those complaints could be prejudicial to Ellner under the circumstances, as he is under no obligation to plead at this time.

litigation.  There is no allegation that such leave was granted.  If the supporting record was not before the New York Court, then the issue was not previously fully litigated. In any event, Ellner did not ask the New York Court to determine whether the filing of the Bucks County Lawsuit as against him violated Pennsylvania's Dragonetti Act.[10]  Moldovsky acknowledges that his newly filed actions were filed after this one.  (Doc. 23-2 at p. 17, ¶ 72).

Critically, there are no other actions between and among Ellner and the Moldovsky parties that includes the adjudication of any claims by Mr. Ellner against Mr. Pomerantz.  The doctrine of *lis pendens* cannot possibly bar the wrongful use of civil proceedings claim as against Mr. Pomerantz.

Accordingly, this defense in inapplicable and does not form a proper basis for dismissal of this lawsuit.

### 2.    Neither res judicata nor collateral estoppel bar this Complaint.

Collateral estoppel, or issue preclusion, prevents a question of law or issue of fact from being relitigated once it has been fully and fairly adjudicated in court. *Day v. Volkswagenwerk Aktiengesellschaft,* 464 A.2d 1313, 1318 (Pa. Super. Ct. 1983).  Collateral estoppel applies where:

> (1) the issue decided in the prior action was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the [issue] is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the [issue] is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

---

[10]    Such inquiry would have no possible probative value in defense of Moldovsky and his firm's request for the imposition of an attorney's charging lien for which there is not claim that any fees became due and owing to Moldovsky or his firm by Ellner for that particular piece of litigation.  The claim was not the same, nor was the issue.

*Grant v. GAF Corp.*, 608 A.2d 1047, 1053 (Pa. Super. 1992) (citations omitted; bracketed material added).

      *Res judicata*, or claim preclusion, applies to bar claims that have been actually litigated. The doctrine applies to final judgments entered by a court of competent jurisdiction after a party has a reasonable opportunity to fully litigate a claim. *See Burke v. Pittsburgh Limestone Corp.*, 375 Pa. 390, 396, 100 A.2d 595 (Pa. 1953). The purpose of the rule is to avoid the possibility of inconsistent verdicts. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Ronis*, 1975 Pa. Dist. & Cnty. Dec. LEXIS 301, 4-5, 73 Pa. D. & C. 2d 588 (1975). In determining whether the doctrine of *res judicata* should be applied "'[t]he essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appeal and assert their rights.'" *Rudolph v. Zoning Hearing Bd. of College Township*, 80 Pa. Commw. 28, 32 (1984); see also *Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828, 833-34 (Pa. Super. 2008).  Moreover, *res judicata* will bar future claims between the same parties that may not have been actually litigated, but could have been.  *LSI Title Agency, Inc. v. Evaluation Svcs.,* 951 A.2d 384, 392 (Pa. Super 2008)(internal citations omitted).

      Neither of these doctrines are applicable to this case.  The Complaint very narrowly argues that the Defendants filed the Bucks County Action against Ellner in violation of Pennsylvania's Dragonetti Act and that Moldovsky and the Moldovsky Firm abused legal process in bringing the Bucks County Action against Ellner.  The Complaint is narrowly tailored to make claims solely about the propriety of that lawsuit, and does not make any claims at all regarding any of the additional litigation that may exist in other courts between Ellner and Moldovsky/the Moldovsky Firm.  The motion to dismiss does not identify any other lawsuit in which it was decided that Moldovsky/the Moldovsky Firm brought valid or meritorious claims against Ellner for violating

the Pennsylvania Wiretap Act.  Indeed, that claim has never been litigated, nor has Ellner filed a legal challenge in any other court against Moldovsky, the Moldovsky Firm or Pomerantz asserting violation of the Dragonetti Act.  At best, Ellner argued in defense of a claim against him by Moldovsky in New York, that an attorney's charging lien should not entered because of the existence of the Bucks County Action, but the New York Court did not have any record of the proceeding in front of it from which to make any particularized ruling on the issue.  Moldovsky does not allege, nor could he, that the New York Court was asked to make any determination of whether the Bucks County Action was filed in violation of Pennsylvania's Dragonetti Act or whether it was an abuse of process under the Pennsylvania law.  No determination was made as to whether that litigation was abusive and there is no evidence that the New York court considered the argument or made any finding about it when deciding the issue before it: whether to impose an attorney charging lien (Doc. 23-2 at pp. 15-16).

The Bucks County Action is the only action filed by Moldovsky and the Moldovsky Firm against Ellner alleging violation of the Pennsylvania Wiretap Act that predates this litigation. Moldovsky claims to have filed *two* recent actions raising those claims, but those suits have not yet even been served. Accordingly, the issues have not been fairly litigated in any court.  (Doc. 23-2 at p. 17, ¶ 72).

While there may be other litigation between these parties in other courts, Pomerantz is not a party to that litigation, the cases (other than the two newly filed cases that have not been litigated at all or even served) do not involve the causes of action asserted in this action.  The claims in this action have not been fully and fairly litigated.  Accordingly, neither collateral estoppel nor *res judicata* are applicable as defenses to this Complaint.

22

### 3. The doctrine of unclean hands is not a proper defense to this action.

The doctrine of unclean hands is a defense in an action seeking equitable relief. *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 174 (3d Cir. 2001) (citing *Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 245 (1933)). A party seeking to raise an unclean hands defense must show: "(1) the party seeking *equitable relief* committed an unconscionable act; and (2) the act is *related to the claim upon which equitable relief is sought*." *Scherer Design Group, LLC v. Ahead Engineering, LLC,* 764 Fed. Appx. 147, 150 (3d Cir. 2019)(emphasis supplied).

There are two claims raised in the Complaint: wrongful use of civil proceedings and abuse of civil process. These are both legal claims. Accordingly, the unclean hands defense, which applies only in an equitable action, does not apply as a valid defense to this Complaint and cannot form a proper basis to dismiss it.

### F. The Complaint Properly States Claims for Wrongful Use of Civil Proceedings and Abuse of Process.

#### 1. The Complaint properly pleads each element of a claim for Wrongful Use of Civil Proceedings under Pennsylvania's Dragonetti Act, 42 Pa.C.S.A. § 8351, *et seq.*

##### a. The Defendants procured, initiated or continued a civil proceeding against Ellner in violation of the Dragonetti Act.

By their Motion, Defendants seek dismissal of Count I, Plaintiff's claim under the Dragonetti Act, 42 Pa. C.S. § 8351, *et seq.* The Dragonetti Act (the "Act") provides a statutory cause of action for the wrongful use of civil proceedings.[11] The elements of a claim under the Act are as follows:

---

[11] The Dragonetti Act was enacted in 1980. Prior to that time, a claim for wrongful use of civil proceedings arose under the common law. The Defendants rely on a number of cases addressing various elements of a wrongful use of civil proceedings claim, which arise from the common law in the early part of the twentieth century, predating the Act. Their cases are inapposite in resolving the sufficiency of the current statutory claim, and should be disregarded.

### § 8351 Wrongful use of civil proceedings.

**(a) Elements of action.—**A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) the proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351.

Thus, under Section 8351(a) of the Act, any person who "takes part in the procurement, initiation or continuation of civil proceedings against another," may be liable in an action by the "other." 42 Pa. C.S. § 8351(a). Notably, section 8351(a) uses the term "civil proceedings," rather than the terms "civil action," "civil case," or "complaint."  In *Raynor v. D'Annunzio,* 243 A.3d 41 (Pa. 2020), the Pennsylvania Supreme Court addressed the Dragonetti term "civil proceedings," and thereby limited the type of claims that may be brought under the Act. In doing so, the Supreme Court recognized that its prior decisions had "consistently" accepted Dragonetti claims arising from the initiation (or continuation) of a legal action, and declined to permit Dragonetti claims based on the initiation (or continuation) of something less than a legal action, such as the petition for the award of sanctions lodged against one of the defendants' lawyers in *Raynor*.  Perhaps recognizing the majority opinion's failure to present any helpful guideline or test, Justice Wecht attempted to do so in his concurring opinion in *Raynor*, stating the following:

A bright line is available, ensuring that the phrase 'civil proceedings' in Section 8351 of the Dragonetti Act is not transformed into a catch-all for every conceivable act to which litigants might resort in a given case. Such "proceedings" are properly limited to claims (complaints, petitions for injunctive

24

> relief, and the like) and counterclaims - - actions that invoke the
> jurisdiction of a court.  This comports with the statute's use of the
> words "procurement" and "initiation" when describing the
> prohibited acts taken "against another" that would "subject [the
> other] to liability . . . for wrongful use of civil proceedings."
> Contempt hearings and motions for sanctions, by contrast, are
> ancillary to the underlying civil action and thus do not fall within
> the ambit of "civil proceedings."

*Raynor,* 243 A.3d at 57.

While Defendants rely on the latter decision in *Raynor,* that decision is neither helpful nor material here. Plaintiff's Dragonetti Act claim is not based on any proceedings that were ancillary to an underlying civil action, but on Defendants' wrongful initiation of an action against him. Applying the "bright line" approach identified by Justice Wecht highlights the obvious difference between the type of ancillary action in *Raynor* (a petition for sanctions against a non-party) and the underlying proceedings on which Plaintiff's Dragonetti claim is based, a direct legal action in Bucks County, initiated by Defendants (as the plaintiffs) against Plaintiff (as the defendant). The current action unequivocally alleges that Defendants caused a frivolous complaint (followed by a series of equally frivolous amended complaints) to be filed against Plaintiff.  This is necessarily the "initiation" of a civil proceeding, for purposes of the Act.

The *Raynor* decision addresses the definition of "civil proceedings" to be used when a claim brought under the Act does not fit squarely into the categories of complaint or counterclaim. However, Raynor did not repeal the Act, or otherwise change the elements of a statutory claim for wrongful use of civil proceedings. Here, Plaintiff has plainly alleged the classic presentation of a claim under the Act: that Defendants (i) initiated and continued civil proceedings against Plaintiff by filing a complaint, (ii) without probable cause to believe that their claim against Plaintiff was meritorious, (iii) primarily for an improper purpose, and (iv) the proceedings terminated in favor

of Plaintiff.  These elements remain unaffected by the Pennsylvania Supreme Court decision in *Raynor*, which is not helpful to Defendants' position.

> **b.**     **The Defendants did not have probable cause or a proper purpose for bringing a claim when it filed its complaint against Ellner.**

To state a cognizable claim for wrongful use of civil proceedings under the Act, a plaintiff must establish that another person initiated civil proceedings against him with a malicious motive, and without probable cause.  *Ludmer v. Nernberg*, 640 A.2d 939, 942 (Pa. Super. 1994).  The Act defines the existence of probable cause as follows:

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:
>
> (1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;
>
> (2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or
>
> (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa. C.S.A. § 8352.

Whether civil proceedings have been wrongfully used turns on the plaintiff's ability to demonstrate that the defendant procured, initiated, or continued proceedings without probable cause to do so.  *McNeil v. Jordan,* 894 A.2d 1260, 1275 (Pa. 2006).  Moreover, The Pennsylvania Supreme Court in *McNeil v. Jordan,* albeit in dicta, opined that civil proceedings are wrongly used where "the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based." *McNeil,* 894 A.2d at 1275.  The Supreme Court proceeded to compare the tort of wrongful

26

use of civil proceedings to the prohibition in the rules of civil procedure against vexatious pre-complaint discovery, such as "a deposition sought in bad faith" or discovery designed only to "annoy, embarrass, oppress, burden, or expense any person." *Id.* Indeed, the Supreme Court observed that the goal of the Dragonetti Act is to prevent bad faith conduct in litigation. *Id.*

A probable cause analysis under the Act demands "hindsight evaluation" of a litigant's reasons for bringing suit in the first instance. *McNeil,* 984 A.2d at 1275-76. The Act makes clear that probable cause exists if, for example, an attorney of record believes "in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party." 42 Pa.C.S. § 8352(3). On the other hand, under the Act, an attorney who knowingly prosecutes a groundless action to accomplish an improper purpose is subject to the same liability as any other person violating the Act. *See, e.g., U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002), *abrogated in part on other grounds*, *Langman v. Keystone Nazareth Bank & Trust Co.*, 502 Fed. Appx. 220, 225 (3d Cir. 2012) ("[A]an attorney who knowingly prosecutes a groundless action to accomplish a malicious purpose may be held accountable under the Act.") (citation omitted); *Schmidt v. Currie*, 470 F.Supp.2d 477, 481 (E.D. Pa. 2005) ("[A]n attorney who knowingly prosecutes a groundless action to accomplish a malicious purpose is liable under the Dragonetti Act")(citing *U.S. Express Lines*); *Broadwater v. Sentner*, 725 A.2d 779, 784 (Pa. Super. 1999) ("If however, the attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose, as, for example, to . . . . harass the person proceeded against by bringing a claim known to be invalid, he is subject to the same liability as any other person.").

Furthermore,

> The plaintiff need not present a "confession" that the defendant acted with an improper purpose. *Gentzler v. Atlee*, 443 Pa. Super.

> 128, 660 A.2d 1378, 1385 (Pa. Super. Ct. 1995). Instead, an
> improper purpose may be inferred where the underlying action was
> filed without justification. *Id.*

*Beasley v. Hartman*, Civ. A. No. 01-0973, 2002 U.S. Dist. LEXIS 21517 at *14-15 (E.D. Pa. Nov.

6, 2002); *see also Broadwater*, 725 A.2d at 784 ("An improper purpose may be inferred where the

action is filed without justification.") (citation omitted); *Schmidt*, 470 F.Supp.2d at 480 (similar)

(citing *Broadwater*). Improper purpose may be inferred from a lack of probable cause. *Buchleitner*

*v. Perer*, 794 A.2d 366, 377-78 (Pa. Super. 2002); *see also Miller v. St. Luke's Univ. Health*

*Network*, 142 A.3d 884, 897-98 (Pa. Super. 2016).[12] There is no question that whether Defendants

had probable cause to pursue their Bucks County claims against Ellner, and whether they acted

primarily for an improper purpose, both present issues of fact, which must be determined by a jury.

At the motion-to-dismiss stage, the only proper consideration is whether the Complaint

properly pleads facts that could support the elements of a Dragonetti Act claim. Plaintiff's

Complaint properly pleads facts, that if assumed true,[13] support the probable cause and improper

---

[12]     The *St. Luke's* case is instructive for the Court. Among other things, it disproves
any argument positing that a multi-defendant case may not be regarded, as a matter of law, as
having been initiated with probable cause, if some of the claims in it survive a motion to dismiss,
or preliminary objections. In *St. Luke's*, the claims against two of the defendants were dismissed.
Those defendants successfully pursued Dragonetti claims against St. Luke's, while St. Luke's
continued to litigate its claims against the remaining defendants. As *St. Luke's* demonstrates, there
is no requirement that a multi-defendant action must terminate in favor of all parties, for any
prevailing defendant to recover under the Act. Therefore, any argument that Defendants' claims
against Plaintiff did not terminate in his favor, because the Bucks County claims against Mr. Miller
continued after Plaintiff was dismissed, must be rejected. The *St. Luke's* case also demonstrated
that probable cause may not be regarded as demonstrated, as a matter of law,

[13]     For purposes of resolving this motion, the Court cannot consider the many facts
proffered by the Defendants, which go well beyond the pleadings. On a rule 12(b)(6) motion, the
Court may not consider facts outside of the pleadings. If it does so, the motion is converted to a
summary judgment motion under Rule 56. The Court should not do so. The parties have not had
an opportunity to engage in discovery and Plaintiff is without the ability to cross examine Mr.
Moldovksy concerning the various and sundry assertions made in Moldovsky's declaration, or to
develop a record in any other way. Without engaging in any response to the Moldovsky

purpose elements for Plaintiff's claim under the Act.  According to the Complaint, Defendants initiated the Bucks County action against Plaintiff, and continued to refile amended complaints there, without probable cause (Compl., ¶¶ 33-37) and, in reality for the purpose of harassing Plaintiff and forcing him to expend funds on legal fees and costs (Compl., ¶ 52). Thus, Defendants' Motion should be dismissed.

### c.   The Bucks County Action terminated in Ellner's favor.

To establish a cognizable claim under the Act, a plaintiff must demonstrate that the underlying action terminated in his favor.  Defendants argue that the voluntary dismissal of the Bucks County lawsuit does not constitute a termination, or decision on the merits, in Plaintiff's favor for purposes of triggering the Act.  While a voluntary dismissal will not automatically trigger Dragonetti liability, it can do so if the circumstances warrant it.

The question of whether an underlying claim terminated in favor of a Dragonetti plaintiff, for purposes of the Act, requires an evaluation of the surrounding circumstances.  For that reason, the proposition that the termination of the Bucks County claims against Plaintiff may be regarded as a one in his favor may not be excluded, as a matter of law. The issue rests on the resolution of factual issues that must be determined at trial.

Indeed, in *Miller v. St. Luke's University Health Network,* 142 A.3d 884 (Pa. Super. 2016), the Pennsylvania Superior Court affirmed a jury verdict finding St. Luke's Health Network ("St. Luke's Hospital") and its attorneys liable for violating the Dragonetti Act, after the underlying claims against the Dragonetti plaintiff were voluntarily dismissed. There, St. Luke's Hospital had commenced the underlying litigation against multiple defendants, including both individuals and

---

declaration, Plaintiff reminds the Court that Mr. Pomerantz is also a defendant in this action, and has absolutely no role in any litigation that may exist in New York involving Ellner and the Moldovsky parties.

their attorneys.  It was later proven that the claims against one of the individual plaintiffs, Mr. Miller, were commenced by St. Luke's Hospital for the express wrongful purpose of forcing Miller to waive his attorney-client privilege, so that the Hospital could pursue a vendetta against Miller's attorneys, prominent lawyers who often sued St. Luke's for medical malpractice.

Mr. Miller and his co-plaintiff brought a Dragonetti claim against St. Luke's Hospital and its lawyers. They argued that their claims under the Act accrued as soon as they were voluntarily dismissed from the underlying lawsuit by St. Luke's Hospital. While the Hospital continued to litigate its claims against the remaining defendants in the underlying action, Mr. Miller and his co-plaintiff sued to vindicate their rights under the Act and won.  *St. Luke's,* 142 A.3d at 888.  The verdict on their claims under the Act was affirmed on appeal.

The *St. Luke's* case demonstrates that Pennsylvania courts recognize that liability under the Act may be triggered even by a voluntary dismissal, if the surrounding circumstances suggest that the civil proceeding was commenced without probable cause and primarily for an improper purpose and that the dismissal was otherwise tantamount to a determination on the merits.

Defendants argue that their Bucks County claims against Plaintiff were meritorious and supported by probable cause because "certificates of merit were filed below."  Certificates of merit are legal documents required by Pennsylvania state law to be filed when claims are made against a professional in a claim for professional liability. While it may be true that they were filed in Bucks County in connection with Defendants' claims (a fact outside of the record, which may not be considered), any such filing would not have been likely or proper, since Ellner was sued there for allegedly violating a Pennsylvania wiretapping statute, and not for any professional liability. (Plaintiff is not a physician or attorney). Rather, as in the *St. Luke's* case, Plaintiff and his attorney were sued in Bucks County together, although on distinct claims.  After Defendants voluntarily

30

dismissed the underlying claims against Plaintiff, Defendants continued to litigate their Bucks County claims against Plaintiff's attorney.  Regardless of whether the dismissal of the underlying claims against Ellner was with, or without, prejudice, the Bucks County action has been effectively dismissed against Plaintiff, with prejudice, because the statute of limitations bars any claim against Ellner for allegedly wrongfully taping or recording conversations with Defendants.  According to the Bucks County action, Plaintiff was liable for such conduct, in which he engaged in 2017 and 2018.  (Doc. 1-4, ¶¶ 56-65, 218-225). The applicable statute of limitations for claims under the Pennsylvania Wiretap Act, 18 Pa.C.S. § 5701, *et seq*., is two years.  45 Pa.C.S. § 5524 (7); *Ideal Aerosmith, Inc. v. Acutronic United States, Inc.,* Civ. A. No. 07-1029, 2007 U.S. Dist. LEXIS 91644, at *7-8 (W.D. Pa. Dec. 13, 2007).  By November 7, 2019, the date on which Defendants voluntarily dismissed the underlying action against Plaintiff (Doc. 1, Compl., at ¶ 43), the statute of limitations for any future claim raising alleged wiretapping violations in 2017 was nearly expired, and the statute of limitations for any such alleged conduct in 2018 expired well before the supposed 2021 filing by Defendants of new actions in Pennsylvania and New York.. Insofar as those new actions may seek damages resulting from alleged violations by Ellner of the Pennsylvania Wiretap Act, any such claims are, on their face, barred by the statute of limitations.

Once a claim was voluntarily dismissed, it is if it were never filed.  Accordingly, Defendants' original commencement of their claims against Plaintiff in Bucks County did not toll the statute of limitations, for purposes of any future re-filing of the same claims.  *Marra v. Smithkline Beecham Corp*., 789 A.2d 704, 706 (Pa. Super. 2001) ("[o]nce a case has been discontinued, the plaintiff may commence a second action . . . so long as the statute of limitations on the second action has not expired").   For all intents and purposes, when the Bucks County claim against Plaintiff was voluntarily dismissed by Defendants, it was, effectively, a final

dismissal with prejudice. Those claims are now barred by the statute of limitations and may never be timely refiled.

Plaintiff did not file his current claim under the Dragonetti Act immediately, once it accrued. He did not do so until December 2020, once it was crystal clear that the limitations period for those claims alleged against him in Defendants' underlying Bucks County action would bar the same claims from being properly re-filed in a different forum. Here, the jury will be able to consider the timing of Plaintiff's filing of this action, as well as the fact that no new action asserting the same claims that were voluntarily dismissed in Bucks County was timely filed by Defendants, as evidence of finality of the voluntary dismissal. The jury may well conclude that, under the circumstances, that dismissal effectively constitutes one with prejudice, as well as a termination in favor of Plaintiff.

The jury will also be able to consider that the Bucks County Action was amended multiple times, but those amendments were never designed to address the issues Plaintiff raised in Bucks County by preliminary objection, including lack of personal jurisdiction and the futility of the claims on the merits. If the Defendants truly believed the Bucks County claims against Plaintiff could and should be pursued in another forum as they now argue, they had ample opportunity to refile the action in New York before the statute of limitations expired. The circumstances surrounding the dismissal of the Bucks County claims against Plaintiff demonstrate that Defendants had no intent to actually recover under the Pennsylvania Wiretap Act, and that they knew full well that they could not prevail. Regardless, they continued to refile complaints containing this frivolous claim, so that Plaintiff would continue to have to expend funds to defend

against it.[14]  In the final analysis, Defendants withdrew the Bucks County lawsuit as against Ellner, in a purposeful effort to attempt to preclude any claims under the Dragonetti Act.  However, Pennsylvania law will permit a voluntary dismissal to trigger the Dragonetti Act to avoid this kind of wasteful gamesmanship.  Because Defendants' conduct is precisely the type meant to be regulated by the Dragonetti Act, this Court should give it no sanction.  Instead, the Court should recognize the factual issues that should be left to the jury, with respect to whether, and to what extent, the circumstances here preclude Plaintiff from maintaining that the Defendants' dismissal below, without prejudice, supports the proposition that said dismissal constituted a termination in favor of Plaintiff on the merits.  In any event, without discovery and a full record, Plaintiff's Dragonetti claim may not be dismissed on the basis of this issue.

**2.      The Abuse of Civil Process Claim is Properly Pleaded and Cannot Be Dismissed.**

The tort of abuse of process is defined as the use of legal process against another "primarily to accomplish a purpose for which it is not designed."  *Shiner v. Moriarty,* 706 A.2d 1228, 1236 (Pa. Super. 1998) (quotation omitted); *see also Rosen v. American Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993)(same). To establish a claim for abuse of process, it must be alleged that the defendant "(1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff."  *Shiner*, 706 A.2d at 1236.

Abuse of process is "the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa.

---

[14]      In Pennsylvania state court, a complaint may be amended as a matter of right any time a preliminary objection is filed.  Unlike in this Court, where Fed. R. Civ. P. 15 limits the number of amendments as a matter of right, there is no such Pennsylvania procedural rule.

Super. 2002) (citation omitted).   "The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure."  *Shiner*, 706 A.2d at 1236.

With respect to the improper purpose, or second element of abuse of process, Defendants Moldovsky and his firm (the "Abuse of Process Defendants") argue that the Complaint fails to allege any perversion of the legal process for a purpose for which the process was not designed. This argument should be rejected.

In the applicable case law, a line is inherently drawn by the use of the word "primarily" in describing the improper purpose element of the tort of abuse of process.  It is only when ill-will or a bad motive on a defendant's part is incidental that it may indicate no abuse of process is made out. Should a defendant's purpose be *primarily* to accomplish something for which the legal process was not designed, abuse of process may be established:

> The significance of [the word 'primarily'] is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant.

*American Bank of Rolla*, 627 A.2d at 192 (quoting *Restatement (Second) of Torts*, § 682, comment b). Here, the Complaint does not allege merely an "incidental motive" on Plaintiffs' part.  Instead, Plaintiff alleges that the entire *purpose* of filing the claims against him and filing multiple amended complaints was, and is, *primarily improper*. (Doc. 1, Compl. ¶¶ 61-74). While the Abuse of Process Defendants may deny that allegation, their denial is not evidence. Issues regarding the true purpose of the Abuse of Process Defendants are factual ones, which Ellner is entitled to develop in discovery.  On a motion to dismiss like this one, the critical role of the Court is to determine whether, if taken for their truth, the pleaded facts in the Complaint would entitle Plaintiff to

recovery on his abuse of process claim.  It is of no moment that the Abuse of Process Defendants may have a defense. Such issues are left to their Answer, which has yet to be filed.

A typical abuse of process case may properly rest on the defendant's use of legal process for the purpose of "an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action." *Al Hamilton Contracting Co. v. Cowder,* 644 A.2d 188, 192 (Pa. Super. 1994) (*quoted in Hartenstine v. Bullock*, No. 250 EDA 2015, 2016 Pa. Super. Unpub. LEXIS 1938 at *38-39 (Pa. Super. June 3, 2016)); *see also American Bank of Rolla*, 627 A.2d at 192-93 ("The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.") (citing *Restatement (Second) of Torts,* § 682, comment b). Here, the Complaint alleges that the Abuse of Process Defendants filed their original complaint, as well as repeated amended complaints, in the Bucks County Action, alleging claims against Plaintiff that they knew to lack jurisdiction (since there was no jurisdiction over Plaintiff in Pennsylvania and Plaintiff was not properly served), as well as merit. (Compl., ¶ 33-37, 49-52). According to the Complaint, the entire purpose of the Bucks County action against Plaintiff was to harass him and cause him to incur legal fees and expenses to defend the claims. (Compl., ¶ 52).  Indeed, the circumstances demonstrate that the Abuse of Process Defendants never had any intent to recover damages from Plaintiff in Bucks County.  If they had, they would have refiled the claims against Plaintiff promptly in New York.  Instead, they allowed the statute of limitations to expire. Certainly, the Complaint states the elements for Plaintiff's abuse of process claim.

The Defendants' arguments regarding dismissal of the Abuse of Process claim are not a model of clarity, but it appears they may be arguing that the Complaint insufficiently alleges a claim for abuse of process because the filing of an action does not constitute the use of legal

"process."  In other words, the mere filing of a complaint cannot be abusive, since the purpose of

a complaint is to initiate a lawsuit.  To the extent that the Abuse of Process Defendants are making

that argument, they ignore the fact that each subsequent amended complaint they filed in Bucks

County constitutes a new act beyond their initial filing. Regardless, they are mistaken that a

complaint itself cannot constitute abusive process.

To the extent that the first element of the abuse of process tort requires that the defendant

have used a legal "process," the word "process," "has been interpreted broadly, and encompasses

the entire range of procedures incident to the litigation process."  *American Bank of Rolla*, 627

A.2d at 192 (quotation omitted); *see Shiner*, 706 A.2d at 1237 (same). By the plain meaning of

these words, filing an action is clearly "incident to the litigation process," and courts, including

this Court, have found to that effect. *See, e.g., Hartenstine,* 2016 Pa. Super. Unpub. LEXIS 1938

at *38-39 ("The classic example [of abuse of process] is the initiation of a civil proceeding to

coerce the payment of a claim completely unrelated to the cause of action sued upon.") (quotation

omitted); *Glunk v. Greenwald*, No. 3229, 2013 Phila. Ct. Com. Pl. LEXIS 536 at *6 (Pa. C.P.,

Phila. Co. Nov. 8, 2013) ("process" is sufficiently broad to include, among other things, initiation

of an action); *Park v. Gross,* No. 02453, 2012 Phila. Ct. Com. Pl. LEXIS 229 at *9 (Pa. C.P., Phila.

Co. July 11, 2012) (the first element of the tort of abuse of process was satisfied when [defendants]

filed the Initial Action.") (citation omitted).

Moreover, recent court holdings confirm that the filing of an action may constitute legal

"process," for purposes of an abuse of process claim. *See, e.g., RX Billing Servs., Inc. v. Fazio*,

No. 1778 MDA 2015, 2017 Pa. Super. Unpub. LEXIS 624 at *10-13 (Pa. Super. Feb. 17, 2017)

(reversing sustaining of preliminary objection and finding abuse of process claim based on filing

of lawsuit, for improper purposes of harassment and intimidation, to be sufficiently pleaded);

*Hartenstine,* 2016 Pa. Super. Unpub. LEXIS 1938 at *40-42 (reversing sustaining of preliminary objection, and finding abuse of process claim based on filing (and continuation) of divorce action, for improper purpose of coercion, to be sufficiently pleaded); *Mersky v. Beschel*, No. CI-16-04491, 2017 Pa. Dist. & Cnty. Dec. LEXIS 730 at *1n.2 (Pa. C.P., Lancaster Co. Feb. 8, 2017) (overruling preliminary objection to abuse of process claim that was based on filing of lawsuit, for improper purpose of harassment); *see Park*, 2012 Phila. Ct. Com. Pl. LEXIS 229 at *9 (although abuse of process claim ultimately dismissed for lack of any allegations of illegitimate purpose, court held that the first element of abuse of process "was satisfied when [defendants] filed the Initial Action.").

Even if the applicable law held that the filing of an action primarily for an improper purpose may not be the basis for an abuse of process claim (which, it does not), the abuse of process claim in the Complaint does not mention the "filing of an action" but is, instead, grounded on the Abuse of Process Defendants' continuing effort to file multiple amended complaints (without addressing the legal issues raised in Plaintiff's preliminary objections in Bucks County). (Compl., ¶ 33-37, 52). This continuation of the claims against Plaintiff for an improper purpose is sufficient to overcome a motion to dismiss. *See e.g.*, *Hartenstine,* 2016 Pa. Super. Unpub. LEXIS 1938 at *40-42 (finding sufficient pleading of abuse of process claim based on (filing and) continuation of divorce action for improper purpose of coercion); *Oruska v. Kelly*, No. 1120 MDA 2013, 2014 Pa. Super. Unpub. LEXIS 499 at *18, 22-23 (Pa. Super. Dec. 9, 2014) (affirming trial court's denial of JNOV and post-trial motions concerning abuse of process claim on which verdict was for plaintiff, where evidence supported proposition that defendant continued underlying action, after filing, primarily for improper purpose of retaliation and harassment); *Glunk*, 2013 Phila. Ct. Com. Pl. LEXIS 536 at *6 ("process" is broadly interpreted and "entails the initiation *or continuation of*

an action") (emphasis added); *Palmieri v. Zokaites*, No. GD 11-4430, 2011 Pa. Dist. & Cnty. Dec. LEXIS 356 at *2, 5 (Pa. C.P., Alleg. Co. Oct. 28, 2011) (judgment on pleadings denied on abuse of process claim apparently based on both filing and continuation of declaratory judgment lawsuit; defendant alleged plaintiff "is using" legal process for improper purpose); *see also Shiner*, 706 A.2d at 1236 ("*Pursuing* litigation primarily to harass and cause injury to the adverse party . . . constitutes a sufficient perversion of the process employed here to support a common law claim of abuse of process") (emphasis added).

As a matter of law, Ellner has sufficiently pleaded that the Abuse of Process Defendants abused civil process by filing amended complaints against him in Bucks County that were never designed to state a claim for recovery, but rather were filed simply to harass him and cause him stress, emotional harm, embarrassment, loss of reputation, and to expend money in defense.

> **3.** **The Complaint seeks appropriate forms of relief and the claims for emotional harm and punitive damages should not be dismissed at this early stage of litigation.**

Defendants argue that the Court should strike Ellner's claims for emotional harm and for punitive damages.  Yet, the Defendants recognize that the Dragonetti Act specifically allows for recovery for such damages, if appropriate.  The same is true when for claims of abuse of civil process.

> **a.** **Dragonetti Act Damages**

The Dragonetti Act expressly sets forth those damages that are compensable once a violation of the Act is proved.  The statutory damages provision is found at 42 Pa.C.S. § 8353, which states, in pertinent part:

> § 8353 Damages.
>
> When the essential elements of an action brought pursuant to this subchapter have been established as provided in section 8351

(relating to wrongful use of civil proceedings), the plaintiff *is entitled to recover* for the following:

\*\*\*\*

(2)  The harm to his reputation by any defamatory matter alleged as the basis of the proceedings.

\*\*\*\*

(5) Any *emotional distress* that is caused by the proceedings.

(6) *Punitive damages* according to law in appropriate cases.

42 Pa.C.S. § 8353 (emphasis added).   The provision does not refer to  proof of any of these items of damage but, instead, specifically states that if the elements for a Dragonetti claim (in § 8351) are met, a plaintiff "is entitled to recover for" specified items of damage, including the damage to reputation, emotional distress and punitive damages sought by Plaintiff here.

Accordingly, the damages sought in Plaintiff's Complaint are entirely consistent with the express language of the Act, leaving no legal basis on which to strike any damage claims from the Complaint, or to deny relief for those claims, as a matter of law.  Certainly, Plaintiff will bear the burden of proof on those items of damage at trial, but they are cognizable claims that should not be dismissed.

### b.    Abuse of Process Claim Damages

Defendants challenge whether Plaintiff has properly alleged damages for his abuse of process claim, as well as the type of damages available to him.  While Defendants assert that recovery for emotional injury is not contemplated for a claim for abuse of process, emotional distress or mental pain constitute appropriate items of damage for which a person aggrieved by an abuse of process may recover.  The third element of the abuse of process tort (harm caused by the action of the defendant) is met here.  *See, e.g.*, *RX Billing*, 2017 Pa. Super. Unpub. LEXIS 624 at \*12 (plaintiff's allegations of harm, in the form of efforts and costs to defend against underlying

39

action, were sufficient to meet elements of abuse of process); *Hartenstine*, 2016 Pa. Super. Unpub. LEXIS 1938 at *40-41 (abuse of process claim sufficiently pleaded, where plaintiff alleged damages of mental pain, emotional distress, lost revenues, and attorney fees expended in defense of underlying divorce action).

There is no question that, with respect to an abuse of process claim, it is proper under Pennsylvania law to seek not only expended defense costs, but also recompense for attendant emotional distress.  Any objections of Defendants to Plaintiff's sought damages must therefore be rejected.

## IV.      CONCLUSION

For all the reasons stated in this memorandum, there is no basis on which to dismiss this Complaint.  Accordingly, the motion must be denied, and the Defendants should be directed to file an Answer to the Complaint within the timeframe set forth in the Federal Rules of Civil Procedure.

Respectfully submitted:

**HAINES & ASSOCIATES**

 _/s/ Clifford E. Haines_____
CLIFFORD E. HAINES
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
(215) 246-2200 (t.)
(215) 246-2211 (f.)
*Counsel for Plaintiff Andrew Ellner*

Dated: April 19, 2021

## CERTIFICATE OF SERVICE

I, Clifford E. Haines, Esquire hereby certify that a true and correct copy of the

Plaintiff's Memorandum Response in Opposition to Defendants' Motion to Dismiss via the

Court's Electronic Filing system, where it is available for copying or downloading and/or by e-

mail or U.S. Mail, First Class, postage pre-paid.

*/s/ Clifford E. Haines*_____
CLIFFORD E. HAINES (PA  09882)
Email: chaines@haines-law.com
Haines & Associates
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, Pennsylvania 19107
215-246-2200 Phone
215-246-2211 Fax

Date:   April 19, 2021