## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDREW ELLNER, <br><br>         Plaintiff, <br> *v.* <br><br> BREM MOLDOVSKY, LLC, <br> BREM MOLDOVSKY, and <br> GERALD POMERANTZ, ESQUIRE <br><br>         Defendants. | **CIVIL ACTION** <br><br> JURY TRIAL DEMANDED <br><br><br> **NO. 20-6190-KSM** |

### ANSWER AND NEW MATTER BY ALL DEFENDANTS AND COUNTERCLAIMS BY DEFENDANTS BREM MOLDOVSKY, ESQUIRE AND BREM MOLDOVSKY, L.L.C. TO PLAINTIFF'S COMPLAINT

Defendants, through counsel Brem Moldovsky, L.L.C. and Pro se, hereby state the following Answer and New Matters, and Defendants Brem Moldovsky and Brem Moldovsky, L.L.C., through counsel Brem Moldovsky, L.L.C. and Pro se, hereby state the following Counter-Claims to the Plaintiff's Complaint as follows:

### SUMMARY OF DEFENDANTS' POSITIONS

The Defendants incorporate by reference the Defendants' Motion to Dismiss the Plaintiff's Complaint and Reply thereto in further support and refer the Court to the factual background as described therein.  As was plead in that motion, particularly in the Declaration of Brem Moldovsky, Esquire in support (ECF Doc. #23-2), the underlying factual allegations that form the basis of Plaintiff's complaint have already been plead beginning with a Southern District of New York Interpleader Complaint where these allegations were dismissed and found to be baseless by Judge Cote in her October 22, 2018 Charging Lien Decision, continuing

1

through an April 21, 2020 Second Circuit Summary Order that affirmed Judge Cote's determination.  (See, Moldovsky Dec., ECF Doc. #23-2 at Exs. "F" and "Q").  Plaintiff brought the same allegations of fact and claims to the New York Civil Supreme Trial Court, where they were denied as *res judicata* based on Judge Cote's October 22, 2018 Charging Lien determination on April 8, 2021 (Moldovsky Reply Dec., ECF Doc. #26-1 at Ex. "A") or were denied as a basis for one of Lightbox's many requests for sanctions by Judge Cannataro on December 10, 2020 (see, Moldovsky Dec., ECF Doc. #23-3 at Ex. "R"), and to the New York Appellate Department where they were denied as basis for sanctions motions and ordered to be stricken as inappropriate to be part of the record on August 27, 2020  and March 30, 2021. (See, Moldovsky Dec., ECF Doc. #23-3 at Exs. "S" and "Y".)  Bucks County Judge Robert O. Baldi was presented with similar allegations of wrongful conduct and requests for sanctions on that basis, which he did not grant but rather ignored in his August 28, 2019 Order.  (See, Moldovsky Reply Dec., ECF Doc. #26-1 at Ex. "B".)  Collectively, these decisions and orders are referred to herein as the "Prior Orders Denying Relief."[1]  Certainly though there are other prior court decisions and orders from these courts that compliment and further these decisions and orders.

Despite Plaintiff's string of adjectives, the underlying action (Moldovsky v. Miller et al, Court of Common Pleas of Bucks County, Pa., No. 2019-00793) was brought against Plaintiff with probable cause based on Mr. Ellner's counsel Jonathan Miller's legal malpractice and breaches of fiduciary duties, and Mr. Ellner's aiding and abetting, as well as violations of the Pennsylvania Wiretap Act (18 Pa. C.S.A. §§ 5701 et. seq., hereinafter the "Wiretap Act") by

---

[1] Prior orders denying relief may also include additional Decisions and Order od Judge Cote, including dated April 13, 2018 and June 12, 2018 and Orders of Judge Cannataro dated July 8, 2019 and December 18, 2019.  (Moldovsky Dec., ECF Doc.# 23-3 Exs. "D", "E", "G", "H")

Ellner and his entities and related causes of action.[2]  Mr. Ellner has never truthfully disclosed the specific circumstances of the wiretaps (but rather was dishonest about them, their extent and particulars), however, two transcripts of parts of recorded calls were attached with Mr. Ellner's Interpleader Complaint in the Southern District of New York matter (Lightbox Ventures, L.L.C. v. 3rd Home Ltd., et al., No. 16-cv-02379 (S.D.N.Y.)), including at least one that was recorded on Thanksgiving Day while Mr. Ellner knew Mr. Moldovsky was in Pennsylvania so that it was evident that Mr. Ellner has reached into Pennsylvania and broken the laws of Pennsylvania.

The underlying Bucks County action was thereafter initiated with probable cause and sufficient evidence that Mr. Ellner had violated the wiretap act by service of a summons and pre-complaint discovery narrowly focused on Mr. Ellner's wiretaps. Mr. Ellner consistently failed to turn over any information about his recorded phone calls.  The Complaint was amended a number of times to clarify issues, including to clarify that Mr. Ellner and Lightbox aided and abetted Mr. Miller's malpractice and breach of fiduciary duty by being aware of his conflicts of interests in representing Lightbox and Mr. Ellner against the Moldovsky Firm but persisting in retaining and utilizing him against Moldovsky, add more specificity as more was discovered, and then to leave out the Lightbox Defendants and Mr. Ellner.  The action was then discontinued without prejudice in part because it was discovered at oral argument that Mr. Miller still did not carry malpractice insurance making malpractice claims of limited value at the time, and because it was recognized that Mr. Ellner and his lawyers were arguing that  the claims may be better filed in New York.  There were further reasons as well, including that the action was withdrawn in part to bring them in New York and to bring the claims later with other claims that were not yet fully ripe and mature but have since ripened and are currently pending in the Southern

---

[2] A more involved rendering of the additional factual background can be found in the Defendants' Motion to Dismiss the Plaintiff's Complaint and will be further elaborated in a forthcoming Motion for Summary Judgment.

District of New York Action <u>Moldovsky v. Ellner et al.</u>, No. 1:21-cv-02452  and Eastern District of Pennsylvania <u>Action Moldovsky v. Ellner et al.</u>, No. 2:21-cv-01365-ER.

Mr. Ellner's  Complaint fails and his relief must be denied for all the reasons stated herein and including that i) the Complaint's Count I for malicious prosecution lacks the essential element that the underlying action was terminated in favor of Plaintiff, which it was not and actually the claims from the underlying matter are alive, plead, moving forward, being litigated, etc. so that it is impossible that the underlying matter terminated in Mr. Ellner's favor; ii) the claims and allegations of the Complaint have already been alleged by Mr. Ellner and have been adjudicated so that the claims of the Complaint were necessarily determined so they are precluded and estopped by *res judicata* and *collateral estoppel* by decisions of the Southern District of New York, Second Circuit Court of Appeals, Supreme Court of New York, the Bucks County Court of Common Pleas, and the New York Appellate Division, First Department; iii) the Complaint's claims are precluded, undermined and estopped in a number of ways by the recent cases of the Pennsylvania Supreme Court and of this Court, respectively, *Raynor v. D'Annunzio*, Supreme Court of Pennsylvania No. 35 EAP 2019 (Dec. 22, 2020) and *Pendergrass v. Pendergrass*, --- F.Supp.3d ---- (2021); iv) the Complaint fails to prove it can meet the monetary threshold of this Court; iv) the Complaint fails to state a claim as there clearly was probable cause as a matter of law (and no improper purpose) for the complained of steps taken; v) the Complaint fails to state a claim in failing to allege or show malice or improper purpose (except perhaps in self-serving, hollow boilerplate); and vi) the Complaint must be denied due to Plaintiff's unclean hands and based on documentary evidence; vii) the Complaint should be denied, transferred and/or consolidated as the SDNY is the appropriate forum; and vii) the abuse of process cause of action, Count II, fails to state a viable claim in that the complained of suit

sought legitimate and not perverse purposes;  Furthermore, x) the Complaint's requests for

punitive and emotional damages must be denied.

## **PARTIES**

1.   Admitted in part and denied in part.  Defendants lack knowledge and information

sufficient to fully affirm or deny paragraph 1.  It is believed that Mr. Ellner may have an address

at or an alternate address at 206 W. 77[th]Street, Apartment 8W, New York, New York 10024.

Furthermore, it is understood that 206 W. 77[th]Street, Apartment 8W, New York, New York

10024 and 2010 W. 77thStreet, Apartment 8W, New York, New York 10024 may be the same

building or in the same complex.

2.   Admitted. .

3.   Admitted.

4.   Admitted.

5.   Admitted in part and denied in part. This is a conclusion of law to which no response is

necessary.  The Moldovsky Firm initiated the Bucks County Action on February 5, 2019 and Mr.

Pomerantz did not enter an appearance in that matter until March 28, 2019.  The Moldovsky

Firm and Mr. Moldovsky worked on aspects of this and other matters that Mr. Pomerantz did not

work on and each work entirely separate from the other in their separate law practices that are

not involved or related to each other and do not share resources or such.

6.   Denied. This is a conclusion of law to which no response is necessary.  Defendants lack

sufficient information and knowledge to fully affirm or deny the vague allegation of paragraph 6.

It is not clear what is meant by "include one another".  Mr. Moldovsky and Brem Moldovsky,

L.L.C. work at their own law firm, and Mr. Pomerantz works as his own law firm.  Each work

entirely separate from the other in their separate law practices that are not involved or related to

each other and do not share resources or such.

## JURISDICTION AND VENUE

7.      Denied.  This is a conclusion of law to which no response is necessary.  Plaintiff's claim does not exceed $75,000 because the only damages alleged are attorney's fees, and in line with the holdings in the Raynor and Pendergrass cases, actual attorney's fees incurred (if any) must be very nominal and limited as most of the limited activities and fees alleged would have been related to any feasibly reasonable alleged sanctionable issues and thus are not subject to a Dragonetti claim as held by Raynor v. D'Annunzio, Supreme Court of Pennsylvania No. 35 EAP 2019 (Dec. 22, 2020) and Pendergrass v. Pendergrass, --- F.Supp.3d ---- (2021).  Furthermore, it is believed that legal fees paid were or likely were by Lightbox as it apparently paid and was awarded legal fees in its litigation with Third Home and since Lightbox is not a party here any such incurring of legal fees cannot be Plaintiff Ellner's damages here.

8.   Admitted in part and denied in part. This is a conclusion of law to which no response is necessary. The majority of the activities giving rise to this Complaint occurred in New York during a New York representation.

## FACTS

9.   Admitted in part and denied in part.  Mr. Ellner's engagement for representation was with Brem Moldovsky, L.L.C.  This is a conclusion of law to which no response is necessary.

10. Admitted in part and denied in part.  The referenced document speaks for itself and is attached as Exhibit "A" hereto.

11. Denied.  The allegations of paragraph 11 are false and are barred by the doctrines of *res judicata* and collateral estoppel based on the "Prior Orders Denying Relief" set forth in the introductory paragraph above, all of which rejected Plaintiff's factual allegations of misconduct, including related to a billing dispute, and which found the same allegations to be meritless.

There was no actual billing dispute.  Allegations of a billing dispute were fabricated by Mr. Ellner to avoid making payment.  The Southern District of New York found and the Second Circuit Court of Appeals, Supreme Court of New York and the New York Appellate Division, First Department upheld that there was no billing dispute, such that the Appellate Department struck the allegations from Lightbox's Brief (see, Moldovsky Dec., ECF Doc. #23-2 at Ex. "Y") and the New York Supreme Court dismissed them as *res judicata* (see, Moldovsky Reply Dec., ECF Doc. #26-1 at Ex. "A").

12. Denied.  The allegations of paragraph 12 are false and are barred by the doctrines of *res judicata* and collateral estoppel based on the "Prior Orders Denying Relief", all of which rejected Plaintiff's factual allegations of misconduct, including related to a fraudulent amended agreement, and all of which found the same allegations to be meritless.  The Southern District of New York found and the Second Circuit Court of Appeals, Supreme Court of New York and the New York Appellate Division, First Department upheld that there was no extortion, coercion, misconduct, fraud, etc. related to the Amended Agreement, such that the Appellate Department struck the allegations from Lightbox's Brief (see, Moldovsky Dec., ECF Doc. #23-2 at Ex. "Y") and the New York Supreme Court dismissed them as *res judicata* (see, Moldovsky Reply Dec., ECF Doc. #26-1 at Ex. "A").  The Agreement was amended to help Mr. Ellner and to limit the amount of fees Mr. Ellner was obligated to pay up front.

13. Denied.  The allegations of paragraph 13 are false and are barred by the doctrines of *res judicata* and collateral estoppel based on the based on the "Prior Orders Denying Relief", all of which rejected Plaintiff's factual allegations of misconduct, including related to fraudulent or questionable billing practices, and all of which found the same allegations to be meritless.  There was no actual billing dispute, allegations of a billing dispute were fabricated by Mr. Ellner to

avoid making payment.  The Southern District of New York found and the Second Circuit Court

of Appeals, Supreme Court of New York and the New York Appellate Division, First

Department upheld that there was no billing dispute, such that the Appellate Department struck

the allegations from Lightbox's Brief (see, Moldovsky Dec., ECF Doc. #23-2 at Ex. "Y") and the

New York Supreme Court dismissed them as *res judicata* (see, Moldovsky Reply Dec., ECF

Doc. #26-1 at Ex. "A").

14. Admitted in part and denied in part. The Moldovsky Firm requested that Mr. Ellner pay

his legal bills, and Mr. Ellner promised and represented that he would do so and that he always

had.

15. Denied. The Moldovsky Firm's representation was withdrawn on April 13, 2018 upon the

Order of the Judge Cote (Moldovsky Dec., ECF Doc. #23-3 at Ex. "E") because Mr. Ellner failed

to pay his legal fees and for other reasons as set forth in the Firm's application to withdraw.  The

Southern District of New York found and the Second Circuit Court of Appeals affirmed that

there was no fraudulent withdrawal.  The New York Appellate Division, First Department struck

such allegations from Lightbox's Brief (see, Moldovsky Dec., ECF Doc. #23-2 at Ex. "Y") and

the New York Supreme Court dismissed them as barred by the doctrine of *res judicata* (see,

Moldovsky Reply Dec., ECF Doc. #26-1 at Ex. "A").

16. Admitted in part and denied in part.  Mr. Miller was Moldovsky and the Moldovsky

Firm's counsel on a pair of actions and a colleague of Mr. Moldovsky and the Moldovsky Firm.

Mr. Miller was introduced to Mr. Ellner to represent him in a New York Supreme Court action to

enforce Mr. Ellner's legal services agreement and to collect fees due against Mr. Ellner and his

Lightbox entities (Lightbox Ventures, LLC and Lightbox Capital Management, LLC, hereinafter

"Lightbox") by their former counsel Scarola Malone & Zubatov, LLP ("SMZ").  Mr. Miller was

not formally working for Mr. Ellner prior to being introduced to Mr. Ellner but once he was working for Mr. Ellner he did work on the Federal lawsuit as well prior to entering appearance in that case.

17. Denied.  As has already been held pursuant to Judge Cote and affirmed by the Second Circuit, when the Moldovsky Firm was properly withdrawn by the April 13, 2018 Order of Judge Cote , Mr. Miller continued to represent Mr. Ellner and Lightbox in the New York Supreme Court and entered an appearance on behalf of Mr. Ellner and Lightbox for the first time in the Southern District of New York matter for the purpose of filing an attorney's fees petition and ostensibly for post-trial and appeal work.

18. Denied. The allegations of paragraph 18 are false as represented and are barred by the doctrines of *res judicata* and collateral estoppel based on the "Prior Orders Denying Relief, all of rejected Plaintiff's factual allegations of misconduct, including related to a vendetta or attack on Mr. Miller, and all of which found the same allegations to be meritless.  The Moldovsky Defendants informed Mr. Miller after he entered his appearance for Mr. Ellner and Lightbox in the SDNY matter that he was engaging in a conflict of interests or would be very shortly thereafter if he represented Lightbox and Mr. Ellner against the Moldovsky Defendants, his former clients and colleagues, a conflict that manifested before, after and when Mr. Miller filed Lightbox's Interpleader Complaint against the Moldovsky Defendants.  Mr. Miller responded by promising and threatening to make litigation difficult, as plead in the Southern District of New York Action Moldovsky v. Ellner et al., No. 1:21-cv-02452.  Mr. Ellner enabled and assisted this conduct and has continued to do so, as also specifically alleged in the aforementioned federal Southern District of New York Complaint.

19. Denied.  Mr. Ellner was made aware of the prior relationship between the Moldovsky Defendants and Mr. Miller but hired Mr. Miller to represent him and continued ahead with the representation in the SDNY matter despite being notified that Mr. Miller was conflicted counsel, enabled his conflict, and assisted it.  This did not impede the Moldovsky Firm's transition of the SDNY matter to Mr. Miller, however.  Mr. Miller was provided with all relevant materials.  The remaining allegations of paragraph 19 are false and are barred by the doctrines of *res judicata* and collateral estoppel based on the decisions and orders of several Courts determining that Lightbox's claims and allegations are utterly baseless and without merit, including the "Prior Orders Denying Relief,", all of which rejected Plaintiff's factual allegations of misconduct, including related to the dispute between the Defendants and Mr. Miller, and all of which found the same allegations to be meritless.

20. Denied.  The allegations of paragraph 20 are false and misrepresented.  Lightbox filed Interpleader claims against the Moldovsky Firm.  SMZ named the Moldovsky Firm as a co-Defendant with Mr. Ellner and Lightbox in the New York Supreme Court matter.  The Moldovsky Firm made crossclaims against Mr. Ellner and Lightbox, including for unpaid legal fees.  Mr. Ellner and Lightbox made crossclaims against the Moldovsky firm for malpractice and misconduct violative of NY Jud. Law §487, all of which have been withdrawn or denied.  The Moldovsky Firm's account stated and piercing the corporate veil claims against Lightbox remain to be adjudicated.

21. Denied.  The allegations of paragraph 21 are factually inaccurate.  On or about February 5, 2019 the Moldovsky Defendants initiated the Bucks County action (Moldovsky v. Miller et al., Bucks County Court of Common Pleas No. 2019-00793).  Mr. Pomerantz entered an appearance on March 28, 2019, hoping to broker a resolution to the matter.

22. Admitted in part and denied in part. Defendants lack the knowledge and information necessary to affirm or deny paragraph 22 with specificity.  Defendants recognize Fox Rothschild's involvement, but lack information and knowledge sufficient to respond with specificity.  Upon information and belief, Lightbox Ventures, L.L.C. or Lightbox Capital Management, L.L.C. may have engaged Fox Rothschild to represent Mr. Ellner in that matter.

23. Admitted in part and denied in part. The referenced document speaks for itself.  The Moldovsky Defendants initiated their action with a summons and pre-complaint discovery narrowly focused on gathering information generally about the making, transcribing and storing of Mr. Ellner's previously disclosed recorded telephone conversations, which Mr. Ellner refused to provide, which instead forced the Moldovsky Defendants to file a Complaint without the benefit of discovery.  Mr. Ellner, through Fox Rothschild, also filed a motion for a protective order to avoid making discovery turnover.

24. Denied. The referenced documents speak for themselves.  The Moldovsky Defendants initiated their action with a summons and pre-complaint discovery narrowly focused on gathering information generally about the making, transcribing and storing of Mr. Ellner's previously disclosed recorded telephone conversations, which Mr. Ellner refused to provide. There was no motion to take pre-complaint discovery, particularly not by Mr. Pomerantz who was not yet entered his appearance when the Summons with pre-complaint discovery was served. Once the Complaint was filed, standard discovery requests were served to replace the pre-complaint requests.  Mr. Ellner moved through Fox Rothschild to avoid providing any discovery.

25. Denied.  The Moldovsky Firm did not move for leave to take discovery and as such, no discovery motion could have been opposed.

26. Admitted in part and denied in part. The referenced documents speak for themselves. The Moldovsky Firm's pre-complaint discovery requests at that point were moot because a complaint had been filed and, so too Mr. Ellner's motions for protective orders to avoid responding to them were mooted by Judge Baldi in his August 28, 2019 Order following oral argument which required the parties to conduct discovery pursuant to the Pa. RCP in the manner specified following the filing of a complaint. (See, Order, Moldovsky Reply Dec., ECF Doc. #26-1 at Ex. "B".)

27. Denied. The referenced documents speak for themselves.  The Complaint was filed after Mr. Ellner filed a rule to file a Complaint and a motion for a protective order and not following the determination of any discovery or motion for a protective Order as indicated.  A Complaint was already filed by the time Judge Baldi's August 28, 2019 Order.

28. Denied. The referenced documents speak for themselves.  The Complaint was focused on the tortious actions of Mr. Miller and Mr. Ellner and the characterization that the matter was based on claims of a fractured personal friendship between Mr. Miller and Mr. Moldovsky is just that – a characterization separate from the actual plead claims which speak for themselves.  The claims against Mr. Miller sounded in legal malpractice based on his being counsel to the Moldovsky Defendants previously, all of which were supported by expert testimony and a Certificate of Merit, and the claims against Mr. Ellner were credibly related to his hiring, assisting, and aiding Mr. Miller's malpractice and Mr. Ellner's own illegal wiretaps.

29. Admitted in part and denied in part. The referenced documents speak for themselves. Mr. Ellner has already admitted to recording at least two telephone conversations, though Mr. Ellner has been dishonest, evasive and contradictory about the circumstances of the recordings

and the number of recordings that exist which was part of the catalyst of the Bucks County litigation.

30. Denied.  Paragraph 30 is a conclusion of law with which the Defendants disagree and to which no response is required. Paragraph 30 is demonstrably false, which has been shown. Documentary evidence exists and has been provided showing that Mr. Ellner made calls to Mr. Moldovsky's Pennsylvania cell phone with a Pennsylvania area code during times Mr. Ellner knew Mr. Moldovsky was in Pennsylvania, including on Thanksgiving day.  Mr. Ellner has never turned all or the full recordings over and has been dishonest, evasive and contradictory about them, including that he did not allegedly record phone calls and that he has admitted to recording them.

31.  Denied.  Paragraph 31 is a conclusion of law with which the Defendants disagree and to which no response is required.  New York is a single consent state, however, Mr. Ellner can still be legally liable for violating Pennsylvania law against a Pennsylvania citizen while that citizen is in Pennsylvania.  Specifically, the court can find that party to a call who is outside of Pennsylvania can be liable under the PA Wiretap Statute based on a weighing of damage and harm to the victim.  See e.g., Mulder v. Wells Fargo Bank, N.A., 2018 WL 3750627 (W.D.P.A., July10, 2018).  This is particularly true for when Mr. Ellner was or may have been in other 2 consent states when doing some of the recordings, as it is believed he was or likely was.

32.  Denied. Paragraph 32 is a conclusion of law to which no response is required.  The Moldovsky Firm claimed that some, many, or all of the recorded phone calls may be illegal based on Mr. Moldovsky being in Pennsylvania during the phone calls, Mr. Ellner recording someone who was in Pennsylvania when he knew Mr. Moldovsky was in Pennsylvania, and based on Mr. Ellner potentially being in a two-consent state during some, most, or all of the

recordings.  Mr. Ellner has mislead, lied about and/or obscured the information about the circumstances of the recordings.

33. Denied. Paragraph 33 is a conclusion of law with which the Defendants disagree. Paragraph 33 is false.  Although jurisdiction is not a basis for a Dragonetti claim, there were more than sufficient grounds for jurisdiction as to Mr. Ellner in Pennsylvania because of Mr. Ellner's activities directed toward Mr. Moldovsky, a Pennsylvania resident, both 1) relating to the wiretaps and 2) based on retaining a Pennsylvania lawyer, Mr. Moldovsky, (though he is also admitted in New York, obviously) for the New York litigation, and 3) aiding and abetting Mr. Miller's alleged wrongful conduct against Moldovsky.  Mr. Ellner was aware that Plaintiffs were based out of Bucks County, PA and were often in Bucks County, PA (and other places in Pennsylvania), Mr. Ellner regularly mailed payments and materials to the Bucks County, Pennsylvania office, which he utilized and treated as the primary address for contact.  Mr. Ellner also broke the laws of Pennsylvania by reaching into the state to wiretap illegally.  Mr. Ellner through all of his activities was involved with, had more than minimum contacts with and regularly interacted into Pennsylvania.  Through business activities at the center of the litigation Ellner operated on a global level and over various areas of North America with the goal of expansion.  By reaching into and interacting with a Pennsylvania citizen while the citizen was in Pennsylvania and in conducting business and breaking Pennsylvania's laws Mr. Ellner subjected himself to jurisdiction in Pennsylvania and arguments and actions on this basis are probable cause and within being reasonable.

34. Denied.  Paragraph 34 is a conclusion of law with which the Defendants disagree. Paragraph 34 is false.  There was sufficient probable cause to initiate the action including that Mr. Ellner and Lightbox had disclosed two recorded phone calls and indicated there was more

and it was known that Ellner and Lightbox travel frequently to many different states and countries, and as such, their location at the time of all the recordings is not known exactly and for sure.  Mr. Ellner visited and spent time in other states in the relevant time period, which, like Pennsylvania, are also "two consent states", which are believed to include Florida, Nevada and/or California.  The legal precedent including as expressed in the matter of Calcagno vs. Aidman, shows that courts will weigh the differences in standards between two states when one state has a stricter or different standard than the other in order to prevent additional harm or damage to the victim of a violation of Pennsylvania law.  This is also held by the by the <u>Larrison v. Larrison</u>  and <u>Mulder v. Wells Fargo</u> Courts, both of which weighed the harm and damage to a Pennsylvania resident wiretapped by another party outside of Pennsylvania.  There was probable cause to believe Mr. Ellner may have recorded in another two-party consent state, but even if he had not the existing law allows for Pennsylvania Courts to weigh the harm and damage to Pennsylvania residents.

35. Admitted in part and denied in part. The referenced documents speak for themselves. Each Amended Complaint included amplification, elaboration and/or specificity of claims that were previously unknown and/or not as fully amplified.  In part, the Moldovsky Firm sought additional specificity about the phone call recordings through discovery served on Mr. Ellner, which Mr. Ellner moved to avoid answering, forcing amendments that were limited in ability to elaborate further on the wiretap claims against Mr. Ellner until discovery answers would at one point eventually be received.

36. Admitted in part and denied in part. The referenced document speaks for itself.

37. Denied. The referenced document speaks for themselves.  The Complaint was amended a number of times to clarify issues, add more specificity and then to leave out the Lightbox

Defendants and Mr. Ellner and the causes of action and damages related to the Wiretap Act and

Lightbox and Ellner's aiding and abetting legal malpractice.  Each Amended Complaint included

amplification, elaboration or specificity of claims that were previously unknown and/or not as

fully amplified.  This included to clarify that Mr. Ellner and Lightbox aided and abetted Mr.

Miller's malpractice and breach of fiduciary duty by being aware of his conflicts of interests in

representing Lightbox and Mr. Ellner against the Moldovsky Firm but persisting in retaining and

utilizing him against Moldovsky.

38. Admitted in part and denied in part. The referenced documents speak for themselves.

The Complaint was amended a number of times to clarify issues, add more specificity and then

to leave out the Lightbox Defendants and Mr. Ellner and the causes of action and damages

related to the Wiretap Act and Lightbox and Ellner's aiding and abetting legal malpractice.  Each

Amended Complaint included elaboration or specificity of claims that were previously unknown

and/or not as fully amplified.  This included to clarify that Mr. Ellner and Lightbox aided and

abetted Mr. Miller's malpractice and breach of fiduciary duty by being aware of his conflicts of

interests in representing Lightbox and Mr. Ellner against the Moldovsky Firm but persisting in

retaining and utilizing him against Moldovsky.

39. Admitted in part and denied in part. The referenced documents speak for themselves.

Each Amended Complaint included elaboration or specificity of claims that were previously

unknown and/or not as fully amplified.  Thus, the Complaint was amended a number of times to

clarify issues, add more specificity and then to leave out the Lightbox Defendants and Mr. Ellner

and the causes of action and damages related to the Wiretap Act and Lightbox and Ellner's

aiding and abetting legal malpractice.  This included to clarify that Mr. Ellner and Lightbox

aided and abetted Mr. Miller's malpractice and breach of fiduciary duty by being aware of his

conflicts of interests in representing Lightbox and Mr. Ellner against the Moldovsky Firm but persisting in retaining and utilizing him against Moldovsky.

40. Admitted in part and denied in part. The referenced documents speak for themselves.

41. Admitted in part and denied in part. The Defendants lack sufficient knowledge to fully affirm or deny paragraph 41.  If anything, any fees were nominal, since Mr. Ellner claims the amendments related to Mr. Ellner were nominal.  Additionally, any fees, upon information and belief, were paid by one or both Lightbox entities and not by Mr. Ellner.

42. Admitted in part and denied in part. Paragraph 42 is a conclusion of law to which no response is necessary. The referenced documents speak for themselves.  Defendants did not end the claims against Mr. Ellner, however.  The claims were discontinued without prejudice to be brought when other related claims had fully ripened, which has since occurred.  The claims against Mr. Ellner are still alive and pending in the federal court, making Plaintiff's Complaint barred by the doctrine of *lis pendens*.

43. Admitted in part and denied in part.  Paragraph 43 is a conclusion of law to which no response is necessary. The referenced documents speak for themselves.  Defendants did not end the claims against Mr. Ellner or Mr. Miller, rather, they were withdrawn without prejudice because they were better placed in New York with claims that at that time had not yet ripened pending the issuance of Orders in related cases which have since occurred.  The claims are still alive and pending in the federal court, making Plaintiff's Complaint barred by the doctrine of *lis pendens*.

44. Denied.  Paragraph 44 is a conclusion of law to which no response is necessary.  Mr. Ellner has not provided any documentary evidence to suggest he incurred any legal fees at all in defense of the action.  Upon information and belief, any legal fees incurred for Fox Rothschild's

work in the Bucks County action were incurred by one or both Lightbox entities.  Additionally,

since the fees were as a result of Plaintiff's own actions, are not reasonable fees, were incurred

making sanctions requests that were denied and other wasteful activity, and they are not

recoverable.

45. Denied.  Paragraph 45 is a conclusion of law to which no response is necessary.

Although jurisdiction is not a basis for a Dragonetti claim, there were more than sufficient

grounds for jurisdiction as to Mr. Ellner in Pennsylvania because Mr. Ellner availed himself of

Pennsylvania, transacted in Pennsylvania and performed activities and broke Pennsylvania laws

directed toward Mr. Moldovsky, a Pennsylvania resident, both 1) relating to the wiretaps and 2)

based on retaining and continuing to utilize a Pennsylvania lawyer, Mr. Moldovsky, (though he

is also admitted in New York, obviously) for the New York litigation, and 3) aiding and abetting

Mr. Miller's alleged wrongful conduct against Moldovsky.  Mr. Ellner was aware that Plaintiffs

were based out of Bucks County, PA and were often in Bucks County, PA (and other places in

Pennsylvania), Mr. Ellner regularly mailed payments and materials to the Bucks County,

Pennsylvania office, which he utilized and treated as the primary address for contact.

46. Denied.  Paragraph 46 is a conclusion of law to which no response is necessary.  There

was sufficient probable cause for each claim and amendment against Plaintiff, including but not

limited to:

> a.  There was probable Cause pursuant to 42 Pa. C.S. § 8352;
>
> b.  There was probable cause per the expert report of Samuel Stretton, Esq.
>
>     (Moldovsky Dec., ECF Doc. #23-3 at Ex. "I");
>
> c.  There was probable cause per Judge Robert O. Baldi in the underlying Bucks
>
>     County case making various findings and decisions which unquestionably

establish that there was probable cause for the underlying Bucks case as he

maintained the viability of the case upon deciding a first wave of motions;

d.  There was probable cause as evidenced by Judge Baldi stating on the record that

the claims could reach a jury (Moldovsky Dec., ECF Doc. #23-3 at Ex. "L" at

111:22-25;

e.  There was probable cause as a matter of law since the Court's decisions indicated

that there was probable cause;

f.  There was probable cause based on the information known about the wiretaps;

g.  There was probable cause based on the undersigned's knowledge that Mr. Ellner

regularly traveled to and/or owned additional homes in other 2 consent states

including California (Calistoga) and Florida;

h.  There was probable cause based on Plaintiff's former attorney at Fox Rothschild

admitting that they were not handling the recorded phone calls because of the

potential illegality of them;

i.  There was probable cause based on Plaintiff not turning over recordings, lying

about them, and using them abusively to abuse and aid and abet Mr. Miller, raise

false claims, undermine proceedings, etc.;

j.  There was false and misleading misrepresentations made to the Court in the

Bucks case and made here as well, and these include but are not limited to that

Mr. Ellner never called into a Pennsylvania number, which Mr. Ellner repeats in

this matter at ¶30 of his Complaint.  This allegation was disproved swiftly with

phone records showing that Mr. Ellner did call into a Pennsylvania number.  (See,

Phone Records, Moldovsky Reply Dec., ECF Doc. #26-1 at, Ex. "K";

k.  There was probable cause based on the standards articulated by the matter of Calcagno vs. Aidman, which holds that courts will weigh the differences in standards between two states when one state has a stricter or different standard than the other in order to prevent additional harm or damage.  This is also held by the by the Larrison v. Larrison  and Mulder v. Wells Fargo Courts; and

l.  There was probable cause based on Mr. Miller misrepresenting to the Court the extent of his knowledge about the Moldovsky Defendants' financials from his prior representation of them as counsel and the substantial relation to issues in the billing dispute with Lightbox and Mr. Ellner.

47. Denied.  Paragraph 47 is a conclusion of law to which no response is required and with which Defendants disagree.  There was legal basis for an action against Mr. Ellner based on his aiding and abetting Mr. Miller's legal malpractice and based on legal precedent including as expressed in the matter of Calcagno vs. Aidman, shows that courts will weigh the differences in standards between two states when one state has a stricter or different standard than the other in order to prevent additional harm or damage to the victim of a violation of Pennsylvania law. This is also held by the by the Larrison v. Larrison  and Mulder v. Wells Fargo Courts, both of which weighed the harm and damage to a Pennsylvania resident wiretapped by another party outside of Pennsylvania.  There was probable cause for all actions taken, including probable cause to believe Mr. Ellner may have recorded in another two-party consent state, but even if he had not the existing law allows for Pennsylvania Courts to weigh the harm and damage to Pennsylvania residents.  Any allegation that Mr. Moldovsky's suit was based on wiretaps that occurred when both parties were in New York are fully denied.

48. Denied.  Paragraph 48 is a conclusion of law to which no response is necessary.  All of the claims in the Bucks County Action remain viable and are actively litigation in the Southern District of New York Action, <u>Moldovsky v. Ellner et al.</u>, No. 1:21-cv-02452  and Eastern District of Pennsylvania Action, <u>Moldovsky v. Ellner et al</u>., No. 2:21-cv-01365-ER . The Buck's County Action did not terminate in Mr. Ellner's favor because the underlying matter did not end in an enforceable verdict, judgment or decision in his favor, or anything of the sort, but, rather in a voluntary termination done for various reasons, including that the claims could be in New York and to bring the claims later with other claims that were not yet fully ripe and mature (and because Mr. Miller still did not carry malpractice insurance).  The claims against Lightbox were unilaterally withdrawn without prejudice and have been refiled in a New York action with the understanding that they belong in New York, with the Pennsylvania wiretap claims already filed anew in this Court at this time as well.  Nor could The Bucks County Action have terminated in Mr. Ellner's favor with a finding that probable cause was lacking as Judge Baldi made various findings and decisions that unquestionably established probable cause for the underlying Bucks case:  Judge Baldi recognized probable cause in a variety of ways including in that Moldovsky i) had claims that could go to trial (Transcript, Moldovsky Dec. , ECF Doc. #23-3 at Ex. "L",111:22-25) and that ii) that the wiretap claims warranted discovery (Ex. "L" at 60:23).

49. Denied. Paragraph 49 is a conclusion of law to which no response is necessary.  The allegations of paragraph 49 are false and are barred by the doctrines of *res judicata* and collateral estoppel.  The underlying factual allegations that form the basis of Plaintiff's complaint have already been plead beginning with a Southern District of New York Interpleader Complaint where they were dismissed as meritless and not reaching a prima facie for cause, continuing through a Second Circuit appeal that affirmed Judge Cote's determination.  (<u>See</u>, Moldovsky

Dec., ECF Doc. #23-2 at Exs. "F" and "Q").  Plaintiff brought the same allegations of fact and

claims to the New York Civil Supreme Trial Court, where they were denied as *res judicata* based

on Judge Cote's determination (Moldovsky Reply Dec., ECF Doc. #26-1 at Ex. "A") or denied

when presented as the basis for one of Lightbox's many requests for sanctions (Moldovsky Dec.,

ECF Doc. #23-3 at Ex. "R"), and to the New York Appellate Department which ordered

references to these allegations to be stricken from Lightbox's appeals papers (Moldovsky Dec.,

ECF Doc. #23-3 at Ex. "Y").  The Bucks County Court of Common Pleas was also presented

with factual allegations of misconduct, including related to the frivolity of the Bucks County

Action, and took no action against the Firm.  Mr. Ellner has not provided any documentary

evidence to suggest he incurred any legal fees or financial loss at all in defense of the action.

Upon information and belief, any legal fees incurred for Fox Rothschild's work in the Bucks

County action were by Lightbox,  were nominal and are not recoverable in this action.

    50. Denied.  Paragraph 50 is a conclusion of law to which no response is necessary.  The

allegations of paragraph 50 are false and are barred by the doctrines of *res judicata* and collateral

estoppel.  The underlying factual allegations that form the basis of Plaintiff's complaint have

already been plead beginning with a Southern District of New York Interpleader Complaint

where they were dismissed as meritless and not reaching a prima facie for cause, continuing

through a Second Circuit appeal that affirmed Judge Cote's determination.  (See, Moldovsky

Dec., ECF Doc. #23-2 at Exs. "F" and "Q").  Plaintiff brought the same allegations of fact and

claims to the New York Civil Supreme Trial Court, where they were denied as *res judicata* based

on Judge Cote's determination (Moldovsky Reply Dec., ECF Doc. #26-1 at Ex. "A") or denied

as a basis for one of Lightbox's many requests for sanctions (Moldovsky Dec., ECF Doc. #23-3

at Ex. "R"), and to the New York Appellate Department where they were ordered to be stricken

(Moldovsky Dec., ECF Doc. #23-3 at Ex. "Y")  The Bucks County Court of Common Pleas was presented with factual allegations of misconduct, including related to the frivolity of the Bucks County Action, and ignored them.  Mr. Ellner and Lightbox have initiated their own litigations against Mr. Moldovsky and the Moldovsky Firm in this forum, in the Southern District of New York, in the Second Circuit Court of Appeals, in the Supreme Court of New York Trial and Appellate Courts and cannot distinguish or separate his own self-inflicted stress, anguish, embarrassment, and humiliation from any caused by any other litigant.  Mr. Ellner himself has been found to be aggressive, sophisticated, and prone to foolhardy litigation and has been, upon information and belief, feeling stress about his various litigations unrelated to the Bucks County Action and in particular due to all the decisions and orders against him as well as the many losses he has suffered and feels embarrassment, anger and stress over.  But these were of his own doing.

51. Denied. Paragraph 51 is a conclusion of law to which no response is necessary.  There was sufficient proper purpose as elaborated above at ¶45 and probable cause as elaborated above at ¶46 and throughout this pleading.

52. Denied. Paragraph 52 is a conclusion of law with which Defendants disagree.  There was sufficient proper purpose as elaborated above at ¶45 and probable cause as elaborated above at ¶46 and throughout this pleading.  Even if there was any small amount of anger involved, ""an incidental motive of spite or ulterior purpose of benefit to the defendant" [such] would not be a sufficient improper purpose for an abuse of process cause of action.  (See, Bell v. Township of Concord et al., 759 F.Supp.2d 621 (E.D.Pa. 2011).)

53. Denied. Paragraph 53 is a conclusion of law with which Defendants disagree.  There was sufficient proper purpose as elaborated above at ¶45 and probable cause as elaborated above at

¶46. Plaintiff has failed to provide any proof that he suffered any financial, emotional or reputational harm as a result of the Bucks County Action.

## COUNT I – WRONGFUL USE OF CIVIL PROCEEDINGS

54. Admitted in part and denied in part. Paragraph 54 is a conclusion of law to which a response is not required.  Defendants incorporate each of the foregoing paragraphs by reference as though fully set forth below.

55. Denied. Paragraph 55 is a conclusion of law with which Defendants disagree.  There was sufficient probable cause for each claim and amendment against Plaintiff, including but not limited to:

    a.   There was probable Cause pursuant to 42 Pa. C.S. § 8352;

    b.   There was probable cause per the expert report of Samuel Stretton, Esq. (Moldovsky Dec., ECF Doc. #23-3 at Ex. "I");

    c.   There was probable cause per Judge Robert O. Baldi in the underlying Bucks County case making various findings and decisions which unquestionably establish that there was probable cause for the underlying Bucks case as he maintained the viability of the case upon deciding a first wave of motions;

    d.   There was probable cause as evidenced by Judge Baldi stating on the record that the claims could reach a jury (Moldovsky Dec., ECF Doc. #23-3 at Ex. "L" at 111:22-25;

    e.   There was probable cause as a matter of law since the Court's decisions indicated that there was probable cause;

    f.   There was probable cause based on the information known about the wiretaps;

g.  There was probable cause based on the undersigned's knowledge that Mr. Ellner regularly traveled to and/or owned additional homes in other 2 consent states including California (Calistoga) and Florida;

h.  There was probable cause based on Plaintiff's former attorney at Fox Rothschild admitting that they were not handling the recorded phone calls because of the potential illegality of them;

i.  There was probable cause based on Plaintiff not turning over recordings, lying about them, and using them abusively to abuse and aid and abet Mr. Miller, raise false claims, undermine proceedings, etc.;

j.  There was false and misleading misrepresentations made to the Court in the Bucks case and made here as well, and these include but are not limited to that Mr. Ellner never called into a Pennsylvania number, which Mr. Ellner repeats in this matter at ¶30 of his Complaint.  This allegation was disproved swiftly with phone records showing that Mr. Ellner did call into a Pennsylvania number.  (See, Phone Records, Moldovsky Reply Dec., ECF Doc. #26-1 at, Ex. "K";

k.  There was probable cause based on the standards established by the matter of Calcagno vs. Aidman, which holds that courts will weigh the differences in standards between two states when one state has a stricter or different standard than the other in order to prevent additional harm or damage.  This is also held by the by the Larrison v. Larrison  and Mulder v. Wells Fargo Courts;

l.  There was probable cause based on Mr. Miller misrepresenting to the Court the extent of his knowledge about the Moldovsky Defendants' financials from his

prior representation of them as counsel and the substantial relation to issues in the billing dispute with Lightbox and Mr. Ellner;

m. Mr. Pomerantz Mr. Pomerantz was allowed to rely on his belief in the veracity of the undersigned to the extent that there was even just a slight chance that his client's claims would have been successful, as the lawyer is not to prejudge and is allowed to act upon facts stated by their clients; and

n. There was legal basis for an action against Mr. Ellner based on his aiding and abetting Mr. Miller's legal malpractice and based on legal precedent including as expressed in the matter of Calcagno vs. Aidman, shows that courts will weigh the differences in standards between two states when one state has a stricter or different standard than the other in order to prevent additional harm or damage to the victim of a violation of Pennsylvania law.  This is also held by the by the Larrison v. Larrison  and Mulder v. Wells Fargo Courts, both of which weighed the harm and damage to a Pennsylvania resident wiretapped by another party outside of Pennsylvania.  There was probable cause to believe Mr. Ellner may have recorded in another two-party consent state, but even if he had not the existing law allows for Pennsylvania Courts to weigh the harm and damage to Pennsylvania residents.

56. Denied. The Complaint was amended a number of times to clarify issues, add more specificity and then to leave out the Lightbox Defendants and Mr. Ellner and the causes of action and damages related to the Wiretap Act and Lightbox and Ellner's aiding and abetting legal malpractice.  Each Amended Complaint included elaboration or specificity of claims that were previously unknown.  This included to clarify that Mr. Ellner and Lightbox aided and abetted

Mr. Miller's malpractice and breach of fiduciary duty by being aware of his conflicts of interests in representing Lightbox and Mr. Ellner against the Moldovsky Firm but persisting in retaining and utilizing him against Moldovsky and continuing to do so, on and on and with malicious intent and aims as stated and explained herein and in the incorporated and referenced pleadings. Mr. Ellner's counsel's threats and embodied by their  requests for sanctions were ill-founded and rejected by various courts.

57. Denied.  The allegations of paragraph 57 are false and are barred by the doctrines of *res judicata* and collateral estoppel based on the "Prior Orders Denying Relief," all of which rejected Plaintiff's factual allegations of misconduct, including those allegations related to the frivolity of the Bucks County Action and Mr. Ellner's stress and anguish, and all of which found the same allegations to be meritless.  Mr. Ellner and Lightbox have initiated their own litigations against Mr. Moldovsky and the Moldovsky Firm in this forum, in the Southern District of New York, in the Second Circuit Court of Appeals, in the Supreme Court of New York Trial and Appellate Courts and cannot distinguish or separate his own self-inflicted stress, anguish, embarrassment, and humiliation from any caused by any other litigant.  Mr. Ellner himself has been found to be aggressive, sophisticated, and prone to foolhardy litigation.  Mr. Ellner has further failed to establish that he suffered any financial loss.  Upon information and belief, any fees incurred were by Mr. Ellner's Lightbox entities and/or any fees incurred by Mr. Ellner are nominal because Mr. Ellner alleges that the amendments to the Complaint were nominal.

58. Denied. Paragraph 58 is a conclusion of law as to which no responsive pleading is required and with which Defendants disagree.  Mr. Pomerantz was not involved in initiating the action against Mr. Ellner and did not enter an appearance until the Summons had already been

served.  Mr. Pomerantz reasonably relied on the factual allegations and claims of his client, and Mr. Pomerantz has the right and duty to favorably interpret his clients' claims.

59. Denied.  The allegations of paragraph 59 are false and are barred by the doctrines of *res judicata* and collateral estoppel based on decisions of the Southern District of New York (ECF Doc. # 23-3 at Ex. "F"), Second Circuit Court of Appeals (ECF Doc. # 23-3 at Ex. "Q"), Supreme Court of New York (ECF Doc. # 26-1 at Ex. "A"), the Bucks County Court of Common Pleas (ECF Doc. # 26-1 at Ex. "B"), and the New York Appellate Division, First Department (ECF Doc. # 23-3 at Ex. "Y"), all of which were presented with factual allegations of misconduct, including related to multiple motions for sanctions based on the same factual background, and all of which found the same allegations to be meritless and denied each and every of more than a dozen requests for sanctions.  The effect of the SDNY and Second Circuit Decision is that all claims of misconduct stemming from the same allegations of fact are impossible.

60. Admitted in part and denied in part.  Plaintiff's Complaint speaks for itself.  Punitive and emotional damages are not recoverable because Plaintiff does not allege facts sufficient to impose punitive damages pursuant to 42 Pa.C.S.A. § 8353(5) (allowing damages for "any emotional distress that is caused by the proceedings.")  Plaintiff does not and cannot actually allege anything abusive, embarrassing, malicious, extraneous, frivolous, etc. occurred in relation to the Bucks Case to cause him distress or damage.

Wherefore, Defendants demand judgment in their favor on this cause of action and in this case and against Plaintiff, together with costs, attorney's fees, and any other award this Honorable Court deems just and proper.

## COUNT II – ABUSE OF PROCESS

28

61. Admitted in part and denied in part. Paragraph 61 is a statement of law to which a response is not required.  Defendants incorporate each of the foregoing paragraphs by reference as though fully set forth below.

62. Denied.  Paragraph 62 is a conclusion of law with which Defendants disagree.  The civil process was only utilized for the purposes for which it was designed and not for any perverse or improper purpose.  For the Complaint to state a cause of action (for either cause of action here) there must be "truly abusive" conduct that did not occur, was found by numerous courts not to have occurred and is not plead here (beyond perhaps boilerplate).  (See, Hyldahl v. Denlinger, 2014 WL 12606157,  Not Reported in Fed. Supp., E.D.Pa., 2014) (Dismissing causes of action for malicious prosecution and abuse of process.)  Even if the Plaintiff could allege or plead (which he cannot) that there was ""an incidental motive of spite or ulterior purpose of benefit to the defendant" [such] would not be a sufficient improper purpose for an abuse of process cause of action.  (See, Bell v. Township of Concord et al., 759 F.Supp.2d 621 (E.D.Pa. 2011).)  There was sufficient probable cause as articulated at ¶45.  Service of process was proper as described below in the paragraphs that follow.

63. Denied.  Service was made upon Mr. Ellner in several ways including that because Mr. Ellner and his entities refused to accept service of process, service was made by process server and included serving a summons along with narrowly focused Pre-Complaint discovery requests (as allowed by Pa. R.C.P. §4003.8(a)) seeking disclosure about the phone transcripts.  Service was then made properly, including pursuant to Pa. R.C.P. Rule 404 (1)(3), which provides: "(3) in the manner provided by the law of the jurisdiction in which the service is made for service in an action in any of its courts of general jurisdiction" and service upon Mr. Ellner by leaving process with his building's doorman is proper pursuant to New York's CPLR Rule 308 (2)

allowing service to be made "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other".  Service was proper pursuant to CPLR Rule 308 (4) which includes that "where service un-der paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other".

64. Denied.  Paragraph 64 is a conclusion of law with which the Defendants disagree.  Mr. Ellner and his entities refused to accept service of process,  service was made by process server and included serving a summons along with narrowly focused Pre-Complaint discovery requests (as allowed by Pa. R.C.P. §4003.8(a)) seeking disclosure about the phone transcripts.  Service was then made properly, including pursuant to Pa. R.C.P. Rule 404 (1)(3), which provides: "(3) in the manner provided by the law of the jurisdiction in which the service is made for service in

an action in any of its courts of general jurisdiction" and Service upon Mr. Ellner by leaving

process with his building's doorman is proper pursuant to New York's CPLR Rule 308 (2)

allowing service to be made "by delivering the summons within the state to a person of suitable

age and discretion at the actual place of business, dwelling place or usual place of abode of the

person to be served and by either mailing the summons to the person to be served at his or her

last known residence or by mailing the summons by first class mail to the person to be served at

his or her actual place of business in an envelope bearing the legend "personal and confidential"

and not indicating on the outside thereof, by return address or otherwise, that the communication

is from an attorney or concerns an action against the person to be served, such delivery and

mailing to be effected within twenty days of each other".  Service was proper pursuant to CPLR

Rule 308 (4) which includes that "where service un-der paragraphs one and two cannot be made

with due diligence, by affixing the summons to the door of either the actual place of business,

dwelling place or usual place of abode within the state of the person to be served and by either

mailing the summons to such person at his or her last known residence or by mailing the

summons by first class mail to the person to be served at his or her actual place of business in an

envelope bearing the legend "personal and confidential" and not indicating on the outside

thereof, by return address or otherwise, that the communication is from an attorney or concerns

an action against the person to be served, such affixing and mailing to be effected within twenty

days of each other".

65. Denied.  Paragraph 65 is a conclusion of law as to which no responsive pleading is

required and with which the Defendants disagree.  For the reasons articulated above, service was

properly made upon Mr. Ellner.

66. Denied. Paragraph 66 is a conclusion of law as to which no responsive pleading is required and with which the Defendants disagree.  For the reasons articulated above, service was properly made upon Mr. Ellner.

67. Denied.  Paragraph 67 is a conclusion of law with which the Defendants disagree. Although jurisdiction is not a basis for a Dragonetti claim, there were more than sufficient grounds for jurisdiction as to Mr. Ellner in Pennsylvania because of Mr. Ellner's activities directed toward Mr. Moldovsky, a Pennsylvania resident, both 1) relating to the wiretaps and 2) based on retaining a Pennsylvania lawyer, Mr. Moldovsky, (though he is also admitted in New York, obviously) for the New York litigation, 3) aiding and abetting Mr. Miller's alleged wrongful conduct against Moldovsky, and 4) for all the reasons stated herein.  Mr. Ellner was aware that Plaintiffs were based out of Bucks County, PA and were often in Bucks County, PA (and other places in Pennsylvania), Mr. Ellner regularly mailed payments and materials to the Bucks County, Pennsylvania office, which he utilized and treated as the primary address for contact.  Mr. Ellner also reached into Pennsylvania via phone and broke the laws of Pennsylvania.  Ellner had admitted to recording at least two phone calls with Mr. Moldovsky and there was probable cause to believe that there were other recordings and that some may have been recorded while one or both parties were in two-consent states.

68. Denied for the reasons set forth in the preceding paragraphs.

69. Denied for the reasons set forth in the preceding paragraphs.

70. Denied.  Mr. Ellner admitted that he recorded at least two phone calls and has misrepresented that he never called Defendants on a Pennsylvania phone number or when they were in Pennsylvania, both of which are false as demonstrated by documentary evidence.  Legal precedent including as expressed in the matter of <u>Calcagno vs. Aidman</u>, shows that courts will

weigh the differences in standards between two states when one state has a stricter or different standard than the other in order to prevent additional harm or damage to the victim of a violation of Pennsylvania law.  This is also held by the by the <u>Larrison v. Larrison</u>  and <u>Mulder v. Wells Fargo</u> Courts, both of which weighed the harm and damage to a Pennsylvania resident wiretapped by another party outside of Pennsylvania.  There was probable cause to believe Mr. Ellner may have recorded in another two-party consent state, but even if he had not the existing law allows for Pennsylvania Courts to weigh the harm and damage to Pennsylvania residents.

71. Denied.  The allegations of paragraph 71 are false and are barred by the doctrines of *res judicata* and collateral estoppel based on the "Prior Orders Denying Relief," all of which rejected Plaintiff's factual allegations of misconduct, including related to the harassment of Mr. Ellner. There was sufficient probable cause for every claim against Mr. Ellner as elaborated above at ¶ 62.

72. Denied.  Paragraph 72 is a conclusion of law as to which no responsive pleading is required and with which the Defendants disagree.  The Bucks County action was initiated with sufficient probable cause and for proper purpose as described above at ¶ 64.

73. Denied. The allegations of paragraph 73 are false and are barred by the doctrines of *res judicata* and collateral estoppel based on decisions of the Southern District of New York, Second Circuit Court of Appeals, Supreme Court of New York, the Bucks County Court of Common Pleas, and the New York Appellate Division, First Department, all of which were presented with factual allegations of misconduct, including related to the abuse and harassment of Mr. Ellner. There was sufficient probable cause for every claim against Mr. Ellner as elaborated above at ¶62.  Mr. Ellner has provided no proof or documentary evidence of any financial hardship experienced as a result of the Bucks County Action.  Plaintiff does not and cannot actually allege

anything abusive, embarrassing, malicious, extraneous, frivolous, outrageous, contrary to public policy or that a pattern of any such conduct occurred in relation to the Bucks Case to cause him distress or damage because he cannot and a number of court decisions bar any finding of such as already described herein.  All claims of misconduct are precluded based on the Prior Orders Denying Relief.

74. Denied. The allegations of paragraph 74 are false and are barred by the doctrines of *res judicata* and collateral estoppel based on the "Prior Orders Denying Relief," all of which rejected Plaintiff's factual allegations of misconduct, including related to the abuse and harassment of Mr. Ellner.  There was sufficient probable cause for every claim against Mr. Ellner as elaborated above at ¶62.  Punitive damages are not appropriate.  Punitive and emotional damages requests must be denied as not recoverable based on the Complaint because Plaintiff does not allege facts sufficient for punitive damages sought pursuant to 42 Pa.C.S.A. § 8353(5) (allowing damages for "any emotional distress that is caused by the proceedings.") Plaintiff does not and cannot actually allege anything abusive, embarrassing, malicious, extraneous, frivolous, etc. occurred in relation to the Bucks Case to cause him distress or damage and a number of court decisions bar any finding of such as already described herein.  All claims of misconduct are precluded based on the Prior Orders Denying Relief.

Wherefore, Defendants demand judgment in their favor and against Plaintiff in this cause of action and for this whole case, together with costs, attorney's fees, and any other award this Honorable Court deems just and proper.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

34

Plaintiff's Complaint fails to make a claim because the underlying action complained of never terminated in Plaintiff's favor, nor was it imminently going to terminate in Plaintiff's favor.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred by the decision of the Pennsylvania Supreme Court interpreting the Dragonetti Statute (42 Pa.C.S. §§8351-8354), based on the probable cause generally and to each specific aspect of the underlying matter sufficient to defeat the complaint and pursuant to caselaw such as <u>Pendergrass v. Pendergrass</u>, --- F.Supp.3d ---- (2021) including but not limited to:

a.  There was probable Cause pursuant to 42 Pa. C.S. § 8352;

b.  There was probable cause per the expert report of Samuel Stretton, Esq. (Moldovsky Dec., ECF Doc. #23-3 at Ex. "I");

c.  There was probable cause per Judge Robert O. Baldi in the underlying Bucks County case making various findings and decisions which unquestionably establish that there was probable cause for the underlying Bucks case as he maintained the viability of the case upon deciding a first wave of motions;

d.  There was probable cause as evidenced by Judge Baldi stating on the record that the claims could reach a jury (Moldovsky Motion to Dismiss Dec., ECF Doc. #23 3 at Ex. "L" at 111:22-25;

e.  There was probable cause as a matter of law since the Court's decisions indicated that there was probable cause;

f.  There was probable cause based on the information known about the wiretaps;

g.  There was probable cause based on the undersigned's knowledge that Mr. Ellner regularly traveled to and/or owned additional homes in other 2 consent states including California (Calistoga) and Florida;

h.  There was probable cause based on Plaintiff's former attorney at Fox Rothschild admitting that they were not handling the recorded phone calls because of the potential illegality of them;

i.  There was probable cause based on Plaintiff not turning over recordings, lying about them, and using them abusively to abuse and aid and abet Mr. Miller, raise false claims, undermine proceedings, etc.;

j.  There was false and misleading misrepresentations made to the Court in the Bucks case and made here as well, and these include but are not limited to that Mr. Ellner never called into a Pennsylvania number, which Mr. Ellner repeats in this matter at ¶30 of his Complaint.  This allegation was disproved swiftly with phone records showing that Mr. Ellner did call into a Pennsylvania number.  (See, Phone Records, Moldovsky Motion to Dismiss Dec., ECF Doc. #23-3 at, Ex. "K";

k.  There was probable cause based on the standards established by the matter of Calcagno vs. Aidman, which holds that courts will weigh the differences in standards between two states when one state has a stricter or different standard than the other in order to prevent additional harm or damage.  This is also held by the by the Larrison v. Larrison  and Mulder v. Wells Fargo Courts; and

l.  There was probable cause based on Mr. Miller misrepresenting to the Court the extent of his knowledge about the Moldovsky Defendants' financials from his

prior representation of them as counsel and the substantial relation to issues in the billing dispute with Lightbox and Mr. Ellner.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to make a claim under the Dragonetti Statute, 42 Pa.C.S. §§8351-8354, because Plaintiff already sought sanctions based on the same allegations that were denied.

### FOURTH AFFIRMATIVE DEFENSE

The imposition of punitive damages under the wrongful use of civil proceedings statute, 42 Pa.C.S. § 8351 et seq., violates the Constitution of Pennsylvania.

### FIFTH AFFIRMATIVE DEFENSE

Defendants' conduct was not malicious such that punitive damages are recoverable.

### SIXTH AFFIRMATIVE DEFENSE

The wrongful use of civil proceedings statute, 42 Pa.C.S. § 8351 et seq., violates the Constitution of the United States and the Constitution of Pennsylvania, generally, and as applied in this action.

### SEVENTH AFFIRMATIVE DEFENSE

Defendants believed and determined, and reasonably did so, that there was sufficient evidence and legally appropriate basis to establish the claims against Plaintiff in the underlying action.

### EIGHTH AFFIRMATIVE DEFENSE

Defendants did not procure, initiate, or continue the action in a negligent, grossly negligent, malicious, wrongful or frivolous manner.

## NINTH AFFIRMATIVE DEFENSE

Defendants had no intent to harm Plaintiff.

## TENTH AFFIRMATIVE DEFENSE

Defendants had no reason to harm Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendants did not use or attempt to use the underlying litigation for any purpose other than the adjudication of the claims against Plaintiff.

## TWELFTH AFFIRMATIVE DEFENSE

Defendants did not initiate, continue, promote, use or attempt to use the underlying litigation for any improper, malicious, perverse, wrongful, frivolous, offensive or vexatious purpose.

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendants' conduct was not reckless, malicious, abusive, or wanton.

## FOURTEENTH AFFIRMATIVE DEFENSE

Defendant Pomerantz did not procure proceedings against Plaintiff and entered later only as counsel on behalf of his clients.

## FIFTEENTH AFFIRMATIVE DEFENSE

Defendants reasonably relied on and believed the facts presented by Plaintiffs, including related to recorded telephone calls, upon which the underlying action was based and believed in good faith that the underlying action was not intended to harass of maliciously harm Plaintiff.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's action is based in part on the conduct of Defendants Moldovsky and Pomerantz during the course of representation of a client and upon reliance on their clients.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Defendant Pomerantz relied on his client and acted upon the reasonable belief that there was probable cause for the underlying action.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Defendant Moldovsky relied on his client Mr. Ellner and Mr. Ellner's representations about his recorded phone calls and acted upon the reasonable belief that there was probable cause for the underlying action.

## NINETEENTH AFFIRMATIVE DEFENSE

The conduct of all Defendants is privileged and/or immune from liability based on litigation privilege and such other privileges as apply.

## TWENTIETH AFFIRMATIVE DEFENSE

The Plaintiff did not experience a loss of reputation as a result of the underlying action or the statements or allegations therein.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The Plaintiff did not experience a loss of relationships, potential relationships, or association as a result of the underlying action or the statements or allegations therein.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The Plaintiff did not experience pecuniary loss as a result of the underlying action or the statements or allegations therein.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

The only expense Plaintiff may have experienced due to the underlying action or the statements made in connection with the underlying litigation was litigation expense that was limited and nominal and was, in any event, incurred by one or more third parties, Mr. Ellner's Lightbox entities and also due to Plaintiff's own fault, abusive conduct and misrepresentations.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Any loss of reputation, relationships, association, or other alleged loss is mitigated by plaintiff's own frivolous litigations.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's attorney's fees and costs are unreasonable considering Plaintiff's failure to mitigate the costs.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to establish any cause of action against Defendants.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred by *res judicata*, collateral estoppel, and issue preclusion based on the prior Orders of the Southern District of New York, Second Circuit Court of

Appeals, New York Supreme Court Civil Trial and Appellate Divisions, and the Bucks County

Court of Common Pleas as more thoroughly articulated above, including at ¶11 and elsewhere.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred by the doctrine of unclean hands based on Plaintiff's own

false misrepresentations in the Bucks County case and herein, including by the Complaint's

paragraph 30 and by proceeding with already precluded allegations and claims and malicious

prosecution and abuse of process as described in the Southern District of New York Action

<u>Moldovsky v. Ellner et al.</u>, No. 1:21-cv-02452 and Eastern District of Pennsylvania Action

<u>Moldovsky v. Ellner et al.</u>, No. 2:21-cv-01365-ER , both of which are incorporated herein as if

fully stated and pled.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint and alleged damages are mitigated by the doctrine of set-off based

on Plaintiff's own malicious prosecution and abuse of process as described in the Southern

District of New York Action <u>Moldovsky v. Ellner et al.</u>, No. 1:21-cv-02452  and Eastern District

of Pennsylvania Action <u>Moldovsky v. Ellner et al</u>., No. 2:21-cv-01365-ER , both of which are

incorporated herein as if fully stated and pled, as well as the account stated claims currently

before the New York State Court, the counterclaims here and all other claims by either

Moldovsky Defendant against Mr. Ellner and/or his Lightbox entities.

### THIRTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the Doctrine of Set-off based on the actions and

representations of himself as articulated herein in the Counter-Claims of Brem Moldovsky and

Brem Moldovsky, L.L.C., below,  and in the Defendants' Motion to Dismiss Plaintiff's Complaint.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or may be barred by the doctrines of res judicata and collateral estoppel based on findings of facts and law in other related matters including, without limitation, the "Prior Orders Denying Relief."

## THIRTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or may be barred by their claims in other related matters.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or must be diminished to the extent of his own misrepresentations and lies and Defendants' reliance upon them.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by his own breaches of contract.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by his own contributory negligence.

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's alleged damages are due to his own conduct.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

Defendants were not the cause in fact of plaintiff's alleged damages.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

Defendants were not the proximate cause of plaintiff's alleged damages.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

Plaintiff could have avoided any alleged loss without undue burden, expense, or humiliation.

## FOURTIETH AFFIRMATIVE DEFENSE

Plaintiff could have mitigated his own damages.

## FOURTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred wholly or partially under the Doctrines of Release, Waiver and Estoppel.

## FOURTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff cannot recover attorney's fees and costs in the underlying action or this action.

## FOURTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff cannot recover punitive damages in the underlying action or this action.

## FOURTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the Doctrines of Estoppel, Equity and equitable defenses.

## FOURTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the Doctrine of Laches.

## FOURTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff fails to make a claim based on improper purpose because ""an incidental motive of spite or ulterior purpose of benefit to the defendant" [such] would not be a sufficient improper purpose for an abuse of process cause of action."  (See, Bell v. Township of Concord et al., 759 F.Supp.2d 621 (E.D.Pa. 2011).

## <u>FOURTY-SEVENTH AFFIRMATIVE DEFENSE</u>

All applicable new matter issues under PA R.C.P. 1030 and Fed. R. Civ. Pro. Rule 8(c)(1) are hereby specifically incorporated.

Defendants reserve the right to plead additional Affirmative Defenses from time to time as further information is uncovered or expanded upon in the course of litigation and discovery.

Defendants incorporate herein as if plead fully and at length the Southern District of New York Action <u>Moldovsky v. Ellner et al.</u>, No. 1:21-cv-02452  and Eastern District of Pennsylvania Action <u>Moldovsky v. Ellner et al.</u>, No. 2:21-cv-01365-ER , both of which detail claims and allegations against Plaintiff in this matter related to the same underlying factual background of this matter and Plaintiff's own tortious and malicious litigation.  Defendants also incorporate herein as if plead fully and at length the Moldovsky Firm's New York Supreme Court Cross-Claims for account stated and alter-ego in Scarola Malone and Zubatov LLP v. Ellner et al<u>.</u>, Supreme Court of New York, County of New York Index No.: 651324/2017, which detail Lightbox and Mr. Ellner's failure to make payment as promised and agreed and Mr. Ellner's domination and misuse of the Lightbox entities.

Wherefore, Defendants demand judgment in their favor and against Plaintiff, together with damages, costs, attorney's fees, and any other award this Honorable Court deems just and proper.

## COUNTERCLAIMS BY BREM MOLDOVSKY AND BREM MOLDOVSKY, L.L.C. AGAINST PLAINTIFF ANDREW ELLNER

Defendants Brem Moldovsky and Brem Moldovsky, L.L.C. through counsel Brem Moldovsky, L.L.C. and *Pro se*, hereby state the following Counter-Claims to the Plaintiff's Complaint as follows:

44

## SUMMARY OF COUNTERCLAIMS

1.    Brem Moldovsky and Brem Moldovsky, L.L.C. bring the following Counter-Claims

against Mr. Ellner based on theories of set-off based on Mr. Ellner and Lightbox's obligations,

claims, liabilities, and debts to the Moldovsky Firm that far outweigh Mr. Ellner's claims against

the Moldovsky Firm and Mr. Moldovsky.

2.    Brem Moldovsky and Brem Moldovsky, L.L.C. also seek to enforce the contractual

indemnification clause of the Moldovsky Firm's agreement with Lightbox and Mr. Ellner against

Mr. Ellner for the costs, fees and expenses of and from litigation borne as a result of the

Moldovsky Firm's representation of Mr. Ellner.

## FACTUAL AND PROCEDURAL BACKGROUND

3.    Brem Moldovsky and Brem Moldovsky, L.L.C.  represented Plaintiff Andrew Ellner and

his entities Lightbox Ventures, LLC and Lightbox Capital Management, LLC (hereinafter

collectively "Lightbox") in a Southern District of New York matter, against Defendant 3rd

Home, Ltd. (Lightbox Ventures, L.L.C. v. 3rd Home Ltd., et al., No. 16-cv-02379 (S.D.N.Y.))

pursuant to the agreement for legal services and then the amended agreement for legal services

attached hereto as Exhibits "A" and "B". [3]

4.    Lightbox's prior counsel Scarola Malone & Zubatov, LLP ("SMZ") initiated the action

Scarola Malone and Zubatov LLP v. Ellner et al., Supreme Court of New York, County of New

York Index No.: 651324/2017, essentially an action for attorney's fees allegedly due to Mr.

Ellner's prior counsel in the underlying Federal matter, in 2016-2017.  The Moldovsky

Defendants referred their own counsel and colleague Mr. Jonathan Miller, Esq., who had

---

[3] The agreements have been upheld under attack by the federal courts, first by Judge Cote (see, Decision and Order, ECF Doc. 23-3 at Ex. "F") and affirmed by the Second Circuit, (see, Decision and Order, ECF Doc. 23-3 at Ex. "Q").

represented them in two Bucks County actions that resolved a few months prior to serve as Lightbox and Mr. Ellner's counsel in that matter.

5.  In early 2018 Lightbox and Ellner, while continuing to be difficult in communication and at odds on various strategy with this firm, also were failing to pay invoices incurred during an intensely involved trial by submissions, which lead to the Defendant Firm motioning the Federal Court to be withdrawn as counsel.  Said motion was granted and the Firm was withdrawn upon the April 13, 2018 Order of Judge Cote .  (see, Decision and Order, ECF Doc. 23-3 at Ex. "E").

6.  Shortly thereafter Lightbox and Mr. Ellner initiated an Interpleader Complaint alleging attorney misconduct and various other defamatory accusations in an attempt to disgorge fees paid to the Moldovsky Firm and block a  statutory charging lien that actually ended up resulting in a finding that Brem Moldovsky, L.L.C. was entitled to a charging lien of $45,948. 00 and had comported professionally with no misconduct.

7.  On September 26, 2018, shortly before Judge Cote awarded the Moldovsky Firm a statutory charging lien, SMZ amended its Complaint in Scarola Malone and Zubatov LLP v. Ellner et al., Supreme Court of New York, County of New York Index No.: 651324/2017 to add declaratory judgment claims against the Moldovsky Firm seeking to determine the priority of both law firms' liens (statutory and contractual) against Lightbox and seeking to attach to the statutory charging lien awarded to the Moldovsky Firm.

8.  The Moldovsky Firm counter-claimed against SMZ seeking to equitably determine the firms' competing contractual liens against Lightbox and crossclaimed against Lightbox and Mr. Ellner including claims that are still pending asserting an account stated in excess of $350,000.00 plus interest (Count VII) and piercing the corporate veil (Count VII).  There are additional claims on appeal in that matter too.

9.   The Moldovsky Firm's Agreement included an indemnification clause obligates Lightbox and Mr. Ellner to indemnify the cost of any litigation involving the Moldovsky Defendants arising from their representation of Lightbox in the SDNY matter, stating:

> "If this office or any attorney or employee or independent contractor of, associated or involved with or working with this office is sued, joined or in any way made subject to and Court or other proceeding arising out of your matters or cases, then you are to fully indemnify and defend such suit or proceeding and you shall pay all reasonable attorney's fees and costs and such other reasonable costs incurred and you shall pay any resulting judgment, verdict, settlement or award, unless it is the conduct of this office or such attorneys – and not your own – that is the basis of such judgment, verdict, settlement, or award."

See, Exhibit "A" at ¶8.

10. Mr. Ellner's claims against the Defendants  in the New York Civil Supreme Court have already been dismissed. (See, Order, ECF Doc. #26-1 at Ex. "A".)

11. Mr. Ellner's claims against the Defendants here fall within the ambit of the indemnification provision set forth above since they arise from the Moldovsky Firm's representation of him and are frivolous and unlikely to prevail.

12. The claims here are also subject to mitigation by Mr. Ellner's own conduct as described with specificity in both of the aforementioned federal lawsuits pending against him.

13. Mr. Ellner has perpetuated claims and allegations against the Moldovsky Defendants across several Courts all originating from the same nucleus of facts and the same occurrence or set of occurrences that have already been thoroughly dismissed and denied, including the allegations that underlie this lawsuit, forcing the Moldovsky Defendants to continue to engage in redundant litigation with Mr. Ellner and Lightbox.

14. Mr. Ellner, through his counsel, has appealed a Decision and Order in the New York Supreme Court that determined that Mr. Ellner and Lightbox have no standing to seek to restrain the Moldovsky Firm from utilizing a transcript of Mr. Miller's deposition in an unrelated New Jersey matter.  Mr. Miller has also filed a New Jersey action seeking the same restraint against the Moldovsky Defendants,  Miller v. Moldovsky, No. MER C-000045-21.

15. Mr. Ellner's claims and allegations are already plead, barred by the doctrines of *res judicata*  based on the "Prior Orders Denying Relief,"  and the doctrine of collateral estoppel, and yet he continues to plead them as a prong of his harassment and abuse of the Moldovsky Firm and Mr. Moldovsky intended to cause waste of time, resources, and relationships.

16. The Southern District of New York Action, Moldovsky v. Ellner et al., No. 1:21-cv-02452  and Eastern District of Pennsylvania Action, Moldovsky v. Ellner et al., No. 2:21-cv-01365-ER both detail claims against Plaintiff in this matter related to the same underlying factual background of this matter and Plaintiff's own tortious and malicious litigation that are the basis of claims for monetary damages against Mr. Ellner and Lightbox.  The already-mentioned New York State action includes and describes the New York claims for account stated against Mr. Ellner and Lightbox. The Moldovsky Defendants credibly allege in excess of $1 million in damages against Mr. Ellner and Lightbox in their Southern District of New York Complaint under theories of  i) malicious prosecution; ii) abuse of process; iii) defamation and libel; iv) tortious and malicious interference; v) aiding and abetting malpractice and breaches of duty and other causes of action.

17. The Moldovsky Defendants credibly allege in excess of $75,000.00 in damages against Mr. Ellner and Lightbox in their Eastern District of Pennsylvania Complaint based on Mr. Ellner's illegal wiretaps.

18. Additionally, the Moldovsky Firm has pending claims against Lightbox for account stated in the Supreme Court of New York matter initiated by SMZ that are likely to prevail at trial.  The Moldovsky Firm's account stated claim is in excess of $350,000.00 plus interest. There is a claim for alter-ego pending that  will obligate Mr. Ellner personally for Lightbox's debts.

19. Mr. Ellner and Lightbox, therefore, should be ordered to indemnify the reasonable fees and costs of the Moldovsky Firm related to 1. This current litigation; 2. The New Jersey litigation by his counsel Mr. Miller against the Moldovsky Defendants;  3. The Southern District of New York Complaint; and 4. The Eastern District of Pennsylvania Complaint.

20. Mr. Ellner and Lightbox should not be permitted to forum shop with impunity to assert the same dismissed claims.

21. Defendants incorporate herein as if plead fully and at length the entirety of the allegations and all claims included and plead in the Southern District of New York Action Moldovsky v. Ellner et al., No. 1:21-cv-02452  and Eastern District of Pennsylvania Action Moldovsky v. Ellner et al., No. 2:21-cv-01365-ER .  To the extent that it is held under mandatory joinder rules or if a motion to consolidate is granted or based on other such procedural devices or Court order that can occur, if it is deemed appropriate, those claims should be brought in this matter, the Court should consider that they are brought here as if fully plead.

## I.    COUNT I – SET OFF

22. Defendants incorporate each of the foregoing paragraphs by reference as though fully set forth below.

23. In the alternative and to the extent the Court is inclined not to deny Mr. Ellner's claims outright, the Court should recognize that there are outstanding claims against Mr. Ellner and

Lightbox sufficient to completely set-off and subsume Mr. Ellner's claims against the Moldovsky Defendants.

24. Lightbox and Mr. Ellner are currently the subject of pending account stated claims in the New York Civil Supreme Court action <u>Scarola Malone and Zubatov LLP v. Ellner et al.</u>, Supreme Court of New York, County of New York Index No.: 651324/2017 that allege account stated in an amount in excess of $350,000.00 along with interest per annum for unpaid balances that cause the claim to be in excess of $400,000.00.

25. Lightbox and Ellner are also the Defendants in two litigations brought by the Moldovsky Firm and Brem Moldovsky based on Lightbox and Mr. Ellner's own tortious conduct.

26. The Southern District of New York Action, <u>Moldovsky v. Ellner et al.</u>, No. 1:21-cv-02452  seeks in excess of $1 million in damages against Lightbox and Mr. Ellner for several causes of action as articulated above at ¶16.

27. The Eastern District of Pennsylvania Action, <u>Moldovsky v. Ellner et al.</u>, No. 2:21-cv-01365-ER which seeks in excess of $75,000.00 in damages against Lightbox and Mr. Ellner based on Mr. Ellner's illegal wiretaps.

28. Each of the alleged claims, liabilities, and debts between Mr. Ellner and Lightbox and the Moldovsky Defendants involve and have relation to the same of similar parties and factual background.

Wherefore, the Moldovsky Defendants demand judgment in their favor and against Plaintiff applying Lightbox and Mr. Ellner's obligations, claims, liabilities, and debts to the Moldovsky Firm, far in excess of Mr. Ellner's claims against the Firm, to offset and totally, completely, and fully set-off  any possible amount awarded in this matter against the greater amounts alleged in

the actions against Lightbox and Mr. Ellner together with damages, costs, attorney's fees, and any other award this Honorable Court deems just and proper.

## II.   COUNT II – CONTRACTUAL INDEMNIFICATION

29. Defendants incorporate each of the foregoing paragraphs by reference as though fully set forth below.

30. Pursuant to clause 8 of the offered and accepted contract between the parties, Lightbox and Mr. Ellner were obligated to indemnify and defend the Firm in any litigation against it that arose as a result of the utilization of the Firm's representation, as stated above at ¶9.  Because the possibility of litigation was foreseen and anticipated, this clause was specifically included in the Agreement, though it may have been included anyway.

31. The Moldovsky Firm and Mr. Moldovsky have spent the greater part of 3 years engaged in litigation that arose as a direct result of the Firm's representation of Mr. Ellner, which neither Mr. Ellner no Lightbox have indemnified.

32. Lightbox and Mr. Ellner have substantially and purposely failed to uphold clause 8 of the Agreement and indemnify the Moldovsky Firm.

33. As a result of the crossclaim Defendants' failure to perform per the Agreement, the Moldovsky Firm has been damaged.

34. In the event that Mr. Ellner and Lightbox do not wholly, partially, or substantially prevail in any of the remaining claims between the Moldovsky Firm, Mr. Moldovsky, Mr. Ellner and Lightbox, Mr. Ellner should be ordered to uphold their obligation to the Moldovsky Firm and indemnify fully for the fees and costs incurred pursuant to clause 8 of the Agreement, specifically related to 1. This current litigation; 2. The New Jersey litigation by his counsel Mr.

Miller against the Moldovsky Defendants;  3. The Southern District of New York Complaint

against him; and 4. The Eastern District of Pennsylvania Complaint against him.

Wherefore, the Moldovsky Defendants demand judgment in their favor and against Plaintiff

obligating Lightbox and Mr. Ellner to indemnify the Moldovsky Firm for the costs, fees and

expenses of  and related to these litigations the Moldovsky Defendants have endured as a result

of their representation of Lightbox and Mr. Ellner together with damages, costs, attorney's fees,

and any other award this Honorable Court deems just and proper.

## III.    COUNT III – DECLARATORY JUDGMENT

35. Defendants incorporate each of the foregoing paragraphs by reference as though fully set

forth below.

36. It is undisputed that the Agreement and Amended Agreement affixed hereto as Exhibits

"A" and "B" existed between the Plaintiff and the Moldovsky Firm which the Southern District

of New York and Second Circuit Court of Appeals have confirmed are valid and enforceable.

37. It is undisputed that the Agreement contains the indemnification clause memorialized in

writing at ¶8 thereof as quoted herein above at ¶9.

38. Based upon the law of agency, Plaintiff is further bound to the contract with the

Moldovsky Firm.

39. Plaintiff has materially breached the agreement.

40. The Moldovsky Firm is entitled to a declaratory judgment declaring the Agreement

enforceable and Plaintiff should be ordered to perform pursuant to the indemnification clause of

the Agreement.

Wherefore, the Moldovsky Defendants demand judgment in their favor and against Plaintiff

declaring the Agreement valid and enforceable, obligating Lightbox and Mr. Ellner to indemnify

the Moldovsky Firm for the costs of all litigations the Moldovsky Defendants have endured as a result of their representation of Lightbox and Mr. Ellner together with damages, costs, attorney's fees, and any other award this Honorable Court deems just and proper.

BREM MOLDOVSKY, L.L.C.

Dated: Bucks County, Pennsylvania
May 19, 2021

By: _____
Brem Moldovsky, Esq.
100 N. 18th Street, Suite 3 N
Philadelphia, PA 19103
(215) 546-9957
brem@bremlaw.com
*Pro se* and for Brem Moldovsky, L.L.C.

Dated: Montgomery County, Pennsylvania
May 19, 2021

By: _____
Gerald J. Pomerantz, Esquire (Pro Se)
The Coventry House
7301 Coventry Avenue, Ste. 501
Elkins Park, PA 19027
*Pro se*